**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK, Jr., | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:22-cv-1503 (JBA) |
| | : | |
| THE UNITED STATES OF AMERICA, | : | March 31, 2023 |
| *Defendant*. | : | |

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

# Table of Contents

Table of Contents ................................................................................................................ i

Table of Authorities ......................................................................................................... iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

I.    Statutory and Regulatory Background ........................................................................ 3

    A.    Military Service and Discharge ........................................................................... 3

    B.    Correction of Military Records ............................................................................ 4

    C.    Veterans Benefits ................................................................................................. 5

    D.    The Federal Tort Claims Act ............................................................................... 7

II.   Factual Background ...................................................................................................... 9

    A.    Plaintiff's military service. ................................................................................... 9

    B.    Plaintiff's unsuccessful, pre-diagnosis applications to the Navy for a discharge status upgrade and to the VA for benefits ........................................................... 10

    C.    Plaintiff's successful, post-diagnosis applications to the Navy and the VA ................. 12

        1.    Plaintiff receives relief from the BCNR. ..................................................... 12

        2.    Plaintiff receives relief from the VA. ........................................................... 13

    D.    Black Veterans Project's FOIA suit against the VA and analysis ............................... 15

III.  The Complaint ............................................................................................................ 15

STANDARD OF REVIEW ............................................................................................... 16

ARGUMENT ...................................................................................................................... 18

I.    This Court lacks jurisdiction pursuant to the Veterans' Judicial Review Act ..................... 18

    A.    The VJRA provides an exclusive jurisdictional process over questions affecting provision of benefits. ........................................................................................ 18

    B.    Generally, courts find they lack jurisdiction over FTCA claims that require the court to make determinations relating to veterans' benefits. ................................................. 21

    C.    Plaintiff's claims here must be dismissed because they would require the Court to make benefits-related determinations. ........................................................................ 22

II.   This Court lacks subject matter jurisdiction because Congress has not waived immunity under the FTCA for Plaintiff's claim. ................................................................................. 25

    A.    Quasi-adjudicative government functions, such as the VA's decisions in this case, have no private analogue. ................................................................................................. 27

    B.    The complaint does not identify a private analogue because it refers to only generalized torts, unmoored to any specific private duty. ........................................... 28

    C.    The FTCA looks to state law to determine the "law of the place"; federal law cannot provide the "law of the place." ............................................................................ 30

III.  Plaintiff's claims are untimely. ........................................................................... 33

    A.    Accrual of the statute of limitations in FTCA actions is measured by an objective, not
          subjective, standard. ...................................................................................... 33

    B.    Plaintiff's injuries accrued more than two years prior to the submission of his
          administrative claim. ...................................................................................... 34

    C.    Plaintiff's proposed claim accrual date would render the statute of limitations
          meaningless. ................................................................................................... 38

IV.  Plaintiff's claims are precluded. ............................................................................ 39

CONCLUSION ................................................................................................................. 42

## Table of Authorities

**Federal Cases**

*A.Q.C. ex rel. Castillo v. United States*,
   656 F.3d 135 (2d Cir. 2011) ...................................................................... 34, 35, 38

*Akutowicz v. United States*,
   859 F.2d 1122 (2d Cir. 1988) ..................................................................... 27, 28, 31

*Appleton v. United States*,
   180 F. Supp. 2d 177 (D.D.C. 2002) ..................................................................... 29

*Barrett v. United States*,
   689 F.2d 324 (2d Cir. 1982) ............................................................................... 34

*Beamon v. Brown*,
   125 F.3d 965 (6th Cir. 1997) ............................................................................. 19

*Bjorlin v. MacArthur Equities Ltd.*,
   No.3:11-cv-558 (MPS), 2015 WL 403212 (D. Conn., Jan. 28, 2015) ..................................... 41

*C.P. Chem. Co. v. United States*,
   810 F.2d 34 (2d Cir. 1987) ............................................................................... 27

*Carroll v. United States*,
   No. 1:19-cv-1230 (GTS/DJS), 2020 WL 4284130 (N.D.N.Y., July 27, 2020) ....................... 20

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016) ............................................................................... 17

*Carter v. United States*,
   494 F. App'x 148 (2d Cir. 2012) ........................................................................ 26

*Chen v. United States*,
   854 F.2d 622 (2d Cir. 1988) ............................................................................. 31

*Cheves v. Dep't of Veterans Affairs*,
   227 F. Supp. 2d 1237 (M.D. Fla. 2002) ................................................................. 24

*Conyers v. United States*,
   2018 WL 1157823 (E.D.N.Y., March 2, 2018) ...................................................... 20, 25

*Conyers v. United States*,
   No. 16-cv-2816 (JFB) (SIL), 2018 WL 1157754 (E.D.N.Y., Jan. 31, 2018) ................... passim

*Corley v. United States*,
   11 F.4th 79 (2d Cir. 2021) ............................................................................... 31

iii

*Dambach v. United States*,
   211 F. App'x 105 (3d Cir. 2006) ........................................................................ 19

*Dorking Genetics*,
   76 F.3d 1261 (2d Cir. 1996) ........................................................................ 26, 31

*Elkins v. Gober*,
   229 F.3d 1369 (Fed. Cir. 2000) ........................................................................ 5

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ........................................................................ 8, 18, 31

*Feres v. United States*,
   340 U.S. 135 (1950) ........................................................................ 8, 23, 26

*Figueroa v. United States*,
   739 F. Supp. 2d 138 (E.D.N.Y. 2010) ........................................................................ 27

*Fink v. Magner*,
   988 F. Supp. 74 (D. Conn. 1997) ........................................................................ 42

*Fiore v. Medina*,
   No. 11-cv-2264, 2012 WL 4767143 (S.D.N.Y. Sept. 27, 2012) ........................................................................ 31

*Garvey v. Wilkie*,
   972 F.3d 1333 (Fed. Cir. 2020) ........................................................................ 7

*Gionfriddo v. Salaf*,
   343 F. Supp. 2d 109 (D. Conn. 2004) ........................................................................ 16

*Gonzalez v. Thaler*,
   565 U.S. 134 (2012) ........................................................................ 16

*Guccione v. United States*,
   670 F. Supp. 527 (S.D.N.Y. 1987) ........................................................................ 33, 34, 37

*Gunn v. Minton*,
   568 U.S. 251 (2013) ........................................................................ 16

*Hecht v. United Collection Bureau, Inc.*,
   691 F.3d 218 (2d Cir. 2012) ........................................................................ 40

*Hicks v. Veterans Admin.*,
   961 F.2d 1367 (8th Cir. 1992) ........................................................................ 19

*Hodge v. West*,
   155 F.3d 1356 (Fed. Cir. 1998) ........................................................................ 5

*In re Monk*,
    No. 20079020, 2020 WL 8912950 (Bd. Vet. App. Dec. 15, 2020) .......................................... 14

*Jaeger v. Cellco P'ship*,
    936 F. Supp. 2d 87 (D. Conn. 2013) ........................................................................................ 40

*Katz v. Donna Karan Co. Store, L.L.C.*,
    872 F.3d 114 (2d Cir. 2017) ..................................................................................................... 17

*King v. U.S. Dep't of Veterans Affairs*,
    728 F.3d 410 (5th Cir. 2013) .................................................................................................... 19

*Klopp v. United States*,
    131 F.3d 131 (2d Cir. 1997) ..................................................................................................... 27

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998) ............................................................................................. passim

*Larrabee by Jones v. Derwinski*,
    968 F.2d 1497 (2d Cir. 1992) ................................................................................................... 20

*Liranzo v. United States*,
    690 F.3d 78 (2d Cir. 2012) ......................................................................................................... 9

*Lopez v. Shulkin*,
    No. 17-754, 2017 WL 4898294 (Vet. App., Oct. 31, 2017) ..................................................... 41

*Majid v. Dova Med. Ctr.*,
    No.13-cv-2958 (CBA), 2013 WL 3766559 (E.D.N.Y., July 11, 2013) .................................... 20

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ......................................................................................... 16, 17, 18

*McGowan v. United States*,
    825 F.3d 118 (2d Cir. 2016) .............................................................................. 18, 26, 31, 32

*Michel v. United States*,
    No. 17-cv-1893 (KAM) (RML), 2019 WL 4602828 (E.D.N.Y., Sept. 23, 2019).................... 36

*Monk v. Wilkie*,
    No. 19-217, 2020 WL 2461722 (Vet. App. May 13, 2020) ............................................. passim

*Ojo v. United States*,
    No. 20-cv-4882 (MKB), 2022 WL 4091011 (E.D.N.Y. Sept. 6, 2022) ................................... 27

*Ortiz v. McDonough*,
    6 F.4th 1267 (Fed. Cir. 2021) ................................................................................................. 40

*Peruta v. United States,*
No. 3:16-cv-2112 (VLB), 2018 WL 995111 (D. Conn. Feb. 21, 2018) ...................... 27, 28, 32

*Philippeaux v. United States,*
No. 10 Civ. 6143 (NRB), 2011 WL 4472064 (S.D.N.Y., Sept. 27, 2011) ........................ 21, 22

*Pipitone v. City of New York,*
57 F. Supp. 3d 173 (E.D.N.Y. 2014) ....................................................................... 38

*Price v. United States,*
228 F.3d 420 (D.C. Cir. 2000) ......................................................................... 19, 21

*Rent Stabilization Ass'n v. Dinkins,*
5 F.3d 591 (2d Cir. 1993) .................................................................................. 17

*Richards v. United States,*
369 U.S. 1 (1962) ............................................................................................ 26

*Rosario Gonzalez v. United States,*
544 F. App'x 5 (1st Cir. 2013) ........................................................................... 24

*Rosario Gonzalez v. United States,*
898 F. Supp. 2d 410 (D.P.R. 2012) ..................................................................... 24

*Routen v. West,*
142 F.3d 1434 (Fed Cir. 1998) ........................................................................... 41

*Rukoro v. F.R.G.,*
976 F.3d 218 (2d Cir. 2020) ............................................................................... 17

*Schwingle v. United States,*
No. 20-cv-6394 CJS, 2022 WL 9462632 (W.D.N.Y., Oct. 14, 2022) ........................ 20, 21, 22

*Shade v. Hous. Auth. of City of New Haven,*
251 F.3d 307 (2d Cir. 2001) ............................................................................... 31

*Shinseki v. Sanders,*
556 U.S. 396 (2009) ......................................................................................... 6

*Spears v. Liberty Life Assur. Co. of Boston,*
885 F. Supp. 2d 546 (D. Conn. 2012) .................................................................. 9

*Storms v. United States,*
No. 13-cv-811 MKB, 2015 WL 1196592 (E.D.N.Y. Mar. 16, 2015) ............................ 27, 29

*Sugrue v. Derwinski,*
26 F.3d 8 (2d Cir. 1994) ............................................................................ 19, 20, 23

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
   752 F.3d 239 (2d Cir. 2014) ............................................................... 16, 17

*Tindall v. United States*,
   901 F.2d 53 (5th Cir. 1990) ............................................................... 31

*Torres v. United States*,
   621 F.2d 30 (1st Cir. 1980) ............................................................... 23

*United States v. Kubrick*,
   444 U.S. 111 (1979) ............................................................... 33, 34, 36

*United States v. Mitchell*,
   445 U.S. 535 (1980) ............................................................... 18

*United States v. Olson*,
   546 U.S. 43 (2005) ............................................................... 26

*Vesely v. United States*,
   868 F.2d 1277 (Fed. Cir. 1989) ............................................................... 23

