# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONLEY F. MONK JR., | |
| *Plaintiff*, | Civil Action No. 3:22-cv-1503 (JBA) |
| v. | |
| UNITED STATES OF AMERICA, | March 13, 2023 |
| *Defendant*. | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT UNITED STATES OF AMERICA

To: The United States of America, by and through its attorney of record, Natalie N. Elicker, United States Attorney, 157 Church Street, New Haven, CT

### I. Instructions

1. Pursuant to Rule 33 of the Federal Rules of Civil Procedure (FRCP), Plaintiff submits the following Interrogatories to Defendant United States of America. Plaintiff requests that Defendant serves its answer, in writing and under oath, to the undersigned counsel for Plaintiff via email or at Jerome N. Frank Legal Services organization, Yale Law School, P.O. Box 209090, New Haven, CT 06520-9090, within 30 days of service of these Interrogatories.

2. Each Interrogatory should be answered separately upon knowledge, information, and belief of Defendant United States of America, Defendant's agents, Defendant's employees, and representatives acting on behalf of Defendant.

3. If any of these Interrogatories cannot be answered in full, then you should answer, to the extent possible, specify the reasons for your inability to answer the remainder, and identify or describe all other sources of more or complete or accurate information.

4. The following Interrogatories shall be continuing to the full extent permitted under the applicable provisions of the Federal Rules of Civil Procedure.

5. If any information is withheld under a claim of privilege, the following shall be provided with respect to such information: (a) every person to whom such information has been communicated by Defendant, (b) from whom such information was learned by Defendant, (c) the subject matter of such information, and (d) the basis upon which such privilege is claimed.

6. All definitions set forth herein above shall be carefully regarded.

## II. **DEFINITIONS**

The terms used in these Interrogatories have the meanings set forth in D. Conn. Local Rule 26(c). In addition, as used in these Interrogatories:

A. "Agreement" means a contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

B. The phrase "describe in detail" includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information relating to (as that phrase is defined below) the subject matter of a specific Interrogatory.

C. "Discussion," "discussions," "discuss," "mention," "mentions," "describe," "describes," "analyze," or "analyzes" mean any and all inquiries, conferences, conversations, negotiations, agreements or other forms or methods of oral communication or such dialogue sent via e-mail, facsimile, letter, telegram, or other written communication.

D. "Record," "records," and "written correspondence" mean all data, papers, and books, transcriptions, pictures, drawings or diagrams, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, including written papers or memoranda which summarize oral conversations, whether in your actual or constructive possession or under your control or not, relating or pertaining in any way to the subject matters in connection which it is used, and includes originals, all file copies, all other copies, no matter how prepared, and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail (e-mail); text (SMS) messages; messages sent via social media sites or messaging applications including but not limited to Twitter, Facebook, and WhatsApp; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photocopies; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; spreadsheets; electronically stored information (ESI) and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English.

E. "VA" means the U.S. Department of Veterans Affairs and its predecessor the Veterans Administration.

2

F.  "VBA" means the Veterans Benefits Administration.

G.  "Members of the Senior Executive Service" means members of the Office of Personnel Management (OPM)'s Senior Executive Service position classification and all civil servants with a General Schedule level of 16 or higher. "Senior-level" means members of the civil service with a General Schedule level greater than 11 but not greater than 15.

H.  "Defendant," the "United States," "you," or "your" means the United States of America, and any of your respective departments, agencies, agents, employees, officers, or representatives acting on your behalf or under your control, including but not limited to the VA and its respective agents, employees, and officers.

I.  The use of a verb in any tense shall be construed as the use of the verb in all other tenses, and the singular form shall be deemed to include the plural, and vice-versa.

### III. **<u>INTERROGATORIES</u>**

1. To the extent not already provided in initial disclosures, identify all persons having knowledge of any facts of this case, including, but not limited to, the allegations contained in the complaint, setting forth for each person their name, present (or last known) address, telephone number, and the extent and nature of their knowledge.

2. Identify and describe in detail the protocols and processes used by VA from 1965 to present to collect and/or aggregate data regarding the demographic characteristics of applicants for housing, education and disability compensation benefits programs, including, but not limited, to applicants' race, ethnicity, amount of income, source of income, employment status, education level, character of discharge, and/or rank on date of discharge.

3. Identify and describe in detail protocols or policies from 1965 to present, if any, concerning the periodic review, audit, or assessment of data regarding any of the following characteristics of applicants for housing, education and disability compensation benefits programs: race, ethnicity, amount of income, source of income, employment status, education level, character of discharge, rank on date of discharge, and/or VA facilities through which the application was processed.

4. Identify and describe in detail the retention period(s) and policies from 1965 to present for data regarding VA housing, education, and disability compensation benefits programs, including the race of the applicant.

5. Identify and describe in detail the training, supervision, auditing, and record-keeping practices implemented or carried out by VA from 1965 to present used to ensure that benefits claims were not implemented in a racially discriminatory manner.

6. Identify and describe in detail measures VA has taken, if any, to address, identify, assess, and/or measure racial disparities in VBA claims adjudication in housing, education, and disability compensation benefits programs, from 1965 to present.

7. Identify and describe in detail measures VA has taken, if any, to ensure that racial bias in the military discharge and military justice systems did not cause racial disparities in VBA claims adjudications, from 1965 to present.

8. Identify and describe in detail formal or informal VBA investigations conducted, if any, following or in response to whistleblower complaints regarding racial disparities in VA housing, education, and disability compensations benefits programs, from 1965 to the present, including but not limited to the response to complaints received by Willie Clark and Mike Frueh via email on December 5, 2017 at 5:27 PM. A copy of the email is attached as Exhibit A.

9. Identify the names and positions of the senior-most members of the Senior Executive Service, senior-most federally appointed VA staff, and the senior-most VBA personnel who were responsible for each of the following, in each year from 1965 to the present:

   a. developing, approving, or implementing VA diversity initiatives;
   b. creating, modifying, reviewing, and/or approving data collection and retention policies and practices for VA's housing, education, and/or disability compensation benefits programs; and
   c. creating, modifying, reviewing, and/or approving reports, presentations, or any other material summarizing and/or analyzing data arising from or related to housing, education, and disability compensation benefits programs.

10. Identify any employee or contractor who conducted data analysis regarding the relationship between race and outcomes of VA benefits adjudication from 1965 to the present, including those responsible for the 2017 analysis of PTSD outcome claims by race.

11. Identify the names and titles then held of each person who attended the meeting of VA officials and staff at 1800 G St., Suite 520, Washington, DC 20006 at 9:30 am on August 28, 2017, at which racial disparities in PTSD cases were discussed, and describe in detail the follow up, if any, undertaken by VA after that meeting.

Dated: March 13, 2023

Respectfully yours,

/s Michael J. Wishnie
Michelle Fraling, Law Student Intern
Rebecca Harris, Law Student Intern
Adam Henderson, Law Student Intern
Beatrice Pollard, Law Student Intern

Claire Sullivan, Law Student Intern
Michael Sullivan, Law Student Intern
Michael J. Wishnie, Supervising Attorney, ct27221
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
P.O. Box 209090
New Haven, CT 06520
(203) 432-4800

*Counsel for Plaintiff*