## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONLEY F. MONK, Jr., | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:22-cv-1503 (JBA) |
| | : | |
| THE UNITED STATES OF AMERICA, | : | May 30, 2023 |
| *Defendant*. | : | |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PROTECTIVE ORDER RESPECTING DEPOSITION

Defendant United States of America moves the Court for a protective order, pursuant to Fed. R. Civ. P. 26(c)(1)(A), respecting Plaintiff Conley F. Monk, Jr.'s proposed deposition of Ms. Margarita Devlin, a high-ranking employee of the United States Department of Labor and formerly a high-ranking employee of the Veterans Benefits Administration, on June 23, 2023. The proposed deposition would cause annoyance, oppression, and undue burden or expense, to Defendant, Ms. Devlin, and Ms. Devlin's current employer; and thus, a protective order forbidding the deposition is warranted.[1] *See* D. Conn. L. Civ. R. 7(a)1, 37(b)1.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff Conley F. Monk, Jr.'s lawsuit claims that the United States Department of Veterans Affairs (VA) injured him in tort based on its alleged "negligent administration of housing, education, and disability benefits." Complaint ¶ 111, ECF No. 1. Plaintiff's tort lawsuit follows Plaintiff's ultimately successful administrative request to the VA for disability

---

[1] Pending before the Court are Defendant's motion to stay all discovery, ECF No. 24, and motion to dismiss, ECF No. 23, both of which argue a lack of subject matter jurisdiction over Plaintiff's complaint. Defendant fully incorporates its arguments in support of the motion to stay into this brief, but also highlights specifics aspects of that motion in support of this motion. In order to provide a thorough background, this motion repeats the relevant facts and procedural history stated in Defendant's motion to stay.

compensation. *Id.* ¶¶ 105-109. Plaintiff filed his complaint in this case on November 28, 2022. *Id.* at 1. The United States appeared on January 23, 2023, and received an extension of time until March 31, 2023, to respond to Plaintiff's complaint. ECF Nos. 16, 18.

The parties held a conference on February 21, 2023, respecting jurisdiction and discovery, and on March 8, 2023, filed with the Court a joint report describing their discussions. Joint Report of FRCP 26(f) Conference, ECF No. 19 ("Joint Rep."); N. Elicker Decl. (Mar. 31, 2023), ECF No. 24-2. Defendant stated its position that the Court lacks subject matter jurisdiction over Plaintiff's claim. Joint Rep. at 3, 4. Defendant declined to agree to a discovery schedule, objected to providing initial disclosures, and stated that, "to the extent Plaintiff was injured at all, his injuries are inextricably intertwined with the VA's administrative decisions; and [] this case therefore is subject to D. Conn. L. Civ. R. 26(f)(3) (exempting from Local Rule 26(f) 'review of decisions by administrative agencies')." Joint Rep. at 5, 9-10; *see also* Fed. R. Civ. P. 26(a)(1)(B)(i) (excepting from initial disclosures "action[s] for review on an administrative record"). Defendant stated its intention to file a motion to stay discovery. *Id.* at 4, 5, 10.

In the parties' joint report, Plaintiff articulated the discovery he intends to seek. *Id.* at 4, 7-9. On March 9, 2023, Plaintiff served Defendant with his initial disclosures. Five days after filing their joint report, on Monday, March 13, 2023, Plaintiff served Defendant with his first set of interrogatories and requests for production.[2]

---

[2] The parties initially stipulated to extend Defendant's deadline for responding to the discovery requests from April 12, 2023, to May 12, 2023. Mot. to Stay at 2 n.2. Defendant then requested an additional extension of sixty days until July 11, 2023; Plaintiff consented to only thirty days. *See* N. Elicker Decl. ¶¶ 9-11 (May 30, 2023) (attached). Thus, the present, stipulated deadline for Defendant's written discovery is June 12, 2023. Plaintiff's objection to the motion to stay appended copies of the written discovery Plaintiff served on Defendant. ECF No. 28-1 & 28-2.

