UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONLEY F. MONK JR., on behalf of himself and as Administrator of the Estate of CONLEY F. MONK, SR., and NATIONAL VETERANS COUNCIL FOR LEGAL REDRESS,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Defendant*. | No. 3:22-cv-01503-JBA<br><br>June 15, 2023 |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR PROTECTIVE ORDER RESPECTING DEPOSITION**

Plaintiffs bring causes of action for negligence, negligent supervision, and negligent infliction of emotional distress based on the failure of U.S. Department of Veterans Affairs (VA) officials to redress longstanding and pervasive race discrimination in the adjudication of veterans' benefits. Am. Compl. ¶¶ 207, 215-218, 223-25. The knowledge of those officials and the steps they did or did not take at different times is directly relevant to Plaintiffs' claims. To that end, Plaintiffs noticed the deposition of Margarita Devlin, a former official at VA's Veterans Benefits Administration (VBA) who also served as the official in charge of agency-wide training initiatives. Ms. Devlin worked at VA for nearly 25 years, covering a significant period relevant to this litigation. She was responsible for overseeing the VBA at a time when Plaintiffs allege that the agency buried an internal study documenting racial disparity in benefits adjudications. Am. Compl. ¶¶ 68-70. Ms. Devlin has since left VA and now works for the Department of Labor, but Plaintiffs do not intend to question Ms. Devlin about her current role.

1

Defendant has moved for a protective order to shield Ms. Devlin from a deposition, arguing that she is a high-ranking official. ECF No. 34. The motion should be denied. Ms. Devlin did not (and does not) occupy a cabinet-level post, and was several rungs below any person holding a title that courts generally consider to be sufficiently "high-ranking" so as to require exceptional circumstances for a deposition. Consequently, Plaintiffs need not make any special showing to justify taking her deposition. But even if a higher showing were required here, Plaintiffs would easily meet it. Because of Ms. Devlin's role in VA benefits adjudication and administration, she possesses unique first-hand knowledge about (1) racial disparities within VA benefits programs; (2) the knowledge of senior VA officials about these racial disparities; and (3) the failure of senior VA officials to redress these disparities through more effective training, supervision, and other responsible management practices. Each of these topics is directly relevant to Plaintiffs' claims. Tellingly, despite opposing Ms. Devlin's deposition, Defendant has not identified any alternative sources for information about each of these issues.

For the reasons set forth below, Plaintiffs respectfully submit that Ms. Devlin may be deposed pursuant to Fed. R. Civ. P. 26(b) and 30, and Defendant's motion should be denied.

**I. ARGUMENT**

"An order precluding the deposition of a witness is of course the exception rather than the rule in federal court." *American News & Information Servs. v. Rovella*, Docket No. 3:15-cv-1209 (RNC), 2017 U.S. Dist. LEXIS 140059, at *16 (D. Conn. Aug. 30, 2017), *quoting Martin v. Valley Nat. Bank of Ariz.*, 140 F.R.D. 291, 314 (S.D.N.Y. 1991); *see Inv. Properties Int'l, Ltd. v. IOS*, Ltd., 459 F.2d 705, 708 (2d Cir. 1972) ("[A]n order to vacate a notice of taking [of a deposition] is generally regarded as both unusual and unfavorable.").

Defendant has failed to meet its burden for granting a protective order in this case. First, to require a heightened showing of need, Defendant must first demonstrate that Ms. Devlin is sufficiently "high ranking" to protect her from discovery. But it has not done so; most of the cases Defendant relies upon involved cabinet-level officials or their close collaborators. Ms. Devlin is and was none of those things. Second, even if she were to be considered a "high ranking" official such that a heightened showing of need were required, her deposition should still be permitted because of her "unique firsthand knowledge" of the inner workings of the VA's administration of benefits. *Lederman v. New York City Dept. of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013). Moreover, the likely benefit of the information gained from Ms. Devlin outweighs the burden or expense of a single deposition.

