UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONLEY F. MONK, Jr., : | |
| *Plaintiff*, : | |
| : | |
| v. : | No. 3:22-cv-1503 (JBA) |
| : | |
| THE UNITED STATES OF AMERICA, : | June 26, 2023 |
| *Defendant*. : | |

## **REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Defendant United States replies in support of its motion for protective order, ECF No. 34, and in response to Plaintiff's opposition brief, ECF No. 39, to address four substantive issues.[1]

Although the proposed date of the deposition, June 23, 2023, is now in the past and Plaintiff has withdrawn the notice of deposition, Defendant's motion for a protective order specific to Ms. Margarita Devlin remains appropriately before the Court. Plaintiff reserved the right to re-notice Ms. Devlin's deposition after June 30, 2023, and the issue of whether her deposition should be taken (at any point) in this matter, and specifically at *this juncture*—against the backdrop of Defendant's subject matter jurisdiction challenges, ECF No. 23, and the pending motion to stay discovery, ECF No. 24—remains.

### I. **Plaintiff has now twice conceded that obtaining Ms. Devlin's deposition (or indeed, any evidence) is not relevant to subject matter jurisdiction.**

Like his opposition to Defendant's motion to stay all discovery, Plaintiff's opposition brief to the motion for protective order again concedes that Plaintiff does not seek Ms. Devlin's deposition in order to respond to Defendant's arguments that the Court lacks subject matter jurisdiction. *Compare* Mem. in Supp. of Mot. for Protective Order Respecting Deposition at 12-

---

[1] The May 11, 2023, Notice of Deposition for Ms. Devlin was issued on behalf of a single plaintiff. *See* ECF No. 34-3. For this and other reasons, which Defendant can address at the June 30 prefiling conference, ECF No. 37, Defendant refers to Plaintiff in the singular.

13, ECF No. 34-1 (arguing deposition is not necessary to respond to motion to dismiss) (Mot. for Protective Order) *and* Mem. in Supp. of Mot. to Stay Discovery at 12, ECF No. 24-1 (Mot. to Stay Discovery) (arguing Plaintiff does not require discovery to respond to Defendant's motion to dismiss) *with* Pls.' Br. in Opp. to Def.'s Mot. for Protective Order Respecting Depo. Opp., *passim*, ECF No. 39 (Opp.) (failing to show relevance of proposed deposition to subject matter jurisdiction) *and* Pl.'s Br. in Opp. to Def.'s Mot. to Stay Discovery, *passim*, ECF No. 28 (failing to show relevance of any proposed evidence to subject matter jurisdiction).

Defendant therefore remains concerned that Plaintiff persists in seeking Ms. Devlin's deposition for some purpose *other than* litigating the merits of this case. Defendant requested that Plaintiff hold the date of this deposition in abeyance, pending the Court's ruling on Defendant's motion to stay discovery and Defendant's subject matter jurisdiction challenges, but Plaintiff refused. *See* N. Elicker Decl. ¶¶ 5 & 12 ("Elicker May 30 Decl."), ECF No. 34-2.[2]

Plaintiff's repeated statements that he wants to discuss potential disparities in "benefits adjudication and administration" with Ms. Devlin reaffirms the need for a stay of all discovery. *See* Opp. at 2, 9. The Court lacks subject matter jurisdiction to review questions of law and fact relating to the provision of benefits, which are expressly covered by the Veterans' Judicial Review Act (VJRA). 38 U.S.C. § 511(a). This is true regardless of whether a plaintiff argues that its claims are based on individual benefits determinations or alleged "systemic" benefits issues. *See, e.g.*, Mem. in Supp. of Mot. to Dismiss at 24, ECF 23-1. Plaintiff is therefore pushing for

---

[2] Although Plaintiff insisted that the deposition was critically important, he never moved to compel Ms. Devlin's attendance at the June 23 deposition—despite Defendant's unequivocal statements on April 27, 2023, and May 11, 2023, that it would not produce her, prior to a ruling on the motion to stay discovery, absent a court order. Elicker May 30 Decl. ¶¶ 5 & 11(d)-(e).

discovery into the very topic that deprives this Court of jurisdiction in the first instance.[3] Such discovery is inappropriate given Defendant's multiple meritorious subject matter jurisdiction arguments, currently pending before the Court. If the Court agrees that subject matter jurisdiction is lacking, Plaintiff has no right to any of this discovery.

