## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

CONLEY F. MONK JR., on behalf of
himself and as Administrator of the Estate
of CONLEY F. MONK, SR., and
NATIONAL VETERANS COUNCIL
FOR LEGAL REDRESS,

    *Plaintiffs*,

    v.

UNITED STATES OF AMERICA,

    *Defendant*.

No. 3:22-cv-01503-JBA

July 14, 2023

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

ORAL ARGUMENT REQUESTED*

\* Plaintiffs are mindful of the Court's intent to assume inactive status on September 1, 2023 and are willing to waive oral argument to accommodate the Court's schedule. If the Court wishes to convene oral argument, Plaintiffs' counsel are available to attend a hearing, though law student intern availability may be limited in August 2023.

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTS AND PROCEDURAL HISTORY ......................................................... 3

      A.    Factual Background .............................................................................. 3

            1.    VA Officials Fail to Redress Race Discrimination in Veterans Benefits.... 3

            2.    Plaintiff Conley Monk, Sr. was Harmed by the Negligence of VA
                  Officials. ................................................................................... 5

            3.    Plaintiff Conley Monk, Jr. was Harmed by the Negligence of VA
                  Officials. ................................................................................... 6

            4.    Members of NVCLR Have Been Harmed by the Negligence of VA
                  Officials. ................................................................................. 10

      B.    Procedural History ............................................................................ 11

III.  LEGAL STANDARD ....................................................................................... 12

IV.   DISCUSSION .................................................................................................... 13

      A.    Section 511 Does Not Divest This Court of Jurisdiction. ................. 13

            1.    VA Does Not Have Exclusive Jurisdiction Over Plaintiffs' Tort Claims
                  and There Are No Other Meaningful Avenues for Relief. ........................ 15

            2.    Section 511 Does Not Apply Because VA Has Not Made a "Decision"
                  Regarding Plaintiffs' Tort Claims in the Course of a Benefits
                  Proceeding. ............................................................................... 18

            3.    Resolution of Plaintiffs' Claims for Negligent Supervision and Other Torts
                  Does Not Require Analysis of Individual Benefits Applications. ............... 20

            4.    By Its Plain Language, Section 511 Concerns Only Denial of Benefits,
                  Which Plaintiffs Do Not Challenge. ............................................... 21

      B.    Plaintiffs State a Claim Under the FTCA. ........................................ 25

            1.    Defendant Misstates the Standard for Waiver of Sovereign Immunity.... 26

            2.    Defendant Had a Duty of Care Towards Plaintiffs and is Liable for
                  Negligence in Breaching that Duty. ................................................. 28

            3.    Defendant is Liable for Negligent Infliction of Emotional Distress. ....... 33

            4.    Defendant is Liable for Negligent Supervision and Training of VA
                  Employees. ............................................................................... 34

      C.    Plaintiffs' Claims Are Timely. .......................................................... 35

            1.    Plaintiffs' Claims are Timely Under the Discovery Rule ....................... 36

            2.    Plaintiffs' Claims are Timely Under the Continuing Violations Doctrine 39

V.    CONCLUSION .................................................................................................. 40

# TABLE OF AUTHORITIES

**Cases**

*Akutowicz v. United States*,
859 F.2d 1122 (2d Cir. 1988) ............................................................................. 33

*Alessie v. Stop & Shop Supermarket*,
No. NNHCV186076540S, 2019 WL 6884533 (Conn. Super. Ct. Nov. 20, 2019) .......... 34

*Anestis v. United States*,
749 F.3d 520 (6th Cir. 2014) ............................................................................. 20

*Barrett v. United States*,
689 F.2d 324 (2d Cir. 1982) ............................................................... 36, 37, 38

*Bates v. Nicholson*,
398 F.3d 1355 (Fed. Cir. 2005) ......................................................................... 18

*Beamon v. Brown*,
125 F.3d 965 (6th Cir. 1997) ................................................................. 17, 21, 23

*Blair v. District of Columbia*,
190 A.3d 212 (D.C. 2018) ................................................................................. 35

*Brooks v. Sweeney*,
9 A.3d 347 (Conn. 2010) ................................................................................. 34

*Broudy v. Mather*,
460 F.3d 106 (D.C. Cir. 2006) .................................................................*passim*

*Cabral v. Touchpoints Homecare, LLC*,
No. CV 21-6118672, 2023 WL 142256 (Conn. Super. Ct., Jan. 3, 2023) ....................... 29

*Carroll v. United States*,
1:19-CV-1230 (GTS/DJS), 2020 WL 4284130 (N.D.N.Y. July 27, 2020)..................... 23

*C.P. Chem. Co. v. United States*,
810 F.2d 34 (2d Cir. 1987) ............................................................................. 33

*Connecticut Nat. Bank v. Rytman*,
694 A.2d 1246 (Conn. 1997) ........................................................................... 40

*Conyers v. United States*,
No. 16-CV-2816 (JFB) (SIL), 2018 WL 1157754 (E.D.N.Y. Jan. 31, 2018).................. 22

*Cortes Castillo v. Veterans Admin.*,
433 F. Supp. 2d 221 (D.P.R. 2006) ...................................................................23, 24, 25

*Cowan v. Yale Univ.*,
No. X08FSTCV216057967S, 2023 WL 369947 (Conn. Super. Ct. Jan. 17, 2023)..........31

*Croce v. Hall*,
657 A.2d 307 (D.C. 1995) ................................................................................................29

*Dambach v. United States*,
211 F. App'x 105 (3d Cir. 2006) ......................................................................................23

*Diaz-Bernal v. Myers*,
758 F. Supp. 2d 106 (D. Conn. 2010) ..............................................................................35

*Dingle v. Fleet Bank*,
No. CV00-00443028, 2001 WL 282922 (Conn. Super. Ct. Mar. 1, 2001) ......................33

*District of Columbia v. Cooper*,
483 A.2d 317 (D.C. 1984) ................................................................................................29

*Doe v. Saint Francis Hosp. & Med. Ctr.*,
72 A.3d 929 (Conn. 2013) ................................................................................................34

*Dumas v. Price Chopper, Inc.*,
No. WWMCV095004896S, 2010 WL 1889036 (Conn. Super. Ct. Mar. 31, 2010) .........34

*Feldheim v. Fin. Recovery Servs., Inc.*,
257 F. Supp. 3d 361 (S.D.N.Y. 2017) .......................................................................12, 13

*Figueroa v. United States*,
739 F. Supp. 2d 138 (E.D.N.Y. 2010) ..............................................................................33

*Flores v. United States*,
885 F.3d 119 (2d Cir. 2018) .............................................................................................39

*Gayer v. United States*,
No. 3:16-CV-00467-GNS-HBB, 2019 WL 2130155 (W.D. Ky. May 14, 2019) ............22

*Gonzalez v. Hasty*,
802 F.3d 212 (2d Cir. 2015) .......................................................................................39, 40

*Gore v. People's Sav. Bank*,
665 A.2d 1341 (Conn. 1995) ............................................................................................31

iv

*Guccione v. United States*,
670 F. Supp. 527 (S.D.N.Y. 1987) ................................................................38

*Gutierrez v. Thome*,
537 A.2d 527 (Conn. 1988) .........................................................................34

*Hanlin v. United States*,
214 F.3d 1319 (Fed. Cir. 2000) ...........................................................*passim*

*Hedgepeth v. Whitman Walker Clinic*,
22 A.3d 789 (D.C. 2011) ..................................................................30, 31, 32

*Hicks v. Small*,
842 F. Supp. 407 (D. Nev. 1993) .................................................................17

*Holmes v. Amerex Rent-A-Car*,
710 A.2d 846 (D.C. 1998) ...........................................................................29

*Indian Towing Co. v. United States*,
350 U.S. 61 (1955) ..........................................................................26, 27, 28

*In re Monk*,
No. 20079020, 2020 WL 8912950 (Bd. Vet. App. Dec. 15, 2020)....................9

*Jaworski v. Kiernan*,
696 A.2d 332 (Conn. 1997) ............................................................30, 32, 33

*Johnson v. Robinson*,
415 U.S. 361 (1974) ...................................................................................15

*Keranen v. Nat'l R.R. Passenger Corp.*,
743 A.2d 703 (D.C. 2000) ...........................................................................30

*King v. U.S. Dep't of Veterans Affs.*,
728 F.3d 410 (5th Cir. 2013) .........................................................21, 24, 25

*Klopp v. United States*,
131 F.3d 131 (2d Cir. 1997) ........................................................................33

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998) ........................................................................38

*Larrabee ex rel. Jones v. Derwinski*,
968 F.2d 1497 (2d Cir. 1992) .................................................................16, 17

*Liranzo v. United States*,
690 F.3d 78 (2d Cir. 2012) ................................................................. 26, 27, 28

*Lodge v. Arett Sales Corp.*,
717 A.2d 215 (Conn. 1998) ....................................................................... 29, 30

*Majid v. DOVA Med. Ctr.*,
No. 13-CV-2958 CBA, 2013 WL 3766559 (E.D.N.Y. July 11, 2013) ...................... 17, 23

*McKelveyv. Turnage*,
792 F.2d 194 (D.C. Cir. 1986) ......................................................................... 19

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ......................................................................................... 38

*Milbauer v. United States*,
587 F. App'x 587 (11th Cir. 2014) .................................................................. 21

*Monk v. Wilkie*,
No. 19-0217, 2020 WL 2461722 (Vet. App. May 13, 2020) .............................. 9

*Morse v. Conn. Cmty. for Addiction Recovery, Inc.*,
No. CV095005371S, 2010 WL 4074949 (Conn. Super. Ct. Sept. 15, 2010).................. 31

*Murphy v. Army Distaff Found., Inc.*,
458 A.2d 61 (D.C. 1983) .............................................................................. 34

*Names Redacted by Agency*,
1992 BVA LEXIS 3662 (Bd. Vet. App. February 25, 1992) ............................... 17

*Ojo v. United States*,
No. 20-cv-4882 (MKB), 2022 WL 4091011 (E.D.N.Y. Sept. 6, 2022) .......................... 33

*Peruta v. United States*,
No. 3:16-cv-2112 (VLB), 2018 WL 995111 (D. Conn. Feb. 21, 2018)......................... 33

*Philippeaux v. United States*,
No. 10 Civ. 6143 (NRB), 2011 WL 4472064 (S.D.N.Y. Sept. 27, 2011)........................ 22

*Price v. United States*,
228 F.3d 420 (D.C. Cir. 2000)..................................................................... 20, 21

*Raspberry Junction Holding, LLC v. Se. Connecticut Water Auth.*,
263 A.3d 796 (Conn. 2021) ........................................................................ 30

*Robinson v. District of Columbia*,
    580 A.2d 1255 (D.C. 1990) ........................................................ 32

*Roman Cancel v. United States*,
    598 F. Supp. 2d 227 (D.P.R. 2008) ..................................... 23, 24, 25

*Rosario Gonzalez v. United States*,
    898 F. Supp. 2d 410 (D.P.R. 2012) ........................................... 17

*Schwingle v. United States*,
    No. 20-CV-6394 CJS, 2022 WL 9462632 (W.D.N.Y. Oct. 14, 2022) ....................... 19, 23

*Shore v. Stonington*,
    444 A.2d 1379 (Conn. 1982) ...................................................... 34

*Storms v. United States*,
    No. 13-cv-811 MKB, 2015 WL 1196592 (E.D.N.Y. Mar. 16, 2015) ........................... 33

*Sugrue v. Derwinski*,
    26 F.3d 8 (2d Cir. 1994) ........................................................... 23

*Sugrue v. Derwinski*,
    808 F. Supp. 946 (E.D.N.Y. 1992) ............................................... 15

