**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK, Jr., | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:22-cv-1503 (JBA) |
| | : | |
| THE UNITED STATES OF AMERICA, | : | July 21, 2023 |
| *Defendant*. | : | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

The United States Department of Veterans Affairs considers the issue of racial disparities in veterans benefits to be of great significance, is working to actively address it, and is committed to eliminating barriers so that all veterans are treated fairly and equally. But Defendant's motion to dismiss should be granted because (1) the Veterans' Judicial Review Act (VJRA) precludes subject matter jurisdiction, (2) there is no subject matter jurisdiction under the Federal Tort Claims Act (FTCA), and (3) Plaintiffs' claims are untimely. Plaintiffs' arguments against application of the VJRA to claims that originate in veterans' benefits determinations are unavailing. Plaintiffs have also failed to establish any cognizable private analogue in state tort for their FTCA claim. Nor do they address or refute controlling case law regarding the statute of limitations. All counts of the amended complaint should therefore be dismissed for failure to establish subject matter jurisdiction.

**I.      Plaintiffs' attempts to circumvent the VJRA fail.**

In their opposition, Plaintiffs do not address Second Circuit case law that makes clear that the current lawsuit must be dismissed pursuant to the VJRA, and instead rely upon an out-of-circuit case that has been soundly rejected by courts in the Second Circuit and others across the country. In addition, Plaintiffs take the erroneous position that individual benefits determinations are not relevant to the instant lawsuit, despite the fact that their complaint and briefing are replete

with allegations related to those determinations. The VJRA precludes Plaintiffs from bringing this suit in district court.[1]

### A.    Plaintiffs do not address prevailing case law interpreting the VJRA.

Plaintiffs' arguments attempting to establish jurisdiction in this Court notwithstanding the VJRA hinge on a widely rejected standard that has not been adopted by the Second Circuit. Plaintiffs argue that jurisdiction is not precluded by the VJRA because they do not challenge "the correctness of any particular benefits decision by line staff in local VA offices," but rather "the negligent failure of more senior VA officials to act *after* they knew or should have known of racial disparities in benefits decisions." Opp. at 20.[2] Plaintiffs rely on the D.C. Circuit's decision in *Broudy v. Mather*, 460 F.3d 106 (D.C. Cir. 2006), to support this narrow reading of the VJRA's exclusivity provisions. *Id.* at 115 (holding that VJRA did not prohibit district court jurisdiction where plaintiffs were "not asking the District Court to decide whether any of the veterans whose claims the Secretary rejected are entitled to benefits" nor "to revisit any decision made by the Secretary in the course of making benefits determinations."). This reliance is misplaced. *Broudy's* limitations on the VJRA are not implemented by courts in a majority of circuits, including in this Circuit.

---

[1] Plaintiffs also incorrectly assert that there is no other meaningful avenue for relief available. Pls.' Br. in Opp. to Def.'s Mot. to Dismiss at 15-16, ECF No. 61 (Opp.). The VJRA provides processes by which to appeal benefits decisions, reapply following a final benefits decision, and even collaterally challenge a final benefits decision. An applicant could allege that his denied application met all relevant criteria, but the application was denied due to an impermissible factor, *i.e.*, discrimination. The fact that Plaintiff Monk Jr. did not make such arguments to the Court of Veterans Claims (CAVC) does not mean that he could not have done so. Plaintiffs acknowledge the CAVC's broad powers of judicial review. Opp. at 16 n.10. The FTCA, however, is not the correct method for addressing these disputes.

[2] Plaintiffs appear to distinguish actions by "line staff in local VA offices," who make initial benefits decisions, from administrative actions by a vague group of "more senior VA officials." Opp. at 20. But for purposes of the VJRA, the issue is whether the case concerns "questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a).

Plaintiffs cite *Schwingle v. United States*, No. 20-cv-6394 CJS, 2022 WL 9462632 (W.D.N.Y. Oct. 14, 2022), as being in accord with *Broudy*. Opp. at 19. But the opposite is the case; *Schwingle* in fact details how "the majority of Circuit Courts of Appeals that has considered the issue *has not limited* [the VJRA] only to situations where the VA has actually denied a claim for veterans' benefits." *Schwingle*, 2022 WL 9462632 at *8 (emphasis added) (holding precluded an FTCA claim that the VA allegedly failed to ever process an application for disability benefits filed decades earlier). *Schwingle* refused to follow *Broudy* and "reject[ed] Plaintiff's contention that VJRA § 511(a) only applies where the VA has made an actual decision denying veterans' benefits." *Id.* at *9. Rather, the court concluded that § 511(a) applied because resolving Plaintiff's claim required evaluating "whether the VA acted properly in handling Plaintiff's benefit request." *Id.* Other courts within the Second Circuit have similarly refused to read the VJRA so narrowly. *See* Memo. in Support of Mot. to Dismiss at 20-21, ECF No. 23-1 (MTD) (citing cases). Plaintiffs do not cite a single case in this Circuit that follows *Broudy*.

