# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

CONLEY F. MONK, JR., et al.,
      Plaintiffs,

     v.

UNITED STATES,
      Defendant.

No. 3:22-cv-1503 (SRU)

## RULING ON MOTION TO DISMISS

This present motion to dismiss challenges the Court's power to hear claims that the U.S. Department of Veterans Affairs ("VA") has engaged in racial discrimination since World War II. Specifically, the VA compensated Black veterans for their service and sacrifice less than white veterans.

Conley F. Monk, Jr. alleges that the VA rejects Black veterans' benefits applications at a higher rate because of their race.  The government insists "this case does not provide an appropriate vehicle to address such issues."  MTD Mem. of Law, Doc. No. 23-1 at 10.  I disagree.

For the following reasons, I **deny** the government's motion to dismiss, **doc. no. 23.**

## I.     Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A party that moves to dismiss for lack of subject matter jurisdiction "may refer to evidence outside the pleadings."  *Id.* (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).  "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint

(or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). On a Rule 12(b)(1) motion, the plaintiff "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Id.* (quoting *Makarova*, 201 F.3d at 113).

## II.     Background

Conley F. Monk Jr. is a Black veteran who served in Vietnam in the U.S. Marine Corps. Am. Compl., Doc. No. 36 ¶¶ 14, 75, 86. Monk's father, Conley F. Monk Sr., served in World War II and is now deceased. *Id.* ¶ 14. Monk brings this lawsuit personally and as the administrator of his father's estate. *Id.* His co-plaintiff, National Veterans Council for Legal Redress ("NVCLR"), was cofounded by Monk in 1982 and engages in legal services, social services, and advocacy on behalf of veterans. *Id.* ¶ 15.

Mr. Monk Jr. and the NVCLR (collectively, "Monk") allege that the VA has engaged in systemic racial discrimination against Black veterans for decades. *Id.* ¶¶ 2-5. "VA leaders knew or should have known of pervasive racial disparities in the award of VA benefits, and because they nevertheless failed to address these disparities," Monk alleges the VA is liable for the resulting "dignitary, emotional, and psychological harm." *Id.* ¶¶ 6, 8. Monk brings this action under the Federal Tort Claims Act.

### A.   The Federal Tort Claims Act ("FTCA")

The FTCA waives the United States' sovereign immunity for certain torts by government employees resulting in

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person,

would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The Supreme Court "ha[s] consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State – the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (noting that tort claims arising from the United States Constitution are not cognizable under the FTCA, because federal law cannot be the source of FTCA liability).

"The FTCA does not create new causes of action." *Dorking Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996). Instead, the FTCA imposes liability on the United States if a government employee commits a tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. A plaintiff's FTCA action must be "comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred." *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016) (cleaned up and quoting *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988)). FTCA claimants must exhaust their administrative remedies before initiating a lawsuit. *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). "This requirement is jurisdictional and cannot be waived." *Id.*

B. <u>Factual History</u>

Mr. Monk Jr. served in the U.S. Marine Corps in Vietnam. Am. Compl., Doc. No. 36 ¶¶ 14, 86. He was stationed near the Demilitarized Zone. *Id.* ¶ 91. Mr. Monk Jr. frequently witnessed severe and disturbing violence. *Id.* He was exposed to Agent Orange and, as a result, developed diabetes and diabetic peripheral neuropathy. *Id.* ¶¶ 115, 122.

Mr. Monk Jr. received "a Rifle Marksman Badge, a National Defense Service Medal, a Vietnam Service Medal with one star, and a Vietnam Combat Medal with Device" from his service. *Id.* ¶ 93. When his unit was pulled out of Vietnam and transferred to Okinawa, Japan, Mr. Monk Jr. exhibited symptoms of Post Traumatic Stress Disorder (PTSD). *Id.* ¶¶ 94-95. His "PTSD led to two altercations in Okinawa," and Mr. Monk Jr. was told he could not depart until he agreed to an Undesirable (now, an "Other than Honorable") discharge. *Id.* ¶¶ 95, 97. He agreed to an Undesirable discharge in 1970. *Id.* ¶¶ 96-97. PTSD was not formally recognized by the American Psychiatric Association until 1980. *Id.* ¶ 99.

Individuals with a Dishonorable discharge are not considered veterans and are ineligible for VA benefits. *Id.* ¶ 29; 38 U.S.C. § 101(2). Those with an Other than Honorable or Bad Conduct discharge may receive benefits after the VA makes a "character of discharge" ("COD") determination. Am. Compl., Doc. No. 36 ¶ 30. The VA bases COD determinations on a veterans' military record, among other factors. *Id.*; 38 C.F.R. § 3.12(c), (d).

When Mr. Monk Jr. initially applied for benefits in 1971, the VA made a COD determination that he was "discharged under dishonorable conditions and is not therefore entitled to any benefits administered by the Veterans' Administration." Am. Compl., Doc. No. 36 ¶¶ 103-04. For forty-nine years, Mr. Monk Jr. applied for veterans' benefits. *Id.* ¶¶ 104, 107, 110, 112, 117, 124-25. The VA's 1971 COD determination, however, prohibited him from obtaining Connecticut unemployment compensation, VA education benefits, VA home loan benefits, VA PTSD disability benefits, and VA diabetes disability benefits. *Id.* ¶¶ 104, 107, 110, 112, 117.

