**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK, Jr. et al., | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:22-cv-1503 (SRU) |
| | : | |
| THE UNITED STATES OF AMERICA, | : | June 4, 2024 |
| *Defendant*. | : | |


**<u>MEMORANDUM IN SUPPORT OF DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR CERTIFICATION OF THIS COURT'S ORDER DATED MARCH 29, 2024 (ECF 83) PURSUANT TO 28 U.S.C. § 1292(b)</u>**

ORAL ARGUMENT
IS NOT REQUESTED

## Table of Contents

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

RELEVANT STATUTES ..................................................................................................... 2

    I.   The Veterans' Judicial Review Act ............................................................................ 2

    II.  The Federal Tort Claims Act ..................................................................................... 3

BACKGROUND .................................................................................................................. 4

    I.   Factual Background .................................................................................................... 4

    II.  Procedural History .................................................................................................... 5

ARGUMENT ....................................................................................................................... 7

    I.   The Order Involves Controlling Questions of Law ................................................... 8

    II.  There is Substantial Ground for Difference of Opinion on Both Questions ................ 9

        a.   Judicial Review Precluded Under 38 U.S.C. § 511(a) ......................................... 10

        b.   No FTCA Private-Party Analog ............................................................................ 16

    III.  Immediate Appeal Will Materially Advance the Ultimate Termination of Litigation . 17

CONCLUSION ................................................................................................................... 19

## Table of Authorities

**Cases**

*Akutowicz v. United States*,
  859 F.2d 1122 (2d Cir. 1988) ................................................................................ 16

*Balintuno v. Daimler AG*,
  727 F.3d 174 (2d Cir. 2013) ............................................................................. 7, 18

*Bates v. Nicholson*,
  398 F.3d 1355 (Fed. Cir. 2005) .............................................................................. 2

*Beamon v. Brown*,
  125 F.3d 965 (6th Cir. 1997) .......................................................................... 10, 13

*Blue Water Navy Vietnam Veterans Ass'n, Inc. v. McDonald*,
  830 F.3d 570 (D.C. Cir. 2016) ........................................................................ 10, 15

*Broudy v. Mather*,
  460 F.3d 106 (D.C. Cir. 2006) .............................................................................. 15

*C.P. Chem. Co. v. United States*,
  810 F.2d 34 (2d Cir. 1987) .................................................................................... 16

*Chen v. United States*,
  854 F.2d 622 (2d Cir. 1988) .................................................................................. 16

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................................................ 14

*D'Antuono v. Service Road Corp.*,
  No. 3:11-cv-33, 2011 WL 2222313 (MRK) (D. Conn. June 7, 2011) ..................... 8

*FDIC v. Meyer*,
  510 U.S. 471 (1994) ................................................................................................ 3

*Figueroa v. United States*,
  739 F. Supp. 2d 138 (E.D.N.Y. 2010) ................................................................... 17

*In re Teva Securities Litigation*,
  No. 3:17-cv-558 (SRU), 2021 WL 1197805 (D. Conn. March 30, 2021) ............... 9

*Johnson v. Robison*,
  415 U.S. 361 (1974) ................................................................................................ 2

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in*
   *Amministrazione Straordinaria,*
   921 F.2d 21 (2d Cir. 1990)....................................................................................... 8, 9

*Klopp v. United States,*
   131 F.3d 131 (Table), 1997 WL 774397 (2d Cir. Dec. 17, 1997) ........................... 16

*Liranzo v. United States,*
   690 F.3d 78 (2d Cir. 2012)......................................................................................... 3

*McGowan v. United States,*
   825 F.3d 118 (2d Cir. 2016)...................................................................................... 16

*Mei Xing Yu v. Hasaki Restaurant, Inc.,*
   874 F.3d 94 (2d Cir. 2017)......................................................................................... 9

*Montefiore Med. Ctr. v. Teamsters Local 272,*
   No. 09-cv-3096, 2009 WL 3787209 (S.D.N.Y. Nov. 12, 2009).............................. 17

*Ojo v. United States,*
   No. 20-cv-4882, 2022 WL 4091011 (E.D.N.Y. Sept. 6, 2022) ............................... 17

*Peruta v. United States,*
   No. 3:16-cv-2112 (VLB), 2018 WL 995111 (D. Conn. Feb. 21, 2018) .................. 17

*Price v. United States,*
   228 F.3d 420 (D.C. Cir. 2000) ..................................................................... 3, 6, 10, 14

*Recinto v. U.S. Dep't of Veterans Affairs,*
   706 F.3d 1171 (9th Cir. 2013) ................................................................................. 13

*Storms v. United States,*
   No. 13-cv-811, 2015 WL 1196592 (E.D.N.Y. Mar. 16, 2015)................................ 17

*Sugrue v. Derwinski,*
   26 F.3d 8 (2d Cir. 1994)........................................................................................... 11

