UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CONLEY F. MONK JR., et al.,
    Plaintiffs,

v.

UNITED STATES,
    Defendant.

No. 3:22-cv-1503 (SRU)

**ORDER DENYING MOTION FOR CERTIFICATION
TO PURSUE AN INTERLOCUTORY APPEAL**

    The government has moved for certification to pursue an interlocutory appeal of my order denying its motion to dismiss. For the following reasons, I **deny** the government's motion for certification for an interlocutory appeal, **doc. no. 96**.

**I.**     **Standard of Review**

    "Litigants are generally required to wait for a final judgment to appeal." *Century Pacific, Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990)). "[O]nly exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Klinghoffer*, 921 F.2d at 25 (cleaned up). "The party that seeks certification under section 1292(b) bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *In re Aggrenox Antitrust Litig.*, 2018 WL 834228, at *1 (D. Conn. Feb. 12, 2018) (quoting *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994)) (cleaned up).

    Pursuant to 28 U.S.C. § 1292(b), a district judge may certify an order for interlocutory appeal when the judge is "of the opinion that such order [1] involves a controlling question of

law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). A substantial ground for difference of opinion requires a showing that "(1) there is conflicting authority on an issue or (2) the case is particularly difficult and of first impression within this Circuit." *James v. Venture Home Solar, LLC*, 2024 WL 446085, at *11 (D. Conn. Feb. 6, 2024) (quoting *United States ex rel. Drake v. NSI, Inc.*, 736 F. Supp. 2d 489, 503 (D. Conn. 2010)).

The three criteria of section 1292(b) "are conjunctive, not disjunctive." *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006) (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000)). Courts may deny interlocutory review if any one of the above three criteria is not satisfied. *See id.* at 278 (denying motion for leave to appeal because there was "no substantial ground for a difference of opinion"); *see also In re Liddle & Robinson, LLP*, 2020 WL 4194542, at *4 (S.D.N.Y. July 21, 2020) (denying motion for leave to appeal after considering only "the last of the § 1292(b) factors").

Indeed, "even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met," district courts have "unfettered discretion to deny certification." *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007) (quoting *Gulino v. Board of Education*, 234 F. Supp. 2d 324, 325 (S.D.N.Y. 2002)). Whether to certify a question of law for interlocutory review "is entirely a matter of discretion for the District Court." *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 2019 WL 10984250, at *1 (D. Conn. Oct. 29, 2019) (quoting *In re The City of New York*, 607 F.3d 923, 933 (2d Cir. 2010)). If the district court certifies an interlocutory appeal, "[t]he relevant Court of Appeals may then, 'in its discretion,

permit an appeal to be taken from such order.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting 28 U.S.C. § 1292(b)) (footnote omitted).

**II.      Background**

I assume the parties' familiarity with the plaintiffs' factual allegations.[1] The immediately relevant procedural history is as follows. On March 29, 2024, I denied the government's motion to dismiss in a written order. Doc. No. 83. On June 4, 2024, the government moved for leave to appeal that order.

The government seeks certification to appeal the following issues:[2]

1.      Whether 38 U.S.C. § 511(a) bars judicial review of Plaintiffs' claims where Plaintiffs disclaim challenging individual benefits decisions by the United States Department of Veterans Affairs ("VA") and instead allege that the VA has engaged in "systemic" discrimination in its grant and denial of benefits, and

2.      Whether there is a private-party analog in state tort law sufficient to support Plaintiffs' claims brought under the Federal Tort Claims Act ("FTCA"), which seek damages predicated upon the VA's alleged negligence in administering a racially discriminatory benefits system.

Mem. of Law, Doc. No. 96-1 at 6.

**III.     Discussion**

The government meets some—but not all—of section 1292(b)'s criteria for interlocutory review. As set forth below, my order denying the government's motion to dismiss (a) "involves a controlling question of law," and (b) "an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). But the government fails to fully satisfy section 1292(b)'s criteria for interlocutory review because there is not (c)

---

[1] I discuss those factual allegations in greater detail in the order denying the government's motion to dismiss. Doc. No. 83; *Monk v. United States*, 2024 WL 1344712 (D. Conn. Mar. 24, 2024).
[2] "[S]ection 1292(b) authorizes certification of *orders* for interlocutory appeal, not certification of *questions*[,]" but "it is helpful if the district judge frames the controlling question(s) that the judge believes is presented by the order being certified[.]" *Isra Fruit Ltd. v. Agrexco Agr. Exp. Co.*, 804 F.2d 24, 25 (2d Cir. 1986).

