**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK, Jr. et al.,<br>*Plaintiffs*, | : | |
| v. | : | No. 3:22-cv-1503 (SRU) |
| THE UNITED STATES OF AMERICA,<br>*Defendant*. | : | March 17, 2025 |

**DEFENDANT'S MOTION IN ADVANCE OF MARCH 24, 2025 STATUS CONFERENCE**

On March 4, 2025, Plaintiffs filed a Motion for a Status Conference, seeking to discuss two issues related to their requests for discovery from the United States: a data "sampling" proposal and Plaintiffs' request for "complaints." ECF No. 119. Both requests span an eighty-year time period, from 1945 to present. On March 5, 2025, the United States filed its Response to Plaintiffs' Motion, requesting that the Court deny Plaintiffs' Motion as premature, as the parties had already scheduled a conference to attempt to narrow the issues presented to the Court. ECF No. 120. On March 6, 2025, this Court issued an order setting a telephonic status conference for March 24, 2025, "unless the identified discovery disputes are resolved before then." ECF No. 121.

On March 13, 2025, the parties met and conferred to discuss several issues related to both Plaintiffs' requests for discovery and the United States' requests for discovery. Although the parties were able to narrow the issues related to Plaintiffs' sampling proposal and request for "complaints," these discovery disputes have not been fully resolved.

In addition, the parties remain at an impasse on three issues of particular importance related to the United States' November 8, 2024 discovery requests: (1) Plaintiffs' refusal to provide documents relied upon and created by their "statistician;" (2) Plaintiffs' refusal to search for and produce documents from Ms. Michele Barnett, and; (3) Plaintiffs' refusal to search for and provide medical and psychiatric records of Mr. Monk, Jr.

Given the importance of these issues and in the interest of efficiency, the United States respectfully requests that this Court also address these three issues related to the United States' discovery during the status conference scheduled for March 24, 2025. A brief summary of each issue is set out below.

**Information Relating to the "Yale University Statistician"**

An alleged statistical analysis performed by a "Yale University statistician," which purports to show "a statistically significant difference in VA claim outcomes" between Black veterans and white veterans, is central to Plaintiffs' claims. *See* ECF No. 36 at ⁋ 40. The Amended Complaint repeatedly refers to and relies upon the work performed by the unnamed "statistician," going so far as to incorporate certain excerpts of the alleged findings, including a graph purporting to show the "Percentage of Disability Claims Denied" by race. *See id.* at ⁋ 43. The United States served discovery requests seeking the identity of this "statistician"; information relating to the work the "statistician" allegedly performed; communications with the "statistician"; the analysis conducted by the "statistician"; and any documents considered by the "statistician" or related to the analysis.

Initially, Plaintiffs refused to provide any responsive information, asserting that the "statistician" was "a consulting expert who will not testify at trial." Plaintiffs' Objections and Responses to Interrogatories, Jan. 14, 2025. In a letter dated January 31, 2025, the United States identified deficiencies in Plaintiffs' response, and highlighted that this refusal was improper for numerous reasons. In a February 20, 2025 response, Plaintiffs informed the United States that their "statistician" was Alexander Jakubow, the Director of Empirical Research and Data Services at the Yale University Law Library. Plaintiffs also agreed to produce certain non-privileged

documents that were "created by or for, reviewed by, or relied upon by" Mr. Jakubow, "including but not limited to, final reports."

Because this response remains deficient, these requests were discussed during the parties' March 13, 2025 conference. At that time, Defendant learned that, despite providing Mr. Jakubow's name and agreeing to produce the above listed documents, Plaintiffs stood by their prior objections, and are refusing to produce any draft or final analysis conducted by Mr. Jakubow or any communications with him related to the issues in this case.

The United States maintains that Mr. Jakubow is not a consulting expert and, even if he were, any alleged privilege or work product protection has plainly been waived. First, Mr. Jakubow cannot be a "consulting expert" retained in anticipation of litigation, as Plaintiffs have repeatedly stated that they "did not know, and had no way of knowing of the torts committed by VA" until records were disclosed *and analyzed* in 2021 by Mr. Jakubow—thus, *after* his "statistical" analysis was complete. Plaintiffs have yet to explain how Mr. Jakubow could have served as a consulting expert for a litigation that Plaintiffs had no reason to anticipate at the time they allegedly retained him. Nor have Plaintiffs' other actions to date been consistent with treating Mr. Jakubow as a "consulting expert."

Second, even if Mr. Jakubow was somehow a consulting expert, Plaintiffs intentionally waived any alleged work product or attorney client privilege vis-à-vis the United States, by placing the information directly at issue in the Complaint, selectively divulging portions of it, "publicizing" it, allowing parties and witnesses, including Mr. Monk, Jr., to rely on it, and incorporating it into their legal arguments against dismissal. *See New York Times Co. v. United States Dept. of Justice*, 939 F.3d 479, 495 (2d Cir. 2019) ("This Court has also held that a party waives the work product protection over a document by placing that document 'at issue' or by

making 'testimonial use' of that document."); *Clark v. Quiros*, No. 3:19-cv-575, 2022 WL 3716355, at *6 (D. Conn. Aug. 29, 2022) (work product privilege is waived "when a party possessing the documents seeks to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent an opponent from challenging the assertion. . . . The work product privilege is waived when protected materials are disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information.") (internal quotations omitted).

Plaintiffs' attempts to avoid discovery on this topic are contradictory to their prior statements and, moreover, an improper attempt to use Mr. Jakubow's alleged analysis as both a sword and shield. Plaintiffs have provided no support for their characterization of Mr. Jakubow as a "consulting expert," and even if he were a consulting expert, Plaintiffs have waived any privilege or protection by repeatedly referring to Mr. Jakubow's statistical analysis in the Amended Complaint and in the press, among other places. Accordingly, Plaintiffs are improperly withholding documents and communications related to Mr. Jakubow's "analysis." The United States requests that the Court address this at the status conference or, if the Court prefers, the United States will prepare a motion to compel.

