**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONLEY F. MONK, JR., et al.,<br>*Plaintiffs*,<br>v.<br>UNITED STATES OF AMERICA,<br>*Defendant*. | Civ. No. 3:22-cv-01503-SRU<br><br>March 19, 2025 |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION IN ADVANCE OF MARCH 24, 2025 STATUS CONFERENCE**

In its Motion in Advance of the March 24, 2025 Status Conference, the Government discusses three additional discovery issues that the parties were unable to resolve during recent conferrals. In advance of the Court's status conference, Plaintiffs respond to the Government's motion below.

**Information Relating to the "Yale University Statistician"**

The Government contends that the Yale University Statistician upon whose expertise Plaintiffs have relied in formulating and litigating their claims to date, Dr. Alex Jakubow, is not a consulting expert, and if he were such a consulting expert, Plaintiffs have waived any privilege to his draft reports by including his statistical analysis in the complaint. This contention is incorrect on both points.

First, Dr. Jakubow squarely meets the definition of a consulting expert, and his communications with Plaintiffs' counsel and his report are therefore privileged. Under Federal Rule of Civil Procedure 26, "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party

in anticipation of litigation." Fed. R. Civ. P. 26(b)(4)(D). In 2021, the Black Veterans Project and the National Veterans Council for Legal Redress (NVCLR), through requests under the Freedom of Information Act (FOIA), obtained data from VA regarding benefits claims outcomes based on race. NVCLR was founded by Conley Monk, Jr. and is itself a Plaintiff in this case. After Plaintiffs' counsel received and reviewed those data in plain anticipation of—and indeed to formulate the basis for—this litigation, they retained Dr. Jakubow to analyze the underlying data to evaluate whether the data would support potential claims against Defendant.

This use of an expert falls squarely within the definition of a consulting expert under Rule 26. For an expert to qualify as "consulting" and for his communications with counsel to be privileged, a lawsuit need not have been filed, but there "must have existed more than a remote possibility of litigation." *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 43 (S.D.N.Y. 1997) (internal citations omitted). Here, FOIA requests revealed new data that confirmed discrimination in the benefits adjudication system. Once that data was discovered, there existed far more than a "remote possibility" that litigation would ensue: To state the obvious, it is the mission of the Yale Law School Veterans Legal Services Clinic to represent veterans in litigation, and that is why the Clinic retained Dr. Jakubow.

The Government argues that Dr. Jakubow cannot be a consulting expert because Plaintiffs have asserted that they did not know and had no way of knowing about VA's underlying torts until *after* the statistical analysis was completed. But it is far from surprising or uncommon that a non-lawyer veteran would not know the legal claims available to him before he consulted with his lawyer (and that lawyer's retained expert). Indeed, consulting a skilled professional to determine whether a claim exists in a sea of data, without fear of that analysis being subject to discovery, is exactly the purpose of a consulting expert. *See Clark v. Quiros*, No. 3:19-CV-575 (VLB), 2022 WL 3716355, at *3 (D. Conn. Aug. 29, 2022) (noting that privileged communication with consulting experts

demonstrates "the federal policy of encouraging parties to seek, and enabling parties to obtain, competent consultation") (internal citations omitted); *Agron v. Trs. of Columbia Univ.*, 176 F.R.D. 445, 449 (S.D.N.Y. 1997) ("[Rule 26] is intended to allow litigants to consult experts in order to evaluate a claim without fear that every consultation with an expert may yield grist for the adversary's mill."). Plaintiffs' counsel retained Dr. Jakubow to evaluate data that could—and did—demonstrate VA's tortious conduct and lead to litigation. Dr. Jakubow is, therefore, a consulting expert who is "generally immune from discovery." *Quiros*, 2022 WL 3716355, at *3. Absent a showing of exceptional circumstances, which the Government has not alleged, his communications with counsel, including the reports created in advance of litigation, are therefore privileged under Rule 26.

