**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK, Jr. et al., *Plaintiffs*, | : | |
| v. | : | No. 3:22-cv-1503 (SRU) |
| THE UNITED STATES OF AMERICA, *Defendant*. | : | April 14, 2025 |

**DECLARATION OF ROBYN RODGERS**

I, Robyn Rodgers, do hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Senior Archivist for the VA History Office of the United States Department of Veterans Affairs ("VA"). As the first Archivist in this position, I have over 4.5 years of experience in this office with the VA. In this role, I have extensive experience with appraisal, acquisition, preservation, and ensuring access to the historic materials of the VA. I also have a strong background in Records Management, as the two professions are intrinsically intertwined. As such, I have an understanding of the full lifecycle of a record, and an agency's responsibility in managing those. I also have experience from my time as an archivist at National Archives and Records Administration ("NARA") as well as the National Aeronautics and Space Administration.

2. Given my experience, and based on a review of relevant information and records, I have been asked to describe generally (a) the ways in which agency archival records are maintained and organized, and (b) whether and how it may be possible to identify certain types of records that Plaintiffs in this matter are seeking. It is important to note that all the below descriptions focus on physical records, not electronic records.

**Storage and Organization of Agency Archival Records**

3. An agency such as the VA has different records retention policies for different types of agency materials. Records that are not destroyed by an agency after a period of time are sent to a Federal Records Center ("FRC") location, managed by the National Archives and Records Administration ("NARA"), and placed on "inactive status", meaning they remain in legal custody of the agency but are housed at an FRC for the retention period. If an agency needs those records, they are available to be pulled, but otherwise they are stored. The FRC tracks the inactive status of the records, and once the relevant time for retention has expired, the FRC will contact the agency. Permanent records are transferred to NARA. Temporary records are either returned to the agency, if, for example, there is still some sort of business use, or sent for destruction. There are occasionally circumstances where an agency may extend the retention, usually for a legal hold.

4. NARA maintains numerous Federal Records Center ("FRC") locations across the country that house archived agency records.

5. Agency records maintained by NARA are not by design organized by "topic" or "subject matter," as those concepts are used in litigation. There are several reasons why archived records are not organized by topic or subject matter. One reason is that determining a record's "topic" involves subjective determinations. Different viewers may categorize a document in different ways. Further, a record may discuss more than one subject, but it can only be physically stored in one location.

6. Instead, archived agency records are kept by organizational functionality, meaning the office that generated them, also called the Creating Organization.

7. Certain terms are used when discussing archival records. "Repository" means an institution focused on the care and storage of items of continuing value, particularly records, such as NARA, Library of Congress, National VA History Center, etc.

8. "Record Group" ("RG") is a collection of records that share the same provenance or were created in the same administrative unit. For NARA, every Federal Agency has its own number; VA is RG 15. There are currently 614 RGs at NARA.

9. "Series" means a group of similar records that are arranged according to a filing system and that are related as the result of being created, received, or used in the same activity.

10. "Accession and Box" means the materials physically and officially transferred to a repository as a unit at a single time. The Box is the box within the transferred group of materials.

11. "Folder" means a sheet of heavy paper stock or cardboard, scored near the middle, its halves bent so they rest side by side, and used as a loose cover to keep documents and other flat materials together, especially for purposes of filing. Finally, the "item" is thing that can be distinguished from a group and that is complete in itself.

**Access to NARA Records**

12. NARA maintains an online National Archives Catalog, available at https://catalog.archives.gov/. This catalog is accessible to the public and searchable in various ways.

13. For instance, a person could search the catalog to find out information relating to records categorized under the "Record Group" "Records of the Department of Veterans Affairs" (the "VA Record Group").

14. A person can also access information relating to the status of digitization of the VA Record Group, available at https://www.archives.gov/findingaid/stat/discovery/15. This page provides an estimate of the percentage of textual pages in the Record Group that are available online. For the VA Record Group, as of the time of my declaration, that estimate is 5.27%, or 17,043,337 textual scans, out of an estimated 323,628,600 estimated total textual pages in the Record Group.

15. A search for the VA Record Group on the NARA National Archives Catalog online returns results for approximately 619 different "series" of records within the Record Group.

16. By clicking on a series, a person can view additional information about that series, including: a high-level summary of the types of records contained in the series; whether all or part of it is available online; its access level, meaning whether the records in the series are unrestricted, restricted, or partially restricted due to, for example, containing personally identifiable information; the physical facility in which the series is stored; the "extent" of the series' records, meaning the physical space, in feet, that is taken up by the records; and the amount of boxes required for the records in that series, among other things. The search results would also indicate whether the records in the series have been processed. Every organization has its own definition of processing, but it typically means that the records have been housed in acid-free boxes and folders, and are available for public use within any restrictions they may carry, such as FOIA restrictions.

17. Any member of the public may access this Catalog online, and any member of the public may contact NARA regarding availability of records. Copies of select records may also be

ordered through the website, though there is a particular process that depends on the kind of record requested, e.g. a video request as opposed to microfilm.

18. A member of the public may also make an appointment to appear in person at a physical facility to view records stored at that facility. Before being able to do so, individuals must attend a brief orientation on rules of behavior and how to appropriately handle records and sign an agreement regarding the use of the materials. Members of federal agencies would need to follow the same process as members of the general public to access archived records in a physical facility.

