**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK, Jr. et al.,<br>*Plaintiffs*, | : | |
| v. | : | No. 3:22-cv-1503 (SRU) |
| THE UNITED STATES OF AMERICA,<br>*Defendant*. | : | April 14, 2025 |

**DECLARATION OF DEREK HERBERT**

I, Derek Herbert, do hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Acting Executive Director for the Office of Mission Support of the Veterans Benefits Administration ("VBA"). I have over 18 years of experience with the VBA, including 12 years with VBA's Office of Business Integration serving in multiple job functions including, most recently, as the Executive Director. In these roles, I have extensive experience in coordinating enterprise investment decisions across the VBA and with the Department of Veterans Affairs' ("the VA") Office of Information and Technology, and managed claims processing support operations through one of the largest government-industry partnerships within the VA. These support services include centralized intake, commercial document conversion services, and aligned automation activities for claims processing. These capabilities produce more than 1.4 billion images and automate more than 1.2 million claims-related actions per year and are integral components of the agency's claims processing framework. This includes directing the scanning of paper claims files at the National Archives and Records Administration ("NARA") and storing the electronic scanned documents.

2. Given my experience, and based on a review of relevant information and records, I have been asked to describe (a) the types of information contained in a veteran's disability benefits

claims file, and (b) the process that would be necessary to access, digitize, review, anonymize, redact, and produce documents from thousands of randomly selected veterans' disability benefits files for the time period of 1945 through 2006, sufficient to identify specific benefits claim "variables" requested by Plaintiffs in this matter.

**Plaintiffs' Request for Disability Benefits Claims "Sampling"**

3. I understand that Plaintiffs in this matter have requested certain information relating to veterans' initial applications for disability compensation from the VA. Specifically, Plaintiffs request a randomized "sample" of certain disability claims "variables" for three "eras": (1) initial disability claims submitted to the VA from 1945 to 1960; (2) initial disability claims submitted to the VA from 1961 to 1990; and (3) initial disability claims submitted to the VA from 1991 to the present.

4. The requested sample would need to be both random—in that a random number generator or similar method would be used to select the claims to include—and anonymized, in that no identifying information for any veteran would be included. I understand that Plaintiffs request that these "samples" include 5,500 initial disability claims from each "era," for a total of 16,500 initial disability claims.

5. The relevant "variables" that Plaintiffs request include the following:

a. The date of the initial disability claim.

b. The type of disability compensation claim.

c. The race, ethnicity, and gender of the claimant.

d. Whether the claim was granted or denied.

e. If the claim was granted, the disability rating assigned by the VA.

f. The VA regional office to which the claim was initially submitted.

g. The claimant's dates of service, as of the filing of the initial disability claim.

h. The claimant's branch(es) of service, as of the filing of the initial disability claim.

i. The claimant's last rank, as of the filing of the initial disability claim.

j. The claimant's military occupational specialty (MOS), as of the filing of the initial disability claim.

k. The claimant's character of discharge, as of the filing of the initial disability claim.

**Production of "Variables" for 2006-Present through Database Report**

6. I understand that, from 2006 forward, the information Plaintiffs request is stored in individual data fields within multiple linked data tables within the VBA corporate database. Because the information exists in this format, VBA has the ability to create a code or "query" to run across these linked "data" tables and generate a database report containing the requested claim and outcome information. Once that "data" is obtained, VBA has the ability to add "data" from several additional databases within the VBA Enterprise Data Warehouse for the veteran demographic and service "data."

7. I understand that the United States agreed to produce a randomized and anonymized sample of 5,500 initial disability benefits claims, for the period of 2006 to the present, via a database report (formatted as an Excel file). The VA has been coordinating to produce a comprehensive list from which a randomized sample could be generated.

8. However, for the pre-2006 time period, veterans' disability benefits information, including these "variables," is not populated into a database or databases upon which a code can

be run in order to create a database report or output. In other words, the information sought is not collectively maintained as "data" within a computer system.

9. For the 2001-2005 time period, veterans' disability benefits information, including these claim and outcome "variables," is not populated into a single database or into multiple linked databases upon which code can be run in order to create a database report or output. For that time period, some of the "data" exists in three separate databases, but they are not linked to each other and do not contain equivalent "data" to allow a query or code to combine the "data" and create the requested output.

10. For the pre-2001 time period, VBA essentially has no claims "data" to provide any output.

11. As a result, for the pre-2006 time period, a person would need to review the documents contained within a veteran's disability benefits file to attempt to find each of the requested variables.

