**Exhibits**

to

Defendant's Memorandum in Support of Motion for Protective Order

**Exhibit 1**

to

Defendant's Memorandum in Support of Motion for Protective Order

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK JR. et al.,<br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>: | No. 3:22-cv-01503 (SRU)<br><br><br><br><br>June 27, 2024 |

**DEFENDANT USA'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant, The United States of America, ("Defendant") hereby responds to "Plaintiff's First Request for Production to Defendant United States of America" dated March 13, 2023 ("Requests for Production").

**DEFENDANT'S PRELIMINARY STATEMENT**

Defendant responds to Plaintiffs' Requests for Production as it interprets and understands them. In the event Plaintiffs subsequently assert an interpretation of any of the Requests for Production that differs from Defendant's interpretation or understanding, then Defendant reserves the right to supplement or amend its objections and/or answers.

Defendant reserves the right to object as to the competency, relevancy, materiality and/or admissibility of the information disclosed pursuant to its answers to the Requests for Production.

These responses are made solely for the purpose of this pending action; and are based solely on information presently known to Defendant. Subsequent discovery, independent investigation, or legal research and analysis may result in additions to, changes in and/or variations from the responses set forth herein.

Defendant will produce electronically stored information ("ESI") subject to principles of proportionality and a mutually agreeable review protocol consistent with the requirements of

Rule 26(b)(1) and (2)(B) and will supplement its responses as appropriate. Additional production will be made on a rolling basis.

Defendant objects to Plaintiffs' Requests for Production to the extent they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Connecticut.

Defendant objects to Plaintiffs' Requests for Production to the extent they seek information protected by the attorney-client privilege, the attorney work product doctrine, deliberative process privilege, or any other privilege or protection that may be applicable. Any undertaking to answer and respond to these requests should be understood to exclude privileged and confidential information.

Defendant objects to Plaintiffs' Requests for Production to the extent they seek information that would invade the privacy interests of any of its employees, veterans, or other non-parties to this litigation. Any undertaking to answer and respond to these requests should be understood to exclude the disclosure of any information that would violate the Health Insurance Portability and Accountability Act ("HIPAA"), the Privacy Act of 1974, or other privacy laws.

**OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS FOR PRODUCTION**

1. All formal and informal complaints, documents, records, or other communications received by the VA from any source, including veterans, veterans organizations, civil rights groups, elected officials and their staff, or otherwise, regarding racial disparities in and/or related to VA housing, education, or disability compensation benefits.

**RESPONSE:**

Defendant objects to Request No. 1 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production

of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "racial disparities" in VA housing, education, or disability compensation benefits, over a time period of approximately 60 years. "Racial disparities" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 1 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 1 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

2. All documents or records related to any internal investigation, audit, or review of racial disparities in VA housing, education, or disability compensation benefits.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to this Request No. 2 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 2 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands

production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "racial disparities" in VA housing, education, or disability compensation benefits, over a time period of approximately 60 years. The terms "racial disparities," "internal investigation," "audit," and "review," are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 2 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 2 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

3. All communications, records, or documents regarding racial disparities in the administration of VA housing, education, or disability compensation benefits.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to this Request No. 3 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 3 as overbroad, unduly burdensome,

vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "racial disparities" in VA housing, education, or disability compensation benefits, over a time period of approximately 60 years. The terms "racial disparities" and "administration" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 3 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 3 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

4. All documents or records identified in, referenced, or relied upon by Defendant in its responses to Plaintiff's First Set of Interrogatories to Defendant United States of America, regardless of the document's date.

**RESPONSE:** Defendant objects to Request No. 4 inasmuch as it requests production of

materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

5. All communications, documents, or records that analyze, describe, discuss, mention, or relate to the racial composition of applicants for housing, education, and/or disability benefits received or processed by VA.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 5 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 5 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way, or "mention[s]" the "racial composition" of applicants for VA housing, education, or disability benefits, over a time period of approximately 60 years. The term "racial composition" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources, including, but not limited to individual VA benefits applications of non-parties to this litigation; Request No. 5 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 5 inasmuch as it requests production of materials protected by the attorney-client,

attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

6. All records or documents regarding or related to required training and/or supervision in the following areas by individuals responsible for processing and/or adjudicating claims for VA housing, education or disability compensation benefits:

a. Discrimination, unconscious bias, cultural competence, and/or diversity;

b. Whether or how to weigh, consider, or interpret the following characteristics of applicants for housing, education, and/or disability benefits: race, ethnicity, amount of income, source of income, employment status, education level, and/or rank on date of discharge.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 6 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 6 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of documents over a time period of approximately 60 years. The terms “unconscious bias,” “cultural competence,” “diversity,” and “interpret,” are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 6 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties’ relative access to information and resources, the burden and expense of the proposed discovery – which would be

tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 6 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

7. All records or documents provided during or used in universal initial trainings for Veteran Service Representatives or VA employees in equivalent predecessor positions, including but not limited to Powerpoint presentations, booklets, and online training modules, regarding or related to the following areas:

a. Housing, education, and/or disability compensation benefits entitlement determinations;

b. Character of discharge determinations;

c. Disability rating determinations.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 6, Defendant incorporates its response to Request No. 6 as its response to Request No. 7 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 7 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of documents provided during trainings that relate in any way to housing, education, or disability entitlement determinations, as well as character of discharge and disability ratings

determinations over a time period of approximately 60 years. The terms "universal initial trainings," and "equivalent predecessor positions" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 7 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 7 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

8. All documents or records that analyze, describe, discuss, mention, or relate to the relationship between claims outcomes and the following racially correlated characteristics of applicants for housing, education, and/or disability benefits: amount of income, source of income, employment status, education level, character of discharge, rank on date of discharge, and/or VA facilities through which the application was processed.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 8 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 8 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to benefits claims determinations of applicants for VA housing, education, or disability benefits and their amount of income, source of income, employment status, education level, character of discharge, rank on date of discharge, or where the claims were processed, over a time period of approximately 60 years. The phrase "relationship between claims outcomes and . . . racially correlated characteristics" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources, including, but not limited to individual VA benefits applications of non-parties to this litigation; Request No. 8 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 8 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

9. All documents or records that describe, discuss, mention, or relate to data collection and retention practices in VA's housing, education, and disability compensation benefits programs.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its

response to Request No. 1 as its response to Request No. 9 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 9 as overbroad, unduly burdensome, and seeking information beyond the scope of Rule 26.

As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to VA's data collection and retention practices, over a time period of approximately 60 years. Defendant also objects to Request No. 8 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

10. Unredacted copies of all documents and records identified as responsive to FOIA request # 21-08617-F and withheld under any purported FOIA exemption. The interim response cover letters sent by VA in response to this FOIA request are attached as Exhibit A.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 10 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 10 to the extent it seeks information that was withheld from FOIA production under exemptions relating to protection of the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, or any other privilege or protection that may be applicable. Defendant further objects to Request No. 10

to the extent information was withheld from FOIA production under exemptions relating to personal identifiable information or personal health information. Defendant objects to Request No. 10 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

As drafted, this Request demands documents sought in other Requests; thus, to the extent such information is responsive and not otherwise protected from production, requiring Defendant to separately undergo a process of review of FOIA redactions to determine whether the redactions should be removed would be both duplicative and unduly burdensome. Unredacted documents responsive to Plaintiffs' FOIA requests will very likely be responsive to the parties' ESI search parameters and will be produced in native format to the extent not subject to applicable privileges. To demand a manual review and "unredaction" of the FOIA-produced, often non-native documents is unnecessarily burdensome, expensive, and time consuming; to do so would monopolize the agency's already taxed resources and would cause further delay in production in this case.

11. Unredacted copies of all documents and records that relate to the document titled "PTSD Grant Rate Analysis" dated July 19, 2017 that was sent by Mark Seastrom to Mike Frueh on August 27, 2017 as an attachment to an email with the subject "RE Discussion on PTSD and Racial Ethnic Breakdown," including prior drafts of and correspondence regarding this document. A copy of this document and the email to which it was attached are attached as Exhibit B.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 10, Defendant incorporates its response to Request No. 10 as its response to Request No. 11 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 11 to the extent it seeks information that

was withheld from FOIA production under exemptions relating to protection of the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, or any other privilege or protection that may be applicable. Defendant further objects to Request No. 11 to the extent information was withheld from FOIA production under exemptions relating to personal identifiable information or personal health information. Defendant objects to Request No. 11 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

12. Unredacted copies of all documents and records that relate to the meeting attended by Mike Frueh, Mark Seastrom, and other VA officials or staff at 1800 G St., Suite 520, Washington, DC 20006 at 9:30 am on August 28, 2017, at which racial disparities in PTSD cases were discussed.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 10, Defendant incorporates its response to Request No. 10 as its response to Request No. 12 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 12 to the extent it seeks information that was withheld from FOIA production under exemptions relating to protection of the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, or any other privilege or protection that may be applicable. Defendant further objects to Request No. 12 to the extent information was withheld from FOIA production under exemptions relating to personal identifiable information or personal health information. Defendant objects to Request No. 12 inasmuch as it requests production of materials protected by the attorney-client, attorney

work product, and/or deliberative process privileges.

Defendant objects to Request No. 12 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the author or form, that relates in any way to a meeting attended by VA employees seven years ago. As drafted, the Request for "all documents and records that relate to the meeting" demands production of irrelevant travel reimbursement receipts, calendar invites, agendas, notes, etc. "Racial disparities" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, Request No. 12 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable review protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

DEFENDANT,
THE UNITED STATES OF AMERICA

By Its Attorneys:

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

VANESSA ROBERTS AVERY
United States Attorney

JAMES G. TOUHEY, JR.
Director, Torts Branch

CHRISTOPHER R. BENSON
Assistant Director, Torts Branch

/s/ Jillian Rose Orticelli
Michelle L. McConaghy (ct27157)
Jillian Rose Orticelli (ct28591)
Assistant United States Attorneys
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: (860) 947-1101
Fax: (860) 760-7979
Email: Michelle.McConaghy@usdoj.gov
Jillian.Orticelli@usdoj.gov

Emily M. Kelley (phv207548)
Irina M. Majumdar (phv207971)
Trial Attorneys
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4400
Email: Emily.m.kelley@usdoj.gov
Irina.m.majumdar@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify pursuant to Federal R. Civ. P. 5(b) that a copy of the foregoing was served upon all counsel of record this date, via e-mail.

/s/ Jillian Rose Orticelli
Jillian Rose Orticelli (ct28591)
Assistant United States Attorney

**Exhibit 2**

to

Defendant's Memorandum in Support of Motion for Protective Order

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK JR. et al.,<br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>: | No. 3:22-cv-01503 (SRU)<br><br><br><br><br>September 10, 2024 |

**DEFENDANT USA'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant, The United States of America, ("Defendant") hereby responds to "Plaintiff's Second Request for Production to Defendant United States of America" dated June 12, 2024 ("Requests for Production").

**DEFENDANT'S PRELIMINARY STATEMENT**

Defendant responds to Plaintiffs' Requests for Production as it interprets and understands them. In the event Plaintiffs subsequently assert an interpretation of any of the Requests for Production that differs from Defendant's interpretation or understanding, then Defendant reserves the right to supplement or amend its objections and/or answers.

Defendant reserves the right to object as to the competency, relevancy, materiality and/or admissibility of the information disclosed pursuant to its answers to the Requests for Production.

These responses are made solely for the purpose of this pending action; and are based solely on information presently known to Defendant. Subsequent discovery, independent investigation, or legal research and analysis may result in additions to, changes in and/or variations from the responses set forth herein.

Defendant will produce electronically stored information ("ESI") subject to principles of proportionality and a mutually agreeable review protocol consistent with the requirements of Rule 26(b)(1) and (2)(B) and will supplement its responses as appropriate. Additional production will

be made on a rolling basis.

Defendant objects to Plaintiffs' Requests for Production to the extent they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Connecticut.

Defendant objects to Plaintiffs' Requests for Production to the extent they seek information protected by the attorney-client privilege, the attorney work product doctrine, deliberative process privilege, or any other privilege or protection that may be applicable. Any undertaking to answer and respond to these requests should be understood to exclude privileged and confidential information.

Defendant objects to Plaintiffs' Requests for Production to the extent they seek information that would invade the privacy interests of any of its employees, veterans, or other non-parties to this litigation. Any undertaking to answer and respond to these requests should be understood to exclude the disclosure of any information that would violate the Health Insurance Portability and Accountability Act ("HIPAA"), the Privacy Act of 1974, or other privacy laws.

**OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS FOR PRODUCTION**

1. All documents or records, including formal and informal complaints or other communications, received by the VA from any source (including veterans, veterans organizations, civil rights groups, elected officials and their staff, or otherwise), regarding actual or suspected racial disparities in VA housing, education, or disability compensation benefits for the time period from January 1, 1945 through December 31, 1964.

**RESPONSE:**

Defendant objects to Request No. 1 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or

alleged "racial disparities" in VA housing, education, or disability compensation benefits, for a 20-year time period beginning approximately 80 years ago. "Racial disparities" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 1 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 1 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

2. All documents or records related to any internal investigations, audits, or reviews of racial disparities in VA housing, education, or disability compensation benefits for the time period from January 1, 1945 through December 31, 1964.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to this Request No. 2 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 2 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands

production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "racial disparities" in VA housing, education, or disability compensation benefits, for a 20-year time period beginning approximately 80 years ago. The terms "racial disparities," "internal investigation," "audit," and "review," are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 2 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 2 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

3. All documents or records regarding racial disparities in the administration of VA housing, education, or disability compensation benefits for the time period from January 1, 1945 through December 31, 1964.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to this Request No. 3 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 3 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "racial disparities" in VA housing, education, or disability compensation benefits, for a 20-year time period beginning approximately 80 years ago. The terms "racial disparities" and "administration" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 3 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 3 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

4. All records identified in, referenced, or relied upon by Defendant in its responses to Plaintiffs' First and Second Set of Interrogatories to Defendant United States of America, regardless of the document's date.

**RESPONSE:** Defendant objects to Request No. 4 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

5. All documents, or records that analyze, describe, discuss, mention, or relate to the racial composition of applicants for housing, education, and/or disability benefits received or processed by VA for the time period from January 1, 1945 through December 31, 1964.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 5 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 5 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way, or "mention[s]" the "racial composition" of applicants for VA housing, education, or disability benefits, for a 20-year time period beginning approximately 80 years ago. The term "racial composition" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources, including, but not limited to individual VA benefits applications of non-parties to this litigation; Request No. 5 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 5 inasmuch as it requests production of materials protected by the attorney-client, attorney work

product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

6. All documents or records regarding or related to required training and/or supervision of individuals responsible for processing and/or adjudicating claims for VA housing, education or disability compensation benefits for the time period from January 1, 1945 through December 31, 1964, in the following areas:

a. Discrimination, unconscious bias, implicit bias, cultural competence, and/or diversity;

b. Whether or how to weigh, consider, or interpret the following characteristics of applicants for housing, education, and/or disability benefits: race, ethnicity, amount of income, source of income, employment status, education level, and/or rank on date of discharge.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 6 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 6 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of documents for a 20-year time period beginning approximately 80 years ago. The terms "unconscious bias," "implicit bias," "cultural competence," "diversity," and "interpret," are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 6 is not proportional to the needs of the case, considering the importance of the issues at stake

in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 6 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

7. All documents or records prepared for, provided during, or used in national or agency-wide initial trainings for VA adjudicators or VA employees in equivalent predecessor positions, regarding or related to the following areas for the time period from January 1, 1945 through December 31, 1964:

a. Housing, education, and/or disability compensation benefits entitlement determinations;

b. Character of discharge determinations;

c. Disability rating determinations.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 6, Defendant incorporates its response to Request No. 6 as its response to Request No. 7 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 7 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands

production of documents provided during trainings that relate in any way to housing, education, or disability entitlement determinations, as well as character of discharge and disability ratings determinations, for a 20-year time period beginning approximately 80 years ago. The terms "universal initial trainings," and "equivalent predecessor positions" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 7 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 7 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

8. All documents or records that analyze, describe, discuss, mention, or relate to the relationship between claims outcomes and the following: amount of income, source of income, employment status, education level, character of discharge, rank on date of discharge, and/or VA facilities through which the application was processed for the time period from January 1, 1945 through December 31, 1964.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 8 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 8 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to benefits claims determinations of applicants for VA housing, education, or disability benefits and their amount of income, source of income, employment status, education level, character of discharge, rank on date of discharge, or where the claims were processed, for a 20-year time period beginning approximately 80 years ago. The phrase "relationship between claims outcomes and . . . racially correlated characteristics" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources, including, but not limited to individual VA benefits applications of non-parties to this litigation; Request No. 8 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 8 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

9. All documents or records that describe, discuss, mention, or relate to data collection

and retention policies or practices in VA's housing, education, and disability compensation benefits programs for the time period from January 1, 1945 through December 31, 1964.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 9 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 9 as overbroad, unduly burdensome, and seeking information beyond the scope of Rule 26.

As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to VA's data collection and retention practices, for a 20-year time period beginning approximately 80 years ago. Defendant also objects to Request No. 9 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

10. All documents or records that describe or define the role and responsibilities of the Center for Minority Veterans ("Center"), detail its interaction and integration with other departments or units within the Department of Veterans Affairs, discuss or refer to its data collection practices, and/or include complete lists of all individuals who have held the position of Director at the Center for the time period from January 1, 1994 through the present.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response

to Request No. 1 as its response to Request No. 10 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 10 as overbroad, unduly burdensome, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to the Center for Minority Veteran's role, responsibilities, and data collection and retention practices for a time period of over 30 years. "Interaction" and "integration" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 10 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 10 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

11. All documents or records, including but not limited to emails, memos, letters, notes, text messages, and electronic documents, created, sent, received, copied, or maintained by the following persons, or in which the following persons are a participant, for the following periods,

concerning (i) racial disparities, (ii) research regarding potential racial disparities, (iii) data collection and retention policies or practices, and (iv) the 2017-18 VA analysis regarding racial disparities in PTSD claims, in VA's housing, education, and disability compensation benefits programs:

a. Mark Seastrom from June 1, 2012 to the present;

b. Margarita Devlin from May 1, 2018 to January 1, 2021;

c. Beth Murphy from July 1, 2016 to the present;

d. Willie C. Clark Sr. from December 1, 2016 to the present;

e. Paul Lawrence from April 1, 2018 to January 1, 2021;

f. Dennis May from October 1, 2017 to the present;

g. Tim Goliver from April 1, 2012 to the present;

h. Elaine Saiz from April 1, 2022 to the present.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 11 as if set forth herein in extenso.

In particular, Defendant objects to Request No. 11 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. As drafted, the Request seeks untoward volumes of data, from a myriad of sources, including but not limited to individual personal identifiable information or personal health information of non-parties to this litigation. Defendant objects to Request No. 11 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. "Racial disparities" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, Request No. 11 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative

access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable review protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

12. All documents or records that describe, discuss, mention, or relate to the procedures, protocols, training materials, guidelines, audits, assessments, trends, patterns, and statistical data concerning the processing of claims under the Federal Tort Claims Act by the Department of Veterans Affairs from January 1, 1945 through the present.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 12 as if set forth herein *in extenso*.

Defendant objects to Request No. 12 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to procedures, protocols, guidelines, assessments, and data concerning any claims made to the VA under the Federal Tort Claims Act (the "FTCA"), regardless of the nature of those claims or their outcomes, for a period of over 80 years. "Assessments," "audits," "trends," and "processing of claims" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 12 is neither relevant to any party's claim or defense nor proportional to the needs of the case,

considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 12 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable review protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

13. All documents or records sent from or to the Government Accountability Office (GAO) or any GAO investigators by VA entities, including but not limited to the Office of Performance, Analysis and Integrity (PA&I), the Office of Congressional and Legislative Affairs (OCLA), the Office of Public and Intergovernmental Affairs (OPIA), and all components of the Office of the Secretary, concerning (i) racial disparities, (ii) research regarding potential racial disparities, and (iii) racial data collection.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 13 as if set forth herein in extenso.

In particular, Defendant objects to Request No. 13 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. As drafted, the Request seeks untoward volumes of data, from a myriad of sources, over an unlimited period of time. Defendant objects to Request No. 13 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. "Racial disparities" and "racial data" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, Request No. 13 is not proportional to the needs of the case, considering the

importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable review protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

14. All documents or records that describe, discuss, mention, or relate to an organizational chart outlining the geographical allocation of claims within the Veterans Benefits Administration's National Work Queue.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 14 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 14 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, form, or date, that relates in any way to an "organizational chart" of "geographical allocation of claims" within the National Work Queue. "Outlining" and "geographical allocation of claims" are not defined and susceptible to multiple conflicting interpretations.

As drafted, Request No. 14 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the

importance of the discovery in resolving the issues. Defendant also objects to Request No. 14 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

15. All documents or records that describe, discuss, mention, or relate to the reasons that the Advisory Committee on Minority Veterans (ACMV) requested the VA to study racial data in the administration of veterans benefits, including any communications between ACMV and VA and those commutations internal to ACMV and VA about this matter from January 1, 1994 to the present.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 15 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 15 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that describes, discusses, mentions, or relates in any way to any ACMV "request[] [to] the VA to study racial data in the administration of veterans benefits" for a time period of over 30 years. "Study" and "racial data" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 15 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery

in resolving the issues. Defendant also objects to Request No. 15 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. Defendant further objects to the Request to the extent it seeks documents outside Defendant's possession, custody, or control.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

16. All agendas for and minutes of meetings of the ACMV from January 1, 1994 to the present.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 16 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 16 as overbroad, unduly burdensome, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any ACMV "agendas" or "minutes," no matter the subject matters discussed therein, for a time period of over 30 years. Defendant objects to Request No. 16 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. Defendant further objects to the Request to the extent it seeks documents outside Defendant's possession, custody, or control.

As drafted, Request No. 16 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative

access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues.

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

17. All documents or records, including but not limited to directives or memos, issued in response to concerns about racial disparities within the VA, specifically documents or communications that describe, discuss, mention, or relate to any restrictions, such as prohibiting discussion of the results of studies or surveys indicating racial disparities, from January 1, 1945 to the present.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 17 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 17 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "concerns" regarding "racial disparities within the VA" for a period of over 80 years. "Concerns," "racial disparities," "restrictions," "prohibiting discussion," and "within the VA" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 17 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 17

inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

18. All communications from ACMV to VA officials or components that describe, discuss, mention, or relate to requests to analyze disability compensation, housing, and education benefits applicants, outcomes, and awards by race from January 1, 1994 to the present.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 15, Defendant incorporates its response to Request No. 15 as its response to Request No. 18 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 18 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that describes, discusses, mentions, or relates in any way to any ACMV “requests” to “analyze” various types of benefits applicants, benefits outcomes, and benefits awards by race for a time period of over 30 years.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 18 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties’ relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 18 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. Defendant further objects to the Request to the extent it seeks documents outside Defendant’s possession, custody, or control.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

19. All documents or records that describe, discuss, mention, or relate to ACMV requests for data analysis and data collection by race from January 1, 1994 to the present.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 18, Defendant incorporates its response to Request No. 18 as its response to Request No. 19 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 19 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that describes, discusses, mentions, or relates in any way to any ACMV "requests" for data analysis or collection by race for a time period of over 30 years.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 19 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 19 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. Defendant further objects to the Request to the extent it seeks documents outside Defendant's possession, custody, or control.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

20. Documents or records sufficient to show and explain VA's "capability through data matching to identify Veterans by race and ethnicity," as stated in the ACMV 2018 Annual Report at 10. A copy is attached.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 20 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 20 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. "Capability through data matching" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 20 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 20 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the

requirements of Rule 26(b)(1) and (2)(B).

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

21. The "VBA White Paper" that "was presented to the senior leaders by the Acting VBA Under Secretary, Tom Murphy" as stated in the ACMV 2018 Annual Report at 10.

**RESPONSE:** Defendant objects to Request No. 21 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. Defendant further objects to Request 21 in that "VBA White Paper" is vague.

Subject to and without waiving the foregoing objections, the United States will conduct reasonable search and production of materials on a rolling basis and will supplement this response as appropriate.

22. All documents or records that describe, discuss, mention, or relate to the inception, establishment, and implementation of VA's 2024 Agency Equity Action Plan.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 22 as if set forth herein *in extenso*.

