**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CONLEY F. MONK, JR., et al., | |
| *Plaintiffs*, | Civ. No. 3:22-cv-01503-SRU |
| v. | |
| | May 5, 2025 |
| UNITED STATES OF AMERICA, | |
| *Defendant*. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**BACKGROUND** .......... **3**

- **I. Plaintiffs Have Proposed a Reasonable Sampling Procedure for a Randomized Subset of Disability-Benefits Applications Since 1945.** .......... **3**
- **II. Defendant Has Failed to Undertake a Reasonable Search for Complaints of Racial Disparities Received by VA.** .......... **6**

**ARGUMENT** .......... **8**

- **I. This Court Should Order Disclosure of an Unredacted Sample of VA Files.** .......... **8**
  - A. This Court may order unredacted disclosure of the data sampling records sought by Plaintiffs under 5 U.S.C. § 522a and 38 U.S.C. § 5701 .......... 8
  - B. This Court may order disclosure of records pursuant to 38 U.S.C. § 7332. .......... 10
    - 1. Plaintiffs satisfy the statutory requirements for disclosure under § 7332. .......... 10
    - 2. Defendant's reliance on the procedural requirements of 38 C.F.R. § 1.493 is unavailing. .......... 13
      - a. 38 C.F.R. § 1.493 is *ultra vires*. .......... 13
      - b. Even if § 1.493 is valid, Plaintiffs' interest in the records satisfies its requirements, and compliance would not be unduly burdensome. .......... 17
  - C. 38 C.F.R. § 1.491 does not bar disclosure of records covered by § 7332. .......... 20
- **II. In the Alternative, This Court Should Order Defendant to Disclose Redacted Files or to Extract and Produce the Listed Variables from the Files at Issue.** .......... **21**
  - A. Redaction of files and extraction of requested variables are proportional to the needs of the case. .......... 21
    - 1. The Court should order the United States to redact VA files to alleviate Defendant's privacy concerns. .......... 24
    - 2. In the alternative, Defendant should extract and produce the requested variables in database form. .......... 25
    - 3. Extracting and producing variables does not constitute attorney work product. .......... 28
- **III. This Court Should Deny Defendant's Motion for a Protective Order with Respect to Plaintiffs' Proposal for Discovery of Communications Regarding Racial Disparities.** .......... **29**

**CONCLUSION** .......... **35**

# TABLE OF AUTHORITIES

## Cases

*A & R Body Specialty and Collision Works, Inc. v. Progressive Casualty Insurance Co.*,
No. 3:07-CV-929 (WWE), 2014 WL 5859024 (D. Conn. Nov. 10, 2014) .............................. 31

*Brous v. Eligo Energy, LLC*,
No. 24 Civ. 1260, 2024 U.S. Dist. LEXIS 205103 (S.D.N.Y. Nov. 8, 2024) .......................... 25

*Carlyle Towers Condo. Ass'n v. FDIC*,
170 F.3d 301 (2d Cir. 1999) ........................................................................................ 18

*Chen-Oster v. Goldman, Sachs & Co.*,
285 F.R.D. 294 (S.D.N.Y. Sept. 10, 2012) ............................................................. 24, 25

*Conservation L. Found., Inc. v. Shell Oil Co.*,
No. 3:21-cv-00933 (JAM), 2023 WL 5434760 (D. Conn. Aug. 22, 2023 ................................ 1

*Crosby v. City of New York*,
269 F.R.D. 267 (S.D.N.Y. 2010) .................................................................................. 27

*Doe v. Marsh*,
899 F. Supp. 933 (N.D.N.Y. 1995)................................................................................ 12

*Ford v. Rensselaer Polytechnic Inst.*,
No. 120-CV-470 (DNH/CFH), 2022 WL 715779 (N.D.N.Y. Mar. 10, 2022)......................... 32

*Granger v. Santiago*,
No. 3:19 CV 60 (MPS), 2021 WL 457533 (D. Conn. Feb. 9, 2021)....................................... 35

*Guadalupe v. City of New York*,
No. 15 Civ. 0220 (CM) (JCF), 2016 WL 3570545 (S.D.N.Y. June 24, 2016)......................... 35

*Gutierrez v. Johnson & Johnson, Inc.*,
Civ. No. 01-5302 (WHW), 2002 WL 34717245 (D.N.J. Aug. 13, 2002) ................................ 25

*Hall v. Dep't of Veterans Affs.*,
No. PH-0752-94-0750-I-1, 1995 WL 354313 (M.S.P.B. June 2, 1995).................................. 11

*Haus v. City of New York*,
No. 03 Civ. 4915 RWSMHD, 2006 WL 1148680 (S.D.N.Y. Apr. 17, 2006).......................... 27

*Iglesias v. United States*,
848 F.2d 362 (2d Cir. 1988) ......................................................................................... 17

*In re Weatherford Int'l Sec. Litig.*,
No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 2355451 (S.D.N.Y. May 28, 2013)....................... 35

*Johnson v. Atria Senior Living Grp., Inc*.,
No. 3:09-CV-2120 (SRU), 2011 WL 13232093 (D. Conn. May 17, 2011) (Underhill, J.) 11, 12

*Kucana v. Holder*,
558 U.S. 233 (2010)...................................................................................................... 18

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)...................................................................................................... 18

*Res. Invs., Inc. v. United States*,
93 Fed. Cl. 373 (2010) .................................................................................................. 17

*Rosinski v. Shulkin*,
29 Vet. App. 183 (2018) ............................................................................................... 15

*SEC v. Jarkesy*,
603 U.S. 109 (2024)...................................................................................................... 15

*U.S. ex rel. Gelfand v. Special Care Hosp. Mgmt. Corp.*,
Nos. CV 02–6079, CV 05–4911, 2010 WL 2399693 (E.D.N.Y. June 10, 2010)..................... 20
*United States v. Mercado*,
No. 3:13-CR-181 (SRU), 2025 WL 297429 (D. Conn. Jan. 24, 2025) (Underhill, J.)............ 17
*Woelfle v. Black & Decker (U.S.) Inc.*,
No. 1:18-cv-486, 2020 WL 1180749 (W.D.N.Y. Mar. 12, 2020) .......................................... 26

**Statutes**

38 U.S.C. § 501(a) ..................... 15
38 U.S.C. § 501(b) ..................... 15
38 U.S.C. § 5701 ..................... 8, 9, 10, 13
38 U.S.C. § 5701(b)(2) ..................... 9, 10
38 U.S.C. § 7331 ..................... 16
38 U.S.C. § 7332 ..................... passim
38 U.S.C. § 7332(a)(1) ..................... 10
38 U.S.C. § 7332(b)(2)(D) ..................... passim
38 U.S.C. § 7333 ..................... 16
38 U.S.C. § 7334 ..................... 15, 16
42 U.S.C. § 290dd-2(b)(2) ..................... 12
5 U.S.C. § 522(a) ..................... 10
5 U.S.C. § 522a ..................... 8
5 U.S.C. § 522a(b)(12) ..................... 9
5 U.S.C. § 522a(b)(5) ..................... 28
5 U.S.C. § 522a(i)(1) ..................... 8
5 U.S.C. § 552 ..................... 13
5 U.S.C. § 552a ..................... 13

**Regulations**

38 C.F.R. § (b)(3) ..................... 14
38 C.F.R. § 1.490 ..................... 12
38 C.F.R. § 1.491 ..................... 20, 21
38 C.F.R. § 1.493 ..................... passim
38 C.F.R. § 1.493(b)(1) ..................... 15
38 C.F.R. § 1.493(b)(2) ..................... 15
38 C.F.R. § 1.493(c) ..................... 15, 16
38 C.F.R. § 1.493(d) ..................... 19
38 C.F.R. § 1.493(d)(1) ..................... 19
38 C.F.R. § 1.493(d)(2) ..................... 20
38 C.F.R. § 1.511 ..................... 12
38 C.F.R. § 1.511(b)(1) ..................... 9
38 C.F.R. § 1.511(d) ..................... 9
38 C.F.R. § 1.511(g) ..................... 9, 12, 13
38 C.F.R. § 1.576(b)(11) ..................... 9
38 C.F.R. § 1.576(c) ..................... 9
38 C.F.R. § 7332(b)(1) ..................... 14
38 C.F.R. §§ 1.493(b)(1)-(2) ..................... 18

38 C.F.R. §§ 1.493(b)-(e) .......... 13
38 C.F.R. §§ 1.493(e)(1)-(3) .......... 20
42 C.F.R. § 2.64(b) .......... 18

**Rules**

Fed. R. Civ. P. 26(b)(2)(C)(i) .......... 21
Fed. R. Civ. P. 26(b)(2)(C)(iii) .......... 21
Fed. R. Civ. P. 26(c) .......... 16

**Other Authorities**

Dep't of Just., *Overview of the Privacy Act of 1974: 2020 Edition* (last updated Dec. 15, 2022), https://www.justice.gov/opcl/overview-privacy-act-1974-2020-edition/disclosures-third-parties .......... 9
Disclosure of Certain Protected Records Without Written Consent, 85 Fed. Reg. 64040, 64043 (Oct. 9, 2020) .......... 15
Geeks for Geeks, SELECT Data from Multiple Tables in SQL (Dec. 3, 2024), https://www.geeksforgeeks.org/sql-select-data-from-multiple-tables/ .......... 29
Geeks for Geeks, *SQL Select Query* (Apr. 17, 2025), https://www.geeksforgeeks.org/sql-select-query/ .......... 29
U.S. Dep't of Veterans Affs., *2023 Annual Benefits Report* 72 (2023), https://www.benefits.va.gov/REPORTS/abr/docs/2023-compensation.pdf. .......... 24
U.S. Veterans' Admin., *Annual Report of the Administrator of Veterans' Affairs* 61 (1945), https://www.va.gov/vetdata/docs/FY1945.pdf .......... 24
U.S. Veterans' Admin., *Annual Report: Administrator of Veterans Affairs* 187 (1959), https://www.va.gov/vetdata/docs/FY1959.pdf. .......... 24