*Veterans for Common Sense v. Shinseki*,
   678 F.3d 1013 (9th Cir. 2012) ............................................................... 19

*Waldman v. Village of Kiryas Joel*,
   207 F.3d 105 (2d Cir. 2000) ............................................................... 40, 41

*Walton v. Sec'y Veterans Admin.*,
   187 F. Supp. 3d 1317 (N.D. Ala. 2016) ............................................................... 24

*Watson v. United States*,
   865 F.3d 123 (2d Cir. 2017) ............................................................... 32, 39

*Williams v. United States*,
   947 F.2d 37 (2d Cir. 1991) ............................................................... 25

**State Cases**

*Lawrence v. O&G Indus.*,
   319 Conn. 641 (2015) ............................................................... 29

*Raspberry Junction Holding, LLC v. Se. Connecticut Water Auth.*,
   340 Conn. 200 (2021) ............................................................... 30

**Federal Statutes**

28 U.S.C. §
  1346(b)(1) ................................................................................. 8, 26, 31, 42
  2401(b) .......................................................................................... 23, 33
  2674 ............................................................................................ 8, 26

38 U.S.C. §
  101(2) ........................................................................................ 6, 13, 22
  511 .............................................................................................. passim

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................... 16
Fed. R. Civ. P. 12(h)(3) .................................................................... 16, 42
Fed. R. Evid. 201 ................................................................................. 9

**Federal Regulations**

38 C.F.R. §
  3.12 ..................................................................................... 7, 10, 13, 14, 22
  3.354 .......................................................................................... 14

**Other Authorities**

Restatement (Second) of Judgments § 18 (1982) .......................................... 40
Restatement (Second) of Judgments § 24 (1982) ........................................ 40, 41
Restatement (Second) of Judgments § 25 (1982) ........................................ 41, 42

**INTRODUCTION**

The United States Department of Veterans Affairs (VA) considers the issue of racial disparities in veteran benefit decisions to be of great significance and is working actively to address it. The VA is committed to eliminating barriers so that all veterans are treated fairly and equally. *See* Transcript of Press Conference of Secretary Denis McDonough, Mar. 2, 2023 ("I've directed the leadership team here at VA to start up an equity team immediately. . . to look into disparities in grant rates to [B]lack Veterans, as well as to all Veterans, minority Veterans, and historically underserved Veterans, and to eliminate them. I will expect that team to consider policies across VA to address these concerns, including changes related to organizational structure, training, quality control, outreach, and more."). But this case does not provide an appropriate vehicle to address such issues.

In 1970, while experiencing post-traumatic stress disorder (PTSD) that remained undiagnosed until 2011, Conley Monk, Jr. (Plaintiff) asked to be discharged from the United States Marine Corps with an undesirable discharge status in lieu of facing military misconduct charges. Soon after, in 1971, he sought a discharge upgrade from the military and benefits from the VA. The VA denied Plaintiff's benefits request, and subsequent requests, due to Plaintiff's discharge status. In 2011, however, a psychiatrist diagnosed Plaintiff with PTSD during and since military service, and he submitted this diagnosis to the relevant federal agencies in 2012. In May of 2015, the Board for Correction of Naval Records (BCNR) upgraded Plaintiff's discharge status. In September of 2015, the VA awarded Plaintiff disability benefits, which were later made retroactive to February 2012, the date he requested.

Now, in this lawsuit, Plaintiff seeks money damages from the United States under the Federal Tort Claims Act (FTCA) to compensate him for the VA's denials of his benefits requests

beginning in 1971. The FTCA, however, does not provide the authority to adjudicate the substance of Plaintiff's present action. Congress has specifically precluded judicial review of VA benefits decisions by Federal District Courts through the Veterans' Judicial Review Act (VJRA). The VJRA, not the FTCA, sets out the appropriate procedures for challenging VA benefits determinations. Plaintiff successfully used these procedures to obtain VA disability benefits retroactive to the date he desired. Plaintiff again makes a request that arises out of a VA benefits determination, but he cannot seek monetary compensation from this Court under the FTCA as redress for the VA's past benefits determinations, regardless of how his complaint is framed.

Moreover, the Court lacks subject matter jurisdiction over this complaint because the VA's benefits decisions are quintessential quasi-adjudicative government functions for which there is no "private analogue." Congress has not otherwise waived the United States' sovereign immunity under the FTCA for Plaintiff's claims. Because Plaintiff cannot show any like circumstances under which a private actor would be liable under Connecticut law, his FTCA claims fail for lack of subject matter jurisdiction.

Finally, even if Plaintiff could circumvent these defects, his lawsuit would be time-barred and also barred by principles of res judicata. Plaintiff has been litigating issues surrounding his discharge status and VA benefits, with the assistance of the same counsel, since at least 2011. He was on notice of his injury (the denial of access to benefits) and its alleged cause (adverse decisions by the VA) for well over two years before submitting his administrative claim on February 25, 2022.

Each of these reasons provides an independent basis to dismiss for lack of jurisdiction.

## BACKGROUND

I.    **Statutory and Regulatory Background**

A.    **Military Service and Discharge**

The Department of the Navy is housed within the Department of Defense (DoD), an

executive agency of the United States. 10 U.S.C. § 111. The Marine Corps is housed within the

Navy. 10 U.S.C. § 8063. Since 1968, a person who enlists in one of the armed forces typically

agrees to serve for a minimum term of two years. *See* 10 U.S.C. § 505(c); Pub. L. 90-235, Jan. 2,

1968, 81 Stat. 753, 754 (codified at 10 U.S.C. § 505(c)). To help maintain "good order and

discipline," 10 U.S.C. § 934, within the armed forces, including the Marines, Congress adopted

the Uniform Code of Military Justice. 10 U.S.C. § 801, *et seq.* Under that Code, an enlisted

Marine who engages in minor misconduct, such as having periods of being absent without leave

(AWOL) or engaging in disobedience, may receive nonjudicial punishment in the course of their

service. 10 U.S.C. § 815(b). A Marine who commits more serious offenses, such as continued

periods of AWOL, attempted larceny, and striking an officer, could be tried by a special court-

martial. 10 U.S.C. § 819. If convicted, the punishment for such offenses can include a

dishonorable discharge or a bad conduct discharge. 10 U.S.C. § 856; Manual for Courts-Martial,

United States, at 322 (AWOL), 333 (striking a petty officer), 408 (larceny) (2019 Ed.). A Marine

who wishes to avoid trial by special court-martial can make a request to be discharged from

service with an "other than honorable" characterization of service (previously called an

"undesirable" discharge). *See* Marine Corps Order 1900.16-1004, Characterization of Service, at

2.c.(2) (Feb. 15, 2019) (stating that an "other than honorable" characterization is authorized only

if "(1) the Marine has been afforded the opportunity to request an administrative board, or (2) the

Marine requests separation in lieu of trial by court-martial under paragraph 6419 of this

Manual."). If approved, the commanding officer directs that the charges be withdrawn from the

3

military's justice system, and the Marine is discharged from their military service. *See* Marine Corps Order 1900.16-6419, Separation in Lieu of Trial by Court-Martial.

In 2009, Congress passed legislation requiring military departments to screen certain members of the armed forces for PTSD or traumatic brain injury before separating them from military service. *See* 10 U.S.C. § 1177; *see also* DODI 1332.14 Encl. 5, Sec. 9 (updated June 23, 2022). These and other laws and policies provide a pre-discharge framework for detecting a servicemember's PTSD and considering any role it played in a person's military service. *See* Marine Corps Order 1900.16-6110, Health Assessments Prior to Administrative Separations.

### B.     Correction of Military Records

Congress and the military branches have provided recourse for former servicemembers who believe that their discharge was improper. Congress has authorized the Secretary of any military department to correct any military record when the Secretary considers it necessary to correct an error or remove an injustice. 10 U.S.C. § 1552(a)(1). Congress required that the Secretary generally must make such corrections through boards of civilians, *id.*, and granted the Secretaries authority to issue procedures for such process, § 1552(a)(3)(A). The Secretary of Defense additionally must approve the procedures. § 1552(a)(3)(A). The Secretary of the Navy has established procedures for applications for the correction of military records by former members of the Navy and Marine Corps to the BCNR. 32 C.F.R. § 723.1, *et seq.*; SECNAVINST 5420.193 (Nov. 19, 1997).

In 2014, the Secretary of Defense issued a memorandum directing the BCNR (and Boards for Correction of Military Records) to apply "liberal consideration" to claims of PTSD in the petitions of Vietnam veterans. Sec'y of Def., *Mem. for Secretaries of the Military Departments, Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress*

*Disorder* at 1 (Sept. 3, 2014). This memorandum is commonly referred to as the "Hagel Memorandum."

In 2016, Congress amended 10 U.S.C. § 1552 to explicitly recognize PTSD claims in the corrections boards' administrative review of discharges. National Defense Authorization Act, 2018, Pub. L. 115-91, § 520(a), Dec. 12, 2017, 131 Stat. 1283, 1379. In relevant part, the law added a new subsection (h) to provide additional measures for former members whose requests for record corrections claim combat-related PTSD. *See* 10 U.S.C. § 1552(h)(1). Drawing on DoD's Hagel Memorandum, one of those measures is that the corrections board must "review the claim with liberal consideration to the claimant that post-traumatic stress disorder [] potentially contributed to the circumstances resulting in the discharge [] or to the original characterization of the claimant's discharge." § 1552(h)(2)(B).

### C.     Veterans Benefits

Congress enacted Title 38 of the U.S. Code to create a system for providing veterans with benefits and created the position of Secretary of Veterans Affairs, a cabinet-level, executive official,[1] to oversee such benefits. Congress created a framework for administering VA benefits claims in which the adjudicatory process is nonadversarial and uniquely pro-claimant. *Elkins v. Gober*, 229 F.3d 1369, 1376 (Fed. Cir. 2000); *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) (noting the "character of the veterans' benefits statutes is strongly and uniquely pro-claimant").

VA benefits adjudications are "nonadversarial" because Congress imposed on the VA a duty to notify and assist claimants in substantiating claims for VA benefits. *See* 38 U.S.C.

---

[1] The President appoints the VA Secretary, by and with the advice and consent of the Senate. 38 U.S.C. § 303.

§§ 5100, 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.103, 3.159, 3.326(a). Another unique

component of the VA's benefits program is that, even beyond the VJRA appeal process

described below, a claimant can reopen a final denial at any time by submitting new and material

evidence, 38 U.S.C. § 5108 (2012),[2] or revise a final benefits denial upon a showing of clear and

unmistakable error, which can result in retroactive benefits back to the date of the original claim,

38 U.S.C. § 5109A(a)-(b). In addition, the VA supports the provision of free services to veterans,

including assistance with the "preparation, presentation, and prosecution of claims" for VA

benefits, by veterans service organizations (such as the American National Red Cross, the

American Legion, the Disabled American Veterans, the United Spanish War Veterans, and the

Veterans of Foreign Wars). *See* 38 U.S.C. §§ 5902, 5904. In the words of the Supreme Court,

> Congress has expressed special solicitude for the veterans' cause. A
> veteran, after all, has performed an especially important service for
> the Nation, often at the risk of his or her own life. And Congress has
> made clear that the VA is not an ordinary agency. Rather, the VA
> has a statutory duty to help the veteran develop his or her benefits
> claim.

*Shinseki v. Sanders*, 556 U.S. 396, 412 (2009) (cleaned up).