On Friday, March 17, 2023, Plaintiff's counsel also made an initial inquiry respecting scheduling a deposition of former VA employee Margarita Devlin "sometime between April 17-25."[3] On Monday, March 20, 2023, Defendant's counsel responded that the proposed dates were unlikely to work.[4] Plaintiff's counsel responded on Wednesday, March 22, 2023, affirming Plaintiff's desire to move forward with the deposition on the previously-proposed timeframe.[5] Defendant filed its motion to dismiss the complaint for lack of subject matter jurisdiction and an accompanying motion to stay discovery on March 31, 2023. ECF Nos. 23-24.

Despite previously expressing an intent to proceed with an April deposition date, Plaintiff did not serve Defendant with a notice of deposition for Ms. Devlin until April 25, 2023. N. Elicker Decl. ¶ 3 (May 30, 2023) ("Elicker May 30 Decl.") (attached). That notice of deposition requested Ms. Devlin to appear for a deposition in Washington, D.C., on June 9, 2023. *Id.* On May 4, 2023, Defendant's counsel requested a meet and confer with Plaintiff's counsel to discuss the notice of deposition, among other issues.

Counsel for the parties spoke by telephone on May 8, 2023. *Id.* Defendant's counsel explained that:

1)  Ms. Devlin did not work on nor decide Plaintiff's applications for VA benefits;

2)  Ms. Devlin did not supervise nor direct any employee who worked on or decided Plaintiff's applications for VA benefits;

3)  Ms. Devlin does not recall the 2017 document Plaintiff filed in opposition to the motion to stay, ECF No. 28-3, which Plaintiff represented was somehow connected to

---

[3] E-mail from A. Henderson to N. Elicker, Mar. 17, 2023 (on file with author).

[4] E-mail from N. Elicker to A. Henderson, Mar. 20, 2023 (on file with author).

[5] E-mail from A. Henderson to N. Elicker, Mar. 22, 2023 (on file with author).

an important area of inquiry for Ms. Devlin's deposition.[6] *See* Obj. to Mot. to Stay at

9 n.3, 12 n.5, ECF No. 28. The document is not addressed to Ms. Devlin and does not

reference her by name or title.

Elicker May 30 Decl. ¶¶ 11.d & 15.[7] In light of these facts, Defendant stated that any deposition

of Ms. Devlin by Plaintiff would be pointless, and that the deposition should not proceed. *See*

_____

[6] Plaintiff draws the following connection: a VA "whistleblower" provided Plaintiff's counsel and/or the media with information; that information caused Plaintiff and/or Plaintiff's counsel to make a FOIA request; the VA appropriately responded to the FOIA request by producing the 2017 document; and Ms. Devlin was employed as "an Executive Director in the Veterans Benefit Administration" in 2017. As an initial mater, this chain of connection is patently attenuated.

More importantly, Plaintiff's narrative is built on undefined terms and hyperbole. Plaintiff's use of the term "whistleblower" appears to be a colloquialism. Plaintiff does not cite any statutory basis for "whistleblower" protections or even describe a typical scenario for Congressionally-protected whistleblowing—in which an employee makes a protected disclosure of information (in which type of information Congress has expressed an interest) to a person or entity authorized to receive the information, in order to help improve governance.

Plaintiff's use of the words "intentionally concealed" also appears to be unsupported. As noted in Defendant's Reply in Support of Motion to Stay Discovery, "the court docket for the FOIA claim clearly shows that Plaintiff's organization requested data from the VA through FOIA; the parties conferred; Plaintiff's organization received data; and the FOIA plaintiffs withdrew the case because they were satisfied with the VA's production. *See Black Veterans Project v. US. Dept. of Veterans Affairs*, No. 3:21-cv-935 (VLB), Joint Status Report at 1, ECF No. 52 (D. Conn., filed June 13, 2022). To the extent Plaintiff wishes that the VA had affirmatively published the subject data prior to it being requested through FOIA, Defendant is not aware of any statute, regulation, or case law imposing such burden on the VA." Reply in Support of Mot. to Stay Discovery at 7, ECF No. 29. There is simply no good faith basis to claim that anyone at the VA, nor in particular Ms. Devlin, "intentionally concealed" the 2017 document from anyone.