**A. A special showing of need is not required for Ms. Devlin's deposition because she is not a "high-ranking government official."**

Ms. Devlin is not so "high ranking" as to merit limiting discovery. Courts have typically only required special justification for deposing a government official when the official is "at the apex of their organization." *SEC v. Comm. on Ways & Means of the United States House of Representatives*, 161 F. Sup. 3d 199, 250 (S.D.N.Y. 2015). Ms. Devlin is not such an official: She is currently a Deputy Assistant Secretary of Labor, head of one of approximately twenty subcomponents in the U.S. Department of Labor. Her position is not one that requires Presidential nomination or Senate approval, and she does not report directly to any cabinet-level officials. Although Ms. Devlin's work is no doubt important and she does exercise supervisory responsibilities, that is not enough to shield her from discovery. As one court in this circuit has observed, to permit a deposition of a government official who does not sit at the "apex" of an organization "is not to say that they do not provide important, maybe critical, professional services to state government[. A deponent] may have direct and daily contact with the Governor

or the Secretary on vital issues of the day. But within the context of this rule, it is a matter of degree of importance that will determine who will be cloaked with this protection." *New York v. Oneida Indian Nation of New York*, No. 95-CV-554, 2001 U.S. Dist. LEXIS 21616, 2001 WL 1708804, at *4 (N.D.N.Y. Nov. 9, 2001).

For that reason, courts routinely hold that the heightened requirements for discovery of apex-level officials do not apply to other government officials, even when they have significant daily responsibilities and supervisory duties. *See In re Terrorist Attacks on September 11, 2001*, Docket No. 03-MDL-01570 (GBD)(SN), 2020 U.S. Dist. LEXIS 166886, at *284 (S.D.N.Y. Aug. 27, 2020) (apex doctrine did not apply to deponent because he "was not a cabinet-level official"); *Oneida Indian Nation*, 2001 WL 1708804, at *1 (N.D.N.Y. Nov. 9, 2001) (Associate Governor Counsel and Special Advisor were not positions warranting the protections of the high ranking official privilege); *Marisol A. by Forbes v. Giuliani*, 95 Civ. 10533 (RJW), 1998 U.S. Dist. LEXIS 3719, at *4 (S.D.N.Y. Mar. 23, 1998) (permitting deposition of New York City's former Commissioner of Investigation).

In the few instances where courts *have* required a special showing for discovery in connection with officials who are not at the highest point of the organizational chart, the officials have typically been closely connected to the head of the agency. In *United States v. Sensient Colors, Inc.*, for instance, the court held that the magistrate judge correctly found the EPA Regional Administrator for Region 2 to be a "high-ranking government official" because he "reports directly to the EPA Administrator, who in turn reports directly to the President of the United States." 649 F.Supp.2d 309, 321 (D.N.J. 2009).

Ms. Devlin's current role does not qualify her as such a "high-ranking government official" that she should be presumptively protected from deposition. As the Deputy Assistant

Secretary for Operations and Management at the U.S. Department of Labor, Veterans' Employment and Training Service (VETS), Devlin is several steps removed from the head of the agency. Above her in the chain of command are the Assistant Secretary of VETS, the Deputy Secretary of Labor, and finally the Secretary of Labor. June 15, 2023 Declaration of Meghan Brooks at Exhibit A (U.S. DEPT. OF LABOR, ORGANIZATIONAL CHART, https://www.dol.gov/general/aboutdol/orgchart) [hereinafter "Brooks Decl."]. Additionally, she is part of the leadership team of one of over twenty subcomponents—VETS—within the Department of Labor. *See Bolden v. FEMA*, Docket No. 06-4171, 2008 U.S. Dist. LEXIS 12013, at *5 (E.D. La. Feb. 15, 2008) (in allowing the deposition of FEMA's Assistant Administrator for Mitigation, relevant that "the Mitigation Directorate branch is one FEMA's many sections").

Further, other than a brief statement that Ms. Devlin's "current duties and time constraints are especially significant"—an assertion that presumably applies to a large percentage of the Federal government's workforce—Defendant has failed to show why a deposition would "significantly interfere with [her] ability to perform [her] governmental duties. *Toussie*, 2006 U.S. Dist. LEXIS 47511, 2006 WL 1982687. *See Raba v. Suozzi*, Docket No. CV 06-1109 (DRH) (AKT), 2007 U.S. Dist. LEXIS 111253, at *11-12 (E.D.N.Y. Jan. 24, 2007) (in determining whether an apex-level deponent should be shielded from discovery, appropriate to consider that party moving for a protective order made no detailed factual showing of the deponent's daily duties and responsibilities).[1]

Defendant also cannot prohibit Ms. Devlin's deposition by citing to her former position at the VBA. First, Ms. Devlin reported to the Under Secretary for Benefits, who in turn was under

---

[1] Defendant does not provide declarations or other evidence regarding Ms. Devlin's current role or duties in support of its motion. *See* ECF 34-1, at 11 (describing current position based on assertions of counsel).