Respectfully, this case should follow the standard course for cases where the defendant challenged jurisdiction pursuant to the VJRA. It appears that, in the cases briefed in connection with Defendant's pending motion to stay all discovery, no depositions were taken prior to the courts' rulings on the defendants' motions to dismiss based on the VJRA. *See* Mot. to Stay Discovery at 6 (citing cases); Reply in Supp. of Mot. to Stay Discovery at 2-3, ECF No. 29 (citing cases); *Jones v. Nicholson*, No. 1:07-cv-165 (WLS), 2011 WL 2160918, at *2 (M.D. Ga. June 1, 2011) (noting that the Court had stayed discovery pending resolution of the defendant's motion to dismiss on VJRA grounds); *Veterans for Common Sense v. Nicholson*, No. C-07-3758 SC, 2008 WL 114919, at *1 (N.D. Cal. Jan. 10, 2008) (same); *Brown v. Dept. of Vet. Aff.*, No. 4:05-cv-40027, Mem. & Order at 2, 5, ECF No. 32 (D. Mass. Jan. 11, 2006) (denying plaintiff's motion to compel discovery; ordering that "[u]ntil the Court is satisfied that it has subject-matter jurisdiction in this case, any further discovery is premature. The Court will therefore issue a stay of discovery until the legal sufficiency of the complaint is resolved.").

Plaintiff has been fully aware of Defendant's challenges to subject matter jurisdiction since March 31, 2023. *See* Mot. to Dismiss, ECF No. 23. On June 5, 2023, rather than respond to Defendant's arguments, Plaintiff "amended" his complaint principally to attempt to add new

---

[3] Notably, Plaintiff acknowledges, but claims it is "irrelevant," that Ms. Devlin has no knowledge about Monk specifically or his individual benefits determinations, despite those determinations forming the crux of his claims and alleged damages. Opp. at 10-11. Instead, Plaintiff apparently seeks a sweeping deposition into the VA's administration of benefits and decision-making process—discovery to which he remains unentitled in this action, in this Court.

plaintiffs, new factual allegations respecting benefits administration data, and generalized references to the tort law of Washington, D.C. *See, e.g.*, Am. Compl. ¶¶ 41-43, 64, 203-204, 211-212, 221-222, ECF No. 36.[4] Nothing in the purported amended complaint even attempts to address Defendant's subject matter jurisdiction arguments, let alone to establish jurisdiction.

If the Court is not presently convinced that Ms. Devlin should *never* be deposed in connection with this matter, as Defendant has requested, then alternatively, Defendant respectfully requests that the Court order that Plaintiff not re-notice her deposition unless and until Defendant's motion to stay discovery is denied, and/or Defendant's challenges to subject matter jurisdiction are resolved.

II.    **Plaintiff's opposition misconstrues *Lederman* and fails to establish extraordinary circumstances for deposing Ms. Devlin.**

Plaintiff's brief identifies cases where certain government officials were not found to implicate the *Lederman* test, Opp. at 3-4, but he does not find error with Defendant's cases, Mot. for Protective Order at 10, which support that Ms. Devlin—a career employee who reports

---

[4] Neither has anything in Plaintiff's filing on this motion helped him clear the hurdle of alleging a tort claim. Rather, some of Plaintiff's arguments in these papers about Ms. Devlin's knowledge of the VA's general administration of benefits, *e.g.*, Opp. at 3, are suggestive of a new and different problem for the viability of Plaintiff's claims. By its terms, the Federal Tort Claims Act's (FTCA) limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain torts *committed by federal employees* acting within the scope of their employment. *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012) ("[The] FTCA directs courts to consult state law to determine whether the government is liable for the *torts of its employees*.") (emphasis added). The terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Adams v. United States*, 420 F.3d 1049, 1052-55 (9th Cir. 2005). Hence, a plaintiff cannot assert "systemic" claims or seek to hold the United States directly liable under the FTCA but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment, for whom the United States has assumed liability under the FTCA. *See, e.g.*, *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6 (D. Ariz. Sept. 18, 2020) (applying *Adams* and dismissing claims of "generalized negligence" asserted against staff and employees of federal institutions "as a whole" for lack of jurisdiction).

*directly to* a political appointee—*is* sufficiently high-ranking for the test to apply. Plaintiff also misconstrues the law. The *Lederman* test is not whether the potential deponent occupies a cabinet level post—such a title is not necessary to be entitled to protection from deposition. Ms. Devlin was,[5] and is, employed in a high-level government position that fits the *Lederman* principles. Indeed, given that Ms. Devlin now occupies a high-level position within a government department that has no connection to this case and would be burdened by her deposition, the public policy reasons for not subjecting her to a deposition may be even stronger.