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
    752 F.3d 239 (2d Cir. 2014) ...................................................... 12

*Targonski v. Clebowicz*,
    63 A.3d 1001 (Conn. 2013) ........................................................ 40

*Thomas v. Principi*,
    394 F.3d 970 (D.C. Cir. 2005) ......................................... 18, 19, 24, 25

*United States v. Olson*,
    546 U.S. 43 (2005) ......................................................... 26, 27, 28

*Walton v. Sec'y Veterans Admin.*,
    187 F. Supp. 3d 1317 (N.D. Ala. 2016) .......................................... 23

*Washington v. Cnty. of Rockland*,
    373 F.3d 310 (2d Cir. 2004) ...................................................... 39

*Watson v. McDonough*,
    No. 21-3700, 2021 WL 5316773 (Vet. App. Nov. 16, 2021) ........................... 17

*Wilbur P.G. v. United States*,
No. 4:21-cv-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022) ..................... 35

*Williams v. Baker*,
572 A.2d 1062 (D.C. 1990) ................................................................................... 30

*Zamstein v. Marvasti*,
692 A.2d 781 (Conn. 1997) ................................................................................... 29

*Zuspann v. Brown*,
60 F.3d 1156 (5th Cir. 1995) ..........................................................................23, 25

**Statutes**

28 U.S.C. § 1346(b) ...........................................................................................13, 20, 25

38 U.S.C. § 303 ....................................................................................................... 31

38 U.S.C. § 511 ................................................................................................*passim*

Conn. Gen. Stat. § 46a-71 ......................................................................................... 33

Conn. Gen. Stat. §§ 46a-98 to -100 ........................................................................... 33

Conn. Gen. Stat. §§ 38a-488, 38a-447 ....................................................................... 33

Conn. Gen. Stat. § 38a-816 ....................................................................................... 33

**Misc**.

Fed. R. Civ. P. 12(b) ................................................................................................. 12

PROSSER, HANDBOOK OF THE LAW OF TORTS § 42, 53 (4th ed. 1971) ......................... 31

RESTATEMENT (2ND) OF TORTS § 42 (1965) ............................................................... 30

Veterans' Judicial Review Act of 1988, Pub. L. No. 100-687 (Nov. 18, 1988) ........... 14

## I.  <u>**INTRODUCTION**</u>

The U.S. Department of Veterans Affairs and its predecessor agencies ("VA") have engaged in catastrophic discrimination against Black veterans for generations. Upon the filing of this suit, the VA Press Secretary agreed that "unacceptable disparities" in VA benefits decisions have been "due to racism, which have wrongly left Black veterans without access to VA care and benefits."[1] Earlier this year, the Secretary of Veterans Affairs acknowledged "disparities based on race in VA benefits decisions,"[2] conceding that "in the data going back many years . . . there is a grant rate, for example, for service connection for PTSD that is higher for white veterans than for Black veterans."[3] This case challenges the negligence of VA officials who knew or should have known of these undisputed racial disparities and who failed to adjust training, supervision, quality control, data collection, and other management practices to redress them.

As a result of the negligence of these VA officials, Black veterans were subjected to a benefits adjudication system they experienced to be unfair, but did not know was discriminatory, until VA disclosed data revealing systemic racial disparities in recent Freedom of Information Act litigation. Black veterans had to walk into VA offices to complete forms, answer questions, produce records, and submit to examinations in a process that they now know was shot through with racism. Regardless of the outcome of any particular application, Black veterans subjected to this system suffered emotional, dignitary, and reputational harm from the negligent failure of VA officials to redress the longstanding racial disparities of which they knew or should have known.

Plaintiffs Conley F. Monk Jr., as himself and as Administrator of the Estate of his father Conley F. Monk, Sr., and the National Veterans Council for Legal Redress on behalf of its

---

[1] Alex Horton, *Racial discrimination by Veterans Affairs spans decades, lawsuit says*, Washington Post, Nov. 28, 2022, (quoting Terrence Hayes, VA Press Secretary).
[2] VA Secretary Press Conference, Mar. 2, 2023, https://www.youtube.com/watch?v=WnkNl2whPoQ (at 4:30).
[3] VA Secretary Press Conference, Mar. 2, 2023, https://www.youtube.com/watch?v=WnkNl2whPoQ (at 39:39).

members, are among those Black veterans harmed by the negligent failure of VA officials to redress these racial disparities. Having exhausted their administrative remedies under the Federal Tort Claims Act ("FTCA"), Plaintiffs seek relief for the familiar torts of negligence, negligent supervision, and negligent infliction of emotional distress.

Instead of repairing the harms it has caused, the United States moves to dismiss this action on four grounds. First, it claims that this case requires the Court to review individual benefits adjudications, for which this Court lacks jurisdiction. This is a case about negligent supervision, training, and management, however, and no part of the Court's analysis will require it to review the propriety of decisions by local VA line staff to grant or deny the applications of Mr. Monk Jr. or any other veteran. Plaintiffs do not seek judicial review of any VA benefits adjudication. Second, the United States argues that it retains sovereign immunity from liability for this sort of tortious conduct, but Congress expressly waived that immunity in enacting the FTCA. The government's assertion that there is no private analogue to the challenged conduct mis-applies the laws and miscomprehends the gravamen of Plaintiffs' complaint. None of the government's arguments shield it from liability for the historic injuries it has caused Black veterans. Third, Defendant argues that Mr. Monk and other Black veterans should have brought suit sooner. Yet Plaintiffs' claims are timely because the VA hid the facts in question, so Plaintiffs did not discover VA's systemic racism until the agency's recent disclosure of data, as well as because of VA's continuing violations. Finally, Defendant argues that Mr. Monk is precluded from bringing these claims because he previously challenged the VA's individual benefits claims, but no Plaintiff seeks review of any prior individual VA benefits decision.

The Court should deny Defendant's motion and allow Plaintiffs and members of the proposed class the opportunity to be heard on their claims. Generations of Black veterans harmed

by subjection to a discriminatory system, one that VA officials knew or should have known was corroded by racism but which they failed to address, deserve no less.

## II.　　FACTS AND PROCEDURAL HISTORY

### A.　　Factual Background

#### 1.　VA Officials Fail to Redress Race Discrimination in Veterans Benefits.

The U.S. Department of Veterans Affairs and its predecessor, the Veterans' Administration (collectively "VA"), have operated generous programs of education, housing, disability compensation and other benefits since World War II. Amended Complaint, ECF No. 36 ("Am. Compl.") at ¶¶ 17–27. For decades, there have been anecdotal reports and widespread suspicion of racial discrimination in these programs. *Id.* ¶ 1.

In early 2021, Plaintiff National Veterans Council for Legal Redress (NVCLR) along with the Black Veterans Project (BVP) submitted Freedom of Information Act (FOIA) requests for VA data on the administration of service-connected disability compensation. *Id.* ¶ 37. After appeals and litigation, VA released some of the requested records. *Id.* ¶ 38. Analysis of the data found a significant difference in VA disability claim outcomes based on race. *Id.* ¶ 40. From 2001 to 2020, the period for which VA disclosed data, VA was on average 21.9% more likely to reject applications of Black veterans than of white veterans. *Id.* ¶ 41; *see also id.* ¶¶ 42–43. The data confirmed what years of reports of racial bias in VA facilities and among VA employees suggested: Black veterans have been subjected to the emotional, dignitary, and reputational harms of interacting with a racially discriminatory VA benefits system. *Id.* ¶ 3.

Moreover, records disclosed by VA after the filing of this action, in belated response to additional FOIA requests, revealed that VA itself had conducted at least one recent internal analysis, in which VA found even more dramatic racial disparities in PTSD claims. *Id.* ¶¶ 67–70 (describing 2017 analysis of PTSD claims). VA officials did not release this report to the public

and took no action to address the racial discrimination in benefits that it revealed. *Id.* ¶ 70.[4] And

when "VA's Advisory Committee on Minority Veterans formally raised concerns to VBA

leadership in 2013, 2015, 2016, 2017, and 2018 that minority veterans believed their disability

compensation ratings were lower than non-minority veterans' ratings," especially for PTSD, *id.* ¶

65, VA leaders failed to act.

  VA officials also knew or should have known that important inputs into many veterans'

benefits decisions were themselves tainted by race discrimination, but the officials failed to

address the racial bias in these inputs. For instance, VA officials "knew or should have known

that racial bias in the military justice system" impacted Black veterans' access to VA benefits, *id.*

¶ 75, particularly in light of the Defense Department's exhaustive and public analysis of the

problem since the 1970s, *id.* ¶¶ 76–82. There have been other recent indications of racial bias at

the VA, including in employment practices, *id.* ¶¶ 62–63, staff surveys, *id.* ¶ 64, and a scandal

involving racially discriminatory messages by Veterans Law Judges. *Id.* ¶¶ 59–60.

  VA now concedes these historic disparities. *See* Alex Horton, *Racial discrimination by*

*Veterans Affairs spans decades, lawsuit says*, Washington Post (Nov. 28, 2022) (conceding

"there have been unacceptable disparities" in VA benefits decisions "due to racism, which have

wrongly left Black veterans without access to VA care and benefits") (quoting Terrence Hayes,

VA Press Secretary)[5]; VA Secretary Press Conference, Mar. 24, 2023 (acknowledging

"disparities based on race in VA benefits decisions") (statement of Secretary Denis

---

[4] The government objects that in the November 2022 complaint, Mr. Monk claimed that VA possesses additional undisclosed records that support his allegations. Def.'s Mem., ECF No. 23-1, at 15 n. 12. VA's release in early 2023 of the 2017 internal report confirms Mr. Monk's allegation. Discovery is likely to reveal further evidence that VA leaders knew or should have known of longstanding racial disparities in benefits but failed to act to redress them.
[5] On this Rule 12(b)(1) motion to dismiss for alleged lack of subject matter jurisdiction, the Court may consider evidence outside the pleadings, *see* Def.'s Mem. 16–17 (collecting cases), including official statements by the Secretary of VA and his Press Secretary admitting to the historic racial disparities alleged in this action.

McDonough)[6]; VA Secretary Press Conference, Mar. 2, 2023 (conceding that "in the data going back many years . . . there is a grant rate, for example, for service connection for PTSD that is higher for white veterans than for black veterans.") (statement of Secretary Denis McDonough).[7]

This concession is commendable but insufficient to repair the injuries done to generations of Black veterans. For decades, VA officials knew or should have known of these racial disparities but failed to adjust their training, supervision, quality control, data collection, and other management practices to end them. Am. Compl. at ¶¶ 45–58, 66, 71–74.

## 2. Plaintiff Conley Monk, Sr. was Harmed by the Negligence of VA Officials.

Plaintiff Conley F. Monk. Sr. was born in 1919 in North Carolina. *Id.* ¶ 136. He is a member of the accomplished Monk family that includes jazz musician Thelonious Monk, Hall of Fame football player Art Monk, and generations of teachers, police officers, and public servants. *Id.* ¶ 84. Mr. Monk Sr. and his brother enlisted in the U.S. Army in the early 1940s. *Id.* ¶¶ 135, 137. He was forced to serve in a segregated unit with other Black veterans, participated in the Normandy invasion in 1944, and was honorably discharged in 1946. *Id.* ¶¶ 138, 139, 141.

After his service, Mr. Monk Sr. sought care and assistance for stomach injuries from the war. VA acknowledged that Mr. Monk Sr.'s stomach issues were service-connected, but it still denied him disability benefits on the basis that the disability rating was less than 10%. *Id.* ¶ 142. Mr. Monk Sr. also applied for VA benefits so he could care for his dependent mother, but VA rejected his application, claiming he had not presented enough information. *Id.* ¶ 143.