Neither do cases Plaintiffs cite from outside this Circuit support *Broudy's* limited VJRA interpretation. For example, Plaintiffs argue that *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) (en banc), stands for the proposition that only "review of decisions made in the context of an individual veteran's VA benefits proceedings are beyond the jurisdiction of federal courts." Opp. at 19 (citing *id.* at 1023). But in that opinion, the Ninth Circuit concluded that the VJRA "precludes jurisdiction over a claim if it requires the district court to review VA decisions that *relate to* benefits decisions, . . . *including* any decision made . . . *in the course of making benefits determinations*." *Id.* at 1025 (internal citations and quotations omitted) (emphasis added). In doing so, the court acknowledged that "Congress was quite

serious about limiting our jurisdiction over anything dealing with the provision of veterans' benefits." *Id.* at 1023.[3]

Plaintiffs' submission that the VA has "made no decision regarding Plaintiffs' tort claims" is no obstacle to the VJRA's preclusive effect. Opp. at 19. If all it took to overcome the VJRA was artful pleading, by which a plaintiff characterizes their benefits-related dispute as a tort or constitutional claim not "decided" by the VA, the statute's exclusive jurisdiction provision would be eviscerated. Courts have rejected this approach time and again. *See* MTD at 20-21 (citing cases). The VJRA clearly applies to Plaintiffs' claims, which are inextricably intertwined with questions of fact and law *related to* benefits determinations, *including* the appropriateness of the benefits determinations themselves.

---

[3] Even the D.C. Circuit has struggled with the "tension" that *Broudy* created with other decisions by that Court that do not read the VJRA so narrowly. *See Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 (D.C. Cir. 2010) (acknowledging this "tension" but declining to resolve it given plaintiffs lacked standing).

Other cases cited by Plaintiffs do not support jurisdiction in this case. *Names Redacted by Agency*, 1992 BVA LEXIS 3662 (BVA Feb. 25, 1992), ECF No. 62, Opp. at 17, is inapposite. That matter concerned an alleged intentional misdiagnosis by VA physicians. Further, while the opinion stated that claims for intentional torts "come[] under" the FTCA, the FTCA does not provide redress for intentional torts. *Id.*; 28 U.S. Code § 2680. And *Hanlin v. United States*, 214 F.3d 1319 (Fed. Cir. 2000), Opp. at 15-16, concerned a dispute in which the plaintiff, an attorney to a veteran pursuing past-due benefits, sued the VA for a percentage of the benefits award pursuant to a fee agreement that purported to authorize the VA Secretary to withhold a percentage of the benefits to be paid directly to the attorney. The VA accidentally paid the entire benefits amount directly to the veteran. Questions of fact or law relating to the veteran's benefits determination were not in dispute—only the manner in which they were paid out (or failed to be paid out) to a third party. *Id.* at 1320-21; *see also Anestis v. United States*, 749 F.3d 520, 526 (6th Cir. 2014) (district court had jurisdiction over medical malpractice claim against VA, where the case did "not involve a review of a benefits determination" or "challeng[e] decisions and actions regarding [the veteran's] application for benefits or his eligibility or enrollment status," but instead concerned "failure to treat and failure to provide care."), Opp. at 20, 22; *Gayer v. United States*, No. 3:16-CV-00467-GNS-HBB, 2019 WL 2130155, at *6 (W.D. Ky. May 14, 2019) (also alleging medical negligence by VA treatment providers leading to decedent's suicide, not disputing benefits determinations), Opp. at 22; *Cortes Castillo v. Veterans Admin.*, 433 F. Supp. 2d 221, 224 (D.P.R. 2006) (VJRA did not bar jurisdiction where, "[i]n essence, plaintiffs seek compensatory damages for the doctor's negligence in issuing a psychiatric evaluation with no medical basis"), Opp. at 23-24.

4

**B.     Plaintiffs' claims center on questions of law and fact affecting the provision of benefits.**

Plaintiffs argue that individual benefits determinations are irrelevant to their claims, despite the fact that their complaint and briefing are replete with allegations related to them.[4] They state that their claims may be resolved "without needing to delve into the propriety of any individual benefits determination" because "interacting with a racially discriminatory" benefits process itself caused harm. Opp. at 3, 14, 21, 36; Am. Compl. ¶¶ 3, 208. This argument lacks merit.