In the 1970s, the Department of Defense determined Black servicemembers were substantially more likely to face military disciplinary action. *Id.* ¶ 76. The Army similarly found

"a strong relationship" between race and discharge classification. *Id.* In 1973, the EEOC

"concluded that military discharges were so tainted by race discrimination that an employer who

required an honorable discharge as a condition of hiring violated Title VII of the Civil Rights Act

of 1964." *Id.* ¶ 78. Mr. Monk Jr. repeatedly asked the VA to revise its 1971 COD determination

that he was "discharged under dishonorable conditions." *Id.* ¶¶ 104, 110, *see id.* ¶¶ 107, 112,

117, 121. The VA refused. *Id.*

In 2021, in response to a Freedom of Information Act request, the VA sent NVCLR

disability benefits records from 2001-2020. *Id.* ¶¶ 37-39. NVCLR obtained a statistical analysis

of those records. *Id.* ¶¶ 40-42. The analysis revealed racially disparate outcomes: (1) a Black

veteran was 21.9% more likely to have a disability claim denied than a white veteran; (2) a white

veteran is 22.4% more likely to have a disability claim granted than a Black veteran. *Id.* ¶¶ 40-

42. Monk believes that "discriminatory pattern . . . was also present" before 2001. *Id.* ¶¶ 39, 45.

Monk notes other indicators that the VA is a "system rife with racial discrimination." *Id.*

¶ 54. In a 2017 email chain, VA-adjacent work colleagues sent racist messages about Black

benefits claimants. *See id.* ¶ 59. A study by the American Federation of Government Employees

found that from 2017-2020, white VA employees were two times likelier to be promoted than

their Black counterparts. *Id.* ¶ 62. VA's Advisory Committee on Minority Veterans notified the

Veterans Benefits Administration (VBA) in 2013, 2015, 2016, 2017, and 2018 that it believed

minority veterans were receiving lower disability compensation ratings than their non-minority

counterparts. *Id.* ¶ 65.

The VA conducted at least one private internal study, in 2017, to analyze racial

disparities in benefits outcomes. *Id.* ¶¶ 67, 69. The VA found "Non-Hispanic Blacks have the

lowest grant rate at 43% and are the largest outlier in terms of grant rate." *Id.* ¶ 69.  Those

results were only made public through NVCLR's FOIA requests.  *See id.* ¶¶ 68, 70.

Monk brings three claims under the FTCA: (1) negligence, (2) negligent infliction of

emotional distress, and (3) negligent supervision.  *Id.* ¶¶ 201-25.  Monk alleges the VA's alleged

tortious conduct caused "stigma, emotional distress, . . . . psychological, and dignitary harms."

*Id.* ¶¶ 193, 208.

C. Procedural History

After exhausting his administrative claims, Mr. Monk Jr. brought this action under the

FTCA, 28 U.S.C. § 1346(b).  *Id.* ¶ 10.  After the government moved to dismiss under Federal

Rule of Civil Procedure 12(b)(1), Mr. Monk Jr. amended his complaint[1] to join NVCLR and

Conley Monk Sr.'s Estate as co-plaintiffs.  *See generally* Am. Compl., Doc. No. 36.  Mr. Monk

Jr. additionally added Rule 23(b)(3) class action allegations on behalf of "[a]ll Black applicants

for veterans' benefits administered by the Department of Veterans Affairs or its predecessor at

any time since January 1, 1945."  *Id.* ¶ 195.

On November 2, 2023, I held oral argument on the motion to dismiss and took the motion

under advisement.  Min. Entry, Doc. No. 78.

---

[1] Monk filed his amended complaint after the government filed its motion to dismiss.  His amended complaint contains the same three claims for relief as the original complaint.  *Compare* Compl., Doc. No. 1 *with* Am. Compl., Doc. No. 36.  "[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect."  *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000)).  "[W]hen a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint."  *Id.* at 303-04.  I analyze the government's motion to dismiss as directed towards Monk's amended complaint, doc. no. 36.

III.    **Discussion**

A.    **Veterans' Benefits**

Title 38 of the United States Code created a framework for VA benefits claims.  VA regulations specify the factors affecting a former military servicemember's discharge status, and the VA makes a COD determination based on those factors.  38 C.F.R. § 3.12(c), (d); *see* MTD Mem. of Law, Doc. No. 23-1 at 15.

Congress crafted a unique framework for veterans' benefits adjudications.  In broad strokes, the procedural route is as follows.  First, veterans go to the VA to see if they may receive benefits.  Then, the veteran may appeal a benefits decision to the Board of Veterans' Appeals.  *Larrabee v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992) (citing 38 U.S.C. § 7105).  "The Board's decision constitutes the Secretary's final determination, which may then be appealed to the Court of Veterans Appeals, an Article I court established by the VJRA with exclusive jurisdiction to review the decisions of the Board of Veterans' Appeals."  *Id.* (cleaned up and citing 38 U.S.C. § 7252(a)). A final decision from that court may only be appealed to the Federal Circuit and then to the United States Supreme Court.  38 U.S.C. § 7292.  Federal district courts are excluded from veterans' benefits adjudications.  *See* 38 U.S.C. § 511(a).

1.  *Section 511(a)*

This motion to dismiss is, in large part, about whether Monk's claims are functionally a FTCA action or an action seeking review of veterans' benefits.  If the former, Monk's claims are reviewable.  *See* 28 U.S.C. § 1346(b)(1).  If the latter, Monk's claims are unreviewable due to 38 U.S.C. § 511(a).