*Tantaros v. Fox News Network, LLC.,*
   465 F. Supp. 3d 385 (S.D.N.Y. June 8, 2020) ........................................................ 17

*Veterans for Common Sense v. Shinseski,*
   678 F.3d 1013 (9th Cir. 2012) ..................................................................... 10, 11, 12

*Vietnam Veterans of America v. Shineski,*
   599 F.3d 654 (D.C. Cir. 2010) ........................................................................... 13, 14

*Whyte v. Wework Cos., Inc.,*
   No. 20-cv-1800, 2020 WL 4383506 (S.D.N.Y. July 31, 2020)................................ 9

**Statutes**

38 U.S.C. § 1110 ................................................................................................................ 2

28 U.S.C. § 1292(b) ............................................................................................... 1, 7, 8, 19

38 U.S.C. § 1310 ................................................................................................................ 2

28 U.S.C. § 1346(b) ...................................................................................................... 3, 16

28 U.S.C. § 2674 ........................................................................................................... 3, 16

28 U.S.C. § 2675 ................................................................................................................ 6

38 U.S.C. § 511(a) ..................................................................................................... passim

38 U.S.C. § 511(b)(4) ........................................................................................................ 3

38 U.S.C. § 7104(a) ........................................................................................................... 2

38 U.S.C. § 7261(a) ........................................................................................................... 2

38 U.S.C. § 7292 ................................................................................................................ 2

Conn. Gen. Stat. §§ 46a-71 ............................................................................................... 7

**Other Authorities**

Charles Alan Wright et al., Federal Practice and Procedure § 3930 ............................................ 9

H.R. Rep. No. 100-963, at 12, 27 ......................................................................................... 11

The United States of America respectfully moves this Court to certify its Order dated March 29, 2024 (ECF 83), for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Order involves "controlling question[s] of law as to which there is substantial ground for difference of opinion," and resolving these questions on an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Specifically, the United States requests that this Court identify the following questions in its certification order:

1.  Whether 38 U.S.C. § 511(a) bars judicial review of Plaintiffs' claims where Plaintiffs disclaim challenging individual benefits decisions by the United States Department of Veterans Affairs ("VA") and instead allege that the VA has engaged in "systemic" discrimination in its grant and denial of benefits, and

2.  Whether there is a private-party analog in state tort law sufficient to support Plaintiffs' claims brought under the Federal Tort Claims Act ("FTCA"), which seek damages predicated upon the VA's alleged negligence in administering a racially discriminatory benefits system.

The VA is committed to identifying and eliminating racial disparities in benefits decisions. The VA is actively working towards that important goal. In June 2023, for example, the VA announced that it had established an Equity Assurance Office that is charged with identifying and eliminating benefits disparities.[1] But despite the importance of those issues, the United States respectfully submits that this FTCA suit is not an appropriate vehicle for addressing them—and,

---

[1] See VA, *VA Stands Up Agency Equity Team To Ensure that All Veterans Receive the World-Class Care and Benefits They Deserve* (June 23, 2023), https://news.va.gov/press-room/va-stands-up-agency-equity-team-to-ensure-that-all-veterans-receive-the-world-class-care-and-benefits-they-deserve/.

at minimum, that there are substantial grounds for difference of opinion on these controlling threshold questions of law, which warrant immediate appellate review.

## RELEVANT STATUTES

### I.    The Veterans' Judicial Review Act

Congress has created a comprehensive and exclusive scheme for providing benefits to veterans, including compensation for disability or death. *See* 38 U.S.C. §§ 1110, 1310. Prior to 1988, when Congress enacted the Veterans' Judicial Review Act ("VJRA"), Pub. L. No. 100-687, 102 Stat. 4105, Congress entirely precluded judicial review of any decision of the VA Administrator on any question of law or fact under any law administered by the VA. *See Johnson v. Robison*, 415 U.S. 361, 370 (1974); *Bates v. Nicholson*, 398 F.3d 1355, 1362 (Fed. Cir. 2005). The VJRA "continue[s] to broadly bar judicial review of benefits decisions," but "provide[s] veterans with their day in court" by establishing an exclusive, comprehensive, and "specialized review process." *Bates*, 398 F.3d at 1363-64.

Under the VJRA, a veteran who wishes to challenge a VA benefits determination generally may appeal the decision to the Board of Veterans Appeals (the "Board"), a VA administrative body with authority to review claims involving veterans' benefits. 38 U.S.C. § 7104(a). The Board's decisions are subject to judicial review in the United States Court of Appeals for Veterans Claims ("CAVC"), an independent Article I judicial body with authority to review legal and factual issues decided by the VA as well as authority to, *inter alia*, "compel action of the Secretary unlawfully withheld or unreasonably delayed." *Id.* § 7261(a). Legal determinations by the CAVC may be appealed to the United States Court of Appeals for the Federal Circuit, an Article III court with authority to "decide all relevant questions of law, including constitutional and statutory claims," and finally to the Supreme Court of the United States. *Id.* § 7292(a), (c), (d)(1).