3

"substantial ground for difference of opinion" on either issue for which it seeks appellate review. *Id.*

    A. <u>Materially Advance the Ultimate Termination of the Litigation</u>

An interlocutory appeal's likelihood of ending the litigation depends, in part, on whether the appeal could dispose of all issues. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 532 (S.D.N.Y. 2014). If the Second Circuit were to reverse my order on either the section 511(a) issue or the FTCA issue, this Court would lose subject matter jurisdiction over the entire case. Certification thus could materially advance the terminate of the litigation.

    B. <u>Controlling Questions of Law</u>

"Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." *Id.* at 536 (quoting *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000)). A section 1292(b) appeal requires "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *Id.* (quoting *In re Worldcom*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)) (cleaned up). "In determining whether a controlling question of law exists the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *Id.* (quoting *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)).

Monk argues that my order denying the motion to dismiss addressed mixed questions of law and fact. Doc. No. 98 at 15-17. I disagree. When I took up the government's motion to

4

dismiss, I construed the "uncontroverted facts in the complaint . . . as true, and dr[ew] all reasonable inferences in favor of the party asserting jurisdiction." Order on Mot. to Dismiss, Doc. No. 83 at 1-2. Both the VJRA and the FTCA implicate subject matter jurisdiction. *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994) (VJRA); *Dorking Genetics v. United States*, 76 F.3d 1261, 1263-64 (2d Cir. 1996) (FTCA). I did not make findings of fact when I determined that the Court had subject matter jurisdiction, nor did I need to make findings of fact. The FTCA and VJRA issues are, therefore, controlling questions of law.

C. Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion may exist if "the case is particularly difficult and of first impression within this Circuit." *James v. Venture Home Solar*, 2024 WL 446085, at *11 (quoting *United States ex rel. Drake*, 736 F. Supp. 2d at 503) (cleaned up). The Second Circuit has yet to speak on the exact contours of section 511(a). Order on Mot. to Dismiss, Doc. No. 83 at 8 (quoting *Schwingle v. United States*, 2022 WL 9462632, at *8 (W.D.N.Y. Oct. 14, 2022)) ("'[T]he Second Circuit has not directly addressed' section 511's scope."); *see also Conyers v. United States*, 2018 WL 1157754, at *7–*7 n.1 (E.D.N.Y. Jan. 31, 2018), *report and recommendation adopted*, 2018 WL 1157823 (E.D.N.Y. Mar. 2, 2018) ("[T]he D.C. Circuit has developed a relevant test to determine whether the use of the FTCA constitutes a disguised collateral attack on a benefits determination. Although the Second Circuit has not explicitly addressed this framework, courts within the Circuit have utilized it in addressing FTCA claims.") (collecting cases). In a meaningful sense, this case is one of first impression within this Circuit, even though Monk uses well-traveled causes of action under the FTCA.

Section 1292(b) interlocutory review, however, requires more than a question of first impression. *See Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 391 (S.D.N.Y. 2020)

5

(quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)) ("[T]he mere presence of a disputed issue that is a question of first impression" is "not sufficient to show a substantial ground for difference of opinion[.]"). And "simply because a question is particularly difficult does not mean that there is a difference of opinion." *United States ex rel. Drake*, 736 F. Supp. 2d at 503. *See also Williston v. Eggleston,* 410 F. Supp. 2d at 276 ("Interlocutory appeal was not intended as a vehicle to provide early review of difficult rulings in hard cases.").

The government claims that several cases, primarily out-of-circuit authority, conflict with my ruling on its motion to dismiss. I turn first to the VJRA issue.

1. *Section 511(a) of the VJRA*

Section 511(a) of the VJRA has principally been applied to bar two different kinds of cases: (1) actions challenging the VA's delay in administering benefits and (2) actions seeking collateral review of individual benefits outcomes.