**<u>Information from Michele Barnett</u>**

In the Amended Complaint, Plaintiffs identified Ms. Barnett as an individual who allegedly suffered harm as a result of the VA's administration of veterans benefits. Plaintiffs reference Ms. Barnett 41 times in the Amended Complaint and have devoted 4 pages to detailing the alleged harms she suffered. This includes detailed personal and medical information about Ms. Barnett. *See* ECF No. 36 at ¶¶ 158-79. Plaintiffs also allege that Ms. Barnett is a member of Plaintiff

National Veterans Council for Legal Redress and thus a purported class member. *See* ECF No. 36 at ⁋ 158. She is also represented by Plaintiffs' counsel with respect to her administrative claim related to this action.

Given the Amended Complaint's detailed incorporation of and reliance on Ms. Barnett's allegations, the United States requested documents and information related to her claims. At a minimum, Ms. Barnett is clearly differently situated than any alleged "absent" class member, as her alleged injuries form a major piece of the allegations in the Amended Complaint. Despite placing Ms. Barnett's allegations directly at issue, Plaintiffs refuse to search for and produce information responsive to the United States' requests. Rather, they stated that (1) they themselves have no responsive information, despite clearly having access to it, and (2) they will only search *Counsel's* communications for information concerning Ms. Barnett. Plaintiffs refuse to search for or produce information from *Ms. Barnett*.

During the March 13 conference, Counsel for Plaintiffs asserted that they are not under an obligation to conduct a reasonable search of Ms. Barnett's information. Confusingly, Counsel also asserts that they only represent Ms. Barnett for the purposes of her pending administrative claim, but not in the instant litigation.[1] However, the pending administrative claim contains the same allegations regarding Ms. Barnett that Plaintiffs have specifically relied upon in their Amended Complaint. The United States requests Court assistance in attempting to resolve this issue, as Plaintiffs once again appear to be attempting to rely on information for their case while simultaneously depriving the United States of discovery that is necessary to present its defense.

[1] Counsel for Plaintiffs maintain that the United States would be required to issue a third-party subpoena if they sought Ms. Barnett's deposition testimony. They informed the United States that they did not know at this juncture if they would represent Ms. Barnett at a deposition or otherwise in this litigation.

**Mr. Monk, Jr.'s Medical and Psychiatric Records and Information**

The United States also seeks discovery relating to the identities of Mr. Monk, Jr.'s medical and psychiatric providers and his medical and psychiatric records, in order to assess his claims that he suffered "emotional trauma of applying for VA benefits," causing "significant emotional distress" and "psychological harm." ECF No. 36 at ¶¶ 131-32, 208. Plaintiffs have repeatedly put such information directly at issue in this case. Among other things, Plaintiffs produced some medical files for Mr. Monk, Jr. and responded in part to the United States' Interrogatory No. 5, which sought information related to any medical or psychiatric treatment Mr. Monk received for the purported injuries arising from the incidents alleged in the Amended Complaint.[2] Plaintiff's Objections and Responses, January 14, 2025.

During the March 13 conference, the United States asked Plaintiffs whether they would continue to conduct reasonable searches for documents related to Mr. Monk's medical and psychiatric history, including by requesting copies of his records from any treatment providers.[3] Plaintiffs refused to do so and further refused to search for and produce the identities of the providers. Instead, Plaintiffs stated that any need for such documents was obviated by the fact that Plaintiffs are now choosing to allege only "garden variety damages" for Mr. Monk, Jr., rendering his medical information allegedly not at issue. When asked by the United States whether Plaintiffs intended to amend their Amended Complaint and discovery responses to reflect this more limited theory of damages, Plaintiffs refused to commit to do so. Additionally, when asked whether Plaintiffs would commit to not rely on allegations, testimony, or evidence that Mr. Monk, Jr. may have received counseling and psychiatric treatment for the emotional harm he allegedly suffered

[2] Plaintiffs designated their response to Interrogatory No. 5 as Confidential, Subject to the Protective Order. If this Court wishes to view Mr. Monk's response, the United States stands ready to submit it for *in camera* review.

[3] Plaintiffs have yet to provide the identities of any treatment providers.

as a result of interacting with the VA, Plaintiffs refused to commit to do so. Instead, Plaintiffs improperly asserted that the United States would simply have to wait and oppose the use of any such information should it come up in future. Accordingly, the United States requests that the Court address Plaintiffs' failure to produce information relating to the identities of Mr. Monk, Jr.'s medical and psychiatric providers and his medical and psychiatric records at the upcoming conference.

**Conclusion**

The United States respectfully requests that this Court address the foregoing three issues related to the United States' discovery requests at the March 24 status conference.

Respectfully submitted,

YAAKOV ROTH
Acting Assistant Attorney General

MARK H. SILVERMAN
Acting United States Attorney

KIRSTEN WILKERSON
Director, Torts Branch

CHRISTOPHER R. BENSON
Assistant Director, Torts Branch

*/s/ Irina M. Majumdar*
Irina Majumdar (phv207971)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 598-5403
Email: irina.m.majumdar@usdoj.gov

Emily M. Kelley (phv207548)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch

Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4400
Email: Emily.m.kelley@usdoj.gov

Jillian Rose Orticelli (ct28591)
Assistant United States Attorney
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: (860) 947-1101
Fax: (860) 760-7979
Email: Jillian.Orticelli@usdoj.gov

ATTORNEYS FOR DEFENDANT
UNITED STATES OF AMERICA