The Government suggests that Plaintiffs have waived this privilege by discussing Dr. Jakubow's findings in the complaint. Courts are generally reluctant to find a waiver of privilege, *see Main St. Am. Assurance Co. v. Savalle*, No. 3:18CV02073 (JCH) (SALM), 2019 WL 4437923, at *5 (D. Conn. Sept. 16, 2019), and unlike the attorney-client privilege, work product privilege is "not waived merely because the material is disclosed to a third party." *Quiros*, 2022 WL 3716355, at *5 (internal citations omitted). That protection is waived only when "protected materials are disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information." *Id*. at *6 (internal citations omitted).

Here, Plaintiffs' inclusion of Dr. Jakubow's statistical conclusions in their complaint is in no way inconsistent with properly withholding his confidential expert work product prepared for Plaintiffs' counsel and related communications. In the complaint, Plaintiffs noted that Dr. Jakubow (then an unidentified consulting expert) found a statistically significant difference in VA claim outcomes between Black and white veterans. *See* ECF No. 36 at ¶ 40. If disclosure of such

conclusions were deemed inconsistent with protecting such work product from disclosure, no expert analysis could be used to support a plaintiff's claims in a complaint. The Government's argument proves far too much. Moreover, of course, the Government already possesses the VA data analyzed by Dr. Jakubow. (Plaintiffs have also agreed to produce the data underlying Dr. Jakubow's analysis.). Accordingly, the Government is in no way prevented from "challenging [Plaintiffs' or Dr. Jakubow's] assertion." *Quiros*, 2022 WL3716355, at *6. In sum, Plaintiffs did not waive protection over Dr. Jakubow's work product by referencing his analysis of the VA's data in the complaint.

Finally, it bears noting that Plaintiffs have already informed Defendant that they do not intend to rely on Dr. Jakubow's analysis or his conclusions to support their case in chief. Instead, they have retained a testifying expert, whose analysis and findings based on Defendant's productions in this case will be disclosed in due course consistent with the requirements of Rule 26 and the Court's scheduling order. Because Plaintiffs' testifying expert will not rely on Dr. Jakubow's analysis or findings, and Plaintiffs have not provided Dr. Jakubow's work to the testifying expert, Defendant has no legitimate need for more information about Dr. Jakubow's analysis.

**Garden Variety Damages**

In its motion, the Government seeks an order to compel Plaintiffs to search for and produce additional documents and information about Plaintiff Monk's medical records relating to the emotional distress he suffered. The Government's request is misplaced for several reasons. First, to be clear: Plaintiffs have already searched for and produced Mr. Monk's medical records; Plaintiffs are not withholding any such records. Second, Plaintiffs made clear to the Government in their February 20, 2025 letter and at the March 13, 2025 conference that they will seek only "garden variety" emotional distress damages in this case. "Garden variety" emotional distress is "ordinary or commonplace" emotional distress, which is not complex and instead "simple or

usual." *Ruhlmann v. Ulster Cnty. Dep't of Soc. Servs.*, 194 F.R.D. 445, 449 n.6 (N.D.N.Y. 2000). In cases where the plaintiff seeks only such "garden variety" damages, the evidence of mental suffering is "generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." *Vera v. Alstom Power, Inc.*, 189 F. Supp. 3d 360, 376 (D. Conn. 2016) (internal citations omitted); *see also Su v. Milford Sports Bars, LLC*, No. 3:22-CV-321 (VAB), 2023 WL 10509599, at *7 (D. Conn. Dec. 15, 2023) (noting that in garden variety claims, "suffering comes mainly from the [plaintiff's] own testimony"). In other words, Plaintiffs will prove the emotional distress they suffered through their testimony, not through the introduction of medical records or psychiatric testimony. *See Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) (noting that garden variety claims are "not supported by any medical corroboration").

Courts in this Circuit have consistently held that where only garden variety damages are sought, a Plaintiff need not produce additional medical evidence of his alleged injury or otherwise open their private medical records to discovery. *See Misas v. N.-Shore Long Island Jewish Health Sys.*, No. 14-CV-8787 (ALC) (DJF), 2016 WL 4082718, at *4 (S.D.N.Y. July 25, 2016) ("If Plaintiffs seek only garden variety damages, then they need not provide medical corroboration for any alleged injury, nor can they be said to have put their entire physical and mental condition at issue."); *Lyon v. Paramount Glob.*, No. 22-CV-9229 (JGLC), 2023 WL 6664554, at *1 (S.D.N.Y. Oct. 12, 2023) (determining that because a plaintiff has "disavowed her non-garden variety emotional distress damages," she "need not provide medical corroboration for any alleged injury") (internal citations omitted).