19. Physical documents maintained by NARA may not be removed from the facility at which they are stored.

20. If a member of the public wanted to obtain digital copies of physical records that are not already digitized, there are several routes. Patrons may make physical copies on machines provided in the Research Room, for which there is a cost. Alternatively, patrons may bring flatbed scanners and cameras into the Research Room. There is a page on NARA's website that explains the rules and requirements for this. There is no cost for records to be reproduced this way.

21. How quickly NARA can process a reproduction request depends in part on the size of the request, the location of the material, whether the relevant material is already digitized, and whether NARA is also addressing other requests. Of significant consideration is the age and stability of the records requested. Digitizing microfilm is a different process than digitizing case files that have staples, pins, and fragmented edges with acid burn.

22. Digitization is a complex process that is not simply a matter of putting something in a scanner and creating an image. Records must undergo pre-processing, which can involve

cleaning, unbinding, repair work, deacidification, and supportive rehousing such as mylar or Japanese paper bonding, before ever making it to the imaging equipment. Once they are imaged, the digital records must be processed, which may involve renaming, deskewing, Optical Character Recognition, color correction, pixel repair, creation of metadata both for the original record and the scan, then the original item must be returned to its original location and the scan sent for transference to the requestor.

**Records of the VA Administrator**

23. I understand that Plaintiffs in this litigation are interested in locating certain records of the Administrator of the Veterans Administration. I understand that Plaintiffs are requesting communications to or from any former VA Administrator, reflecting or relating to informal or formal complaints regarding actual or suspected racial disparities in VA housing, education, or disability benefits, from January 1, 1945 to the present, including communications from organizations. I understand that Plaintiffs are not, through this request, seeking individual veterans' benefits files.

24. The Administrator was the head of the Veterans Administration, the predecessor to the VA. Administrators served from approximately 1930 until approximately 1989. As such, any Administrator records would be approximately 36 or more years old.

25. Given their age, such records, to the extent they still exist, would be in the possession of NARA rather than the VA. This means that, depending on the record series, the physical records could be stored at one or more physical facilities.

26. It is also possible that some records have already been processed, meaning they have been organized within the physical boxes. However, it is similarly possible that such

records, to the extent they existed at one time, have already been destroyed, depending on the document retention policy that is applicable.

27. Because records are organized by series and are not specifically organized by the topics discussed in the records themselves, records from former VA Administrators would not be organized based on whether they contain communications on a specific subject matter, such as racial disparities.

28. Using NARA's National Archives Catalog search function, I searched for series that could, in theory, contain communications to or from a VA Administrator on this topic. There are a total of 46 series from the Office of the Administrator as the Creating Organization.

29. I located these series by isolating the Office of the Administrator, and then clicked on "Series" within the "Level of Description" menu. This allowed me to view search results by series. It is also possible to search within the VA Record Group for the keyword "administrator."

30. Although I am not familiar with all of the issues in this litigation, I believe that there are four series that could, in theory, contain information that Plaintiffs seek from files related to or from the VA Administrator:

a. The series "Administrator's Numbered Memorandums, 1956-1980," NAID 559641, contains numbered memoranda. It is located at the National Archives Building in Washington, District of Columbia. This series has been processed and includes 0.5 FRC boxes and 4 letter archives boxes, which is equivalent to approximately 3000 pages. Access to this series is unrestricted. The series is not available online.

b. The series "Administrator's Reading Files, August 1962-November 1963," NAID 305957303, contains copies of outgoing correspondence issued by the

Office of the Administrator during the Kennedy administration. It is located at the John F. Kennedy Presidential Library and Museum in Boston, Massachusetts. This series has not been processed and includes 9.5 letter archives boxes, which is equivalent to approximately 4800 pages. Access to this series is partially restricted, as certain files contain private personal information. This series is not available online.

c. The series "Administrator's Speech Files, January 1962-November 1962," NAID 305957305, contains speeches and drafts made by the Administrator during the Kennedy administration. These include speeches given to external groups such as national veterans' organizations. The series is located at the John F. Kennedy Presidential Library and Museum in Boston, Massachusetts. This series has not been processed and includes 2.5 letter archives boxes, which is equivalent to approximately 1300 pages. Access to this series is unrestricted. This series is not available online.

d. The series "Correspondence to Veterans Organizations, January 1965-December 1965" contains copies of correspondence to various veterans' organizations. The series is located at the National Archives Building in Washington, District of Columbia. This series has not been processed and includes 1 FRC box, which is equivalent to approximately 2000 pages. Access to this series is unrestricted. This series is not available online.

31. I do not know whether these series in fact contain materials that Plaintiffs would view as relevant to their topic. The only way to confirm whether any of these series contain

information regarding complaints of racial disparities in veterans' benefits would be to review the entirety of the records, page-by-page.

32. I also do not know whether other series would contain information that Plaintiffs seek, especially given the extensive nature of agency archived records and the way they are organized. However, Plaintiffs, like any member of the public, can access the online NARA Archives Catalog and use various methods for searching for information related to the records within the VA Records Group.

Executed this 10th day of April, 2025.

ROBYN RODGERS
Digitally signed by ROBYN RODGERS
Date: 2025.04.10 11:25:30 -04'00'

*[sig]*
[NAME]