12. These benefits files may be maintained in various forms, to include (a) as physical, paper records stored by NARA, and (2) as scanned digital records within the VA's Veterans Benefits Management System ("VBMS").

**Documents Contained in Veterans' Disability Benefits Files**

13. A veteran's disability benefits claims file contains information relative to disability claims to include medical records, service treatment records and "buddy statements" as well as financial information, information about a veteran's current, prior or estranged dependents, legal information such as marriage and birth documentation, warrants, and more, which may or may not be submitted through use of VA form(s); decision(s) on claimed benefits, including rating decision(s); requests for reconsideration of benefits claim determination(s); appeals of benefits

claim determination(s); decision(s) describing adjustment of benefits determination(s) or rating determination(s); and any materials a veteran chooses to submit with their benefits claim.

14. A veteran's benefits file may also contain information about other veterans; for instance, if it contains information relating to the unit in which the veteran served, it may name other veterans from that unit. Additionally, service treatment records and VA compensation and pension disability exams often contain personally identifiable information related to physicians and other clinical professionals.

15. A veteran's file may contain personal information of other individuals such as current and/or prior spouses, grown children, dependent parents, etc.

16. The VA has not provided the same forms for applying for benefits since 1945. The current standard forms that are used for benefits applications have existed, with some changes over time, since approximately March 2015. Since that time, VA requires compensation, pension, survivors, and related claims to be submitted on the required standard forms.

17. There is no single form that is specifically used or has been used to capture the 11 "variables" requested by Plaintiffs. There is also no "summary" information sheet that is specifically used or has been used to capture the 11 "variables" into one document within benefits files.

18. The amount of information contained in a benefits file varies based on the individual veteran. Many veteran benefits files contain thousands of pages of material. Others, especially older files, may have less.

19. Until a specific veteran's benefits file is reviewed, there is no way to know for sure how large the file is or all the information contained in the file. Thus, until a specific veteran's benefits file is retrieved and reviewed, there is no way to know for sure whether the file would

contain information sufficient to identify all 11 "variables" sought by Plaintiffs, or the locations in the file where that information may be found.

**Manner in which Disability Benefits Files Are Physically Stored By NARA**

20. Veterans' benefits files that have never been digitized and instead exist solely in physical form are located at various storage locations managed by NARA. There are approximately six million claims files for living veterans that have not been scanned.

21. This includes most benefits files for veterans whose claims were submitted before 2012, when digitization became a standard process for benefits files.

22. These paper files are organized and stored in boxes by accession number, which is applied by NARA. One box may contain a partial claim file or multiple claims files.

23. Some files are assigned what is referred to as a "C number." C-numbers were assigned sequentially; thus, the smaller the C number, the older a benefits file is.

24. As mentioned above, a veteran's paper benefits file could potentially contain thousands of pages, but there is no way to know until the file is pulled and reviewed.

25. Within the file itself, there is no set system of organization or categorization for the various documents contained in the benefits file. In other words, the documents within the file could be found in any order. Nor is there one uniform set of benefits-related forms that would appear in every veteran's benefits file since 1945.

**Process for Accessing, Reviewing, and Redacting Paper Disability Benefits Files for the Requested Production of "Variables"**

26. The paper files stored by NARA are not organized by veteran name or date of benefits claim. However, it is possible for NARA to locate and "pull" a file by NARA accession number. It is my understanding that only NARA may pull the boxes/files.

27. If a person wanted to "randomly" pull thousands of veterans' benefits files from millions of paper files in NARA storage, a random number generator could in theory be used to create a list of numbers to correspond to C-numbers. Because these are paper files, the VA is unable to know which of the six million claims files are for initial claims. There is also a chance a file(s) could be missing

28. However, there is no guarantee as to what time period(s) the "random" selection would cover. Although a person could try to approximate the time period for a benefits claim based on the fact that C-numbers are sequential, that does not necessarily correspond to a certain year or decade. The VA and NARA do not organize or divide benefits files by the "eras" requested by Plaintiffs.

29. NARA employees would then have to use the list of randomized C-numbers to physically locate and extract the files from storage. The VA's digitization resources focus on materials related to active/pending claims and inactive official military personnel files. Scanning the random files for this case is unfunded and would require the VA to deprioritize or delay the scanning of records for active claims.

30. Each veterans' benefits file would then need to be scanned in full. This is because any time a veterans' benefits file is pulled from paper storage, it is automatically scanned so as to ensure that the file is now digitized and can be added to VBMS.