In particular, Defendant objects to Request No. 22 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that describes, discusses, mentions, or relates in any way to the "inception, establishment, and implementation" of the Agency Equity Plan.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 22 is not proportional to the needs of the case, considering the importance of the issues at stake

in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 22 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, deliberative process and/or other executive privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

23. All documents or records, including formal and informal complaints or other communications received by the VA from any source, including veterans, veterans organizations, civil rights groups, elected officials and their staff, relating to stress, emotional distress, trauma, and/or anxiety experienced by veterans as a result of applying for benefits, being denied benefits, and appealing denials of benefits.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 23 as if set forth herein *in extenso*.

Defendant objects to Request No. 23 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "stress, emotional distress, trauma, and/or anxiety," no matter the form or basis, experienced by any veteran "as a result of applying for benefits, being denied benefits, and appealing denials of benefits" for an undefined time period. "Stress," "emotional distress," and "trauma" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request

No. 23 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 23 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

24. All documents or records that describe, discuss, mention, or relate to corrective actions taken against employees alleged to have contributed to racial disparities within the VA to include but not limited to any reports, memos, disciplinary records, emails, and meeting notes discussing the identification, investigation, and resolution of incidents or behaviors that contributed to racial disparities, as well as any follow-up actions and evaluations of such corrective measures, from January 1, 1945 to the present.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 1, Defendant incorporates its response to Request No. 1 as its response to Request No. 24 as if set forth herein *in extenso*.

Defendant objects to Request No. 24 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to "corrective actions" against employees who were alleged or perceived to have "contributed to" racial disparities "within the VA" for a period of over 80 years. "Racial disparities," "corrective actions," "corrective measures," and "contributed to" are not defined and are susceptible to multiple

conflicting interpretations.

As drafted, Request No. 24 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 24 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

25. All documents or records, including formal and informal complaints or other communications received by the VA from any source, including veterans, veterans organizations, civil rights groups, elected officials and their staff, relating to the experiences of Black veterans applying for VA housing, education, or disability compensation benefits for the time period from January 1, 1945 through present.

**RESPONSE:** Inasmuch as it is duplicative of Request No. 23, Defendant incorporates its response to Request No. 23 as its response to Request No. 25 as if set forth herein *in extenso*.

Defendant objects to Request No. 25 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "experiences" by any Black veteran in applying for a variety of benefits for a period of over 80 years. "Experiences" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 25 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 25 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

Defendant stands ready to confer with Plaintiffs and produce documents subject to principles of proportionality and a mutually agreeable production protocol consistent with the requirements of Rule 26(b)(1) and (2)(B).

DEFENDANT,
THE UNITED STATES OF AMERICA

By Its Attorneys:

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

VANESSA ROBERTS AVERY
United States Attorney

JAMES G. TOUHEY, JR.
Director, Torts Branch

CHRISTOPHER R. BENSON
Assistant Director, Torts Branch

/s/ Jillian Rose Orticelli
Michelle L. McConaghy (ct27157)
Jillian Rose Orticelli (ct28591)
Assistant United States Attorneys
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: (860) 947-1101

Fax: (860) 760-7979
Email: Michelle.McConaghy@usdoj.gov
Jillian.Orticelli@usdoj.gov

Emily M. Kelley (phv207548)
Irina M. Majumdar (phv207971)
Trial Attorneys
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4400
Email: Emily.m.kelley@usdoj.gov
Irina.m.majumdar@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify pursuant to Federal R. Civ. P. 5(b) that a copy of the foregoing was served upon all counsel of record this date, via e-mail.

/s/ Jillian Rose Orticelli
Jillian Rose Orticelli (ct28591)
Assistant United States Attorney

**Exhibit 3**

to

Defendant's Memorandum in Support of Motion for Protective Order

**From:** Majumdar, Irina M (CIV)
**Sent:** Monday, September 9, 2024 3:32 PM
**To:** Yaman Salahi
**Cc:** Emily Penkowski Perez; Theo Benjamin; jrock@edelson.com; michael.wishnie@ylsclinics.org; natalia.friedlander@ylsclinics.org; vlsc_monk@mailman.yale.edu; Maria Parker; Kelley, Emily M. (CIV); Orticelli, Jillian (USACT); McConaghy, Michelle (USACT)
**Subject:** RE: [EXTERNAL] Re: [Ext] RE: Monk Meet and Confer 8.21.24

Hi Yaman,

Thank you for your response. As you know, since our last call we have submitted supplemental responses to your First Set of Interrogatories. We also sent you our search term list and list of custodians. We have been working with VA regarding the additional questions you posed during the August 20 meet and confer and to respond to your second set of Requests for Production and Interrogatories.

We think it would be helpful to schedule another call to follow up on your email. In particular, we would like to discuss some of your proposed search terms and your response regarding the "Database Sampling/Aggregation" you describe below. We'd like to get a clearer understanding of what information you are looking for and what you are proposing, as we may be getting our wires crossed.

Could you please let us know your availability for a call Tuesday, Wednesday, or Friday next week?

Thanks,

Irina Majumdar
U.S. Department of Justice - Civil Division
175 N Street NE
Washington, D.C. 20530
Ph. (202) 598-5403

---

**From:** Yaman Salahi
**Sent:** Friday, September 6, 2024 2:50 PM
**To:** Majumdar, Irina M (CIV)
**Cc:** Emily Penkowski Perez ; Theo Benjamin ; jrock@edelson.com; michael.wishnie@ylsclinics.org; natalia.friedlander@ylsclinics.org; vlsc_monk@mailman.yale.edu; Maria Parker ; Kelley, Emily M. (CIV) ; Orticelli, Jillian (USACT) ; McConaghy, Michelle (USACT)
**Subject:** [EXTERNAL] Re: [Ext] RE: Monk Meet and Confer 8.21.24

Hi Irina,

Thank you for following up with us. Please see responses to various issues below.

Search Terms: Thank you for sharing the initial set you are using. We request that these terms also be included:

1. Richard Brookshire
2. Jim Clyburn
3. Seth Moulton

4. Raphael Warnock
5. NAACP
6. National Association for the Advancement of Colored People
7. National Urban League
8. NUL
9. Colored
10. Negro
11. African
12. unequal
13. inequity
14. inequities
15. inequitable
16. animus
17. hate
18. hatred
19. prejudice
20. unfair
21. fairness
22. equality
23. equally
24. bigot
25. bigotry
26. Jesse Dedmon
27. Charles diggs
28. Congressional Black Caucus
29. CBC
30. segregation
31. segregated

Custodians: On our last call, we had discussed providing the tenure of your proposed custodians as part of the meet and confer process so that we could ensure adequate coverage over time (our letter may have mistakenly raised that issue in connection with Interrogatory No. 11, but it was actually discussed in connection with ESI custodians). Can you please let us know when you will have that information available? As for who is included, in addition to the individuals you identified, we request that you also collect custodial materials for Jennifer Ross (Asst. Secretary of VA, Office of Congressional and Legislative Affairs), and her predecessors, as well as the persons who have held the role of Special Assistant to the Secretary of VA for Veterans Service Organizations Liaison (currently vacant).

Follow-up on Aug. 20, 2024 Letter: We sent you a letter on August 20 requesting various items of information by August 30 but have not received them yet. Can you please advise when you will get back to us? Specifically, please review the discussion about RFP No. 1 as to database schemas/databases and RFP No. 7.

Database Sampling/Aggregation: We don't quite understand your reference to "creating new documents." The nature of structured data is that it cannot be produced as is, but rather, relevant data is exported and produced in an appropriate and usable format. As noted above, in connection with RFP No. 1, we've asked you to identify repositories of potentially responsive/relevant data as well as available data fields. Once we have that information, we can meet and confer with you about what data we believe should be produced and the most efficient way to pull and produce it. Please let us know when you will be providing us with that information.

Thank you,

Edelson PC
**Yaman Salahi**
150 California St, 18th Floor, San Francisco, CA 94111
d 415.638.9903 · t 415.212.9300 · edelson.com

On Wed, Sep 4, 2024 at 10:18 AM Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov> wrote:

Counsel,

We are following up on our below email. We will proceed as planned and run the list of terms sent along with our earlier email for our initial e-discovery pull of custodial materials. If you have any comments, please let us know by end of day Friday, September 6.

Thanks,

Irina

Irina Majumdar

U.S. Department of Justice - Civil Division

175 N Street NE

Washington, D.C. 20530

Ph. (202) 598-5403

---

**From:** Majumdar, Irina M (CIV)
**Sent:** Wednesday, August 21, 2024 9:44 PM
**To:** Emily Penkowski Perez <epenkowski@edelson.com>; Theo Benjamin <tbenjamin@edelson.com>; jrock@edelson.com; michael.wishnie@ylsclinics.org; natalia.friedlander@ylsclinics.org; vlsc_monk@mailman.yale.edu; Maria Parker <mparker@edelson.com>; Yaman Salahi <ysalahi@edelson.com>
**Cc:** Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>; Orticelli, Jillian (USACT) <JOrticelli@usa.doj.gov>; McConaghy, Michelle (USACT) <mmcconaghy@usa.doj.gov>
**Subject:** Monk Meet and Confer 8.21.24

Counsel,

Thank you for the call yesterday and the letter you sent last night. Attached to this email is our Custodian List and list of initial search terms. As we discussed on the call, we will use these terms to do initial data pulls of electronic data for these custodians. Once we have that universe of data, we anticipate we will need to create more targeted searches to properly limit the review set and will discuss further at that time. We are also working on pulling electronic data from file locations that we believe may have potentially responsive information.

In addition to the document search process, we also discussed RFPs 1, 3, 7, and 8 from your First Set of Requests for Production. Regarding RFP 1, we explained to you that we are including as a custodian the External Civil Right Discrimination Complaints Program Manager. We discussed potential limitations of attempting to locate complaints within benefits files and will continue to discuss regarding the capabilities or limitations of searching the Veteran Benefits Management System. As discussed, we will also look into whether there are other potentially likely sources of information responsive to RFP 1. We do not at this time have further questions regarding RFPs 2 and 8 but reserve our rights and objections regarding the same, including with respect to whether the demographic characteristics listed in RFP 8 may properly be considered "racially correlated."

In discussing RFPs 3 and 8, you described looking for aggregated material on, among other things, race, gender, and whether an individual was granted or denied benefits. As we mentioned on the call, you have already received material relevant to this topic through FOIA. We discussed the process through which that FOIA material was provided and you indicated you would review the Cunningham affidavit, produced in the FOIA litigation, describing that process. We discussed potential difficulties, including that information may not otherwise exist in aggregated form, that not all information may be available for less recent time periods, and that underlying information that would populate any such aggregation may be spread across multiple different databases. We asked multiple times about your proposal regarding "sampling," mentioned in your prior communication, but you did not provide any proposals at this time. Rather, you suggested that we continue to discuss these issues. Although we are willing to continue to discuss the capabilities and limitations of the various databases, we note that we do not have any obligation in litigation to create new documents by "pull[ing] and combin[ing] different types of data relevant to benefits decisions," whether through the creation of a spreadsheet or otherwise.

Regarding RFP 7, we will look into agency decisionmakers for the sub-categories and get back to you.

With respect to the First Set of Interrogatories, we will be providing supplemental responses to Interrogatories 1 and 11. Regarding Interrogatory 1, as discussed, our response includes the individuals we believe to have knowledge relating to the claims or defenses in this litigation. We will provide additional information regarding the nature of the individuals' knowledge. However, an individual's inclusion on the list was not based simply on their job title or description, or on whether they are current or former VA employees, neither of which is in and of itself dispositive of knowledge of the claims and defenses in this litigation. The information you are now requesting, specifically, the "predecessors and successors" of individuals listed in our response is not, in our view, a proper reading of Interrogatory

1. In the future, we may supplement our response with additional individuals as appropriate and as more information becomes available through discovery.

Finally, regarding Interrogatory 11, we will supplement our response with the titles of the named individuals. We did not discuss or agree on the call to also provide their tenure. That information is not called for by the Interrogatory and, further, was not discussed in your email dated August 7, 2024 or any prior communications.

Thanks,

Irina Majumdar

U.S. Department of Justice - Civil Division

175 N Street NE

Washington, D.C. 20530

Ph. (202) 598-5403

**Exhibit 4**

to

Defendant's Memorandum in Support of Motion for Protective Order

**From:** Yaman Salahi <ysalahi@edelson.com>
**Sent:** Friday, September 27, 2024 1:29 PM
**To:** Majumdar, Irina M (CIV)
**Cc:** Theo Benjamin; jrock@edelson.com; Michael Wishnie; Natalia Friedlander; vlsc_monk@mailman.yale.edu; Maria Parker; Emily Penkowski Perez; Raillan Brooks; Kelley, Emily M. (CIV); Orticelli, Jillian (USACT); McConaghy, Michelle (USACT)
**Subject:** [EXTERNAL] Re: [Ext] Monk Meet and Confer 9.20.24

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Hi Irina,

Thank you for your e-mail and for meeting with us last week. Please see our responses to the issues you raised below.

Search Terms: We agree to withdraw the terms "equally," "hate," "unfair," and "fairness" at this time, but reserve our right to revisit this issue in the future should the need arise.

Additional Custodians: Thank you for initiating the process to identify the potential additional custodians that we requested. Please let us know when you have received additional information about the individuals who held these titles and are prepared to meet and confer about the issue.

Complaints and VA Databases: Thank you for explaining your position why information about complaints may not be feasible to locate through a search of structured databases. Based on your representations, we agree that—at least based on the information available to us at this time—a structured database search may not be the best way of locating documents responsive to this RFP. Instead, we propose that Defendant identify the units and administrators of VA that are most likely to have received and responded to communications expressing concerns or raising questions regarding broader racial disparities in VA benefits adjudications since 1945, and search through those units' or administrators' records to produce communications and responses that relate to racial disparities in VA benefits decisions. We recognize that the entities within VA that have handled such communications and responses have changed over time, so our conversations may benefit from organizational charts that show which units or individuals handled such complaints over time. To be clear, we are looking for records from *any* unit that could have taken in a formal or informal complaint or similar communication regarding racial disparities, including but not limited to legislative affairs, VSO liaisons, public affairs and community engagement offices, and specific units designed to handle complaints. This may overlap to some extent with the custodians issue above, but this request is not limited to ESI searches.

Please let us know if you have any questions or would like to discuss further.

Thank you,

Edelson PC

**Yaman Salahi**
150 California St, 18th Floor, San Francisco, CA 94111
d 415.638.9903 · t 415.212.9300 · edelson.com

On Mon, Sep 23, 2024 at 1:56 PM Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov> wrote:

Counsel,

Thank you for the call on Friday.

As we discussed on the call we will include the additional search terms you sent us on September 6 in the initial custodial data pull with the exception of the terms: equally, hate, unfair, and fairness. We believe that these terms are used often in other contexts and would create a much larger data pull than necessary. Further, potentially responsive documents that contain these terms are highly likely to be collected through the other terms already included on the list. Please confirm your agreement with this so that we may begin collecting custodial materials.

Regarding the additional custodians you sent us on September 6, we stated that we were not opposed in principle to including these individuals, but that documents would need to be pulled in tranches and data from the additional custodians would not necessarily be pulled first. We let you know that we have asked VA to identify individuals who previously held the roles of Assistant Secretary of VA, Office of Congressional and Legislative Affairs and Special Assistant to the Secretary of VA for Veterans Services Organizations Liaison. We both agreed that objections regarding these additional custodians would be preserved and that we could discuss this issue further once we have a better understanding of how many predecessors were in those roles.

We also discussed the topic of VA databases. We discussed the fact that numerous databases exist and contain different types of data, as you are aware from the Cunningham affidavit. We asked that, in order for us to have productive discussions and to identify potentially responsive structured data as well as possible methods for production, you provide information regarding the categories of data you are seeking. We further discussed that, at this time, we are unaware of any structured data or search mechanism that would allow us to conduct a reasonable, not unduly burdensome search for "complaints…regarding racial disparities" (RFP 1) contained within individual veterans' benefits files. We proposed that if you wish to view a "sample" benefits file, you request Mr. Monk Jr.'s file. We also asked for further information relating to what materials you are seeking with respect to individuals' benefits files, including veterans who are not parties to the litigation. We are willing to continue to discuss these topics but reserve our objections on these issues.

Finally, we also discussed the "decisionmakers" for trainings. As discussed, we are continuing to work on identification and collection of potentially responsive materials with respect to trainings.

Best,

Irina

Irina Majumdar

U.S. Department of Justice - Civil Division

175 N Street NE

Washington, D.C. 20530

Ph. (202) 598-5403

**Exhibit 5**

to

Defendant's Memorandum in Support of Motion for Protective Order

**From:** Ryan Kellner <ryan.kellner@ylsclinics.org>
**Sent:** Monday, November 18, 2024 6:55 PM
**To:** Kelley, Emily M. (CIV); Majumdar, Irina M (CIV); McConaghy, Michelle (USACT); Orticelli, Jillian (USACT)
**Cc:** Michael Wishnie; Natalia Friedlander; vlsc_monk@mailman.yale.edu; Yaman Salahi; Jimmy Rock; Emily Penkowski; Theo Benjamin; Maria Parker
**Subject:** [EXTERNAL] Re: Monk v. United States: Request for Meet and Confer

Emily,

Following up on our earlier conversations and ahead of our meeting on Wednesday, we wanted to share our sampling proposal for producing data related to disability claims. We believe this represents a reasonable compromise that avoids burden to the Defendant of having to produce all responsive data, while also providing Plaintiffs with sufficient data to be able to fairly present a motion for class certification. Please let us know if you have any questions on the proposal below in advance of the meeting. We look forward to discussing it more on Wednesday.

Sampling proposal

Plaintiffs seek data on veterans' initial applications to VA for disability compensation since 1945. Plaintiffs' basic proposal is that VA use a random number generator to identify a small sample of initial disability claims from each of three time periods, as set forth below. Plaintiffs can provide an example program for accomplishing this random number generation procedure, coded in STATA, R, or SAS. If VA were instead to construct its own program, Plaintiffs request that VA document the process and provide a copy of the statistical program used and the seed for the random number generator to help us replicate the sample.

Sample size

Plaintiffs propose stratifying this sample by splitting initial disability claims into three eras: (1) initial disability claims submitted to VA from 1945 to 1960; (2) from 1961 to 1990; and (3) from 1991 to the present. Plaintiffs propose VA pulls 5500 initial disability claims from each era, using the random number generation procedure above, for a total of 16,500 initial disability claims. We are limiting the sample size accordingly for purposes of preparing a motion for class certification, and solely in an effort to compromise with you given your prior assertions that producing a larger sample may be burdensome. However, we reserve the right to request a larger sample or to modify the stratification parameters if Defendant argues that the sample size is not statistically significant or sufficiently representative, or if a class is certified.

Relevant variables

For each initial disability claim pulled, Plaintiffs propose including the following variables associated with the claim:

1. The date of the initial disability claim.
2. The type of disability compensation claim.
3. The race, ethnicity, and gender of the claimant.
4. Whether the claim was granted or denied.
5. If the claim was granted, the disability rating (0% - 100%) assigned by VA.

6. The VA regional office handling the claim.
7. The claimant's dates of service, as of the filing of the initial disability claim.
8. The claimant's branch(es) of service, as of the filing of the initial disability claim.
9. Whether the claimant was deployed to a combat zone.
10. The claimant's last rank, as of the filing of the initial disability claim.
11. The claimant's military occupational specialty (MOS), as of the filing of the initial disability claim.
12. The claimant's character of discharge, as of the filing of the initial disability claim.

Finally, Plaintiffs propose Defendant provides, for each year from 1945 to 2024, the total number of initial claims processed by the VA, overall and by regional office.

Again, please let us know if you have any questions in advance of the meeting, and we look forward to our conversation.

Ryan Kellner
Law Student Intern | Veterans Legal Services Clinic
ryan.kellner@YLSClinics.org | (862) 252-1859

---

**From:** Vlsc_monk <vlsc_monk-bounces@mailman.yale.edu> on behalf of Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>
**Sent:** Thursday, November 14, 2024 11:21 AM
**To:** Claire Sullivan <claire.sullivan@YLSClinics.org>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; McConaghy, Michelle (USACT) <Michelle.McConaghy@usdoj.gov>; Orticelli, Jillian (USACT) <Jillian.Orticelli@usdoj.gov>
**Cc:** Michael Wishnie <michael.wishnie@ylsclinics.org>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; vlsc_monk@mailman.yale.edu <vlsc_monk@mailman.yale.edu>; Yaman Salahi <ysalahi@edelson.com>; Jimmy Rock <jrock@edelson.com>; Emily Penkowski <epenkowski@edelson.com>; Theo Benjamin <tbenjamin@edelson.com>; Maria Parker <mparker@edelson.com>
**Subject:** Re: [Vlsc_monk] Monk v. United States: Request for Meet and Confer

Hi Claire,

We're available at 2:15 pm on Wednesday 11/20. Please circulate a dial-in number or let us know if you'd like us to send one. Thanks,

Emily

---

**From:** Claire Sullivan <claire.sullivan@YLSClinics.org>
**Sent:** Thursday, November 14, 2024 9:00 AM
**To:** Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>; McConaghy, Michelle (USACT) <mmcconaghy@usa.doj.gov>; Orticelli, Jillian (USACT) <JOrticelli@usa.doj.gov>
**Cc:** Michael Wishnie <michael.wishnie@ylsclinics.org>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; vlsc_monk@mailman.yale.edu; Yaman Salahi <ysalahi@edelson.com>; Jimmy Rock <jrock@edelson.com>; Emily Penkowski <epenkowski@edelson.com>; Theo Benjamin <tbenjamin@edelson.com>; Maria Parker <mparker@edelson.com>
**Subject:** [EXTERNAL] Monk v. United States: Request for Meet and Confer

Dear Counsel,

I hope this email finds you well.

We received your most recent production, as well as your correspondence regarding Plaintiff's second set of interrogatories and requests for production.

We would like to schedule a meet and confer next week to discuss a proposed sampling proposal to expedite the discovery process, as well as to further discuss the second set of interrogatories and requests for production. We will plan to send our proposed sampling proposal to you ahead of the meeting.

Our availability is below. Please let us know if there is a block during those times that would work best for you:

- Wednesday, 11/20
    - 12:00-1:30 ET
    - 2:15-4:00 ET
- Thursday 11/21
    - 2:00 -3:00 ET

Best,
Claire Sullivan

**Claire Sullivan**
Law Student Intern | Jerome N. Frank Legal Services Organization
claire.sullivan@YLSClinics.org | (862) 252-1859
She/her/hers

**Exhibit 6**

to

Defendant's Memorandum in Support of Motion for Protective Order

The Jerome N. Frank Legal Services Organization

YALE LAW SCHOOL

*Via email*

November 22, 2024

Emily M. Kelley
United States Department of Justice
Civil Division
175 N Street NE
Washington, D.C. 20530

Dear Emily,

Thank you again for speaking with us yesterday. We have included below a summary of our call.

I. Plaintiffs' sampling proposal.

We walked through Plaintiffs' sampling proposal for obtaining disability compensation data, which Plaintiffs sent by email on November 18, 2024. You explained that Defendant is not yet in a position to agree to the sampling proposal, but that you would review it with VA and return to Plaintiffs with any issues that arise.

A. Defendant's general questions regarding Plaintiffs' sampling proposal.

We explained that our sampling proposal, and the data it seeks, are responsive to Requests for Production 3, 5, and 8 from the Second Set of production requests. As an additional clarification, the sampling proposal also seeks data responsive to Requests for Production 5 and 8 from the First Set of production requests.

You asked us for our preferred format for the data. We explained that, ideally, the data produced using the sampling proposal would be placed in a spreadsheet which contains the variables proposed by Plaintiffs in the November 18 email. You again noted that Defendant is not yet able to commit to providing Plaintiffs with a spreadsheet containing the sampled data. You noted that you would get back to us with any issues that arise and that you would explain, at that time, whether putting together a spreadsheet is feasible.

You asked whether, in the data produced pursuant to the sampling proposal, we wanted the names and addresses of each individual veteran whose disability claims were pulled. We explained that we are seeking that information, but that we recognize that Defendant may have



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

privacy concerns about producing this personal information. We think a protective order should be sufficient to address any privacy concerns. You noted that you would get back to us with concrete objections about producing veterans' names and addresses.