## INTRODUCTION

Plaintiffs seek discovery of disability claims data and records of complaints, which are central to Plaintiffs' claims and proportional to the needs of the case. After a March 24, 2025 status conference, this Court "expressed that Plaintiffs' data sampling discovery requests were reasonable" and "suggested the Government search for complaints received by VA headquarters, administrators, under secretaries, and the office of congressional and legislative affairs for the full liability period, including those complaints that are not electronically stored." ECF 139 at 1-2; *see also* Transcript of Telephonic Status Conference and Motion Hearing ("Tr.") at 17-18 (Mar. 24, 2025). Defendant nevertheless refuses to search for or produce these materials and instead has moved for a protective order. As Defendant acknowledges, it bears the burden of "justify[ing] curtailing discovery." ECF 141-1 at 13 (quoting *Conservation L. Found., Inc. v. Shell Oil Co.*, No. 3:21-cv-00933 (JAM), 2023 WL 5434760, at *11 (D. Conn. Aug. 22, 2023)). Defendant, however, fails to meet that burden, relying solely on privacy concerns and generalized claims of burden to justify its non-responsiveness.

The first disputed issue discussed at the Status Conference related to Plaintiffs' sampling plan for initial benefits applications that would ease Defendant's burden in producing responsive data. *See* ECF 139. In its motion, Defendant invokes various privacy statutes as barriers to its disclosure of unredacted VA files and further argues that redaction of a sample of files is unduly burdensome. ECF 141-1 at 14, 25. But contrary to Defendant's assertions, these privacy statutes do permit disclosure of the files Plaintiffs seek, and production of the files would not be unduly burdensome.

This Court has at least three options to order disclosure that would satisfy Defendant's privacy and burden concerns. First, the Court can issue an order to disclose these files without

redactions, subject to appropriate privacy protections. This approach, preferred by Plaintiffs, eliminates Defendant's need to redact the files and substantially reduces Defendant's burden. To facilitate this approach, Plaintiffs agree to Defendant's proposal of additional privacy safeguards regarding the relevant files. In this scenario, Plaintiffs would assume the burden of reviewing files and extracting the sampling variables. Second, the Court can order Defendant to redact the random benefits files prior to production to exclude information other than Plaintiffs' requested variables. Defendant's burden in redacting these files would not be unduly burdensome. Redaction of files is a routine litigation practice, and Defendant's burden in redacting these files is commensurate with the needs of the case and the scope of Rule 26. Third, the Court can order Defendant to extract the requested variables from the files without creating work product.

Accordingly, Plaintiffs respectfully request that this Court deny Defendant's motion for a protective order with respect to Plaintiffs' requests for sampling dating back to 1945, including relevant paper records. Plaintiffs further request that this Court order the disclosure of (1) unredacted VA benefits files; (2) in the alternative, redacted benefits files; (3) or in the further alternative, extracted variables from those files.

Regarding complaints, at the Status Conference, this Court acknowledged the importance to Plaintiffs' claims of records of complaints submitted to VA regarding racial disparities. The Court directed Defendant to conduct a reasonable search of certain VA units that likely contain responsive records of such complaints. *See* ECF 139 at 2; Tr. 33-34. Despite months of prior telephone conferrals and exchanges of correspondence, for the first time, Defendant in its motion offered information about where such records might be found. *See* ECF 141-1 at 35-39. Contrary to Defendant's claims, ECF 141-1 at 35, this newly disclosed information does not render this Court's intervention premature because Defendant has still not provided Plaintiffs with sufficient

information to proceed. Nor does Defendant indicate when it will perform or conclude a reasonable search for responsive paper records. Furthermore, Defendant is incorrect that Plaintiffs' requests for complaint records are vague, overbroad, and unduly burdensome. Defendant neglects Plaintiffs' longstanding efforts to address Defendant's concerns and ease its burden of production. Thus, Plaintiffs respectfully request that the Court deny Defendant's motion for a protective order with respect to Plaintiffs' requests for complaint records.

## BACKGROUND

The Court is familiar with the two discovery disputes at issue on this motion, having already held a telephonic conference and issued a memorandum order addressing them. ECF 139. In response to Defendant's motion, Plaintiffs briefly summarize the relevant background here.

### I. Plaintiffs Have Proposed a Reasonable Sampling Procedure for a Randomized Subset of Disability-Benefits Applications Since 1945.

In June 2024, Plaintiffs served their Second Set of Requests for Production (RFPs). In August 2024, the Parties began discussing the responsive records Defendant would produce, including records responsive to RFPs 3, 5, and 8. Ex. 1 at 2-3. These RFPs seek, *inter alia*, records of racial disparities in VA benefits programs and records of the racial composition of applicants for such programs. Ex. 2 at 4. Plaintiffs proposed using a sampling procedure whereby Defendant would respond to these RFPs by producing a small sample of disability-benefits claims files.

Plaintiffs then spent several months developing a minimally invasive sampling procedure that would accommodate Plaintiffs' needs in developing their case and ease Defendant's burden in producing responsive data. At a meet and confer in November 2024, Plaintiffs discussed the proposal with Defendant. Defendant agreed to review the proposal with VA and return to Plaintiffs with any issues that arose. ECF 141-6 at 65-67. The proposal, detailed in a November 18, 2024 email to Defendant, suggested that "VA use a random number generator to identify a small sample

of initial disability claims from each of three time periods" (1945 to 1960; 1961 to 1990; and 1991 to present). *Id.* at 59-60. Plaintiffs devised this proposal with Defendant's burden in mind, seeking as limited a sample as possible.

On December 19, 2024, the Parties conferred again. During this meeting, Defendant raised a host of issues with Plaintiffs' sampling proposal. Plaintiffs continued to offer ways to narrow their proposal, including by eliminating variables. *Id.* at 78-79. Plaintiffs asked Defendant for additional information that would assist Plaintiffs in modifying the proposal to minimize Defendant's burden and invited VA to offer its own sampling proposal. *Id.* at 3-4. On January 31, 2025, Defendant sent Plaintiffs a detailed letter that omitted any mention of Plaintiffs' requests for information and offered no sampling proposal of its own. *Id.* at 84-92. On February 20, 2025, Plaintiffs wrote to Defendant, noting that they had asked "eight questions concerning the manner in which paper files are stored at VA. If answered, those questions would allow Plaintiffs to consider further narrowing their request." *Id.* at 106. Plaintiffs did not receive a response to these questions in writing.

Defendant did not make a serious attempt to answer Plaintiffs' questions until the Parties conferred on March 13, 2025—roughly four months after Plaintiffs first shared the sampling proposal. In that same meeting, Defendant refused to agree to produce data in accordance with the sampling proposal. Ex. 3 at 2-3.

Notwithstanding Defendant's lack of cooperation, Plaintiffs continued working in good faith to address Defendant's concerns. In the same meeting, Plaintiffs proposed eliminating two variables from the proposal to further ameliorate Defendant's burden. Ex. 3 at 2. When Defendant further objected that production of responsive data would infringe on veterans' privacy rights, Plaintiffs noted that like many laws, the Privacy Act permits disclosure of the relevant records

subject to an appropriate court order and asked what other statutes, if any, might prevent the government from disclosing the records. *Id.* at 4. Defendant did not identify any other laws or reasons until it filed its motion and accompanying memorandum.

After months of correspondence, conferrals, and conversations without meaningful progress, and without Defendant ever having made any meaningful counterproposal regarding a sampling of records before 2006, Plaintiffs requested the Court's assistance. ECF 119 at 2. The Court held an hour-long status conference on March 24, 2025. There, the Court "expressed that Plaintiffs' data sampling discovery requests were reasonable," ECF 139 at 1, and asked Defendant to review fifty paper files and explain in briefing the precise burden that reviewing those files posed. Tr. 17-18.

Defendant moved for a protective order. ECF 141. Defendant's memorandum does not adequately respond to the Court's March 24 requests.[1] Nevertheless, Plaintiffs have seriously considered Defendant's concerns on broadness, vagueness, privacy, and burden, and have taken good-faith efforts to narrow Plaintiffs' discovery requests. Indeed, Plaintiffs spent months, in consultation with statistical experts, preparing a sampling proposal that would both meet Plaintiffs' basic needs for aggregate data while also addressing Defendant's concerns. In seeking this protective order, Defendant asks the Court for a blanket order that would impair Plaintiffs' ability to engage in meaningful discovery, including discovery of information that cuts to the core of Plaintiffs' case. The Court should reject Defendant's request.