Congress provided that only individuals who were discharged from service "under

conditions other than dishonorable" are considered veterans and are eligible for VA benefits. 38

U.S.C. § 101(2). To determine whether an individual's "other than honorable" discharge

qualifies as "dishonorable" for purposes of VA benefits, the VA makes a "character of

discharge" (COD) assessment pursuant to regulations adopted in 38 C.F.R. § 3.12(c) & (d).[3] *See*

---

[2] As of February 19, 2019, the concept of reopening based on new and material evidence has been replaced
with the similar concept of readjudication based on new and relevant evidence. 38 U.S.C. § 5108; Veterans Appeals
Improvement & Modernization Act of 2017, Pub. L. 115-55, Aug. 23, 2017, 131 Stat. 1105, 1109; 38 C.F.R. § 19.2.
Because Plaintiff filed his 2012 request for reopening under the prior version of section 5108, we cite the prior
version herein.

[3] *See also* U.S. Dep't of Veterans Affs., Compensation & Pension, M21-1, Part X, Subpart iv, Chapter 1,
Section A - Character of Discharge (COD) and Bars to Benefits, Article ID: 554400000177986.

*Garvey v. Wilkie*, 972 F.3d 1333, 1334 (Fed. Cir. 2020) (holding that Congress authorized the VA to define a discharge for willful and persistent misconduct as a discharge under "dishonorable conditions" under 38 U.S.C. § 101(2)). Congress allowed that a claimant who disagrees with the VA's COD assessment may appeal through the VJRA process described below; and, even if a claimant does not appeal, final COD assessments may be reopened based upon new and material evidence, 38 U.S.C. § 5108 (2012), or revised based on clear and unmistakable error, 38 U.S.C. § 5109A.[4]

At the culmination of the nonadversarial VA benefits process, Congress provided—through the VJRA—that the Secretary's decisions respecting benefits are final and subject to limited review:

> The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans. . . . Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and *may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise*.

38 U.S.C. § 511(a) (emphasis added). That limited review includes the Board of Veterans' Appeals (an entity within VA), then the Court of Appeals for Veterans Claims, then the Court of Appeals for the Federal Circuit, and finally the Supreme Court, *see* 38 U.S.C. §§ 7104, 7105, 7252, 7292.

### D.    The Federal Tort Claims Act

The FTCA is a limited waiver of sovereign immunity by the United States for claims for property damage or personal injury "caused by the negligent or wrongful act or omission of any

---

[4] While VA determines COD for purposes of benefits eligibility, Congress did not provide any means for VA to alter a former servicemember's discharge status. Only military branches, and their associated boards, can determine and/or alter discharge status. *See* Section I.A.-B., above.

employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the *law of the place* where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). Under the FTCA, the United States is liable only "in the same manner and to the same extent as a private individual under *like circumstances* . . . ." 28 U.S.C. § 2674 (emphasis added).[5] The FTCA does not, however, provide damages for all injuries caused by government employees, and contains numerous exceptions to the limited waiver of sovereign immunity. *See* 28 U.S.C. § 2680; *Feres v. United States*, 340 U.S. 135, 146 (1950) (holding the government not liable under the FTCA for injuries to servicemen arising out of or in the course of activity incident to military service).

State law provides the FTCA's substantive causes of action. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[The] law of the State [is] the source of substantive liability under the FTCA."); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012) ("[The] FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees.").

---

[5] Until the mid-20th century, an injured person could obtain compensation from the United States for the tortious acts of federal employees only by persuading Congress to pass a "private bill." *See* Stephen L. Nelson, *The King's Wrongs and the Federal District Courts: Understanding the Discretionary Function Exception to the Federal Tort Claims Act*, 51 TEX. L. REV. 259, 265 (2009). Some members of the public were concerned that the private bill system was "unjust and wrought with political favoritism." *Id.* at 267; *see also* Jeffrey Axelrad, *Federal Tort Claims Act Administrative Claims: Better Than Third-Party ADR For Resolving Federal Tort Claims*, 52 ADMIN. L. REV. 1331, 1332 (2000) ("Favoritism in Congress . . . could make or break the claimant's ability to be made whole."). To replace the private bill system, Congress enacted the FTCA in 1946. *See* Nelson, 51 S. TEX. L. REV. at 267-71.

The passage of the FTCA does not preclude the government from providing individuals with other avenues for compensatory relief when Congress believes it is appropriate. For example, Congress passed The Radiation Exposure Compensation Act in 1990 to establish an administrative program for claims relating to atmospheric nuclear testing and uranium industry employment. 42 U.S.C. § 2210 note; Radiation Exposure Compensation Act, Pub. L. 101-426, Oct. 15, 1990, 104 Stat. 920. More recently, Congress passed the SFC Richard Stayskal Military Medical Accountability Act of 2019 to permit active-duty military members to file claims for injuries caused by medical malpractice at DoD hospitals. *See* 10 U.S.C. § 2733a; 32 C.F.R. § 45.1, *et seq.*; Pub. L. 116-92, § 731(a)(1), Dec. 20, 2019, 133 Stat. 1198, 1457.

## II.    Factual Background[6]

### A.    Plaintiff's military service

Plaintiff alleges that he voluntarily enlisted in the U.S. Marine Corps (USMC) on

November 12, 1968, when he was 20 years old. Compl. ¶ 69. He trained with the USMC in

South Carolina for several months and arrived in Vietnam in July 1969. *Id.* ¶¶ 70-71. He served

in Vietnam for four months and in Okinawa, Japan, for ten months. *Id.* ¶¶ 71, 77, 80. The USMC

discharged Plaintiff almost two years after he enlisted, on September 15, 1970, with an

"Undesirable" discharge, also called a discharge "Under Other than Honorable" conditions. *Id.*

¶ 80.[7]

---

[6] Among other materials, Defendant cites to the allegations Plaintiff made in prior lawsuits, including *Monk v. Mabus*, No. 3:14-cv-260 (WWE) (D. Conn., filed Mar. 3, 2014) and *Black Veterans Project v. U.S. Dept. of Veterans Affairs*, No. 3:21-cv-935 (VLB) (D. Conn., filed July 8, 2021), and rulings in his prior lawsuits, including *Monk v. Wilkie*, No. 19-217, 2020 WL 2461722 (Vet. App. May 13, 2020). (To avoid confusion, Defendant generally refers to Plaintiff's various cases by their full case name, rather than with a short form title. Citations to the complaint in this case are preceded by this case's name, *Monk v. United States*, where necessary to avoid confusion.) The Court may take judicial notice of facts in such materials because their "accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Such materials are, further, integral to the complaint. In reviewing a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. Therefore . . . a defendant may introduce that document as part of a motion attacking the pleadings." *Spears v. Liberty Life Assur. Co. of Boston*, 885 F. Supp. 2d 546, 552 (D. Conn. 2012) (cleaned up).

[7] The United States Court of Appeals for Veterans Claims summarized Plaintiff's final nine months in the service as follows:

> Disciplinary problems began to arise in December 1969. He was cited and administratively punished for several offenses, such as being drunk and disorderly, willfully disobeying a lawful order, threatening a noncommissioned officer, and being absent without leave numerous times. Matters came to a head in August 1970, when three charges were preferred against him: being absent without leave on two separate occasions, attempted theft, and striking a petty officer. Rather than face trial by special court martial, Mr. Monk requested discharge for the good of the service. The request was granted and he received an "undesirable discharge," also called a discharge "under other than honorable conditions."

*Monk v. Wilkie*, 2020 WL 2461722, at *1.

Plaintiff alleges, in substance, that he was under duress when he decided to accept an "Undesirable" discharge rather than undergo a court-martial. *Id.* ¶ 78. Plaintiff alleges he was "spending time in base prison" in response to "two altercations" at the time he agreed to be discharged. *Id.* He alleges that he understood that by accepting the "Undesirable" characterization, he would be released from "stay[ing] in base prison," but did not understand, nor anticipate, the financial ramifications and allegedly stigmatizing effects of accepting an "Undesirable" discharge. *Id.* ¶¶ 78-79.

**B.    Plaintiff's unsuccessful, pre-diagnosis applications to the Navy for a discharge status upgrade and to the VA for benefits**

Plaintiff alleges that the Navy and the VA improperly denied multiple benefits applications, even though these applications were submitted and decided *before* he was formally diagnosed with PTSD in 2011. *See id.* ¶¶ 103-104.

Plaintiff first sought administrative relief from the VA within nine months of his September 1970 discharge in connection with an application related to Connecticut unemployment benefits. *Id.* ¶¶ 87-89. This application triggered a COD assessment by the VA to verify Plaintiff's benefits eligibility pursuant to his discharge status. The VA found that Plaintiff committed multiple offenses in service, decided to accept an undesirable discharge rather than stand trial by court-martial, and willingly signed a statement acknowledging that accepting an undesirable discharge could deprive him of any rights as a veteran under federal law. *Id.* ¶ 88. The VA determined that, given his willful and persistent misconduct, Plaintiff's discharge was issued "under dishonorable conditions," and Plaintiff was "not therefore entitled to any benefits administrated by the Veterans' Administration." *Id.*[8] Plaintiff did not appeal, nor does he allege

---

[8] In this March 1971 administrative decision, the VA cited "VA Regulation 1012(D)(4) (now codified at 38 C.F.R. § 3.12(d)(4)), which specified that 'benefits are not payable when a veteran is discharged or released from

*(Continued)*

he appealed, the VA Secretary's 1971 COD decision, and therefore the decision became final. *See id.*[9]

Around ten months after his discharge, in July 1971, Plaintiff applied to the Naval Discharge Review Board (NDRB), organized pursuant to 10 U.S.C. § 1553, to request a discharge upgrade. *Monk v. Mabus*, No. 3:14-cv-260 (WWE), Complaint ¶ 38, ECF No. 1 (D. Conn., filed Mar. 3, 2014). The NDRB denied this request. *Id.* In 1976, Plaintiff applied to the VA for education benefits, which were denied based on his COD determination. *Monk v. United States*, Compl. ¶ 91. Shortly after receiving this adverse decision, he applied to the BCNR to again request relief relating to his discharge. *Monk v. Mabus*, ECF No. 1 ¶ 38. And in April 1979, "he requested secretarial review" by the Secretary of the Navy "of the NDRB's adverse decision" relating to his discharge. *Id.* His applications to the NDRB and BCNR, and his request to the Secretary of the Navy, were denied. *Id.* Plaintiff subsequently sought veterans benefits from the VA several times over a span of decades; all such requests were submitted before he presented evidence of a PTSD diagnosis; and all were denied. *See Monk v. United States*, Compl. ¶¶ 93-94 (1982 application for disability compensation benefits for PTSD), ¶¶ 95-96 (1983 application for home loan benefits), ¶¶ 99-101 (2010 application for disability compensation for diabetes, diagnosed sometime after 2007 and before 2010).

---

active duty by reason of willful and persistent misconduct.'" *Monk v. Wilkie*, 2020 WL 2461722, at *1. "Given this regulation, and after reviewing service records, VA determined that Mr. Monk's request for discharge for the good of the service rather than stand trial was an admission of guilt of the charges listed. Those facts 'substantiate[d] a determination that the veteran was discharged under dishonorable conditions,' thereby disentitling him to VA benefits." *Id.* The VA consistently applied this regulation to Plaintiff's applications through 2010. *See, e.g.*, Compl. ¶ 101.