[7] If this were a case in which Defendant agreed the Court had jurisdiction, but disagreed (as here) that the deposition was warranted, Defendant would have requested Ms. Devlin to aver to these facts by declaration, and would have submitted such declaration in support of this motion.

*(Continued)*

Elicker May 30 Decl. ¶ 11.d. On May 11, 2023, Plaintiff served Defendant with the Notice of Rule 30(b)(1) Deposition for Ms. Devlin to be deposed on June 23, 2023. *See* Elicker May 30 Decl., Exh. 1.[8]

By e-mail to Plaintiff's counsel in April, Defendant stated its position that the proposed deposition would be covered by the Defendant's pending motion to stay all discovery for lack of subject matter jurisdiction, ECF No. 24. *See* Elicker May 30 Decl. ¶ 5. Defendant made its global motion to stay discovery prior to Plaintiff serving a notice of deposition on a particular witness and prior to Defendant discussing with Ms. Devlin the proposed subject matter of the deposition.

---

In light of Defendant's position that discovery is inappropriate in this matter, due to the jurisdiction-stripping provisions of the Veterans Justice Relief Act and the sovereign immunity defense inherent in the Federal Tort Claims Act's *limited* waiver of that immunity, Defendant does not believe it is appropriate in this case to voluntarily produce any sworn testimonial statement by Ms. Devlin. If the Court were to require such statement, Ms. Devlin is prepared to swear to the facts described herein.

[8] The Notice provides that the deposition "may also be recorded using audio and visual equipment." Elicker May 30 Decl., Exh. 1 at 1. Defendant objects to videorecording if Ms. Devlin is deposed, to protect Ms. Devlin's privacy interests; or if any deposition is videorecorded, requests that such recording be sealed. With respect to depositions, Rule 26(c)(1) permits a trial court to "requir[e] that a deposition be sealed" in its entirety "and opened only on court order." Fed. R. Civ. P. 26(c)(1)(F); *see also Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007); *Tavoulareas v. Washington Post Co.*, 111 F.R.D. 653, 661 (D.D.C. 1986). The Rule grants trial courts broad latitude to seal depositions in part because, notwithstanding the public's interest in certain portions of some judicial proceedings, "pretrial depositions and interrogatories are not public components of a civil trial." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 35 n.21 (1984); *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("Discovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public."); *Lopez v. CSX Transp., Inc.*, No. 14-cv-257, 2015 WL 3756343, at *6 (W.D. Pa. June 16, 2015) (ordering deposition recordings *and* transcripts sealed, accepting argument "that, if information from the depositions is disclosed to the public, then employees of the Defendant would be subject to annoyance, embarrassment, and oppression"); *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) ("Given the existence of a legitimate litigation purpose for taping the deposition, the Court will permit the videotaping. But the videotape may be used solely for purposes of this litigation."). Ms. Devlin's public service as a career employee has not annulled her privacy rights. *See Austin Sanctuary Network v. U.S. Imm. & Customs Enf't*, No. 2-cv-1686, 2022 WL 4356732, at *29 (S.D.N.Y. Sept. 19, 2022) ("[E]ven public servants retain some privacy interest in their names upon entering public service.").

Because the earlier motion did not articulate factors specific to the witness and given that the parties were unable to reach a resolution as to the proposed deposition, Defendant informed Plaintiff of its intention to file this motion for a protective order. *Id.* ¶ 11; *see* Fed. R. Civ. P. 26(c)(1)(A); D. Conn. L. Civ. R. 37(a).

## II.    **LAW**

A deposition of Ms. Devlin is unwarranted and satisfies the standard for granting a protective order, as set forth in Federal Rule of Civil Procedure 26, and in *Lederman v. New York City Dept. of Parks & Rec.*, 731 F.3d 199 (2d Cir. 2013). Under Federal Rule of Civil Procedure 26(c), a "party . . . may move for a protective order . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1); *Lederman*, 731 F.3d at 203.

In addition to exercising its general discretion under Rule 26(c) to issue protective orders, the Court must weigh an additional test when a party seeks to depose a high-ranking government official. In *Lederman*, the Second Circuit established that a party seeking to depose a high-ranking government official must "demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman*, 731 F.3d at 203. In establishing this test, the Court observed that "[h]ighranking government officials are generally shielded from depositions because they have greater duties and time constraints than other witnesses. If courts did not limit these depositions, such officials would spend an inordinate amount of time tending to pending litigation." *Id.* (cleaned up).