5

the Chief of Staff of the Secretary of Veterans Affairs and was not sufficiently high-ranking to be protected by the doctrine. *See* Brooks Decl., Ex. F (U.S. DEPT. OF VETERANS AFFAIRS, FUNCTIONAL ORGANIZATION MANUAL VERSION 7.0, VOLUME 1: ADMINISTRATIONS, Figure 1, VA Organization Chart (2022) ("VA Manual")). Second, even if the Court were to find that the Principal Deputy Under Secretary for Benefits (PDUSB) is a high-ranking government official, "that [a deponent is] not [a] *current* high-ranking official[] is a factor when considering whether the information can be obtained through less burdensome means and whether the deposition will interfere with the official's government duties." *SEC v. Comm. on Ways & Means of the United States House of Representatives*, 161 F. Sup. 3d 199, 249 (S.D.N.Y. 2015); *see also Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 2014 WL 7183962, at *2 (S.D.N.Y. 2014); *Willingham v. Ashcroft*, 226 F.R.D. 57, 65 (D.D.C. 2005) (allowing deposition of former Drug Enforcement Administrator Donnie Marshall).

Courts have applied the *Lederman* principles sparingly, and primarily to senior officials genuinely at the apex of their organization. Ms. Devlin's current role at the Department of Labor and her prior one at VA are not the kind of roles to which the *Lederman* principles apply.

**B. Even if Ms. Devlin counts as a "high-ranking" official, a deposition is appropriate because it will focus on her unique first-hand knowledge.**

Even if the Court were to find that Ms. Devlin is a "high-ranking government official," the deposition should still be permitted because Ms. Devlin has "unique first-hand knowledge" of the inner workings of VA and racial disparities in the administration of veterans' benefits programs, information that is directly relevant to Plaintiffs' claims. *Lederman*, 731 F.3d at 203.

As Ms. Devlin explained in a declaration submitted in U.S. district court in 2020, during her time at VA, she held a variety of duties that encompassed all levels of benefits administration and supervision:

> I am the Principal Deputy Under Secretary for Benefits at the Department of Veterans Affairs (VA). In this position, I serve as second in command in the Veterans Benefit Administration (VBA), which administers benefits programs for veterans, their dependents, and survivors. I oversee a nationwide network of 56 regional offices, special processing centers, and VBA headquarters in Washington, D.C. I have worked for VA in various roles since 1995. Prior to becoming Principal Deputy Under Secretary in May 2018, I served as Executive Director of VBA's Benefits Assistance Service. In that position, I led policy development, planning, training and quality assurance for VBA's Direct Contact Services.[2]

Plaintiffs allege that during the period of time Ms. Devlin served in these roles, VBA officials did not set policies, provide training, or implement quality assurance programs sufficient to prevent or remedy racial discrimination in benefits administration. Am. Compl. at 11. Ms. Devlin is likely to have relevant information about these issues, which are central to Plaintiffs' claims. For example, Ms. Devlin was in a senior position in the Veterans Benefits Administration in 2017 when an internal report was produced detailing the racial disparities present in the denial rate for PTSD claims in 2011-16. *See* ECF 28-3 (copy of 2017 internal VA report).[3] The 2017 VA report found that Black veterans had the lowest PTSD benefits grant rate of all demographics despite having a higher rate of PTSD diagnosis. *Id.*; *see also* Am. Compl., ECF 36 at ¶ 69 (discussing same report). As alleged in the Amended Complaint, "VA leaders refused to release this [2017] report publicly, took no steps to redress the dramatic racial disparities VA itself had uncovered, and failed to meaningfully change its benefits administration processes to account for and rectify these discrepancies." *Id.* at ¶ 70; *see also* Brooks Decl., Ex. E *(Quil Lawrence, Black veterans are less likely to be approved for benefits, according to VA documents*, NPR (Mar. 24,

---

[2] Brooks Decl., Ex. B (Declaration of Margarita Devlin dated Aug. 13, 2020, *Nehmer v. U.S. Department of Veterans Affairs*, No. 3:86-cv-06160-WHA (N.D.Cal.), ECF No. 468-2.)
[3] Brooks Decl., Ex. C (Margarita Devlin, LINKEDIN (June 13, 2023, 8:30pm), https://www.linkedin.com/in/margarita-devlin). These were the very years in Plaintiff Conley Monk Jr. was pursuing a claim for disability benefits for PTSD through multiple VA denials and appeals. Am. Compl., ECF 36 at ¶¶ 121.