Since Ms. Devlin's proposed deposition implicates various factors considered under the *Lederman* test, the Court should be wary of Plaintiff attempting to depose Ms. Devlin before pursuing less burdensome, more obvious routes for obtaining information. For example, Plaintiff does not currently attempt to depose any individual who was directly involved in rendering the adverse benefits decisions that underlie Plaintiff's alleged harm.[6]

---

[5] Plaintiff's brief suggests that only Ms. Devlin's current position matters; not her former position. Opp. at 5-6 (criticizing Defendant's assertions regarding Ms. Devlin's former position). This is not the law. The law protects former executives as well as current executives. *Rodriguez v. SLM Corp.*, 2010 WL 1286989, at *2 (D. Conn. Mar. 26, 2010) (quashing depositions for two former executives; *see also Cruz v. Green*, No. 18 Civ. 60995, 2019 WL 5208913, at *3 (S.D. Fla. Feb. 7, 2019) ("[A] former high ranking public official . . . is entitled to heightened protection from deposition even after leaving office, similar to the ongoing protections afforded to former executives in the private sector."). Thus, Ms. Devlin's former, high-ranking position absolutely should bear on the Court's analysis.

[6] The parties may be able to discuss other potential sources of information, should it become necessary to do so, but as the Defendant has sought a stay of all discovery, it is disingenuous for Plaintiff to argue that Defendant needs to propose someone else in Ms. Devlin's place at this juncture. *See* Opp. at 2. The parties conferred multiple times respecting the proposed deposition, and at no point did Plaintiff's counsel seek an alternate deponent in lieu of Ms. Devlin or show any willingness to accept the deposition of any other person in her stead. Likewise, it is disingenuous for Plaintiff to critique Defendant for not providing an affidavit from Ms. Devlin. *See, e.g.*, Opp. at 5 n.1. Defendant could have been positioned to do so if Plaintiff had agreed to wait to serve a notice of deposition until after the Court ruled on Defendant's motion to stay all discovery.

Plaintiff concedes that Ms. Devlin has no "unique, first-hand knowledge" respecting Plaintiff's interactions with the Veterans Benefits Administration (VBA). *Compare* Opp. at 3, 6 *with* Mot. for Protective Order at 3-4, 8 (arguing that Ms. Devlin had no personal involvement in Plaintiff's interactions with the Department of Veterans Affairs (VA)). Instead, he claims the deposition is necessary due to her knowledge "of the inner workings of VA and racial disparities in the administration of veterans' benefits programs." Opp. at 3, 6. However, Plaintiff has not articulated the requisite "exceptional circumstances" to require Ms. Devlin's deposition.

**A.      Plaintiff has not specifically articulated what he seeks from Ms. Devlin's supposed knowledge of the benefits administration processes; and the information he has identified appears not to be unique to her.**

While conceding that Ms. Devlin has *no knowledge* of Plaintiff's contacts with the VA, Plaintiff alleges that Ms. Devlin has "'unique firsthand knowledge' of the inner workings of the VA's administration of benefits," Opp. at 3. The only "inner workings" that Plaintiff points to is the 2017 document. Thus, Defendant's assertion that Ms. Devlin does not remember the 2017 draft report is not a "straw man." *See* Opp. at 11. Plaintiff said he intends to question Ms. Devlin about the 2017 document; Defendant's response that she does not recall the document guts Plaintiff's proposed purpose for the deposition. Plaintiff attempts to avoid this outcome by stating he has "several" issues to question her about, without further detail. Plaintiff does not explain what unique knowledge he expects Ms. Devlin to have given she does not recall the document that plaintiffs claim was "buried."[7]

Additionally, Plaintiff's opposition demonstrates that any information Ms. Devlin has respecting the 2017 report is not "unique," and that at least one other source for that information

---

[7] Plaintiff persists in accusing the VA and Ms. Devlin of "burying" or hiding this document, but has *never* identified any law, regulation, or policy that required its disclosure to the public in 2017. *See* Reply in Support of Mot. to Stay Discovery at 7; Mot. for Protective Order at 4 n.6.

is available to Plaintiff. The opposition brief states (for the first time, to Defendant's knowledge) that Plaintiff's counsel has for two years been familiar with an anonymous "former official" of the VBA whose hearsay statements Plaintiff now relies on to attempt to compel Ms. Devlin's attendance at a deposition. *See* A. Zhang Decl. at 1 ¶ 3, ECF No. 39-2 (describing a 2021 interview of the "former official"). This person has apparently spoken to Plaintiff's counsel, and provided information to the media, and is no longer employed with the VBA. *See id.*; *see also* Pl.'s Br. in Opp. to Def.'s Mot. to Stay Discovery at 12 n.5 (referring colloquially to the person's statements to the media as "whistleblowing"); Opp. at 7-8 (same). Plaintiff offers no explanation for this person's continued anonymity, nor any explanation for why Plaintiff has not already served them with a Rule 45 subpoena for deposition testimony. But if the "former official" remembers a 2017 meeting at which the subject "report" was circulated, and remembers the document, then any information Ms. Devlin has regarding that meeting and document (which she does not recall) is not "unique." And Plaintiff must concede that the "former official" could provide the sought-after testimony instead. Plaintiff could start with attempting to depose that person, instead of Ms. Devlin.