With Jim Crow-era laws limiting employment opportunities, Mr. Monk Sr. moved his family north to New Haven, CT. *Id.* ¶¶ 144, 145. There, Mr. Monk Sr. worked two jobs to support his family. *Id.* ¶ 146. He became a respected and beloved leader of the New Haven

---

[6] Available at https://www.youtube.com/watch?v=WnkNl2whPoQ (at 4:30).
[7] Available at https://www.youtube.com/watch?v=WnkNl2whPoQ (at 39:39).

community. *Id.* ¶ 147. He and his wife, Olivia, often provided struggling community members with food, shelter, and financial assistance. *Id.* ¶ 148. They also fostered over 40 children. *Id.*

Mr. Monk Sr. quietly struggled with health issues. Am. Compl. ¶ 149. He suffered a stroke at age 55, was diagnosed with Parkinson's, and his stomach issues persisted throughout his lifetime. *Id.* Based on his VA file, it does not appear that Mr. Monk Sr. ever received VA disability, education, or housing benefits. *Id.* After a long battle with Parkinson's, Mr. Monk Sr. passed away from heart failure on January 20, 1989. *Id.* ¶ 150.

In 2022, Mr. Monk Jr. was named as administrator for the estate of his deceased father, on whose behalf he seeks compensation for the negligent failure of VA leaders to redress a process they knew or should have known was racially discriminatory. *Id.* ¶ 152. The indignity of Mr. Monk Sr. being subjected to a racially discriminatory benefits system is a distinct injury, for which this suit seeks redress. *Id.*

### 3. Plaintiff Conley Monk, Jr. was Harmed by the Negligence of VA Officials.

Plaintiff Conley F. Monk Jr. was born in 1948 in North Carolina and as a young child moved with his family to New Haven, Connecticut. *Id.* ¶¶ 84–85. He enlisted in the U.S. Marine Corps at 20 years old in 1968. *Id.* ¶ 86. During his time in Vietnam, stationed close to the Demilitarized Zone, fighting was heavy. Mr. Monk saw daily reminders that death could come at any time. *Id.* ¶ 91. After his unit was pulled out of Vietnam, Mr. Monk Jr. began to fully experience the onset of Post-Traumatic Stress Disorder (PTSD). *Id.* ¶¶ 94–95. His then-undiagnosed PTSD led to two altercations, and while in base prison, Mr. Monk was told he would not be released until he signed papers agreeing to an Undesirable discharge. *Id.* ¶ 95. Not understanding the full consequences of the decision, depressed, and symptomatic with PTSD, Mr. Monk Jr. signed the papers. *Id.* ¶ 96. He was separated on September 15, 1970, with an Undesirable (now "Under Other than Honorable" conditions) discharge. *Id.* ¶ 97.

At home, Mr. Monk struggled. Am. Compl. ¶¶ 98–101. He consulted a psychiatrist in the early 1970s, but PTSD was not a recognized medical condition at the time, and his condition remained undiagnosed and untreated. *Id.* ¶ 99. Despite his difficulties, Mr. Monk Jr. co-founded a group called "The Undesirables" to help veterans with Other than Honorable discharges. *Id.* ¶ 102. Mr. Monk built the organization from the ground up, using books at the public library to teach himself how to write the bylaws, and recruiting pro bono lawyers and accountants. *Id.* The group later changed its name to NVCLR. Mr. Monk Jr. continues to serve as its Director. *Id.*

In 1971, Mr. Monk Jr. applied for unemployment compensation in Connecticut. *Id.* ¶ 103. The state unemployment agency sought information from VA about Mr. Monk Jr.'s eligibility. *Id.* VA conducted a character of discharge (COD) determination and found that Mr. Monk Jr. was "discharged under dishonorable conditions and is not therefore entitled to any benefits administered by the Veterans' Administration." *Id.* ¶ 104. VA's 1971 COD determination was flawed. It failed to account for racism in the military justice system and was not based on all the facts and circumstances surrounding the incidents that led to Mr. Monk Jr.'s discharge, as required by law. *Id.* ¶ 105. The agency's cursory COD determination, and its stubborn refusal to reconsider that initial conclusion, negatively impacted Mr. Monk Jr. for decades. *Id.*

In 1976, Mr. Monk Jr., now a husband and father of two, applied for VA education benefits. *Id.* ¶ 106. VA denied his application based on his discharge status. *Id.* ¶ 107. VA relied on the flawed COD determination and failed to make a new one. *Id.* Mr. Monk Jr. continued his education, paying out-of-pocket, while working two jobs. However, due to the financial strain on his family, he had to stop 3.5 credits short of graduation. *Id.* ¶ 108.

In 1982, upon learning about the newly defined medical condition of PTSD, Mr. Monk Jr. recognized his own symptoms and applied for VA disability compensation for PTSD. *Id.*

¶ 109. VA denied his application based on the same 1971 COD determination. *Id.* ¶ 110. VA's

ruling left Mr. Monk Jr. feeling abandoned by the military despite his years of service. *Id.*

In 1983, now a father of four, Mr. Monk Jr. applied for VA home loan benefits. *Id.* ¶ 111.

VA denied the application, again relying on its flawed 1971 COD determination. *Id.* ¶ 112. Mr.

Monk Jr. spent months trying to secure a loan. *Id.* ¶ 113. He was even homeless for a while. *Id.*

Although Mr. Monk Jr. eventually obtained a home loan, the delay cost him and his family

economic and social benefits of homeownership. *Id.*

Feeling abandoned by VA and the military, Mr. Monk. Jr. stopped applying for benefits

for over two decades. *Id.* ¶ 114. He believed VA's benefits system to be plagued by racial bias

and feared that he would never receive help from the country he had faithfully served. *Id.*

Mr. Monk Jr. suffered a severe stroke as the result of his undiagnosed diabetes in 2007,

which left him unable to read, write, or walk for months. *Id.* ¶ 115. Soon thereafter, he was

diagnosed with type II diabetes mellitus because of his exposure to Agent Orange in Vietnam. *Id.*

In 2010 Mr. Monk Jr. again applied for disability compensation, for his type II diabetes mellitus.

*Id.* ¶ 116. VA rejected his application based on the 1971 COD determination. *Id.* ¶ 117.

In 2011, Mr. Monk Jr. retained undersigned *pro bono* counsel, who referred him to a

psychiatrist for evaluation. *Id.* ¶ 119. Mr. Monk Jr. retold the psychiatrist the traumatic events

that caused his PTSD, reliving the worst experiences of his life to support his re-application for

disability compensation. *Id.* The psychiatrist concluded Mr. Monk Jr. had a severe case of PTSD,

which arose from his military service in Vietnam. *Id.* ¶ 120.

In February 2012, Mr. Monk Jr. applied again for disability compensation for PTSD,

diabetes, and diabetic peripheral neuropathy in his arms and legs. *Id.* ¶ 121. As the 2021

statistical analysis indicated, and as VA's own 2017 internal analysis confirmed, the agency was

more likely to deny Mr. Monk Jr.'s 2012 PTSD application than that of a white veteran. *Id.* And indeed, VA did so again. *Id.*

Mr. Monk Jr. appealed. Am. Compl. ¶ 122. In September 2015, after Mr. Monk Jr. had obtained an upgrade of his discharge status through a separate application to the Board for Correction of Naval Records and litigation in U.S. district court,[8] VA granted him disability compensation for PTSD with a 100% rating, as well as for diabetes and associated peripheral neuropathy. *Id.*

When VA finally granted Mr. Monk Jr. benefits, it erroneously assigned his claim an "effective date" based solely on his discharge upgrade. *Id.* ¶ 123. VA refused to consider whether he was eligible any earlier, as it continued to rely on its flawed 1971 COD decision, *id.*, so Mr. Monk appealed yet again. *Id.* ¶ 124. The U.S. Court of Appeals for Veterans Claims held that VA had erred in refusing to consider his eligibility for benefits before the date of his discharge upgrade. *Monk v. Wilkie*, No. 19-0217, 2020 WL 2461722, at 1* (Vet. App. May 13, 2020). On remand, the Board of Veterans Appeals agreed, at long last, that even before it was upgraded, "his discharge . . . was not a bar to benefits." *In re Monk*, No. 20079020, 2020 WL 8912950, at *1 (Bd. Vet. App. Dec. 15, 2020). This decision effectively overturned VA's 1971 COD opinion that had wrongly barred Mr. Monk Jr. from vital benefits and services for decades. Am. Compl. ¶ 125.

VA's negligence harmed Mr. Monk Jr. and his family financially and emotionally because of the toll it took to interact with a biased and improperly trained and supervised system.

---

[8] The government argues in a lengthy footnote that Mr. Monk may not litigate the propriety of his original discharge by the Marine Corps in this action. Def.'s Mem. 22–23 n.15. These arguments are immaterial. Mr. Monk's claims are directed at the negligent conduct ***of VA officials***, not at the decisions of the Marine Corps. Plaintiffs do allege that VA officials were negligent in failing to account for racial disparities in the military justice system—just as employers may not blindly rely on discharge status in light of the undisputed racial disparities underlying them. *See,* Am. Compl. ¶¶ 78–79 (EEOC and judicial opinions holding that military discharge decisions were so tainted by race that employers may violate Title VII by relying on them). It is VA's failures that are at issue in this action.

*Id.* ¶ 128. Each time Mr. Monk Jr. applied for VA benefits, he submitted extensive supporting documentation, filled out VA forms, and interacted with VA officials. *Id.* ¶ 129. Mr. Monk Jr. relived and retold his trauma to numerous individuals—including doctors, his counsel, and character references—to prove his eligibility for disability compensation. *Id.* ¶ 130. Mr. Monk Jr. also endured the emotional trauma of applying for VA benefits repeatedly, forcing him to navigate the appeal system and litigate federal lawsuits to secure his benefits. *Id.* ¶ 131. The entire process exacerbated Mr. Monk Jr.'s PTSD and caused significant emotional distress. *Id.* ¶ 132. He suffered the severe reputational and dignitary harms associated with his interactions with the agency, stemming from unremedied racial discrimination in the VA benefits system. *Id.* ¶¶ 133–34.

### 4. Members of NVCLR Have Been Harmed by the Negligence of VA Officials.

NVCLR is comprised of members who are veterans of the U.S. military, pay yearly membership dues, and attend regular meetings in the New Haven area. Am. Compl. ¶ 154. The organization has aided veterans, especially but not exclusively African American veterans, in seeking VA benefits and applying for discharge upgrades. *Id.*

Approximately 80% of NVCLR's membership has applied for VA disability, education, or housing benefits. *Id.* ¶ 155. A majority of NVCLR's membership is Black. *Id.* NVCLR brings this action on behalf of its members who were harmed by the negligence of VA leadership in administering a racially discriminatory benefits program and who have or will have exhausted their administrative remedies under the FTCA. *Id.* ¶ 158. Regardless of the outcome of their individual VA applications, NVCLR members were harmed through their interactions with a system rife with bias. And Mr. Monk Jr. is not the only NVCLR member who has filed an FTCA claim challenging the negligence of VA officials in failing to redress racial discrimination in VA benefits of which they knew or should have known. *Id.* ¶ 158.