But Plaintiffs must concede that their alleged harm is premised on an analysis of benefits grant rate data, *i.e.*, the outcomes of individual benefits determinations. To demonstrate that alleged statistical disparities are the result of racial discrimination and not other, innocuous and/or permissible factors,[5] Plaintiffs would need to show that benefits were improperly denied based on race.

Attempts like Plaintiffs' to allege generalized harms to avoid VJRA preclusion have been unsuccessful. In *Veterans for Common Sense*, the plaintiff "attempt[ed] to circumvent [the VJRA's] jurisdictional limitation by disavowing relief on behalf of any individual veteran, and

---

[4] Plaintiffs devote almost as much time and space arguing what this case is purportedly *not* about—benefits determinations—as they do to discussing benefits determinations. *Compare* Opp. at 20-25 (disclaiming that this case is about individual benefits requests), Am. Compl. ¶¶ 9, 187 (same), *with* Am. Compl. ¶¶ 2, 79-81, 104-112, 116-117, 121-125, 142-143, 167-176 (discussing benefits requests and determinations). If benefits determinations were truly a non-issue, Plaintiffs need not have pleaded any allegations respecting their individual applications and determinations.

[5] Plaintiffs conflate statistical disparities between Black and white veteran grant rates with racial discrimination. While discrimination may have contributed to disparity, it is not the only possible explanation. As stated by the VA in the 2013 "Report of the Advisory Committee on Minority Veterans" described in Plaintiffs' opposition and incorporated into the amended complaint by reference, "differences in average compensation do not necessarily imply unequal treatment of Veterans, and [] answering the question of disparities or unequal treatment requires first examination of the factors that lead to a compensation award, and then determination of which of these factors are explained by characteristics of the Veterans and their applications rather than by VBA judgments and decisions." 2013 Annual Advisory Committee on Minority Veterans Report at 17, available at https://www.va.gov/centerforminorityveterans/acmv/; Opp. at 4; Am. Compl. ¶ 65. The VA takes racial disparities in grant rates seriously, which is exactly why it is examining whether discrimination might have caused those racial disparities, but it does not follow that the disparities themselves prove racial discrimination. *See* Opp. at 14 n.9.

instead proffering evidence of *average* delays to demonstrate statutory and constitutional violations." 678 F.3d at 1026. Like Plaintiffs here, Veterans for Common Sense (VCS) argued that its complaint rested on constitutional defects "with the VA's systems, . . . divorced from the facts of any individual claim" and thus did not "involve questions of law or fact necessary to a decision about providing benefits to an individual veteran." *Id.* at 1026-27 (internal quotations omitted). In rejecting this argument, the Ninth Circuit held:

> The fact that VCS couches its complaint in terms of *average* delays cannot disguise the fact that it is, fundamentally, a challenge to thousands of individual mental health benefits decisions made by the VA. In order to determine whether the average delays alleged by VCS are unreasonable, the district court would have to review the circumstances surrounding the VA's provision of benefits to individual veterans. . . . VCS alleges that the average processing time for mental health claims is too long, but the district court would have no basis for evaluating that claim without inquiring into the circumstances of at least a representative sample of the veterans whom VCS represents; then the district court would have to decide whether the processing time was reasonable or not as to each individual case.

*Id.* at 1027.

Similarly, the D.C. Circuit in *Vietnam Veterans of America* addressed plaintiffs' "rather apparent effort to avoid the preclusive bite" of § 511(a). 599 F.3d at 661. There, plaintiffs "went out of their way to forswear any individual relief" for veterans in a challenge to the VA's processing time in adjudication of benefits appeals. *Id.* at 662. The Court held that plaintiffs lacked standing because "the average processing time does not cause [veterans] injury; it is only *their* processing time that is relevant." *Id.* Even "assuming the alleged illegality—that the average processing time at each stage is too long—that 'illegality' does not cause the [plaintiffs'] injury." *Id.* Although the Court declined to decide whether it lacked jurisdiction under the VJRA, it held that the plaintiffs lacked standing, because "causation is a necessary element of standing."

*Id.*[6] Plaintiffs' claims, similarly built upon an alleged statistical disparity rate, can and should be dismissed for either or both reasons stated in these two cases.[7]

Whether or not Plaintiffs state that they are "*seek[ing]* judicial review of the individual adjudication decisions of . . . particular applications for benefits," Opp. at 14 (emphasis added), in order to grant any monetary damages in this case or even assess Plaintiffs' disparity theories, the Court would be *required* to conduct such a review. Pursuant to the VJRA, this Court lacks jurisdiction to do so.