> The Secretary shall decide all questions of law and fact ***necessary*** to a decision by the Secretary under a law ***that affects the provision of benefits*** by the Secretary to veterans . . . the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court[.]

7

38 U.S.C. § 511(a) (emphasis added).

To determine whether section 511 bars judicial review, courts "examine the substance of [the plaintiff's] allegations, rather than the plaintiff's labels, to determine their true nature" and if they are, functionally, challenging a benefits determination. *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996); *accord Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994). "[T]he Second Circuit has not directly addressed" section 511's scope. *Schwingle v. United States*, 2022 WL 9462632, at *8 (W.D.N.Y. Oct. 14, 2022) (collecting cases). Doubtless, section 511(a) forecloses judicial review of "individualized challenge[s]" to the VA's "individual denial of benefits[.]" *Zuspann v. Brown*, 60 F.3d 1156, 1159 (5th Cir. 1995); *see also*, *e.g.*, *King v. U.S. Dep't of Veterans Affs.*, 728 F.3d 410, 415 (5th Cir. 2013) ("King essentially seeks district court review of the VA's actions in connection with the denial of his benefits, but section 511 prohibits such review."); *Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000) (no judicial review of a claim that the VA negligently or intentionally failed to reimburse a veteran's medical bills).

Some courts have determined section 511(a) equally bars challenges to VA inaction or delay in issuing benefits. *Schwingle*, 2022 WL 9462632, at *9 (no judicial review of a claim that the VA negligently failed to decide a benefits request "for almost fifty years" because adjudication of the claim "would require this Court to evaluate whether the VA acted properly in handling Plaintiff's benefit request"); *Milbauer v. United States*, 587 F. App'x 587, 591 (11th Cir. 2014) (quoting *Mehrkens v. Blank*, 556 F.3d 865, 870 (8th Cir. 2009)) (adopting the Eighth Circuit's conclusion that "'there is no meaningful legal difference between a *delay* of benefits and an outright *denial* of benefits' for purposes of the VJRA"); *Lewis v. Norton*, 355 F. App'x 69, 70 (7th Cir. 2009) ("The VJRA's jurisdictional scheme precludes district courts from reviewing challenges to individual benefits decisions such as denials or delays of benefits.").

The D.C. Circuit has held that section 511(a) bars judicial review "only when the Secretary has actually decided" an issue related to the provision of benefits. *Broudy v. Mather*, 460 F.3d 106, 114 (D.C. Cir. 2006).

> [D]istrict courts have jurisdiction to consider questions arising under laws that affect the provision of benefits as long as the Secretary ***has not actually decided them in the course of a benefits proceeding***. . . . § 511(a) prevents district courts from hearing a particular question only when the Secretary has ***actually decided the question***. Where there has been no such decision, § 511(a) is no bar.

*Id.* (cleaned up and emphasis added).

FTCA claims may proceed when the court can "adjudicate plaintiffs' FTCA damages claims without reviewing the VA's factual or legal determinations upon which it based its benefits decision" and does not need to "second-guess the Secretary's decision on a question of law or fact affecting benefits." *Roman Cancel v. United States*, 598 F. Supp. 2d 227, 232 (D.P.R. 2008) (citing *Cortes Castillo v. Veterans Admin.*, 433 F. Supp. 2d 221, 224-25 (D.P.R. 2006)). For example, a plaintiff's failure-to-warn claim was not precluded when the case's "'questions of law and fact' relate[d] to whether the alleged withholding of the diagnosis state[d] a tort claim, and resolution of those questions [wa]s not 'necessary' to the benefits determination." *Thomas v. Principi*, 394 F.3d 970, 974 (D.C. Cir. 2005) (quoting 38 U.S.C. § 511(a)).

I conclude that section 511(a) does not bar judicial review of Monk's negligence, NIED, and negligent supervision claims. Monk's claims arise from a backdrop of "systematic benefits obstruction for Black veterans." Am. Compl., Doc. No. 36 ¶ 82. He does not, however, challenge the individual decisions of VA officials who granted or denied any particular application. Rather, Monk challenges the alleged "failure of VA officials and employees to maintain a racially neutral and nondiscriminatory system of administering benefits" and failure

"to supervise or instruct VA staff on how to distribute benefits in a racially neutral way." *Id.* ¶¶ 215, 223. Monk's allegations of systemic racial discrimination are wholly distinct from any "questions of law and fact" Monk raised, or could have raised, in his individual benefits challenges. 38 U.S.C. § 511(a). To adjudicate Monk's claims, I would not need to "determine first whether the VA acted properly in handling [Monk's] request[s]" for benefits. *Contra Price*, 228 F.3d at 422 (determining section 511(a) foreclosed judicial review on those grounds).

Additionally, Monk's alleged harm—emotional distress—occurred from "having to litigate claims and navigate a VA benefits system that administered benefits in a racially discriminatory way." Am. Compl., Doc. No. 36 ¶ 216. He does not allege his emotional distress was due to a benefits denial itself. *Contra Philippeaux v. United States*, 2011 WL 4472064, at *9 (S.D.N.Y. Sept. 27, 2011) (section 511(a) foreclosed judicial review of a plaintiff's NIED claim when the emotional distress was caused by the VA denying his benefits claim).