2

In establishing this comprehensive scheme of administrative and judicial review, Congress broadly precluded all other courts from reviewing the VA's administration of veterans' benefits. The VJRA prohibits any court—outside of the above-described scheme—from reviewing any "questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). With exceptions not relevant here, the VJRA renders the decisions of the Secretary as to any such questions "final and conclusive" and unreviewable "by any other official or by any court, whether by an action in the nature of mandamus or otherwise." *Id.*; *see also id.* § 511(b)(4) (creating exception to review bar for "matters covered by chapter 72 of this title," which describes the jurisdiction of the CAVC).

## II.    The Federal Tort Claims Act

Subject to various exceptions, the FTCA waives the United States' sovereign immunity for property damage or personal injury "caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under the FTCA, the United States is liable only "in the same manner and to the same extent as a private individual under like circumstances . . . ." *Id.* § 2674. State law provides the FTCA's substantive causes of action. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012).

Where an FTCA claim would require a court to determine "whether the VA acted properly in handling" benefits claims, *Price v. United States*, 228 F.3d 420, 421 (D.C. Cir. 2000), the VJRA precludes district courts from exercising jurisdiction.

3

## BACKGROUND

### I.    Factual Background[2]

Plaintiff Conley F. Monk, Jr. is a Vietnam veteran who was discharged in 1970 with an "Undesirable" discharge, also called a discharge "Under Other than Honorable" conditions. *See* Dkt. 36 ¶¶ 83-134. In 1971, the VA conducted a Character of Discharge ("COD") assessment to verify Monk's eligibility for benefits pursuant to his discharge status. *Id*. The VA determined that Monk's discharge was issued under "dishonorable conditions," and that Monk was therefore not entitled to VA benefits. *Id*. As set forth in greater detail in the United States' Motion to Dismiss, Monk alleges that thereafter, the VA repeatedly and improperly denied his benefits applications. *See* Dkt. 23 at 9-15.

In 2011, Monk retained his current counsel, which referred him to a psychiatrist. *See* Dkt. 36 at ¶¶ 83-134. The psychiatrist concluded that Monk had post-traumatic stress disorder ("PTSD") arising from his military service in Vietnam. *Id*. Based on a determination that Monk had suffered from PTSD while in service, the Board for the Correction of Naval Records ("BCNR") upgraded his discharge status in 2015. *Id*. In light of the BCNR's decision, the VA determined that Monk is entitled to VA benefits and granted him disability compensation for PTSD with a 100 percent rating, as well as for diabetes and associated neuropathy. *Id*. Monk challenged the effective date for his retroactive benefits on appeal to the Board and then to the CAVC. *Id*. The CAVC vacated the Board's decision, and, on remand, the Board granted Monk's requested effective date for retroactive benefits. *Id*.

---

[2] The factual background provided herein is taken from the Amended Complaint, Dkt. 36. For purposes of this motion, the United States is treating the facts alleged as true.

In 2021, the VA responded to a Freedom of Information Act request from the National Veterans Council for Legal Redress ("NVCLR"), an organization Monk helped found, producing a large number of VA records and data dating from 2001 to 2020. *See* Dkt. 83 at 5. Plaintiffs allege that they consulted a statistician to analyze the records, and that the analysis revealed a statistically significant difference in VA benefits outcomes between Black veterans and white veterans. Specifically, Plaintiffs allege that, from 2001 to 2020, Black veterans were denied disability compensation at statistically higher rates than white veterans. *See id*; Dkt. 36 ¶¶ 37-44.

## II.    Procedural History

In November 2022, Monk filed this suit under the FTCA, asserting claims for negligence, negligent infliction of emotional distress, and negligent supervision. *See* Dkt. 1. Although the Complaint contained a detailed discussion of Monk's various benefits decisions and appeals, it asserted that Monk is "not seeking to relitigate his individual benefits requests," but instead to "recover for the harm caused to him by VA leaders' negligent failure to redress the longstanding racial disparities in veterans' benefits administration, about which leadership has known or should have known for decades." *Id.* ¶ 9. Monk alleged that VA's tortious conduct caused him to suffer periods of housing insecurity, financial hardship, and difficulty accessing proper medical care; emotional harm when he was "forced to repeatedly relive the most traumatic moments of his life as part of his applications and re-applications for disability compensation"; and "dignitary and reputational harm." *Id.* at ¶ 10; *see also id.* at ¶ 118.