Monk and his co-plaintiffs are not seeking collateral review of their individual benefits outcomes. Am. Compl., Doc. No. 36 ¶ 9. Monk does not seek a different outcome of his unemployment, education, home loan, or disability benefits applications. He is not asking for more money for those individual applications. Rather, Monk and his co-plaintiffs seek dignitary, psychological, emotional distress-related damages from the VA's alleged failure to maintain a racially nondiscriminatory benefits system. Am. Compl., Doc. No. 36 ¶¶ 152, 208, 215, 223. Such relief could not have been awarded by the Secretary in a VA benefits proceeding.

a. Intra-Circuit Authority

I begin with a review of intra-circuit authority on the section 511(a) issue. *See Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017) (determining that interlocutory review

was warranted when the Southern District and the Eastern District of New York arrived at different conclusions).

In *Schwingle*, 2022 WL 9462632 (W.D.N.Y. 2022), the Court determined that section 511(a) of the VJRA barred a veteran's negligence and negligent infliction of emotional distress claims. The veteran had alleged that the VA "never processed or adjudicated" his claim application and "fail[ed] to decide the claim or communicate with him about it for almost fifty years[.]" *Id.* at *1, *9. The Court held it lacked subject matter jurisdiction because the claims challenging delay(s) "would require th[e] Court to evaluate whether the VA acted properly in handling Plaintiff's benefit request." *Id.* at *9 (collecting cases about VA benefits delays). "[I]t is difficult to view the VA's subsequent decades-long silence as anything other than a 'decision' to deny [the plaintiff's] claim." *Id.* The *Schwingle* decision is consistent with decisions of a litany of courts that have concluded that section 511(a) precludes adjudication of "claims involving delay by the VA in deciding a particular claim or in providing a benefit." *Id.* at *8 (collecting cases).

In *Sugrue v. Derwinski*, 26 F.3d 8 (2d Cir. 1994), a veteran objected to his disability rating. The veteran sued the VA for, *inter alia*, "the VA's failure to maintain its record regarding [the plaintiff] with accuracy, relevance, timeliness, and completeness, necessary to assure fairness to [the plaintiff] in reaching its [disability rating] determination[.]" *Id.* at 10 (internal quotation marks omitted). That kind of claim is squarely precluded by section 511(a) because it challenges the VA's decisions to assign a rating that directly impacts what level of benefits the veteran would receive. *Id.* at 11-12.

In *Conyers*, 2018 WL 1157754, a veteran alleged that unlicensed psychologists denied him benefits. *Id.* at *3, *6. He brought claims "under the FTCA for negligence, malpractice and

7

negligent hiring, training, and retention." *Id.* at \*6. The veteran alleged that the VA "erred in relying on certain documents or failed to correct purported discrepancies in his [Counseling/Evaluation/Rehabilitation] Folder" and "attack[ed] what information [the VA] chose to rely on." *Id.* at \*8. Section 511(a) precluded those claims because they sought collateral review of an individual benefits outcome; "Plaintiff's claims are rhetorical cover for his actual dispute—the determination that he is not entitled to self-employment benefits." *Id.* at \*6.

I next address out-of-circuit authority.

### b. Out-of-Circuit Authority

As a threshold matter, "[a] possible circuit split does not meet section 1292(b)'s high bar to certify for an interlocutory appeal." *Conservation L. Found., Inc. v. All-Star Transportation, LLC*, 2024 WL 3638258, at \*3 (D. Conn. Aug. 1, 2024) (citing *James v. Venture Home Solar*, 2024 WL 446085 at \*11); *see also In re Teva Sec. Litig.*, 2021 WL 1197805, at \*7 (D. Conn. Mar. 30, 2021) (quoting *Ryan, Beck & Co. v. Fakih*, 275 F. Supp. 2d 393, 398 (E.D.N.Y. 2003)) ("Disagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion.").

Each case cited by the government falls into one of the two categories of precluded cases: collateral review of individual benefits outcomes and delay in administering benefits. *Beamon v. Brown*, 125 F.3d 965, 974 (6th Cir. 1997) ("Whether these procedures cause unlawful or unconstitutional *delays* in the administration of veterans benefits are questions within the exclusive jurisdiction of the BVA, . . . . The District Court properly dismissed plaintiffs' claims for lack of subject matter jurisdiction.") (emphasis added); *Blue Water Navy Vietnam Veterans Ass'n v. McDonald*, 830 F.3d 570, 572-74 (D.C. Cir. 2016) (holding that section 511(a) precluded a challenge to a VA policy requiring veterans who were deployed offshore, and not on