For these reasons, there is no basis for the Government to seek additional medical records, if any exist, beyond what has already been searched for and produced. Of course, the Government will be free to challenge whatever testimony and evidence Plaintiffs introduce at trial, but that

challenge does not justify the burdens imposed by the Government's request for medical records that are far beyond the scope of Plaintiffs' damages showing.

**Information from Michele Barnett**

The Government further contends that Michele Barnett, an individual identified in the complaint but who is neither a named plaintiff nor represented individually by Plaintiffs' counsel in this case, should be exposed to burdensome discovery. Requiring additional documents from Ms. Barnett is unwarranted for three reasons.

First, the contested requests for production and interrogatories all seek additional medical and other records related to damages calculations. But, as an absent member of the proposed class Ms. Barnett—like Mr. Monk—seeks only "garden variety" damages. As described above, such damages do not require medical corroboration as proof, so additional searches of medical records are unnecessary and needlessly burdensome.

Second, Ms. Barnett is not a named plaintiff in this litigation; she is merely an absent class member. As this Court has recognized, "party discovery techniques—such as interrogatories, document requests, and requests for admission—only apply to named plaintiffs in a class action, not absent class members." *In re Publication Paper Antitrust Litig.*, No. 3:04-MD-1631 (SRU), 2005 WL 1629633, at *1 (D. Conn. July 5, 2005) (Underhill, J.). Defendant has not identified any authority that allows it to compel Plaintiffs to attempt to obtain discovery from a non-party on Defendant's behalf.

Third, Ms. Barnett is only represented by Plaintiffs' counsel for the purpose of her administrative FTCA claim. While that claim does contain similar allegations to the present action, it is a different matter pending before an administrative agency, i.e. in a separate jurisdiction. Counsel's representation of a party in one case does not entitle the opposing party in a different case to engage in potentially burdensome discovery of that individual. The Government cites no

case law that supports allowing such a burden. Ms. Barnett is no differently situated than other absent class members, who are not parties for discovery purposes under Rules 33 and 34. *See Levinson v. Westport Nat'l Bank,* No. 3:09-CV-00269 (PCD), 2011 WL 13237887, at *1–3 (D. Conn. May 10, 2011). For these reasons, additional discovery from Plaintiffs regarding Ms. Barnett is not appropriate or required at this time.

**Conclusion**

Plaintiffs have made a good faith effort to comply with the Government's discovery requests while still maintaining these prudent objections. Plaintiffs look forward to discussing the issues at the status conference.

Dated: March 19, 2025

Respectfully submitted,

/s/ Jeremy M. Creelan

Jeremy M. Creelan
JENNER & BLOCK
1155 Avenue of the Americas
New York, NY 10036
Tel: (212) 891-1600
jcreelan@jenner.com

Adam C. Henderson
JENNER & BLOCK
353 N. Clark St.
Chicago, IL 60654
Tel: (312) 222-9350
ahenderson@jenner.com

Yaman Salahi
SALAHI PC
505 Montgomery St., 11th Floor
San Francisco, CA 94111
Tel: (415) 236-2352
yaman@salahilaw.com

Emily Elledge, Law Student Intern
Kindall Hayes, Law Student Intern
Gabriella Hill, Law Student Intern
Jared Hirschfield, Law Student Intern
Ryan Kellner, Law Student Intern
Claire Sullivan, Law Student Intern
Briana Thompson, Law Student Intern
Braden Worthington, Law Student Intern
Michael J. Wishnie, ct27221
Natalia Friedlander, ct31510
JEROME N. FRANK LEGAL SERVS. ORG.
Yale Law School*
P.O. Box 209090
New Haven, CT 06520
Tel: (203) 432-4800
michael.wishnie@ylsclinics.org

* This brief does not purport to state the views of Yale Law School, if any.