31. If a person were to look for the variables requested by Plaintiffs, that person would need to look page by page until they had reviewed enough information sufficient to identify all of the variables. In many cases, the entire file may need to be reviewed, especially if all of the variables cannot be located. It is possible that some files will not have all of the variables. A veteran

may also have multiple benefits claims in a single file, and, unless it is notated, there may be no indication in the paper file as to whether any of the claims are the initial disability claim.

32. Then, if redaction is required before the documents may be produced, a reviewer would need to redact protected information from the file except for the variable(s) themselves. Even if only a subset of documents sufficient to reflect the variable(s) was required for production, that reviewer would need to redact protected information within the document(s) containing the variable(s), except for the variable(s) themselves. Reviewing each file for redaction would be time consuming and would require reviewers who are familiar with these issues.

33. Even reviewers with the requisite background would most likely need to make judgment calls, especially for older files. They may not even be able to determine if the claim file is the initial disability claim. Further, they may not be able to determine gender or race.

34. Finally, because C-numbers are specific to individual veterans, knowledge of a C-number could be used to identify a given veteran. Production of C-numbers would therefore be inconsistent with the goal of providing an "anonymized" sample. Thus, in order to provide thousands of randomized and deidentified sets of veteran variables from paper files, an anonymized number would have to be assigned to each file that is pulled before the redacted materials could be produced.

35. It is extremely difficult to estimate the amount of time this process would take due to the high degree of variability among claim files. It would, however, pose a major diversion of resources away from the ongoing process of processing and scanning files that are connected to active benefits claims in efforts to reduce backlog.

**Manner in which Disability Benefits Files Are Maintained within VBMS**

36. Since approximately 2012, veterans' benefits files have been stored in VBMS, a digital records system maintained internally by the VA.

37. VBMS is, essentially, a platform by which a person can search for, access, and review a specific veteran's benefits file.

38. When accessing a veteran's benefits file on VBMS, one sees a list of scanned documents, each in PDF format, that are contained within that file. Many veterans have hundreds of documents within their files. To review a specific document within the file, one would need to locate the document in the "document type" list and click on that specific document to open it.

39. Although all documents are PDFs, many documents are handwritten or rendered from photocopies, microfiche, or partially burned source documents of poor quality.

40. The documents are saved using indexing rules. The rules do not include naming a document as an "initial claim," as the scanner may not know which claim was the initial claim from the paper file. This means that all disability benefits claims a veteran has filed would have the same "document type," and a person would have to open the document to see if it is the initial claim.

41. During the COVID-19 pandemic, the VA made an effort to digitize paper benefits files from the pre-2012 time period. This was done to maintain continuity of operations within the VA during the national emergency when other federal agencies, including the National Archives, reduced operations. Over the past five years, VA scanned and saved millions of veterans' benefits files into VBMS. However, because these records were proactively removed from storage facilities to maintain continuity of operations within the VA, the vast majority did not have active benefit claims associated and were not reviewed by VA employees. As previously described, it is not possible to associate these files with specific time periods unless the documents are reviewed in VBMS.

**Process for Accessing, Reviewing, and Redacting VBMS Disability Benefits Files for the Requested Production of "Variables"**

42. VBMS is not designed to "open" or "pull" multiple veterans' disability benefits files at once. It is set up in a way to search for and review one benefits file at a time. When searching for a specific benefits file within VBMS, a person can search by a veteran's name, Social Security number, C-file number, or date of birth.

43. Once random numbers are assigned and selected for VBMS files, each file would then need to be manually reviewed vet-by-vet, to determine if the variables exist within the VBMS file. There is not a way to automate the search for locations of the variables within the VBMS file. In many cases, the entire file may need to be reviewed, especially if all of the variables cannot be located. It is possible that some files will not have all of the variables.

44. Although the files on VBMS are already digitized, the entire file or at least the documents containing the "variables" would need to be downloaded for rendering for production in this matter. Because of the size of many of the documents, this could involve hundreds or thousands of pages of documents even if the entire file is not extracted. If a person wanted to download only specific documents, they would have to download each document one at a time.

45. Then, if redaction is required before the documents may be produced, a reviewer would need to redact all information from the file or the subset of documents except for the variable(s) themselves.

46. Finally, in order to provide thousands of randomized and deidentified sets of veteran variables from paper files, an anonymized number would have to be assigned to each file that is pulled before the redacted materials could be produced. The C-number cannot be used, because C-numbers are specific to individual veterans and could be used to identify a given veteran.

47. Undertaking a project such as this would significantly delay or divert resources that are currently focused on processing and serving active claims.

Executed this 14 day of April, 2025.

DEREK HERBERT Digitally signed by DEREK HERBERT Date: 2025.04.14 12:29:24 -04'00'

Derek L. Herbert