Our sampling proposal offered to construct a random number generation program for Defendant. The sampling proposal asked that, if Defendant decides to construct its own random number generation procedure without using Plaintiffs' offered example code, Defendant memorialize the procedures it used. During our call, you asked for clarification on what the sampling proposal meant when it asked for memorialization. We explained during the call that if Defendant uses its own program or procedure for sampling, the proposal asks that Defendant provide Plaintiffs with an explanation of its methodology so we can assess how the sample was produced and raise any concerns.

B. Plaintiffs' proposal to trifurcate sampling by era.

Our sampling proposal suggested trifurcating the data into three eras. You explained during the call that, for the earlier eras, Defendant may not be able to run a random number generation procedure. You explained that veterans' initial disability claim files for these earlier eras are often stored solely as paper files, some of which were destroyed as a result of the 1973 fire at the National Personnel Records Center. You further explained that, for those files from earlier eras that are stored solely in physical form, Defendant would need to pull those files and search through them physically. You noted that Defendant does not yet agree to pull these files physically. You then asked what our preferred backup plan would be if pulling files from these earlier eras proves infeasible.

C. Defendant's storage of claimants' files.

To answer your question regarding a potential backup plan for pulling files from earlier eras, we asked several clarifying questions of our own, with the goal of trying to come up with a way to pull a random sample of records that may be stored only in paper format.

First, we asked how VA tracks and stores individual disability claims. One method of pulling a random sample of paper files, for example, could be randomly selecting unique IDs for claimant files and then pulling those files. To that end, we asked whether VA assigns a particular number to each claimant, if VA tracks each claimant using their Social Security Number, or if VA has any other numerical processing system to track claimants. You responded that you are not sure of the answer to this question and explained that VA's procedure for tracking claimants appears to differ over time. In some years, VA tracked claimants using their Social Security



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

Numbers. In other years, VA gave each claimant a number separate from their Social Security Number. We asked if you have a sense of the years over which VA has used each of these numerical systems. You said you did not know, but that you would speak with VA and get back to us on each of these questions. We also asked whether VA tracks the Social Security Number of every disability claimant. You said you would ask VA this question.

You then noted again that Defendant has not yet agreed to pull and review physical files to produce the data Plaintiffs seek. You noted that our sampling proposal seeks 5,500 files from each proposed era. We suggested that Defendant could instead pull the physical files and produce them in their entirety, while redacting irrelevant documents. You explained that Defendant is not yet willing to agree to producing the full files either.

We asked whether you know from what year initial disability claims are digitized (i.e., if only disability claims from 1960 onward have been digitized). You noted that the variables Plaintiffs proposed in the November 18 email are not necessarily included in every digitized system, or in every database, that Defendant maintains. We then noted that it could be the case that Defendant's digitization efforts over time have captured at least some of the proposed variables. You said you would find out which of these variables are available and in what systems.

We asked if you know where and how paper or physical disability files are stored and whether a claimant's initial claims files are stored differently depending on whether the claimant applied for different kinds of benefits. You explained that some files are likely stored at the National Records Office, but that you would need to get back to us with more information on how these paper files are stored.

We asked if you know whether, after VA implemented the National Work Queue, VA altered the location of its stored physical files. You said you would ask VA this question.

We asked whether the paper or physical initial claims files for each veteran contain a summary page describing the file's contents. You said you would ask VA this question.

We asked if individual claimants are demarcated in a particular way if they have made multiple initial claims for different disabilities. That is, we clarified by asking if a veteran who has applied once for disability, then applies years later for another disability, would have multiple files stored in separate places for each application. You explained that, to your understanding, each claimant's digital file (if they have a digital file) typically contains all of the information on each of their applications in one place. But for those claimants with only paper or



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

physical files, it's possible that a claimant could have multiple, separated paper files for separate applications. Please look into this and confirm.

Please get back to us by December 6, 2024 with answers to the outstanding questions above.

D. Plaintiffs' proposed variables.

You then asked about the variables Plaintiffs included in the sampling proposal. You first confirmed that we were focused on claimants' initial disability claims—that is, the first time a claimant has filed for disability.

You asked what the variable labelled "type of disability claim" referred to. You noted that when a claimant receives disability compensation, they are typically assigned a code or category of disability, and asked whether those categories would be responsive for this variable. We said that these categories would be responsive to this variable.

You asked about the variable looking for whether a claimant's disability claim was granted or denied. You asked again whether we were only interested in the very first of a claimant's disability decisions. We said that, at this time, we were only interested in the first decision.

You asked about the variable regarding disability rating assigned to each claimant's compensation. You asked whether we were only interested in the rating assigned to each claimant's initial decision. We said that, at this time, we were only interested in the first decision.

You asked why we chose our proposed variables. We explained that our variables were intended to capture all potentially pertinent information about a claim file for purposes of assessing disparities in the adjudication process You also noted that you may not be able to locate data responsive to each of these variables, and we explained that we attempted to request additional variables potentially related to one another in order to account for possibility that some data may be unavailable (e.g., Military Occupational Specialty might also be indicative of combat deployment status, and vice versa). We look forward to receiving the results of your investigation.

Our sampling proposal also requested that Defendant provide Plaintiffs with the annual number of initial claims processed by the VA, overall and by regional office, from 1945 to 2024. We explained that we are looking for the total number of applications for and adjudications of


P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

disability claims from each year. You noted that Defendant had not yet agreed to provide this information, but you said you would look into providing this information and get back to us.

E. Timeline for sampling proposal.

We asked if you have an estimate for when you will get back to us with a response to the sampling proposal. You said Defendant would move as quickly as possible to determine whether it will use the proposal, whether it has any objections to the proposal, or whether it has any suggestions to make the proposal more feasible. You explained that even when Defendant makes a decision as to whether to use the sampling proposal, it will then take additional time to actually pull the data, and clarified that the process will be "lengthy." We asked that, once Defendant decides whether to use the proposal, that Defendant notifies Plaintiffs of its estimate of how long pulling the data might take. You said you would get back to us promptly. Please get back to us by December 6.

II. Records related to custodians.

You clarified that Defendant is already working on collecting records related to various custodians of records. We asked if Defendant could prioritize the record productions for three custodians: Mark Seastrom, Willie Clark, and Paul Lawrence. You noted that Defendant is already pulling documents related to each of the agreed-upon custodians, so it may not be able to alter its prioritization. You said you would look into that prioritization.

III. Second Set of Requests for Production and Interrogatories.

A. Requests for Production 1, 23, and 25.

As to Requests for Production 1, 23, and 25 from Plaintiff's Second Set of RFPs, we explained that each of these Requests pertain to complaints submitted to VA relevant to Plaintiffs' claims. Defendant previously objected that it would be infeasible for Defendant to pull individual complaints out of individual veterans' personnel files. We explained that, on September 27, 2024, Plaintiffs sent an email to Defendant suggesting a different strategy: rather than pulling individual complaints from individual files, Plaintiffs proposed that Defendant focus on pulling complaints submitted by large institutional actors to units of VA dedicated to receiving such complaints. We made the same proposal during the call, noting that this procedure would assist Defendant in reducing the burden of pulling such complaints.

You noted that your burden objections to these Requests for Production still stand. We reiterated that our emphasis on institutional complaints was intended to reduce the burden on Defendant. We offered to send you a list of units within VA that we understand to take on a complaint-intake role. We explained that this list is not exhaustive, and only contains units of VA that have been established recently. We asked that Defendant produce an organizational chart explaining what other offices exist within VA that take in complaints from large institutional actors, and what offices *have* existed within VA over time. Our non-exhaustive list of such offices is included below to give a better idea of the units of VA that we have in mind.

B. Plaintiffs' non-exhaustive list of VA "complaint-intake units."

- Legislative affairs offices
- VSO liaisons
- Public affairs offices
- Community engagement offices
- Minority Veterans Outreach Program
- Property Appraisal and Valuation Equity ("PAVE") Task Force
- Minority Veterans Program Coordinator ("MVPC")
- Center for Minority Veterans ("CMV")
- Advisory Committee on Minority Veterans ("ACMV")
- Equity Assurance Office
- External Civil Rights Complaints Program
- Veteran Experience Office
- Office of Enterprise Integration
- Office of Field Operations
- Office of Performance Analysis and Integrity
- All other specific units within VA designed to handle complaints

C. Requests for Production 2, 11, 17, and 24.

Requests for Production 2, 11, 17, and 24 from the Second Set pertain to investigations undertaken by VA related to racial disparities in benefits programs, and actions taken by VA to correct such disparities. We asked if Defendant had any additional thoughts about how better to address these related Requests, or what additional information Plaintiffs could provide to streamline the requests. You explained that Defendant had responded to these requests fully in your letter, dated October 22, 2024, and that the objections contained within that letter stand as



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

they are. We explained that we would respond to Defendant's concerns about these Requests, and other Requests, more fully in writing. We expect to do so shortly.

D. Timeline for production of records responsive to Requests for Production.

Finally, we asked if you have a sense of the timeline over which Plaintiffs can expect Defendant to complete production the documents sought by the Requests for Production. You explained that Defendant plans to produce records as Defendant pulls and assesses the responsive records, as it has been since the summer. You noted that various records have already been pulled but not yet produced. We asked when we can expect to see those produced. You again noted that Defendant would produce those records as soon as possible.

We asked specifically about the timeline for producing records related to the identified custodians. You again noted that Defendant cannot provide a specific timeline at this time. You explained that Defendant is still making various privilege determinations and pulling more documents. You said Defendant would produce these records as soon as possible.

We asked if Defendant thinks it will be possible to complete discovery by March or April of 2025. You noted that you think it unlikely that discovery is complete by May of 2025.

To facilitate efficient management of the litigation, we request that Defendant be prepared to provide its best estimates for when it will complete pulling custodial records, when it will be prepared to negotiate any further refinement of search terms for purposes of identifying a review set, and when it expects to be able to complete its production of materials to all requests. We understand those estimates may need to be revised as new information comes to light, but at the moment we have received no concrete indication from you whatsoever about when we can expect your production to be completed—other than your acknowledgment that Defendant will not be able to do so by the current discovery deadline of May 2025.

Sincerely,

/s/ Michael Wishnie
Jenna Bao, Law Student Intern
Raillan Brooks, Law Student Intern
Emily Elledge, Law Student Intern
Ryan Kellner, Law Student Intern
Claire Sullivan, Law Student Intern
Natalia Friedlander, Supervising Attorney
Michael Wishnie, Supervising Attorney



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

Veterans Legal Services Clinic
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
michael.wishnie@ylsclinics.org

/s/ Yaman Salahi
Theo Benjamin
Emily Penkowski
Yaman Salahi
Edelson PC
150 California St., 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435
ysalahi@edelson.com

**Exhibit 7**

to

Defendant's Memorandum in Support of Motion for Protective Order

| | |
|---|---|
| **From:** | Majumdar, Irina M (CIV) |
| **Sent:** | Thursday, December 19, 2024 7:33 PM |
| **To:** | Ryan Kellner; Kelley, Emily M. (CIV); McConaghy, Michelle (USACT); Orticelli, Jillian (USACT) |
| **Cc:** | Michael Wishnie; Natalia Friedlander; vlsc_monk@mailman.yale.edu; Yaman Salahi; Jimmy Rock; Emily Penkowski; Theo Benjamin; Maria Parker |
| **Subject:** | RE: Monk v. United States: Request for Meet and Confer |
| **Attachments:** | Monk Custodian List 12.19.24.xlsx |

Counsel,

Thank you for the call today. We are writing to memorialize several outstanding issues discussed on the call.

First, we discussed further details regarding your sampling proposal. We will convey what we discussed to VA and we also ask that you provide your view on whether you need the names and addresses of Veterans who are not plaintiffs in this litigation, and why. We also asked for more specific information on certain sampling data categories, including your request for combat zone information. Additionally, regarding the paper files, we ask that you provide a summary of the "alternative methods" for obtaining the information that you proposed on the call.

Second, we again asked for your responses to the United States' discovery objections which we sent you several months ago. Plaintiffs have repeatedly represented that responses are forthcoming, but we have yet to receive anything on this subject. As we stated on the call, unless and until we receive a response from you that allows the parties to narrow or resolve the objections, our response stands.

Third, we discussed your proposal to extend discovery deadlines. We agree that an extension on discovery is appropriate. Please let us know whether you agree to a six month extension with leave to seek further extensions as necessary.

Fourth, we discussed your proposal regarding "complaints submitted by large institutional actors to units of VA dedicated to receiving such complaints," as stated in your November 22, 2024 letter. As we reiterated, these requests are overbroad and vague. However, as we mentioned, we are already in the process of collecting data for custodians from several of the units mentioned in your letter. We remain willing to discuss this issue, but at this time, maintain our objections and we do not see a basis for expanding the custodial search. Attached is the list of custodians, which includes the individuals that you previously asked to be added to our initial list.

Fifth, we updated you on the status of custodial collections. We are working on getting you our proposal to narrow the search parameters for future document review. You informed us for the first time today that you would like us to expedite review of data for Mr. Clark and Mr. Seastrom, as you intend to depose them. We reiterated that the quantity of custodial data to be reviewed is massive. If you have specific proposals for how to prioritize certain custodians, please let us know as soon as possible.

Finally, as we stated on the call, we do not agree to the proposed "intermediate" discovery deadlines set out in your email, which are unreasonable and infeasible for all of the reasons discussed.

Thanks,
Irina

Irina Majumdar
U.S. Department of Justice - Civil Division
175 N Street NE
Washington, D.C. 20530
Ph. (202) 598-5403

---

**From:** Ryan Kellner <ryan.kellner@ylsclinics.org>
**Sent:** Thursday, December 19, 2024 10:59 AM
**To:** Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; McConaghy, Michelle (USACT) <mmcconaghy@usa.doj.gov>; Orticelli, Jillian (USACT) <JOrticelli@usa.doj.gov>
**Cc:** Michael Wishnie <michael.wishnie@ylsclinics.org>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; vlsc_monk@mailman.yale.edu; Yaman Salahi <ysalahi@edelson.com>; Jimmy Rock <jrock@edelson.com>; Emily Penkowski <epenkowski@edelson.com>; Theo Benjamin <tbenjamin@edelson.com>; Maria Parker <mparker@edelson.com>
**Subject:** [EXTERNAL] Re: Monk v. United States: Request for Meet and Confer

Counsel,

Ahead of our meeting today, we are reaching out to propose extensions to the current deadlines outlined in Judge Underhill's scheduling order and your confirmation to us that Defendant will be unable to complete its production prior to the existing deadlines. Plaintiffs propose extending the deadline for Plaintiffs' class certification motion from 2/3/25 to 4/3/25. Plaintiffs also propose extending the general discovery deadline from 5/21/25 to 7/21/25, without prejudice to seeking further extensions to one or both deadlines depending on Defendant's pace of production moving forward.

Plaintiffs also propose several intermediate, informal deadlines in order to organize our future discussions. These deadlines refer to several Requests for Production and Interrogatories that Defendant has objected to. Plaintiffs will respond to these objections by writing prior to these deadlines. The proposed deadlines are as follows:

- January 6, 2025 – Production of records related to custodians already identified.
- January 20, 2025 – Production of sampling data.
- February 14, 2025 – Production of documents related to Requests for Production 1, 23, and 25 from Plaintiffs' Second Set.
- March 14, 2025 – Production of documents related to Requests for Production 2, 11, 17, and 24 from Plaintiffs' Second Set.

We look forward to discussing these proposals during our call.

Sincerely,

Ryan Kellner

Law Student Intern | Veterans Legal Services Clinic

ryan.kellner@YLSClinics.org | (862) 252-1859

---

**From:** Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>
**Sent:** Wednesday, December 11, 2024 1:59 PM
**To:** Ryan Kellner <ryan.kellner@ylsclinics.org>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; McConaghy, Michelle (USACT) <Michelle.McConaghy@usdoj.gov>; Orticelli, Jillian (USACT) <Jillian.Orticelli@usdoj.gov>
**Cc:** Michael Wishnie <michael.wishnie@ylsclinics.org>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; vlsc_monk@mailman.yale.edu <vlsc_monk@mailman.yale.edu>; Yaman Salahi <ysalahi@edelson.com>; Jimmy Rock <jrock@edelson.com>; Emily Penkowski <epenkowski@edelson.com>; Theo Benjamin <tbenjamin@edelson.com>; Maria Parker <mparker@edelson.com>
**Subject:** RE: Monk v. United States: Request for Meet and Confer

Hi Ryan,

Thursday 12/19 at 3 pm works on our end. Please circulate a dial-in or let us know if we should. Thanks,

Emily

---

**From:** Ryan Kellner <ryan.kellner@ylsclinics.org>
**Sent:** Tuesday, December 10, 2024 5:14 PM
**To:** Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; McConaghy, Michelle (USACT) <mmcconaghy@usa.doj.gov>; Orticelli, Jillian (USACT) <JOrticelli@usa.doj.gov>
**Cc:** Michael Wishnie <michael.wishnie@ylsclinics.org>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; vlsc_monk@mailman.yale.edu; Yaman Salahi <ysalahi@edelson.com>; Jimmy Rock <jrock@edelson.com>; Emily Penkowski <epenkowski@edelson.com>; Theo Benjamin <tbenjamin@edelson.com>; Maria Parker <mparker@edelson.com>
**Subject:** [EXTERNAL] Re: Monk v. United States: Request for Meet and Confer

Counsel,

We are confirming receipt of today's production. Additionally, we are also interested in scheduling another meeting. Is your team available on 12/18 or 12/19? We could do any time from 3:00 PM on both days.

Additionally, one subject we would like to discuss during our meeting is noticing depositions. We intend to notice the depositions of Mark Seastrom and Willie Clark for the last two weeks of January 2025. Please advise on which dates you and each witness are available.

Ryan Kellner

Law Student Intern | Veterans Legal Services Clinic

ryan.kellner@YLSClinics.org | (862) 252-1859

---

**From:** Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>
**Sent:** Friday, December 6, 2024 12:43 PM
**To:** Ryan Kellner <ryan.kellner@ylsclinics.org>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; McConaghy, Michelle (USACT) <Michelle.McConaghy@usdoj.gov>; Orticelli, Jillian (USACT) <Jillian.Orticelli@usdoj.gov>
**Cc:** Michael Wishnie <michael.wishnie@ylsclinics.org>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; vlsc_monk@mailman.yale.edu <vlsc_monk@mailman.yale.edu>; Yaman Salahi <ysalahi@edelson.com>; Jimmy Rock <jrock@edelson.com>; Emily Penkowski <epenkowski@edelson.com>; Theo Benjamin <tbenjamin@edelson.com>; Maria Parker <mparker@edelson.com>
**Subject:** RE: Monk v. United States: Request for Meet and Confer

Counsel,

We are in receipt of your letter following our last meet and confer, and we have been looking into the topics discussed during that meeting. We believe it would be most beneficial to schedule another time to discuss. Please let us know your availability in the next couple weeks. Best,

Emily

---

**From:** Ryan Kellner <ryan.kellner@ylsclinics.org>
**Sent:** Friday, November 22, 2024 11:53 AM
**To:** Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; McConaghy, Michelle (USACT) <mmcconaghy@usa.doj.gov>; Orticelli, Jillian (USACT) <JOrticelli@usa.doj.gov>
**Cc:** Michael Wishnie <michael.wishnie@ylsclinics.org>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; vlsc_monk@mailman.yale.edu; Yaman Salahi <ysalahi@edelson.com>; Jimmy Rock <jrock@edelson.com>; Emily Penkowski <epenkowski@edelson.com>; Theo Benjamin <tbenjamin@edelson.com>; Maria Parker <mparker@edelson.com>
**Subject:** [EXTERNAL] Re: Monk v. United States: Request for Meet and Confer

Emily,

Thank you again for meeting with us on Wednesday. We have attached here a summary of our call. Please let us know if you have any questions, and enjoy your weekend.

Sincerely,

Ryan Kellner

Law Student Intern | Veterans Legal Services Clinic

ryan.kellner@YLSClinics.org | (862) 252-1859

---

**From:** Vlsc_monk <vlsc_monk-bounces@mailman.yale.edu> on behalf of Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>
**Sent:** Thursday, November 14, 2024 11:21 AM
**To:** Claire Sullivan <claire.sullivan@YLSClinics.org>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; McConaghy, Michelle (USACT) <Michelle.McConaghy@usdoj.gov>; Orticelli, Jillian (USACT) <Jillian.Orticelli@usdoj.gov>
**Cc:** Michael Wishnie <michael.wishnie@ylsclinics.org>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; vlsc_monk@mailman.yale.edu <vlsc_monk@mailman.yale.edu>; Yaman Salahi <ysalahi@edelson.com>; Jimmy Rock <jrock@edelson.com>; Emily Penkowski <epenkowski@edelson.com>; Theo Benjamin <tbenjamin@edelson.com>; Maria Parker <mparker@edelson.com>
**Subject:** Re: [Vlsc_monk] Monk v. United States: Request for Meet and Confer

Hi Claire,

We're available at 2:15 pm on Wednesday 11/20. Please circulate a dial-in number or let us know if you'd like us to send one. Thanks,

Emily

---

**From:** Claire Sullivan <claire.sullivan@YLSClinics.org>
**Sent:** Thursday, November 14, 2024 9:00 AM
**To:** Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>; McConaghy, Michelle (USACT) <mmcconaghy@usa.doj.gov>; Orticelli, Jillian (USACT) <JOrticelli@usa.doj.gov>
**Cc:** Michael Wishnie <michael.wishnie@ylsclinics.org>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; vlsc_monk@mailman.yale.edu; Yaman Salahi <ysalahi@edelson.com>; Jimmy Rock <jrock@edelson.com>; Emily Penkowski <epenkowski@edelson.com>; Theo Benjamin <tbenjamin@edelson.com>; Maria Parker <mparker@edelson.com>
**Subject:** [EXTERNAL] Monk v. United States: Request for Meet and Confer

Dear Counsel,

I hope this email finds you well.

We received your most recent production, as well as your correspondence regarding Plaintiff's second set of interrogatories and requests for production.

We would like to schedule a meet and confer next week to discuss a proposed sampling proposal to expedite the discovery process, as well as to further discuss the second set of interrogatories and requests for production. We will plan to send our proposed sampling proposal to you ahead of the meeting.

Our availability is below. Please let us know if there is a block during those times that would work best for you:

- Wednesday, 11/20
  - 12:00-1:30 ET
  - 2:15-4:00 ET
- Thursday 11/21
  - 2:00 -3:00 ET

Best,
Claire Sullivan

**Claire Sullivan**
Law Student Intern | Jerome N. Frank Legal Services Organization
claire.sullivan@YLSClinics.org | (862) 252-1859
She/her/hers

**Exhibit 8**

to

Defendant's Memorandum in Support of Motion for Protective Order

The Jerome N. Frank Legal Services Organization

YALE LAW SCHOOL

*Via email*

December 23, 2024

Emily M. Kelley
United States Department of Justice
Civil Division
175 N Street NE
Washington, D.C. 20530

Dear Emily,

Thank you again for speaking with us on Thursday and for the follow-up email from Irina. We have included below additional items not addressed in Irina's summary. Any agreed-upon action items for either party are in bold.

I. Plaintiffs' sampling proposal.

DOJ has not decided whether it will agree to sample VA claims files, and if so, in what manner. As a result, DOJ was not prepared to make a complete response to Plaintiffs' sampling proposal. You asked why Plaintiffs request a random sample of 5,500 initial claims files from each of three eras. We explained that we believe this is a statistically significant sample size.

A. Privacy Concerns

You reiterated your position regarding providing names and addresses for veterans' claims and explained that your position is that privacy concerns are not outweighed by the relevance of the information nor sufficiently safeguarded by the Court's protective order. We explored the possibility of limiting address information to city and state, as opposed to name and street address, explaining to you that geography has potential relevance here. **We agreed to confer with our statistics expert regarding the possibility of limiting the request to city and state and to revert when we have done so.**

B. Digitized Data

We then discussed the production of digitized data. You explained that general data on race and ethnicity might go back to the 1990s, but that data is limited and the algorithm is flawed. You also explained that this data is not necessarily specifically available for veterans who applied for disability claims. You then explained that initial claims data was consistently



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

collected electronically going back to 2006, although there is some data dating back to 2001 (and, you said, that when a veteran who had applied for benefits before 2006 makes a new application, then VA digitizes the new application and that veteran's pre-2006 records as well). Therefore, for Era 3 in our sampling proposal, VA has electronic data that can be provided in a spreadsheet and anonymized.