[1] Instead of submitting fifty random initial claims files, as directed, Defendant reached out fifteen days into Defendant's briefing process to request that Plaintiffs' counsel obtain consent from fifty veterans to disclose their VA records to the Court. The fifty veterans listed by Defendant are persons for whom Plaintiffs' counsel has submitted an administrative claim under the Federal Tort Claims Act. Plaintiffs' counsel explained that, except for Plaintiffs Conley Monk, Jr. and the Estate of Conley Monk, Sr., their representation of the other forty-eight veterans is limited to filing administrative FTCA claims. ECF 141-6 at 145. Plaintiffs' counsel does not represent those veterans on their VA disability claims nor do they have access to their VA files. Plaintiff Conley Monk, Jr., on his own behalf and on behalf of Conley Monk, Sr., has consented to the release to this Court of his VA records and those of his father.

## II. Defendant Has Failed to Undertake a Reasonable Search for Complaints of Racial Disparities Received by VA.

In their Second Set of RFPs (RFPs 1, 23, 25), Plaintiffs also requested records of complaints submitted to VA concerning racial disparities in its benefits programs. Ex. 2 at 3, 6-7. Despite months of conferral, Defendant has refused to perform a reasonable search for these records, maintaining that it does not understand what Plaintiffs mean by "complaints" and that the requested search is unduly burdensome.

Plaintiffs have responded to both of these concerns multiple times since August 2024.[2] Most recently, Plaintiffs clarified in a March 13, 2025 conferral, Ex. 3 at 5, and in the March 24, 2025 Status Conference that "complaints" constitute communications, inquiries, or concerns sent from institutional actors—civil rights organizations such as the NAACP, veterans' services organizations, or members of Congress—to VA regarding identified or alleged racial disparities in VA benefits adjudications. Tr. 5-6. Such communications are evidence that VA leaders knew or should have known of racial disparities in VA benefits programs—a core component of Plaintiffs' negligence claims. Plaintiffs repeatedly advised Defendant in multiple conferrals that this definition excluded "complaints that might appear in individual [veteran] benefits files." Tr. 6.

Plaintiffs defined their requests in terms of offices' *functions*—rather than naming particular offices or custodians—because Plaintiffs lack the historical and institutional knowledge to determine which offices and custodians were responsible for performing these functions as far back as 1945. Defendant has superior knowledge of this topic, and Plaintiffs have requested multiple times that Defendant provide organizational charts to help identify which units of VA

[2] *See, e.g.*, Ex. 1 at 2-3; ECF 141-6 at 67-68; ECF 141-6 at 81-82.

were most likely to receive or respond to these sorts of complaints since 1945. ECF 141-6 at 55, 68.[3]

Defendant maintains that it does not understand Plaintiffs' definitions, ECF 141-1 at 39, and has not produced any records or information that might allow the Parties to work together to narrow or clarify these requests. Defendant insists that its ongoing searches of the email records of "30 identified potential custodians" is sufficient to respond to Plaintiffs' requests for complaints. *See* ECF 141-1 at 35. None of these custodians worked at VA before the early 2000s.

By contrast, Plaintiffs have disclosed documents to Defendant reflecting communications with VA regarding potential racial disparities and race discrimination well before the earliest date any custodian worked at VA. For instance, Plaintiffs have provided correspondence from NAACP leaders in the late 1940s and early 1950s, as well as from the Congressional Black Caucus in the early 1970s, addressed to senior VA leaders and to the President (the latter no doubt forwarded on to VA leadership). Ex. 4; Ex. 5. Nonetheless, Defendant has insisted that it is unable to, and need not, search for responsive records other than those included in the emails since 2000 of their thirty custodians. During the status conference, the Court ordered that Defendant "search for complaints received by VA headquarters, administrators, under secretaries, and the office of congressional and legislative affairs for the full liability period, including those complaints that are not electronically stored." ECF 139 at 2. Plaintiffs respectfully request that the Court deny Defendant's motion and enforce its order, allowing discovery to proceed.

---

[3]On Friday, May 2, 2025, Defendant produced a Veterans Benefits Administration organizational chart, but this organizational chart contains only a snapshot of positions as of December 2016. This document was marked "confidential" by Defendant. Plaintiffs will follow the necessary steps to file this document before the Court in accordance with the Parties' existing Protective Order, ECF 99, after submission of this memorandum.

## ARGUMENT

This Court should deny Defendant's motion and order Defendant to comply with its discovery obligations. First, Defendant should disclose a random sample of unredacted VA files, which it can do in compliance with the relevant privacy statutes. In the alternative, the Court should order Defendant to either (1) release redacted files to Plaintiffs or (2) compile Plaintiffs' eleven sampling variables from the requisite number of randomly selected benefits files. Second, this Court should deny Defendant's motion for a protective order regarding Plaintiffs' reasonable request for communications relating to complaints from institutional actors about racial disparities in VA benefits adjudications since 1945.

### I. This Court Should Order Disclosure of an Unredacted Sample of VA Files.

Defendant contends that privacy statutes preclude its disclosure of unredacted VA files, and that redaction or extraction of the variables requested is unduly burdensome. ECF 141-1 at 14, 24. Defendant is incorrect. The privacy statutes Defendant invokes permit disclosure pursuant to a court order, which this Court may enter in this case, and Defendant's burden objections are therefore substantially mooted. Plaintiffs have no objection to the additional protections proposed by Defendant. *Id.* at 18-20. In the alternative, the Court should order disclosure of redacted files or extraction of the eleven requested variables.

#### *A. This Court may order unredacted disclosure of the data sampling records sought by Plaintiffs under 5 U.S.C. § 522a and 38 U.S.C. § 5701.*

Plaintiffs do not dispute that the records from which they seek a random sample of anonymized data implicate 5 U.S.C. § 522a and 38 U.S.C. § 5701. These records contain "individually identifiable information," 5 U.S.C. § 522a(i)(1), and constitute "files, records, reports, and other papers and documents pertaining to" claims in the possession of VA, 38 U.S.C.

§ 5701(a). However, both statutes permit disclosure pursuant to a court order, which Plaintiffs request the Court enter in this case.

The Privacy Act of 1974 permits disclosure of confidential records "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 522a(b)(12); *see also* 38 U.S.C. § 5701(b)(2) (providing exception for disclosure of VA benefits files pursuant to court order); 38 C.F.R. § 1.511(b)(1) (same); 38 C.F.R. § 1.576(b)(11) (same). This Court is a court of competent jurisdiction, meaning these records may be disclosed pursuant to § 522a(b)(12).[4] The statute's implementing regulations add procedural requirements, such as notifying the subject of the records of the disclosure. The Parties can comply with these requirements. *See* 38 C.F.R. §§ 1.511(d), 1.576(c). As acknowledged by the U.S. Department of Justice, the Privacy Act is an appropriate vehicle for the disclosure of protected records, as long as the court (1) adjudges the requesting party's need to be compelling and (2) properly balances the parties' interests.[5]

Likewise, 38 U.S.C. § 5701 permits disclosure of covered records "[w]hen required by process of a United States court to be produced in any suit or proceeding therein pending." *Id.* § 5701(b)(2). The implementing regulations of this statute provide procedural protections similar to those of the Privacy Act, which the Parties can satisfy. *See* 38 C.F.R. §§ 1.511(b)(1), 1.511(g) (requiring a good-cause showing by court and directing court to impose appropriate safeguards against unauthorized disclosures). In fact, Defendant acknowledges that this Court may enter an order satisfying the requirements of § 5701 and the additional requirements set forth in its

---

[4]The regulatory scheme does not change the calculus. 38 C.F.R. § 1.576(b)(11) permits disclosure of confidential records pursuant to the order of a court of competent jurisdiction. Section 1.511(b)(1) permits disclosure of records in response to a court order directing disclosure of claimant records, and § 1.511(g) provides that records protected under 38 U.S.C. § 7332 may be disclosed in response to "an appropriate order of a court of competent jurisdiction granted after application showing good cause." *See infra* Argument, Section I.B.

[5] Dep't of Just., *Overview of the Privacy Act of 1974: 2020 Edition* (last updated Dec. 15, 2022), https://www.justice.gov/opcl/overview-privacy-act-1974-2020-edition/disclosures-third-parties.

implementing regulations. *See* ECF 141-1 at 18-20.[6] Defendant appears to demand only that, if this Court orders disclosure of the covered records, the order contain certain protections limiting the scope of disclosure. Plaintiffs agree to all of Defendant's proposed protections.[7]

*B. This Court may order disclosure of records pursuant to 38 U.S.C. § 7332.*

Unable to rely upon 5 U.S.C. § 522(a) or 38 U.S.C. § 5701 to prevent disclosure, Defendant instead insists that this Court may not order disclosure of unredacted VA records because such disclosure is barred by yet another statute, 38 U.S.C. § 7332, and its implementing regulations. Section 7332 concerns "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient or subject . . . relating to drug abuse, alcoholism or alcohol abuse, infection with the human immunodeficiency virus, or sickle cell anemia," *Id.* § 7332(a)(1), which may be disclosed in accordance with § 7332 pursuant to a court order upon a showing of good cause. 38 U.S.C. § 7332(b)(2)(D). Plaintiffs have good cause for such an order. Similarly, § 7332's implementing regulations are no bar to a disclosure order under § 7332. Accordingly, this Court should deny Defendant's motion for a protective order and order Defendant to produce unredacted VA records.

1. <u>Plaintiffs satisfy the statutory requirements for disclosure under § 7332.</u>

Section 7332 permits disclosure of covered records when "authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor." 38 U.S.C. § 7332(b)(2)(D).[8] In assessing good cause, the court must weigh "the public interest and

[6] "[T]he Court would need to find that disclosure is necessary and appropriate in this matter and enter an order instructing the VA to disclose the records." ECF 141-1 at 18.