[9] Though he did not appeal, Plaintiff did ask the VA to reconsider its decision, which it declined to do in May 1971. Compl. ¶ 88.

C.     Plaintiff's successful, post-diagnosis applications to the Navy and the VA

Around September 2011, Plaintiff retained the services of the Veterans Legal Services Clinic at Yale Law School, which referred him to a psychiatrist. *Id.* ¶ 103. The psychiatrist concluded Plaintiff had a severe case of PTSD that arose from and existed during his military service in Vietnam. *Id.* ¶ 104; *see also Monk v. Wilkie*, 2020 WL 2461722, at *2 (quoting the psychiatrist's opinion that "Mr. Monk has [a] psychiatric disability that, at the time of the actions leading to his discharge, more likely than not caused a prolonged deviation from his normal behavior; caused him to interfere with the peace of society; and caused him to . . . depart from the accepted standards of the community.").

Starting in early 2012, Plaintiff used administrative processes—as provided by Congress—to present his new diagnosis to two federal agencies, the Navy's BCNR and the VA.

1.     Plaintiff receives relief from the BCNR.

In July 2012, Plaintiff applied to the BCNR to upgrade his discharge status, citing his new PTSD diagnosis. *Monk v. Mabus*, ECF No. 1 ¶ 40. In 2014, Plaintiff filed a federal purported class action lawsuit challenging, among other things, the BCNR's failure to act on his application. *Id.* ¶ 42. Among other relief, Plaintiff sought a court-ordered injunction requiring the Navy to upgrade his 1970 characterization of service (also referred to as his "discharge status") from "Undesirable" to "Honorable" or to "General (Under Honorable Conditions)." *See id.* at 37, Prayer for Relief 4; *see also id.* ¶¶ 12, 20, 23-42 (listing allegations against the Navy).[10]

---

[10] In his case against the Navy, Plaintiff claimed violations of the Administrative Procedure Act (Count IV), the United States Constitution Fifth Amendment (Count V), and Section 504 of the Rehabilitation Act of 1973 (Count VI). *Monk v. Mabus*, ECF No. 1 ¶¶ 186-203. Plaintiff alleged (and acknowledged) that the Navy's "determinations" not to upgrade his discharge status rendered him "generally disqualified from receiving [VA] benefits." *Id.* ¶ 41.

In late 2014, after DoD issued the Hagel Memorandum, the Court granted the agencies' request for voluntary remand, over Plaintiff's objections, and dismissed Plaintiff's lawsuit without ruling on the merits. *Monk v. Mabus*, ECF Nos. 40 (defendants' second motion to remand), 41 (plaintiffs' opposition), 42 (defendant's reply), 48 (order granting ECF No. 40 and dismissing case). In May 2015, the BCNR granted Plaintiff's administrative request to upgrade his application. *See Monk v. United States*, Compl. ¶ 106; *Monk v. Wilkie*, 2020 WL 2461722, at *2.

## 2. Plaintiff receives relief from the VA.

Also in early 2012, with his newly documented PTSD diagnosis and the assistance of current counsel, Plaintiff informally applied to the VA for benefits. *Monk v. Wilkie*, 2020 WL 2461722, at *1-2; *see also Monk v. United States*, Compl. ¶ 105. Plaintiff formally applied for disability compensation in September of 2012. *Monk v. Wilkie*, 2020 WL 2461722, at *2; *see also Monk v. United States*, Compl. ¶ 105. He asked the VA to rely on his new diagnosis to find: that his "other than honorable" discharge was not a benefits-disqualifying "dishonorable" discharge, under 38 U.S.C. § 101(2) and 38 C.F.R. § 3.12; or that he met the VA's standard for "insane" at the time of his discharge, which would render him eligible for benefits, 38 C.F.R. § 3.12(b). *Monk v. Wilkie*, 2020 WL 2461722, at *2. In the 2012 application, he sought disability compensation for PTSD, diabetes, and diabetic peripheral neuropathy in his arms and legs. *Monk v. United States*, Compl. ¶ 105. The VA considered the evidence of record, including its 1971 decision, and continued to find Plaintiff ineligible for benefits. *See id.* Plaintiff appealed. *Id.* ¶ 106.[11]

---

[11] This appeal appears to be the first appeal Plaintiff had ever taken of a VA decision pursuant to the VJRA. *See generally* Compl.

In September 2015, after the BCNR upgraded Plaintiff's discharge status (see above, Section II.C.1.), the VA "determined that the BCNR's decision conclusively set aside any bar to benefits based on the status of the veteran's discharge," and "immediately granted entitlement to VA healthcare, and undertook to grant compensation for any disability shown to be connected to service." *Monk v. Wilkie*, 2020 WL 2461722, at *2. Specifically, the VA granted Plaintiff's disability compensation request for PTSD with a 100% rating, as well as for diabetes and associated neuropathy, effective July 2012. *Monk v. United States*, Compl. ¶ 106. However, Plaintiff disagreed with the "effective date," because it did not date back to his February 2012 informal application for benefits. *Id.* ¶ 107. Plaintiff appealed his VA determination to the Board of Veterans' Appeals and then to the U.S. Court of Appeals for Veterans Claims. *Id.* ¶ 108. There, Plaintiff again argued that the status of his discharge was never a proper bar to benefits; and alternatively that his insanity during service permitted his receipt of benefits. *Monk v. Wilkie*, 2020 WL 2461722, at *3, 7, 8. The Court vacated the Board of Veterans' Appeals' decision and remanded for further factual development. *Id. at* *7; *see also Monk v. United States*, Compl. ¶ 108.

On remand, the Board of Veterans' Appeals found that Plaintiff met the criteria for "insanity" under 38 C.F.R. § 3.354 and held that his discharge (while now upgraded) should not have been considered a bar to benefits at the time he filed his informal claim for benefits in 2012. *In re Monk*, No. 20079020, 2020 WL 8912950, at *1 (Bd. Vet. App. Dec. 15, 2020); *see also Monk v. United States*, Compl. ¶ 109.

By 2020, the Board of Veterans' Appeals gave Plaintiff all the relief to which he was entitled under the VA's disability benefits scheme—retroactive benefits starting from the date of

his informal February 2012 application—as provided by Congress. 38 U.S.C. § 5110(a) (2012);

38 C.F.R. § 3.400(r). *See Monk v. United States*, Compl. ¶ 109.

### D.    Black Veterans Project's FOIA suit against the VA and analysis

In 2021, the National Veterans Council for Legal Redress (NVCLR) (which Plaintiff

directs) and Black Veterans Project (BVP) requested information from three components of the

VA, including the Veterans' Benefits Administration (VBA), pursuant to the Freedom of

Information Act (FOIA). *See Black Veterans Project v. U.S. Dept. of Veterans Affairs*, No. 3:21-

cv-935 (VLB), Complaint ¶ 23, ECF No. 1 (D. Conn., filed July 8, 2021).[12] NVCLR and BVP

requested records from 2001-2021. *See, e.g.*, *id.*, ECF No. 1-1 at 2-3 (request to VBA). From the

VBA, they requested data on disability claim decisions generally "broken down by the race and

gender of the veteran." *Id.*

Plaintiff alleges that in 2021, NVCLR, BVP, and their legal counsel had an academic

statistician perform an analysis of the VA records obtained through the FOIA request. *Monk v.

United States*, Compl. ¶¶ 2, 44. Plaintiff alleges that the statistician's analysis showed racial

disparities in VA claims outcomes between 2001 to 2020. *Id.* ¶¶ 2, 7, 44-48.

### III.    The Complaint

Plaintiff filed his complaint on November 28, 2022. Complaint, ECF No. 1. The

complaint alleges three counts of negligence against the United States pursuant to the FTCA. *Id.*

¶¶ 136-152. Plaintiff brings claims for negligence, negligent infliction of emotional distress, and

---

[12] Here, Plaintiff alleges that "additional records possessed by VA and not yet publicly disclosed" support his allegations in this case. *Monk v. United States*, Compl. ¶ 49. However, BVP and NVCLR withdrew their FOIA suit after they received fulsome productions and confirmed that the VA had satisfied its FOIA obligations regarding their requests. *BVP*, Joint Status Report at 1, ECF No. 52 (filed June 13, 2022). Plaintiffs did not litigate any issue with respect to the VBA's production of disability claims data. *See id.*; *BVP*, Pls' Mem. of L. in Opp. to Def.'s Mot. for Summ. J. at 2, ECF No. 37 (filed Apr. 1, 2022). Plaintiff does not explain the basis for his statement in paragraph 49 of the complaint in this case.

negligent supervision. *Id.* ¶ 11. He alleges that various emotional, financial, and reputational harms flowed from the VA's 1971 COD finding and subsequent benefits denials. *Id.* ¶¶ 111-124; *see* Section II.B, above. Nevertheless, he alleges that he "seeks not to relitigate" the "1971 COD determination and specific benefits denials, but rather to hold VA accountable for its illegal, tortious, and racially discriminatory administration of benefits." Compl. ¶ 129.

Plaintiff claims the VA's breach of its alleged duties caused him emotional harm, dignitary and reputational harm, financial hardship, and difficulty accessing medical care. *Id.* ¶ 10. Plaintiff presented his administrative tort claim to the VA on February 25, 2022. *Id.* ¶ 133. Plaintiff seeks $1,000,000 in damages. Joint Report of FRCP 26(f) Conf. at 3, ECF No. 19 (Statement of Undisputed Facts #3). The United States of America now moves to dismiss this case.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction." *See Gunn v. Minton*, 568 U.S. 251, 256 (2013). A party cannot waive a defect to subject matter jurisdiction. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3); *see also Gionfriddo v. Salaf*, 343 F. Supp. 2d 109, 110 (D. Conn. 2004) ("If a court concludes that it does not have subject matter jurisdiction, it must dismiss the case.").

A "district court must take all uncontroverted facts in the complaint [] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional

facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings. . . ." *Id.* Thus, the court may base its consideration of subject matter jurisdiction on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993) (recognizing that the trial court may dismiss "on the basis of the complaint alone or the complaint supplemented by undisputed facts evidenced in the record"); *see also Rukoro v. F.R.G.*, 976 F.3d 218, 224 (2d Cir. 2020) (affirming the dismissal of a case pursuant to Rule 12(b)(1) and confirming that the district court properly relied on undisputed facts to determine subject matter jurisdiction).

Here, subject matter jurisdiction is clearly lacking based on the complaint alone. However, on a fact-based challenge to subject matter jurisdiction, a defendant can proffer evidence beyond the plaintiff's pleading.[13] *Carter*, 822 F.3d at 57; *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (holding that the court may refer to evidence outside of the pleadings in considering subject matter jurisdiction). In opposition to such a motion, the plaintiffs may "come forward with evidence of their own to controvert that presented by the defendant," or may instead "rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial . . . ." *Carter*, 822 F.3d at 57; *see also Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). "The party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243 (citing *Makarova*, 201 F.3d at 113).

---

[13] Here, Defendant has cited to materials from other lawsuits including, *e.g.*, Plaintiff's allegations in other federal court complaints and statements in the briefs his organization submitted in the *BVP* FOIA suit. *See* note 6, above.

**ARGUMENT**

The United States is immune from liability absent its consent, and the terms of that consent define the Court's jurisdiction to entertain a suit against the United States. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016). Because the doctrine of sovereign immunity is jurisdictional, the plaintiff bears the burden of establishing that his claims fall within an applicable waiver. *Meyer*, 510 U.S. at 475; *Makarova*, 201 F.3d at 113. Plaintiff has failed to prove that the United States' sovereign immunity has been waived by Congress through the VJRA or the FTCA, or through any other waiver, and even if there were an applicable waiver here, Plaintiff's claim would be untimely and barred by preclusion principles. His complaint therefore must be dismissed.