### III.    ARGUMENT

#### A.    There is good cause to issue a protective order.

There is good cause to grant a protective order forbidding Ms. Devlin's deposition because such deposition would be "pointless" and thus would impose an undue and disproportionate burden under Federal Rule of Civil Procedure 26. *Stavola v. Northeast Utilities*, No. 3:05-cv-998 (JBA), 2006 WL 2850414, at *1 (D. Conn. Oct. 4, 2006); *see also Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) (observing that "depositions are inherently time-consuming and inefficient").

In *Stavola*, this Court granted the plaintiff's motion for a protective order forbidding the defendant from deposing a proposed witness and later ruled that the defendant lacked substantial justification for moving to compel the deposition. 2006 WL 2850414, at *1 (awarding fees); *see also Stavola*, No. 3:05-cv-998 (JBA), ECF No. 61 (D. Conn. May 31, 2006) (granting motion for protective order and denying motion to compel). The defendant sought to depose an attorney for the plaintiff to discover information potentially relevant to the defendant's statute of limitations defense—specifically, when plaintiff first had actual knowledge of her claim. 2006 WL 2850414, at *1. The proposed witness represented to the Court and the defendant that "he recalled no conversations" with plaintiff from the relevant period and that none of the staff that worked at the firm during the relevant period remained at the firm—*i.e.*, he disclosed that he did not have information relevant to the statute of limitations defense. *Id.* Further, any communications sought would likely be protected from disclosure by privilege. *Id.*

Under these circumstances, the Court determined that "any deposition would be **pointless**" and forbade it. *Id.* (emphasis added). The Court particularly noted that defendant "had pre-filing notice of [the witness's] lack of recollection of any such conversations." *Id.*; *see also*

7

*id.* (noting the focus of defendant's motion to compel "was conversations [the witness had] with plaintiff, of which defendants already knew [the witness] had no recollection and which would, in any event, likely be privileged"); *Milione v. City Univ. of New York,* 567 Fed. App'x 38, 42 (2d Cir. 2014) (affirming protective order precluding the deposition of former chancellor of public university system in employment discrimination case where the former chancellor "had no personal knowledge . . . (much less any relevant knowledge)" of plaintiff's employment and did not supervise him).

Similar to the proposed witness in *Stavola*, Ms. Devlin has no personal knowledge of Plaintiff's alleged injuries and does not recall the document which Plaintiff alleges is critical to his claims. Similar to the proposed witness in *Milione*, Ms. Devlin has no personal knowledge of the Plaintiff's relationship to or interactions with the agency. Ms. Devlin has never had a direct role in the determination of VA benefits; nor did she directly supervise staff who held such roles.[9] Furthermore, Ms. Devlin had no personal involvement in Plaintiff's interactions with the VA. Plaintiff has not identified a single interaction that he had with her. And Plaintiff has not identified a single VA employee with whom Plaintiff interacted who was allegedly supervised or directed by Ms. Devlin. Her "personal involvement" in his claim is attenuated to the point of meaninglessness.

---

[9] Plaintiff's Notice of Deposition references Ms. Devlin's penultimate position at the VA in 2018-2021, as the Principal Deputy Under Secretary for Benefits. *See* Elicker May 30 Decl., Exh. 1 at 1. In this role, Ms. Devlin was the second in command of the Veterans Benefits Administration (VBA). At the time, the VBA employed about 26,000 people. As the second in command of the VBA, Ms. Devlin did not directly review benefits decisions, nor supervise the people who did. The layers between her and the employees who processed claims included, at a minimum, the Deputy Under Secretary for Field operations; District Directors (5); Regional Office Directors (50+); and Service Center managers (50); plus assistant service center managers and supervisors of teams.

Under these circumstances, a deposition of Ms. Devlin would likewise be pointless. And, because Ms. Devlin lacks any personal knowledge of Plaintiff's injuries or claims, a deposition of her necessarily imposes undue and disproportionate burden on the Defendant, on Ms. Devlin's current employer (the Department of Labor, a federal agency that is wholly unrelated to this lawsuit), and on Ms. Devlin herself.