2023) ("[T]he whistleblower describes how this internal report was produced for senior VA officials in 2017. Then, . . . it was buried.")).

VA officials' knowledge of racial disparities and failure to take necessary steps to prevent racial disparities in administration of benefits is at the core of Plaintiffs' claims in this litigation. The nature of her role means that Ms. Devlin possesses first-hand knowledge of (1) awareness by VA senior officials of evidence of pervasive racial disparities in benefits, such as those documented in the 2017 VA report; and (2) any steps that may or could have been taken by VA to rectify racial disparities, such as employee and supervisor training, quality control, or auditing in the administration of veterans' benefits.

From 2018 to 2021, as Principal Deputy Under Secretary for Benefits (PDUSB) at VA, Ms. Devlin was responsible for "policy, program oversight and delivery of the range of VA benefits programs for Veterans." VA Manual at 7. The PDUSB "oversees programs and operations critical to VBA's mission in meeting Veteran needs with benefit programs addressing education, home loan guaranty, insurance, disability compensation, pension, fiduciary, Veteran readiness and employment and transition assistance, as well as outreach, strategic engagement and strategic program management to implement high performing, *standardized* and effective business practices and customer experience initiatives." (emphasis added) *Id*. The PDUSB also "[l]eads VBA in defining the corporate code of ethics, vision, principles, policies, goals, expectations, and the lines of authority through which those will be actualized." *Id*. at 8.

Per Ms. Devlin's own contemporaneous testimony, she had a bird's eye view of agency-wide initiatives and reforms, information that is also relevant to Plaintiffs' claims and the alleged failure to address systemic discrimination in a systemic manner. For example, in April 9, 2019 testimony to the House Committee On Veterans' Affairs, Subcommittee on Economic

Opportunity, Ms. Devlin testified on behalf of the Under Secretary for Benefits at the VBA that the "Under Secretary for Benefits [has] overall responsibility for Veterans benefit programs to support economic opportunity and transition, by providing vocational rehabilitation, education assistance, and housing programs, as well as compensation, pension, survivors' benefits, and insurance" and touted the VBA's "modernization" and "organizational restructuring that fundamentally changed the way it operates," demonstrating first-hand knowledge of systemic changes at the division. Brooks Decl., Ex. D (*Hearing on HR 95, HR 444, HR 1718 Before the H. Veterans' Affs. Subcomm. on Econ. Opportunity*, 116th Cong. 7 (2019) statement of Margarita Devlin).

Plaintiffs have good faith reason to believe that Ms. Devlin possesses unique information about core facts at issue in this litigation based on allegations made by a former VA official, as indicated in Plaintiff's Opposition to Defendant's Motion to Stay Discovery, ECF 28 at 12 (n.5). The official alleged that Ms. Devlin circulated a report during a routine meeting of VA senior officials in 2017 that explicitly showed that Black veterans were more likely to be denied VA benefits than white veterans. Zhang Decl. at 1. A deposition of Ms. Devlin is therefore likely to yield admissible information uniquely within her possession concerning VA's knowledge of and response to known racial disparities in benefits administration.

In sum, Ms. Devlin has information that is relevant to Plaintiffs' claims. The litigation alleges systemic issues across the VA system and a failure to appropriately supervise the adjudication of claims and administration of benefits systems to rectify racial disparities. Defendant does not assert that such information can be obtained through other means short of a deposition or from other sources. In these circumstances, the *Lederman* test recognizes that a

deposition may be appropriate if "the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman*, 731 F.3d at 201.