> **B.     Plaintiff's opposition concedes that there is no causal connection between Ms. Devlin's role at the VBA and any alleged harm to Plaintiff.**

Plaintiff claims that Ms. Devlin's role at the VBA in 2017 exposed her to information regarding 2011-2016, "the very years in [which] Plaintiff Conley Monk Jr. was pursuing a claim for disability benefits," Opp. at 7 n.3; yet by focusing on this time frame, Plaintiff's opposition brief confesses that there can be no causal chain connecting Plaintiff's alleged harm to Ms. Devlin (or her knowledge of the VBA's "inner workings"), because any alleged *harm* Plaintiff experienced *predated* Ms. Devlin's time in that VBA position. The VBA rejected Plaintiff's benefits applications in 1971, 1976, 1982, 1983, and 2010. In 2015, Plaintiff's 2012 application

7

was retroactively granted. Thus, Ms. Devlin's knowledge the VBA starting in 2011 corresponds to Plaintiff's *successful* application for benefits.[8] If the Plaintiff is asking this Court to recognize a tort based on the inchoate burdens that are inherent in perfecting a *successful* administrative claim, the Defendant asks the Court to reject that request.

        **C.**        **Plaintiff's reliance on Ms. Devlin's testimony in a regulatory matter in California helps show why discovery should not proceed in this court.**

To demonstrate Ms. Devlin's knowledge of veterans' benefits programs, Plaintiff points to Ms. Devlin's witness statement in a wholly unrelated matter pending for decades in California, in which plaintiffs challenged VA regulations respecting disability as a result of Agent Orange. *See* Opp. at 6, citing *Nehmer v. U.S. Dept. of Vet. Aff.*, No. 3:86-cv-6160-WHA (N.D. Cal., filed Oct. 31, 1986). The case provides a helpful contrast to Plaintiff's attempt to depose Ms. Devlin in two ways. First, the case was not a supposed tort action, like this case. Second, the case remains pending in Federal District Court, rather than the Federal Circuit, solely because plaintiffs had commenced their lawsuit years before a relevant, jurisdiction-stripping statute became law. *See id.*, Order on Mot. for Enforcement of Final Judgment at 7, 9, ECF No. 492 (Nov. 5, 2020) (attached, pursuant to Chambers practices). The district court only retained jurisdiction because the case was filed before 1989. *Id.* at 9 ("Challenges to VA action must, today, be brought before the Federal Circuit. But this rule did not exist until 1989, two years after plaintiffs filed this lawsuit challenging a VA regulation. Reviewing the pertinent legislative history, Judge Henderson determined that Congress meant to preserve actions filed before September 1989, affirming prior circuit decisions allowing judicial review. Thus, this Court

---

[8] Similarly, any impact the 2017 draft report might have had, had the VA released it in 2017 rather than in 2021 in compliant response to Plaintiff's FOIA request, would have occurred *long after* Plaintiff's allegedly harmful interactions with the VBA. Likewise, any knowledge Ms. Devlin has regarding what was or was not done in response to the 2017 draft report had nothing to do with any of Plaintiff's benefits applications—the unsuccessful ones or the successful one.

retained (and retains) jurisdiction over plaintiffs' claims."). Here, the VJRA predates Plaintiff's suit and strips this Court of jurisdiction.

## CONCLUSION

For all the foregoing reasons, the United States respectfully requests that the Court issue a protective order forbidding Plaintiff from deposing Ms. Devlin, or in the alternative, forbidding Plaintiff from issuing a re-notice of her deposition unless and until Defendant's motion to stay discovery is denied, and/or Defendant's challenges to subject matter jurisdiction are resolved.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Natalie N. Elicker*
Natalie N. Elicker (ct28458)
ASSISTANT U.S. ATTORNEY
157 Church Street, 25th Floor
New Haven, CT 06510
T: (203) 821-3700
F: (203) 773-5373
Natalie.Elicker@usdoj.gov