For instance, Michele Barnett is a Black veteran and a member of NVCLR who was born in 1963 and joined the U.S. Navy in 1983 while in college. *Id.* ¶¶ 158–160. She entered the Navy without adverse health conditions but developed respiratory conditions, an intense rash, and pelvic inflammatory disease. *Id.* ¶¶ 162–65. She received an honorable discharge in 1987 and applied for VA benefits in 1989 and 1998, appealed various adverse decisions in 2012, and after a remand and further appeals, received a total disability rating of 90% in 2022. *Id.* ¶¶ 166–76. As a member of NVCLR, in this action Ms. Barnett does not challenge any specific VA decision from her decades-long struggle to secure care and benefits her service earned. Rather, "[e]ach time Ms. Barnett applied for VA disability compensation, she submitted extensive supporting documentation, filled out various VA forms, and interacted with VA officials. She was even subjected to traumatic gynecological exams with unprofessional examiners. The process of applying and re-applying for compensation left Ms. Barnett and her family feeling demoralized . . . . She suffered the humiliation of applying and being subject to a racially discriminatory system for years." *Id.* ¶¶ 177–78.

### B. Procedural History

Plaintiff Conley Monk, Jr. filed an FTCA administrative claim on February 25, 2022. *Id.* ¶ 187. When VA did not respond, and having exhausted his administrative remedies, he filed this action on November 28, 2022. Compl., ECF No. 1. On the same day, Mr. Monk Jr. filed an FTCA administrative claim on behalf of the estate of Conley Monk, Sr., having been appointed administrator of his father's estate on September 1, 2022. Am. Compl. ¶¶ 188–89.

Defendant United States sought and obtained a two-month extension to answer. ECF No. 17. On March 8, 2023, the parties filed their Rule 26(f) report. ECF No. 19. Defendant stated its intention to file a motion to stay discovery. *Id.* at 4. In the absence of a court-ordered stay, Mr. Monk commenced discovery by serving his initial disclosures, first set of interrogatories, and

first requests for production on Defendant in March 2023. ECF No. 24-1 at 2. Defendant has not served initial disclosures nor responded to Mr. Monk's interrogatories or requests for production.

On March 31, 2023, Defendant moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. ECF No. 23. On the same day, the government moved to stay discovery pending disposition of the motion to dismiss. ECF No. 24. Mr. Monk Jr. opposed the motion to stay discovery, ECF No. 28, and that motion is fully briefed. ECF No. 29.

On April 25, 2023, Plaintiff served a deposition notice for Margarita Devlin, a former VA official. Def.'s Decl. ¶ 3, ECF No. 34-2. On May 30, 2023, Defendant moved for a protective order. ECF No. 34. That motion is also fully briefed. ECF Nos. 39, 50.

VA failed to respond to the FTCA administrative claim filed on behalf of the estate of Conley Monk, Sr., Am. Compl. ¶ 191, and that claim was therefore administratively exhausted six months later, *id.*, or as of May 28, 2023. On June 5, 2023, Plaintiffs filed an amended complaint, adding FTCA claims on behalf of the estate of Conley Monk Sr. and members of NVCLR. *Id.* On June 30, 2023, the Court held a conference, ECF No. 56, at which time the government declined to file a new motion to dismiss in light of the Amended Complaint, electing instead to rest on its previously filed motion. The Court then entered a schedule for the remainder of the briefing on the motion. Scheduling Order, ECF No. 55.

III.   **LEGAL STANDARD**

When a court considers a defendant's motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the standard of review is "substantively identical" to that under the more common Fed. R. Civ. P. 12(b)(6). *Feldheim v. Fin. Recovery Servs., Inc.*, 257 F. Supp. 3d 361, 365 (S.D.N.Y. 2017). "In resolving [the] motion . . ., the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in

favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal citation omitted). When there is a dispute about facts, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Id.* (quoting *APWU v. Potter,* 343 F.3d 619, 627 (2d Cir. 2003)). Once a court finds it has subject matter jurisdiction, "it has authority to adjudicate the cause pressed in the complaint." *Feldheim*, 257 F. Supp. at 366 (internal citation omitted).

## IV.    <u>DISCUSSION</u>

Plaintiffs' claims are within the subject matter jurisdiction of this Court. 28 U.S.C. § 1346(b)(1) (district court jurisdiction for FTCA claims). Defendant argues Plaintiffs' suit amounts to a collateral attack on benefits decisions such that this Court may not consider it, Def.'s Mem., ECF No. 23-1, at 18–25 (citing 38 U.S.C. § 511); however, because Plaintiffs' claims do not involve judicial review of benefits decisions by VA line staff in local offices, instead focusing on tortious conduct by managers and more senior officials who knew or should have known of racial disparities and failed to redress them, this Court is not prevented by § 511 from adjudicating them. The government also invokes several FTCA statutory exceptions and complains that Plaintiffs waited too long to file suit, but these contentions likewise fail.

### A.  <u>Section 511 Does Not Divest This Court of Jurisdiction.</u>

Plaintiffs' FTCA claims are properly within the jurisdiction of this Court, *see* 28 U.S.C. § 1346(b)(1) (FTCA jurisdiction). Their claims are not the kind Congress barred under 38 U.S.C. § 511, and the resolution does not require the Court to intrude into those protected areas of the law. *Cf.* Def's Mem. 18–25. Much of the government's argument is misdirected at claims Plaintiffs have not pled, rather than the ones they actually bring.

This case begins where § 511 ends. It seeks a remedy in tort for the negligence of agency officials who knew or should have known of the pervasive racial bias against Black veterans—

and failed to correct it. This case does not seek judicial review of the individual adjudication decisions of line staff in local VA offices who granted or denied particular applications for benefits; Plaintiffs agree that review of those decisions is available through the statutory channels that the Veterans' Judicial Review Act of 1988, Pub. L. No. 100-687 (Nov. 18, 1988) ("VJRA") provides. But the actions of more senior officials—who negligently failed to adjust training, supervision, quality control, data collection, and other management practices—may not escape judicial scrutiny through the cloak of § 511.[9]

This case is about what those more senior officials knew about racial disparities, when they knew it, and whether they breached their duty to address those disparities through various management interventions, resulting in emotional, dignitary, and reputational harm to Plaintiffs. These matters are far removed from the concerns underlying § 511's insulation of individual claim determinations from district court review, but they sound squarely in this Court's independent jurisdiction to decide FTCA claims, a jurisdiction nowhere repealed by § 511.

As discussed below, this Court has jurisdiction over Plaintiffs' claims. First, § 511 does not preclude review because VA does not have exclusive jurisdiction over Plaintiffs' tort claims and appellate review in another venue is unavailable. Second, VA has not made a "decision" regarding Plaintiffs' tort claims in the course of a benefits proceeding, which is a necessary predicate to § 511 preclusion. Third, even if Defendant's actions or inaction were considered a "decision," the Court would maintain jurisdiction because it could resolve questions of law and fact without needing to delve into the propriety of any individual benefits determination. Finally,

---

[9] Secretary McDonough's comments on VA's newly announced Equity Team recognize the distinction between review of individual benefits decisions and review of management practices. *See* VA Secretary Press Conference, Mar. 24, 2023 (charging Equity Team with "eliminating" racial disparities in benefits by considering "changes related to organizational structure, training, quality control, outreach, and more") (statement of Secretary McDonough); VA Secretary Press Conference, Mar. 2, 2023 (Equity Team will "look at what are the structural changes, what are the policy changes, what are the procedures changes that we can do to address, that we can undertake to address, this historic disparate treatment under benefits.") (statement of Secretary McDonough).

by its plain language, § 511 concerns only denial of benefits, and Plaintiffs' claims do not seek judicial review of any individual benefits decisions.

    1.   <u>VA Does Not Have Exclusive Jurisdiction Over Plaintiffs' Tort Claims and There Are No Other Meaningful Avenues for Relief.</u>

Where VA does not have exclusive jurisdiction over a plaintiff's claims, and where appellate review is unavailable, § 511 does not preclude district court review. *Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000) (claims arising under "a law that affects the provision of [VA] benefits" may be brought in district court unless VA has exclusive jurisdiction over those claims). Indeed, Plaintiffs' tort claims cannot be pursued through the appellate process that Congress established in the VJRA and their claims are properly before this Court.

Before the VJRA was signed into law in 1988, Congress barred judicial review of individual VA benefits decisions. As a result, VA was the "only administrative agency that operated virtually free of judicial oversight." *U.S. Court of Appeals for Veterans Claims: History*, Vet. App., https://www.uscourts.cavc.gov/history.php; *see* James D. Ridgway, *The Splendid Isolation Revisited: Lessons from the History of Veterans' Benefits Before Judicial Review*, 3 Vet. L. Rev. 135 (2011). The Supreme Court explained Congress's twin rationales for precluding review: to ensure that "veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-consuming litigation" and that "the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions will be adequately and uniformly made [by the agency]." *Johnson v. Robinson*, 415 U.S. 361, 370 (1974) (concerning § 211(a), predecessor to § 511); *see also Sugrue v. Derwinski*, 808 F. Supp. 946, 951 (E.D.N.Y. 1992) (reiterating same rationale for § 511).

The VJRA worked a dramatic change. The statute for the first time established that an individual benefits decision by the Board of Veterans' Appeals (BVA), the administrative

appeals unit within VA, would be subject to judicial review in a new Article I court, the U.S. Court of Appeals for Veterans Appeals (CAVC), which has exclusive jurisdiction to review BVA decisions. 38 U.S.C. § 7252(a). Decisions of the CAVC may in turn be appealed to the U.S. Court of Appeals for the Federal Circuit. *Larrabee ex rel. Jones v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992). In "establishing an exclusive mechanism for appellate review of decisions of the Secretary," *id.*, Congress precluded claims within the exclusive jurisdiction of VA from review in district court. Thus, veterans had access to judicial review of adverse rulings regarding their VA benefit claims, and Congress channeled this review into the CAVC.[10]

The VJRA's history makes clear that the availability of appellate review is inextricably intertwined with the preclusion principles of § 511. *See Veterans for Common Sense* at 1032 ("*In tandem*, the availability of review by both the Veterans Court and the Federal Circuit evinces Congress's intent to protect the federal courts and VA from time-consuming veterans' benefits litigation, while providing a specialized forum wherein complex decisions about such benefits can be made." (emphasis added)). Conversely, where there exists an alternate statute under which claims can be brought, and where the VJRA "appellate mill" does not have exclusive jurisdiction, *even if the claims concern benefits*, claims may be brought in district court. *See Hanlin*, 214 F.3d at 1322.

Plaintiffs' tort claims fall wholly outside the appellate process created by the VJRA and there is an alternate venue—district court—through which to bring their claims; therefore, VA does not have exclusive jurisdiction. The BVA is unambiguous in excluding tort claims like

---

[10] Similarly, prior to passage of the VJRA, the BVA had "expressly disclaimed authority to decide constitutional questions." *Robinson,* 415 U.S. at 368. Construing § 211 to preclude judicial review meant that neither the VA nor any court was able to consider constitutional challenges to benefits decisions and the benefits process. Congress fixed this loophole in the VJRA, empowering the CAVC to "interpret *constitutional*, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary." *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1031 (9th Cir. 2012) (emphasis in original).

those brought by Plaintiffs from its jurisdiction, even when they have a nexus to benefits

decisions. *See*, *e.g., Names Redacted by Agency*, 1992 BVA LEXIS 3662, *2–3 (Bd. Vet. App.

February 25, 1992) (where veteran "in effect" asserted claim for "intentional infliction of

emotional distress," such a claim "comes under the Federal Tort Claims Act," which is "outside

the jurisdiction of the [BVA], since the Board's jurisdiction only extends to questions on claims

involving benefits under the laws administered by the VA."). Nor can the CAVC hear FTCA

claims. *See Watson v. McDonough*, No. 21-3700, 2021 WL 5316773, at *5 (Vet. App. Nov. 16,

2021) (CAVC "lacks the power to award the sort of traditional tort damages that Mr. Watson is

presumably seeking in his FTCA claim . . . Therefore, the Court will not entertain Mr. Watson's

allegations of error that are in furtherance of his FTCA claim.").