## II.     Plaintiffs' arguments for FTCA jurisdiction fail.

### A.     The FTCA precludes this Court from recognizing a new tort.

Plaintiffs invite the Court to apply a multi-part test to recognize and impose a new duty of care "in the absence of prior precedent," Opp. at 28-33, without addressing black letter law that the FTCA does not waive sovereign immunity for new torts that have never before been recognized under state law, MTD at 25-26 (citing, *e.g.*, *Feres*, *Dorking*, and *Carter*). The fact that Plaintiffs urge the Court to create a new duty of care makes clear that neither Connecticut nor the District of Columbia have yet recognized a tort for racial discrimination. Rather, Connecticut's and the District's public policies of protecting people from racial discrimination are achieved through "complex regulatory schemes" and "state antidiscrimination laws" separate from tort law. *See* Opp. at 33-34.

---

[6] If accepted, Plaintiffs' conceptualization of their alleged harm—crafted to avoid VJRA preclusion—could raise issues respecting Plaintiffs' predicate Article III standing. *See Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996); *Katz v. Donna Karen Co. Store, L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017); Fed. R. Civ. P. 12(h)(3). The only way to ensure that named or class plaintiffs experienced an "injury in fact" is to assess individual benefits determinations and related decisions (specifically, denials), to see if they were reached in a legitimate manner.

[7] Nor can Plaintiffs avoid the VJRA by claiming that the issues complained of are "systemic." *See* MTD at 24 (listing cases rejecting similar arguments). That the VA may "recognize[] the distinction between review of individual benefits decisions and review of management practices" in the context of a newly announced Equity Team conducting an assessment of VA practices, Opp. at 14 n.9, is not pertinent to whether the Court has subject matter jurisdiction in this case.

**B.    Supreme Court precedent requires the Court to compare the VA's relationship to Plaintiffs to the relationship between two private actors.**

Attempting to avoid the clear limitations of the holdings of *Indian Towing v. United States*, 350 U.S. 61 (1955), and *United States v. Olson*, 546 U.S. 43 (2005), Plaintiffs claim at the highest level of generality that "the relevant government conduct" giving rise to liability is "the federal government *taking it upon itself to aid the public*." Opp. at 27 (emphasis added). That articulation is overbroad and incorrect.

**1.    Plaintiffs' proposals for interpreting the FTCA's terms are so broad that they would render its pertinent limitations meaningless.**

Plaintiffs' characterization of the relevant government conduct would render the private analogue rule meaningless, as would their suggestion that negligence *per se* incorporates violations of any federal statute into state tort law.

In both *Indian Towing* and *Olson*, the Court found a private analogue in hornbook "good Samaritan" law because the government had "undertake[n] to warn the public of danger and thereby induce[d] reliance." *Olson*, 546 U.S. at 47. Plaintiffs have recast established "good Samaritan" law into the government "*taking it upon itself to aid the public*." This articulation is inconsistent with both parts of the *Olson* test. It generalizes the act of "warning" to "aiding," and it excises the second element (induced reliance) entirely. The *Olson* test does not apply here. There are no allegations that the VA took on responsibility to warn the public of a danger or failed to do so, let alone induced public reliance on such warning. If Plaintiffs' rearticulation of the private analogue rule were the law, the government would be exposed to tort liability *any time* the purpose of its actions is to help the individuals or entities it serves. Plaintiffs' conceptualization would render the "private analogue" rule meaningless.

Further, neither *Indian Towing* nor *Olson* establish a duty in tort to prevent *economic* harm to others, as opposed to *physical* harm to others' persons or property. "An actor has no

general duty to avoid the unintentional infliction of economic loss on another." Restatement (Third) of Torts: Liability for Economic Harm § 1 (2020). And courts generally hold that the "good Samaritan" doctrine, or the negligent failure to render services that a defendant has undertaken to perform, does not create a duty to prevent economic harm—only physical harm of persons or things. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm §§ 42, 43 (2012)[8]; *Rocha v. Brown & Gould LLP*, 101 F. Supp. 3d 52, 85-88 (D.D.C. 2015) (under D.C. "good Samaritan" law, "a defendant is subject to liability only when his failure to exercise reasonable care either increased the risk of physical harm to the plaintiff or caused the plaintiff to suffer actual physical harm."); *Waters v. Autuori*, 236 Conn. 820, 833-34 (1996) ("By its plain language, [the Restatement] recognizes a cause of action arising out of the rendering of services only for negligence that causes physical harm to a third person or his things. . . . [i]n the absence of a claim of physical harm, [the Restatement] cannot furnish a basis of recovery for the plaintiff's claim of emotional distress") (internal quotations omitted); *see also PAB Aviation, Inc. v. United States*, 169 F. App'x 61, 63 (2d Cir. 2006) (applying New York law and holding that "it is clear that a plaintiff may recover for financial losses caused by a defendant's negligence only if he has also suffered personal injury or property damage") (internal quotations omitted); *Dorking Genetics v. United States*, 76 F.3d 1261, 1268 (2d Cir. 1996) (applying New York law and holding that "merely withholding a benefit does not create Good Samaritan liability") (internal quotations omitted); *but see Devlin v. United States*, 352 F.3d 525, 529, n.3 (2d Cir. 2003) (noting *Waters* but refusing to decide whether Connecticut has resolved question of possible economic loss liability under "good Samaritan" law).