Monk's claims "touch upon whether someone receive[d] veterans benefits," *Broudy*, 460 F.3d at 112, but they do not require me to re-open individual benefits decisions, evaluate the VA's findings of fact or law, or pass judgment on any individual VA benefits decision. Section 511(a) therefore does not preclude adjudication of this case.

## B. The Federal Tort Claims Act

The federal government is immune from suit absent statutory consent. *United States v. Shaw*, 309 U.S. 495, 500-01 (1940). "The FTCA is a sweeping waiver of sovereign immunity that, under specified circumstances, renders the Government liable for money damages for a variety of injuries caused by the negligence of Government employees," with enumerated exceptions. *Lanus v. United States*, 570 U.S. 932, 932 (2013) (Thomas, J., dissenting from denial of certiorari). If a plaintiff fails to sue within the FTCA's provisions, sovereign immunity

bars the case, and courts lack the subject matter jurisdiction to adjudicate the matter. *Alexander v. U.S. Postal Serv.*, 2020 WL 13591354, at *2 (D. Conn. Nov. 18, 2020); *see also Williams v. United States*, 947 F.2d 37, 39 (2d Cir. 1991) ("When an action is brought against the United States government, compliance with the conditions under which the government has agreed to waive sovereign immunity is necessary for subject matter jurisdiction to exist."). If Monk does not state a cognizable claim for relief under the FTCA, I must dismiss his complaint for lack of subject matter jurisdiction.

1. *FTCA's Discretionary Function Exception*

The FTCA's discretionary function exception immunizes government employees' actions or omissions when the employee "exercise[es] due care, in the execution of a statute or regulation, . . . or . . . the [employee's] exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government[.]" 28 U.S.C. § 2680(a).

At oral argument, counsel for the government stated that the government was not invoking the discretionary function exception in this motion, but reserved the right to raise the exception later. Tr. of Hearing, Doc. No. 80 at 49:10-18. For that reason, I withhold my decision on whether the discretionary function exception mandates dismissal.

2. *FTCA Choice of Law*

The FTCA directs courts to apply the state substantive law and choice of law rules where the negligent acts or omissions occurred. *Richards v. United States*, 369 U.S. 1, 9-13 (1962).

It appears the VA's alleged negligent acts and omissions could have occurred in both Washington D.C. and Connecticut. *See generally* Am. Compl., Doc. No. 36. Accordingly, a complex litany of choice-of-law rules applies. Five different approaches have been followed by

11

federal courts across the country.  *Gould Electronics Inc. v. United States*, 220 F.3d 169, 181-83

(3d Cir. 2000) (discussing the five choice-of-law approaches for FTCA claims).  The Second

Circuit has not landed on any one approach.

Before proceeding on a complicated conflict-of-laws analysis, it is "prudent" first to

evaluate if there is an actual conflict between Connecticut and D.C.'s state substantive law and

choice-of-law rules.  *See id.* at 180.  If there is no conflict between the state substantive law, it is

unnecessary to conduct a conflict-of-laws analysis.  *Id.* at 180-81.

There is no conflict between Connecticut and D.C.'s negligence, negligent infliction of

emotional distress, or negligent supervision law.  *See infra* Section III.B.3.a.—c.  It is thus

unnecessary to conduct a conflict-of-laws analysis.

### 3.  *FTCA's Private Analogue Requirement*

The United States is only liable for torts committed "in the same manner and to the same

extent as a ***private individual under like circumstances***."  28 U.S.C. § 2674 (emphasis added).

The United States may be liable even if the relationship between the federal actors and the

claimants is "uniquely federal in character[,]" *Liranzo,* 690 F.3d at 88, or if  "the negligence was

committed in the performance of a uniquely governmental function."  *Dorking Genetics v.

United States*, 76 F.3d at 1266 (citing *Indian Towing v. United States*, 350 U.S. 61, 65-69

(1955)).  *See also United States v. Olson*, 546 U.S. 43, 46 (2005) (for torts arising from negligent

performance of "uniquely governmental functions," FTCA liability does not depend on "whether

state law 'imposes liability on municipal or other local governments for the negligence of their

agents acting in' similar circumstances.").

"[T]he words like circumstances do not restrict a court's inquiry to the *same

circumstances*, but require it to look further afield."  *Olson*, 546 U.S. at 46 (2005) (citing *Indian*

*Towing*, 350 U.S. at 64) (internal quotation marks omitted).  FTCA plaintiffs are not required to point to a state law tort that maps onto their claim exactly.  *See Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012) (quoting *Indian Towing*, 350 U.S. at 64, 76) ("the presence of identical private activity [is] not required to find a private analogue").  Courts must determine which state tort, if any, is " the proper analogy" to the plaintiff's claim.  *Id.*

For example, in *Indian Towing*, the Coast Guard's negligent failure to check on a lighthouse's light, make repairs, or give a warning that the light was not operating was analogous to Good Samaritan tort laws where a private individual decides to "warn the public of danger and thereby induces reliance."  350 U.S. at 64-65 (cleaned up).  Similarly, in *Olson*, 546 U.S. at 47, injured mine workers sued federal mine inspectors under the FTCA using Good-Samaritan tort laws.  Like in *Indian Towing*, the Court analogized the relationship between federal mine inspectors and miners to one where private individuals "create a relationship with third parties" such that the mine inspectors would owe a duty of care to the miners.  *See id.* at 47-48.