The United States moved to dismiss the Complaint on various grounds, including two that are relevant here: (1) the Complaint is barred by the VJRA under 38 U.S.C. § 511(a) because his

claims would require the court to review determinations by the VA with respect to benefits; and (2) the Complaint fails to identify a private analog in tort under any state law. *See* Dkt. 23-1.[3]

On March 29, 2024, this Court issued an Order denying the United States' Motion to Dismiss. *See* Dkt. 83. The Court first held that 38 U.S.C. § 511(a) does not bar Plaintiffs' tort claims because they do not challenge individual VA benefits decisions, but instead allege "systemic" discrimination in the VA's administration of benefits. While recognizing that section 511(a) forecloses judicial review of challenges to individual benefits decisions, Dkt. 83 at 8, the Court stated that Monk does not "challenge the individual decisions of VA officials who granted or denied any particular application." *Id.* at 9. Because "Monk's allegations of systemic racial discrimination are wholly distinct from any 'questions of law or fact' Monk raised, or could have raised, in his individual benefits challenges," the Court concluded that it would not need to "'determine first whether the VA acted properly in handling [his] request[s]' for benefits" to adjudicate his FTCA claims. *Id.* at 10 (quoting *Price*, 228 F.3d at 422). The Court reasoned that Monk's alleged harm (emotional distress) "occurred from 'having to litigate claims and navigate a VA benefits system that administered benefits in a racially discriminatory way,'" rather than "due to a benefits denial itself." *Id.* The Court thus concluded that Monk's claims of systemic racial discrimination in the administration of benefits would not require the Court "to re-open

---

[3] After the United States filed its Motion to Dismiss, Monk filed an Amended Complaint (Dkt. 36), which added claims on behalf of the Estate of Conley F. Monk, Sr. as well as the NVCLR, on behalf of its members, including one named member (Michele Barnett). The Amended Complaint also added claims for a putative class, defined to include "All Black applicants for veterans' benefits administered by the Department of Veterans Affairs or its predecessor at any time since January 1, 1945 and who have or will in the future have satisfied the exhaustion requirement imposed by 28 U.S.C. § 2675." *See* Dkt. 36 ¶¶ 26-32, 35-36. Plaintiffs continue to assert claims under the FTCA for alleged emotional and dignitary harms caused by the VA's allegedly discriminatory administration of benefits programs. *See id.* ¶ 11. The arguments raised in this motion apply to claims brought by all Plaintiffs in this lawsuit.

individual benefits decisions, evaluate the VA's findings of fact, or pass judgment on any individual benefits decision," and thus section 511(a) did not foreclose those claims. *Id.*

The Court also held that there were private-party analogs in both Connecticut and D.C. tort law sufficient to support Plaintiffs' FTCA claims seeking damages predicated upon the VA's alleged negligence in administering a racially discriminatory benefits system. With respect to Plaintiffs' negligence claims, the Court first found a private analog in Connecticut and D.C. statutes making it illegal for private parties to engage in discrimination in housing practices, home financing, insurance contracts, and the issuance of credit. Dkt. 83 at 17. The Court also noted that both Connecticut and D.C. "allow private plaintiffs to establish a defendant's standard of care with state and federal statutes" and held that plaintiffs can validly pursue claims of negligence per se by virtue of Connecticut statutes prohibiting discrimination by state agencies. *See id.* at 19 (citing Conn. Gen. Stat. §§ 46a-71 *et seq*). The Court found a private analog for Plaintiffs' negligent infliction of emotional distress claims based primarily upon the VA's "'special' relationship with veterans," which "renders [Plaintiffs'] emotional distress from interacting with a racially discriminatory process foreseeable." Dkt. 83 at 21. Finally, the Court held that Plaintiffs' negligent supervision claims could proceed because "it was foreseeable to the VA that its benefits system was administered in a racially discriminatory way, and foreseeable that Black veterans could be harmed by that system." Dkt. 83 at 22.

## ARGUMENT

"A district court may certify an appeal pursuant to 28 U.S.C. § 1292(b) when it is 'of the opinion that [the relevant] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Balintuno v. Daimler AG*, 727 F.3d

174, 186 (2d Cir. 2013) (quoting 28 U.S.C. § 1292(b)). "The relevant Court of Appeals may then, 'in its discretion, permit an appeal to be taken from such order.'" *Id.* (quoting section 1292(b)).

This case clearly meets the requirements for interlocutory review. The United States asserted threshold defenses that raise pure questions of law as to which there is substantial ground for difference of opinion. *See, e.g., D'Antuono v. Service Road Corp.*, No. 3:11-cv-33 (MRK), 2011 WL 2222313, at *2 (D. Conn. June 7, 2011) (granting interlocutory appeal where the court believed that "reasonable jurists might well disagree with this [c]ourt's analysis of the controlling legal issues in its Memorandum of Decision and its ultimate legal conclusions"). The Court's refusal to dismiss this action under 38 U.S.C. § 511(a) is in conflict with the rulings of every other Circuit to have addressed similar issues, and the Court's holding that state-law private analogs exist for the FTCA claims Plaintiffs assert here conflicts with controlling Second Circuit precedent and numerous other district court decisions in this Circuit. Allowing an immediate appeal here also would materially advance the ultimate termination of this case. If the Second Circuit were to agree with the United States of America on either of the questions presented here, that decision would bring a complete resolution to this litigation and advance the ultimate termination of other actions arising out of similar situations. For these reasons and as explained more fully below, this Court should certify its Order for interlocutory review.