8

Vietnamese soil, to "prove on a case-by-case basis that they were exposed to Agent Orange," because the "VA policy [] leads *directly to the denial* of certain benefits for *most, if not all*, of the veterans it affects, . . . it is nearly impossible for veterans to prove exposure on a case-by-case basis.") (cleaned up and emphasis added).

      i.   *VCS* and the Word "Systemic"

One case cited by the government merits closer attention. The Ninth Circuit, sitting en banc, held that section 511(a) barred judicial review of the plaintiffs' complaints that the Veterans Health Administration ("VHA") unlawfully delayed claims processing. *Veterans for Common Sense v. Shinseski*, 678 F.3d 1013 (9th Cir. 2012) ("*VCS*").

The plaintiffs first alleged that VHA procedures delayed mental health care, resulting in Due Process violations. *Id.* at 1017. That claim was unreviewable: "Section 511 undoubtedly would deprive us of jurisdiction to consider an individual veteran's claim that the VA unreasonably delayed his mental health care. [The plaintiffs] attempt[ed] to circumvent this" by "proffering evidence of *average* delays to demonstrate statutory and constitutional violations." *Id.* at 1026 (footnote omitted). Despite the averaging, "the district court would have to decide whether the processing time was reasonable or not as to *each individual case*" and would need to "evaluat[e] the circumstances of individual veterans and their requests for treatment" in order to determine "whether the VA handled those requests properly." *Id.* at 1027-28 (emphasis added).

> Whether the average delays of which VCS complains are reasonable depends on the facts of individual veterans' claims, such as the complexity of the claim (PTSD claims being some of the most difficult to resolve), the severity of the disability, and the availability and quality of the evidence. . . . [A] veteran who raises seven or eight issues in his or her claim will likely face a more protracted delay than a veteran who raises only one or two issues. Because the district court lacks jurisdiction to review the circumstances or decisions that created the delay in any one veteran's case, it cannot determine whether there has been a **systemic** denial of due process due to unreasonable delay.

9

*Veterans for Common Sense v. Shinseski*, 678 F.3d 1013, 1030 (9th Cir. 2012) (en banc) (cleaned up and emphasis added). The government zeros in on the above emphasized language: "*systemic* denial of due process due to unreasonable delay." Monk alleges that the VA engaged in "*systemic* racial discrimination" when it failed to "maintain a racially neutral and nondiscriminatory system of administering benefits and fail[ed] to supervise or instruct VA staff on how to distribute benefits in a racially neutral way." Order on Mot. to Dismiss, Doc. No. 83 at 9-10 (quoting Am. Compl., Doc. No. 36 ¶¶ 215, 223) (cleaned up and emphasis added).

The mistaken assumption underlying the government's briefing is that the fact finder must evaluate whether VA administrators denied Monk's individual benefits claims (and the claims of his co-plaintiffs) because of his race. The government implicitly argues that systemic racism is made up of individual racist decisions by individual VA employees who harbor some level of racial animus.

That argument is unavailing for three reasons. First, it mischaracterizes Monk's claims. Monk does not challenge individual benefits decisions, nor does he allege that VA employees were motivated by racial animus when they adjudicated the plaintiffs' individual benefits claims. He instead challenges the VA's failure to address known racial disparities through "training, supervision, auditing, monitoring, and quality control," regardless of any individual benefits determination. Am. Compl., Doc. No. 36 ¶ 36.

The claims in this case are more analogous to the claims in *VCS* attacking the adequacy of procedures for deciding benefits claims. The Ninth Circuit held that it did enjoy jurisdiction over those claims. *VCS*, 670 F.3d at 1033.

> [R]eviewing the VA's procedures for filing and handling benefits claims at the Regional Offices does not require us to review 'decisions' affecting the provision of benefits to any individual claimants. . . . Indeed, VCS does not challenge decisions at all. . . . VCS does not ask us to review the decisions of the VA in the cases of individual veterans, but to

10

>consider, in the 'generality of cases,' the risk of erroneous deprivation inherent in the existing procedures compared to the probable value of the additional procedures requested by VCS.

*Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1034 (9th Cir. 2012) (en banc) (citations omitted). In short, the "risk of erroneous deprivation" inherent in a system permeated by racism is similar to the right to be free from inadequate procedures. There is jurisdiction over either claim notwithstanding section 511.