You asked a few follow-up questions about our goals in receiving this data. First, you asked about whether we sought data regarding the types of specific disability claims in a veteran's initial claim, in cases where a veteran applies based on more than one disability. We clarified that we are seeking data on each of the different disability claims a veteran might raise in their initial claim. You also asked whether we sought a decision (grant or deny) based on each disability, or an overall decision. We clarified that we are seeking the decisions (grant or deny) broken down by disability. Finally, you asked whether we sought ratings assigned for each disability, or whether an overall rating would suffice. We clarified that an overall rating will suffice. You repeated that such data may be available from 2006 onward but more difficult to obtain in earlier years.

We then discussed the implications of VA's deployment of the National Work Queue in 2016. You explained that claims are handled by different Regional Offices at different points in the process, and asked whether we are more interested in knowing which regional office a claim was initially submitted to, worked a claim, or made the final rating decision. We clarified that we are more interested in the regional office to which the claim was initially submitted.

We discussed VA's difficulty in pulling data regarding combat zone deployment. You clarified that, as the data is currently compiled, combat zone deployment is not always clear (though it can sometimes be assessed based on medals a veteran received or combat hazard pay). You requested that we propose specific countries or locations, and time periods, that we view as "combat zones." **We agreed to confer with our consulting expert and to revert.**

Finally, you informed us that pulling the electronic data for the time period for which it is available will likely take dozens of hours of employee work. **You said that you will update VA and try to begin the process of pulling electronic data.**

C. Paper Data Files

We then discussed the process that would be required to pull a random sample of veterans files that exist in paper format. You explained that pulling these files would require making a large-scale random records request through ARCIS to recall files from the National



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

Record Center, which are organized by either claims file number (pre-1970s) or by Social Security number (SSN), beginning at some point in the 1970s.

You identified VA challenges in pulling this information. First, a1973 fire at the National Personnel Records Center in St. Louis destroyed 16-18 million OMPFs, which might be a source of race data for veterans whose VA files do not indicate their race. We responded that if the parties agree on a sampling protocol, and the VA records for a sampled veteran do not indicate race, and that veteran's OMPF was destroyed in the 1973 fire, then it may be that race data for that sampled veteran is simply left blank or null, as occasionally happens with other data fields for other veterans.

You also identified challenges for VA in generating a randomized sample of paper records from Era 1 and Era 2, via ARCIS or otherwise. You explained that per regulation, if a paper file exists that has not yet been digitized, it must be digitized upon recall, which would further delay reviewing the files. You did not make a specific proposal as to how a random sample of initial claims files for Era 1 or Era 2 might be generated.

We sought further clarification regarding the assignment of C-files to claims. We suggested that if, as we believe to be true, C-numbers were assigned sequentially, with perhaps some embedded geographic coding as well (e.g., C-numbers in certain ROs begin with a "1," those in other ROs begin with a "2," and so on), then a randomized sample could be generated by knowing which C-numbers VA assigned at the start and end of each Era , at least until social security numbers replaced C-numbers. You were unable to describe the process for assigning C-numbers, nor whether they continued to be assigned even as VA came to rely primarily on SSNs, nor when in the 1970s it was that VA made this transition. **You agreed to inquire with VA and provide the following information:**

1. How were C-File numbers assigned to claimants' files from January 1, 1945 until the date in the 1970s when Defendant began associating claimants' files with their Social Security Numbers?
2. For the time period over which Defendant assigned claimants a C-File number, as opposed to associating their file with their Social Security Number, were those C-File numbers assigned sequentially at the national level? That is, was the very first claimant assigned C-File # 001, the next claimant assigned C-File # 002, and so on?
3. If C-File numbers were not assigned sequentially as described in (2) above, were they instead assigned sequentially to claimants in some fashion related to their geographic location? For example, was the first claimant at a Regional Office in New York assigned C-File # 001, then the second claimant in the same area assigned C-File # 002, and so on?



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

4. When in the 1970s did VA shift from reliance on C-File numbers to SSNs?
5. What proportion of files do *not* have an associated SSN?
6. How exactly are paper files stored for claimants, regardless of whether their file is associated with a C-File number or their SSN?
7. What proportion of paper files are stored in the Lee's Summit storage location, as opposed to other storage sites? This is relevant because we offered the possibility that sampling, if done based on physical organization at a storage site, might not need to encompass every single storage location.
8. Within each physical storage site, how are paper files organized? For example, at Lee's Summit, are paper files stored in sections according to the state of the claimants' residence? Or according to the RO at which the claims initiated? By date? Otherwise?

**The government has superior knowledge as to the organization of its files and thus at this time Plaintiffs are unable to propose specific sampling procedures.**

We also suggested that an OMPF file could be a source of demographic data for veterans included in any sample and whose VA files lack race data. We agreed that if the OMPF was destroyed in the Lee's Summit fire, that would be considered a set of records that are a null set, so we would consider that a full production. You responded by suggesting that this would double the work required of Defendants because it would require you to review and redact the whole file. We responded that the enlistment record would likely be sufficient for our purposes, such that the government need not review and redact other records in the OMPF.

<u>Plaintiff's Proposal Regarding Complaints</u>

You requested clarification regarding our request for information regarding complaints from institutional actors about potential discrimination within VA. You expressed that, as written, the request is too vague and too broad, because 1) you are not sure of the definition of a large institutional actor, and 2) the request seems to implicate hundreds of custodians.

You asked whether we were only interested in complaints from institutional actors, or whether we are also interested in complaints filed with Sterling Akin's office. We responded that Plaintiffs seek both. We stated, as we have said previously, that Plaintiffs do not seek individual disability compensation files that may have a stray comment regarding racial disparities or discrimination, but Plaintiffs do seek complaints submitted to Mr. Akins' office *and* letters or other communications to VA leadership since 1945 regarding racial disparities. These latter communications may include such materials as correspondence from the NAACP, veterans service organizations (VSOs), or the Congressional Black Caucus, and any records made in


P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

response. You clarified that there are a number of custodians on the existing custodian list that would be relevant here and proposed focusing on those and producing responsive documents if and when you find them. You also noted that if we have specific individuals whose files we want to review, you would consider it, but did not agree to search through potentially hundreds of custodians records to respond to this request. We clarified that the current custodian list is largely for email records of contemporary custodians and will not be responsive to Plaintiffs' requests for records dating back to 1945. We also clarified that further guidance regarding VA's organizational structure in prior decades would help us to narrow these quests, since we don't know how each office was organized in that time. However, we do know that there was ongoing public conversation regarding racial discrimination at VA in the late 1940s and thereafter, and Plaintiffs seek files relating to that conversation.

You stated that you would not agree to undertake searches of paper files for large numbers of historical custodians or offices to find complaints. We did not reach consensus on this point and agreed to continue discussing. **Please advise whether Defendant is willing to search for records relating to complaints of VA racial disparities or discrimination from January 1, 1945 until the date of the earliest VA employment of any custodian in the list attached to Irina's message.** If not, we will have no choice but to seek the Court's assistance.

II. Timeline

We then discussed the timeline for discovery and class certification. You stated that a two-month extension would likely be insufficient and instead proposed a six-month extension of the discovery deadline, with the ability to seek further extension if needed. **We agreed to discuss internally and respond promptly with our position on this extension.**

You did not agree to the intermediate, informal deadlines that we proposed, noting that the large amount of data will take dozens of hours of labor to review. You noted that you would likely agree to extend the class certification deadline by six months, if we confirm that we agree to a six month discovery extension.

III. Depositions

You clarified that Mark Seastrom is retired, but you are working on getting in touch with him regarding potential dates for a deposition. You stated that you expect to represent him at the deposition but are not currently authorized to accept service on his behalf. We asked that you clarify whether you may accept service for Mr. Seastrom to avoid a surprise or unwelcome interruption in his daily life by a process servicer. **You agreed to check with Mr. Seastrom.**

**You also clarified that you are in the process of determining dates that Willie Clark might be available for a deposition and would follow up via email.** You explained that he is likely not available in late January but might have availability in the first half of February.

We then discussed the production of documents for Mr. Clark and Mr. Seastrom. You stated that Clark's documents have been pulled but that you have not completed even an initial review for responsiveness or privilege because the records are so voluminous. You stated further that, after an initial review, you expect to request that Plaintiffs agree to narrow their search terms, after which you would then conduct an actual review for responsiveness and privilege. Plaintiffs asked when you expected to produce responsive, non-privileged records for Mr. Clark. You stated that you could not provide an estimated completion date. We asked when you expected to complete at least the first review, such that you might propose narrowing of search terms; you likewise stated you could not estimate. **Please advise regarding when Plaintiffs can expect to see narrowed search terms.** We asked by what date you were reasonably confident that you could produce Mr. Clark's records, such that we could schedule his deposition. You stated that you could provide no date.

As for Mr. Seastrom, you stated that his records were intended to be included in the "first tranche" of custodians, but due to technical issues, that had not occurred. As a result, VA has not yet taken steps to begin processing Mr. Seastrom's records.

Sincerely,

/s/ Michael Wishnie
Jenna Bao, Law Student Intern
Raillan Brooks, Law Student Intern
Emily Elledge, Law Student Intern
Ryan Kellner, Law Student Intern
Claire Sullivan, Law Student Intern
Natalia Friedlander, Supervising Attorney
Michael Wishnie, Supervising Attorney
Veterans Legal Services Clinic
michael.wishnie@ylsclinics.org

Theo Benjamin
Emily Penkowski
Yaman Salahi
Edelson PC
150 California St., 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435
ysalahi@edelson.com

**Exhibit 9**

to

Defendant's Memorandum in Support of Motion for Protective Order

**U.S. Department of Justice**

Civil Division

*Washington, DC 20530*

*Via email*

January 31, 2025

Michael Wishnie
Natalia Friedlander
Veterans Legal Services Clinic
P.O. Box 209090
New Haven, CT 06520

Re: *Monk et al. v. United States*, 3:22-cv-01503 (SRU) (D. Conn.)

Dear Counsel,

We write in response to Plaintiffs' January 24, 2025 email regarding Defendant's ongoing document production efforts. We also write regarding outstanding items that Plaintiffs have failed to provide with respect to Plaintiffs' own discovery Requests.

1. Timeline of Discussions regarding Discovery and Custodial Materials

In the first instance, your email misstates and mischaracterizes the history of discovery in this matter. Of particular note, your email fails to acknowledge the following:

On August 21, 2024, as discussed during a meet and confer, Defendant identified and provided Plaintiffs a proposed list of twenty custodians.

Also on August 21, 2024, Defendant sent Plaintiffs its proposed list of initial search terms, which would be used to pull custodial data. It was made clear that, given the data size, custodial data would have to be pulled approximately ten custodians at a time. Defendant therefore asked whether Plaintiffs had a preferred priority order for collecting custodial data. Plaintiffs indicated they would consider this.

Defendant was clear that this initial term list was intentionally broad, and Defendant would need to apply more refined terms before review. Defendant's proposed initial list contained 89 terms.

On September 4, 2024, having heard nothing from Plaintiffs, Defendant indicated it would begin running the searches as planned and therefore requested any comments from Plaintiffs by September 6, 2024.

On September 6, 2024, Plaintiffs responded, seeking to add custodians from several VA units. Defendant added ten additional custodians based on Plaintiffs' request, for a total of thirty.

Also on September 6, 2024, Plaintiffs requested the addition of 31 search terms.

On September 10, 2024, while in the midst of seeking to begin document collection in response to Plaintiffs' First Set of Discovery Requests and Interrogatories, Defendant responded to Plaintiffs' Second Set of Discovery Requests and Interrogatories.

On September 20, 2024, the parties discussed Plaintiffs' proposed additions to the search terms. Defendant explained that four of Plaintiffs' terms were not feasible, as they would result in far too many false hits. However, Defendant was willing to add the rest of Plaintiffs' terms, even though they substantially increased the size of the search. Plaintiffs indicated that they required additional time to decide whether they agreed to the negotiated terms.

On September 23, 2024, Defendant inquired again as to whether these few terms could be eliminated, so that custodial document collection could begin.

Plaintiffs did not confirm agreement to eliminating the few disputed terms until September 27, 2024—over one month after Defendant's proposed term list was first shared with them. Even then, Plaintiffs indicated that they "reserve[d] [their] right to revisit this issue in the future should the need arise."

Prior to receiving Plaintiffs' response indicating agreement between the parties, Defendant could not begin custodial document pulls. The agreed upon first level search term list ultimately contained 116 terms.

Plaintiffs did not inform Defendant of which custodial data they wanted prioritized until November 20, 2024. By this time, Defendant was already collecting custodial data, having not been able to wait any longer for Plaintiffs to express a preference given the time it would take to complete such large data pulls. The size of these pulls was in large part due to the expansive search term list and the time period for which Plaintiffs seek production.

Similarly, Plaintiffs did not indicate an intent to imminently depose Mr. Clark until December 10, 2024. Plaintiffs did not indicate they would first require completion of his document production—unlike their prior deposition of Ms. Devlin—until December 19, 2024.

As further detailed below, Plaintiffs' delays in responding to Defendant's attempts to move discovery forward, and their simultaneous and repeated attempts to expand the scope of discovery, are not isolated events.

2. <u>Plaintiffs' Failure to Respond to the United States' Well-Founded Objections</u>

On October 9, 2024, when Plaintiffs conveyed letters regarding Defendant's Responses and Objections to Plaintiffs' discovery, Plaintiffs claimed that many of Defendant's Responses were deficient, including, for example, because Defendant did not provide "any and all" of the information sought by certain Interrogatories or Requests. In the United States' October 22, 2024 responsive letter and at the meet and confer that followed on November 20, 2024, the United States pointed out that it had lodged good faith Objections to such discovery due to breadth, burden, relevance, and other appropriate bases. The United States' Responses were submitted subject to those Objections, which Plaintiffs had yet to address. The United States

therefore asked Counsel whether Plaintiffs had any response to these Objections that they would like to discuss. Counsel informed the United States that such responses would be forthcoming.

In a letter dated November 22, 2024, Plaintiffs again promised that responses were forthcoming. Specifically, Plaintiffs wrote that, "[w]e explained that we would respond to Defendant's concerns about these Requests and other Requests more fully in writing. We expect to do so shortly."

During the December 19, 2024 meet and confer, having still not received anything, the United States again inquired as to whether Plaintiffs' responses to its Objections were forthcoming. Plaintiffs did not respond to this request.

In an email sent later that day summarizing the meet and confer, the United States again asked for Plaintiffs' responses to its Objections. Plaintiffs did not respond to this request.

Plaintiffs' December 23, 2024 letter presenting their own summary of the December 19, 2024 meet and confer made no mention of the promised responses or the United States' repeated requests for them.

After almost four months, it is clear that Plaintiffs have abandoned the issue. The United States' Objections therefore stand, and any production of information in response to the subject requests will only be made pursuant to these Objections.

3. <u>Plaintiffs' "Sampling" Proposal</u>

Plaintiffs owe Defendant responses with respect to their "sampling proposal" to be run across existing databases in order to provide a data output of specified categories of veteran demographic and benefits information. Without Plaintiffs' responses, Defendant cannot consider the proposal or determine what the necessary queries would be.

Specifically, Plaintiffs first referenced that they would submit an unspecified "sampling proposal" on August 7, 2024, and again during a meet and confer on August 20, 2024. No details were provided at that time. Throughout September and October 2024, Plaintiffs continued to refer to, but provided no more information on, the sampling proposal, despite repeated requests from the United States. It was not until November 18, 2024, over three months after having first suggested the idea, that Plaintiffs put forth a proposal. However, Plaintiffs' proposal was vague and extremely broad. The United States therefore sought additional, specific information about Plaintiffs' proposal at the following meet and confer, in order to assess whether the proposal was feasible with respect to electronic data. Defendant also explained the limitations of such electronic data, including with respect to the time periods requested.

The parties last discussed this on December 19, 2024. During that meet and confer, Plaintiffs stated that they would provide responses to outstanding questions including:

- On what basis Plaintiffs purport to require veterans' names;
- On what basis Plaintiffs purport to require veterans' addresses, and/or whether they only sought city and state; and

- Whether Plaintiffs could provide more information regarding the request for "combat zone" data, given the limitations involved in identifying this data.

Plaintiffs confirmed by letter dated December 23, 2024 that they would look into these issues and provide a response. To date, the United States has received no answers to these questions. Given the nature of the queries that would need to be run to put together an output of data, the United States cannot complete this project without resolving these issues.

Please note that the above applies only to the data maintained in electronic databases upon which queries can be run across data fields, which, as discussed, is only available for a portion of the total time frames requested. With respect to paper records, the parties are continuing to confer, and the United States maintains its Objections. We remain prepared to reengage on this issue.

4. Plaintiffs' Vague Requests for "Complaints"

The parties have repeatedly conferred on the topic of Plaintiffs' requests for "complaints," First and Second RFP 1; *see also* Second RFPs 23, 25. Plaintiffs' requests were vague, overbroad, and unduly burdensome at the outset; unfortunately, the parties' discussions have only made them more so.

Plaintiffs' First and Second RFP 1 seek "[A]ll documents or records, including formal and informal complaints or other communications, received by the VA from any source (including veterans, veterans organizations, civil rights groups, elected officials and their staff, or otherwise), regarding actual or suspected racial disparities in VA housing, education, or disability compensation benefits" for an eighty-year period. The United States appropriately objected to these Requests, and the parties conferred on multiple occasions.

Plaintiffs first indicated that they would not seek a review of veterans' benefits files for such "complaints." But this was hardly a concession, considering that the United States had already informed Plaintiffs that there was simply no way to reasonably search benefits files for such complaints, and that it would not undertake such an unreasonable search.

On November 22, 2024, Plaintiffs indicated that their interest lies in "complaints submitted by large institutional actors to units of VA dedicated to receiving such complaints." Plaintiffs claimed that their "emphasis on institutional complaints *was intended to reduce the burden* on Defendant" (emphasis added). Plaintiffs' "reduced burden" proposal then provided what Plaintiffs repeatedly described as a *non-exhaustive* list of "complaint-intake units" to be searched, in addition to other, older offices that might have existed within the eighty-year time period for which Plaintiffs seek information:

- Legislative affairs offices
- VSO liaisons
- Public affairs offices
- Community engagement offices
- Minority Veterans Outreach Program
- Property Appraisal and Valuation Equity ("PAVE") Task Force

- Minority Veterans Program Coordinator ("MVPC")
- Center for Minority Veterans ("CMV")
- Advisory Committee on Minority Veterans ("ACMV")
- Equity Assurance Office
- External Civil Rights Complaints Program
- Veteran Experience Office
- Office of Enterprise Integration
- Office of Field Operations
- Office of Performance Analysis and Integrity
- All other specific units within VA designed to handle complaints

Notably, with the exception of the External Complaints Program, these offices do not exist with the sole purpose of "intaking complaints," to the extent that such vague activity is in their purview at all. It appears, then, that Plaintiffs request a search of an untold number of custodians in any VA office, group, or location that *may* have received a "complaint" at some point in time. The vagueness, breadth, and burden of this is undeniably improper.

However, the United States endeavored to continue working on resolving this issue. When the United States pointed out that it was already collecting documents for custodians in several of the above-listed offices and would seek to identify responsive documents in those collections, Plaintiffs still were not satisfied. Next, because the United States understood Plaintiffs' proposal to at least mean that Plaintiffs did not seek individual veteran-level complaints, Defendant asked whether this meant that Plaintiffs did not seek documents from External Complaints Manager Sterling Akins, since the complaints he receives are sent by individuals, not institutions. Plaintiffs were quick to respond that, despite their "emphasis on institutional complaints … intended to reduce the burden on Defendant," they did indeed still seek *both* production of individual level and institutional-level complaints. The United States was again left wondering what, exactly, Plaintiffs were proposing.

Then, in a letter dated December 23, 2024, Plaintiffs for the first time stated that "we do know that there was ongoing public conversation regarding racial discrimination at VA in the late 1940s and thereafter, and Plaintiffs seek files relating to that conversation."

Discovery is not a game of hide-and-seek. Plaintiffs are required to state their requests with sufficient specificity for Defendant to reasonably respond. *See In re PE Corp. Secs. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003) ("[D]iscovery requests that are 'based on pure speculation and conjecture' are not permissible."); *Walsh v. Top Notch Home Designs Corp*., No. CV 20-05087, 2022 WL 3300190, at *6 (E.D.N.Y. Aug. 11, 2022) (when party seeking discovery "is not entirely sure of what they are seeking or what will be produced, it's merely casting the net for a 'gotcha.'"); *Sibley v. Choice Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *7 (E.D.N.Y. Dec. 22, 2015) (party seeking discovery should ask "clear questions aimed at getting clear and simple responses").

That Plaintiffs have apparently had a certain "conversation" in mind this whole time, and never shared that information with the United States, is a waste of the parties' time. The United States requests that Plaintiffs promptly provide further information as to these alleged

documents, including the parties believed to be involved to the extent known, as well as any other *specific* materials they believe the United States to possess that are responsive to these Requests.

The United States' Objections to these incredibly vague and overbroad Requests stand. As previously stated, should the United States locate responsive, non-privileged materials in its custodial collection following a reasonable search, it will produce them. The United States will not undertake an exhaustive search of potentially hundreds of electronic and physical locations for information that may or may not exist. Unless and until Plaintiffs identify a reasonable and appropriately specific request, there is little else to discuss.

5. <u>Plaintiffs' Requests for Custodial Materials</u>

In Counsel's January 24, 2025, email, Plaintiffs ask for dates by which custodial material will be produced and state that they "seek a definitive answer from the United States on the date by which Plaintiffs can expect to receive documents related to our proposed deponents."

First, your email mischaracterizes the parties' communications and efforts to date. As set forth above, Plaintiffs have repeatedly dragged their feet in providing information that could speed up this process; have insisted on expanding the universe of both search terms and custodians, resulting in a much greater burden on the United States; and have refused to meaningfully limit their requests in any way. If anything, Plaintiffs' requests have ballooned over time.

Second, Plaintiffs wrote that, "To reduce the burden on the United States, Plaintiffs proposed that the United States prioritize producing documents related to Mr. Clark, Mr. Seastrom, and Mr. Lawrence." The *order* in which custodial material is reviewed and produced has no effect on the *burden*, as it does not change the total volume of material to be reviewed. It merely sets a priority sequence—a priority that Defendant sought from Plaintiffs months before Plaintiffs responded. Had Defendant waited to receive Plaintiffs' preferred priority order before diligently beginning the collection process, the parties would be months behind where they are now.

Third, the United States notes that, with respect to Mr. Clark and other custodians, your email cites to RFP 11, which, among other things, requests certain documents from Mr. Clark from December 1, 2016 to the present. As you know, the United States did not term limit our initial document pull other than by a given custodian's VA tenure, since Plaintiffs demand 80 years' worth of materials. Plaintiffs have never before stated that review of Mr. Clark's documents may be limited to December 1, 2016 forward. Nor have you expressed the view that other RFPs, covering longer time periods, do not also apply to Mr. Clark as a custodian. If it is now your position that Mr. Clark's custodial materials need only be searched from December 1, 2016 to the present and to the extent they respond to RFP 11, please confirm as soon as possible.

Similarly, Plaintiffs have never previously indicated willingness to apply more limited time periods to any specific custodians. Please inform us as soon as possible whether Plaintiffs are by their email proposing to streamline the time periods of their requests vis-à-vis individual custodians.

Fourth, with respect to custodial production, the United States has been transparent as to the immense burden involved. Plaintiffs seek documents for 30 custodians, unbounded by time other than the length of the custodians' tenure at VA. Both the custodian list and the first-round search terms used to pull the universe of potential documents were substantially expanded upon Plaintiffs' request. When Plaintiffs only recently indicated an intention to take certain depositions in January or February 2025 and demanded that custodial production be completed by then, the United States in good faith informed Plaintiffs that custodial productions could not be completed by those dates. Plaintiffs' attempt to now impose imminent, arbitrary interim production deadlines is improper in light of their expansive requests, Plaintiffs' own delays, and, moreover, is inconsistent with the parties' mutual agreement that discovery deadlines needed to be extended in this case. *See* ECF 108, 109.