[7] These safeguards include designating the records "Attorney's Eyes Only" pursuant to the Protective Order, *see* ECF 99; limiting disclosure of these files to law students who have approved appearances by this Court; instructing that these records may not be used for any improper purpose, to include identifying or contacting potential class members; requiring Plaintiffs to provide a list of every person who reviews any of the records, along with their address and a list of the benefits files that the individual accessed; and requiring that all veteran information be maintained by Plaintiffs' counsel in a separate database to be destroyed upon final determination of the litigation. ECF 141-1 at 18-20.

[8] Plaintiffs have made an "application" for this order by bringing their discovery dispute to the Court. *See Hall v. Dep't of Veterans Affs.*, No. PH-0752-94-0750-I-1, 1995 WL 354313, at *1 (M.S.P.B. June 2, 1995) ("38 U.S.C.

the need for disclosure against the injury to the patient or subject, to the physician-patient relationship, and to the treatment services." *Id.* This Court is familiar with § 7332, having previously approved the disclosure of records upon entry of an appropriate order, albeit in a matter where the parties did not contest disclosure with safeguards. *See Johnson v. Atria Senior Living Grp., Inc.*, No. 3:09-CV-2120 (SRU), 2011 WL 13232093 (D. Conn. May 17, 2011) (Underhill, J.).

Plaintiffs have demonstrated good cause and a need for disclosure under § 7332. Plaintiffs allege that VA failed to address racial disparities in VA's benefits administration, of which VA leaders knew or should have known. ECF 36 at 8-17. Key to those claims is Plaintiffs' demonstration that such racial disparities existed in the first place. The records sought are directly relevant to Plaintiffs' claims. Nor are Plaintiffs able to obtain a random sample of claim outcomes by race through any other means. *See, e.g.*, *Doe v. Marsh*, 899 F. Supp. 933, 935 (N.D.N.Y. 1995) (finding good cause for disclosure under analogous disclosure regime in 42 U.S.C. § 290dd-2(b)(2), when "evidence is unavailable by another means.").

Moreover, disclosure is in the public interest. This is a proposed nationwide class action and a challenge to "systemic racial discrimination" by VA. ECF 115 at 10, 13 ("[S]ystemic racism, true to its name, can only be measured by looking at the system as a whole."). Plaintiffs seek these records to vindicate the rights of generations of Black veterans who have suffered emotional distress as a result of encounters with a discriminatory VA benefits system that failed to provide them and their families with care and support their faithful service had earned. The public interest favors disclosure of a random sample of records, subject to privacy safeguards, so as to assess these important claims.

---

§ 7332(b)(2)(D) contemplates that a party seeking access to certain confidential patient medical records in possession of the Department of Veterans Affairs would have to apply to an Article III court.").

Finally, Plaintiffs' agreement to the safeguards proposed by Defendant ensures that the Court would adequately protect against injuries to the veteran subjects of the records, patient-physician relationships, and treatment services. As this Court has held in approving disclosure of records under § 7332 in the past, appropriate safeguards fashioned by the Court may overcome concerns about injuries to third parties and the relationships enumerated in § 7332. *See Johnson,* 2011 WL 13232093, at *1. Notably, many of the veterans whose records would appear in the sample sought by Plaintiffs in this case are deceased, in which cases there can be no risk of injury to the "patient," the "physician-patient relationship," or "treatment services."[9] In sum, Plaintiffs satisfy the statutory requirements for an order under § 7332(b)(2)(D). Plaintiffs have demonstrated good cause for the order, and the Court can fashion appropriate safeguards for disclosure.

Similarly, § 7332's implementing regulations are no bar to disclosure of unredacted records. 38 C.F.R. § 1.511 implements 38 U.S.C. § 7332 as it pertains to this requested Court order.[10] Section 1.511 provides that "a Federal court order is the process necessary for the disclosure of [records covered by § 7332]." A party may disclose records protected under 38 U.S.C. § 7332 "only in response to an appropriate order of a court of competent jurisdiction granted after application showing good cause therefore." 38 C.F.R. § 1.511(g). The regulation provides that an assessment of good cause requires the court to "weigh the public interest and the need for disclosure against the injury to the patient or subject, to the physician-patient relationship, and to the treatment services." That is, § 7332's implementing regulation simply restates the statutory requirements for an order, which Plaintiffs satisfy.

---

[9] Defendant additionally cites to 38 C.F.R. § 1.490 as the "implementing regulation further providing that '[a]n order of a court of competent jurisdiction to produce records subject to [38 U.S.C. § 7332] will not be sufficient unless the order reflects that the court has complied with the requirements of 38 U.S.C. § 7332(b)(2)(D).'" ECF 141-1 at 20. Plaintiffs do not request production of a data sample other than in compliance with an appropriate court order.
[10] The authority to promulgate 38 C.F.R. § 1.511 includes 5 U.S.C. §§ 552, 552a and 38 U.S.C. §§ 5701, 7332.

Upon entry of an order by this Court finding good cause for disclosure, Defendant may properly disclose unredacted records referencing "drug abuse, alcohol abuse, human immunodeficiency virus and sickle cell anemia treatment or related records." 38 U.S.C. § 7332; 38 C.F.R. § 1.511(g). The Court should issue such an order.

2. Defendant's reliance on the procedural requirements of 38 C.F.R. § 1.493 is unavailing.

While Plaintiffs satisfy the statutory requirements for an order under 38 U.S.C. § 7332(b)(2)(D), Defendant insists that the Court cannot order disclosure of unredacted records because of the burden it would face in complying with the procedural requirements of another regulation, 38 C.F.R. § 1.493. ECF 141-1 at 21. Defendant is incorrect for two reasons. First, § 7332 affords district courts discretion to fashion an appropriate order, and nowhere has Congress conditioned the district court's exercise of this discretion on compliance with *additional* procedures written by the agency. To the extent that VA, in promulgating § 1.493, purports to limit this Court's authority, it is *ultra vires* and invalid. Second, even assuming *arguendo* that compliance with § 1.493 is required, such compliance is not unduly burdensome.

a. 38 C.F.R. § 1.493 is *ultra vires*.

Under § 1.493, 1) every subject of a record covered by § 7332 must receive notice of Plaintiffs' application; 2) every subject must receive an opportunity to dispute the application for a disclosure order; 3) the Court must consider every objection *in camera*; 4) the Court must make a finding of good cause for disclosure of the records; and 5) the Court must craft appropriate safeguards to prevent inappropriate disclosure. *See* 38 C.F.R. §§ 1.493(b)-(e). Defendant insists that steps (1) through (3) of this process are overly burdensome. ECF 141-1 at 21-22.

Defendant's burden objection is meritless because VA lacks statutory authority to promulgate the provisions of § 1.493 that force district courts to take procedural steps other than

those enumerated in the regulation's authorizing statute, 38 U.S.C. § 7334. No statute authorizes *VA* to promulgate rules dictating the procedures *a district court* must follow in ordering disclosure of records covered by § 7332. To hold otherwise, that an executive branch agency may dictate the precise procedures that an Article III court must follow, would raise significant separation of powers problems. *SEC v. Jarkesy*, 603 U.S. 109, 127 (2024) ("Under 'the basic concept of separation of powers . . . that flow[s] from the scheme of a tripartite government' adopted in the Constitution, 'the judicial Power of the United States' cannot be shared with the other branches.") (internal citations omitted). This Court is bound only to follow the requirements written by Congress in § 7332—not the additional procedural requirements that VA seeks to impose on Article III courts through § 1.493.[11]

Nor could VA rely on any specific statutory rulemaking authority to justify its promulgation of § 1.493. VA has statutory authority to promulgate rules concerning the disclosure of records covered by § 7332 only when that disclosure is accompanied by a patient's consent. VA can prescribe regulations dictating the circumstances under which covered records may be disclosed "with the prior written consent of the patient" and the circumstances under which covered records may be disclosed after a deceased patient's representative has made a "prior written request" for such records. 38 C.F.R. §§ 7332(b)(1), (b)(3).[12] Neither of these rulemaking

[11] In promulgating § 1.493, VA could not rely on its catchall rulemaking authority under 38 U.S.C. § 501(a) (authorizing VA to make all "necessary and appropriate" rules). VA regulations promulgated under § 501 must "contain citations to the particular section or sections of statutory law or other legal authority upon which such issuance is based." *Id.* at § 501(b). *See Rosinski v. Shulkin*, 29 Vet. App. 183, 198 n.4 (2018) (finding a lack of citation to express legal authority to be contrary to Congress' mandate in § 501). Section 1.493 cites only § 7334 as its statutory authorization. Disclosure of Certain Protected Records Without Written Consent, 85 Fed. Reg. 64040, 64043 (Oct. 9, 2020). While VA noted that the regulations in Part 1, Title 38 of the Code of Federal Regulations are promulgated under its § 501 authority, *id.*, the formal regulatory text of § 1.493 cites only to § 7334.

[12] The formal regulatory text of 38 C.F.R. § 1.493 cites to 38 U.S.C. § 7334 as the regulation's source of statutory authority. But § 7334 does not itself grant VA rulemaking authority. Rather, § 7334 modifies VA's rulemaking authorities under 38 U.S.C. §§ 7331, 7332, and 7333. Importantly, § 7334 does not make any mention of rules VA may promulgate related to the court-ordered disclosure of covered records without a patient's consent.

authorities, however, permit VA to regulate the kind of disclosure at issue here. Plaintiffs seek the disclosure of records covered by § 7332 *without* the "prior written consent of the patient" or the "prior written request" of a deceased patient's representative. No statute allows VA to promulgate regulations restricting the disclosure of records *by a court* beyond the parameters set by Congress in § 7332.