I.    **This Court lacks jurisdiction pursuant to the Veterans' Judicial Review Act.**

The complaint should be dismissed for lack of subject matter jurisdiction because the VJRA, 38 U.S.C. § 511, prohibits individuals from disputing their benefits determinations, or VA decisions affecting those determinations, in Federal District Courts. Plaintiff's claims in this lawsuit are inextricably intertwined with benefits-related decisions he received over the decades since his discharge. Characterizing this dispute as an FTCA action does not create subject matter jurisdiction where the Court would be required to analyze the appropriateness of those VA benefit decisions to determine liability and would be required to calculate forgone benefits in order to provide monetary relief.

A.    **The VJRA provides an exclusive jurisdictional process over questions affecting provision of benefits.**

The VJRA provides in pertinent part that the "Secretary [of Veterans Affairs] shall decide *all questions of law and fact* necessary to a decision by the Secretary under a law *that affects the provision of benefits* by the Secretary to veterans." 38 U.S.C. § 511(a) (emphasis added). Under

18

the VJRA, the Secretary's decisions may only be appealed to the Board of Veterans' Appeals (an entity within VA), whose decisions may be appealed to the Court of Appeals for Veterans Claims, then to the Court of Appeals for the Federal Circuit, and finally to the Supreme Court. *See* 38 U.S.C. §§ 7104, 7252, 7292. Federal District Courts are expressly excluded from this process. *See* 38 U.S.C. § 511(b); *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994). This "scheme of review for veterans' benefit claims provides meaningful remedies in a multitiered and carefully crafted administrative process," which is "designed to (1) ensure that benefits claims will not burden the courts and the VA with litigation, and (2) promote the adequacy and uniformity of complex veterans' benefits decisions." *Sugrue*, 26 F.3d at 11-12. Plaintiff is familiar with this process and, in fact, has successfully pursued it. After Plaintiff obtained an upgrade of his discharge status in 2015, his PTSD claim was reopened and he was granted disability compensation for PTSD with a 100% rating. Compl. ¶ 106. Then, Plaintiff challenged the "effective date" that the VA assigned to his benefits at the Board of Veterans' Appeals, leading to an appeal to the Court of Appeals for Veterans Claims and a ruling in his favor (*i.e.*, retroactive benefits to the date he desired) on remand. *Id.* ¶¶ 107-109.

Numerous circuits have made clear that, pursuant to this statutory scheme, there is no subject matter jurisdiction in district court over claims that involve questions of fact or law relating to veterans' benefits. *See Sugrue*, 26 F.3d at 12; *King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 414 (5th Cir. 2013);*Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025 (9th Cir. 2012); *Dambach v. United State*s, 211 F. App'x 105, 108 (3d Cir. 2006); *Price v. United States*, 228 F.3d 420, 421 (D.C. Cir. 2000); *Beamon v. Brown*, 125 F.3d 965, 974 (6th Cir. 1997); *Hicks v. Veterans Admin.*, 961 F.2d 1367, 1369 (8th Cir. 1992). This is true even where a plaintiff attempts to frame what is at heart a benefits dispute as another cause of action.

*Sugrue*, 26 F.3d at 11 ("Although Sugrue's complaints invoke provisions of the Fifth

Amendment and are styled in part as constitutional actions, the courts do not acquire jurisdiction

to hear challenges to benefits determinations merely because those challenges are cloaked in

constitutional terms . . . . Similarly, neither the Privacy Act nor the FOIA may be used as a

rhetorical cover to attack VA benefits determinations. . . ."); *Larrabee by Jones v. Derwinski*,

968 F.2d 1497, 1501 (2d Cir. 1992) (distinguishing facial attacks against legislation affecting

veterans from "other constitutional and statutory claims" relating to benefits, over which district

courts do not have jurisdiction).

District courts in the Second Circuit have applied this principle in a variety of contexts.

*See Schwingle v. United States*, No. 20-cv-6394 CJS, 2022 WL 9462632, at \*6 (W.D.N.Y., Oct.

14, 2022) ("[L]itigants cannot avoid Section 511(a) by dressing up what are really benefits

claims as constitutional claims or other types of claims for which the Government may have

waived sovereign immunity."); *Carroll v. United States*, No. 1:19-cv-1230 (GTS/DJS), 2020 WL

4284130, at \*6 (N.D.N.Y., July 27, 2020) ("[I]n the Second Circuit, styling a veterans' benefits

claim as a deprivation-of-property claim is insufficient to circumvent the bar on judicial

reviewability where that claim essentially amounts to a challenge of the denial of benefits or of

any other decision made by the Agency in connection with that benefits adjudication."); *Conyers*

*v. United States*, No. 16-cv-2816 (JFB) (SIL), 2018 WL 1157754, at \*6-8 & n.3 (E.D.N.Y., Jan.

31, 2018) (Report and Recommendation holding that plaintiff's negligence-based claims were

"rhetorical cover" for his actual dispute—the denial of his self-employment assistance benefits),

*adopted by* 2018 WL 1157823 (E.D.N.Y., March 2, 2018); *Majid v. Dova Med. Ctr.*, No. 13-cv-

2958 (CBA), 2013 WL 3766559, at \*2 (E.D.N.Y., July 11, 2013) ("A veteran's invocation of

alleged discriminatory treatment or other constitutional claim does not overcome 38 U.S.C.

§ 511(a)'s limitations on federal court review."); *Philippeaux v. United States*, No. 10 Civ. 6143 (NRB), 2011 WL 4472064, at *6 (S.D.N.Y., Sept. 27, 2011) ("plaintiff cannot overcome the jurisdictional bar of Section 511 by reframing his claim in constitutional terms. The statute encompasses all claims, whatever their basis, as long as they are 'necessary to a decision by the Secretary under a law that affects the provision of benefits'") (quoting 38 U.S.C. § 511(a)).

**B.    Generally, courts find they lack jurisdiction over FTCA claims that require the court to make determinations relating to veterans' benefits.**

Where an FTCA claim may involve questions relating to veterans' benefits, the D.C. Circuit has adopted a test to determine whether subject matter jurisdiction exists: if "a determination [of] whether the VA acted in bad faith or with negligence would require the district court to determine first whether the VA acted properly in handling" plaintiff's benefits claim, judicial review is foreclosed by 38 U.S.C. § 511(a). *Price*, 228 F.3d at 421. District Courts in the Second Circuit have repeatedly applied the *Price* test in dismissing FTCA actions for lack of subject matter jurisdiction because the purported injuries are inextricably intertwined with benefits determinations.[14] In *Schwingle*, a veteran brought an FTCA claim based on the VA's allegedly negligent failure to process his application for disability benefits. 2022 WL 9462632, at *2. The court held that "it is well-settled that the United States has established the VJRA, and not the FTCA, as the exclusive statutory scheme under which to seek judicial review of claims involving veterans' benefits." *Id.* at *5. Similarly, in *Philippeaux*, a veteran brought claims for intentional or negligent infliction of emotional distress due to an allegedly falsified medical report, leading to denial of benefits. 2011 WL 4472064, at *1. Like Plaintiff here, the

---

[14] The Second Circuit has not expressly addressed this framework; however, as discussed herein, multiple courts within the Circuit "have utilized it in addressing FTCA claims. . . . Further, the Second Circuit has addressed the use of the purported constitutional or statutory violations as a disguised collateral attack on a benefits determination." *Conyers*, 2018 WL 1157754, at *7 n.1.

*Philippeaux* plaintiff alleged that this caused him mental and emotional injury, physical pain and suffering, and homelessness. The court dismissed the case because "evaluation of these claims would necessitate a consideration of the decision to deny his benefits." *Id.* at *9. And in *Conyers*, where the plaintiff alleged FTCA violations relating to the Government's refusal to provide self-employment assistance benefits, the court held that the plaintiff "impermissibly engage[d] in a collateral attack" on the VA's benefits determination and the "analysis behind its determination." 2018 WL 1157754, at *8.

### C.    Plaintiff's claims here must be dismissed because they would require the Court to make benefits-related determinations.

Plaintiff asks the Court to do exactly what the *Price* test says Section 511 prohibits—"determine if the VA acted properly in handling [his] benefits claim[s]." *Schwingle*, 2022 WL 9462632, at *9. Plaintiff's entire complaint is premised upon allegations that the VA "improperly denied Mr. Monk's applications for education, housing, and disability benefits" over a course of decades. Compl. ¶¶ 5, 87-124. Although styled as an FTCA action, the complaint centers on questions of fact and law relating to benefits, including whether the "VA's negligence caused Mr. Monk to be denied veterans' benefits to which he was entitled." *Id.* ¶ 112. The Court could not hold that the VA acted discriminatorily with respect to Plaintiff without first analyzing the VA's process and decision-making regarding Plaintiff's benefits claims. The Court has no subject matter jurisdiction to address these questions.[15]

---

[15] To the extent Plaintiff is challenging his original discharge on the basis that it was the result of racial discrimination, that discharge decision was not issued by the VA. *See* Background Section II.A., above. The VA is required to consider discharge status when making a COD determination for purposes of assessing entitlement to benefits. 38 U.S.C. § 101(2); 38 C.F.R. § 3.12. Because Plaintiff presented his FTCA administrative claim to the VA and his claims are premised on negligence, negligent infliction of emotional distress, and negligent supervision by VA leaders and staff only, Plaintiff's original discharge by his service organization is not at issue here. Further, any FTCA claim alleging that the original discharge or failure to upgrade that discharge was the result of racial discrimination would be time-barred. Plaintiff successfully obtained an upgrade to his discharge status in September 2015. *See Monk v. United States*, Compl. ¶ 106. Before that time, Plaintiff filed a purported class action in this Court

*(Continued)*

Plaintiff's alleged damages are similarly derived from his claimed entitlement to veterans' benefits. Plaintiff claims that "[d]ue to [the VA's] benefits obstruction, [he] was denied hundreds of thousands of dollars' worth of education, housing, and disability compensation." Compl. ¶ 140; *see also id.* ¶ 113. In order to award the monetary relief Plaintiff seeks, the Court would necessarily have to assess both whether the VA negligently denied Plaintiff benefits and, if so, the amounts of benefits he should have received. These are questions exclusively reserved for the Secretary under the VJRA. *See Sugrue*, 26 F.3d at 11 (no subject matter jurisdiction where complaint alleging Fifth Amendment violations based on the VA's denial of a certain level of benefits sought to "place plaintiff in the position he would have occupied but for the . . . unlawful acts and conduct of [the VA] and make him whole"); *Conyers*, 2018 WL 1157754, at *8 (although plaintiff argued he "has not pleaded the loss of benefits as damages," his allegations "essentially challenge the decision-making of the Government, including how it chose and weighed evidence before it, which is outside the scope of this Court's judicial review.").