Permitting the deposition would amount to harassment of Ms. Devlin for her prior employment as a high-ranking official at the agency from which Plaintiff's alleged harm arose. Holding the deposition at this time would especially impose an undue burden given that Defendant has filed a motion to stay discovery based on lack of subject matter jurisdiction, and that motion is pending before the Court. Thus, there is good cause for forbidding the deposition.

**B.     Ms. Devlin should not be required to testify under *Lederman* because Plaintiff cannot show exceptional circumstances warrant the deposition.**

The proposed deposition also violates the standard established in *Lederman*. Plaintiffs in *Lederman* were "visual artists" who sold their works on sidewalks and public parks in New York City and who challenged the city's regulation of such sales on First Amendment grounds. 731 F.3d at 201. During discovery, plaintiffs sought to take depositions of the Mayor and Deputy Mayor of New York City. The District Court issued a protective order on June 1, 2011, the same day as a telephone conference in which the parties brought the deposition issue to the Court's attention. *Lederman v. New York City Dept. of Parks & Rec.*, No. 10 Civ. 4800 (RJS), ECF No. 30 (S.D.N.Y. June 1, 2011).[10] On appeal, the plaintiff argued that the Court had abused its discretion in issuing the protective order. The Second Circuit disagreed. It found that "plaintiffs did not demonstrate exceptional circumstances" required to depose such government officials.

---

[10] Pursuant to the Court's Chambers Practices, unreported orders are attached to this motion.

*Lederman*, 731 F.3d at 203. Specifically, plaintiffs "did not identify with particularity the information they needed, nor did they contend that [Mayor] Bloomberg and [former Deputy Mayor] Skyler had first-hand knowledge about the litigated claims or that the relevant information could not be obtained elsewhere." *Id.* Accordingly, the appellate court affirmed the district court's order. *Id.* at 204.

In *Lederman*, the Second Circuit did not focus on the titles held by the officials, but rather on whether the officials' roles were such that they had "greater duties and time constraints than other witnesses" thus requiring that they be shielded from depositions for public policy reasons. *Id.*[11] Courts have reasoned that high-ranking officials well beneath the Cabinet rank warrant protection from depositions. *See, e.g.*, *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 321 (D.N.J. 2009) (EPA Regional Administrator for Region 2, who "reports directly to the EPA Administrator, who in turn reports directly to the President of the United States"); *Church of Scientology of Boston v. IRS*, 138 F.R.D. 9, 12 (D. Mass. 1990) (Director of Exempt Organizations Technical Division, National Office of the Internal Revenue Service).

Here, Ms. Devlin is a sufficiently high-ranking official that Plaintiff must satisfy the *Lederman* test in order to proceed with a deposition. First, Ms. Devlin's position at the VA was sufficiently high-ranking, and her current position at the Department of Labor is sufficiently

---

[11] Courts apply a similar standard in assessing whether it is appropriate to issue a protective order with respect to attempts to obtain testimony from current and former corporate executives. *See Rodriguez v. SLM Corp.*, No. 3:07-cv-1866 (WWE), 2010 WL 1286989, at *2 (D. Conn. March 26, 2010) (protective order was appropriate where the information could be obtained from other sources and the party seeking the testimony failed to demonstrate that the executives "possess unique factual information and institutional knowledge necessary to the prosecution of th[e] case.") (internal quotations omitted); *CM Sys., LLC v. Transact Tech. Inc.*, No. 3:22-cv-624 (JCH) (RAR), 2023 WL 3335892, at *1 (D. Conn. May 10, 2023) ("Plaintiff was unable to identify with specificity any information or knowledge . . . that provides [the executive] with some unique knowledge of the current litigation.").

high-ranking, to implicate the *Lederman* test. Ms. Devlin is currently the Deputy Assistant

Secretary for Operations and Management, Veterans' Employment and Training Service at the

Department of Labor. Prior to that, she was the Chief Learning Officer for the VA, where she

had also held other high-ranking positions. Second, Ms. Devlin does have greater duties and time

constraints than other witnesses—now, and in her former job at the VA.