> **C. The deposition of Ms. Devlin is likely to produce information relevant to parties' claims and defenses and is proportional to the needs of the case.**

Defendant argues that a deposition of Ms. Devlin would be "pointless" and would thus impose an undue and disproportionate burden under Fed. R. Civ. P. 26, citing *Stavola v. Northeast Utilities*, No. 3:05-cv-998 (JBA), 2006 WL 2850414, at *1 (D. Conn. Oct. 4, 2006). In *Stavola*, this Court denied a defendant's Motion to Compel the deposition of an attorney for the plaintiff on the basis of his representations to the parties and the Court that his lack of recollection meant a deposition would yield no information relevant to litigation and that, regardless, all of his communications with the plaintiff would be protected by the attorney-client privilege.

To support its comparison to *Stavola*, Defendant contends that between 2018-2021, Ms. Devlin had no interactions with Plaintiff, and "has never had a direct role in the determination of VA benefits; nor did she directly supervise staff who held such roles." ECF No. 34-1 at 8. Defendant elaborates on Ms. Devlin's distance from individual claims determinations: "The layers between her and the employees who processed claims included, at a minimum, the Deputy Under Secretary for Field operations; District Directors (5); Regional Office Directors (50+); and Service Center managers (50); plus assistant service center managers and supervisors of teams." ECF No. 34-1 at 8. But those factors are precisely why a deposition *is* warranted: in her various roles at VA, she knew—or should have known—about racial disparities, knowledge of those disparities among VA leadership, and the steps being taken to remedy racial disparities in benefits adjudication *at all levels* of the VBA. Moreover, because the litigation does not seek to reopen or examine any person's individual claims for benefits, it is irrelevant whether Ms.

Devlin has personal knowledge of individual benefits decisions or Mr. Monk's injuries. Plaintiffs do not seek to depose Ms. Devlin about the determination of VA benefits for any individual claimant. Instead, they seek to depose her about systemic issues at VA, of which she had direct first-hand knowledge (see Section B, *supra*).

Defendant further asserts on behalf of Ms. Devlin, but not through a signed affidavit or declaration from Ms. Devlin, *see* ECF No. 34-1 at 4 (n.7), that she does not recall a 2017 report that Plaintiffs cited in their Complaint. But that is a straw man. Plaintiffs do not solely seek to depose her as to whether she knew or should have known about the 2017 report or the topics it covered. The 2017 report is only one issue of several that Plaintiffs will address pertaining to Ms. Devlin's unique first-hand knowledge of systemic issues across the VA and VA officials' failure to take adequate steps to prevent racial disparities in the administration of benefits. Additionally, Plaintiffs do not seek discovery on Ms. Devlin's privileged communications with her counsel.

Finally, the likely benefit of the information gained from Ms. Devlin outweighs the burden or expense of a single deposition. In determining whether the burden of proposed discovery outweighs its likely benefit, a court takes into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C). Plaintiffs, on behalf of a proposed class of Black veterans who were harmed by Defendants' failure to administer VA benefits in a non-discriminatory way, have noticed a single deposition of a non-cabinet-level government official who possesses relevant first-hand knowledge of facts at the center of their Amended Complaint.

To the extent that Defendant objects to the video or audio recording of Ms. Devlin's deposition, *Id*. at 5 (n.8), Plaintiff is amenable to limiting recording to stenographic means.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion for a protective order respecting the notice of deposition for June 23, 2023.

Dated: June 15, 2023
New Haven, Connecticut

Respectfully Submitted,

By: /s/ Michael Wishnie
Hillary Browning, Law Student Intern[*]
Ethan Dilks, Law Student Intern[*]
Michelle Fraling, Law Graduate
Adam Henderson, Law Graduate
Beatrice Pollard, Law Graduate
Claire Sullivan, Law Student Intern
Natalia Friedlander[**]
Michael J. Wishnie, ct27221
Veterans Legal Services Clinic
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
michael.wishnie@ylsclinics.org

[*] Motion for law student appearance forthcoming
[**] Motion for admission forthcoming
[†] Motion for admission *pro hac vice* forthcoming

Yaman Salahi, *pro hac vice* filed
ysalahi@edelson.com
EDELSON PC
150 California St., 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jimmy Rock[†]
jrock@edelson.com
EDELSON PC
1255 Union Street NE, 7th Floor
Washington, D.C. 20002
Tel: 202.987.6303

Theo Benjamin[†]
tbenjamin@edelson.com
Zoë Seaman-Grant[†]
zseaman-grant@edelson.com
EDELSON PC
350 North LaSalle St., 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378