     Cases cited by Defendant confirm this key principle of the VJRA—that matters may be

precluded from district court review *only* if the Secretary has exclusive jurisdiction and they may

be appealed to the CAVC. *See, e.g., Veterans for Common Sense* at 1032 (CAVC is "an adequate

forum for this type of claim"); *Hicks v. Small*, 842 F. Supp. 407, 410 (D. Nev. 1993) (§ 511

preclusion applies because VJRA created a "comprehensive administrative and judicial system

or procedure for resolving disputes," including appeal to CAVC); *Beamon v. Brown*, 125 F.3d

965, 971 (6th Cir. 1997) ("This type of review falls within the exclusive jurisdiction of the

CVA . . ."); *Larrabee,* 968 F.2d at 1501 ("claims [precluded by § 511] must be pursued within

the appellate mill Congress established in the VJRA"); *Majid v. DOVA Med. Ctr.*, No. 13-CV-

2958 CBA, 2013 WL 3766559, at *3 (E.D.N.Y. July 11, 2013) ("plaintiff's claims must be

dismissed . . . without prejudice to seeking review in the [BVA] and subsequent available

proceedings"); *Rosario Gonzalez v. United States*, 898 F. Supp. 2d 410, 428 (D.P.R. 2012)

(claims can be pursued only at CAVC), *rev'd on other grounds*, 544 F. App'x. 5 (1st Cir. 2013);

*Cheves v. Dep't of Veterans Affs.*, 227 F. Supp. 2d 1237, 1246 (M.D. Fla. 2002) (same).

In short, while the BVA and CAVC are the proper venue for adjudicating and appealing individual benefits decisions (and § 511 insulates those individual benefits decisions from review in this Court), they are not the right venue for this case, and this Court has jurisdiction.

> 2. <u>Section 511 Does Not Apply Because VA Has Not Made a "Decision"</u>
> <u>Regarding Plaintiffs' Tort Claims in the Course of a Benefits Proceeding.</u>

The United States overstates the preclusive effect of § 511 by insisting that all claims "relating to veterans' benefits" are outside of this Court's jurisdiction. Def.'s Mem. 19. While § 511's preclusive effect is broad, it does not encompass every action or inaction connected to a benefits decision. Because the claims of Mr. Monk and NVCLR are not part of a benefits decision, they are within the jurisdiction of this Court.

Per § 511(a), the VA Secretary "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans," and "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court."[11] Importantly, "Section 511(a) does not apply to every challenge to an action by the VA. [I]t only applies where there has been a 'decision by the Secretary.' In the context of the history of this provision, the statute plainly contemplates a formal 'decision' by the Secretary or his delegate." *Bates v. Nicholson*, 398 F.3d 1355, 1365 (Fed. Cir. 2005) (quoting *Hanlin*, 214 F.3d at 1321).

In a decision clarifying the scope of its prior opinions in *Price v. United States*, 228 F.3d 420 (D.C. Cir. 2000), and *Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005), the U.S. Court of Appeals for the D.C. Circuit in *Broudy v. Mather* further articulated the standard:

---

[11] 38 U.S.C. § 511(b) provides four exceptions to subpart (a)'s preclusion of review, none of which apply here: challenges to rulemaking under 38 U.S.C. § 502, certain insurance questions, matters relating to housing and small business loans under 38 U.S.C. ch. 37, and review of BVA decisions in the CAVC.

[W]hile the Secretary is the sole arbiter of benefits claims and issues of law and fact that arise during his disposition of those claims, district courts have jurisdiction to consider questions arising under laws that affect the provision of benefits as long as the Secretary has not actually decided them in the course of a benefits proceeding. As the Federal Circuit stated in *Hanlin*, we "do not read the statute to require the Secretary, *and only the Secretary*, to make all decisions related to laws affecting the provision of benefits." *Id.* (emphasis added). To the contrary, § 511(a) prevents district courts from hearing a particular question only when the Secretary has "actual[ly] deci[ded]" the question. *McKelvey*, 792 F.2d at 198. Where there has been no such decision, § 511(a) is no bar. *Id.*

460 F.3d 106, 114 (D.C. Cir. 2006); *see also Schwingle v. United States*, No. 20-CV-6394 CJS, 2022 WL 9462632, at *7 (W.D.N.Y. Oct. 14, 2022) (*Broudy* "says . . . that § 511(a) prevents district courts from hearing a particular question only when the Secretary has 'actually decided' the question. Where there has been no such decision, § 511(a) is no bar.'"); *Veterans for Common Sense*, 678 F.3d at 1023 ("review of decisions made *in the context of an individual veteran's VA benefits proceedings* are beyond the jurisdiction of federal courts outside the review scheme established by the VJRA . . ." (emphasis added)).

VA has made no decision regarding Plaintiffs' tort claims in the course of a benefits proceeding, nor could it have; in fact, it has made no decision regarding Plaintiffs' tort claims at all. Am. Compl. ¶ 191; *see Thomas*, 394 F.3d at 975 ("[W]e reject any implication that all action or inaction by the VA represents a type of 'service,' and therefore automatically constitutes a 'benefit.'").

Additionally, § 511(a) applies only to decisions made "under a law that affects the provision of benefits by the Secretary to veterans." However, the preclusion does not apply to *all* laws related to benefits. Specifically, "Section 511(a) does not give the VA *exclusive* jurisdiction to construe laws affecting the provision of veterans' benefits or to consider all issues that might somehow touch upon whether someone receives veterans' benefits. Rather, it simply gives the VA authority to consider such questions when making a decision about benefits." *Broudy*, 460

F.3d at 112 (emphasis in original). As described above, the type of claims that Plaintiffs bring do not require inquiry into a benefits decision by the VA.

       3.      <u>Resolution of Plaintiffs' Claims for Negligent Supervision and Other Torts Does Not Require Analysis of Individual Benefits Applications.</u>

A district court retains jurisdiction over claims when it can resolve questions of law and fact without reviewing a prior benefits determination. This Court can resolve each of Plaintiffs' claims without reviewing the correctness of any particular benefits decision by line staff in local VA offices. That is because this case challenges the negligent failure of more senior VA officials to act *after* they knew or should have known of racial disparities in benefits decision, through adjustments to training, supervision, quality control, data collection, and other management practices. Thus, § 511 does not oust this Court's FTCA jurisdiction. *See* 28 U.S.C. § 1346(b)(1).

The use of the word "necessary" in the text of § 511 indicates that preclusion applies only when the district court *cannot* resolve questions of fact or law without determining the propriety of a VA benefits decision. *See Broudy*, 460 F.3d at 115 (district court had jurisdiction to consider the plaintiffs' claims because those claims "did not *require* the district court 'to decide whether any of the veterans whose claims the Secretary rejected [we]re entitled to benefits.'" (emphasis added)); *Anestis v. United States*, 749 F.3d 520, 527–28 (6th Cir. 2014) (district court has jurisdiction where "resolution of [fact and law] questions [relative to tort claims] is not 'necessary' to the benefits determination," and "no review of the benefits determination is necessary"); *Veterans for Common Sense*, 678 F.3d at 1034 (district court has jurisdiction for claim which would "not *require* [it] to review 'decisions' affecting the provision of benefits to any individual claimants" (emphasis added)); *Price*, 228 F.3d at 422 (no district court jurisdiction because resolving claims "would *require* the district court to determine first whether

the VA acted properly in handling Price's request for reimbursement" (emphasis added))[12]; *Beamon*, 125 F.3d at 970–71 (no jurisdiction because "[t]o adjudicate this claim, the District Court would need to review individual claims for veterans benefits, the manner in which they were processed, and the decisions rendered by the regional office of the VA and the BVA."); *King v. U.S. Dep't of Veterans Affs.*, 728 F.3d 410, 415 (5th Cir. 2013) (no jurisdiction where "claims would require the district court to assess the VA's benefits decisions"); *Milbauer v. United States*, 587 F. App'x 587, 591–92 (11th Cir. 2014) (no jurisdiction because court "could not adjudicate Milbauer's claim without determining first whether [he] was entitled to a certain level of benefits").

VA has conceded historic racial disparities. This Court can adjudicate Plaintiffs' claims about negligent management, and resolve necessary questions of law and fact, without making any determination on the propriety of any underlying benefits determinations. Plaintiffs sue VA, not for any action as part of a benefits decision by line staff in a local VA office, but for the negligent failure of more senior VA officials to redress the longstanding racial disparities of which they knew or should have known. Plaintiffs' injuries include reputational harms and emotional distress, and they were caused by VA leadership's failure to train, supervise, monitor, and instruct officials to avoid harms caused by racial bias. Am. Compl. ¶¶ 5, 36, 54. Plaintiffs can establish the elements of each of their claims without requiring the Court to "second-guess" any particular benefits decision. Their tort claims are well within this Court's FTCA jurisdiction.

    4.  <u>By Its Plain Language, Section 511 Concerns Only Denial of Benefits, Which Plaintiffs Do Not Challenge.</u>

---

[12] The court in *Price* determined that resolving the plaintiff's claims would "require the district court to determine first whether the VA acted properly in handling Price's request for reimbursement" because "bad faith" was a necessary predicate of his damages claim under the relevant Florida law. In doing so, the court distinguished between ascertaining "bad faith"—which would require a determination into whether the VA acted properly—and "negligence," which would not. *Price*, 228 F.3d at 422. "Bad faith" is not an element of any of Plaintiffs's claims.

Despite Defendant's claim, Def.'s Mem. 22, Plaintiffs do not collaterally attack benefits decisions and thus § 511 is inapplicable.

Courts should not "extend Section 511's coverage to any situation other than that which its plain language covers." *Gayer v. United States*, No. 3:16-CV-00467-GNS-HBB, 2019 WL 2130155, at *6 (W.D. Ky. May 14, 2019) (allowing tort claim against VA to proceed because "[t]he Court will not interpret Section 511 to mean anything other than what it says" and that § 511 is limited to denial of a veteran's C&P benefits). Negligent acts committed outside of a benefits decision and claims for relief which do not require the court to evaluate or reconsider a grant of benefits, are squarely within the jurisdiction of this Court. *See also Anestis*, 749 F.3d at 527–28 (construing § 511 to preclude district court jurisdiction over all VA tort claims "would lead to an extremely broad reading of what constitutes a 'benefits determination,'" contrary to the principle that the ordinary meaning of language accurately expresses legislative purpose).

For example, "a consideration of the constitutionality of the procedures in place, which frame the system by which a veteran presents his claims to the VA" is reviewable. *Veterans for Common Sense*, 678 F.3d at 1034. Similarly, courts may "consider questions arising under laws that affect the provision of benefits as long as the Secretary has not actually decided them in the course of a benefits proceeding." *Broudy*, 460 F.3d at 114; *see also Veterans for Common Sense*, 678 F.3d at 1025; *Hanlin*, 214 F.3d at 1321.