---

[8] Some cases cite to Restatement (Third)'s predecessor, Restatement (Second) of Torts §§ 323, 324A (1965), which sections contain materially similar language.

Similarly, Plaintiffs' suggestion to couple the doctrine of negligence *per se* with alleged violations of federal law, Opp. at 31, would render the FTCA's statutory term "law of the place" meaningless.[9] Plaintiffs cite no cases where courts have found the FTCA's parameters satisfied (and sovereign immunity waived) based on such an interpretation of state tort law. Nor could they do so, as courts have repeatedly made clear that "whether or not a state recognizes negligence per se, Federal Tort Claims Act plaintiffs must identify analogous state-law duties that would impose liability on private parties for similar conduct." *Smith v. United States*, 14 F.4th 1228, 1234 (11th Cir. 2021); *see Johnson v. Sawyer*, 47 F.3d 716, 728-29 (5th Cir. 1995) (en banc) (collecting cases for the proposition that a state law duty cannot be shown in an FTCA action by relying upon violation of a federal statute or regulation and a state's negligence per se doctrine). Plaintiffs' claims against the United States have no private analogue in state law, and they should be dismissed.

## 2. Plaintiffs' relationship to the VBA is specific, not abstract; and no specific comparison constitutes a cognizable private analogue.

After citing *Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012), for its exhortation that Court must "look further afield for a private analogue" when the government is the only entity that performs the relevant actions, Opp. at 26-27,[10] Plaintiffs characterize the government's conduct at an abstract level of generality and do not suggest any "like circumstances" between private parties. Plaintiffs' characterization of the relevant government conduct is overbroad because VA's statutory duties and mission relate to aiding a certain set of individuals, not "the

---

[9] *See Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) (quoting 28 U.S.C. § 1346(b)(1); citing 28 U.S.C. § 2674; applying New York state law).

[10] *Liranzo* itself is not on point. There, the Court held that illegal detention by the Immigration and Naturalization Service could be actionable under the FTCA as an analogue to a false imprisonment claim that challenges a "citizen's arrest," where a private citizen may be authorized to detain a suspected criminal but may be sued if turns out that there was no basis to detain the suspect. *See McGowan v. United States*, 94 F. Supp. 3d 382, 391 (E.D.N.Y. 2015) (summarizing *Liranzo*), *aff'd*, 825 F.3d 118 (2d Cir. 2016).

public" at large; and the individuals who (like Plaintiffs) *do* have a relationship with the VA have a *specific relationship*.[11]

Plaintiffs' brief does not dispute the defining characteristics of this relationship, which were described in the background section of Defendant's motion to dismiss, and which is exemplified by Plaintiff Monk, Jr.'s history. *See* MTD at 3-4, 5-7, 9-15. Prior to military service, a member of the public has no direct, independent relationship with the VA.[12] While performing military service, in connection with their service, a servicemember may suffer an injury or become disabled. As relevant here, ending their military service alone does not put the now-former servicemember into a direct relationship with the VA.[13] A person's direct relationship with the VA commences upon a former servicemember submitting to the Veterans Benefits Administration (VBA) an application for benefits, such as disability or education-assistance benefits.[14] Submitting the application to the VBA is a gateway to further interactions with the VA, *e.g.*, correspondence with VBA employees who process claims and evaluation by VHA or VA-contract examiners.[15] If a former servicemember's application to the VBA is successful, they could receive money from the VBA on an ongoing basis for the rest of their life.

---

[11] Indeed, Plaintiffs allege that their harms stem from "interacting with a racially discriminatory VA *benefits system*." Am. Compl. ¶¶ 3, 128 (emphasis added); Opp. at 3, 9 (discussing "the toll it took to interact with a biased and improperly trained and supervised system").

[12] A caveat to the general rule that non-servicemembers have no direct relationship to the VA are dependents and caregivers of veteran-beneficiaries who do have a direct relationship with the VA, but the relationship is derivative of the veteran-beneficiary's relationship (and therefore not independent).

[13] Pursuant to its statutory duties, and as a matter of policy, the VA engages in extensive outreach campaigns directed to former servicemembers. The VA's efforts in this respect are not at issue in this suit.

[14] Although the VA runs other programs for former servicemembers and veterans that are not related to monetary benefits, such the Veterans Health Administration (VHA) and managing military cemeteries, Plaintiffs' interactions with the VA arise entirely in the monetary benefits context, and that is the relationship described here.