The Second Circuit synthesized the above two examples and concluded that when the government "is the only entity that performs the actions complained of," courts should analogize FTCA claims to private state tort analogues with a higher degree of generality.  *See Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012).  "[T]he proper analogy [is] that private individuals, who do not operate lighthouses or inspect mines, nonetheless may *create a relationship with third parties* that is similar to the relationship between a lighthouse operator and a ship dependent on the lighthouse's beacon, or a mine inspector and a miner dependent on the inspector faithfully carrying out his duty."  *Id.* (cleaned up and emphasis added).

Here, the government interprets *Olson* and its parentage narrower than the case law demands.  It characterizes the rule in *Olson* as a two-pronged test, where FTCA liability only

attaches if the government (1) warns the public of a danger and (2) induces reliance.  Govt. Reply, Doc. No. 66 at 8.  *Olson*, however, requires me to view Monk's claims with less specificity.  "The [FTCA's] words 'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but *require* it to look further afield."  *Olson*, 546 U.S. at 44 (emphasis added).

I now "consult state law to determine whether the government is liable for the torts of its employees."  *Liranzo*, 690 F.3d at 86.  As detailed below, Connecticut and D.C. tort law provide "the proper analogy" to Monk's claims for relief.  *Id.* at 94.

a.   Count I: Negligence

In Washington D.C., "[a] claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach."  *Poola v. Howard Univ.*, 147 A.3d 267, 289 (D.C. 2016) (quoting *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011)).  A negligence claim in Connecticut requires the same elements.  *Compare Poola*, 147 A.3d at 289 *with Lawrence v. O & G Indus., Inc.*, 319 Conn. 641, 649 (2015).

Monk alleges the VA's tortious behavior proximately caused emotional, psychological, dignitary, and reputational harm from "interacting with a racially discriminatory VA benefits system."  Am. Compl., Doc. No. 36 ¶¶ 3, 208, 213.  The government does not dispute that emotional or psychological harm are cognizable under Connecticut or Washington D.C. tort law. *See generally* MTD Mem. of Law, Doc. No. 23-1; Reply, Doc. No. 66.[2]  I thus turn to duty.

---

[2] The government challenges Monk's allegations of reputational and dignitary harm.  It argues that the FTCA did not waive its sovereign immunity for libel or slander claims, and consequently did not waive immunity for reputational and dignitary harm.  Doc. No. 66 at 12 n.15 (citing 28 U.S.C. § 2680(h)).  Because Monk alleges he has suffered emotional and psychological harms, I do not decide at this time whether reputational and dignitary harms are cognizable under the FTCA, Connecticut tort law, or Washington D.C. tort law.

i.   <u>Duty</u>

"[T]o determine whether the defendant owed a duty" in Washington D.C., courts "examine whether the risk to the claimant was reasonably foreseeable to the defendant." *Hedgepeth*, 22 A.3d at 793 (cleaned up). "The relationship between the plaintiff and the defendant is closely related to a court's determination of the foreseeability . . . . Ultimately, the determination of whether a duty should be imposed is made by weighing the various policy considerations and reaching a conclusion that the plaintiff's interests are, or are not, entitled to legal protection against the conduct of the defendant." *Id.* at 794 (cleaned up).

In Connecticut, courts similarly examine "whether the specific harm alleged by the plaintiff was foreseeable to the defendant. . . . [T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Lawrence*, 319 Conn. at 649-50 (quoting *Ruiz v. Victory Properties, LLC*, 315 Conn. 320, 328-29 (2015)).[3]

The risk of harm that veterans would be denied benefits in a racially discriminatorily manner was reasonably foreseeable to the VA. The VA should have known as early as the 1970s that Black veterans were at a greater risk of benefits denials than white veterans. Two studies found Black servicemembers were substantially likelier to face disciplinary action and an unfavorable discharge classification. Am. Compl., Doc. No. 36 ¶ 76 (citing Task Force on the

---

[3] Connecticut's public policy analysis is a four-factor, totality-of-the-circumstances approach: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." *Id.* at 650.

Admin. of Mil. Just. in the Armed Forces, Off. of the Assistant Sec'y of Def., *Report of the Task Force on the Administration of Military Justice in the Armed Forces Vol. I* 32 (1972); Peter G. Nordlie, et al., U.S. Army Research Institute for the Behavioral and Social Sciences, *Measuring Changes in Institutional Racial Discrimination in the Army* 25 (1975)).  The EEOC promptly reacted to those findings and "concluded that military discharges were so tainted by race discrimination that an employer who required an honorable discharge as a condition of hiring violated Title VII."  *Id.* ¶ 78 (citing EEOC Decision No. 74-25 (1973); EEOC Decision No. 76-13 (1975), *overruled in part on other grounds by* EEOC Decision No. 80-26 (1980)).

More recently, the VA's Advisory Committee on Minority Veterans notified VBA leadership in 2013, 2015, 2016, 2017, and 2018 that minority veterans were receiving lower disability compensation ratings than their non-minority counterparts.  *Id.* ¶ 65.  In 2017, an internal VA study found that "[n]on-Hispanic Blacks have the lowest grant rate at 43% and are the largest outlier in terms of grant rate."  *Id.* ¶ 69.