## I.    The Order Involves Controlling Questions of Law

Whether Plaintiffs' claims against the United States are precluded under 38 U.S.C. § 511(a) and whether there is a private analog for those claims sufficient to proceed under the FTCA are controlling questions of law. Both questions affect this Court's subject matter jurisdiction and are purely legal in nature, *see supra* pp. 2-3, and a ruling in favor of the United States on either issue would require dismissal of the complaint. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-*

*Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 23 (2d Cir. 1990) ("[I]t is clear that a question of law is controlling if reversal of the district court's order would terminate the action.") (internal citations omitted); *see also* 16 Charles Alan Wright et al., Federal Practice and Procedure § 3930 & n.20 ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for dismissal that might have been ordered without the ensuing district court proceedings."). Accordingly, the first requirement for an interlocutory appeal is satisfied. *See Klinghoffer*, 921 F.2d at 23 (discussing how certification has been granted "when the order involved issues of . . . subject matter jurisdiction").

## II.    There is Substantial Ground for Difference of Opinion on Both Questions

There is also substantial ground for difference of opinion on both questions presented. "A substantial ground for difference of opinion exists where (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *In re Teva Securities Litigation*, No. 3:17-cv-558 (SRU), 2021 WL 1197805, at * 7 (D. Conn. Mar. 30, 2021) (citing *Whyte v. Wework Cos., Inc.*, No. 20-cv-1800, 2020 WL 4383506, at *2 (S.D.N.Y. July 31, 2020)). The Court's ruling that section 511(a) does not bar claims of "systemic" racial discrimination in the VA's administration of benefits conflicts with decisions by other courts of appeals as well as other district court decisions within the Second Circuit. The Court's holding that state-law private-party analogs support FTCA claims alleging negligence in administering an allegedly discriminatory benefits system conflicts with controlling Second Circuit precedent holding that there is no private-party analog for "quasi-adjudicative" federal action. Both questions therefore satisfy this requirement for certification. *See Mei Xing Yu v. Hasaki Restaurant, Inc.*, 874

F.3d 94, 98 (2d Cir. 2017) (considering there to be "substantial ground for difference of opinion" where there were different rulings on the issue within the Second Circuit itself).

### a.  Judicial Review Precluded Under 38 U.S.C. § 511(a)

The VJRA divests all courts, outside the specialized scheme of review the VJRA establishes, of jurisdiction to consider "all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Courts have consistently held that section 511(a) bars not only challenges to ultimate decisions rendered by the VA regarding veterans' benefits claims, but also claims challenging "whether the VA acted properly in handling" benefits claims. *Price*, 228 F.3d at 421.

Applying that understanding, the en banc Ninth Circuit held that section 511(a) channels all claims that veterans' benefits have been impermissibly—or even unconstitutionally—delayed or denied into the VJRA's review scheme, even when the claims purport to challenge systemic issues that have prompted delays or denials rather than decisions in individual cases. *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1028-30 (9th Cir. 2012) (en banc). Similarly, the D.C. Circuit held that section 511(a) bars courts from "review[ing] a VA policy . . . that 'affects' veterans' request for benefits," as well as "challenges to individual benefit determinations." *Blue Water Navy Vietnam Veterans Ass'n, Inc. v. McDonald*, 830 F.3d 570, 573, 576 (D.C. Cir. 2016). And the Sixth Circuit held that section 511 covers challenges to "the legality and constitutionality of the procedures that the VA uses to decide benefits claims." *Beamon v. Brown*, 125 F.3d 965, 970-71 (6th Cir. 1997). As the Ninth Circuit explained, because section 511 deprives district courts of "jurisdiction to review the circumstance or decisions that created the delay" or denial of benefits "in any one veteran's case," it necessarily deprives courts of the authority to "determine whether

there has been a systematic" delay or denial across a number of cases. *Veterans for Common Sense*, 678 F.3d at 1030.

The consensus rule in the courts of appeals follows from section 511(a)'s plain text, because any assertion that a systemic defect has prompted improper delays or denials of veterans' benefits necessarily implicates a "decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Congress intended that language to be interpreted "broadly," H.R. Rep. No. 100-963, at 12, 27. This understanding of section 511's broad preclusive effect also promotes the VJRA's purposes, which are to "(1) ensure that benefits claims will not burden the courts and the VA with litigation, and (2) promote the adequacy and uniformity of complex veterans' benefits decisions." *Sugrue v. Derwinski*, 26 F.3d 8, 11-12 (2d Cir. 1994). Moreover, as the Ninth Circuit explained, this understanding of Section 511(a) does not create any risk of "foreclose[ing] judicial review of constitutional questions" because veterans may raise their constitutional claims regarding the delay or denial of benefits through the VJRA's judicial review scheme. *Veterans for Common Sense*, 678 F.3d at 1031.