Moreover, the government incorrectly claims that Monk's allegations are an indirect attack on benefits denials. "[T]he harms of racial disparities in benefits adjudications go far beyond the financial value of any benefits that may have been granted (or not granted) under a non-discriminatory system and include re-traumatization, emotional distress, reputational damage, and the opportunity cost of time spent reapplying for and appealing denied applications for benefits." Am. Compl., Doc. No. 36 ¶ 5. Monk alleges that the discriminatory benefits system deters some veterans from filing new claims. *See id.* at ¶ 114 ("Feeling abandoned by VA and the military, Mr. Monk Jr. stopped applying for benefits for over two decades. He believed VA's benefits system to be plagued by racial bias and feared that he would never receive help from the country he had faithfully served."). *Broudy* involved a similar principle. There, section 511(a) did not bar a plaintiff's *Bivens* action when the plaintiff "ha[d] not yet filed a [benefits] claim." *Broudy v. Mather*, 460 F.3d 106, 109 (D.C. Cir. 2006).[3] The plaintiff had intended to file for benefits once she acquired test results from the VA. *Id.* at 110. The VA

---

[3] The *Broudy* court also held that section 511(a) did not bar the other plaintiffs' claims who *had* filed benefits claims, because the VA had not "actually decided" the plaintiffs' central claim "in the course of a benefits proceeding." *Id.* at 114. The government claims that "the plaintiffs in *Broudy* were not challenging any prior VA benefits decisions because they had not yet filed claims." Mem. of Law, Doc. No. 96-1 at 20. But nine out of the ten plaintiffs in *Broudy* had filed benefits claims. *Broudy v. Mather*, 366 F. Supp. 2d 3, 7 (D.D.C. 2005), *aff'd*, 460 F.3d 106; *see also Broudy*, 460 F.3d at 109 (eight out of the remaining nine plaintiffs on appeal had filed benefits claims); *see generally* Compl., *Broudy*, No. 1:02-cv-2122-GK (D.D.C.), Doc. No. 1. The VA had either denied or partially approved those benefits claims. *Broudy*, 366 F. Supp. 2d at 7.

11

functionally deterred that plaintiff from filing her claim when it allegedly intentionally hid those test results. *See id.* at 109.

The government's argument fails for a second reason: it inaccurately characterizes practical barriers to measuring systemic racism. With systemic delays, like in *VCS*, it is reasonable for a court to measure the complained-of behavior by (a) evaluating the individual length of delays in each benefits claim, (b) averaging those delays across all benefits claims, and (c) evaluating whether that average delay amounts to a due process violation. With systemic racism, that methodology is inapt.

Systemic racism can exist without individual racism. *See* Palma Joy Strand, *This Is the House That Law Built: A Systems Story of Racism*, 58 San Diego L. Rev. 811, 817 (2021) ("Injustices emerge from complex webs of interactions among individual actors in a range of institutions and with a range of incentives—often without the actors intending harm. In this sense, racism can operate without 'racists.'") (footnotes omitted). Dissecting each individual benefits adjudication is unlikely to accurately measure systemic racism within the VA benefits administration, even if one aggregates the results, because systemic racism is greater than the sum of its parts. Often, individuals who do not themselves harbor racial animus can contribute to systemic racism without intending to do so. *See id.* at 827 ("[I]ndividuals often act in ways that contribute to disparate outcomes . . . . They may not even be aware that harm is occurring. Or they may intend a distribution of benefits without focusing on how partial distribution of benefits—a distribution that consistently advantages members of one group while members of another group lack access to benefits—effectively creates disadvantage.") (footnote omitted).

Thus, one cannot accurately measure systemic racism in the VA's benefits administration by evaluating individual cases. To be sure, one could measure *individual* racism that way—*e.g.*,

a VA employee denied a Black veteran's disability claim because that individual VA employee harbored racial animus against Black people. But systemic racism, true to its name, can only be measured by looking at the system as a whole.

The government's analogy to the delay claim in *VCS* is unpersuasive for a third reason: section 511(a)'s statutory language narrows its preclusive scope to questions of law or fact "necessary to" the VA's benefits decisions.