Further, the United States have repeatedly explained that the first level search terms, which are only meant to serve as a first "pull," would result in multiple terabytes' worth of data. Again, in response to this, Plaintiffs made no attempt to reasonably limit their requests, yet continued to dispute the time required to complete this process. To put the immensity of this request in terms of document number, the agreed-upon first level search terms resulted in a pull of approximately ***2.4 million documents*** for the first tranche of nine custodians. Of these, Mr. Clark has approximately ***530,000 documents***. And Plaintiffs seek documents for twenty-one more custodians.

As a result, the United States is proceeding with the plan previously presented to Plaintiffs and discussed repeatedly: the United States worked to construct second level search terms to apply to the document universe pulled by the first set of terms. The second level approach eliminates overly broad terms and utilizes more sophisticated and Boolean searches as compared to the first term list, in order to appropriately narrow the universe and in an effort to more reasonably identify potentially relevant materials. The second level terms are submitted with this letter for your review (the first level terms are also included for reference).

Even these second level terms result in an immense universe of documents. Applying the proposed terms to the first group of nine custodians results in approximately 44,000 documents with hits, for a total of approximately 380,000 documents inclusive of families. Of these, approximately 65,000 belong to Mr. Clark. However, in a good faith effort to expedite discovery, the United States is willing to begin review and production of these documents as soon as Plaintiffs agree to this set of second level search terms.

Please promptly inform us whether you agree to the use of these second level search terms, so that we may begin rolling production of custodial materials to you as soon as possible. Should you agree to the terms, the United States will prioritize review of Mr. Clark's materials as requested.

Please note that Mr. Lawrence's materials were not included in the first tranche of custodians. By the time Plaintiffs indicated a desire to prioritize him, the United States' first tranche collection was well underway, and the United States had to make a good faith assessment of the custodians it believed Plaintiffs may seek to prioritize. Mr. Lawrence's materials, as well as Mr. Seastrom's—which were delayed by technical issues—are in the second tranche being processed. We are willing to discuss prioritizing other custodians from the first set after

completion of Mr. Clark's documents, to the extent Messrs. Lawrence and Seastrom's materials are not fully processed by that time.

We anticipate that we will be able to produce Mr. Clark's materials on a rolling basis within one month of Plaintiffs confirming agreement to the terms, if not sooner.

6. Deposition of Mr. Clark

With respect to Mr. Clark, thank you for finally confirming the date of February 21, 2025, as the date you intend to depose him. Given the passage of time between when the United States offered that date and your response, we reconfirmed with Mr. Clark that he is available that day.

Thank you for your attention to this matter.

Sincerely,

/s/ Emily M. Kelley
Emily M. Kelley

Cc: Michelle McConaghy
Jillian Orticelli
Irina Majumdar
Yaman Salahi
Emily Penkowski
Theo Benjamin
Yale Law School Veterans Legal Services Clinic

**Exhibit 10**

to

Defendant's Memorandum in Support of Motion for Protective Order

# The Jerome N. Frank Legal Services Organization

YALE LAW SCHOOL

*Via email*

February 20, 2025

Emily M. Kelley
United States Department of Justice
Civil Division
175 N Street NE
Washington, D.C. 20530

Dear Counsel,

Enclosed please find Plaintiffs' responses to Defendant's objections to Plaintiffs' Second Set of Requests for Production.

Plaintiffs have conferred more than once with Defendant about the Plaintiffs' sampling proposal and request for records of complaints. As invited by Judge Underhill, Plaintiffs therefore intend to request a telephonic discovery conference with the Court on these items. Please let us know whether you consent.

As to the other outstanding items, Plaintiffs remain willing to confer further.

/s/ Michael Wishnie
Emily Elledge, Law Student Intern
Kindall Hayes, Law Student Intern
Gabriella Hill, Law Student Intern
Jared Hirschfield, Law Student Intern
Ryan Kellner, Law Student Intern
Claire Sullivan, Law Student Intern
Briana Thompson, Law Student Intern
Braden Worthington, Law Student Intern
Natalia Friedlander, Supervising Attorney
Michael Wishnie, Supervising Attorney
VETERANS LEGAL SERVICES CLINIC
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
michael.wishnie@ylsclinics.org

/s/ Yaman Salahi
Yaman Salahi
SALAHI PC
505 Montgomery St., 11th Floor
San Francisco, CA 94111
Tel: (415) 236-2352
yaman@salahilaw.com

Jimmy Rock
EDELSON PC
1255 Union Street NE, 7th Floor
Washington, D.C. 20002
Tel: (202) 987-6303
jrock@edelson.com

Theo Benjamin
EDELSON PC
350 North LaSalle St., 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
tbenjamin@edelson.com

Emily Penkowski Perez
EDELSON PC
350 North LaSalle St., 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
epenkowski@edelson.com

**RFP 1**

*1. All documents or records, including formal and informal complaints or other communications, received by the VA from any source (including veterans, veterans organizations, civil rights groups, elected officials and their staff, or otherwise), regarding actual or suspected racial disparities in VA housing, education, or disability compensation benefits for the time period from January 1, 1945 through December 31, 1964.*

**Defendant's Objection:**

Defendant objects to Request No. 1 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "racial disparities" in VA housing, education, or disability compensation benefits, for a 20-year time period beginning approximately 80 years ago. "Racial disparities" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 1 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 1 is not overbroad, unduly burdensome, or vague, nor does RFP No. 1 seek information beyond the scope of Rule 26. RFP No. 1 seeks information dating to the earliest date of Plaintiffs' injuries and is limited in scope to a description of documents or records received by the VA regarding actual or suspected racial disparities within a bounded time period.

The information sought regarding the formal and informal complaints or other communications is directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims involve injuries resulting from the administration of VA benefits dating back to 1945. Plaintiffs are entitled to foundational information describing how VA leadership has been made aware of the race of its benefits applicants and identified disparities therein. It is, therefore, relevant and proportional to the needs of the case to seek discovery dating to 1945. Further, RFP No. 1 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York,* 502 F. Supp. 3d 686, 695 (E.D.N.Y. 2020) (internal quotation omitted). RFP No. 1 seeks information that will be crucial to resolving these claims, in that responsive documents will demonstrate the extent to which VA was aware of racial disparities in VA benefits. Finally, because RFP No. 1 seeks non-public information, Plaintiffs are unable to access this information through other means.

While RFP No. 1 is on its face within the bounds of Rule 26, Plaintiffs have attempted, over multiple communications, to narrow the scope of RFP No. 1 in good faith. On September 27,



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

2024, Plaintiffs sent an email to Defendant with the following proposal regarding RFP Nos. 1, 23, and 25:

> Thank you for explaining your position why information about complaints may not be feasible to locate through a search of structured databases. Based on your representations, we agree that—at least based on the information available to us at this time—a structured database search may not be the best way of locating documents responsive to this RFP. Instead, we propose that Defendant identify the units and administrators of VA that are most likely to have received and responded to communications expressing concerns or raising questions regarding broader racial disparities in VA benefits adjudications since 1945, and search through those units' or administrators' records to produce communications and responses that relate to racial disparities in VA benefits decisions. We recognize that the entities within VA that have handled such communications and responses have changed over time, so our conversations may benefit from organizational charts that show which units or individuals handled such complaints over time. To be clear, we are looking for records from any unit that could have taken in a formal or informal complaint or similar communication regarding racial disparities, including but not limited to legislative affairs, VSO liaisons, public affairs and community engagement offices, and specific units designed to handle complaints. This may overlap to some extent with the custodians issue above, but this request is not limited to ESI searches.

Counsel did not respond to this proposal by email. In the parties' meet and confer on November 20, 2024, Plaintiffs again made this proposal. Plaintiffs' letter summarizing the meet and confer of November 20, 2024 further clarified our proposal:

> Plaintiffs proposed [by email on September 27, 2024] that Defendant focus on pulling complaints submitted by large institutional actors to units of VA dedicated to receiving such complaints. We made the same proposal during the [meet and confer on November 20, 2024], noting that this procedure would assist Defendant in reducing the burden of pulling such complaints.
>
> You noted that your burden objections to these Requests for Production still stand. We reiterated that our emphasis on institutional complaints was intended to reduce the burden on Defendant.
>
> We offered to send you a list of units within VA that we understand to take on a complaint-intake role. We explained that this list is not exhaustive, and only contains units of VA that have been established recently. We asked that Defendant produce an organizational chart explaining what other offices exist within VA that take in complaints from large institutional actors, and what offices have existed within VA over time.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

Plaintiffs' letter then enumerated fifteen potential units within VA that Plaintiffs understood to carry out a "complaint-intake" function. During the meet and confer, Plaintiffs further cabined this request. Plaintiffs explained that they seek only complaints sent to VA by large-scale, institutional actors. These actors would include Veterans Service Organizations, members of Congress and their staff, nonprofit organizations, or other "institutional" actors.

During the parties' meet and confer on December 19, 2024, Plaintiffs again clarified the scope of the Request. As summarized in Plaintiffs' December 23, 2024 letter following the meet and confer:

> You asked whether we were only interested in complaints from institutional actors, or whether we are also interested in complaints filed with Sterling Akin's office. We responded that Plaintiffs seek both. We stated, as we have said previously, that Plaintiffs do not seek individual disability compensation files that may have a stray comment regarding racial disparities or discrimination, but Plaintiffs do seek complaints submitted to Mr. Akins' office and letters or other communications to VA leadership since 1945 regarding racial disparities. These latter communications may include such materials as correspondence from the NAACP, veterans service organizations (VSOs), or the Congressional Black Caucus, and any records made in response. You clarified that there are a number of custodians on the existing custodian list that would be relevant here and proposed focusing on those and producing responsive documents if and when you find them. You also noted that if we have specific individuals whose files we want to review, you would consider it, but did not agree to search through potentially hundreds of custodians records to respond to this request. We clarified that the current custodian list is largely for email records of contemporary custodians and will not be responsive to Plaintiffs' requests for records dating back to 1945. We also clarified that further guidance regarding VA's organizational structure in prior decades would help us to narrow these quests, since we don't know how each office was organized in that time. However, we do know that there was ongoing public conversation regarding racial discrimination at VA in the late 1940s and thereafter, and Plaintiffs seek files relating to that conversation.
>
> You stated that you would not agree to undertake searches of paper files for large numbers of historical custodians or offices to find complaints. We did not reach consensus on this point and agreed to continue discussing.

To summarize, Plaintiffs have proposed narrowing the possible units within VA likely to have received complaints responsive to RFP No. 1 and the type of complainants most likely to have submitted such complaints. Plaintiffs then asked for an organizational chart that would help Plaintiffs develop additional proposals that would *further narrow the request*. As of this time, Defendant has refused to substantively engage with Plaintiffs' narrowed proposals.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

Plaintiffs reiterate that RFP No. 1 is limited in scope on its face and therefore is not unduly burdensome. Plaintiffs' proposals above constitute Plaintiffs' good-faith efforts to narrow the Request further and accommodate Defendant.

Additionally, the terms used in RFP No. 1 have clear definitions and are not susceptible to multiple conflicting interpretations. "Disparities" has the same definition as the thirty-five uses of the term in the 2023 Department of Veterans Affairs Equity Action Plan;[1] "racial disparities" refers to such disparities based on race. Insofar as other conflicting interpretations of these terms exist, Plaintiffs specify the terms' definitions here. Plaintiffs previously provided Defendant with definitions for these terms via email on July 15, 2024.

Finally, to the extent these records are stored in any digital format, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**Defendant's Objection:**

Defendant also objects to Request No. 1 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 1 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**<u>RFP 2</u>**

*2. All documents or records related to any internal investigations, audits, or reviews of racial disparities in VA housing, education, or disability compensation benefits for the time period from January 1, 1945 through December 31, 1964.*

**Defendant's Objection:**

Defendant objects to Request No. 2 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or

[1] U.S. Dep't of Veterans Affs., *Equity Action Plan*, Executive Order 13985 Implementation (2023), https://assets.performance.gov/cx/equity-action-plans/2023/EO_14091_VA_EAP_2023.pdf.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

alleged "racial disparities" in VA housing, education, or disability compensation benefits, for a 20-year time period beginning approximately 80 years ago. The terms "racial disparities," "internal investigation," "audit," and "review," are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 2 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 2 is not overbroad, unduly burdensome, or vague, nor does RFP No. 2 seek information beyond the scope of Rule 26. RFP No. 2 seeks information dating to the earliest date of Plaintiffs' injuries and is limited in scope to a description of and/or results of VA's internal investigations, audits, or reviews of racial disparities within a bounded time period. Moreover, Defendant has not offered specific details as to why and how the information RFP No. 2 seeks is unduly burdensome to gather, collect, and produce. *See, e.g.*, *Gross v. Lunduski*, 304 F.R.D. 136, 151 (W.D.N.Y. 2014) ("The party asserting a burdensomeness objection has the burden to establish the requests at issue are in fact unduly burdensome.").

The information sought regarding the investigations is directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims involve injuries resulting from the administration of VA benefits dating to 1945, and directly relevant to Plaintiffs' claims is VA leadership's supervision over VA benefits adjudication processes since 1945. Plaintiffs are entitled to foundational information describing how VA leadership has been made aware of the race of its benefits applicants and identified disparities therein. It is, therefore, relevant and proportional to the needs of the case to seek discovery dating back to 1945. Further, RFP No. 2 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 2 seeks information that will be crucial to resolving these issues, in that responsive documents will demonstrate the extent to which VA was aware of racial disparities in VA benefits. Finally, because RFP No. 2 seeks non-public information, Plaintiffs are unable to access this information through other means.

RFP No. 2 is also limited in scope and therefore not unduly burdensome. Plaintiffs seek documents or records arising out of VA's internal investigations, audits, or reviews of racial disparities across its benefits programs. Plaintiffs have previous defined the terms used in RFP No. 2 and they are not susceptible to multiple conflicting interpretations. "Disparities" has the same definition as the thirty-five uses of the term in the agency's 2023 Equity Action Plan;[2] "racial disparities" refers to such disparities based on race. "Internal investigation" means

[2] *Equity Action Plan*, *supra* note 1.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

investigations—as used in its ordinary meaning and in VA documents[3]—that VA conducted into its own administration of VA benefits programs. "Audit" is used in its ordinary meaning, including its use in VA documents.[4] "Review" is used in its ordinary meaning, including its use in VA documents.[5] Insofar as other conflicting interpretations of these terms exist, Plaintiffs specify the terms' definitions here. Plaintiffs previously provided Defendant with definitions for these terms via email on July 15, 2024.

Finally, to the extent these records are stored in any digital format, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**Defendant's Objection:**

Defendant also objects to Request No. 2 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 2 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 3**

*3. All documents or records regarding racial disparities in the administration of VA housing, education, or disability compensation benefits for the time period from January 1, 1945 through December 31, 1964.*

**Defendant's Objection:**

Defendant objects to Request No. 3 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "racial disparities" in VA housing, education, or disability compensation benefits, for a

[3] *See* VA Office of Inspector General, 2022-2026 Strategic Plan, https://www.vaoig.gov/sites/default/files/document/2025-01/VA%20OIG%20Strategic%20Plan_1.pdf (conduct "audits, inspections, reviews, and investigations").
[4] *Id.*
[5] *Id.*



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

20-year time period beginning approximately 80 years ago. The terms "racial disparities" and "administration" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 3 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 3 is not overbroad, unduly burdensome, or vague, nor does RFP No. 3 seek information beyond the scope of Rule 26. RFP No. 3 seeks information dating to the earliest date of Plaintiffs' injuries and is limited in scope to documents or records regarding racial disparities in the administration of benefits within a bounded time period.

Defendant has not offered specific details as to why and how the information RFP No. 3 seeks is unduly burdensome to gather, collect, and produce. *See Gross v. Lunduski*, 304 F.R.D. at 151 ("The party asserting a burdensomeness objection has the burden to establish the requests at issue are in fact unduly burdensome.").

The information sought regarding the documents and records is directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims involve injuries resulting from the administration of VA benefits dating to 1945, and Plaintiffs' claims emphasize VA leadership's supervision over VA's benefits adjudication processes since 1945. Plaintiffs are entitled to foundational information describing how VA leadership has been made aware of the race of its benefits applicants and identified disparities therein. It is, therefore, relevant and proportional to the needs of the case to seek discovery dating back to 1945. Further, RFP No. 3 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 3 seeks information that will be crucial to resolving the issues, in that responsive documents will demonstrate the extent to which VA was aware of racial disparities in VA benefits. Because RFP No. 3 seeks non-public information, Plaintiffs will be unable to access this information through other means.

RFP No. 3 is also limited in scope and therefore not unduly burdensome. Plaintiffs seek documents or records regarding the racial disparities in the administration of specific benefits. The terms used in RFP No. 3 have clear definitions and are not susceptible to multiple conflicting interpretations. "Disparities" has the same definition as the thirty-five uses of the term in the 2023 Department of Veterans Affairs Equity Action Plan;[6] "racial disparities" refers to such disparities based on race. The term "administration" is used in its ordinary meaning and refers to the action of dispensing or applying a benefit as understood by the use of the term used on a number of VA

---

[6] *Equity Action Plan*, *supra* note 1.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

forms.[7] Insofar as other conflicting interpretations of these terms exist, Plaintiffs specify the terms' definitions here. Plaintiffs previously provided Defendant with definitions for these terms via email on July 15, 2024.

While RFP No. 3 is limited in scope on its face and therefore satisfies Rule 26, Plaintiffs have attempted, over multiple communications, to narrow the scope of RFP No. 3 in order to accommodate Defendant's concerns. Plaintiffs incorporate their response below to RFP No. 5 in its entirety, including the description of Plaintiffs' sampling proposal. Finally, to the extent these records are stored in any digital format, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**Defendant's Objection:**

Defendant also objects to Request No. 3 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 3 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 4**

*4. All records identified in, referenced, or relied upon by Defendant in its responses to Plaintiffs' First and Second Set of Interrogatories to Defendant United States of America, regardless of the document's date.*

**Defendant's Objection:**

Defendant objects to Request No. 4 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential

[7] *See, e.g.*, VA Form 10-10HS (2024), https://www.va.gov/vaforms/medical/pdf/vha-10-10HS-fill.pdf ("If you provide VA your Social Security Number, VA will use it to administer your VA benefits.").



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

materials subject to deliberative process privileges. Plaintiffs seek information responsive to the Interrogatories that is not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 5**

*5. All documents, or records that analyze, describe, discuss, mention, or relate to the racial composition of applicants for housing, education, and/or disability benefits received or processed by VA for the time period from January 1, 1945 through December 31, 1964.*

**Defendant's Objection:**

Defendant objects to Request No. 5 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way, or "mention[s]" the "racial composition" of applicants for VA housing, education, or disability benefits, for a 20-year time period beginning approximately 80 years ago. The term "racial composition" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources, including, but not limited to individual VA benefits applications of non-parties to this litigation; Request No. 5 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 5 is not overbroad, unduly burdensome, or vague, nor does RFP No. 5 seek information beyond the scope of Rule 26. RFP No. 5 seeks information dating back to the earliest date of Plaintiffs' injuries and is limited in scope to documents or records that analyze, describe, discuss, mention, or relate to the racial composition of applicants within a bounded time period. Defendant has not offered specific details as to why and how the information RFP No. 5 seeks is unduly burdensome to gather, collect, and produce. *See Gross v. Lunduski*, 304 F.R.D. at 151 ("The party asserting a burdensomeness objection has the burden to establish the requests at issue are in fact unduly burdensome.").

The information sought regarding the documents and records is relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims involve injuries resulting from the administration of VA benefits dating to 1945, and Plaintiffs' claims emphasize VA leadership's supervision over VA's benefits adjudication processes since 1945. Plaintiffs are entitled to foundational information describing how VA leadership has been made aware of the race of its benefits applicants and identified disparities therein. It is, therefore, relevant and proportional to



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

the needs of the case to seek discovery dating back to 1945. Further, RFP No. 5 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 5 seeks information that will be crucial to resolving these issues, in that responsive documents will demonstrate the extent to which VA was aware of racial disparities in VA benefits. Moreover, as Judge Underhill clarified in his February 13, 2025 Order Denying Motion for Certification to Pursue an Interlocutory Appeal, "systemic racism, true to its name, can only be measured by looking at the system as a whole." ECF 115. Therefore, documents responsive to RFP No. 5 are necessary to resolve the question of whether there was systemic racism at issue in VA's adjudication of benefits—the central question in this case. Finally, Because RFP No. 5 seeks non-public information, Plaintiffs will be unable to access this information through other means.

RFP No. 5 is also limited in scope and therefore not unduly burdensome. Plaintiffs seek documents or records that analyze, describe, discuss, mention, or relate to the racial composition of applicants for housing, education, and/or disability benefits received or processed by VA during a specific time period. The terms used in RFP No. 5 have clear definitions and are not susceptible to multiple conflicting interpretations. "Racial composition" is used in its ordinary meaning and as used by VA.[8] Insofar as other conflicting interpretations of these terms exist, Plaintiffs specify the terms' definitions here. Defendant may also refer to email correspondence from July 15, 2024, where Plaintiffs previously provided Defendant with a definition for this term.

While RFP No. 5 on its face remains within the bounds of Rule 26, Plaintiffs have attempted, over multiple communications, to narrow the scope of RFP No. 5 in order to accommodate Defendant. In RFP No. 5, Plaintiffs seek data showing benefits grant rates for applicants over time, broken down by race. To reduce Defendant's burden, Plaintiffs developed a proposal to sample the relevant data and reduce this burden. On November 18, 2024, Plaintiffs sent Defendant the following proposal by email:

> Sampling proposal
>
> Plaintiffs seek data on veterans' initial applications to VA for disability compensation since 1945. Plaintiffs' basic proposal is that VA use a random number generator to identify a small sample of initial disability claims from each of three time periods, as set forth below. Plaintiffs can provide an example program for accomplishing this random number generation procedure, coded in STATA, R, or SAS. If VA were instead to construct its own program, Plaintiffs request that VA document the process and provide a copy of the statistical program used and the seed for the random number generator to help us replicate the sample.

---

[8] *See, e.g.*, *Publication Briefs: Veterans with Atrial Fibrillation at VAMCs Serving More Minorities Are Less Likely to Receive Anitcoagulation for Stroke Prevention*, VA Health Systems Research, U.S. Dep't of Veterans Affs., (2024), https://www.hsrd.research.va.gov/research/citations/PubBriefs/articles.cfm?RecordID=1266 (VA-funded research study in which "[r]esearchers examined the *racial/ethnic composition*—defined as the proportion of Veterans from minoritized racial/ethnic groups" (emphasis added)).



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

Sample size

Plaintiffs propose stratifying this sample by splitting initial disability claims into three eras: (1) initial disability claims submitted to VA from 1945 to 1960; (2) from 1961 to 1990; and (3) from 1991 to the present. Plaintiffs propose VA pulls 5500 initial disability claims from each era, using the random number generation procedure above, for a total of 16,500 initial disability claims. We are limiting the sample size accordingly for purposes of preparing a motion for class certification, and solely in an effort to compromise with you given your prior assertions that producing a larger sample may be burdensome. However, we reserve the right to request a larger sample or to modify the stratification parameters if Defendant argues that the sample size is not statistically significant or sufficiently representative, or if a class is certified.

Relevant variables

For each initial disability claim pulled, Plaintiffs propose including the following variables associated with the claim:

- The date of the initial disability claim.
- The type of disability compensation claim.
- The race, ethnicity, and gender of the claimant.
- Whether the claim was granted or denied.
- If the claim was granted, the disability rating (0% - 100%) assigned by VA.
- The VA regional office handling the claim.
- The claimant's dates of service, as of the filing of the initial disability claim.
- The claimant's branch(es) of service, as of the filing of the initial disability claim.
- Whether the claimant was deployed to a combat zone.
- The claimant's last rank, as of the filing of the initial disability claim.
- The claimant's military occupational specialty (MOS), as of the filing of the initial disability claim.
- The claimant's character of discharge, as of the filing of the initial disability claim.

Finally, Plaintiffs propose Defendant provides, for each year from 1945 to 2024, the total number of initial claims processed by the VA, overall and by regional office.