Instead, disclosure of these covered records without patient consent is regulated solely by § 7332, which lays out the steps the Court must follow in ordering disclosure: it must "assess[] good cause"; weigh the public interest, the need for disclosure, and the injuries caused by disclosure; and "impose appropriate safeguards against unauthorized disclosure." 38 U.S.C. § 7332(b)(2)(D). The statute requires no more. The regulation goes further, however—requiring the Court to notify the subjects of the records of the requested disclosure, § 1.493(b)(1); to provide the subjects of the records with an opportunity to contest the disclosure, § 1.493(b)(2); and to review, through specific procedures, the materials submitted by the subjects of the records, § 1.493(c).

But a "regulation . . . may not serve to amend a statute or to add to the statute 'something which is not there.'" *Iglesias v. United States*, 848 F.2d 362, 366 (2d Cir. 1988) (internal citations omitted). Section 1.493 does exactly that. It demands the Court take procedural steps listed nowhere in the substantive statute before authorizing disclosure, and thereby cabins the discretion afforded by Congress to the Court. Under § 7332(b)(2)(D), it is *the Court's* role to fashion "appropriate safeguards against unauthorized disclosure"—not VA's. As this Court has noted recently, procedural rules cannot amend a statute without clear statutory authorization. *See United States v. Mercado*, No. 3:13-CR-181 (SRU), 2025 WL 297429, at *6 (D. Conn. Jan. 24, 2025) (Underhill, J.).

Moreover, to the extent that § 1.493 purports to cabin the Court's broad discovery powers, such as the Court's authority to decide how it will handle matters *in camera*, the rule is further in conflict with Federal Rule of Civil Procedure 26(c). *See Res. Invs., Inc. v. United States*, 93 Fed. Cl. 373, 379 (2010) ("[A]bsent clear congressional intent to the contrary, no federal regulation may contravene or otherwise impede the operation of the Federal Rules."). Insofar as § 1.493 purports to constrain the Court's role in deciding whether to authorize disclosure even after statutory requirements are met, the regulation operates *ultra vires* of the statute and is thus invalid.

Section 1.493 does more than ignore the statutory and regulatory scheme. It also violates the constitutional separation of powers. The regulation purports to dictate how the Court must take in evidence, who it must hear from, and even how it must operate within its chambers. *See* 38 C.F.R. § 1.493(c). But Congress nowhere delegated to VA the authority to instruct Article III courts as to the manner or means of entering § 7332 disclosure orders. These regulatory requirements reflect an improper intrusion by an executive branch agency on the Judiciary. *See Kucana v. Holder*, 558 U.S. 233, 252-53 (2010) (rejecting government contention that agency could determine which of its decisions were "discretionary" and thus immune from judicial review, because "[w]hile Congress pared back judicial review . . . it did not delegate to the Executive authority to do so"); *Carlyle Towers Condo. Ass'n v. FDIC*, 170 F.3d 301, 310 (2d Cir. 1999) ("[I]t is 'axiomatic' that agencies can neither grant nor curtail federal court jurisdiction . . . ."). Congress set out the conditions for entry of a disclosure order in the text of § 7332, and Plaintiffs' application meets the statutory requirements. VA may neither "grant nor curtail," *id.*, this Court's statutory authority to enter an appropriate order in this case.

Finally, insofar as Defendant offers a competing interpretation of § 1.493, the Court owes that interpretation no deference and instead should seek out the best reading of the regulation and

the statute available. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). That best reading demonstrates that VA lacked statutory authority to promulgate § 1.493, that § 1.493 operates *ultra vires* of the statute, and, therefore, that § 1.493 does not bar the disclosure order Plaintiffs seek.

b. Even if § 1.493 is valid, Plaintiffs' interest in the records satisfies its requirements, and compliance would not be unduly burdensome.

Even assuming *arguendo* that § 1.493 is valid as applied to this Court in this case, Plaintiffs' requests satisfy its requirements, and compliance with its requirements would not be unduly burdensome. ECF 141-1 at 21-22.

Section 1.493 contains substantive and procedural requirements that the Parties and the Court must meet before the covered records can be disclosed. Under § 1.493(a), "any person having a legally recognized interest in the disclosure which is sought" may apply for disclosure of the covered records. Contrary to Defendant's assertion, ECF 141-1 at 22, Plaintiffs have a legally recognized interest in the disclosure of these records. *See* Tr. 23; *see also* ECF 83. The records contain data relevant to Plaintiffs' claims, and this data cannot be discovered anywhere else. Given Plaintiffs' broad right to discover relevant information under Rule 26, Plaintiffs have a legally recognized interest in obtaining the covered records.

Having established a legally recognized interest in the records, Plaintiffs must make an "application" for disclosure. 38 C.F.R. § 1.493(a). Plaintiffs have already made an "application" by requesting these records in the course of discovery and by bringing their discovery dispute to the Court. Plaintiffs' application must use a fictitious name to refer to any subject of the records and may not contain or otherwise disclose any patient identifying information. 38 C.F.R. § 1.493(a). Plaintiffs are requesting randomly selected and anonymized files, coded with a unique identifier—meaning their application need not refer to the subjects of the records by name at all.

For the same reasons, Plaintiffs' application neither contains nor discloses any patient identifying information.

Next, the subject of the records sought and the VA facility from whom disclosure is sought must receive "adequate notice" of the application for disclosure. Similarly, the subject of each record sought must receive "[a]n opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence on whether the statutory and regulatory criteria for the issuance of the court order are met." 38 C.F.R. §§ 1.493(b)(1)-(2). Providing the subjects of these records with notice and an opportunity to be heard is rightfully Defendant's burden. But Defendant offers no support for its assertion that "[t]his process cannot be done on a generalized level." ECF 141-1 at 21. VA has substantial infrastructure allowing it to engage in mass outreach to veterans whose records it maintains. VA could easily engage in mass outreach to the subjects of these records by mail, as it already does. And as noted above, many of the veterans are known to VA to be deceased, obviating the risk of injury or the need for notice.

To the extent that the Court agrees with Defendant that outreach to the subjects of these records would be unduly burdensome, Plaintiffs propose that the Court order Defendant to provide each veteran whose record is included in the sample with written notice and impose a thirty-day deadline by which each veteran may respond. This procedure would be consistent with district-court practice in complying with the notice requirements of analogous regulations. *See U.S. ex rel. Gelfand v. Special Care Hosp. Mgmt. Corp.*, Nos. CV 02–6079, CV 05–4911, 2010 WL 2399693, at *4 (E.D.N.Y. June 10, 2010) (applying 42 C.F.R. § 2.64(b) to order that defendants must serve notice on all non-party patients whose records may be disclosed and provide them thirty days to respond in writing).

Section 1.493(c) then requires that "[a]ny oral argument, review of evidence, or hearing on the application [or materials submitted by subjects of the records] must be held in the judge's chambers or in some manner which ensures that patient identifying information is not disclosed." Again, Defendant offers no support for its assertion that "[t]his process cannot be done on a generalized level." ECF 141-1 at 21. The Court is already familiar with Plaintiffs' application for the covered records and can devise procedures to intake and review the subjects of the records' responses to Plaintiffs' application.

Under § 1.493(d), the Court must find good cause for disclosure. This provision of the regulation includes factors that the Court must consider in making its good-cause determination that are not included in the statute, 38 U.S.C. § 7332(b)(2)(D). Section 1.493(d)(1) adds that, in addition to weighing the factors included in § 7332(b)(2)(D)'s good-cause formulation, the Court must also find that "[o]ther ways of obtaining the information are not available or would not be effective." 38 C.F.R. § 1.493(d)(1). Plaintiffs have satisfied this requirement. Because Defendant has not produced any other records containing data on disability-benefits applicants, Plaintiffs cannot obtain this information without examining VA benefits files.

Section 1.493(d)(2) then restates the statutory factors that the Court must consider in its good-cause determination. As discussed, Plaintiffs satisfy the statutory requirements for good cause under § 7332(b)(2)(D). This Court has previously found good cause for this discovery, *see* Tr. 23 (recognizing that "this discovery seems perfectly appropriate"); ECF 139 at 2 (characterizing Plaintiffs' data sampling requests as "reasonable"), and has good reason to continue to do so. By satisfying the statutory standard for good cause under § 7332(b)(2)(D), Plaintiffs also satisfy the regulatory standard: the public interest and need for the disclosure of the

requested variables within the patient files clearly outweigh "the potential injury to the patient, the physician-patient relationship and the treatment services." 38 C.F.R. § 1.493(d)(2).

Finally, upon finding good cause, the Court must apply certain safeguards to its disclosure order. Again, 38 U.S.C. § 7332(b)(2)(D), leaves the fashioning of appropriate safeguards to the *Court*, and additional requirements are *ultra vires* the statute. Nevertheless, § 1.493(e) dictates what those safeguards must be. The Court must "(1) Limit disclosure to those parts of the patient's record which are essential to fulfill the objective of the order; (2) Limit disclosure to those persons whose need for information is the basis for the order; and (3) Include such other measures as are necessary to limit disclosure for the protection of the patient, the physician-patient relationship and the treatment services." 38 C.F.R. §§ 1.493(e)(1)-(3). The Court can easily fashion a disclosure order satisfying each of these requirements.