Furthermore, Plaintiff cannot avoid the provisions of the VJRA through artful pleading. Although Plaintiff repeatedly disclaims any interest in "relitigat[ing] his individual benefits requests" and instead challenges the VA's alleged "racially discriminatory administration of benefits" generally, Compl. ¶¶ 9, 129, the fact remains that Plaintiff seeks *individual* relief based

---

in March 2014 in which he and other plaintiffs alleged that "African American servicemembers faced systemic discrimination and received disproportionate punishment, including in their discharge statuses." *Monk v. Mabus*, ECF No. 1 ¶¶ 29, 195 (claiming violations of the Fifth Amendment due to the military's "refus[al] to upgrade their discharge statuses, which resulted from Vietnam Era discharge practices that had both a racially discriminatory impact and a racially discriminatory purpose"). Therefore, any claim that Plaintiff's discharge or failure to receive a discharge upgrade was the result of racial discrimination clearly accrued, at the latest, by March 3, 2014. *See* Argument Section III, below. This is well outside the two-year statute of limitations for FTCA claims. 28 U.S.C. § 2401(b). Finally, even assuming that Plaintiff's original discharge was at issue and not time-barred, any FTCA claim based on his discharge would fail for the separate reason that the *Feres* doctrine prohibits such claims. *See Feres*, 340 U.S. at 141; *Torres v. United States*, 621 F.2d 30, 31-32 (1st Cir. 1980) (serviceman's FTCA claim for wrongful dishonorable discharge was *Feres* barred); *Vesely v. United States*, 868 F.2d 1277 (Fed. Cir. 1989) (*Feres* barred former military medical resident's FTCA suit alleging improper discharge from military service based upon poor performance evaluations).

on the allegedly improper denial of his *individual* benefits requests. This is not obviated by allegations of systemic racial disparities, a "perception of racial discrimination within the VA benefits system," or a broader pattern of discriminatory administration of benefits. *See id.* ¶¶ 52, 58, 119. Other courts addressing this issue have held that allegations of disparate treatment in administration of benefits fall within the exclusive jurisdiction of the VJRA. *Walton v. Sec'y Veterans Admin.*, 187 F. Supp. 3d 1317, 1326 (N.D. Ala. 2016) (where plaintiff alleged that "racial disparity played into the decisions affecting his benefits," the court lacked jurisdiction because the "claim for unequal treatment concerns, in substance, the handling of Plaintiffs' benefits claims."); *Rosario Gonzalez v. United States*, 898 F. Supp. 2d 410, 429 (D.P.R. 2012) ("Plaintiffs cannot circumvent the exclusive [] procedures or the restrictions of [the VJRA] by purporting to challenge systemic defects in VA programs or practices as distinguished from discrete VA actions or decisions."), *vacated on other grounds by* 544 F. App'x 5 (1st Cir. 2013); *Cheves v. Dep't of Veterans Affairs*, 227 F. Supp. 2d 1237, 1246 (M.D. Fla. 2002) (no subject matter jurisdiction where plaintiff alleged that the VA treated African American veterans differently than similarly situated white veterans by compensating only white soldiers for their service in Chemical Warfare Units because, under the VJRA, the court "simply lack[ed] jurisdiction to review the VA's handling and processing of the plaintiffs' benefits claims.").

 *Conyers*, in which the plaintiff brought FTCA claims for negligence and negligent hiring, training, and retention, among other claims, is instructive. 2018 WL 1157754, at *8. Like Plaintiff, Conyers spent numerous pages in his pleading listing concerns related to his self-employment benefits determination, including allegations that the VA erred in relying on certain information and failed to correct discrepancies in reaching its decision. *Compare Conyers*, 2018 WL 1157754, at *1, *with* Compl. ¶ 89 (alleging that the VA's COD determination for purposes

of assessing Plaintiff's benefits "was flawed because it relied exclusively on a finding that Mr. Monk voluntarily signed his discharge papers"). Also like Plaintiff, Conyers "attempt[ed] to distinguish his allegations as unrelated to his benefits determination" and stated that he only sought relief afforded under the FTCA. 2018 WL 1157754, at *8; Compl. ¶¶ 9, 129. The court in *Conyers* nevertheless concluded that plaintiff's "purported personal injuries [were] inextricably intertwined with the denial of . . . benefits," and dismissed Conyer's claims as prohibited by the VJRA. 2018 WL 1157754, at *8-9 (adopted by *Conyers*, 2018 WL 1157823, at *1). This Court should reach the same conclusion.

Notably, Plaintiff is familiar with, and has previously used, the VJRA process. As alleged in the complaint, Plaintiff obtained benefits retroactively from the date on which he first presented evidence of his PTSD to the VA by availing himself of the application and appellate process that Congress provided in the VJRA. Compl. ¶¶ 105-110. This Court is not the proper forum to further litigate those or any other benefits disputes. Plaintiff's FTCA claims should be dismissed because they inherently involve questions of fact and law concerning his veterans' benefits, and the Court therefore lacks subject matter jurisdiction.

## II.    This Court lacks subject matter jurisdiction because Congress has not waived immunity under the FTCA for Plaintiff's claim.

Plaintiff has failed to show that Congress waived the United States' sovereign immunity for his claims under the FTCA. "When an action is brought against the United States government, compliance with the conditions under which the government has agreed to waive sovereign immunity is necessary for subject matter jurisdiction to exist." *Williams v. United States*, 947 F.2d 37, 39 (2d Cir. 1991).

The FTCA, by its express terms, provides only a limited sovereign immunity waiver for specific kinds of lawsuits. The Supreme Court has recognized that the FTCA's effect is to

"waive immunity from recognized causes of action" but "not to visit the Government with novel and unprecedented liabilities." *Feres*, 340 U.S. at 142; *see also United States v. Olson*, 546 U.S. 43, 44 (2005); *Richards v. United States*, 369 U.S. 1, 7 (1962). 28 U.S.C. § 2674 provides that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." Thus, pursuant to 28 U.S.C. §§ 1346(b)(1) and 2674, the only claims that fall within the FTCA's purview are those where a private person in like circumstances would be subject to liability. "The FTCA does not create new causes of action, but only waives immunity under circumstances that would create liability in the same manner and to the same extent as a private individual under like circumstances." *Dorking Genetics*, 76 F.3d at 1266 (quoting 28 U.S.C. § 2674) (cleaned up); *see also Carter v. United States*, 494 F. App'x 148, 149 (2d Cir. 2012) (reversing district court's finding that plaintiffs satisfied the private analogue requirement and noting that plaintiffs were asking the court to recognize and apply against the United States a "new tort" never before recognized under New York law).

Thus, the FTCA only waives sovereign immunity if the plaintiff's cause of action is "comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred." *McGowan*, 825 F.3d at 125 (internal quotation marks omitted). This "private analogue" requirement asks "whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Id.* Plaintiff fails to meet his burden to allege an actionable private analogue for his claims. Because Plaintiff cannot show any like circumstances under which a private actor would be liable under Connecticut law, his FTCA claims fail for lack of subject matter jurisdiction.

26

A.    **Quasi-adjudicative government functions, such as the VA's decisions in this case, have no private analogue.**

Plaintiff cannot carry his burden to establish that a private analogue exists under state law because the VA's administration of its benefits program is quasi-adjudicative. Courts in this Circuit have repeatedly held that when the government conduct at issue is quasi-legislative or quasi-adjudicative, as here, no private analogue exists. *See Klopp v. United States*, 131 F.3d 131, 1997 WL 774397, at *3 (2d Cir. 1997) (unpublished table decision) (finding no private analogue where "claims arise from alleged negligent violations of the ministerial duties of federal court clerks"); *Akutowicz*, 859 F.2d at 1125-26 (noting that quasi-legislative and quasi-adjudicative actions by an agency of the federal government are the type of actions for which a private person cannot be held liable); *C.P. Chem. Co. v. United States*, 810 F.2d 34, 37 (2d Cir. 1987) ("[A]s to certain governmental functions, the United States cannot be held liable, for no private analog exists."); *Ojo v. United States*, No. 20-cv-4882 (MKB), 2022 WL 4091011, at *2, 4 (E.D.N.Y. Sept. 6, 2022) (finding no private analogue where the Treasury Offset Program withheld plaintiff's settlement funds to satisfy a restitution order); *Peruta v. United States*, No. 3:16-cv-2112 (VLB), 2018 WL 995111, at *3-4 (D. Conn. Feb. 21, 2018) (finding that the plaintiff failed to establish a private analogue under state law for the VA's alleged failure to properly administer benefits); *Storms v. United States*, No. 13-cv-811 MKB, 2015 WL 1196592, at *19-20 (E.D.N.Y. Mar. 16, 2015) (finding no private analogue because the plaintiffs' negligence and intentional infliction of emotional distress claims were based on the quasi-adjudicative action of an agency); *Figueroa v. United States*, 739 F. Supp. 2d 138, 141-42 (E.D.N.Y. 2010) (finding no private analogue for negligent issuance of a passport, noting that "[o]ften, action with no private analog[ue] falls into the category of either the 'quasi-legislative' or 'quasi adjudicative' action of an agency").

27

Here, the challenged government function is quasi-adjudicative. The facts are similar to *Akutowicz*, 859 F.2d at 1125-26, which addressed the Department of State's revocation of plaintiff's citizenship. In *Akutowicz*, the Second Circuit first recognized the general rule that quasi-legislative and quasi-adjudicative actions by an agency of the federal government are the type of actions for which a private person cannot be held liable. *Id.* at 1125. In applying this principle to the facts of the Department of State's citizenship determinations, the Second Circuit held that "the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists." *Id.* at 1125-26. The Second Circuit noted that the parties had not raised any analogous private cause of action and stated that "[e]ven if we were willing to analogize the relationship between the government and its citizens with that between a private association and its individual members, we would be hard pressed to find 'a cause of action *in tort*' for alleged misconduct by the association." *Id.* (citation omitted; emphasis in original). Like the Department of State in *Akutowicz*, the Secretary of Veterans Affairs was tasked with administering government services, and Plaintiff has not alleged any private analogue for liability under state law. *See also Peruta*, 2018 WL 995111, at *3-4 (dismissing FTCA claim based on provision of VA benefits for lack of private analogue).

There is no private analogue because the challenged conduct is quasi-adjudicative. Therefore, Plaintiff's claims fail.

**B.     The complaint does not identify a private analogue because it refers to only generalized torts, unmoored to any specific private duty.[16]**

Plaintiff's complaint recites the elements of three recognized causes of action but does not identify any analogous causes of action under "like circumstances." Rather than accept

---

[16] Plaintiff has alleged that Connecticut law supplies the substantive law of this case. *See* Compl. ¶¶ 137, 142, 149. Plaintiff alleges he was living in Connecticut at the time his applications were denied. *Id.* ¶¶ 5, 13-14, 87, 95. The United States therefore assumes that the correct "place" providing the relevant law is Connecticut.

Plaintiff's general characterizations regarding the elements of the torts alleged, the FTCA requires that the Court "look to the *conduct forming the basis of the claim against the federal government* to determine whether there is an analogy that can be drawn between that conduct and conduct which could form the basis of a cause of action." *Storms*, 2015 WL 1196592, at \*19 (emphasis added; cleaned up) (rejecting plaintiff's characterization of their claims as sounding in intentional infliction of emotional distress and negligence).

Merely invoking "negligence" fails to allege "like circumstances," and therefore fails to allege a private analogue. *See Appleton v. United States*, 180 F. Supp. 2d 177, 182 (D.D.C. 2002) (applying D.C. law) (dismissing FTCA claim for lack of private analogue and noting that to "allege negligence, a complaint cannot merely make conclusory assertions but must specify a negligent act and characterize the duty whose breach might have resulted in negligence"). Similarly, merely invoking the term "duty," without alleging any Connecticut law that charges a private defendant with the same duty, fails to allege a private analogue. "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." *Lawrence v. O&G Indus., Inc.*, 319 Conn. 641, 649 (2015) (affirming ruling that defendant owed no duty to plaintiffs who suffered only economic injury). "Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached." *Raspberry Junction Holding, LLC v. Se. Conn. Water Auth.*, 340 Conn. 200, 210 (2021) (cleaned up). Thus, merely incanting "duty, breach, causation, damages" does not state a tort claim under Connecticut law and the FTCA where no non-federal duty can be pleaded.