Specifically, since 2021, Ms. Devlin has served as the Deputy Assistant Secretary for

Operations and Management. Her position is the highest-ranking career government official in

the Veterans' Employment and Training Service; Ms. Devlin reports directly to the politically

appointed and Senate-confirmed Assistant Secretary of the Department of Labor's Veterans'

Employment and Training Service. In this role, she oversees programs that serve over 370,000

veterans, transitioning service members, and military spouses. The programs for which Ms.

Devlin has oversight are implemented through the work of approximately 2,800 individuals,

including employees, grantees, and contractors. Her current duties and time constraints are

especially significant; and it is in the public's interest for the Department of Labor and Ms.

Devlin to be able to protect Ms. Devlin's time from burden and harassment.

Ms. Devlin had similarly high-ranking positions at the VA, where she was employed

until about mid-2021. In her final position at the VA, in 2021, she served as the Chief Learning

Officer for the VA. In that role, she was the principal advisor to the VA's Under Secretary for

Health on all matters related to education and training products and services. Her work supported

workforce development and continuing education for over 377,000 health care professionals and

staff, and 120,000 residents and trainees at over 1,255 health care sites.

Under the *Lederman* test, a pertinent factor for determining whether exceptional

circumstances exist is whether the government official has any "**unique first-hand knowledge**

related to the litigated claims." *Lederman*, 731 F.3d at 203 (emphasis added); *see also Milione*, 567 Fed. App'x at 42 (although chancellor's office had received copies of letters relating to plaintiff's job responsibilities, plaintiff failed to show a need for former chancellor's testimony where he had no personal knowledge of plaintiff's employment or employment dispute and given chancellor oversaw numerous colleges and professional schools); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (observing that "depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated," and further, that "even in such cases, discovery is permitted only where it is shown that other persons cannot provide the necessary information"). Here, Ms. Devlin had no role either in deciding applications for VA benefits—for Plaintiff or other applicants—nor in supervising the staff who did. *See* Argument III.A, above (demonstrating no personal knowledge). Plaintiff's alleged harm is premised on the "administration" of benefits and the benefits decisions he received over the years, yet Ms. Devlin, by virtue of her role, was not directly involved in either.

The only specific information Plaintiff has pointed to in support of his alleged need to depose Ms. Devlin is a 2017 document, *see* ECF No. 28 at 12 n.5, which Ms. Devlin does not even recall. It is not addressed to her, nor does it reference her by name or title. *See* ECF No. 28-3.

Finally, and tellingly, Plaintiff does not seek the deposition to overcome Defendant's arguments in the motion to dismiss. Plaintiff's objection to the motion to dismiss is due June 5, 2023, *see* ECF No. 27, but he has not sought to schedule the deposition until June 23 (June 9, at the earliest)—too late to use in opposition to the motion to dismiss. *See* Elicker May 30 Decl. ¶¶ 3 & 12. Plaintiff therefore does not require Ms. Devlin's deposition in order to respond to the

pending motion to dismiss. *See also* Mem. in Supp. of Mot. to Stay Discovery, ECF No. 24-1 at 12 (arguing Plaintiff does not require discovery to respond to Defendant's motion to dismiss).

There are no exceptional circumstances that require Ms. Devlin's deposition—especially not before the Court rules on Defendant's pending motion to stay discovery. Plaintiff has not alleged any acts or omissions Ms. Devlin took, or of which she is aware, that caused his claimed injury—the denial of VA benefits over the course of approximately fifty years.

Thus, Plaintiff cannot show exceptional circumstances warranting Ms. Devlin's deposition.

## IV.    **CONCLUSION**

For all the foregoing reasons, the United States respectfully moves the Court issue a protective order forbidding Plaintiff from deposing Ms. Devlin.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Natalie N. Elicker*
Natalie N. Elicker (ct28458)
ASSISTANT U.S. ATTORNEY
157 Church Street, 25th Floor
New Haven, CT 06510
T: (203) 821-3700
F: (203) 773-5373
Natalie.Elicker@usdoj.gov