Unlike the posture in this case, many claims in cases cited by Defendant were found to be outside the jurisdiction of the district courts because the alleged tortious or illegal act was in the benefits adjudication itself. Def.'s Mem. 21–22. *See Veterans for Common Sense*, 678 F.3d at 1028 (no review of specific procedures used in individual benefits cases); *Philippeaux v. United States*, No. 10 Civ. 6143 (NRB), 2011 WL 4472064, at *5–7 (S.D.N.Y. Sept. 27, 2011) (no

jurisdiction over claims which required court to determine whether individual benefits adjudicators had properly weighed evidence); *Conyers v. United States*, No. 16-CV-2816 (JFB) (SIL), 2018 WL 1157754, at *7–8 (E.D.N.Y. Jan. 31, 2018) (no jurisdiction where plaintiff sought relief for improper weighing of evidence in his benefits proceeding); *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994) (plaintiff precluded from challenging assigned disability rating in district court); *Schwingle* 2022 WL 9462632, at *9 (no review over claim of fifty-year delay in adjudicating benefits claim); *Carroll v. United States*, 1:19-CV-1230 (GTS/DJS), 2020 WL 4284130, at *6 (N.D.N.Y. July 27, 2020) (noting that delays in benefits are precluded from review); *Walton v. Sec'y Veterans Admin.*, 187 F. Supp. 3d 1317, 1326 (N.D. Ala. 2016) (no review because injury was denial of benefits); *Dambach v. United States,* 211 F. App'x 105, 106–108 (3d Cir. 2006) (no jurisdiction where plaintiff alleged tortious conduct by VA employees in thirteen individual disability benefit decisions).

Other cases cited by Defendant, Def.'s Mem. 21–22, fell under § 511 because the plaintiffs sought a readjudication or readjustment of benefits. *See Zuspann v. Brown*, 60 F.3d 1156, 1159 (5th Cir. 1995) (VA housing did not meet the needs of the plaintiff); *Majid*, 2013 WL 3766559, at *1–3 (challenging type of medical transport granted as part of a benefits decision); *Beamon*, 125 F.3d at 971 (CAVC has exclusive "power to remedy claims that decisions have been unreasonably or unlawfully delayed"). No such remedy is sought here.

On the other hand, claims for tortious conduct by VA employees—even if the tortious actions were associated with a benefits decision—have been found to be within district court jurisdiction when neither the tortious act nor the damages claimed required review of a VA decision related to a benefits determination.[13] In *Cortes Castillo/Roman Cancel*, a veteran sued

---

[13] *See also* Section III.A.3, *supra*, regarding claims that *require* second-guessing of VA benefits decision-making.

VA for tort damages from broad personal harms that were associated with a denial of benefits but were not the denial itself. *Cortes Castillo v. Veterans Admin.*, 433 F. Supp. 2d 221, 224 (D.P.R. 2006) (dismissed without prejudice on other grounds). The tortious action was a VA employee's willful misrepresentation of the plaintiff's medical condition, resulting in a decrease in disability rating. *Id.*; *Roman Cancel v. United States*, 598 F. Supp. 2d 227, 232 (D.P.R. 2008) (affirming *Cortes Castillo* jurisdictional holding in subsequent case by same plaintiffs). The court held that claims for tort damages from negligence by a VA official in preparing a medical report about the veteran's medical condition, while used in a benefits proceeding, was within the jurisdiction of the district court. *Cortes Castillo*, 433 F. Supp. 2d at 224–25. The D.C. Circuit held similarly in *Thomas*, where a plaintiff claimed emotional distress and injury from VA's failure to inform him of a diagnosis. 394 F.3d at 974. The D.C. Circuit held that the claims for such conduct and injury, even if performed for or related to benefits decisions, are within the jurisdiction of the district court. *Id.* Other courts have agreed. *King*, 728 F.3d at 415 (stating that *Cortes Castillo* and *Thomas* were not challenges to benefits decisions as they did not challenge the legal or factual findings of a benefits decision, but instead challenged associated negligence).

The same language forms the foundation of the D.C. Circuit's decision in *Broudy*. Plaintiffs there alleged that VA withheld information regarding radiation exposure, impairing their access to administrative proceedings. The court held that it had jurisdiction because the injuries resulted from the withholding of information, rather than a benefits hearing. As a result, the claim did not require a "revisit[ing of] any decision made by the Secretary in the course of making benefits determinations." *Broudy*, 460 F.3d at 115. Put another way, this Court has jurisdiction to decide claims challenging acts or omissions by VA officials, provided those acts or omissions are not part of the individual benefits decision itself. That is the case here, where

Plaintiffs challenge management-level failures, not individual adjudications by line staff in local offices.

The Court has jurisdiction because, like the plaintiffs in *Broudy*, Plaintiffs in this case allege negligence by more senior VA officials outside the confines of their individual benefits decisions. Unlike the claims of cases cited by Defendant*, e.g. Veterans for Common Sense*, 678 F.3d at 1028, 1033; *Philippeaux*, 2011 WL 4472064, at *5–7, the tortious acts here are the failure by VA officials to adjust training, supervision, quality control, data collection, and other management practices to redress known racial disparities, regardless of whether any individual benefits determinations were properly adjudicated. This tortious conduct is *outside* of a benefits decision and akin to *Castillo Cortes* and others. Mr. Monk and NVCLR seek damages for emotional, reputational, and dignitary harm, rather than from any VA decision to grant or deny an application for benefits, unlike *e.g.*, *Zuspann*, 60 F.3d at 1159. These emotional and dignitary harms would have been suffered for any number of appearances before the VA. The pursuit of negligence damages for actions outside of a benefits decision makes Plaintiffs' claims akin to those in *Castillo Cortes, Roman Cancel*, *Thomas*, *Broudy*, and by the logic of *King*. Their claims are outside of the benefits adjudication and within the jurisdiction of this Court.

In sum, § 511 does not divest this Court of its jurisdiction over Plaintiffs' FTCA claims.

**B.**     **Plaintiffs State a Claim Under the FTCA.**

The Federal Tort Claims Act waives the sovereign immunity of the United States for "claims against the United States, for money damages . . . for . . . injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred*." 28 U.S.C. § 1346(b)(1) (emphasis added).

Were Defendant a private party, it would be liable to Plaintiffs under Connecticut or District of Columbia tort law for negligence, negligent infliction of emotional distress, and negligent supervision. Consequently, this Court may adjudicate their claims under the FTCA.

1. Defendant Misstates the Standard for Waiver of Sovereign Immunity.

The government argues that the FTCA's waiver of sovereign immunity does not extend to Plaintiffs' causes of action because there is no "private analogue" to the challenged conduct, which the government describes as the "quasi-adjudicative" function of administering veteran's benefits. Def.'s Mem. at 27. Despite citing numerous Second Circuit cases from the 1980s and 1990s, the government ignores more recent Second Circuit authority rejecting the narrow interpretation of the "private analogue" requirement it advances here.

In *Liranzo v. United States*, the Second Circuit analyzed "[t]he path of the case law on the FTCA's private analogue requirement," including many of the cases cited by the government, as "long, winding, and sparsely marked." 690 F.3d 78, 86 (2d Cir. 2012). It undertook "a rehearsal of the history of that case law" to aid courts and litigants and to correct misconceptions about the private analogue requirement. *Id.* Synthesizing Supreme Court and circuit precedent reaching back to the 1950s, the *Liranzo* court concluded that the "private analogue" analysis is much broader than Defendant acknowledges. "To say that the challenged action is one that only the federal government does in fact perform does not necessarily mean that no private analogue exists," because "'the presence of identical private activity' [is] not required to find a private analogue." *Id.* at 94 (quoting *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955)). To the contrary, "the FTCA's statutory phrase 'under *like* circumstances' does not mean 'under the *same* circumstances." *Liranzo*, 690 F.3d at 94 (emphases in original) (quoting *Indian Towing*, 350 U.S. at 67). Taking direction from the Supreme Court, the court held that "[u]nder *Olson*, we are 'require[d] . . . to look further afield' for a private analogue when the government in fact is

the only entity that performs the actions complained of." *Liranzo*, 690 F.3d at 94 (quoting *United States v. Olson*, 546 U.S. 43, 46 (2005)).

As the *Liranzo* court explained, Supreme Court and Second Circuit precedent require undertaking the "private analogue" analysis with an appropriate degree of generality to vindicate the purpose of the FTCA. Too narrow a view would render the FTCA meaningless because "all government activity is inescapably 'uniquely governmental' in that it is performed by the Government." *Indian Towing*, 350 U.S. at 67. So, for example, even though it was undisputed in *Indian Towing* that lighthouses were operated exclusively by the government with no parallel private lighthouse operations, the Supreme Court held that "[p]rivate individuals, who do not operate lighthouses, nonetheless may create a relationship with third parties that is similar to the relationship between a lighthouse operator and a ship dependent on the lighthouse's beacon." *Olson*, 546 U.S. at 47 (summarizing *Indian Towing*'s holding). It therefore permitted the plaintiff to pursue an FTCA negligence claim based on the Coast Guard's failure to properly examine the light's battery and sun relay system on a regular basis. *Indian Towing*, 350 U.S. at 69.

The *Olson* court applied the same reasoning to an FTCA case involving two injured mine workers who sued for the negligence of federal mine inspectors. Although no private individuals have responsibility for regulating the safety of mines, the Supreme Court found a private analogue in the body of tort law holding that good Samaritans who undertake to aid the public and thereby induce reliance must perform their task in a careful manner. *Olson*, 546 U.S. at 47.

Thus, for purposes of identifying a private analogue, the relevant government conduct in both *Indian Towing* and *Olson* was not the literal characterization proposed by the government— that is, the operation of lighthouses or regulation of mines. Instead, the relevant government conduct was the federal government taking it upon itself to aid the public. A private party who

27

does so is required to provide such assistance with reasonable care, leading the *Indian Towing* and *Olson* courts to conclude the government, too, must do so.

Similarly, in *Liranzo* itself, the Second Circuit held that the private analogue requirement was satisfied in a case where the plaintiff sought to sue federal immigration officials under the FTCA for the tort of false imprisonment. 690 F.3d at 80. At the government's urging, the district court had dismissed the case on the basis that there is no private analogue to immigration detention. *See id.* at 81. But after undertaking an exegesis of relevant case law, the Second Circuit concluded that the government's interpretation of the "private analogue" test was unduly narrow. Instead, the court concluded that "the proper analogy seems to us to be a person who, entirely in his or her private capacity, places someone under arrest for an alleged violation of the law—a so-called citizen's arrest." *Id.* at 94–95. And even if the proper analogy was to state law enforcement conducted by police officers instead of a citizen's arrest, that would also satisfy the private analogue requirement. *See id.* at 95–96. Thus, the *Liranzo* court readily found a private analogue to unlawful imprisonment by federal immigration officials.

Therefore, the relevant question is *not* whether there is a private party that supervises the adjudication of veteran's benefits decisions. Rather, as in *Indian Towing*, *Olson*, and *Liranzo*, the question is whether private parties, in a relationship similar to that between the plaintiff and the government in the context of the cause of action asserted, would be held liable for similar conduct. Applying that approach, Plaintiffs' causes of action have clear private analogues.

   2.   Defendant Had a Duty of Care Towards Plaintiffs and is Liable for Negligence in Breaching that Duty.

Plaintiffs allege a negligent failure to abide by a duty of care to administer veterans' benefits in a non-discriminatory way. *See* Am. Compl. ¶¶ 201–08. Defendant would be liable to Plaintiffs under Connecticut and D.C. negligence law, in accordance with the FTCA.

Under Connecticut law on negligence, "[t]he nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual [and] [t]he determination of whether a duty exists between individuals is a question of law." *Cabral v. Touchpoints Homecare, LLC*, No. CV 21-6118672, 2023 WL 142256, at *5 (Conn. Super. Ct., Jan. 3, 2023) (quoting *Lodge v. Arett Sales Corp.*, 717 A.2d 215, 219 (Conn. 1998)); *see also Croce v. Hall*, 657 A.2d 307, 310 (D.C. 1995) ("The question . . . whether a defendant owes a duty to the plaintiff under a particular set of circumstances is entirely a question of law that must be determined only by the court.").