[15] Plaintiffs' brief argues such interactions included "walk[ing] into VA offices to complete forms, answer questions, produce records, and submit to examinations." Opp. at 1, 10 (citing Am. Compl. ¶¶ 129-30). Plaintiffs claim they "seek damages for emotional, reputational, and dignitary harm[s that] . . . would have been suffered for any number of appearances before the VA." Opp. at 25.

*(Continued)*

Plaintiffs decline to identify "like circumstances" in which a person applies to an entity for monetary benefits, the entity pays them, and the entity is subject to tort liability. And sovereign immunity is not waived in any arguably comparable circumstances that their brief suggests or that Defendants have identified.

Even while declining to identify specific "like circumstances," Plaintiffs' brief contains hints of comparable relationships. For example, Defendant agrees that it is appropriate to compare the VA's provision of benefits to the Connecticut Department of Veterans Affairs' provision of benefits. *See* Opp. at 33 n.14 (comparing the two). But that comparison helps the government, not the Plaintiffs, because *Olson* made clear that a plaintiff cannot state a private analogue by comparing the United States to a state or municipal entity rather than a private entity. *Olson*, 546 U.S. at 45-46. Thus, Plaintiffs cannot create subject matter jurisdiction by comparing their relationship to the VA to a state Department of Veterans Affairs.

Nor may Plaintiffs look to state law sounding in contract for their private analogue. The FTCA is explicitly limited to "tort" claims; it does not waive sovereign immunity for plaintiffs to pursue contractual rights. *See* 28 U.S.C. § 2674. Just as a defendant has no general duty to avoid

---

Notably, Plaintiffs' complaint stops short of alleging that any VA employee who interacted with the applicant(s) acted negligently. The closest the amended complaint comes is in its allegation that Michele Barnett experienced health care providers who were "unprofessional." Am. Compl. ¶¶ 177-178. But in neither Connecticut nor the District of Columbia is a health care provider's lack of professionalism cognizable in medical malpractice (or any other tort). Plaintiff Monk, Jr. also appears to allege harm arising from voluntarily submitting to evaluation by a private psychiatrist, in order to substantiate his claims for benefits. Am. Compl. ¶ 119; Opp. at 8. The psychiatrist generated a report that resulted in Plaintiff's successful application for benefits. *See Monk v. Wilkie*, No. 19-217, 2020 WL 2461722, at *2 (Vet. App. May 13, 2020) (relying on psychiatrist's report). If the Plaintiff is asking the Court to recognize a tort for the burdens that are inherent in perfecting a *successful* administrative claim, the Defendant asks the Court to reject that request. Defendant is unaware of any jurisdiction that allows plaintiffs to recover (in tort or otherwise) for the emotional burdens of pursuing legal relief.

Moreover, with respect to the repeated references to "reputational" and "dignitary" harms, *e.g.*, Opp. at 25, Plaintiffs point to no state law tort that would recognize such damages. Notably, the FTCA specifically excepts claims against the United States that sound in defamation. 28 U.S.C. § 2680(h) (excepting claims for, *inter alia*, libel and slander). Thus, Congress did not through the FTCA waive the United States' sovereign immunity for Plaintiffs' claims that seek damages for reputational and dignitary harm arising from alleged defamation.

unintentional infliction of economic loss, "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties." Restatement (Third) of Torts: Liability for Economic Harm § 3 (2020).

Neither can Plaintiffs claim that they, as beneficiaries of the VA's pecuniary distributions, are essentially seeking to enforce the terms of a charitable trust. The general rule is that only a state Attorney General, not a member of the public, has standing to bring such a suit. *See Derblom v. Archdiocese of Hartford*, 346 Conn. 333, 343 (2023) (noting Connecticut is "among the majority of jurisdictions that have codified this common-law rule"); *He Depu v. Yahoo! Inc.*, 306 F. Supp. 3d 181, 189 (D.D.C. 2018).

A comparison of the VA to private entities that pay retirement benefits implicates a separate preclusive bar to recovery. In *Clark v. United States*, 321 F. App'x 672 (9th Cir. 2009), the plaintiff sued under the FTCA and alleged that the Department of the Navy and the federal Office of Personnel Management had negligently processed his disability retirement benefits. *Id.* The appellate court held that the plaintiff showed no "persuasive analogy" under which a private person would be liable in tort under like circumstances. *Id.* at 673. Further, "to the extent the [plaintiffs] identified a cognizable tort under applicable local law, it would be preempted by the Employee Retirement and Income Security Act ('ERISA') against a private employer." *Id.* Thus, Plaintiffs cannot create subject matter jurisdiction by comparing their relationship to the VA to private entities that pay comprehensive retirement benefits.