The VA's "relationship" with Monk further counsels my "determination of the foreseeability of the plaintiff's injury and, ultimately, the scope of the defendant's duty."  *Hedgepeth*, 22 A.3d at 793.  "Congress has expressed special solicitude for the veterans' cause . . . And Congress has made clear that the VA is not an ordinary agency. Rather, the VA has a statutory duty to help the veteran develop his or her benefits claim."  *Shinseki v. Sanders*, 556 U.S. 396, 412 (2009) (citing 38 U.S.C. § 5103A).  Due to that unique relationship, the VA should have anticipated Black veterans would be vulnerable to "significant emotional, psychological, and dignitary harms as a result of interacting with a racially discriminatory process and a negligently trained and supervised system."  Am. Compl., Doc. No. 36 ¶ 208. Monk and the proposed class allege they participated in a rigorous and invasive process to apply

for VA benefits.  *Id.* ¶ 213 ("Over decades, . . . . Plaintiffs endured numerous psychological and physical evaluations to apply for VA benefits, and were repeatedly subjected to a system that distributed benefits in a racially discriminatory manner."); *see also id.* ¶ 130 ("Monk Jr. relived and retold his trauma to numerous individuals—including doctors, his counsel, and character references—to prove his eligibility for disability compensation.").

Finally, I determine that public policy counsels imposing a legal duty on the VA.  In Connecticut and Washington D.C., the duty to treat clients of different races equally applies to private and public institutions alike.  *E.g.*, Conn. Gen. Stat. § 36a-737(a) ("No financial institution and no federal bank or federal credit union shall discriminate, . . . in the granting, . . . of any home purchase loan, . . . solely because such property is located in a low-income or moderate-income neighborhood or geographical area"); *id.* §§ 46a-64c(a), 46a-98a (prohibiting and providing a private right of action for racial discrimination in housing practices); D.C. Code § 2-1402.21(a) (prohibiting racial discrimination in home financing and other housing practices); Conn. Gen. Stat. § 38a-816(10) ("reimbursement under [an] insurance policy, certificate or service contract shall not be denied because of race"); *id.* § 38a-488 ("Discrimination . . . in the amount of premiums or rates charged for any individual health insurance policy, or in the benefits payable . . . is prohibited."); *id.* §§ 46a-66(a), 46a-98(a) (prohibiting and providing a private right of action for racial discrimination by creditors); *id.* §§ 46a-70—46a76, 46a-99 (prohibiting and providing a private right of action for racial discrimination by state agencies with job placement, licensing, education, and state benefits allocation); D.C. Code § 2-1402.73 (prohibiting D.C. government agencies from limiting or refusing "any facility, service, program, or benefit to any individual on the basis of . . . race").[4]

---

[4] Those antidiscrimination laws targeted at *public* entities are irrelevant to the FTCA's private analogue requirement, which only adopts state tort law as it applies to a "*private* person or entity."  *Johnson v. Sawyer*, 47 F.3d 716, 728-29

Under Connecticut's public policy factors, I am especially persuaded by Connecticut's antidiscrimination private rights of action. *E.g.*, Conn. Gen. Stat. §§ 46a-66(a), 46a98(a), 46a-70—46a76, 46a-99, 46a-64c(a), 46a-98a. First, the private rights of action create "normal expectations" that "the participants of" racial discrimination could face liability. *Lawrence*, 319 Conn. at 650. Second, the above statutes indicate Connecticut and Washington D.C. wish to "encourage" antidiscrimination principles in private and public areas of life. *Id.*; *e.g.,* D.C. Code § 2-1401.01 ("It is the intent of . . . the District of Columbia, in enacting this unit, to secure an end in the District of Columbia to . . . discrimination by reason of race"). Third, I am unpersuaded by the risk of "increased litigation," *Lawrence*, 319 Conn. at 650, since "the VA is not an ordinary agency" and has a unique relationship with veterans. *Shinseki*, 556 U.S. at 412.

I therefore conclude that the VA owed Monk a legal duty of reasonable care.

        ii.  <u>Breach and Negligence *Per Se*</u>

Monk alleges the VA breached its duty of reasonable care "when through training, supervision, auditing, record-keeping, and other measures," its senior officials "failed to redress longstanding, pervasive race discrimination and disparate impacts of which they knew or should have known." Am. Compl., Doc. No. 36 ¶ 207.

A veterans' discharge status is highly relevant to VA COD determinations and, in turn, benefits outcomes. *See id.* ¶¶ 29-30, 103-04. The VA allegedly failed to implement policies or practices to ensure that a veterans' discharge status, tainted by racially disparate outcomes, would not bring about racially disparate benefits outcomes. Although the VA's own study found

---

(5th Cir. 1995) (emphasis added). State laws that prohibit racial discrimination from state agencies are nonetheless relevant to Connecticut and Washington D.C.'s public policy duty considerations.

in 2017 that Black veterans "are the largest outlier in terms of grant rate," *id.* ¶ 69, disparate disability compensation outcomes continued into 2020.  *Id.* ¶ 43.

Monk alleges the VA alternatively owed, and breached, its statutory duty of care to veterans under a theory of negligence *per se*.  Am. Compl., Doc. No. 36 ¶¶ 205-06.  Monk invokes the VA Secretary's federal statutory mandate of responsibility "for the proper execution and administration of all laws administered by the Department and for the control, direction, and management of the Department," 38 U.S.C. § 303 (2018),[5] and Connecticut statutes prohibiting discrimination by state agencies.  Conn. Gen. Stat. §§ 46a-71 *et seq*.