Applying these principles, section 511(a) bars this Court from exercising jurisdiction over Plaintiffs' claims that they suffered emotional distress from interacting with a benefits system that unfairly delayed or denied benefits owed to Black veterans. Those are precisely the sort of claims of "systematic" defects leading to the delay or denial of benefits that the courts of appeals have found unreviewable, except through the VJRA review scheme. *Id.* at 1030. And because a court cannot adjudicate Plaintiffs' claims without analyzing VA benefits decisions to determine whether they were properly denied or infected by discrimination, the claims necessarily implicate "decision[s] by the Secretary under a law that affects the provision of benefits." 38 U.S.C. 511(a). Moreover, finding that section 511(a) bars review in this case will not deprive veterans of judicial

Case 3:22-cv-01503-SRU    Document 96-1    Filed 06/04/24    Page 17 of 25

review of alleged discrimination because veterans who believe that their benefits determinations have been infected by racial discrimination may bring those claims through the VJRA review scheme, and—if their claims are found to be meritorious—they may be awarded any benefits (including retroactive benefits) they were improperly denied.

There is, at a minimum, substantial grounds for disagreement with this Court's holding that section 511(a) does not bar Plaintiffs' claims based on a purported distinction between individual and systemic claims relating to the provision of veterans' benefits. The Court observed that Plaintiffs do not "challenge the individual decisions of VA officials who granted or denied any particular application," and emphasized that Plaintiffs' claims instead "arise from a backdrop of 'systemic benefits obstruction for Black veterans.'" Dkt. 83 at 9. But as the courts of appeals have recognized, plaintiffs cannot avoid section 511 by consolidating a number of individual claims that would—by themselves—plainly have to be channeled into the VJRA scheme. Section 511 applies so long as a plaintiff's claims would require the court to analyze the agency's decisions regarding the delay or denial of benefits.

In *Veterans for Common Sense*, for example, the en banc Ninth Circuit held that section 511(a) divested a district court of jurisdiction to consider claims that systemic unreasonable delays in the VA's provision of benefits, including mental health care, violated the Administrative Procedure Act and the Due Process Clause. "The fact that [plaintiff] couche[d] its complaint in terms of *average* delays [could not] disguise the fact that it is, fundamentally, a challenge to thousands of individual mental health benefits decisions made by the VA." *Veterans for Common Sense*, 678 F.3d at 1207 (emphasis in the original). "In order to determine whether the average delays alleged by [plaintiff] are unreasonable, the district court would have to review the circumstances surrounding the VA's provision of benefits to individual veterans." *Id.* As the Ninth

Circuit summarized, a district court "does not acquire jurisdiction over [such claims] just because [plaintiff] challenges many benefits decisions rather than a single decision." *Id.* at 1027. The Ninth Circuit has applied that rule in subsequent cases, *see*, *e.g.*, *Recinto v. U.S. Dep't of Veterans Affairs*, 706 F.3d 1171, 1175-76 (9th Cir. 2013) (section 511(a) barred due process challenge to VA policy of relying on National Personnel Record Center records because the suit "would necessarily require consideration of individual cases"), and the D.C. Circuit has rejected similar "systemic" challenges to the VA's provisions of benefits, *see Vietnam Veterans of America v. Shineski*, 599 F.3d 654, 662 (D.C. Cir. 2010) (associations lacked standing to challenge VA's "entire disability benefits processing *system*" based on average processing times because "average processing time does not cause affiants injury; it is only *their* processing time that is relevant." *See also Beamon*, 125 F.3d at 970-71 (holding that section 511 bars claims of systemic claims of unreasonable delay in processing benefits claims).

The same principles barring the systemic claims in *Veterans for Common Sense*, *Vietnam Veterans of America*, and *Beamon* apply equally to Plaintiffs' systemic claims of discrimination here. While Plaintiffs might attempt to rely on evidence showing a statistical disparity in average benefits awards between Black and white applicants, the Court would still have to determine the reasons for any such disparity (*i.e.*, whether such differences were the result of discrimination or some other factor(s)) and if or how they affected individual benefits determinations. As the government previously explained, "[w]hile discrimination may have contributed to disparity, it is not the only possible explanation." Dkt. 66 at 5 n.5. In determining first, whether the disparity was attributable to discrimination; next, whether it was caused by any negligence on the part of the VA (a necessary element for Plaintiffs' tort claims); and then, whether it affected a particular benefits determination, this Court would necessarily have to examine countless VA decisions affecting the

provision of benefits, both at the policy level and in individual cases. Section 511(a) prohibits such sweeping judicial scrutiny of whether the VA "acted properly," *Price*, 228 F.3d at 221, in awarding benefits.