### ii. Section 511(a)'s Statutory Term "Necessary"

Not every claim involving the VA benefits system is barred by section 511(a). "Section 511(a) does not give the VA *exclusive* jurisdiction to construe laws affecting the provision of veterans benefits or to consider all issues that might somehow touch upon whether someone receives veterans benefits." *Broudy*, 460 F.3d at 112. District courts lack subject matter jurisdiction to resolve questions of fact or law that necessitate reviewing the VA's individual benefits decisions, the VA's inaction, or the VA's delay in administering benefits. "The Secretary shall decide all questions of law and fact ***necessary to*** a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans . . . ." 38 U.S.C. § 511(a) (emphasis added). Otherwise, district courts have jurisdiction to hear veterans' claims. *Anestis v. United States*, 749 F.3d 520, 528 (6th Cir. 2014) (district court had jurisdiction over claims "where no review of the benefits determination is necessary" to hear the claims); *Beamon*, 125 F.3d at 966, 970 (dismissing claims challenging "the VA's procedures for processing claims" because "[d]etermining the proper procedures for claim adjudication is a *necessary precursor* to deciding veterans benefits claims") (emphasis added); *VCS*, 678 F.3d at 1028 (section 511(a) precluded a claim when "the district court would *have* to look at individual processing times. . . . [T]here is *no way* for the district court to resolve whether the VA acted in a

13

timely and effective manner . . . *without* evaluating the circumstances of individual veterans and their requests for treatment, and determining whether the VA handled those requests properly.") (emphasis added).

Monk's allegations of systemic racism do not require me to dissect VA employees' individual decisions regarding veterans benefits. Take, for instance, Monk's allegation that Black veterans' benefits claims are denied at a higher rate than other racial groups. Am. Compl., Doc. No. 36 ¶¶ 41-43. Monk uses statistical evidence to support that allegation. *See id.* The Black veteran denial rate is evidence of systemic racism within the VA, but it is not evidence that one Black veteran could feasibly raise when appealing a single benefits denial. Individual VA benefits appeals only encompass the facts and circumstances of that particular case, not agency-wide systemic discrimination. Perhaps, for most Black veterans, there was no measurable individual racism that occurred in their individual benefits application. Perhaps each VA employee thought they were viewing each Black veterans' case objectively, without implicit racial bias.

By way of contrast, in *VCS*, each veteran who experienced a lengthy benefits delay could have raised that complaint in the benefits appeals process. Delay in each individual benefits adjudication is measurable on an individual level—6 months, 1 year, 2 years—and then may be aggregated and averaged on a systemic level. Unlike delays, systemic racism is measured by starting with the aggregate data. Monk cannot measure racially disparate benefits outcomes without looking at the overall denial rates of different racial groups. Dissecting what occurred in each Black veteran's benefits adjudication would be unhelpful and unnecessary.[4] Monk's

---

[4] Of course, Monk challenges more than disparate benefits outcomes. He challenges harm incurred from having to interact with a racially discriminatory benefits system, which "go[es] far beyond the financial value of any benefits that may have been granted (or not granted) . . . includ[ing] re-traumatization, emotional distress, reputational damage, and the opportunity cost of time spent reapplying for and appealing denied applications for benefits." Am.

complaints of systemic racism are therefore not "questions of law and fact *necessary to* a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans . . . ." 38 U.S.C. § 511(a) (emphasis supplied).

Indeed, in *VCS*, a different constitutional claim challenging "the VA's procedures for filing and handling benefits claims at the Regional Offices" was not barred by section 511(a). 678 F.3d at 1034. "[R]eviewing" that claim "d[id] not *require* [the Court] to review 'decisions' affecting the provision of benefits to any individual claimants." *Id.*

> A consideration of the constitutionality of the procedures in place, which frame the system by which a veteran presents his claims to the VA, is different than a consideration of the decisions that emanate through the course of the presentation of those claims. In this respect, VCS does not ask us to review the decisions of the VA in the cases of individual veterans[.]

*Veterans for Common Sense v. Shinseski*, 678 F.3d 1013, 1034 (9th Cir. 2012) (en banc) (emphasis added).

\*   \*   \*

Section 511(a) bars district courts from hearing many cases that seek collateral review of individual benefits applications or challenge the VA's delay in resolving a benefits application. But it does not bar this case. I hold that there is not a substantial ground for a difference of opinion between my order on the government's motion to dismiss and other cases addressing section 511(a)'s preclusive scope.