On November 20, 2024, Plaintiffs described this proposal further during a meet and confer. Plaintiffs explained that the proposal was designed with Defendant's burden in mind. The proposal seeks data associated with only 15,000 initial benefits claims. Defendant noted that this proposal would likely require Defendant to pull many physical files containing data on veterans from earlier



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

time periods. Plaintiffs noted again that the sampling proposal was designed to limit the number of files, physical or electronic, that Defendant would need to pull to generate the relevant data. Plaintiffs then answered Defendant's questions on the proposal in detail, describing Plaintiffs' proposed variables, trifurcation plan, and various logistical proposals. Defendant responded that it would discuss the proposal internally, then return to Plaintiffs with additional questions.

On December 19, 2024, the parties engaged in another meet and confer. During the meet and confer, Defendant noted two primary objections to the proposal. First, Defendant explained that it had concerns that pulling veterans' files could infringe on veterans' privacy. Plaintiffs responded that they would consult internally about eliminating certain aspects of the data sought by the proposal and return to Defendant. Plaintiffs now propose that if Defendant will provide race data for each veteran in the sample, whether from VA files or, if necessary, from that veteran's Defense Department records, then Plaintiffs will forego their request for information regarding whether the veteran was deployed to a combat zone. Additionally, Plaintiffs' sampling proposal does not require that Defendant provide name or address information for veterans in the sample.

Second, Defendant noted that digitized data of the kind sought by the proposal was not readily available, so Defendant would likely need to pull many paper files. Plaintiffs reiterated that the proposal as a whole was designed to limit the number of paper files that Defendant would need to pull. Defendant responded that it was unwilling to pull a large number of paper files. Plaintiffs then sent Defendant a letter summarizing the meet and confer, which contained eight questions concerning the manner in which paper files are stored at VA. If answered, those questions would allow Plaintiffs to consider further narrowing their request. To date, Plaintiffs have not heard back about these questions.

More to the point, Defendant has neither confirmed nor denied its intention to abide by the sampling proposal, despite Plaintiffs' good-faith efforts to narrow RFP No. 5.

**Defendant's Objection:**

Defendant also objects to Request No. 5 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 5 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

**RFP 6**

*6. All documents or records regarding or related to required training and/or supervision of individuals responsible for processing and/or adjudicating claims for VA housing, education or disability compensation benefits for the time period from January 1, 1945 through December 31, 1964, in the following areas:*

*a. Discrimination, unconscious bias, implicit bias, cultural competence, and/or diversity;*
*b. Whether or how to weigh, consider, or interpret the following characteristics of applicants for housing, education, and/or disability benefits: race, ethnicity, amount of income, source of income, employment status, education level, and/or rank on date of discharge*

**Defendant's Objection:**

Defendant objects to Request No. 6 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of documents for a 20-year time period beginning approximately 80 years ago. The terms "unconscious bias," "implicit bias," "cultural competence," "diversity," and "interpret," are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 6 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 6 is not overbroad, unduly burdensome, or vague, nor does RFP No. 6 seek information beyond the scope of Rule 26. RFP No. 6 seeks information dating back to the earliest date of Plaintiffs' injuries and is limited in scope to documents and/or records bearing specifically on training and/or supervision of individuals processing and/or adjudicated VA benefits claims within a bounded time period. Defendant has not offered specific details as to why and how the information RFP No. 6 seeks is unduly burdensome to gather, collect, and produce. *See Gross v. Lunduski*, 304 F.R.D. at 151 ("The party asserting a burdensomeness objection has the burden to establish the requests at issue are in fact unduly burdensome."). Further, Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data.

The documents and/or records sought regarding training are directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims involve injuries resulting from the administration of VA benefits dating to 1945, and Plaintiffs' claims emphasize VA leadership's supervision over VA's benefits adjudication processes since 1945. Plaintiffs are entitled to foundational information describing how VA leadership trained and/or supervised the employees administering these benefits programs. It is, therefore, relevant and proportional to the needs of



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

the case to seek discovery dating back to 1945. Further, RFP No. 6 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 6 seeks information that will be crucial to resolving these issues, in that responsive documents will demonstrate the extent to which VA was aware of racial disparities in VA benefits. Because RFP No. 6 seeks non-public information, Plaintiffs will be unable to access this information through other means.

RFP No. 6 is also limited in scope and therefore not unduly burdensome. Plaintiffs seek documents or records, including communications and internal reports, arising out of VA's training and/or supervision of employees administering its benefits programs. The terms used in RFP No. 6 have clear definitions and are not susceptible to multiple conflicting interpretations. "Unconscious bias" is used in its ordinary meaning and as used by the VA's Equity Assurance Plan.[9] "Implicit bias" is used in its ordinary meaning and as used by the VA's Equity Assurance Plan.[10] "Cultural competence" is used in its ordinary meaning and as used by the VA Committee on Minority Veterans.[11] "Diversity" is used in its ordinary meaning and as used by the Center for Minority Veterans.[12] "Interpret" is used in its ordinary meaning. Insofar as other conflicting interpretations of these terms exist, Plaintiffs specify the terms' definitions here. Regarding the terms "unconscious bias," "cultural competence," "diversity," and "interpret," Plaintiffs previously provided Defendant with definitions for these terms via email on July 15, 2024.

Finally, to the extent these records are stored in any digital format, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**Defendant's Objection:**

Defendant also objects to Request No. 6 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

---

[9] Press Release, VA Announces 2024 Equity Action Plan, New Actions to Ensure That All Veterans Receive the Health Care and Benefits They Earned, U.S. Dep't of Veterans Affs. (Feb. 14, 2024, 6:00 AM), https://news.va.gov/press-room/va-announces-2024-equity-action-plan-new-actions-to-ensure-that-all-veterans-receive-the-health-care-and-benefits-they-earned/ (outlining plan requiring "all VBA employees to take unconscious bias and implicit bias training").

[10] *Id.*

[11] *Annual Report of the Advisory Committee on Minority Veterans*, Advisory Committee on Minority Veterans, U.S. Dep't of Veterans Affs. (July 1, 2011), https://www.va.gov/centerforminorityveterans/docs/acmv/acmvAnnualReport2011.pdf (recommending that VA "update the [diversity and inclusion] training modules . . . to include the topics of cultural competence and emotional intelligence").

[12] *Center for Minority Veterans*, U.S. Dep't of Veterans Affs. (last updated May 20, 2024), https://www.va.gov/centerforminorityveterans/about/index.asp ("We acknowledge the diversity of our veterans and profoundly value the strength and unique character this diversity has contributed to our great Nation.").



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 6 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 7**

*7. All documents or records prepared for, provided during, or used in national or agency-wide initial trainings for VA adjudicators or VA employees in equivalent predecessor positions, regarding or related to the following areas for the time period from January 1, 1945 through December 31, 1964:*

*a. Housing, education, and/or disability compensation benefits entitlement determinations;*
*b. Character of discharge determinations;*
*c. Disability rating determinations.*

**Defendant's Objection:**

Defendant objects to Request No. 7 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of documents provided during trainings that relate in any way to housing, education, or disability entitlement determinations, as well as character of discharge and disability ratings determinations, for a 20-year time period beginning approximately 80 years ago. The terms "universal initial trainings," and "equivalent predecessor positions" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 7 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 7 is not overbroad, unduly burdensome, or vague, nor does RFP No. 7 seek information beyond the scope of Rule 26. RFP No. 7 seeks information dating to the earliest date of Plaintiffs' injuries and is limited in scope to documents and/or records bearing specifically on



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

national or agency-wide trainings for VA adjudicators and/or employees within a bounded time period.

Defendant has not offered specific details as to why and how the information RFP No. 7 seeks is unduly burdensome to gather, collect, and produce. *See Gross v. Lunduski*, 304 F.R.D. at 151 ("The party asserting a burdensomeness objection has the burden to establish the requests at issue are in fact unduly burdensome."). Moreover, Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data.

The documents and/or records sought regarding national and/or agency-wide trainings are directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims involve injuries resulting from the administration of VA benefits dating back to 1945, and Plaintiffs' claims emphasize VA leadership's supervision over VA's benefits adjudication processes since 1945. Plaintiffs are entitled to foundational information describing how VA leadership trained and/or supervised the employees administering these benefits programs. It is, therefore, relevant and proportional to the needs of the case to seek discovery dating back to 1945. Further, RFP No. 7 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New* York, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 7 seeks information that will be crucial to resolving the issues, in that responsive documents will demonstrate the extent to which VA was aware of racial disparities in VA benefits. Finally, because RFP No. 7 seeks non-public information, Plaintiffs will be unable to access this information through other means.

RFP No. 7 is also limited in scope and therefore not unduly burdensome. Plaintiffs seek documents or records arising out of VA's training and/or supervision of employees administering its benefits programs. The terms used in RFP No. 7 have clear definitions and are not susceptible to multiple conflicting interpretations. "Universal initial trainings" though not used explicitly by the Plaintiffs, refer here to the ordinary meaning of "initial training" as used by the U.S. Government Accountability Office, among others.[13] "Equivalent predecessor positions" means VA employees who performed roles substantially similar to current VA adjudicators. Insofar as other conflicting interpretations of these terms exist, Plaintiffs specify the terms' definitions here.

**Defendant's Objection:**

Defendant also objects to Request No. 7 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

---

[13] Examining Training Requirements of Veterans Benefits Administration Claims Processing Personnel, Hearing before the Subcomm. on Disability Assistance and Memorial Affairs of the Committee on Veteran's Affairs, 111 Cong. 98 (2010) (referring to "orientation training" in the first stage of the training system VBA requirs for VSRs and RVSRs).



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 7 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 8**

*8. All documents or records that analyze, describe, discuss, mention, or relate to the relationship between claims outcomes and the following: amount of income, source of income, employment status, education level, character of discharge, rank on date of discharge, and/or VA facilities through which the application was processed for the time period from January 1, 1945 through December 31, 1964.*

**Defendant's Objection:**

Defendant objects to Request No. 8 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to benefits claims determinations of applicants for VA housing, education, or disability benefits and their amount of income, source of income, employment status, education level, character of discharge, rank on date of discharge, or where the claims were processed, for a 20-year time period beginning approximately 80 years ago. The phrase "relationship between claims outcomes and . . . racially correlated characteristics" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources, including, but not limited to individual VA benefits applications of non-parties to this litigation; Request No. 8 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 8 is not overbroad, unduly burdensome, or vague, nor does RFP No. 8 seek information beyond the scope of Rule 26. RFP No. 8 seeks information dating back to the earliest date of Plaintiffs' injuries and is limited in scope to a documents or records that analyze, describe, discuss, mention, or relate to the relationship between claims outcomes in specific areas within a bounded time period. Defendant has not offered specific details as to why and how the information RFP No. 8 seeks is unduly burdensome to gather, collect, and produce. *See Gross v. Lunduski*, 304 F.R.D. at 151 ("The party asserting a burdensomeness objection has the burden to establish the



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

requests at issue are in fact unduly burdensome."). What is more, Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data.

The information sought regarding the documents/records is directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims involve injuries resulting from the administration of VA benefits dating back to 1945, and Plaintiffs' claims emphasize VA leadership's supervision over VA's benefits adjudication processes since 1945. Plaintiffs are entitled to foundational information describing how VA leadership has been made aware of the race of its benefits applicants and identified disparities therein. It is, therefore, relevant and proportional to the needs of the case to seek discovery dating back to 1945. Further, RFP No. 8 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York,* 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 8 seeks information that will be crucial to resolving these issues, in that responsive documents will allow Plaintiffs to perform an accurate statistical analysis of data provided by Defendant. Finally, because RFP No. 8 seeks non-public information, Plaintiffs will be unable to access this information through other means.

RFP No. 8 is also limited in scope and therefore not unduly burdensome. Plaintiffs seek documents or records arising out of VA's internal investigations, audits, or reviews across its benefits programs. The terms used in RFP No. 8 have clear definitions and are not susceptible to multiple conflicting interpretations. The phrase "relationship between claims outcomes and . . . racially correlated characters" is not specifically in the RFP; however, Defendant can refer to email correspondence from July 26, 2024, where Plaintiffs previously provided a definition for the term "racially correlated characteristics," and to email correspondence from July 15, 2024, where Plaintiffs previously provided a definition for the term "relationship."

While RFP No. 8 is limited in scope on its face and therefore satisfies Rule 26, Plaintiffs have attempted, over multiple communications, to narrow the scope of RFP No. 8 in order to accommodate Defendant.

**Defendant's Objection:**

Defendant also objects to Request No. 8 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 8 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege,



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 9**

*9. All documents or records that describe, discuss, mention, or relate to data collection and retention policies or practices in VA's housing, education, and disability compensation benefits programs for the time period from January 1, 1945 through December 31, 1964.*

**Defendant's Objection:**

In particular, Defendant objects to Request No. 9 as overbroad, unduly burdensome, and seeking information beyond the scope of Rule 26.

As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to VA's data collection and retention practices, for a 20-year time period beginning approximately 80 years ago.

**Plaintiffs' Response:**

RFP No. 9 is not overbroad, unduly burdensome, or vague, nor does RFP No. 9 seek information beyond the scope of Rule 26. RFP No. 9 seeks information dating to the earliest date of Plaintiffs' injuries and is limited in scope to documents and/or records bearing specifically on data collection and retention policies in VA benefits programs within a bounded time period.

Defendant has not offered specific details as to why and how the information RFP No. 9 seeks is unduly burdensome to gather, collect, and produce. *See, e.g., Gross v. Lunduski*, 304 F.R.D. at 151 ("The party asserting a burdensomeness objection has the burden to establish the requests at issue are in fact unduly burdensome.").

The documents and/or records sought regarding data collection and retention policies in VA benefits programs are directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims involve injuries resulting from the administration of VA benefits dating back to 1945, and Plaintiffs' claims emphasize VA leadership's supervision over VA's benefits adjudication processes since 1945. Plaintiffs are entitled to foundational information describing how VA retained data that would illustrate the existence and extent of racial disparities in VA benefits programs. It is, therefore, relevant and proportional to the needs of the case to seek discovery dating back to 1945. Further, RFP No. 9 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 9 seeks information that will be crucial to resolving the issues, in that responsive documents will assist Plaintiffs in proposing additional ways to cabin their requests, including by further stratifying the sampling proposal discussed in Plaintiffs' response to RFP No. 5. Finally, because RFP No. 9 seeks non-public information, Plaintiffs will be unable to access this information through other means.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

**Defendant's Objection:**

Defendant also objects to Request No. 9 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 9 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 10**

*10. All documents or records that describe or define the role and responsibilities of the Center for Minority Veterans ("Center"), detail its interaction and integration with other departments or units within the Department of Veterans Affairs, discuss or refer to its data collection practices, and/or include complete lists of all individuals who have held the position of Director at the Center for the time period from January 1, 1994 through the present.*

**Defendant's Objection:**

Defendant objects to Request No. 10 as overbroad, unduly burdensome, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to the Center for Minority Veteran's role, responsibilities, and data collection and retention practices for a time period of over 30 years. "Interaction" and "integration" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 10 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 10 is not overbroad, unduly burdensome, or vague, nor does RFP No. 10 seek information beyond the scope of Rule 26. RFP No. 10 is limited in scope to documents and/or records bearing specifically on the role and responsibilities of the Center for Minority Veterans within a bounded time period.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

Defendant has not offered specific details as to why and how the information RFP No. 10 seeks is unduly burdensome to gather, collect, and produce. *See, e.g., Gross v. Lunduski*, 304 F.R.D. at 151 ("The party asserting a burdensomeness objection has the burden to establish the requests at issue are in fact unduly burdensome."). Moreover, Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data.

The documents and/or records sought regarding the Center for Minority Veterans are directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims emphasize VA leadership's supervision over VA benefits adjudication processes plagued by racial disparities. Plaintiffs are entitled to foundational information describing the role, responsibilities, work, and personnel of a key VA Center focused on minority veterans. It is, therefore, relevant and proportional to the needs of the case to seek such discovery. Further, RFP No. 10 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 10 seeks information that will be crucial to resolving the issues, in that responsive documents will demonstrate the extent to which VA was aware of racial disparities in VA benefits through its interactions with the Center for Minority Veterans. Finally, because RFP No. 10 seeks non-public information, Plaintiffs will be unable to access this information through other means.

RFP No. 10 is also limited in scope and therefore not unduly burdensome. Plaintiffs seek documents or records related specifically to the Center for Minority Veterans. The terms used in RFP No. 10 have clear definitions and are not susceptible to multiple conflicting interpretations. "Interaction" is used in its ordinary meaning. "Integration" is used in its ordinary meaning. Insofar as other conflicting interpretations of these terms exist, Plaintiffs specify the terms' definitions here. Plaintiffs previously provided Defendant with definitions for these terms via email on October 9, 2024.

Finally, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**Defendant's Objection:**

Defendant also objects to Request No. 10 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 10 that are not protected from disclosure by the attorney-client privilege,



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**Defendant's Objection from October 22, 2024 Letter:**

Although your letter purports to "narrow" this Request, it instead seeks more information. Specifically, the letter states that Plaintiffs agree to "narrow" the request to "(a) records sufficient to show [information regarding the CMV] and (b) all records which relate to actual or suspected racial disparities in VA housing, education, or disability compensation benefits" (emphasis added). Subpart (b) seeks documents that are nowhere called for by Request 10. Defendant objects to this attempted addition through your letter and will not respond to the same.

**Plaintiffs' Response:**

In Plaintiffs' October 9, 2024 letter, Plaintiffs did not seek information not already requested in RFP No. 10. Identifying and/or remedying "actual or suspected racial disparities" in VA benefits programs is squarely within the Center's mandate: "to ensure all veterans receive equal service regardless of race, origin, religion, or gender."[14] Plaintiffs' letter request for records related to racial disparities did not expand, but merely clarified, the scope of the original request. Such records fall within the scope of the original request, as it requested documents and/or records related to the role and responsibilities of the Center, the Center's interaction with other VA departments, and the Center's data collection practices.

**<u>RFP 11</u>**

*11. All documents or records, including but not limited to emails, memos, letters, notes, text messages, and electronic documents, created, sent, received, copied, or maintained by the following persons, or in which the following persons are a participant, for the following periods, concerning (i) racial disparities, (ii) research regarding potential racial disparities, (iii) data collection and retention policies or practices, and (iv) the 2017-18 VA analysis regarding racial disparities in PTSD claims, in VA's housing, education, and disability compensation benefits programs:*

*a. Mark Seastrom from June 1, 2012 to the present;*
*b. Margarita Devlin from May 1, 2018 to January 1, 2021;*
*c. Beth Murphy from July 1, 2016 to the present;*
*d. Willie C. Clark Sr. from December 1, 2016 to the present;*
*e. Paul Lawrence from April 1, 2018 to January 1, 2021;*
*f. Dennis May from October 1, 2017 to the present;*
*g. Tim Goliver from April 1, 2012 to the present;*
*h. Elaine Saiz from April 1, 2022 to the present.*

[14] *Center for Minority Veterans*, U.S. Dep't of Veterans Affs. (last updated May 20, 2024), https://www.va.gov/centerforminorityveterans/about/index.asp.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

**Defendant's Objection:**

Defendant objects to Request No. 11 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 11 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**Defendant's Objection:**

As drafted, the Request seeks untoward volumes of data, from a myriad of sources, including but not limited to individual personal identifiable information or personal health information of non-parties to this litigation. Defendant objects to Request No. 11 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. "Racial disparities" is not defined and is susceptible to multiple conflicting interpretations.

As drafted, Request No. 11 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 11 is not overbroad, unduly burdensome, or vague, nor does RFP No. 11 seek information beyond the scope of Rule 26. RFP No. 11 is limited in scope to documents and/or records created, sent, received, copied, or maintained by a bounded group of individuals within a bounded time period on defined topics.

Defendant has not offered specific details as to why and how the information RFP No. 11 seeks is unduly burdensome to gather, collect, and produce. *See Gross v. Lunduski*, 304 F.R.D. at 151 ("The party asserting a burdensomeness objection has the burden to establish the requests at issue are in fact unduly burdensome."). Further, Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data.

The documents or records sought are directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims emphasize VA leadership's supervision over VA



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

benefits adjudication processes plagued by racial disparities. Plaintiffs are entitled to foundational information describing the work and/or communications of VA personnel who have created, maintained, or are in possession of records that would further substantiate Plaintiffs' injuries. It is, therefore, relevant and proportional to the needs of the case to seek such discovery. Further, RFP No. 11 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 11 seeks information that will be crucial to resolving the issues, in that responsive documents will demonstrate the extent to which VA was aware of racial disparities in VA benefits. Because RFP No. 11 seeks non-public information, Plaintiffs will be unable to access this information through other means.

RFP No. 11 is also limited in scope and therefore not unduly burdensome. The terms used in RFP No. 11 have clear definitions and are not susceptible to multiple conflicting interpretations. "Disparities" has the same definition as the thirty-five uses of the term in the 2023 Department of Veterans Affairs Equity Action Plan;[15] "racial disparities" refers to such disparities based on race. Insofar as other conflicting interpretations of this term exist, Plaintiffs specify the term's definition here. Plaintiffs previously provided Defendant with definitions for these terms via email on July 15, 2024.

Finally, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**RFP 12**

*12. All documents or records that describe, discuss, mention, or relate to the procedures, protocols, training materials, guidelines, audits, assessments, trends, patterns, and statistical data concerning the processing of claims under the Federal Tort Claims Act by the Department of Veterans Affairs from January 1, 1945 through the present.*

**Defendant's Objection:**

Defendant objects to Request No. 12 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to procedures, protocols, guidelines, assessments, and data concerning any claims made to the VA under the Federal Tort Claims Act (the "FTCA"), regardless of the nature of those claims or their outcomes, for a period of over 80 years. "Assessments," "audits," "trends," and "processing of claims" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 12 is neither relevant to any party's claim or defense nor proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the

[15] *Equity Action Plan*, *supra* note 1.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 12 is not overbroad, unduly burdensome, or vague, nor does RFP No. 12 seek information beyond the scope of Rule 26. Notwithstanding the foregoing, Plaintiffs agree to accept Defendant's production as sufficient to satisfy RFP No. 12.

**RFP 13**

*13. All documents or records sent from or to the Government Accountability Office (GAO) or any GAO investigators by VA entities, including but not limited to the Office of Performance, Analysis and Integrity (PA&I), the Office of Congressional and Legislative Affairs (OCLA), the Office of Public and Intergovernmental Affairs (OPIA), and all components of the Office of the Secretary, concerning (i) racial disparities, (ii) research regarding potential racial disparities, and (iii) racial data collection.*

**Defendant's Objection:**

In particular, Defendant objects to Request No. 13 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. As drafted, the Request seeks untoward volumes of data, from a myriad of sources, over an unlimited period of time. Defendant objects to Request No. 13 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. "Racial disparities" and "racial data" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, Request No. 13 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, nor does Plaintiff request confidential materials prepared by or for counsel in anticipation of litigation. Plaintiffs seek information responsive to RFP No. 13 that is not protected from disclosure by the attorney-client, attorney work product, and/or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

Further, RFP No. 13 is not overbroad, unduly burdensome, vague, or seeking information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 13 seeks is unduly burdensome to gather, collect, and



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

produce. *Gross v. Lunduski*, 304 F.R.D. at 151. Further, RFP No. 13 seeks information dating to the earliest date of Plaintiffs' injuries, which inherently limits the period of time from which data would be responsive. This is squarely within the scope of Rule 26(b)(1). Second, for the purposes of this Request, "disparities" has the same definition as the thirty-five uses of the term in the 2023 Department of Veterans Affairs Equity Action Plan.[16] "Racial disparities" refers to disparities based on race. Plaintiffs previously provided Defendant with definitions for these terms via email on July 15, 2024. Lastly, Plaintiffs' request is limited in scope to a description of the process by which Defendant identifies and addresses racial disparities in its claims adjudication process and benefits determinations. Plaintiffs also propose to narrow RFP No. 13 so as to request only documents and records relating to (i) racial disparities in benefits adjudications, (ii) research regarding potential racial disparities in benefits adjudications, and (iii) racial data collection relating to benefits adjudications.