To summarize, § 1.493 is an invalid regulation operating *ultra vires* of the statute. But even if § 1.493 is valid, Plaintiffs satisfy its terms, and compliance with its requirements would not be unduly burdensome. The Court should hold that neither § 1.493 nor the underlying statute, § 7332(b)(2)(D), bar disclosure of unredacted VA benefits files for the purposes of Plaintiffs' sampling proposal and pursuant to the safeguards proposed by Defendant. ECF 141-1 at 23-24.

*C. 38 C.F.R. § 1.491 does not bar disclosure of records covered by § 7332.*

As a last resort, Defendant insists that 38 C.F.R. § 1.491 also bars disclosure of the covered records, even pursuant to a court order. ECF 141-1 at 21. This regulation bars disclosure of "confidential communications made by a patient to a treatment program in the course of diagnosis, treatment, or referral for treatment" except in three enumerated circumstances. But Defendant's interpretation of § 1.491 would render superfluous § 1.493, which explicitly permits disclosure under certain circumstances. If the Court adopts the expansive definition of "confidential

communications" advanced by Defendant, no court could order the disclosure of any record under § 1.493 except for in the rare circumstances enumerated by § 1.491. Defendant has not offered a workable definition of "confidential communications," and has made no showing that the records Plaintiffs seek are likely to contain documents concerning implicated subject matter.

## II. In the Alternative, This Court Should Order Defendant to Disclose Redacted Files or to Extract and Produce the Listed Variables from the Files at Issue.

Even if the Court concludes that disclosure of unredacted benefits files is barred by the applicable statutes, the Court may still order Defendant to produce redacted records or extract the requested variables from the relevant benefits files. Defendant's concerns regarding the burden of disclosure and privacy risks are not insurmountable. Plaintiffs have narrowed their request to include only non-sensitive variables that are essential to their statistical analysis; redaction or extraction would address these privacy concerns. Any resulting burden is amply justified by the needs of, and significant public interest in, Plaintiffs' claims.

### *A. Redaction of files and extraction of requested variables are proportional to the needs of the case.*

Plaintiffs' request for disability-benefits data is proportional to the needs of the case. Defendant's burden and privacy concerns misstate both the factual demands of Plaintiffs' proposal and the governing legal standards under Rule 26(b) of the Federal Rules of Civil Procedure. It is uncontested that Plaintiffs cannot access the data necessary for their statistical analysis from another source. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring courts to limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive"). And the proportionality test incorporated into Rule 26(b)(2)(C)(iii), concerning the scope of discovery, weighs heavily in favor of disclosure, particularly in a case implicating significant public policy interests. *See Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y.

Sept. 10, 2012) ("Of course, the importance of this litigation is not measured in dollars alone; the plaintiffs seek to vindicate the civil rights of the class members, and thus further an important public interest."); ECF 115 at 12-13 ("[O]ne cannot accurately measure systemic racism in the VA's benefits administration by evaluating individual cases . . . systemic racism, true to its name, can only be measured by looking at the system as a whole.").

Contrary to Defendant's claim, Plaintiffs do not seek "'unrestricted discovery' based on non-established relevance." ECF 141-1 at 28. Instead, Plaintiffs seek only a limited and defined set of variables from a random sample of claims spanning a defined time period. These data are necessary for Plaintiffs' statistical analysis of racial disparities in VA benefits adjudications, which lies at the heart of their claims and prospective class certification motion. In *Brous v. Eligo Energy, LLC*, No. 24 Civ. 1260, 2024 U.S. Dist. LEXIS 205103 (S.D.N.Y. Nov. 8, 2024), the court authorized plaintiffs' request for 50,000 documents. Plaintiffs here seek only 16,500 veterans' files, which represents a small fraction of the full universe of millions of claims between 1945 and today.[13]

Defendant's attempt to characterize this proportional discovery request as extraordinary cannot be reconciled with Rule 26(b)'s flexible and balanced approach to managing discovery burdens. *See Chen-Oster*, 285 F.R.D. at 303; *see also Gutierrez v. Johnson & Johnson, Inc.*, Civ. No. 01-5302 (WHW), 2002 WL 34717245, at *3. (D.N.J. Aug. 13, 2002) ("The party resisting production of discovery must demonstrate to the Court that the requested documents either do not

---

[13] VA has adjudicated millions of initial disability claims since 1945. In FY 1945, just over one million veterans were receiving disability compensation benefits. U.S. Veterans' Admin., *Annual Report of the Administrator of Veterans' Affairs* 61 (1945), https://www.va.gov/vetdata/docs/FY1945.pdf. By FY 1959, almost three million veterans were receiving VA compensation. U.S. Veterans' Admin., *Annual Report: Administrator of Veterans Affairs* 187 (1959), https://www.va.gov/vetdata/docs/FY1959.pdf. In FY 2023 alone, 367,000 veterans began receiving VA compensation benefits for the first time. U.S. Dep't of Veterans Affs., *2023 Annual Benefits Report* 72 (2023), https://www.benefits.va.gov/REPORTS/abr/docs/2023-compensation.pdf.

come within the broad scope of relevance as defined in Fed.R.Civ.P. 26(b)(1) or else that they are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.").

Further, should the Court decide not to order the production of unredacted files, Plaintiffs would not seek wholesale production of full files. Plaintiffs would seek only (1) redacted versions that preserve the non-sensitive variables necessary for statistical analysis, or (2) Defendant's extraction of those variables into a data set. In either case, the actual number of fields requested is limited and known. *Contra Woelfle v. Black & Decker (U.S.) Inc.,* No. 1:18-cv-486, 2020 WL 1180749, at *3 (W.D.N.Y. Mar. 12, 2020) (granting a protective order where request concerned a category of information "without any time of scope limitation"). Plaintiffs have asked for 5,500 files for each of the three eras identified in the sampling proposal; they do not request an unlimited number of files from an undefined time period.

If the Court finds that Defendant cannot produce the full, unredacted files to Plaintiffs, redacting the files or pulling the variables is a reasonable solution to resolve the discovery dispute. Defendant simultaneously refuses to disclose the full files and asserts that the burden of redaction or extraction is too high. In refusing to compromise on any option Plaintiffs propose, Defendant insists on wholesale withholding of data to which only Defendant has access, and which is pivotal to proving Plaintiffs' claims.[14] The Court should thus reject Defendant's protective order.

---

[14] Defendant has stated that it is working to produce the relevant data from 2006 onwards. However, this omits sixty-one years of data that Plaintiffs seek. When asked by the Court if Defendant would consider imputing the data from 2006 onward as representative of the whole group of data, Defendant declined. Tr. 10-11. Defendant has proposed no solution that it is willing to pursue.

1. <u>The Court should order the United States to redact VA files to alleviate Defendant's privacy concerns.</u>

Plaintiffs do not seek veterans' names, addresses, or Social Security numbers and, should the Court decide not to order the disclosure of unredacted files, would not request disclosure of information protected under 38 U.S.C. § 7332. Plaintiffs would instead request a defined set of sampling variables. These variables are essential to Plaintiffs' claims and tailored to the case's needs. The Court should order Defendant to redact the contents of these files except for the variables Plaintiffs seek.

Ordering Defendant to redact personally identifying information (PII) while preserving these sampling variables would directly address Defendant's stated privacy concerns without impairing the files' statistical value. Redacting names and contact information is routine litigation practice. While Plaintiffs acknowledge that Defendant would need to assign each benefits file a unique anonymized identifier in lieu of PII, that step will not significantly alter the burden of producing such records. Courts have consistently held that redaction is a proper response to privacy concerns during discovery. *See Haus v. City of New York*, No. 03 Civ. 4915 RWSMHD, 2006 WL 1148680, at *3-4 (S.D.N.Y. Apr. 17, 2006) (acknowledging that a "substantial body of federal case law authority recogniz[es] that a state rule or statute (or indeed a federal one) aimed at protecting the privacy of non-litigants will generally not block discovery when the discovering party is given access to the documents in a manner that conceals the identity of the protected individuals"); *see also Crosby v. City of New York*, 269 F.R.D. 267, 275 (S.D.N.Y. 2010) (explaining that federal courts "commonly order production of documents . . . cleansed of the names and other identifying information" to protect privacy while preserving discovery). Defendant's claim that it cannot redact a relatively small sample of veterans' records without undue burden is inconsistent with federal precedent and with ordinary litigation practice.

Additionally, Plaintiffs reviewed several veterans' VBMS and older paper files to identify the variables Plaintiffs have requested for purposes of redaction. Nearly all of these variables were located within a few limited documents, namely the initial benefits application; VA's decision on the initial application; and the veteran's DD-214, a single-page record of their military service. Declaration of Claire Sullivan ¶ 5 ("Sullivan Decl."). The process of redacting files will therefore be less burdensome than Defendant suggests since Defendant will likely be able to identify Plaintiffs' variables and redact in full select documents in a veteran's file.

2. <u>In the alternative, Defendant should extract and produce the requested variables in database form.</u>

To the extent Defendant raises concerns about the burden of scanning and redacting files, Plaintiffs alternatively propose that Defendant extract the requested variables and produce those variables to Plaintiffs in database form. This would further minimize Defendant's alleged burden and is expressly contemplated by statute. 5 U.S.C. § 522a(b)(5) offers an exception permitting disclosure of records to "a recipient who has provided the agency with advance adequate written assurance that the record will be used solely as a statistical research or reporting record, and the record is to be transferred in a form that is not individually identifiable." Plaintiffs are willing to provide such written assurance.