Plaintiff did not specify any non-federal duties in his "negligence" count; and Plaintiff did not analogize his relationship with the VA to any relationship between two private people. For example, Plaintiff alleges that the VA was negligent by failing to make "a concerted effort to identify and correct for" racial discrepancies in the service branches' discharge decisions. Compl. ¶ 58. But he has not alleged any "like circumstances" in Connecticut where a private actor is charged with taking action to mitigate harms flowing from another actor's conduct. As another example, Plaintiff alleges that "auditing [] and record-keeping practices implemented by VA leaders" caused him harm. *Id.* ¶ 52. But he has not alleged any "like circumstances" where a private actor has a duty in tort to audit and keep records.

His second and third counts, alleging negligent infliction of emotional distress and negligent supervision, likewise fail to allege that his relationship with the VA is similar to any relationship between a private plaintiff and defendant where Connecticut tort law recognizes claims for negligent infliction of emotional distress or negligent supervision.

Because Plaintiff failed to allege "like circumstances" for which Connecticut recognizes a cause of action, there is no basis to conclude that the denial of Plaintiff's benefits applications is an issue actionable under state law.

### C.    The FTCA looks to state law to determine the "law of the place"; federal law cannot provide the "law of the place."

Nor can Plaintiff base his FTCA claim on alleged violations of federal, as opposed to state, law. The FTCA's marshaling of the "law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), refers exclusively to state law. *See Meyer*, 510 U.S. at 478; *Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021); *Shade v. Hous. Auth. of City of New Haven*, 251 F.3d 307, 314-315 (2d Cir. 2001) (affirming summary judgment for the United States where plaintiffs failed to allege a private analogue under Connecticut law). Violations of the United

States Constitution, federal statutes, or federal regulations do not confer liability under the "law

of the place." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988); *see also Dorking

Genetics*, 76 F.3d 1261, 1266 (2d Cir. 1996) ("The FTCA's 'law of the place' requirement is not

satisfied by direct violations of the Federal Constitution or of federal statutes or regulations

standing alone.") (citing *Chen*, 854 F.2d at 626).

Courts in the Second Circuit have uniformly held that the FTCA jurisdiction does not

extend to a plaintiff who bases his tort claim on the agency's failure to follow its own

regulations, because those regulations are not state law. *McGowan*, 825 F.3d at 127 (dismissing

claim "grounded solely on the government's failure to follow applicable regulations"); *Dorking

Genetics*, 76 F.3d at 1266 (finding federal statute prohibiting the export of diseased cattle could

not undergird FTCA claim); *Chen*, 854 F.2d at 626 (rejecting FTCA claim based on alleged

violations of federal regulations); *Akutowicz*, 859 F.2d at 1125 ("The FTCA does not extend to

conduct governed exclusively by federal law") (internal punctuation omitted); *Fiore v. Medina*,

No. 11-cv-2264, 2012 WL 4767143, at *8 (S.D.N.Y. Sept. 27, 2012) (finding no private

analogue for negligence claim based on failure to provide notice of prison rules and regulations).

A federal statute or regulation that speaks only to the government's conduct, therefore, cannot be

read to impose state tort law duties upon private persons. *See Tindall v. United States*, 901 F.2d

53, 56 n.8 (5th Cir. 1990) ("[A] federal regulation cannot establish a duty owed to the plaintiff

under state law.").

In his complaint, Plaintiff alleges only that the government breached federal laws and

regulations regarding veterans' benefits. Those statutes and regulations cannot support an FTCA

claim. For example, Plaintiff alleges that VA leadership "breached its statutory duty of care

under 38 U.S.C. § 303 (2018) and 38 U.S.C. § 210(b) (1958)." Compl. ¶ 8, 35-40. He alleges

that "[f]ederal law imposes a duty of care on the VA Secretary." *Id.* ¶ 138. He claims that "VA Administrators and Secretaries, and other senior officials, breached this duty when through training, supervision, auditing, record-keeping, and other measures, they failed to redress longstanding, pervasive race discrimination and disparate impacts of which they knew or should have known." *Id.* ¶ 139. Without citing any non-federal statute, Plaintiff alleges that "VA leadership's negligent supervisions of VA managers and adjudicators violated their *statutory duty to ensure the proper execution of VA laws*." *Id.* ¶ 152 (emphasis added).

The statutes and regulations governing VA benefits are federal law. Section 511 of Title 38 of the United States Code confers on the Secretary of Veterans Affairs the obligation to "decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." This provision extends to the VA's decisions on disability, home loan, and education benefits, the three types of benefits Plaintiff sought from the VA. *See* Compl. ¶ 143; *see also* 38 U.S.C. §§ 1110 & 1131 (disability compensation), 3461 (education), 3702 (housing loans). Section 511 also covers the decision-making process respecting other VA benefits. *See, e.g.*, *Peruta*, 2018 WL 995111, at *3-4 (dismissing FTCA claim challenging VA's (withdrawn) denial of "fee basis status" benefit for lack of private analogue). Plaintiff has also failed to allege that Connecticut recognizes a freestanding duty to abide by private regulations. *See Watson v. United States*, 865 F.3d 123, 134-35 (2d Cir. 2017) (finding New York did not recognize such a duty and dismissing FTCA claim); *McGowan*, 825 F.3d at 127 (same).

The FTCA provides Plaintiff no recourse because his tort claim is based on alleged violations of federal law, rather than state law.

**III.    Plaintiff's claims are untimely.**

Plaintiff's complaint should be dismissed on the separate basis that it is untimely. Under the FTCA, a claimant must present his tort claim administratively to the appropriate federal agency "within two years after such claim accrues" or it "shall be forever barred." 28 U.S.C. § 2401(b); *Kronisch v. United States*, 150 F.3d 112, 120-21 (2d Cir. 1998). As set out in the complaint, Plaintiff presented his administrative tort claim to the VA on February 25, 2022. Compl. ¶ 133. Regardless of the accrual standard applied, Plaintiff's claims accrued, at the latest, in March of 2014, nearly eight years before he submitted his administrative claim in February of 2022. Indeed, Plaintiff sought the assistance of legal counsel regarding his benefits no later than 2011, and in a 2014 action made a number of allegations that are strikingly similar to those presented in the instant complaint.

**A.    Accrual of the statute of limitations in FTCA actions is measured by an objective, not subjective, standard.**

Generally, an FTCA claim accrues at the time of injury. *United States v. Kubrick*, 444 U.S. 111, 119-20 (1979). However, where a plaintiff would "reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted," a "diligence-discovery" rule of accrual applies. *Kronisch*, 150 F.3d at 121. The diligence-discovery rule "is not an exacting requirement." *Id.* It requires only "knowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." *Id.* (quoting *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y. 1987)). A plaintiff need not know every relevant fact of his injury or even that the injury was inflicted negligently or implicates a legal claim. *Id.*; *Kubrick*, 444 U.S. at 123 (accrual of an FTCA claim does not "await awareness by the plaintiff that his injury was negligently inflicted"). Rather, "a claim will accrue when the plaintiff knows, or should know, enough of the

critical facts of injury and causation to protect himself by seeking legal advice." *Kronisch*, 150

F.3d at 121; *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011). Whether a

plaintiff "should have known" these critical facts is decided by reference to "whether a

reasonable person exercising due and reasonable diligence would have discovered such facts."

*Guccione*, 670 F. Supp. at 536 (citing *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir.

1982)). Thus, while a "mere hunch, hint, suspicion, or rumor of a claim" does not cause accrual,

"such suspicions do give rise to a duty to inquire into the possible existence of a claim in the

exercise of due diligence." *Kronisch*, 150 F.3d at 121.

### B.      Plaintiff's injuries accrued more than two years prior to the submission of his administrative claim.

Regardless of whether the Court applies the usual accrual rule or the diligence-discovery

rule, Plaintiff's claims are untimely.

*First*, his claims are clearly untimely to the extent they accrued at the time of injury.

Plaintiff alleges that he was injured by the VA's administration of housing, education, and

disability benefits. Specifically, he details repeated denials of benefits requests over the decades

since his service, starting in 1971. Compl. ¶¶ 87-110. The last of these alleged injuries occurred

no later than 2015, when the VA granted Plaintiff full disability benefits but assigned an

effective date to the benefits that Plaintiff then successfully challenged. Plaintiff was aware of

these denials and that they had been issued by the VA at the time of occurrence. An FTCA

administrative claim filed in 2022 is clearly well outside the applicable two-year statute of

limitations for even the most recent of Plaintiff's alleged injuries—and indeed, is decades late for

many of his benefits denial grievances.

*Second*, the diligence-discovery rule does not revive Plaintiff's untimely claims. Plaintiff

appears to invoke the rule, alleging that "Mr. Monk did not know, and had no way of knowing,

about the racial disparities in VA's administration of benefits until the [FOIA] records were disclosed and analyzed in 2021." *Id.* ¶ 128. As an initial matter, there is no reason to apply the diligence-discovery rule here, where the fact of Plaintiff's injuries (denial of access to benefits) and cause of Plaintiff's injuries (adverse decisions by the VA) were known at the time of infliction. However, even applying this rule, Plaintiff was aware of the critical facts of his injury and its cause well before February 25, 2020.

Since no later than September 2011, Plaintiff was sufficiently aware of the critical facts (*i.e.*, the VA's denials of Plaintiff's benefits applications, resulting in Plaintiff being unable to access various types of veterans' benefits) such that he sought and obtained legal counsel relating to his pursuit of benefits. *Id.* ¶ 103. This fact alone is all that is required for purposes of accrual under the diligence-discovery rule. *See Kronisch*, 150 F.3d at 121; *A.Q.C.*, 656 F.3d at 140 (noting that a claim accrues when plaintiff knows or should know enough of the critical facts of injury and causation "to protect himself by seeking legal advice"). Plaintiff's claims therefore accrued well over two years prior to the submission of his administrative claim in February 2022.

Plaintiff cannot save his claims by arguing that, although he sought legal advice regarding veterans' benefits since at least 2011, he did not know and or could not have known that his denials were the result of racial discrimination. Discovery of the "critical facts . . . of causation" of the injury does not require a plaintiff to know he has a cognizable legal claim or even that the defendant acted negligently. *Kronisch*, 150 F.3d at 121; *Kubrick*, 444 U.S. at 123 (where plaintiff was aware of injury, nerve deafness, and its probable cause, administration of a drug treatment by a VA hospital, and had sought disability benefits on this basis, his later filed FTCA claim was barred by the statute of limitations given he could have timely sought medical and legal advice as to whether injury was negligently inflicted). Nor is it necessary for Plaintiff

to have been aware of the full extent of the harm, which he alleges was not known until his statistician analyzed the FOIA data in 2021. Compl. ¶ 127; *Kronisch*, 150 F.3d at 121 ("A plaintiff need not know each and every relevant fact of his injury"); *Michel v. United States*, No. 17-cv-1893 (KAM) (RML), 2019 WL 4602828, at *4 (E.D.N.Y., Sept. 23, 2019) (in medical malpractice action where plaintiff argued that she spent over "two years trying to get an explanation as to her exact" injuries before filing her FTCA claim, holding that plaintiff's claim was untimely). The diligence-discovery rule is not so "exacting." *Kronisch*, 150 F.3d at 121.