There is no exhaustive list of duties and relationships that comprises the body of state negligence law. Rather, each alleged duty and breach is considered on a case-by-case basis, and duties may be established by the courts even in the absence of prior precedent. *See, e.g.*, *Cabral*, 2023 WL 142256, at *5–9 (finding that nursing home had duty to inform family of resident's passing even absent a statute or case law directly addressing the issue); *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 848–49 (D.C. 1998) ("New torts are recognized when an interest requiring protection from unreasonable interference is identified. . . . A plaintiff advancing a novel claim in this jurisdiction therefore will not necessarily be precluded from recovering."). The test for the existence of a legal duty of care thus allows for broad application in a variety of dynamic circumstances and entails "(1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, *on the basis of a public policy analysis*, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Zamstein v. Marvasti*, 692 A.2d 781, 786 (Conn. 1997) (emphasis added; footnote and internal quotations omitted); *see*

*also Williams v. Baker*, 572 A.2d 1062, 1064 (D.C. 1990) (en banc) ("The existence of a duty . . . results ultimately from policy decisions made by the courts and the legislatures."); *District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C. 1984) (noting that the existence of a duty of care is "essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred," *quoting* RESTATEMENT (2ND) OF TORTS § 42 (1965)).

The first part of this test is foreseeability: "whether a reasonable person in the defendant's position, knowing what he knew or should have known, would have anticipated the harm that resulted from his action." *Jaworski v. Kiernan*, 696 A.2d 332, 336 (Conn. 1997); *cf. Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011). "[T]o meet the test of foreseeability, the *exact* nature of the harm suffered need not have been foreseeable, only the 'general nature' of the harm." *Lodge*, 717 A.2d at 220 (emphasis in original); *accord Keranen v. Nat'l R.R. Passenger Corp.*, 743 A.2d 703, 715 (D.C. 2000) ("[t]he test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather, it is sufficient if the negligent person might reasonably have foreseen that an injury might occur.").

Second, the court must determine whether the defendant had a duty to the plaintiff. In the absence of direct statutory authority or caselaw precedent regarding the existence of a duty, Connecticut courts consider four factors: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." *Raspberry Junction Holding, LLC v. Se. Connecticut Water Auth.*, 263 A.3d 796, 802 (Conn. 2021) (internal quotation omitted) (four-part test is "well

established" under Connecticut law). Similarly, in the District of Columbia, "[t]he court's threshold determination—namely, the existence of a duty — is 'essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred[,' i.e.,] whether the plaintiff's interests [should be] entitled to legal protection against the defendant's conduct." *Hedgepeth*, 22 A.3d at 793 (applying policy test to claim of negligent infliction of emotional distress) (*quoting* PROSSER, HANDBOOK OF THE LAW OF TORTS § 42, 53 (4th ed. 1971)).

Under Connecticut and D.C. tort law, per the FTCA's private analogue provision, Defendant would be liable to Plaintiffs for its negligent failure to administer veterans' benefits in a non-discriminatory manner in a way that caused foreseeable harm to Plaintiffs and the proposed class, when through training, supervision, record-keeping, and other measures, VA officials failed to redress longstanding, pervasive race discrimination and disparate impacts of which they knew or should have known. Am. Compl. ¶¶ 205–07.

First, as the complaint alleges, Defendant had a duty of care under its statutory mandate that "[t]he Secretary is responsible for the *proper* execution and administration of all laws administered by the Department," 38 U.S.C. § 303 (emphasis added), and the ordinary duty of reasonable care. Am. Compl. ¶¶ 205–06. Either basis is sufficient. With respect to the former, although it is delineated in a federal statute, both Connecticut and D.C. have adopted the doctrine of negligence *per se*, incorporating into state law duties that are premised on federal statutes. *See, e.g.*, *Gore v. People's Sav. Bank*, 665 A.2d 1341, 1348–49 (Conn. 1995); *Cowan v. Yale Univ.*, No. X08FSTCV216057967S, 2023 WL 369947, at *4 (Conn. Super. Ct. Jan. 17, 2023) (holding plaintiffs adequately stated claim for negligence *per se* premised on "a violation of federal and state claims and regulations"); *Morse v. Conn. Cmty. for Addiction Recovery, Inc.*, No.

CV095005371S, 2010 WL 4074949, at *17 (Conn. Super. Ct. Sept. 15, 2010) (holding that "the violation of a federal statute serves as a basis for negligence per se"); *Robinson v. District of Columbia*, 580 A.2d 1255, 1256 (D.C. 1990) ("Where a party violates a statute, and the violation is a proximate cause of an injury which the statute was designed to prevent, there is a rebuttable presumption of negligence on the part of the violator.").

Even if negligence *per se* is unavailable, the existence of a statutory duty in both jurisdictions can be evidence relevant to whether a common law duty was breached. *E.g.*, *Robinson*, 580 A.2d at 1256 ("If the violator demonstrates that she did everything a reasonably prudent person would have done to comply with the law, then her violation merely constitutes evidence of negligence rather than negligence *per se*."). Thus, under both Connecticut and D.C. law, a private party can be held liable under a theory of negligence (including but not limited to negligence per se) when that party fails to abide by a federal or state statutory duty of care.

Finally, even in the absence of any controlling statutory or regulatory duty, Connecticut and D.C. courts would nonetheless find that a duty existed under the framework articulated in *Jaworski* and *Hedgepeth*. Individuals should reasonably expect, when interacting with well-funded institutions that require clients to submit to intrusive, time-consuming, and sensitive evaluations and interrogations, and which as a result make highly consequential financial decisions, to be treated equally based on race. This duty applies equally to government institutions as well as banks, landlords, hospitals, insurance companies, and other entities. The very existence of complex regulatory schemes for private actors in these areas—including state antidiscrimination laws in the areas of banking, housing, insurance, and medical care—evince a public policy to protect individuals from discrimination in their interactions with large institutions that hold significant sway over people's lives and financial futures, and creates a

"normal expectation," *Jaworski*, 696 A.2d at 336, of similar treatment based on race. *See, e.g.,* Conn. Gen. Stat. §§ 46a98 to -100 (causes of action for discriminatory credit, housing, and state employment practices, and discrimination by state agencies); *id.* § 38a-816 (prohibiting racial discrimination in insurance reimbursement); *id*. §§ 38a-488, 38a-447 (same, for provision of medical services). Accordingly, there is a strong policy imperative to encourage veterans to participate in a fair and equitable benefits adjudication process.[14]

None of the cases cited by the government require a different outcome. Its characterization of the causes of action as challenging a "quasi-adjudicative" government function ignores that Plaintiffs are not challenging the government's adjudication of any individual application for benefits, unlike the cases it cites.[15] Nor are Plaintiffs challenging a legislative rule promulgated by a government agency, clerical errors by a federal court clerk, or procedural errors.[16] Defendants' attempt to escape liability should be rejected.

### 3. Defendant is Liable for Negligent Infliction of Emotional Distress.

Similarly, Plaintiffs and members of the proposed class allege negligent infliction of emotional distress based on their subjection to discriminatory treatment by VA, an indignity in and of itself regardless of how any individual benefit was adjudicated. *See* Am. Compl. ¶¶ 209–

---

[14] If the Connecticut Department of Veterans Affairs were to provide benefits in a racially discriminatory manner, it would be liable. Conn. Gen. Stat. § 46a-71 ("All services of every state agency shall be performed without discrimination based on race . . ."); *id.* § 46a-99 (Superior Court jurisdiction for violations of § 46a-71).

[15] *See Akutowicz v. United States*, 859 F.2d 1122, 1126 (2d Cir. 1988) (alleging withdrawal of citizenship was "negligent," but citizenship determinations are quasi-adjudicative and "neither party . . . raised the issue whether . . . any analogous private cause of action exists"); *Peruta v. United States*, No. 3:16-cv-2112 (VLB), 2018 WL 995111, at *4 (D. Conn. Feb. 21, 2018) (plaintiff alleged the lapsing of his fee basis status was negligent); *Storms v. United States*, No. 13-cv-811 MKB, 2015 WL 1196592, at *19 (E.D.N.Y. Mar. 16, 2015) (challenging disqualification from eligibility for VA's veteran-owned small business program); *Figueroa v. United States*, 739 F. Supp. 2d 138, 141–42 (E.D.N.Y. 2010) (alleging government negligently issued passport based on forged application).

[16] *See C.P. Chem. Co. v. United States*, 810 F.2d 34, 37–38 (2d Cir. 1987) (plaintiff challenged "an agency's failure to select the appropriate rulemaking procedure in promulgating an administrative regulation" concerning ban of a chemical substance, "a quasi-legislative activity for which we find no private counterpart."); *Klopp v. United States*, 131 F.3d 131, 1997 WL 774397, at *3 (2d Cir. 1997) (unpublished decision) (plaintiff "alleged negligent violations of the ministerial duties of federal court clerks"); *Ojo v. United States*, No. 20-cv-4882 (MKB), 2022 WL 4091011, at *4 (E.D.N.Y. Sept. 6, 2022) (alleging government wrongly applied tax refund to criminal restitution order).

218. For purposes of this claim, VA is analogous to any private entity that interacts with customers or members of the public and has the same duty as such entities not to engage in discriminatory conduct causing emotional distress. *See*, *e.g.*, *Dingle v. Fleet Bank*, No. CV00-00443028, 2001 WL 282922, at *1–2 (Conn. Super. Ct. Mar. 1, 2001) (agreeing that "racial discrimination in forms other than epithets has also supported a cause of action for intentional infliction of emotional distress," and that "[d]iscriminating against a bank customer on the basis of his race may very well create an unreasonable risk of causing emotional distress").

4. Defendant is Liable for Negligent Supervision and Training of VA Employees.

Finally, Plaintiffs allege negligent supervision by VA of employees who engaged in tortious conduct harming them and members of the proposed Class. *See* Am. Compl. ¶¶ 219–225. Under both Connecticut and D.C. law, private entities can be liable for negligent supervision of their employees in the discharge of their employment duties, where such negligence causes harm to a third party, such as a customer, member of the public, or other employee. *See*, *e.g.*, *Doe v. Saint Francis Hosp. & Med. Ctr.*, 72 A.3d 929, 948 (Conn. 2013) (duty to protect a third party "may arise when the defendant's own conduct creates or increases the foreseeable risk that such other person will be harmed by the conduct of a third party"); *Gutierrez v. Thome*, 537 A.2d 527, 531 (Conn. 1988) (recognizing independent claim of direct negligence against employer who failed to exercise reasonable care in supervising employee); *Shore v. Stonington*, 444 A.2d 1379, 1383 (Conn. 1982) (similar); *Brooks v. Sweeney*, 9 A.3d 347, 355 n.12 (Conn. 2010); *Murphy v. Army Distaff Found., Inc.*, 458 A.2d 61, 64 (D.C. 1983) (establishing standard for negligent supervision in D.C.). Connecticut and D.C. courts treat negligent training and negligent supervision claims under the same standard. *Dumas v. Price Chopper, Inc.*, No. WWMCV095004896S, 2010 WL 1889036, at *2–4 (Conn. Super. Ct. Mar.

31, 2010); *Alessie v. Stop & Shop Supermarket*, No. NNHCV186076540S, 2019 WL 6884533, at *3–4 (Conn. Super. Ct. Nov. 20, 2019); *accord Doe*, 573 F. Supp. 2d at 29; *Blair v. District of Columbia*, 190 A.3d 212, 231 (D.C. 2018).