Similarly, Plaintiffs may not state a private analogue by comparing themselves to an employee who is injured on the job and receives associated benefits. In both Connecticut and the District of Columbia, the exclusive remedy for an employee seeking damages from his employer for a work-related injury is the jurisdiction's workers' compensation scheme. *See Makarova v.*

*United States*, 201 F .3d 110, 114 (2d Cir. 2000) (dismissing FTCA claim due to exclusivity

provisions of District of Columbia Workers' Compensation Act); *Peruta v. United States*, No.

3:16-cv-2112 (VLB), 2018 WL 995111, at *3 (D. Conn. Feb. 21, 2018) (same, respecting

Connecticut law). Thus, Plaintiffs cannot create subject matter jurisdiction by comparing their

relationship to the VA to employees who receive compensation for work-related injuries.

One further comparison shows how Plaintiffs' claims are a mismatch for the FTCA.

Plaintiffs' emphasis on racial disparities in outcomes[16] echoes Title VII of the Civil Rights Act

of 1964, under which disparate-impact claims have helped protect the civil rights of Americans

for decades. And indeed, Plaintiffs' opposition brief cites Title VII jurisprudence in support of its

argument that the VA's negligence includes its "fail[ure] to account for racial disparities in the

military justice system." Opp. at 9 n.8. But Plaintiffs do not invoke Title VII, or any other federal

civil rights statute, as a basis for their suit. Rather, they invoke the FTCA, which waives the

United States' sovereign immunity only where there is an analogous tort under the law of the

relevant state—here, Connecticut or the District of Columbia.

Plaintiffs have failed to identify any "like circumstances" where a private person would

be subject to liability for engaging in the same alleged activity as the VA's employees.

Accordingly, their claim for negligence under the FTCA must fail.

C.    **Plaintiffs fail to establish subject matter jurisdiction for their claim for
      negligent infliction of emotional distress.**

*Dingle v. Fleet Bank*, No. CV00-0443028-S, 2001 WL 282922, at *1 (Conn. Super. Ct.

Mar. 1, 2001), does not create subject matter jurisdiction for negligent infliction of emotional

distress. *See* Opp. at 34. *Dingle* did not broadly hold that allegations of racial discrimination will

---

[16] *E.g.*, Opp. at 1 (citing "disparities based on race in VA benefits decisions").

state a claim for negligent infliction of emotional distress. In fact, the court concluded that the plaintiff had not stated a claim for negligent infliction of emotional distress through an allegation that a bank "verif[ied] (albeit slowly) the validity of a check before cashing it." *Id.* at *2. Although the opinion suggested that alleging "[d]iscriminati[on] against a bank customer on the basis of his race *may very well*" state a claim for negligent infliction of emotional distress, this is dicta, not a holding recognizing such a claim. *Id.* (emphasis added). As for their negligence claim, above, Plaintiffs are asking this Court to recognize a new tort against the government; but the FTCA does not establish new causes of action.

> **D.    Plaintiffs fail to establish subject matter jurisdiction for their claim for negligent supervision and training.**

Plaintiffs discuss their third and final tort again at only the highest level of generality. Opp. at 34-35. Plaintiffs cite no cases in either Connecticut or the District of Columbia in which an employer has been held liable for negligent supervision and training of its employees who allegedly engage in racial discrimination in the provision of benefits or other payments. Accordingly, Plaintiffs' claim fails for lack of a private analogue.[17]

**III.    Plaintiffs' arguments respecting timeliness lack merit.**

Plaintiffs' claims fail for the separate reason that they are time-barred. As discussed above and in the motion to dismiss, Plaintiffs' claims ultimately must be based on benefits

---

[17] This claim also fails under the discretionary function exception, which provides: "Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, based upon the exercise or performance of the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, and whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Courts in this circuit and across the country consistently acknowledge that supervision and training of employees "fall squarely within" the discretionary function exception. *See, e.g.*, *Tigano v. United States*, 527 F.Supp.3d 232, 255 (E.D.N.Y. 2021); *Burkhart v. Wash. Metro. Area Trans. Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997); *Sydnes v. United States*, 523 F.3d 1179, 1185-86 (10th Cir. 2008). Because this is a jurisdictional issue, the United States does not waive and expressly reserves the argument that the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), precludes jurisdiction. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021).

denials in their individual cases. Monk Jr. and others were therefore aware of their purported injury since at least the time at which they received denials. The discovery rule contains no requirement that they be aware that they were injured due to negligence; it requires only that a plaintiff discover, or with reasonable diligence should have discovered, the injury's existence and that the Government caused the injury, *i.e.*, by denying the benefits application. *Kronisch v. United States*, 150 F.3d 112, 120-21 (2d Cir. 1998); *United States v. Kubrick*, 444 U.S. 111, 123 (1979).[18]