"Standing alone," violations of federal law or regulations are insufficient to confer FTCA liability.  *Peruta v. United States*, 2018 WL 995111, at *2 (D. Conn. Feb. 21, 2018); *see also Figueroa,* 739 F. Supp. 2d 138, 141 (E.D.N.Y. 2010) ("no private analog is necessarily stated, for example, where the FTCA claim is based only upon an alleged failure to enforce a Federal statute or government regulation.").  Connecticut and Washington D.C., however, allow plaintiffs to establish a defendant's standard of care with state and federal statutes.  *See McNeil Pharm. v. Hawkins,* 686 A.2d 567, 579-82 (D.C. 1996) (federal statute); *Robinson v. D.C.*, 580 A.2d 1255, 1256 (D.C. 1990) (D.C. municipality traffic law); *Cowan v. Yale Univ.*, 2023 WL 369947, at *4 (Conn. Super. Ct. Jan. 17, 2023) (federal and state statutes and regulations); *see also Morse v. Connecticut Cmty. for Addiction Recovery, Inc.*, 2010 WL 4074949, at *15 (Conn. Super. Ct. Sept. 15, 2010) ("Courts have found that the existence of a private right of action is not essential to maintaining an action in negligence per se.").

---

[5] Monk additionally invokes 38 U.S.C. § 210(b) (1958).

So long as Monk meets elements of negligence *per se*,[6] he may alternatively argue that the VA breached its statutory duty of care to him and the proposed class.  In any event, a jury may consider the VA's alleged violation of its statutory duty of care as evidence of negligence. *See Robinson*, 580 A.2d at 1256; *see also Cowan*, 2023 WL 369947, at *3.

Monk alleges a cognizable negligence claim under Connecticut and Washington D.C. law.  I therefore conclude that this Court has subject matter jurisdiction over the negligence claim.

> b.   Count II: Negligent Infliction of Emotional Distress (NIED)

In Washington D.C., if a plaintiff brings an NIED claim, but was not in "the zone of physical danger," he must show:

> (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff.

*Clark v. D.C.*, 241 F. Supp. 3d 24, 30 (D.D.C. 2017) (cleaned up).

In Connecticut, a plaintiff alleging NIED must show "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress."  *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

---

[6] In Washington D.C., "[w]here a party violates a statute, and the violation is a proximate cause of an injury which the statute was designed to prevent, there is a rebuttable presumption of negligence on the part of the violator." *Robinson v. D.C.,* 580 A.2d at 1256.  The statute or regulation relied on must promote public safety and must have been "enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred." *McNeil Pharm.,* 686 A.2d at 579.  In Connecticut, "a plaintiff must satisfy two conditions. First, the plaintiff must be within the class of persons protected by the statute. Second, the injury must be of the type which the statute was intended to prevent." *Gore v. People's Sav. Bank*, 235 Conn. 360, 375-76 (1995) (cleaned up).

Discrimination from private entities, such as banks, may give rise to an NIED claim. *E.g., Dingle v. Fleet Bank*, 2001 WL 282922, at *2 (Conn. Super. Ct. Mar. 1, 2001) ("Discriminating against a bank customer on the basis of his race may very well create an unreasonable risk of causing emotional distress and potential bodily illness or harm."). In any event, for the same reasons as set forth above, *supra* Section III.B.3.a.i, the VA's "special" relationship with veterans renders Monk's emotional distress from interacting with a racially discriminatory process foreseeable. *See Shinseki*, 556 U.S. at 412.

Monk therefore alleges a cognizable NIED claim under Connecticut and Washington D.C. tort law.

### c. Count III: Negligent Supervision

The United States is liable for negligent supervision FTCA claims if a private employer would be liable under state law. *See Johnson v. Sawyer*, 47 F.3d 716, 730 (5th Cir. 1995). In Washington D.C., a plaintiff must show "(1) the employee behaved in a dangerous or otherwise incompetent manner, (2) the employer knew or should have known its employee's dangerous or incompetent behavior and (3) the employer, 'armed with that actual or constructive knowledge, failed to adequately supervise[] the employee.'" *Busby v. Cap. One, N.A.*, 772 F. Supp. 2d 268, 284 (D.D.C. 2011).

In Connecticut, a plaintiff must show he "suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise" and "the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." *Roberts v. Cir.-Wise, Inc.*, 142 F. Supp. 2d 211, 214 (D. Conn. 2001).

Monk alleges "VA officials and employees failed to supervise or instruct VA staff on how to distribute benefits in a racially neutral way. Leadership failed to create a system in which

data related to benefits decisions could be aggregated and potential bias could be identified."
Am. Compl., Doc. No. 36 ¶ 223.  At this stage in the litigation, I conclude Monk's negligent
supervision claim may proceed.  For many of the same reasons as discussed above, it was
foreseeable to the VA that its benefits system was administered in a racially discriminatory way,
and foreseeable that Black veterans could be harmed by that system.  *Supra* Section III.B.3.a.i.
Since lower-level VA employees appear to be involved in every step of the benefits claim
process, *see generally* Am. Compl., Doc. No. 36, it was similarly foreseeable that those
employees could negligently administer benefits with racially disparate outcomes.