In its Order, the Court did not address *Veterans for Common Sense* or the decisions by other courts of appeals rejecting attempts by plaintiffs to avoid section 511(a) by broadening the scope of their claims and disavowing any challenge to any specific benefits determinations. As those decisions recognize, the aggregation of claims that the VA acted improperly in handling benefits claims into an allegation of "systemic" unlawful behavior does not obviate the need to review at least some individual VA benefits determinations, which section 511(a) flatly precludes.

Indeed, if anything, section 511(a) bars the tort claims asserted by Plaintiffs here even more clearly than it barred the claims for injunctive relief asserted by the plaintiffs in *Veterans for Common Sense*. That is because no plaintiff will be able to establish any entitlement to damages for emotional harms resulting from interactions with the VA benefits system without showing that the VA's adjudication of *his or her own* benefits application was discriminatory. Just as "average" delays in the processing of benefits claims do not cause any particular plaintiff injury sufficient to confer standing, *see Vietnam Veterans of America*, 599 F.3d at 662, overall statistical disparities between benefits awarded to Black and white applicants provide no basis for a plaintiff to recover damages on a tort claim absent evidence that the VA's handling of *that* plaintiff's claim was discriminatory or otherwise improper. Any other conclusion would effectively allow plaintiffs to circumvent bedrock Article III standing requirements "by asserting an injury to someone else," *id.* at 662, which is impermissible. *See*, *e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 108-09 (1983). For all these reasons, there is substantial grounds for disagreement with the Court's conclusion

that it could adjudicate Plaintiffs' claims of systemic discrimination without "pass[ing] judgment on any individual VA benefits decision," Dkt. 83 at 10.

This Court's reliance on *Broudy v. Mather*, 460 F.3d 106 (D.C. Cir. 2006), was similarly flawed. The Court cited *Broudy* for the unexceptional proposition "that section 511(a) bars judicial review 'only when the Secretary has actually decided' an issue related to the provision of benefits." Dkt. 83 at 9. But that principle does not apply to this case because Plaintiffs allege "systemic" discrimination and thus challenge all (or at least some significant subset) of the VA's benefits decisions with respect to Black veterans as discriminatory. Thus, unlike *Broudy*, Plaintiffs in this case are undoubtedly challenging issues the VA "actually decided"—that is, whether veterans were entitled to benefits and, if so, in what amount. *See Broudy*, 460 F.3d at 114. In contrast, the plaintiffs in *Broudy* were not challenging any prior VA benefits decisions because they had not yet filed claims. That case involved a *Bivens* suit brought by a group of veterans alleging that the government had concealed the fact that they had been exposed to radiation after World War II, thereby preventing them from bringing claims for benefits. In that unusual situation, the D.C. Circuit held that section 511(a) did not divest the district court of jurisdiction over the plaintiffs' *Bivens* claims because the VA had not "actually decided" any question arising under laws affecting the provision of benefits. *Id.* But the D.C. Circuit reaffirmed in *Broudy* that the VJRA *does* prohibit district courts from reviewing questions with respect to benefits that the VA has in fact decided. *Id.* at 115. That principle governs here.

In any event, the D.C. Circuit has since made clear that section 511(a) does not merely foreclose review of VA decisions with respect to individual benefits claims but also precludes review of general policies that affect the veterans' claims for benefits. *See Blue Water Navy*, 830 F.3d at 576 (holding that district court lacked jurisdiction over challenge to VA policy governing

certain types of claims asserted by Vietnam-era veterans). Because Plaintiffs' claims would require judicial review of countless VA benefits decisions, section 511(a) forecloses their tort claims. At a minimum, this Court's departure from the consensus view that section 511 bars "systemic" claims relating to the delay or denial of veterans' benefits just as it bars individual claims demonstrates that there is substantial ground for a difference of opinion on this threshold jurisdictional question.

### b.  No FTCA Private-Party Analog

There is also substantial ground for a difference of opinion as to whether Plaintiffs' FTCA claims can be supported by private-party analogs in state tort law.

The FTCA waives sovereign immunity only where the claim in question is "comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred." *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016); *see* 28 U.S.C. §§ 1346(b), 2674. The Second Circuit has held that there is no state-law private party analog for "quasi-adjudicative" federal action. *See Akutowicz v. United States*, 859 F.2d 1122, 1125-26 (2d Cir. 1988) (no private analog where the State Department allegedly wrongly deprived plaintiff of his United States citizenship); *Chen v. United States*, 854 F.2d 622 (2d Cir. 1988) (no private analog where the General Services Administration instituted contract debarment proceedings); *C.P. Chem. Co. v. United States*, 810 F.2d 34, 37 (2d Cir. 1987) (the Consumer Product Safety Commission's ban of hazardous substance is a quasi-legislative act, for which, like quasi-adjudicative acts, there is no private party analog); *Klopp v. United States*, 131 F.3d 131 (Table), 1997 WL 774397, at *3 (2d Cir. Dec. 17, 1997) (no private analog where "claims arise from alleged negligent violations of the ministerial duties of federal court clerks"). This Court addressed neither *McGowan* nor the Second Circuit's line of cases regarding quasi-adjudicative and quasi-legislative government actions.

16

Decisions by the VA regarding the grant or denial of veterans' benefits lack a private analog. One district court in the Second Circuit has so held, *see Peruta v. United States*, No. 3:16-cv-2112 (VLB), 2018 WL 995111 (D. Conn. Feb. 21, 2018), and other district courts in the Second Circuit have applied the same rule in similar contexts. *See Ojo v. United States*, No. 20-cv-4882, 2022 WL 4091011, at *2 (E.D.N.Y. Sept. 6, 2022) (no private analog where the Treasury Offset Program withheld settlement funds to satisfy a restitution order); *Storms v. United States*, No. 13-cv-811, 2015 WL 1196592, at *19-20 (E.D.N.Y. Mar. 16, 2015) (no private analog relating to removal from federal contract and debarment from future contracts); *Figueroa v. United States*, 739 F. Supp. 2d 138, 141-42 (E.D.N.Y. 2010) (no private analog for negligent issuance of a passport). The divergence between these decisions and the Court's decision in this case demonstrates that there is substantial ground for a difference of opinion on the purely legal question of whether there are any private analogs for Plaintiffs' novel tort claim seeking damages predicated upon a federal agency's negligence in administering an allegedly discriminatory benefits system.

### III. Immediate Appeal Will Materially Advance the Ultimate Termination of Litigation

Certification of these two threshold jurisdictional issues for immediate appeal under section 1292(b) would also "advance the ultimate termination of the litigation." *Tantaros v. Fox News Network, LLC.*, 465 F. Supp. 3d 385, 392 (S.D.N.Y. June 8, 2020). Indeed, the Second Circuit has granted petitions for interlocutory appeal under section 1292(b) where "the governing issue is subject matter jurisdiction and to proceed may result in a decision that the Court lacked subject matter jurisdiction." *See Montefiore Med. Ctr. v. Teamsters Local 272*, No. 09-cv-3096, 2009 WL 3787209, at *6 (S.D.N.Y. Nov. 12, 2009), aff'd, 642 F.3d 321 (2d Cir. 2011).

This litigation remains at an early phase and there is thus substantial value that would come from interlocutory appeal. The parties have only just commenced the discovery process, which, should it go forward, is likely to impose significant burdens on both the Court and the parties. Indeed, the discovery requests that Plaintiffs have already served seek information and documents spanning a period of nearly sixty years, from 1965 to the present. Additionally, in their initial disclosures, Plaintiffs have identified not only multiple high-ranking officials currently within the VA as individuals likely to have information supporting their claims, including the current VA Secretary, Denis R. McDonough, but also several former VA Secretaries. If the United States were to prevail on either threshold legal issue, dismissal of Plaintiffs' claims would be required and there would be no need for additional discovery, potentially prolonged litigation over the propriety of class certification, or extensive summary judgment briefing and preparations for a possible trial.

Finally, the section 511(a) and no-private-analog arguments both involve legal questions and are "of special consequence." *Balintuno*, 727 F.3d at 186. In particular, this Court's view that section 511 only forecloses review of individual benefits determinations while allowing broader "systemic" claims could have a significant legal and practical impact. By allowing Plaintiffs' claims to proceed outside the comprehensive scheme Congress established for adjudicating veterans' benefits claims, this Court's ruling would undermine the consistency and certainty Congress sought to promote in enacting the VJRA. And by requiring the VA to expend enormous resources defending its administration of benefits to all veterans, over a very long time period, this Court's ruling threatens to divert scarce agency resources from the important present task of promptly and fairly awarding benefits to all veterans.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court certify its

Order dated March 29, 2024 (ECF 83) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).


Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

VANESSA ROBERTS AVERY
United States Attorney

JAMES G. TOUHEY, JR.
Director, Torts Branch

CHRISTOPHER R. BENSON
Assistant Director, Torts Branch

By:     */s/ Emily M. Kelley*
Emily M. Kelley (phv207548)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4400
Email: Emily.m.kelley@usdoj.gov

Jillian Rose Orticelli (ct28591)
Assistant United States Attorney
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: (860) 947-1101
Fax: (860) 760-7979
Email: Jillian.Orticelli@usdoj.gov

Irina M. Majumdar (phv207971)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044

19

Telephone: (202) 598-5403
Email: Irina.m.majumdar@usdoj.gov

ATTORNEYS FOR DEFENDANT
UNITED STATES OF AMERICA