2. *Private Analogue*

Turning next to the FTCA, the government argues that there is substantial ground for a difference of opinion regarding my "holding that state-law private analogs exist for [Monk's]

---

Compl., Doc. No. 36 ¶ 5. After discovery, Monk will conceivably have more evidence of systemic racism within the VA besides the allegedly disparate benefits outcomes.

15

FTCA claims" under Connecticut and District of Columbia law. Mem. of Law, Doc. No. 96-1 at 13.

I begin with the government's cited intra-circuit authority. In *Peruta v. United States*, 2018 WL 995111 (D. Conn. Feb. 21, 2018), the Court held that "the alleged failure of the . . . VA to reinstate the fee basis services card for" the plaintiff lacked a private analogue under the FTCA because there was no analogous worker's compensation benefits tort cause of action. *Id.* at *1, *3 (cleaned up).

> Plaintiff's cites two state court cases addressing workers' compensation benefits, which together stand for the proposition that tort claims for bad faith and negligent processing of workers compensation benefits are barred by Conn. Gen. Stat. § 31-284(a). The essence of Plaintiff's argument is that the limitation on tort claim liability in these workers' compensation dispute[s] means that a tort claim for a *different* type of benefits-related case—such as the tort claim in this case—is actionable. This leap in logic does not persuade the Court.

*Peruta v. United States*, 2018 WL 995111, at *3 (D. Conn. Feb. 21, 2018) (citations omitted).

The government argues that *Peruta* is "alone . . . sufficient grounds to establish a difference of opinion" because the *Peruta* Court held that "decisions by the Department of Veterans Affairs ("VA") regarding the grant or denial of veterans' benefits lack a private analog." Govt's Reply, Doc. No. 102 at 7. I disagree. Monk does not bring a claim for "negligent processing of workers compensation benefits." *Peruta*, 2018 WL 995111, at *3. Monk brings a different kind of claim, "challeng[ing] the alleged failure of VA officials and employees to maintain a racially neutral and nondiscriminatory system of administering benefits and failure to supervise or instruct VA staff on how to distribute benefits in a racially neutral way." Order on Mot. to Dismiss, Doc. No. 83 at 9-10 (cleaned up).[5] The mere fact that this

---

[5] Furthermore, *Peruta* did not cite to *Olson* or *Liranzo*, despite being decided after both of those cases. *Olson* and *Liranzo* require courts to view FTCA claims with an appropriate level of generality before finding a private analogue in state tort law. *United States v. Olson*, 546 U.S. 43, 46 (2005) ("[T]he words 'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield.") (cleaned up).

16

case and *Peruta* both involve FTCA claims in the world of VA benefits does not constitute a substantial ground for difference of opinion.

In *McGowan v. United States*, 825 F.3d 118 (2d Cir. 2016), the Court held that the BOP could not be liable under a negligence FTCA action for failure to follow its own internal regulations because New York law does not "recognize[] a freestanding duty to abide by private regulations." *Id.* at 127. "The cases on which [the plaintiff] relies establish only that failure to do so constitutes *evidence* of negligence, not negligence in itself." *Id.* Monk is using Connecticut and D.C. law for his private analogues, not New York Law. *McGowan* is inapplicable.

Next, the government argues that "quasi-adjudicative and quasi-legislative government actions" lack a private analogue. Mem. of Law, Doc. No. 96-1 at 21. Even if Monk was challenging VA benefits decision outcomes (he is not), the cases cited by the government do not help its cause.[6]

In *C.P. Chem. Co. v. United States*, 810 F.2d 34 (2d Cir. 1987), the plaintiff challenged the Consumer Protection Safety Commission's ban of a hazardous substance for alleged failure to follow the appropriate rulemaking procedures and for reckless dissemination of false information about the substance. *Id.* at 36. The Court held that the "Commission's conduct clearly was a quasi-legislative activity for which we find no private counterpart. There is simply no comparable rulemaking activity in private life[.]" *Id.* at 38. "Quasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private

---

[6] I do not address every "quasi-legislative" or "quasi-adjudicative" case cited by the government in depth; all of those cases are distinguishable on the basis that Monk is not challenging the outcomes, delays, or procedural defects of benefits decisions.

17

persons could not engage in and hence could not be liable for under local law." *Id.* at 37-38 (cleaned up).

In *Akutowicz v. United States*, 859 F.2d 1122 (2d Cir. 1988), the Court held that there was no private analogue for the plaintiff's claims that the State Department, *inter alia*, unlawfully deprived the plaintiff of citizenship and failed to provide him with an adequate hearing. "We think it clear . . . that the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists." *Id.* at 1125-26.

In *Chen v. United States*, 854 F.2d 622 (2d Cir. 1988), the plaintiff challenged the General Services Administration's contract suspension in violation of federal procurement regulations. *Id.* at 624-25. The plaintiff also brought a racial harassment tort claim. *Id.* at 625. Regarding the procurement regulations, no private analogue under New York law existed "*in tort* for an association's violation of its own rules[,]" and a "violation of the government's duties under federal procurement regulations is action of the type that private persons could not engage in and hence could not be liable for under local law[.]" *Id.* at 626. Regarding racial harassment, the plaintiff did not sufficiently analogize that claim to New York tort law because he failed to meet his prima facie burden that race-based "malice was the sole motivation for [the defendants'] acts." *Id.* at 629.

In *Klopp v. United States*, 1997 WL 774397 (2d Cir. Dec. 17, 1997), a plaintiff alleged that federal Clerk's Office employees negligently handled and processed his civil cases. *Id.* at *1. The Court dismissed the action because, *inter alia*, "a private person cannot engage in a federal court clerk's duties[.]" *Id.* at *3.

*Akutowicz*, *Chen*, *C.P. Chem.*, and *Klopp* all allude to the old general rule that "[q]uasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the

type that private persons could not engage in and hence could not be liable for under local law." *C.P. Chem.*, 810 F.2d at 37-38. But those cases were decided before *Olson* and *Liranzo*. *Olson* and *Liranzo* specifically direct courts to look "further afield for a private analogue when the government in fact is the *only entity* that performs the actions complained of." *Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012) (quoting *United States v. Olson*, 546 U.S. 43, 46 (2005)) (cleaned up and emphasis added); *see id.* (holding that "the fact that immigration detentions are 'uniquely governmental' does not mean they have no private analogue for present purposes. All Government activity is inescapably 'uniquely governmental' in that it is performed by the Government.") (cleaned up).

The government therefore has not shown a substantial ground for difference of opinion exists regarding the FTCA's private analogue issue.

D.  Other Discretionary Considerations

Even if the government had satisfied 28 U.S.C. § 1292(b)'s criteria for an interlocutory appeal, the Court may exercise its "unfettered discretion to deny certification." *In re Teva*, 2021 WL 1197805, at *7 (quoting *In re World Trade Ctr.*, 469 F. Supp. 2d at 144) (cleaned up).

Discretionary reasons counsel against interlocutory appeal. An interlocutory appeal would substantially delay the case. Efficiency is one of section 1292(b)'s primary purposes. *See Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865-66 (2d Cir. 1996) ("The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation."); *In re Facebook*, 986 F. Supp. 2d at 533 ("The institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b).") (cleaned up).

Delay would prejudice the plaintiffs. Conley Monk is 75 years old and has serious health issues, as do many of his Vietnam Veteran co-plaintiffs. The Second Circuit's median length of

appeal for individual cases is 13.9 months, longer than any other federal appellate court in the country.[7]  My discretion to deny the government's motion for certification "can be for any reason, including docket congestion and the system-wide costs and benefits of allowing the appeal[.]"  *In re Facebook*, 986 F. Supp. 2d at 530 (quoting *Klinghoffer*, 921 F.2d at 24) (cleaned up).  Delaying the case with a lengthy appeal could prejudice those plaintiffs.

I agree with the government that discovery will be costly.  Monk has requested material spanning approximately sixty years and seeks to depose at least a handful of current and former high-ranking VA officials.  Mem. of Law, Doc. No. 96-1 at 23.  But the high cost of discovery—inherent in most large putative class actions—is not enough to warrant interlocutory review under 28 U.S.C. § 1292(b).

## IV.   Conclusion

Based on the foregoing reasons, I **deny** the government's motion for certification to pursue an interlocutory appeal, **doc. no. 96**.

So ordered.

Dated at Bridgeport, Connecticut, this 11th day of February 2025.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[7] Table B-4, U.S. Courts of Appeals—Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2023, available at https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2023.pdf.