As to this specific objection, Plaintiffs allege that Defendant failed to redress racial disparities in its benefits adjudications since 1945. As a result, Plaintiffs' request for documents concerning (i) racial disparities, (ii) research regarding potential racial disparities, and (iii) racial data collection within VA is incontrovertibly relevant to Plaintiffs' claims and within the scope of Rule 26. Simply, RFP No. 13 seeks information directly related to Plaintiffs' claims. Further, to the extent these records are stored in any digital format and are not centrally organized, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**RFP 14**

*14. All documents or records that describe, discuss, mention, or relate to an organizational chart outlining the geographical allocation of claims within the Veterans Benefits Administration's National Work Queue.*

**Defendant's Objection:**

In particular, Defendant objects to Request No. 14 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, form, or date, that relates in any way to an "organizational chart" of "geographical allocation of claims" within the National Work Queue. "Outlining" and "geographical allocation of claims" are not defined and susceptible to multiple conflicting interpretations.

As drafted, Request No. 14 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 14 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

---

[16] *Equity Action Plan*, *supra* note 1.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

**Plaintiffs' Response:**

RFP No. 14 is not overbroad, unduly burdensome, vague, or seeking information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 14 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. It seeks information dating to the earliest date of Plaintiffs' injuries and is definitively limited in scope to information relating to the geographic distribution of claims within the National Work Queue, according to their respective Regional Offices. Notwithstanding the foregoing, Plaintiffs agree to narrow RFP No. 14 so as to request only VA organizational charts or similar documents from the relevant period. Plaintiffs withdraw so much of RFP No. 14 as requests "[a]ll documents or records that describe, discuss, mention, or relate to" such organizational charts.

"Outlining" is given its ordinary meaning in this context. Plaintiffs request documents or records that describe, discuss, mention, or relate to an organizational chart "depicting" or "summarizing" the geographical allocation of claims within the VBA's National Work Queue. This is a discrete request that is undoubtedly proportional to the needs of the case. Lastly, Plaintiffs do not seek confidential communications between attorney and client, nor does Plaintiff request confidential materials prepared by or for counsel in anticipation of litigation. Defendant has failed to describe how RFP No. 14 could be construed as requesting privileged or confidential information. As such, Plaintiffs seek information responsive to RFP No. 14 that is not protected from disclosure by the attorney-client, attorney work product, and/or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 15**

*15. All documents or records that describe, discuss, mention, or relate to the reasons that the Advisory Committee on Minority Veterans (ACMV) requested the VA to study racial data in the administration of veterans benefits, including any communications between ACMV and VA and those commutations internal to ACMV and VA about this matter from January 1, 1994 to the present.*

**Defendant's Objection:**

In particular, Defendant objects to Request No. 15 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that describes, discusses, mentions, or relates in any way to any ACMV "request[] [to] the VA to study racial data in the administration of veterans benefits" for a time period of over 30 years. "Study" and "racial data" are not defined and are susceptible to multiple conflicting interpretations.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 15 is not proportional to the needs of the case, considering the importance of the issues at stake

in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 15 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. Defendant further objects to the Request to the extent it seeks documents outside Defendant's possession, custody, or control.

**Plaintiffs' Response:**

RFP No. 15 is not overbroad, unduly burdensome, vague, or seeking information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 15 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data. Plaintiffs seek information dating to a specific date of January 1, 1994 and is limited in scope to the singular request that VA studies racial data in the administration of benefits. Moreover, RFP No. 15 requests communications between a single committee, the Advisory Committee on Minority Affairs, and VA, as well as internal communications about that lone issue. The terms used in this Request have clear definitions and are not susceptible to multiple conflicting interpretations. Plaintiffs give "study" its ordinary meaning as a noun. And "racial data" are characterized according to VA's own evidence-based synthesis program reports.[17]

RFP No. 15 is proportional to the needs of the case and simply does not seek untoward volumes of data from myriad sources. Instead, RFP No. 15 specifies an exact date from when Defendant should conduct its search of communications between and within only two entities on topics directly relevant to Plaintiffs' claims. Further, Plaintiffs do not seek confidential communications between attorney and client, nor does Plaintiff request confidential materials prepared by or for counsel in anticipation of litigation. Rather, Plaintiffs seek information responsive to RFP No. 15 that is not protected from disclosure by the attorney-client, attorney work product, and/or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

Finally, to the extent these records are stored in any digital format and are not centrally organized, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

[17] *See, e.g.*, K. Peterson et al., *Evidence Brief: Update on Prevalence of and Interventions to Reduce Racial and Ethnic Disparities within the VA*, ESP Report, https://www.hsrd.research.va.gov/publications/esp/healthdisparities.pdf (2015).



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

**RFP 16**

*16. All agendas for and minutes of meetings of the ACMV from January 1, 1994 to the present.*

**Defendant's Objection:**

In particular, Defendant objects to Request No. 16 as overbroad, unduly burdensome, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any ACMV "agendas" or "minutes," no matter the subject matters discussed therein, for a time period of over 30 years. Defendant objects to Request No. 16 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. Defendant further objects to the Request to the extent it seeks documents outside Defendant's possession, custody, or control.

As drafted, Request No. 16 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues.

**Plaintiffs' Response:**

RFP No. 16 is not overbroad, unduly burdensome, or seeking information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 16 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. ACMV's mission includes advising on matters related to minority veterans and seeking input from such veterans; as a result, ACMV meeting notes are directly relevant to Plaintiffs' claims of racial disparities in VA benefits. Thus, on both substance and procedure, Defendant's objection that RFP No. 16 is unduly burdensome is inapposite.

Further, Plaintiffs seek information from an identified date, which also reduces the burden of RFP No. 16. Additionally, Plaintiffs do not seek information responsive to RFP No. 16 that is protected from disclosure by the attorney-client, attorney work product, and/or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

Finally, meeting minutes and agendas produced by the ACMV are not outside of Defendant's possession, custody, or control. Appointed by Secretary of VA, the ACMV was established in part to directly advise the Secretary and Congress on the agency's administration of benefits, healthcare, and other services to minority beneficiaries. As such, the Committee's meeting minutes and agendas are within Defendant VA's reach.

RFP No. 16 does not seek information beyond the scope of Rule 26, as the information sought regarding the investigations is directly relevant to Plaintiffs' claims and proportional to the needs of the case. The ACMV stood up in 1994, so it is proportional to the needs of the case to



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

seek discovery dating back to that year. Additionally, RFP No. 16 is proportional to the needs of the case because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York,* 502 F. Supp. 3d at 695 (internal quotation omitted). As such, RFP No. 16 will be important to resolving the issues. Finally, because RFP No. 16 seeks non-public information, Plaintiffs will be unable to access this information through other means.

**RFP 17**

*17. All documents or records, including but not limited to directives or memos, issued in response to concerns about racial disparities within the VA, specifically documents or communications that describe, discuss, mention, or relate to any restrictions, such as prohibiting discussion of the results of studies or surveys indicating racial disparities, from January 1, 1945 to the present.*

**Defendant's Objection:**

In particular, Defendant objects to Request No. 17 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "concerns" regarding "racial disparities within the VA" for a period of over 80 years. "Concerns," "racial disparities," "restrictions," "prohibiting discussion," and "within the VA" are not defined and are susceptible to multiple conflicting interpretations.

**Plaintiffs' Response:**

RFP No. 17 is not overbroad, unduly burdensome, vague, or seeking information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 17 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. RFP No. 17 is appropriately limited in scope because it does not require Defendant to parse the nature of the concerns in a responsive document. Rather, RFP No. 17 seeks any document that relates to concerns about racial disparities within the VA and its adjudication system for the time relevant to Plaintiffs' claims. Thus, the RFP limits the search for responsive document discretely by content and by date.

For the purposes of this Request, "disparities" has the same definition as the thirty-five uses of the term in the 2023 Department of Veterans Affairs Equity Action Plan.[18] "Racial disparities" refers to disparities based on race. Plaintiffs previously provided Defendant with definitions for these terms via email on July 15, 2024. "Within the VA" is not subject to multiple conflicting interpretations. Since Plaintiffs' claims concern VA leadership's supervision over the agency's benefits adjudication process, documents originating from any organizational entity of VA is a responsive one. Plaintiffs assign "concerns" and "restrictions" their ordinary meaning. Finally, to the extent these records are stored in any digital format and not centrally organized,

[18] *Equity Action Plan*, *supra* note 1.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**Defendant's Objection:**

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 17 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous –and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 17 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

First, Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data. RFP No. 17 is proportional to the needs of the case because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). As such, RFP No. 17 will be important to resolving the issues. Documents or communications that describe, discuss, mention, or relate to any restrictions, specifically those that prohibit discussion or distribution of data that depict racial disparities in VA, comprise a discretely cabined category of responsive documents. Also, such restrictions are central to Plaintiffs' claims, which puts RFP No. 17 squarely within Rule 26's ambit. Additionally, because RFP No. 17 seeks non-public information, Plaintiffs will be unable to access this information through other means.

Finally, Plaintiffs do not seek information responsive to RFP No. 17 that is protected from disclosure by the attorney-client, attorney work product, and/or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**Defendant's Objection from October 22, 2024 Letter:**

"Prohibiting discussion" is vague and improperly broad. As described, this could include instructions to keep privileged and confidential material privileged and confidential; labeling of privileged and confidential material as privileged and confidential; instructions to keep classified information, if any, as classified; or conversations or instructions in the ordinary course of business not to disseminate protected or confidential information outside the VA. Please narrow the Request and/or clarify what it is you are seeking.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

**Plaintiffs' Response:**

Plaintiffs construe "prohibiting discussion" to mean forbidding evaluation, analysis, discussion, and dissemination of such information so as not to publicize or remediate racial disparities in VA's claims adjudication processes. Plaintiffs do not request any privileged records or records otherwise protected from disclosure.

**<u>RFP 18</u>**

*18. All communications from ACMV to VA officials or components that describe, discuss, mention, or relate to requests to analyze disability compensation, housing, and education benefits applicants, outcomes, and awards by race from January 1, 1994 to the present.*

**Defendant's Objection:**

In particular, Defendant objects to Request No. 18 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that describes, discusses, mentions, or relates in any way to any ACMV "requests" to "analyze" various types of benefits applicants, benefits outcomes, and benefits awards by race for a time period of over 30 years.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 18 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 18 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. Defendant further objects to the Request to the extent it seeks documents outside Defendant's possession, custody, or control.

**Plaintiffs' Response:**

RFP No. 18 is not overbroad, unduly burdensome, or seeking information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 18 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. Moreover, Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data. Plaintiffs limited the potential burden of producing the information detailed in RFP No. 18 by requesting communications only *from* ACMV *to* VA officials or components regarding requests to analyze benefits decisions and outcomes by race. Considering that the ACMV's duties include providing an annual report to Congress outlining recommendations, concerns, and observations, RFP No. 18 is exactly proportional to the needs of the case and the parties' relative access to information.

Plaintiffs seek information proportional to the needs of the case of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v.*



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

*City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). As such, RFP No. 18 will be important to resolving the issues. Further, Plaintiffs seek communications from an identified date, which also reduces the burden of RFP No. 18.

Plaintiffs do not seek communications that are protected from disclosure by the attorney-client, attorney work product, and/or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

RFP No. 18 is not outside of Defendant's possession, custody, or control. Appointed by Secretary of VA, the ACMV was established in part to directly advise the Secretary and Congress on the agency's administration of benefits, healthcare, and other services to minority beneficiaries. Moreover, all communications sent from ACMV to VA would inherently be within VA's possession, custody, or control. The ACMV is a committee established by a federal agency, and therefore records relating to the ACMV are within Defendant's possession, custody, or control.

Finally, to the extent these records are stored in any digital format, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**RFP 19**

*19. All documents or records that describe, discuss, mention, or relate to ACMV requests for data analysis and data collection by race from January 1, 1994 to the present.*

**Defendant's Objection:**

In particular, Defendant objects to Request No. 19 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that describes, discusses, mentions, or relates in any way to any ACMV "requests" for data analysis or collection by race for a time period of over 30 years.

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 19 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 19 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. Defendant further objects to the Request to the extent it seeks documents outside Defendant's possession, custody, or control.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

**Plaintiffs' Response:**

RFP No. 19 is not overbroad, unduly burdensome, or seeking information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 19 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. Moreover, Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data.

Plaintiffs limited the potential burden of producing the information detailed in RFP No. 18 by seeking ACMV requests for data analysis and collection by race, which is a specific context and form. In this way, RFP No. 19 does not seek untoward volumes of data from myriad sources. Further, Plaintiffs seek information from a specific date, which also reduces the burden of RFP No. 19. Plaintiffs seek information proportional to the needs of the case because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). As such, RFP No. 19 will be important to resolving the issues. Moreover, appointed by Secretary of VA, the ACMV was established in part to advise the Secretary and Congress on the agency's administration of benefits, healthcare, and other services to minority beneficiaries. As such, the Committee's requests for data analysis and collection by race is within Defendant's reach, custody, and control.

Plaintiffs do not seek information responsive to RFP No. 19 that is protected from disclosure by the attorney-client, attorney work product, and/or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

Finally, to the extent these records are stored in any digital format, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**RFP 20**

*20. Documents or records sufficient to show and explain VA's "capability through data matching to identify Veterans by race and ethnicity," as stated in the ACMV 2018 Annual Report at 10. A copy is attached.*

**Defendant's Objection:**

In particular, Defendant objects to Request No. 20 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. "Capability through data matching" is not defined and is susceptible to multiple conflicting interpretations.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 20 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 20 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

RFP No. 20 is not overbroad, unduly burdensome, or seeking information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 20 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. Moreover, Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data.

Regardless, RFP No. 20 does not seek untoward volumes of data from myriad sources, since it is limited to documents or records *sufficient to show* and explain VA's capability through data matching to identify Veterans by race and ethnicity. As a result, RFP No. 20 is sufficiently limited in scope. Additionally, RFP No. 20 is proportional to the needs of the case because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 20 seeks information that will be important to resolving these issues. Finally, because RFP No. 20 seeks non-public information, Plaintiffs will be unable to access this information through other means.

Plaintiffs do not seek information responsive to RFP No. 20 that is protected from disclosure by the attorney-client, attorney work product, and/or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

The phrase "capability through data matching" is defined and not susceptible to multiple conflicting interpretations. "Capability through data matching" is given its ordinary meaning in the context in which it is used by VA in its own report, which was attached to the second set of RFPs.

**Defendant's Objection from October 22, 2024 Letter:**

Plaintiffs' cite for the phrase "capability through data matching" is a report by the ACMV, not the VA. The request that Defendant "explain" what is meant by this is therefore vague and not necessarily consistent with VA's understanding or terminology. Defendant also notes that Plaintiffs already have extensive information relating to ways in which VA can or cannot identify,



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

match, and/or merge records from various databases, and Defendant repeats its request for more information about what data Plaintiffs are seeking.

**Plaintiffs' Response:**

The ACMV is a Committee *appointed by* the Secretary of VA that "advises the Secretary . . . on VA's administration of benefits and provisions of healthcare, benefits, and services to minority Veterans."[19] The request that Defendant provide records that explain this phrase is therefore appropriate, as the Committee exists under the authority of the Secretary.

During a meet and confer on December 19, 2024, Plaintiffs provided additional information regarding the data sought. *See* Plaintiffs' letter dated December 23, 2024.

**RFP 21**

*21. The "VBA White Paper" that "was presented to the senior leaders by the Acting VBA Under Secretary, Tom Murphy" as stated in the ACMV 2018 Annual Report at 10.*

**Defendant's Objection:**

Defendant objects to Request No. 21 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges. Defendant further objects to Request 21 in that "VBA White Paper" is vague.

Plaintiffs' cite for the phrase "VBA White Paper" is a report by the ACMV, not the VA. "White paper" is a generic, commonly used term and it is unclear at this time whether the VA would have identified the document at issue as "VBA White Paper." Defendant will conduct a reasonable search for the document and will produce it, subject to our Objections.

**Plaintiffs' Response:**

RFP No. 21 does not request production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges, as the document sought does not constitute communication between Defendant and Defendant's counsel, was not prepared in anticipation of litigation, and constitutes a final version of an agency decision. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

RFP No. 21 is not vague, as it refers to a precise document as cited in the ACMV 2018 Annual Report. The ACMV is a Committee *appointed by* the Secretary of VA that "advises the Secretary . . . on VA's administration of benefits and provisions of healthcare, benefits, and

[19] *Center for Minority Veterans*, U.S. Dep't of Veterans Affs. (last updated May 20, 2024), https://www.va.gov/centerforminorityveterans/about/index.asp.

services to minority Veterans."[20] In Defendant's document production, sent to Plaintiffs on January 10, 2025, Defendant produced a white paper at Bates stamp USA000008023, demonstrating Defendant's understanding of the phrase "White Paper." If Defendant produced USA000008023 as a document responsive to Request No. 21, please provide confirmation to that fact.

**RFP 22**

*22. All documents or records that describe, discuss, mention, or relate to the inception, establishment, and implementation of VA's 2024 Agency Equity Action Plan.*

**Defendant's Objection:**

In particular, Defendant objects to Request No. 22 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that describes, discusses, mentions, or relates in any way to the "inception, establishment, and implementation" of the Agency Equity Plan.

**Plaintiffs' Response:**

RFP No. 22 is not overbroad, unduly burdensome, vague or seeking information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 22 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. Information regarding the inception, establishment, and implementation of VA's 2024 Agency Equity Action Plan is relevant to Plaintiffs' claims, and Plaintiffs lack information—and Defendant has superior information—regarding the context, authors, or forms that such relevant information might take. The burden of this request therefore does not outweigh its potential benefit to Plaintiffs' claims. Additionally, since Plaintiffs sent their Requests for Production, most VA.gov pages and records related to the Equity Plan and Equity Team have been removed from public view. Thus, information about the Equity Action Plan is even more inaccessible to Plaintiffs.

Finally, to the extent these records are stored in any digital format, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**Defendant's Objection:**

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 22 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery

---

[20] *Id.*



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

in resolving the issues. Defendant also objects to Request No. 22 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, deliberative process and/or other executive privileges.

**Plaintiffs' Response:**

Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data. RFP No. 22 is proportional to the needs of the case and simply does not seek untoward volumes of data from myriad sources. Further, Plaintiffs do not seek confidential communications between attorney and client, nor do Plaintiffs request confidential materials prepared by or for counsel in anticipation of litigation. Rather, Plaintiffs seek information responsive to RFP No. 22 that is not protected from disclosure by the attorney-client, attorney work product, and/or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 23**

*23. All documents or records, including formal and informal complaints or other communications received by the VA from any source, including veterans, veterans organizations, civil rights groups, elected officials and their staff, relating to stress, emotional distress, trauma, and/or anxiety experienced by veterans as a result of applying for benefits, being denied benefits, and appealing denials of benefits.*

**Defendant's Objection:**

Defendant objects to Request No. 23 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "stress, emotional distress, trauma, and/or anxiety," no matter the form or basis, experienced by any veteran "as a result of applying for benefits, being denied benefits, and appealing denials of benefits" for an undefined time period. "Stress," "emotional distress," and "trauma" are not defined and are susceptible to multiple conflicting interpretations.

**Plaintiffs' Response:**

RFP No. 23 is not overbroad, unduly burdensome, or vague, nor does RFP No. 23 seek information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 23 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. While RFP No. 23 is limited in scope on its face and therefore satisfies Rule 26, Plaintiffs have attempted, over multiple communications, to narrow the scope of RFP No. 23 in order to accommodate Defendant. Plaintiffs reincorporate their response above to RFP No. 1 in its entirety, including the description of Plaintiffs' proposal to narrow this request to complaints sent by large-scale "institutional" actors and received by institutional "complaint-intake" units at VA. Plaintiffs also reincorporate their proposal that



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

Defendant send Plaintiffs an organizational chart that would allow Plaintiffs to further narrow the request.

The terms used in RFP No. 23 have clear definitions and are not susceptible to multiple conflicting interpretations. "Stress" is used in its ordinary meaning and as used by VA,[21] as are "emotional distress,"[22] and "trauma."[23] Insofar as other conflicting interpretations of these terms exist, Plaintiffs specify the terms' definitions here. Plaintiffs previously provided Defendant with definitions for these terms via email on October 9, 2024.

Finally, to the extent these records are stored in any digital format, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**Defendant's Objection:**

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 23 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 23 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data. RFP No. 23 is proportional to the needs of the case because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). Moreover, Plaintiffs have had multiple conversations with Defendant regarding their willingness to limit the scope of RFP No. 23, therefore reducing the burden and expense of the Request. Finally, because RFP No. 23 seeks non-public information, Plaintiffs will be unable to access this information through other means.

---

[21] *VA Whole Health Library*, U.S. Dep't of Veterans Affs. (last updated Apr. 30, 2024), https://www.va.gov/WHOLEHEALTHLIBRARY/overviews/anxiety.asp.

[22] *Resources Available to Veterans Experiencing Emotional Distress Due to Recent World Events*, Veterans Experience Office, U.S. Dep't of Veterans Affs. (Mar. 1, 2022), https://news.va.gov/100699/resources-emotional-distress/.

[23] *Military Sexual Trauma: Overview*, U.S. Dep't of Veterans Affs. (last updated Jan. 30, 2025), https://www.mentalhealth.va.gov/msthome/index.asp ("Like other types of trauma, MST (Military Sexual Trauma) can negatively affect a person's mental and physical health, even many years later."). Plaintiffs refer here to the wide range of potential emotional responses to distressing events, including, but not limited to, military sexual trauma.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 23 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 24**

*24. All documents or records that describe, discuss, mention, or relate to corrective actions taken against employees alleged to have contributed to racial disparities within the VA to include but not limited to any reports, memos, disciplinary records, emails, and meeting notes discussing the identification, investigation, and resolution of incidents or behaviors that contributed to racial disparities, as well as any follow-up actions and evaluations of such corrective measures, from January 1, 1945 to the present.*

**Defendant's Objection:**

Defendant objects to Request No. 24 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to "corrective actions" against employees who were alleged or perceived to have "contributed to" racial disparities "within the VA" for a period of over 80 years. "Racial disparities," "corrective actions," "corrective measures," and "contributed to" are not defined and are susceptible to multiple conflicting interpretations.

**Plaintiffs' Response:**

RFP No. 24 is not overbroad, unduly burdensome, or vague, nor does RFP No. 24 seek information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 24 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. RFP No. 24 seeks information dating back to the earliest date of Plaintiffs' injuries and is limited in scope to documents or records that describe, discuss, mention, or relate to corrective actions taken against employees alleged to have contributed to racial disparities.

The information sought regarding these documents or records is directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims involve injuries resulting from the administration of VA benefits dating to 1945, and Plaintiffs' claims emphasize VA leadership's supervision over VA's benefits adjudication processes since 1945. Plaintiffs are entitled to foundational information describing how VA leadership has been made aware of the race of its benefits applicants and identified disparities therein. It is, therefore, relevant and proportional to the needs of the case to seek discovery dating back to 1945. Further, RFP No. 24 is proportional because of the "serious nature of the claims presented," specifically sixty years of



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 24 seeks information that will be crucial to resolving the issues, in that responsive documents will demonstrate the extent to which VA was aware of and responded to racial disparities in VA benefits. Because RFP No. 24 seeks non-public information, Plaintiffs will be unable to access this information through other means.

The terms used in RFP No. 24 have clear definitions and are not susceptible to multiple conflicting interpretations. "Disparities" has the same definition as the thirty-five uses of the term in the 2023 Department of Veterans Affairs Equity Action Plan;[24] "racial disparities" refers to such disparities based on race. "Corrective actions,"[25] "corrective measures,"[26] and "contributed to"[27] are meant to be understood in their ordinary meanings as understood within VA. Insofar as other conflicting interpretations of these terms exist, Plaintiffs specify the terms' definitions here. Plaintiffs previously provided Defendant with definitions for these terms via email on July 15, 2024 and October 9, 2024.

Finally, to the extent these records are stored in any digital format, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**Defendant's Objection:**

As drafted, Request No. 24 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery, and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 24 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 24 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege,

---

[24] *Equity Action Plan*, *supra* note 1.
[25] *Harassment Prevention Program*, Off. of Resolution Mgmt., U.S. Dep't of Veterans Affs. (last updated Jan. 31, 2025), https://www.va.gov/ORM/HPP.asp (describing the purpose of the program to be, in part, to take "corrective action" and "corrective measures").
[26] *Id.*
[27] *See, e.g.*, *Forms, Templates and Model Agreements*, Off. of Rsch. & Dev., U.S. Dep't of Veterans Affs., https://www.research.va.gov/programs/tech_transfer/model_agreements/default.cfm (using the term "contributed to" in its ordinary meaning).



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

**RFP 25**

*25. All documents or records, including formal and informal complaints or other communications received by the VA from any source, including veterans, veterans organizations, civil rights groups, elected officials and their staff, relating to the experiences of Black veterans applying for VA housing, education, or disability compensation benefits for the time period from January 1, 1945 through present.*

**Defendant's Objection:**

Defendant objects to Request No. 25 as overbroad, unduly burdensome, vague, and seeking information beyond the scope of Rule 26. As drafted, this Request demands production of any document, no matter the context, author, or form, that relates in any way to actual, perceived, or alleged "experiences" by any Black veteran in applying for a variety of benefits for a period of over 80 years. "Experiences" is not defined and is susceptible to multiple conflicting interpretations.

**Plaintiffs' Response:**

RFP No. 25 is not overbroad, unduly burdensome, or vague, nor does RFP No. 25 seek information beyond the scope of Rule 26. Defendant has not carried its burden to provide specific details as to why and how the information RFP No. 25 seeks is unduly burdensome to gather, collect, and produce. *Gross v. Lunduski*, 304 F.R.D. at 151. RFP No. 25 seeks information dating back to the earliest date of Plaintiffs' injuries and is limited in scope to a description of documents or records relating to experiences of Black veterans applying for VA housing, education, or disability compensation.

The information sought regarding the documents/records is directly relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs' claims involve injuries resulting from the administration of VA benefits dating back to 1945, and Plaintiffs' claims emphasize VA leadership's supervision over VA's benefits adjudication processes since 1945. Plaintiffs are entitled to foundational information describing how VA leadership has been made aware of the race of its benefits applicants and identified disparities therein. It is, therefore, relevant and proportional to the needs of the case to seek discovery dating back to 1945. Further, RFP No. 25 is proportional because of the "serious nature of the claims presented," specifically sixty years of widespread racial discrimination by a federal agency, "although the amount in controversy has not yet been specifically determined." *Walls v. City of New York*, 502 F. Supp. 3d at 695 (internal quotation omitted). RFP No. 25 seeks information that will be crucial to resolving the issues, in that responsive documents will demonstrate the extent to which VA was aware of racial disparities in VA benefits. Because RFP No. 25 seeks non-public information, Plaintiffs will be unable to access this information through other means.



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

The terms used in RFP No. 25 have clear definitions and are not susceptible to multiple conflicting interpretations. "Experiences" is meant to be understood in its ordinary meaning as understood by the VA.[28] Insofar as other conflicting interpretations of these terms exist, Plaintiffs specify the terms' definitions here. Plaintiffs previously provided Defendant with definitions for these terms via email on October 9, 2024.

While RFP No. 25 is limited in scope on its face and therefore satisfies Rule 26, Plaintiffs have attempted, over multiple communications, to narrow the scope of RFP No. 25 in order to accommodate Defendant. Plaintiffs reincorporate their response above to RFP No. 1 in its entirety, including the description of Plaintiffs' proposal to narrow this request to complaints sent by large-scale "institutional" actors and received by institutional "complaint-intake" units at VA. Plaintiffs further reincorporate their proposal that Defendant send Plaintiffs an organizational chart that would allow Plaintiffs to further narrow the request.

Finally, to the extent these records are stored in any digital format, Defendant's concerns about burden and overbreadth can likely be addressed through negotiations about ESI search terms and custodians. Plaintiffs remain amenable to discussing search protocols for responding to this Request.

**Defendant's Objection:**

As drafted, the Request seeks untoward volumes of data, from a myriad of sources; Request No. 25 is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, the parties' relative access to information and resources, the burden and expense of the proposed discovery – which would be tremendous – and the importance of the discovery in resolving the issues. Defendant also objects to Request No. 25 inasmuch as it requests production of materials protected by the attorney-client, attorney work product, and/or deliberative process privileges.

**Plaintiffs' Response:**

Defendant fails to identify the specific myriad sources from which it would have to pull untoward volumes of data. Plaintiffs do not seek confidential communications between attorney and client, confidential materials prepared by or for counsel in anticipation of litigation, or confidential materials subject to deliberative process privileges. Plaintiffs seek documents and/or records responsive to RFP No. 25 that are not protected from disclosure by the attorney-client privilege, work product doctrines, or deliberative process privileges. Plaintiffs request that Defendant include in Privilege Logs any documents and/or records withheld pursuant to attorney-client privilege, work product doctrines, or deliberative process privileges that are not otherwise excluded under parties' standing ESI agreement.

* * *

[28] *VA Customer Experience*, U.S. Dep't of Veterans Affs. (last updated Jan. 16, 2025), https://department.va.gov/veterans-experience/ ("VA measures customer experience through three core principles-ease effectiveness, and emotion—all of which impact overall trust customers have in the organization.").



P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • PHONE 203 432-4800 • FAX 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511

**Exhibit 11**

to

Defendant's Memorandum in Support of Motion for Protective Order

## Keefe, Max (CIV)

**From:** Majumdar, Irina M (CIV)
**Sent:** Thursday, March 13, 2025 8:31 PM
**To:** Natalia Friedlander; Creelan, Jeremy M.; Yaman Salahi; Michael Wishnie; ahenderson@jenner.com; Vlsc_monk; Gabriella Hill
**Cc:** Kelley, Emily M. (CIV); Keefe, Max (CIV); Orticelli, Jillian (USACT); McConaghy, Michelle (USACT)
**Subject:** March 13 Meet and Confer Summary

**Tracking:**

| Recipient | Delivery | Read |
|---|---|---|
| Natalia Friedlander | | |
| Creelan, Jeremy M. | | |
| Yaman Salahi | | |
| Michael Wishnie | | |
| ahenderson@jenner.com | | |
| Vlsc_monk | | |
| Gabriella Hill | | |
| Kelley, Emily M. (CIV) | Delivered: 3/13/2025 8:31 PM | Read: 3/13/2025 8:51 PM |
| Keefe, Max (CIV) | Delivered: 3/13/2025 8:31 PM | Read: 3/13/2025 10:08 PM |
| Orticelli, Jillian (USACT) | Delivered: 3/13/2025 8:31 PM | |
| McConaghy, Michelle (USACT) | Delivered: 3/13/2025 8:31 PM | |

Counsel,

Thank you for the call today. We are writing to summarize the discussion that occurred in advance of the March 24, 2025 status conference with the Court.

<u>Plaintiffs' Sampling Proposal</u>
The United States informed Plaintiffs that it was in the process of running a query to pull a "sample" of the demographic data Plaintiffs seek that is maintained in VA database(s), dating back to 2006. The United States will produce such data in accordance with the parties' agreement as soon as it is available. The United States will likewise produce aggregate claims data by year when it is available.

Regarding the review of paper files or veterans benefits files that may be digitized but for which demographic information does not exist in databases or data fields that can be queried, the United States provided responses to each question Plaintiffs posed in their February 20, 2025 letter. The United States explained to Plaintiffs that it would not be able to randomly sample such files for several reasons. First, accessing and determining which files to "randomly sample" would be difficult and time-consuming given where and how the data is maintained. Second, further issues exist with processing the files after they are accessed. The United States is prohibited by law from producing veterans' benefits information without consent. The protective order would not suffice to comply with the legal prohibitions relating to production of this information. The "sampling" would thus require the United States to redact all information from the files of veterans not represented by counsel other than the requested sampling "variables." It is likely that the United States would need to manually redact thousands of pages of documents per file. It is also possible that after reviewing the potentially thousands of pages included in a single randomly selected file, the demographic information Plaintiffs seek may not be included. Accordingly, searching and producing such files is unduly burdensome, especially in proportion to the potential relevance to claims and defenses in the case, and the United States cannot agree to undertake this process.

Search Terms

The United States explained that the search terms Plaintiffs proposed resulted in 1.9 million documents inclusive of families, which is largely where the parties started at when culling custodial data. The United States referred to its March 6 letter, which also outlines several specific issues with Plaintiffs' proposed terms. Plaintiffs informed the United States that they would soon circulate a revised list of search terms based on the United States' concerns. The United States explained to Plaintiffs that they would review the search terms once Plaintiffs have provided them, but that they did not wish to engage in indefinite back and forth on these terms, as the United States seeks to proceed with custodial review and production as soon as possible. Plaintiffs agreed.

The United States informed Plaintiffs that once search terms were finalized, we would likely be able to prioritize review of certain custodians. Plaintiffs stated they would soon provide the United States with information regarding which custodians they would like to prioritize. Further, Plaintiffs agreed that for the eight custodians identified in RFP No. 11 of their Second Request for Production, the United States only needed to search their custodial data for the time period referenced for each custodian in that RFP, rather than that custodian's entire time at the VA. Plaintiffs also stated that they would provide the United States with a list of limiting periods for other custodians whose data has been collected.

Plaintiffs' Request for Complaints

The United States requested that Plaintiffs provide further information regarding their vague request for complaints. In particular, the United States asked Plaintiffs to clarify their previous statement about the "ongoing public conversation regarding racial discrimination at the VA in the late 1940s and thereafter." Plaintiffs stated that documents produced in their March 3, 2025 production relate to this statement. Plaintiffs stated that they had many other complaints in mind that were similar to those produced in their March 3 production, but could not describe those complaints or identify with any specificity who those complaints may have been from or may have been sent to.

Rather than respond to the concerns raised in the United States' letter, Plaintiffs repeatedly stated that they sought "complaints" sent to the VA dating back to the 1940s. The United States reviewed with Plaintiffs each of the "enumerated fifteen potential units within the VA that Plaintiffs understood to carry out a 'complaint-intake' function" as stated in Plaintiffs' November 22, 2024 meet and confer summary and their February 20, 2025 letter. The United States explained it had already collected and intends to produce responsive documents from custodians within many of these components, and will do so to the extent that it locates documents responsive to this request. For the other units, those units either were not exclusively a VA unit, or were not a unit that had a core function of "intaking complaints." When asked, Plaintiffs could not define what a "complaint intake" unit was, a term they themselves referred to multiple times in correspondence. The United States otherwise maintains that Plaintiffs' vague demand that the United States search for "complaints" from both "institutional actors" and individuals, from numerous offices, components, and custodians, without a basis to believe that such information exists, is an improper discovery request.

Jakubow Documents

In their February 20, 2025 letter, Plaintiffs identified Alexander Jakubow as a "consulting expert." However, Plaintiffs stated that they would produce documents "that were created by or for, reviewed by, or relied upon" by Mr. Jakubow "including, but not limited to, final reports." When asked during the call whether Plaintiffs still intended to produce this information, they stated that they stood by their prior objection and would not produce any analysis conducted by Mr. Jakubow, but would produce underlying information that he relied upon.

The United States requested the Plaintiffs supplement their interrogatory responses in light of Plaintiffs' statements in their February 20, 2025 letter, and Plaintiffs stated that they would not do so. The United States also reiterated that Plaintiffs' claim that Mr. Jakubow is somehow a "consulting expert" is improper, and that, moreover, even if Jakubow were a consulting expert, Plaintiffs waived any privilege by repeatedly referring to his statistical analysis in the complaint and the press. The United States told Plaintiffs that they would seek

intervention from the Court in the event Plaintiffs do not drop these improper objections, and Plaintiffs refused to do so.

Documents Obtainable from Other Sources
Plaintiffs agreed to withdraw their objection to producing information contained on Plaintiffs' social media sites and other documents Plaintiffs' claim the United States may have access to. Plaintiffs stated that they would conduct a reasonable search of those sites and produce relevant material.

Time Period
Plaintiffs agreed to withdraw their objection regarding the "time period covered by the complaint." Plaintiffs will conduct reasonable searches for documents throughout this time period.

Communication with Non-Parties
Plaintiffs confirmed that they were currently conducting searches for non-privileged communications with non-parties. They stated that they would not withhold material simply because the material contained a communication with a non-party, walking back their previous objection. The United States asked Plaintiffs to explain the basis for their statement that "Plaintiffs and BVP share a 'legal interest or strategy." Plaintiffs stated that any privilege that would be asserted on that theory would be clear on a privilege log, comporting with their discovery obligations.

Request for Medical and Psychiatric Records of Mr. Monk Jr.
Plaintiffs stated that they will not conduct any reasonable searches for medical and psychiatric records which may currently be in Mr. Monk Jr.'s possession. Plaintiffs claim that this is because they are only asserting "garden variety damages" for Mr. Monk, and that the United States therefore has "no need" to receive these documents. However, when asked if Plaintiffs will amend their complaint and their response to the United States' Interrogatories No. 5 and 6, Plaintiffs refused to commit to do so. At the same time, Plaintiffs refused to commit that they would not rely on the statements made in Interrogatories No. 5 and 6 in the future.

Counsel Testimony
The United States asked Plaintiffs to explain how disclosure to non-parties would "constitute part of Plaintiffs' litigation strategy" in a way in which those communications would be privileged. In addition, the United States asked Plaintiffs to confirm whether they are currently withholding any such material on the basis of privilege. Plaintiffs confirmed that they were not withholding any material at this point, and would produce material responsive to this request. Plaintiffs stated that to the extent they came across additional material which they viewed as privileged under this "strategy," they would provide a privilege log for the United States to review.

Class Member Discovery
The United States asked Plaintiffs to confirm what searches and documents they are willing to conduct for information related to Michelle Barnett. The United States explained that Ms. Barnett is differently situated from the other "absent" class members that Plaintiffs' counsel purport to represent. Nevertheless, Plaintiffs stated that they would search "counsel's emails" for responsive material, but refused to search Ms. Barnett's own material. Plaintiffs stated that they are only Ms. Barnett's counsel for the purpose of her pending FTCA administrative claim, but that they did not represent her with respect to this litigation.

The United States also discussed discovery related to class certification. The United States stated that it needed information on other class members to determine whether their injuries were the same or similar to Mr. Monk's alleged injuries. Plaintiffs stated that they would not agree to discovery into the medical records of proposed class members that Plaintiffs' counsel represent for purposes of their pending FTCA administrative claims because counsel's intention is only to limit these class members' damages to "garden-variety damages." Plaintiffs refused to conduct searches for these documents, but stated that there will be an upcoming production including files for proposed class members.

Request for PPI

Plaintiffs stated that they would not provide employment information or phone numbers for individuals that Plaintiffs' counsel represent in their administrative claims and who appear on the "List" submitted along with the United States' discovery requests. Plaintiffs refused to respond to the United States' request as to why it viewed this material to be protected by the "associational privilege," simply asserting that they believed that the privilege applied.

Issues of Pure Law

The United States asked Plaintiffs if they would provide a response to Interrogatory 20. Plaintiffs refused to do so, claiming that they did not believe the interrogatory to be "appropriate." The United States disagrees and will determine how to proceed.

Productions to Date

The United States asked if documents that were produced without being OCR'ed would be OCR'ed or if an exception report would be provided. Plaintiffs stated that they would circle back to this issue. The United States also requested that Plaintiffs provide the password to its latest production, which was produced on March 12, 2025. Plaintiffs stated that they were working on doing so.

Best,

Irina Majumdar
U.S. Department of Justice - Civil Division
175 N Street NE
Washington, D.C. 20530
Ph. (202) 598-5403

Irina Majumdar
U.S. Department of Justice - Civil Division
175 N Street NE
Washington, D.C. 20530
Ph. (202) 598-5403

**Exhibit 12**

to

Defendant's Memorandum in Support of Motion for Protective Order

**Keefe, Max (CIV)**

---

**From:** Ryan Kellner <ryan.kellner@ylsclinics.org>
**Sent:** Friday, April 11, 2025 5:08 PM
**To:** Kelley, Emily M. (CIV); Majumdar, Irina M (CIV); Keefe, Max (CIV); Orticelli, Jillian (USACT); McConaghy, Michelle (USACT)
**Cc:** Vlsc_monk; Michael Wishnie; Yaman Salahi; Natalia Friedlander; Creelan, Jeremy M.; ahenderson@jenner.com; Cox, Kate; Murphy, Erin M.
**Subject:** [EXTERNAL] Re: Monk v. United States - Court Request for Sample of Benefits Files

Counsel

As we have explained, the Government's request is not necessary to resolve the issue. The government has failed to respond to Plaintiffs' request that it identify barriers to production other than the Privacy Act, which is plainly addressable with a court order, or the reasons such an order is inadequate. As to the records of Conley Monk Jr. and the estate of Conley Monk Sr., parties to this action, we will seek their consent.

Sincerely,

Ryan Kellner
Law Student Intern | Veterans Legal Services Clinic
ryan.kellner@YLSClinics.org

---

**From:** Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>
**Sent:** Thursday, April 10, 2025 12:40 PM
**To:** Ryan Kellner <ryan.kellner@ylsclinics.org>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; Keefe, Max (CIV) <Max.Keefe@usdoj.gov>; Orticelli, Jillian (USACT) <Jillian.Orticelli@usdoj.gov>; McConaghy, Michelle (USACT) <Michelle.McConaghy@usdoj.gov>
**Cc:** Vlsc_monk <vlsc_monk@mailman.yale.edu>; Michael Wishnie <michael.wishnie@ylsclinics.org>; Yaman Salahi <yaman@salahilaw.com>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; Creelan, Jeremy M. <JCreelan@jenner.com>; ahenderson@jenner.com <AHenderson@jenner.com>; Cox, Kate <KCox@Jenner.com>; Murphy, Erin M. <EMurphy@jenner.com>
**Subject:** RE: Monk v. United States - Court Request for Sample of Benefits Files

Ryan,

As we believe was clear in our original email, we are not asking *Counsel* to consent to production for any of your clients for this purpose. Rather, we asked that you reach out to your clients to confirm whether *they* will give consent, by filling out the form we provided, to the *in camera* production of their own benefits files to the Court. Since you do represent them at the very least on the administrative claims, we understand you would be in a position to seek that. As you know, the United States cannot agree to the entry of the order that you propose and do not believe it would be sufficient; nor is there any order currently in place that would allow for such production without veteran consent. This proposal therefore seeks to provide the Court the information that would aid it in examining these and other discovery issues while simultaneously preserving any applicable privacy rights and without waiving the parties' respective positions.

Please let us know by Friday April 11, 2025 whether you agree to ask your clients (listed in my below email of Tuesday, April 8, 2025) to provide consent, and the timeline for return of executed authorizations for release. Please also let us

know by Friday April 11, 2025 that Mr. Monk, Jr. and Mr. Monk, Sr., as Plaintiffs in this matter, consent to production for *in camera* review; and the timeline for return of executed authorizations for release.

Best,

Emily

---

**From:** Ryan Kellner <ryan.kellner@ylsclinics.org>
**Sent:** Thursday, April 10, 2025 9:09 AM
**To:** Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; Keefe, Max (CIV) <Max.Keefe@usdoj.gov>; Orticelli, Jillian (USACT) <Jillian.Orticelli@usdoj.gov>; McConaghy, Michelle (USACT) <Michelle.McConaghy@usdoj.gov>
**Cc:** Vlsc_monk <vlsc_monk@mailman.yale.edu>; Michael Wishnie <michael.wishnie@ylsclinics.org>; Yaman Salahi <yaman@salahilaw.com>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; Creelan, Jeremy M. <JCreelan@jenner.com>; ahenderson@jenner.com; Cox, Kate <KCox@Jenner.com>; Murphy, Erin M. <EMurphy@jenner.com>
**Subject:** [EXTERNAL] Re: Monk v. United States - Court Request for Sample of Benefits Files

Counsel,

Except for Conley Monk, Jr. and the estate of Conley Monk, Sr.—whom we represent in this litigation—we represent these fifty veterans only for FTCA administrative-claim purposes. We are not in a position to consent to production of their records in this case. Rather, as we have stated previously, the parties should move jointly for a court order under the Privacy Act that would satisfy Defendant's privacy concerns as to these VA files and any others that may ultimately be produced in this case. Plaintiffs' position is consistent with the position they took during the telephonic conference. Does the government object to entry of a court order under the Privacy Act that would permit Defendant to produce the exemplars requested by the Court? If so, on what grounds?

Sincerely,

Ryan Kellner
Law Student Intern | Veterans Legal Services Clinic
ryan.kellner@YLSClinics.org

---

**From:** Kelley, Emily M. (CIV) <Emily.M.Kelley@usdoj.gov>
**Sent:** Tuesday, April 8, 2025 12:33 PM
**To:** Ryan Kellner <ryan.kellner@ylsclinics.org>; Majumdar, Irina M (CIV) <Irina.M.Majumdar@usdoj.gov>; Keefe, Max (CIV) <Max.Keefe@usdoj.gov>; Orticelli, Jillian (USACT) <Jillian.Orticelli@usdoj.gov>; McConaghy, Michelle (USACT) <Michelle.McConaghy@usdoj.gov>
**Cc:** Vlsc_monk <vlsc_monk@mailman.yale.edu>; Michael Wishnie <michael.wishnie@ylsclinics.org>; Yaman Salahi <yaman@salahilaw.com>; Natalia Friedlander <natalia.friedlander@YLSClinics.org>; Creelan, Jeremy M. <JCreelan@jenner.com>; ahenderson@jenner.com <AHenderson@jenner.com>; Cox, Kate <KCox@Jenner.com>; Murphy, Erin M. <EMurphy@jenner.com>
**Subject:** Monk v. United States - Court Request for Sample of Benefits Files

Counsel,

As you are aware, at the March 24, 2025 Status Conference, the Court suggested that in connection with the upcoming briefing, approximately fifty veterans' disability benefits files be provided to the Court for review, to give the Court a better understanding of how the files are stored and how the information therein is maintained.

In order to provide the Court the requested sampling, and in an abundance of caution as to veterans' privacy rights, the United States asks that you consult your clients listed below to determine whether they would consent to the production of their veterans' disability benefits files to the Court. The veterans listed below are a subset of the "List" attached to Defendants' discovery requests and consist of fifty veterans for whom the VA believes it would be in a position to pull together the materials the quickest. The process for downloading copies of the files for this many veterans will likely take at least two weeks. We would therefore submit the materials to the Court as a supplement to the briefing as soon as the files are available.

If your clients consent to this, please have them fill out the attached consent form and return to us. Any veterans' records provided to the Court would be submitted for *in camera* review only and would be marked as highly confidential. In consenting to production of such records to the Court, we understand that Plaintiffs would not thereby be conceding to any of the positions taken in the United States' forthcoming Motion for a Protective Order, including with respect to whether applicable privacy laws or regulations limit use of such files without a veterans' consent. The United States similarly would not be waiving any positions it has regarding the use of such documents. However, we believe that proceeding in this manner will assist the Court while simultaneously ensuring that veterans' rights are protected.

Please let us know your position on this. Best,

Emily

List of Claimants

1. Abdullah, Najee
2. Anderson, Terence
3. Anthony, Adrian
4. Bailey, Oscar
5. Barnett, Michele
6. Beamer, William
7. Blair, Donald
8. Bradshaw, Larry
9. Brookshire, Richard
10. Campbell, Robert
11. Crew-Dothard, Angela
12. Crouch, Darryl
13. Foster, Brian
14. Green, Joseph V
15. Gregory, Ervin
16. Hamilton, Floyd
17. Harris, Fabian
18. Hatch, Joseph
19. Henderson, Olivia
20. Henderson, Sim
21. Hill, Calvia
22. Howard, Darrell
23. Hughes, William
24. Hyman, Lewis
25. Johnson, Larry T

26. Lamb, Mutota
27. Lockwood, Cecil
28. Mays, James
29. Monk Jr, Conley
30. Monk Sr, Conley
31. Monk, Jeffrey
32. Page, Ciro
33. Paige, Claude
34. Paige, Eric
35. Parker, Oscar
36. Pittman, Richard
37. Purvis, Esther
38. Ragsdale, Waverly
39. Richardson, Nathaniel
40. Robinson, Renee C
41. Schofield, Preston
42. Sims, Mario
43. Slater, Marlon
44. Taylor, Gregory
45. Thomas, Dorothy
46. Trammell, Elgin
47. Van Clark, William
48. Vaz, Eveat
49. Vincent, Claude
50. Walker, Shanavier

Best,

Emily

Emily M. Kelley
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
Phone: (202) 305-4145
Fax: (202) 616-5200
E-mail: emily.m.kelley@usdoj.gov