Defendant's declarations confirm that these variables can be manually extracted from C-files. ECF 141-4 at ¶¶ 5-14. Defendant stated that it took fifty-five minutes to find the variables, with the exception of ethnicity, in a test of a single file. *Id.* ¶ 14. Plaintiffs ran similar "tests" on one pre-2006 paper file and two VBMS files. Sullivan Decl. ¶ 2. With no prior familiarity with these veterans' records, student interns identified all of the variables within an average of 7 minutes for the VBMS files. *Id.* ¶ 6. The student intern running the test did not have prior experience in VBMS and still found the variables *48 minutes* faster than VA's counsel. The files' lengths—which

ranged from hundreds of pages to thousands—did not impact the student's ability to find the variables in less than ten minutes within VBMS. *Id*. This is because, as suggested by the Court during the March teleconference, Tr. 18-20, all or nearly all of the eleven variables can be found in just a handful of records. These include the initial benefits application; VA's decision on that application; and the veteran's one-page DD-214.[15]

Moreover, Defendant omits important information regarding the availability of data in files scanned into VBMS. Defendant asserts that the variables Plaintiffs seek "do not exist as data that a computerized program could process and pull into a report; instead, the information exists in the documents themselves, which would require a manual review to identify." ECF 141-1 at 6. But Defendant does not mention that each file in VBMS is scanned into PDF format. Defendant does not consider applying Optical Character Recognition (OCR) to these scanned files, such that each file could be searched through for keywords using simple commands available on any computer.

More to the point, Defendant has not considered potential avenues for automating searches through the digitized files accessible through VBMS. Mr. Herbert describes only the process that a person would use if they were conducting a manual review through VBMS's public-facing user interface. ECF 141-3 at ¶¶ 36-47. Behind every user interface, though, is an electronic database that can be accessed directly using Standard Query Language (SQL) and related tools. Such tools make it possible to manipulate data in more flexible ways than would be possible through a user interface that has limited functionality by design. For example, while Mr. Herbert claims that

[15] Plaintiffs acknowledge that it may take longer to review lengthy paper files, but it also appears that older paper files tend to have far fewer total pages than those involving contemporary, sometimes lengthy, medical records. Regardless, the eleven variables in older files, like in modern files, seem available in a small set of specific records, such as the initial application, VA's decision on that application, and the veteran's DD-214.

VBMS is not designed to pull multiple disability files at once, *id.* ¶ 42, a computer script can easily be written to do so from the same databases from which VBMS pulls information.[16]

Moreover, Mr. Herbert confirms that a person accessing a veteran's file on VBMS sees a list of all associated scanned documents. ECF 141-1 at ¶ 38. By necessity, that means that the underlying database stores information about which digitized files are associated with which veteran's files. Thus, an automated script could easily identify and then fetch all scanned PDF files associated with a particular file for production to Plaintiffs, or perhaps for further automated processing (such as applying OCR to attempt to identify particular files likely to contain the variables Plaintiffs seek). This process is especially salient given that Defendant has experience in devising tools for searching the contents of scanned documents.[17] Plaintiffs are prepared to assist Defendant in identifying an automated methodology for doing so if the Court orders the Parties to do so.

Defendant has similarly failed to provide sufficient information regarding its access to data in databases other than VBMS. Defendant notes that it is "providing Plaintiffs a 'sampling' of 'variables' data for the time period for which that information exists in a database that can be queried (2006-present)." ECF 141-1 at 1. But Defendant does not describe what database it will rely upon to pull data from 2006 to the present. Importantly, Defendant has not described in sufficient detail what other databases might exist that contain digitized data that it can "query," particularly databases containing Plaintiffs' variables predating 2006.[18]

---

[16] *See, e.g.*, Geeks for Geeks, *SQL Select Query* (Apr. 17, 2025), https://www.geeksforgeeks.org/sql-select-query/; Geeks for Geeks, SELECT Data from Multiple Tables in SQL (Dec. 3, 2024), https://www.geeksforgeeks.org/sql-select-data-from-multiple-tables/.

[17] In Defendant's May 2, 2025, production was a document describing methods of searching the contents of scanned documents. This document was marked "confidential" and will be produced to the Court in accordance with the Protective Order. ECF 99; *see also supra* note 3.

[18] Also included in Defendant's May 2, 2025 production was a document describing a database containing claims data akin to those Plaintiffs seek. This document was also marked "confidential" by Defendant and will be produced in accordance with the Protective Order entered in this case. *See supra* note 3.

Without considering these processes for reducing its burden, Defendant has not made a sufficient showing that the extraction of Plaintiffs' variables would be unduly burdensome or infeasible. And to the extent that extraction of variables is burdensome, it is reasonable given the importance of the data to Plaintiffs' claims. Mere inconvenience does not excuse production of this data.

3. Extracting and producing variables does not constitute attorney work product.

Defendant's argument that pulling factual variables would constitute protected "work product" is misplaced. *See* ECF 141-1 at 28. Plaintiffs do not seek Defendant's internal mental impressions, litigation strategy, or legal analysis; they seek only existing factual information and structured data contained within veterans' records. Defendant's role in locating and compiling this data does not transform it into protected work product under Rule 34.

Defendant's citation to *A & R Body Specialty and Collision Works, Inc. v. Progressive Casualty Insurance Co.* is inapposite. Unlike *A & R Body*, this case does not involve a request for the "creation of a new merged data set" or a request to manipulate third-party proprietary data. No. 3:07-CV-929 (WWE), 2014 WL 5859024, at *4 (D. Conn. Nov. 10, 2014). In *A & R Body*, the plaintiffs demanded that defendants manually integrate estimating data from a third-party vendor with their own internal data, a process requiring interpretive judgment and creating new documents that did not otherwise exist. The court held that Rule 34 does not authorize courts to compel the creation of new documents in response to discovery. Magistrate Judge Fitzsimmons rejected not data extraction generally, but the creation of a "pristine" dataset by synthesizing disparate sources and curing factual discrepancies.

By contrast, the variables Plaintiffs request here are already present within veterans' C-files and can be extracted directly from existing documents. This type of extraction from an

existing dataset does not constitute "work product" and does not run afoul of Rule 34's limits on document creation. *See Ford v. Rensselaer Polytechnic Inst.*, No. 120-CV-470 (DNH/CFH), 2022 WL 715779, at *6 (N.D.N.Y. Mar. 10, 2022) (holding that where information is "deemed relevant for the purposes of discovery but does not appear to exist in a format readily providable to the plaintiff, requiring creation of such a document or compilation is proper"). Here, Defendant has full custody over the requested records.

Accordingly, Plaintiffs request that the Court order disclosure of VA benefits files. The Court may order the disclosure of unredacted benefits files, pursuant to entry of an appropriate order. In the alternative, the Court may order the redaction of these files, or the extraction of the eleven variables from these files. Regardless of which option the Court chooses, Plaintiffs have met their burden in establishing that their requests are commensurate with the scope of Rule 26, that Defendant's burden and privacy concerns can be accommodated, and that Plaintiffs' requests are necessary for their claims.

## III. This Court Should Deny Defendant's Motion for a Protective Order with Respect to Plaintiffs' Proposal for Discovery of Communications Regarding Racial Disparities.

As Plaintiffs noted in their motion for a status conference, RFPs 1, 23, and 25 seek correspondence regarding complaints received by VA regarding racial disparities, the experiences of Black veterans engaging with VA benefits systems, and the impact of such interactions on Black veterans. *See* ECF 119 at 3. Plaintiffs further explained that they had taken numerous steps during meet-and-confers to narrow the requests and assist Defendant in focusing its search by "identifying VA units and administrators mast likely to have received or responded to complaints about broader racial disparities in VA benefits adjudications since 1945, such as the Office of the Secretary (or,

previously, the Administrator) and VA offices responsible for legislative affairs, community engagement, and liaison duties with veteran service organizations." *Id.*

Further, Plaintiffs agreed to exclude complaints that might arise in individual benefits files and instead asked Defendant to "produce records relating to complaints by large, institutional actors such as the NAACP, to select VA units." *Id.* Plaintiffs reiterated the narrowed scope of these requests at the March 24, 2025 Status Conference. *See* Tr. 5-6 ("[W]e are seeking an order compelling the government to search for correspondence from advocacy groups and other institutional actors complaining about discrimination of VA benefits and VA's response. Those advocates might include one of three organizations or one of three types: veteran services organizations, members of Congress or civil rights organizations.").

At the March 24 hearing, the Court recognized the relevance of these records "principally to show knowledge on the part of higher-ups." Tr. 33. The Court then directed Defendant "as an initial matter, [to] search the headquarters' files regarding the focused complaint, focused request by the plaintiffs, that is, documents from major advocacy organizations or members of congress, we'll see what we get and we can talk about whether it's sufficient or whether we need to go further." *Id.* at 34. Defendant's counsel agreed, "in addition to th[e] custodians," to "look into the Office of Congressional and Legislative Affairs." *Id.* The Court reiterated its request that Defendant also search files of the Administrator, and, despite an exchange wherein Defendant's counsel denied that such a request had been made by Plaintiffs, *id.* at 34-37, the Court reiterated its view that searching the Administrator's files would be reasonable, *id.* at 37.

Rather than provide answers to the Court's questions, and without having disclosed any records of complaints to Plaintiffs since the conference, Defendant's motion for protective order mostly attempts to relitigate the issues discussed at the March hearing and to punt the issue as

premature while its custodial review is ongoing—even though Defendant raised it in its own motion for a protective order. But the present dispute is not about Defendant's custodial review of email records since the early 2000s, which Plaintiffs agree should continue, and which may yield some responsive materials for more recent time periods. Instead, as Plaintiffs' counsel noted at the March 24 conference, "[t]he government . . . has refused to search pre-electronic records of communications from members of Congress to whatever legislative affairs unit or staff handled that, for instance." Tr. 30. It was in the context of discussing a search of paper files that the Court directed Defendant to focus on the offices of the Administrator and Secretary as well as legislative affairs units. *Id.* at 32-34.

In its motion for protective order, Defendant provides, for the first time, some information about the steps it is currently undertaking to investigate where responsive paper records might reside, though very little information for Plaintiffs or the Court to work with. For example, Senior Archivist Robyn Rodgers addresses only records for the VA Administrator, and states that, using NARA's search features, she identified four "series" that could potentially include responsive materials, which total an estimated 11,100 pages of material. ECF 141-2 at ¶¶ 28-30.[19] However, she provides no information about the amount of time it would take to retrieve these files, nor any estimate of the amount of time it would take to complete a review for relevance. Moreover, she provides no information addressing the Court's questions about what would be involved in searching the paper files of units responsible for legislative affairs/liaising with legislators. These vague assertions fall far below Defendant's burden to establish that performing the search or review in question would be unduly burdensome such that a protective order is warranted. *See*,

---

[19] Plaintiffs do not concede that the four series identified by Ms. Rodgers are the only ones that are appropriate to review. Plaintiffs are undertaking an analysis of the publicly searchable index on NARA's website and intend to meet-and-confer with Defendant about any additional repositories they are able to identify; however, the burden of identifying potentially responsive repositories lies primarily with Defendant.

*e.g.*, *Granger v. Santiago*, No. 3:19 CV 60 (MPS), 2021 WL 457533, at *4 (D. Conn. Feb. 9, 2021) ("[A] party seeking to avoid discovery on grounds of burden at least has the obligation to address those proportionality factors pertinent to that case and *provide specific evidence* and argument about them to the extent possible; it is not enough merely to invoke the word 'burden' as a talisman." (citing *Guadalupe v. City of New York*, No. 15 Civ. 0220 (CM) (JCF), 2016 WL 3570545, at *2 (S.D.N.Y. June 24, 2016) (emphasis added))); *see also In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 2355451, at *5 (S.D.N.Y. May 28, 2013) (granting motion to compel over objection where objecting party "sa[id] nothing about the cost or effort involved in additional discovery"). Moreover, Defendant concedes that these are preliminary and incomplete impressions, as its investigation is ongoing.

In asking the Court to withhold ruling on this issue, Defendant provides no timeline for when it expects to have a better grasp of the effort required to perform a reasonable search for potentially responsive paper records, nor does it commit to performing any review or production of such paper records. The open-ended and noncommittal nature of Defendant's representations highlight the need for the Court's intervention at this time, even if only to ensure that Defendant continues to take the steps necessary to make progress on this issue. Therefore, Plaintiffs propose and respectfully request that the Court deny Defendant's motion for protective order on this issue without prejudice, and order Defendant to provide updates to Plaintiffs about the status of its investigation every two weeks for the next month, with a deadline for the Parties to complete their meet-and-confer about how to perform a search for responsive paper records within 45 days. Plaintiffs further propose that the Parties file a status report to the Court about the outcome of that meet-and-confer (either an agreement or a dispute) seven days before a status conference to be held on this issue in approximately sixty days.

This pragmatic approach will accommodate Defendant's implicit request for more time to complete its investigation of where potentially responsive materials may reside while ensuring that measurable progress continues to be made in the coming weeks. It will also provide the Parties with further opportunity to meet and confer and attempt to narrow any disputes about Defendant's searches in response to these RFPs. To that extent, Plaintiffs do not object to Defendant's request to defer a final decision about what Defendant must review or produce, but they do believe it is appropriate to hold Defendant to firm deadlines for completing its investigation into these issues.

Finally, Defendant requests, in the alternative, that if the Court does not defer ruling, that the Court grant its request for a protective order in full on the grounds that the RFPs in question are vague, overbroad, and unduly burdensome. ECF 141-1 at 37-38. This argument is based solely on the language of the RFPs as propounded, ignoring the significant efforts Plaintiffs have made to narrow and clarify their scope in further meet-and-confer efforts and in their representations to the Court. *See, e.g.*, ECF 141-6 at 55 (proposing limiting searches for responsive complaints to specific units); ECF 141-6 at 67-68 ("[Plaintiffs] reiterated that our emphasis on institutional complaints was intended to reduce the burden on Defendant."); ECF 141-6 at 95-96, 132-133, 136-137 (describing Plaintiffs' good-faith efforts to narrow the scope of their requests for complaint records). The requests in question focus on documents concerning actual or suspected racial disparities in VA housing, education, or disability compensation benefits (RFP 1), related to the experiences of Black veterans applying for those benefits (RFP 25), or the adverse impact on veterans when they are denied benefits (RFP 23). Plaintiffs have clarified that they are seeking correspondence between veterans service organizations, members of Congress, or civil rights organizations, and the VA Secretary/Administrator or VA units responsible for legislative affairs, regarding the aforementioned topics.

To be clear, these are not hypothetical inquiries. Plaintiffs' own research has led them to disclose to Defendant records of communications and correspondence from the NAACP to VA in the late 1940s and early 1950s regarding potential race discrimination involving World War II veterans. Ex. 5. In addition, Plaintiffs have provided correspondence from the Congressional Black Caucus to President Nixon expressing similar concerns in the early 1970s, Ex. 4, correspondence which the White House no doubt shared with VA.

Despite the clarity of Plaintiffs' position across multiple conferrals and their tendering of concrete examples of the sort of "complaints" they seek, Defendant protests that it does not know what the term "formal or informal complaints" means. But Plaintiffs have explained in meet-and-confer correspondence that "complaint" has its common dictionary meaning an "expression of . . . dissatisfaction." Ex. 6 at 16. Similarly, Plaintiffs have explained that by "experiences" they mean "its ordinary meaning as understood by the VA," citing other contexts where VA uses the term "experiences." ECF 141-6 at 137. And Plaintiffs have also clarified the "institutional actors" they are referring to: veterans service organizations, members of Congress, and civil rights organizations. *See, e.g.*, ECF 141-6 at 55. This should be a sufficient basis for Defendant to know which materials are responsive and which materials are not.[20] To the extent Defendant has genuine uncertainty, Plaintiffs remain available to confer.

Plaintiffs respectfully request that the Court deny Defendant's motion for a protective order regarding RFPs 1, 23, and 25 without prejudice, and order (1) Defendant to provide updates every two weeks regarding its efforts to locate responsive paper files for the next month; (2) the Parties to complete their meet-and-confer about how to perform a search for responsive paper records within forty-five days; and (3) the Parties to submit a status report about the outcome of that meet-

[20] The Parties have already negotiated ESI search terms and custodians which will assist with identifying potentially responsive electronic materials.

and-confer (*e.g.*, the nature of any agreements reached or a brief description of remaining disputes) seven days prior to a status conference as soon as possible following the forty-five-day deadline.

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendant's motion for a protective order and order the disclosure of (1) unredacted VA benefits files, or in the alternative; (2) redacted benefits files; or (3) extracted variables from those files. Plaintiffs have made a substantial showing of need, proportionality, and good faith in easing Defendant's privacy and burden concerns. Plaintiffs further request that this Court deny Defendant's motion for a protective order with respect to requests for records of complaints. Plaintiffs therefore ask that the Court order regular conferences to address Defendant's deficient responses on this issue. Defendant fails to satisfy their burden. Specifically, Defendant's assertions are too vague to satisfy its burden to show that searching for responsive records would be unduly burdensome and therefore warrants a protective order of this nature. Plaintiffs therefore ask this court to deny Defendant's motion for a protective order and order that Defendant substantively respond to Plaintiffs' discovery requests.

Dated: May 5, 2025

Respectfully submitted,

/s/ Michael J. Wishnie
Emily Elledge, Law Student Intern
Kindall Hayes, Law Student Intern
Gabriella Hill, Law Student Intern
Jared Hirschfield, Law Student Intern
Ryan Kellner, Law Student Intern
Claire Sullivan, Law Student Intern
Briana Thompson, Law Student Intern
Braden Worthington, Law Student Intern
Michael J. Wishnie, ct27221
Natalia Friedlander, ct31510
JEROME N. FRANK LEGAL SERVS. ORG.
Yale Law School*
P.O. Box 209090
New Haven, CT 06520
Tel: (203) 432-4800
michael.wishnie@ylsclinics.org

* This memorandum does not purport to state the views of Yale Law School, if any.

Yaman Salahi
SALAHI PC
505 Montgomery St., 11th Floor
San Francisco, CA 94111
Tel: (415) 236-2352
yaman@salahilaw.com

Jeremy M. Creelan
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel: (212) 891-1600
jcreelan@jenner.com

Adam C. Henderson
Erin Murphy
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
Tel: (312) 222-9350
ahenderson@jenner.com
emurphy@jenner.com