Even if notice of possible racial discrimination in benefits administration was necessary for claim accrual, Plaintiff's complaints in this and other publicly filed matters demonstrate that he had knowledge of sufficient critical facts to accrue his FTCA claims well before February 25, 2020. Plaintiff acknowledges that "there was speculation for years that racial disparity existed in VA's benefits system," and that there "had been public reporting on the issue," but alleges that he could not have known about data substantiating such claims until September 2021, when his counsel and a statistician analyzed data that his organization, NVCLR, received via FOIA. Compl. ¶ 127. But the FOIA requests did not simply stumble upon evidence of purported discrimination in the pursuit of other information—BVP, NVCLR, and Plaintiff's counsel expressly sought information relating to racial disparities in administration of veterans' benefits. *See BVP*, No. 3:21-cv-935, Complaint, ECF No. 1 (filed July 8, 2021) (alleging that "[r]ecent revelations regarding widespread discrimination across VA facilities highlight that the VA has failed to address systemic racism and call into question whether VA has been fairly administering benefits to Black veterans."). The FOIA request itself thus reveals that Plaintiff had long had sufficient information to accrue his claims even prior to receiving responsive documents. *See* Compl. ¶ 41; *BVP*, ECF No. 1 ¶ 23 (showing FOIA requests made to VA in

February 2021). Plaintiff does not explain why his organization waited until that time to do so, despite his having been represented by current counsel since at least September 2011. Compl. ¶ 103.

Since seeking legal advice in September 2011, counsel has represented Plaintiff in a variety of actions challenging decisions by the VA and the service branches. This includes a purported class action in which he alleged racial disparity and discrimination against Vietnam War veterans with PTSD in the handling of their discharge statuses and upgrades. *Monk v. Mabus*, 3:14-cv-260, Complaint, ECF No. 1 ¶¶ 29, 195 (filed Mar. 3, 2014). In that action, filed in 2014, Monk alleged that a 1972 task force confirmed that "African American servicemembers faced systemic discrimination and received disproportionate punishment, including in their discharge statutes." *Id.* ¶ 29. Plaintiff claimed that he was deprived of equal protection under the Fifth Amendment when his service organization "refus[ed] to upgrade [his] discharge status[], which resulted from Vietnam Era discharge practices that had both a racially discriminatory impact and a racially discriminatory purpose." *Id.* ¶ 195. These allegations are similar to those made in the complaint here. *Monk v. United States*, Compl. ¶¶ 57-58 (alleging that the VA "knew or should have known that bias in the military justice system would likely lead to racial disparities in its COD determinations"). Such allegations that discharge statuses and upgrades were administered in a racially discriminatory manner make clear that Plaintiff was on notice to inquire into whether his veterans' benefits were likewise being administered in an allegedly discriminatory manner.[17]

---

[17] In this and his prior actions, Plaintiff also cites numerous studies and reports, some decades old, regarding disparate treatment of African American veterans by the Unites States government generally and the VA specifically. *See* Compl. ¶¶ 55-57; *BVP*, ECF No. 1 ¶¶ 11-22; *Monk v. Mabus*, ECF No. 1 ¶ 29. Although it is unclear when Plaintiff first became aware of these publications, publicly accessible reporting can be sufficient to put a plaintiff on notice to diligently inquire into the possible existence of a claim. *Guccione*, 670 F. Supp. at 536 ("extensive press coverage" regarding FBI investigations was "more than enough to alert plaintiff" to his FTCA

*(Continued)*

C.      **Plaintiff's proposed claim accrual date would render the statute of limitations meaningless.**

Plaintiff's argument that the statute of limitations should accrue from when the "records [produced pursuant to his 2021 FOIA action] were analyzed" by his counsel and a statistician would negate the purpose of a statute of limitations. *Monk v. United States*, Compl. ¶¶ 44, 125, 127. "An accrual date that turns on when a plaintiff (or his lawyers) finally decides to take action, rather than when the plaintiff was sufficiently alerted to the appropriateness of seeking legal advice, would render the limitations period meaningless." *A.Q.C.*, 656 F.3d at 141-42. By such logic, the statute of limitations would never begin to run until counsel and/or experts have sought out relevant information and fully developed their analysis or reports on a timeline of their own choosing. *Id.* at 143-44 ("Attorneys would therefore be able to set the accrual date to coincide with their own litigation strategy, regardless of the length of the delay."). And a failure or inability of counsel to conduct a full fact-finding investigation before initiating litigation does not stop the statute of limitations from running. *See Kronisch*, 150 F.3d at 122 n.5. Other FTCA plaintiffs have made this same argument to no avail. *See A.Q.C.*, 656 F.3d at 143 (rejecting plaintiff's argument that the statute of limitations on her medical malpractice claim should run from when her and her daughter's medical records had been analyzed by experts, and noting that "[i]f the cause of action did not accrue until the attorneys obtained and reviewed the medical records, even had [the plaintiff] waited three, four, or ten years before retaining counsel, or had the Firm waited a similarly long time before beginning its investigation, that inaction would not have prevented this claim from accruing.").

---

claims against FBI); *see also Pipitone v. City of New York*, 57 F. Supp. 3d 173, 188 (E.D.N.Y. 2014) ("News reports, if sufficiently probative and widely publicized, can trigger accrual, or at least require potential plaintiffs to undertake a reasonably diligent investigation.").

Plaintiff's own allegations, in this and other matters filed years prior, demonstrate that he was aware, or with reasonable diligence should have been aware, of the critical facts of his alleged injuries and their cause since at least 2011, when he knew enough to seek legal advice and retain present counsel to assist in his pursuit of benefits. Plaintiff was therefore required to have filed his FTCA claim by September 2013, and certainly by 2017, two years after the VA issued its last disputed benefits decision and more than two years after he filed his purported class action alleging governmental racial discrimination against African American servicemembers, *Monk v. Mabus*. Yet Plaintiff did not file his FTCA administrative claim until February 25, 2022, years late under even a generous standard. Plaintiff's FTCA claims are untimely.[18]

## IV.    Plaintiff's claims are precluded.

Finally, in addition to being untimely, Plaintiff's claims are precluded. Plaintiff has already received an upgrade to his discharge status and access to VA benefits with a 100% disability rating, running retroactively from an effective date sought by Plaintiff. His discharge status upgrade and access to benefits are the results of valid and final judgments. Any new action allegedly arising from these same claims is therefore precluded.

The doctrine of res judicata, or claim preclusion, holds that when "a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies against the

---

[18] Plaintiff has not alleged that any form of equitable tolling should be applied to his claims, and he bears the burden of establishing entitlement to equitable tolling. *Watson*, 865 F.3d at 132 ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."). Even if he had pleaded equitable tolling, Plaintiff's claims would not merit such extraordinary relief. *Id.* at 132-33 ("Equitable tolling is a rare remedy to be applied in unusual circumstances" and should not be based on "lack of education, *pro se* status, or ignorance of the right to bring a claim" or the "uniqueness of a party's circumstances") (internal quotations omitted).

defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24 (1982). The rule of merger establishes that when "a valid and final personal judgment is rendered in favor of the plaintiff," the "plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment." Restatement (Second) of Judgments § 18 (1982). Thus, claim preclusion "applies in later litigation 'if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'" *Jaeger v. Cellco P'ship*, 936 F. Supp. 2d 87, 93-94 (D. Conn. 2013) (quoting *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221-22 (2d Cir. 2012)). Litigation involves the "same cause of action" where it arises out of the same "claim" or "nucleus of operative fact" as a prior suit. *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000); *Jaeger*, 936 F. Supp. 2d at 95.

As detailed herein, and regardless of how Plaintiff attempts to characterize the complaint, the nucleus of operative fact here is the alleged improper denials of benefits applications and/or failure to upgrade his discharge. All such claims have long since been resolved. In May 2015, the BCNR granted Plaintiff's request to upgrade his discharge status. Also in 2015, the VA granted Plaintiff's disability compensation request for PTSD with a 100% rating, as well as his requests relating to diabetes and associated neuropathy. Compl. ¶ 106. After Plaintiff disputed the effective date applied to this benefits grant, in 2020, the Board of Veterans' Appeals ultimately ruled in Plaintiff's favor and granted his benefits retroactively from the effective date argued by Plaintiff. No party has sought to appeal or otherwise reconsider these valid and final judgments entered in Plaintiff's favor. *See Ortiz v. McDonough*, 6 F.4th 1267, 1270 (Fed. Cir. 2021)

("Statutes and regulations governing veterans benefits expressly state general rules of finality for VA decisions. That is so for a decision by a VA regional office (or agency of original jurisdiction) unless timely appealed to the Board [of Veterans' Appeals]. . . . And it is also so for a Board [of Veterans' Appeals] decision unless timely appealed to the Veterans Court."); *Lopez v. Shulkin*, No. 17-754, 2017 WL 4898294, at *3 (Vet. App., Oct. 31, 2017) ("Basic principles of finality and res judicata apply when a [veteran] claimant fails to timely appeal a decision and, in such a circumstance, unless otherwise provided by law, the cases are closed and the matter is thus ended") (cleaned up; quoting *Routen v. West*, 142 F.3d 1434, 1437-38 (Fed Cir. 1998)). As such, claims based on all or any part of Plaintiff's "transactions" or "series of connected transactions" with the VA have been extinguished.

The fact that Plaintiff now brings his grievances in the form of an FTCA action and argues that his prior benefits denials and/or failure to receive a discharge upgrade are the result of discrimination does not save his claims from preclusion. "The rule of [Restatement (Second) of Judgments § 24 (1982)] applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action." Restatement (Second) of Judgments § 25 (1982); *Waldman*, 207 F.3d at 110 ("[A] plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)."); *Bjorlin v. MacArthur Equities Ltd.*, No. 3:11-cv-558 (MPS), 2015 WL 403212, at *2 (D. Conn., Jan. 28, 2015) (where plaintiff alleged employment discrimination and sought front and back pay in a state suit and a separate federal suit under different statutes, applying the Restatement and holding that even if "the legal claims and remedies sought were entirely

41

separate," plaintiff's second action would be precluded); *Fink v. Magner*, 988 F. Supp. 74, 80-81 (D. Conn. 1997) (where claims were "inextricably intertwined" with earlier state court action and arose out of the same "succession of facts," res judicata extinguished the claims even where plaintiff was "prepared to 'present evidence or grounds or theories of the case not presented in the first action' or to 'seek remedies or forms of relief not demanded in the first action.'") (quoting Restatement (Second) Judgments § 25). Plaintiff's claims should be dismissed for the separate reason that they are precluded.

## CONCLUSION

Plaintiff has failed to sufficiently allege that the United States has waived sovereign immunity under 38 U.S.C. § 511(a) and 28 U.S.C. § 1346(b)(1), and his claims are untimely and precluded. Therefore, all three counts of the complaint must be dismissed for failure to establish subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Wherefore, the defendant the United States requests that the Court grant its motion and dismiss Plaintiff's claims in their entirety.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Natalie N. Elicker*
Natalie N. Elicker (ct28458)
ASSISTANT U.S. ATTORNEY
157 Church Street, 25th Floor
New Haven, CT 06510
T: (203) 821-3700
F: (203) 773-5373
Natalie.Elicker@usdoj.gov