For purposes of negligent supervision, VA officials are similarly situated to managers of other public-facing private entities that are responsible for training and supervising their employees and whose employees' actions have the potential to harm or otherwise impact other individuals. *See*, *e.g.*, *Wilbur P.G. v. United States*, No. 4:21-cv-04457-KAW, 2022 WL 3024319, at *5 (N.D. Cal. May 10, 2022) (holding that private analogue requirement was satisfied for negligent supervision and negligence claims based on emotional trauma caused by government's family separation policy with respect to asylum seekers). Like other employers, VA can be liable for its failure to adequately monitor its employees when it is on notice of propensity to engage in harmful conduct. See *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 112, 120, 132 (D. Conn. 2010) (converting motion to dismiss FTCA claims of negligent supervision by ICE officials to motion for summary judgment and denying it).

## C. Plaintiffs' Claims Are Timely.

The government objects that the claims of Mr. Monk, Jr. and other Black veterans are barred by the statute of limitations. Def.'s Mem. at 33–39. Not so. Under ordinary operation of the "discovery rule," Mr. Monk, Jr.'s claims accrued in late 2021, when a statistician determined that the VA records NVCLR and BVP had to sue to obtain revealed systemic racial bias. He timely filed his FTCA administrative claim in February 2022. Nor did other Black veterans learn of VA's systemic race discrimination until November 2022 or later, from media coverage of this action, together with VA's concession of historic racial disparities in response. *See supra* note 1. Plaintiffs' claims are also timely under the separate "continuing violations" doctrine.

1. <u>Plaintiffs' Claims are Timely Under the Discovery Rule.</u>

As the government concedes, the discovery rule operates to postpone the accrual of a claim under the FTCA until a plaintiff has "knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." *Kronisch v. United States*, 150 F.3d 112, 120–21 (2d Cir. 1998). The purpose of the rule is to protect plaintiffs who face "problems in discerning the fact *and* cause of their injuries," and so "any plaintiff who is blamelessly ignorant of the existence *or* cause of his injury should be accorded the benefits of the more liberal accrual standard." *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982) (emphases added).

Here, Plaintiffs learned about the basis for their claims within two years of the filing of the complaint, so their claims are timely under the discovery rule. *See* Am. Compl. ¶ 7 ("In 2021, for the first time, Mr. Monk Jr. learned of concrete evidence of persistent racial disparities in VA benefits programs, namely the 2021 statistical analysis of records disclosed by VA during FOIA litigation"); *id.* ("Members of NVCLR such as Ms. Barnett became aware of this evidence in 2022 and 2023, after Mr. Monk and NVCLR publicized it."); *id*. ¶ 192 (same).

In arguing otherwise, the government misconstrues the nature of Plaintiffs' claims and misapplies the discovery rule. The government contends that Plaintiffs were "injured" at the time their VA benefits decisions were denied. *See* Def.'s Mem. at 34. But Plaintiffs are not challenging the denial of their VA benefits decisions. They are challenging their subjection to a discriminatory process. *See* Am. Compl. ¶ 208 (alleging Plaintiffs and the proposed class "were subjected to significant emotional, psychological, and dignitary harms as a result of interacting with a racially discriminatory process and a negligently trained and supervised system"); *id.* ¶ 215 ("The failure of VA officials and employees to maintain a racially neutral and non-discriminatory system of administering benefits led to psychological harm and emotional distress."); *id.* ¶ 223 (alleging harm based on subjection to "a system that was racially

discriminatory"). And they did not know that the process was discriminatory, and that the cause was VA's negligence, until they learned about the statistical analysis performed on newly obtained documents by NVCLR. *Id.* ¶¶ 183–87, 189, 192.

The Second Circuit's decision in *Barrett* is instructive. There, a civilian died in the 1950s after being administered a mescaline derivative as part of a secret chemical warfare experiment, without his knowledge or consent. *Barrett*, 689 F.2d at 326. The Army revealed the background facts only in the mid-1970s, prompting the civilian's estate to bring suit under the FTCA. *Id.* at 326–27. The Second Circuit held that the discovery rule is appropriately applied "where the Government conceals its negligent acts so that the plaintiff is unaware of their existence." *Id.* at 327. Thus, "[a]lthough the existence of [the man's] injury (death) was clearly evident in the 1950s," the allegations that the army "actively covered up both its involvement in the affair and the nature of its misdeeds" supported application of the discovery rule to delay accrual of the cause of action. *Id.* at 327–28. The government argued that the estate knew that "the cause of death was injection of the drug" decades before the action was filed. *Id.* at 328–29. But the Second Circuit held that, although it was known in the 1950s that "the defendant's incompetent and inexperienced agents were negligent in administering an overdose of a toxic substance . . . and in applying improper care to revive [the man]," the "gravamen" of the suit was that the man died not from "medical incompetence, but the fact that he was used as a human guinea pig." *Id.* at 329. Thus, the suit alleged that the government was "negligent in creating, administering and supervising a program pursuant to which the decedent was involuntarily given an untested drug 'solely for experimental purposes' and 'without any proper diagnostic or therapeutic purposes.'" *Id.* For *that* theory of liability, the "critical facts concerning causation were not known and probably not discoverable until the Army made its disclosure in 1975." *Id.*

Similarly, here, Plaintiffs obviously knew about the outcome of particular benefits decisions at the time those decisions were rendered, and they could—and often did—challenge those adjudications through the available channels. What they did not know, and could not have known, at the time of those decisions is that they had also been subjected to a discriminatory process, and that Defendant's negligence was the cause. And, as in *Barrett*, Plaintiffs allege that the government concealed those facts. *See*, *e.g.*, Am. Compl. ¶ 67.

Although the government argues that Mr. Monk's "suspicions" of discrimination are sufficient to trigger his duty of due diligence under the discovery rule, "[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim[.]" *Kronisch*, 150 F.3d at 121. Rather, suspicion merely "give[s] rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." *Id.*; *accord Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) ("[T]he 'discovery' of facts that put a plaintiff on 'inquiry notice' does not automatically begin the running of the limitations period."). And ultimately, the statute of limitations begins to run only "once the plaintiff d[oes] discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'—whichever comes first." *Merck*, 559 U.S. at 653 (second edit in original). Whether and, if so, when a reasonably diligent plaintiff would have discovered the facts of the violation is a fact question for discovery. *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y. 1987).

Here, Mr. Monk's suspicions did prompt his organization, NVCLR, to investigate and pursue additional information, as the government's own summary demonstrates. *See* Def.'s Mem. at 36–37. Those diligent investigations did not yield actionable fruit for purposes of litigation until the 2021 statistical analysis of FOIA records, records that themselves were only obtainable through separate litigation. Those records enabled Plaintiffs to learn for the first time

of *both* their injury (subjection to a discriminatory decision-making process) *and* the cause (negligence of VA officials). These allegations are sufficient at the pleading stage. A reasonable factfinder could conclude that earlier discovery was not possible, and that Plaintiffs were reasonably diligent. Defendants' motion to dismiss on the basis of the statute of limitations should be rejected.[17]

### 2. Plaintiffs' Claims are Timely Under the Continuing Violations Doctrine.

Plaintiffs, including many NVCLR members, still experience the stigma, emotional distress, and other accumulated harms from Defendants' continued negligence in failing to rectify racial disparities in benefits denials. Am. Compl. ¶ 193. Each distinct harm compounded the injury faced by Plaintiffs and served to create one continuing violation. *See Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (in FTCA case, "[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last [violation].") (quotation omitted).

The continuing violation doctrine "provides an exception to the normal knew-or-should-have-known accrual date." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (internal quotation omitted). "Conduct that has been characterized as a continuing violation is composed of a series of separate acts that collectively constitute one unlawful ... practice." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (internal quotation marks omitted). "The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete

---

[17] The government also suggests that Mr. Monk Jr. already knew of systemic VA race discrimination based on publications mentioned in this and other lawsuits. Def. Mem. at 37 n.15. The citations on which the government relies refer to evidence of race discrimination by an entirely different federal agency, the U.S. Department of Defense, *id.* (citing Compl., ECF No. 1, ¶¶ 55–57; *Monk v. Mabus*, Compl., ECF No. 1, ¶ 29); in medicine generally and VA health care (which is not at issue in this case), *id.* (citing *BVP*, Compl., ECF No. 1, ¶¶ 11–18); discriminatory hiring and hate speech by Veterans Law Judges*, id.* (citing same, ¶¶ 19–21); and past *denials* by VA leadership of racism in employment, *id.* (citing same, ¶ 22). None of the government's citations suggest Plaintiffs had any prior knowledge of pervasive race discrimination in VA benefits adjudication.

acts are part of a 'serial violation,' but to claims that by their nature accrue only after the plaintiff

has been subjected to some threshold amount of mistreatment." *Gonzalez*, 802 F.3d at 220

(internal quotation marks omitted).

In Connecticut, "[t]o support a finding of a continuing course of conduct that may toll the

statute of limitations there must be evidence of the breach of a duty that remained in existence

after commission of the original wrong related thereto." *Targonski v. Clebowicz*, 63 A.3d 1001,

1008 (Conn. 2013). In D.C., "[t]he continuing-violations doctrine applies where 'no single

incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the

cause of significant harm,' and so it is 'proper to regard the cumulative effect of the conduct as

actionable.'" *See Loumiet v. United States*, 838 F.3d 935, 948 (D.C. Cir. 2016).

In the instant case, Plaintiffs were subjected to repeated tortious conduct that persisted for

years, and in some cases, decades. Each individual breach of Defendant's duty extended the

statute of limitations and Plaintiffs' claims are timely.[18]

## V.     **CONCLUSION**

For the foregoing reasons, the motion to dismiss should be denied.

---

[18] The government also argues that Mr. Monk's claims are precluded because Mr. Monk challenges "the alleged improper denials of benefits applications and/or failure to upgrade his discharge," and those claims have "been resolved." Def.'s Mem. 40. Defendant has again attacked claims Mr. Monk (and certainly not NVCLR or Mr. Monk, Sr.) do not advance. In neither his individual VA benefits cases nor discharge upgrade applications could Mr. Monk have raised **FTCA claims** that VA officials had a duty to redress pervasive racial disparities of which they knew or should have known, breached that duty by failing to undertake management interventions of various kinds, and thereby caused emotional, dignitary, and reputational injuries. *See supra* Section III.A.1. (neither BVA nor CAVC have jurisdiction to adjudicate FTCA claims); *supra* note 8 (Mr. Monk does not challenge his discharge); *see supra* at Section III.C. (evidence of systematic VA racial disparities disclosed by VA only in 2021 and 2023 in response to FOIA requests and litigation); *see also Connecticut Nat. Bank v. Rytman*, 694 A.2d 1246, 1256 (Conn. 1997) (when a plaintiff has two claims but the court which heard "the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should not be precluded") (quoting Restatement (Second) of Judgments, § 25).

Dated: July 14, 2023
       New Haven, Connecticut


Respectfully Submitted,

By: /s/ Michael Wishnie
Hillary Browning, Law Student Intern
Ethan Dilks, Law Student Intern
Benjamin Kline, Law Student Intern*
Natalia Friedlander**
Michael J. Wishnie, ct27221
Veterans Legal Services Clinic
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
michael.wishnie@ylsclinics.org


* Motion for admission forthcoming.
** Motion for admission pending.

Yaman Salahi***
ysalahi@edelson.com
EDELSON PC
150 California St., 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jimmy Rock***
jrock@edelson.com
EDELSON PC
1255 Union Street NE, 7th Floor
Washington, D.C. 20002
Tel: 202.987.6303

Theo Benjamin***
tbenjamin@edelson.com
Zoë Seaman-Grant***
zseaman-grant@edelson.com
EDELSON PC
350 North LaSalle St., 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

***admitted *pro hac vice*