Plaintiffs continue to argue that they could not have learned about the basis of their claim earlier than 2021, when a Yale University statistician conducted a data analysis for NVCLR.[19] Opp. at 38. Yet Plaintiffs fail to respond to—or even mention—*A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011), discussed in detail in Defendant's motion to dismiss. MTD at 38-39. This silence is telling. Plaintiffs have worked with current counsel on these and related issues since at least 2011 and the statute of limitations does not turn on when they sought FOIA information or when their expert finished analyzing that information. "An accrual date that turns on when a plaintiff (or his lawyers) finally decides to take action, rather than when the plaintiff was sufficiently alerted to the appropriateness of seeking legal advice, would render the

---

[18] As discussed in the motion to dismiss, Defendants do not concede that the Court need even apply the diligence discovery rule, since Plaintiffs' alleged injuries were not inherently unknowable at the time they were inflicted. Nor have Plaintiffs sufficiently alleged any fraudulent concealment to toll the statute of limitations. A VA decision not to publish an internal document, which it was never required to publish, does not come close to an "active cover up" and does not satisfy standards for pleading fraud. Opp. at 37; *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982) ("in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing," diligence discovery rule may apply). Further, if Plaintiff discovers or should have discovered the basis for his lawsuit regardless of the fraud, deliberate concealment does not stop the clock. *See id.*

[19] Contrarily, the amended complaint also states that the analysis merely "confirmed" what was already widely believed and reported—alleged racial discrimination by the VA. *See* Am. Compl. ¶¶ 1-2. Plaintiffs allege that publicly available reports created by the VA's Advisory Committee on Minority Veterans stated repeatedly, and since at least 2013, that "minority veterans believed their disability compensation rates were lower than non-minority veterans' ratings." Am. Compl. ¶ 65. Such a disparity in grant rates is exactly the harm that Plaintiffs now allege. Plaintiffs' claims are time barred because they knew or should have known of disparities since at least 2013, even if individual benefits determinations are irrelevant to Plaintiffs claim.

limitations period meaningless." *A.Q.C.*, 656 F.3d at 141-42. Plaintiffs' failure to address *A.Q.C.* in any way is effectively an acknowledgment of its applicability.

Finally, Plaintiffs' untimely claims cannot be revived by the "continuing violations" doctrine. Opp. at 39. This doctrine holds that "[w]hen a plaintiff experiences a continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last [violation]." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (internal quotations omitted). The doctrine does not apply where, as here, the alleged violations constitute a series of "distinct harm[s]." Opp. at 39; *Gonzalez v. Hasty*, 802 F.3d 212, 223 (2d Cir. 2015) ("[w]here, as here, a plaintiff complains of a discrete act or series of discrete acts, each of which violates the law, the plaintiff has a separate claim for each act, and each act carries its own limitations period.").[20]

The cases cited by Plaintiffs miss the mark. *Flores* did not hold that the doctrine applies to FTCA claims; in fact, it denied the plaintiff's attempt to apply the doctrine. 885 F.3d at 122 (plaintiff's "injuries ceased after the [] order recognizing his [legal permanent residency] status became final"). The other cases cited in Plaintiffs' opposition also generally refused to apply the continuing violations doctrine. *Washington v. County of Rockland*, 373 F.3d 312, 317-18 (2d Cir. 2004) (rejecting theory that "defendants' decision to prosecute fully the administrative disciplinary charges against [plaintiffs], even though there were evidentiary infirmities underlying the charges, was tantamount to an ongoing policy of discrimination."); *Gonzalez*, 802 F.3d at 222 (declining to apply the doctrine to majority of the claims and holding that it "may

---

[20] Nor does the doctrine apply simply because there is allegedly ongoing harm. The question is whether there is a "continuous practice" creating a claim that only accrues after some threshold amount of mistreatment. *Flores*, 885 F.3d at 122; *Gonzalez*, 802 F.3d at 220.

apply" to remaining Eighth Amendment claim, remanding for consideration of dismissal on other grounds).

## **CONCLUSION**

Plaintiffs have failed to sufficiently allege that the United States has waived sovereign immunity under 38 U.S.C. § 511(a) and 28 U.S.C. § 1346(b)(1), and their claims are untimely. Therefore, all counts of the amended complaint should be dismissed for failure to establish subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Wherefore, the defendant the United States requests that the Court grant its motion and dismiss Plaintiffs' claims in their entirety.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Natalie N. Elicker*
Natalie N. Elicker (ct28458)
ASSISTANT U.S. ATTORNEY
157 Church Street, 25th Floor
New Haven, CT 06510
T: (203) 821-3700
F: (203) 773-5373
Natalie.Elicker@usdoj.gov