* * *

Monk has properly moored his FTCA claims to Washington D.C. and Connecticut tort
law.  This court therefore has subject matter jurisdiction.

### 4. *Timeliness under the Continuing Violations Doctrine*

The FTCA's statute of limitations is two years.  28 U.S.C. § 2401(b) ("A tort claim
against the United States shall be forever barred unless it is presented in writing to the
appropriate Federal agency within two years after such claim accrues.").  Timeliness under the
FTCA is jurisdictional because of sovereign immunity.  *See Williams v. United States*, 947 F.2d
at 39.  "Ordinarily, a plaintiff's FTCA claim accrues at the time of injury."  *Kronisch v. United
States*, 150 F.3d 112, 121 (2d Cir. 1998).

Monk filed his FTCA administrative claim alleging tortious conduct on February 25,
2022.  Compl., Doc. No. 1 ¶ 133.[7]  To be timely, Monk's claim must have accrued at or after
February 25, 2020.

---

[7] The amended complaint does not include the specific date(s) the plaintiffs filed their FTCA administrative claims,
but it alleges (a) all plaintiffs have filed administrative FTCA claims and (2) the VA "has acknowledged receipt of

"The continuing tort doctrine is based on the idea that certain torts continually give rise to new causes of action, which can be brought notwithstanding the expiration of the limitations period for prior causes of action." *Syms v. Olin Corp.*, 408 F.3d 95, 108 (2d Cir. 2005). "When a plaintiff experiences a continuous practice and policy that violates his or her rights, . . . the commencement of the statute of limitations period may be delayed until the last violation." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)) (cleaned up). Courts may apply the continuing violations doctrine in FTCA cases so long as state law recognizes the doctrine. *Syms*, 408 F.3d at 108-09 (collecting cases). Connecticut and Washington D.C. recognize the continuing violations doctrine. *Targonski v. Clebowicz*, 63 A.3d 1001, 1008 (Conn. App. Ct. 2013); *Loumiet v. United States*, 828 F.3d 935, 948 (D.C. Cir. 2016).

The government characterizes Monk's claims as discrete benefits denials that accrued over two years before Monk filed this action. MTD Mem. of Law, Doc. No. 23-1 at 43. To be sure, "[t]he continuing violation doctrine . . . applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (cleaned up).

Monk, however, alleges the VA has committed a tortious practice of discrimination, not a series of discrete "serial violation[s]." Am. Compl., Doc. No. 36 ¶ 53 ("the lack of training, supervision, auditing, quality-control, and record-keeping practices implemented by these and other VA leaders"); *id.* ¶ 54 ("[t]he long history of negligence and deliberate indifference of VA leadership, and their failure to train, supervise, monitor, and instruct agency officials to take steps to identify and correct racial disparities"); *id.* ¶ 82 ("VA leadership's negligence and

---

some of these claims[,] but has not responded in substance to any of them." Am. Compl., Doc. No. 36 at ¶ 8. Other plaintiffs filed their claims in 2023. *Id.*

deliberate indifference to racial disparities of which it knew or should have known has led to systematic benefits obstruction for Black veterans and a system rife with racial discrimination."); *id.* ¶ 207 ("VA Administrators and Secretaries, and other senior officials, breached these duties when through training, supervision, auditing, record-keeping, and other measures, they failed to redress longstanding, pervasive race discrimination and disparate impacts of which they knew or should have known."); *id.* ¶ 223 ("VA officials and employees failed to supervise or instruct VA staff on how to distribute benefits in a racially neutral way. . . . [Plaintiffs] thus had to file their claims in a system that was racially discriminatory").

The VA's "last violation," *Flores*, 885 F.3d at 122 (cleaned up), occurred after February 25, 2020.  The statistical analysis of racially disparate benefits outcomes relied upon by Monk includes data from after February 25, 2020.  *See* Am. Compl., Doc. No. 36 ¶¶ 39, 43 (including data for the full year of 2020 and indicating that disparate benefits outcomes between white and Black veterans continued through 2020).  When a plaintiff brings a claim "that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  *Gonzalez v. Hasty*, 802 F.3d at 220.

Monk's FTCA claims are therefore timely.

## C. Res Judicata

The government argues Monk's FTCA claims are precluded by *res judicata* because Monk already received his veterans' benefits.  MTD, Doc. No. 23-1 at 48-51.  Its argument is premised on the assumption that Monk challenges the outcome of his previous benefits denials. *Id.* at 49.

Not so. Monk could not have alleged FTCA claims in prior litigation challenging the VA's benefits decisions.  Neither the Board of Veterans' Appeals nor the Court of Appeals for Veterans' Appeals has jurisdiction to hear FTCA claims.  *See Corley v. United States*, 11 F.4th 79, 84 (2d Cir. 2021) ("[t]he district courts . . . shall have exclusive jurisdiction of" FTCA claims) (quoting 28 U.S.C. § 1346(b)(1)).  It is axiomatic that if "the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground . . . then a second action in a competent court presenting the omitted theory or ground should not be precluded." *Connecticut Nat. Bank v. Rytman*, 241 Conn. 24, 44 (1997).

## IV.    Conclusion

For the reasons set forth above, I **deny** the government's motion to dismiss, **doc. no. 23**.  So ordered.

Dated at Bridgeport, Connecticut, this 24th day of March, 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge