**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK, Jr. et al., *Plaintiffs*, | : | |
| v. | : | No. 3:22-cv-1503 (SRU) |
| THE UNITED STATES OF AMERICA, *Defendant*. | : | May 19, 2025 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

The United States respectfully requests that this Court grant the relief requested in its Motion for Protective Order ("Motion"), ECF 141, to: (1) enter an order protecting benefits files for thousands of veterans unrelated to this case and denying Plaintiffs' requests for "sampling" for the time periods for which such "sampling" is not available through database queries and thus would be unduly burdensome (pre-2006); and (2) defer ruling on the "complaints" issue and allow the parties to proceed with ongoing discovery without premature Court intervention.

With respect to "sampling," Plaintiffs contend in their Opposition, ECF 145 ("Opp."), that the United States has failed to address issues raised by the Court at the March 24, 2025 status conference. But the United States submitted thorough briefing and supporting declarations addressing, among other things, the relevant privacy statutes and regulations, the discovery it has already agreed to produce, and the unjustified burden of Plaintiffs' requests. Plaintiffs respond with even more demands and unsupported conclusions, summarily disagreeing with the United States' evidence.[1] Importantly, Plaintiffs *still* have not clarified whether they seek variables for 16,500 veterans in addition to, or inclusive of, the 5,500 the United States has already agreed to provide for 2006-forward. This obfuscation is indicative of Plaintiffs' ever-expanding demands.

[1] Plaintiffs' Opposition contains numerous incorrect conclusions of law and statements of fact as well as misstatements regarding the history of party discussions. For an accurate recitation of the background, the United States refers the Court to its original Motion and supporting papers, ECF 141 at 2-12.

Plaintiffs maintain that their requests are simple to address and are of greater importance than any counter-considerations raised by the United States. Not so.[2] Plaintiffs' disproportional and unduly burdensome demands to manually pull information from thousands of paper and/or scanned benefits files, which cannot be produced through a computer query, bear no resemblance to their initial "sampling" proposal intended for an automated pull of structured data.[3] Plaintiffs' demands continue to balloon without regard for the privacy rights of other veterans or the undue burden such demands would have on VA's ability to perform its mission.

Next, Plaintiffs take issue with the United States' inclusion of the "complaints" topic in its briefing, Opp. at 31. But the Court instructed the United States to discuss this issue. ECF 139 at 2. The Motion demonstrates a good faith effort both to address the Court's questions regarding Administrator and legislative office files and to continue party discussions. The United States maintains, as it has since Plaintiffs first brought the issue to the Court prior to a scheduled meet and confer, that this is not ripe for Court intervention. Plaintiffs now do not dispute this.

## I. PLAINTIFFS HAVE NOT AND CANNOT SHOW GOOD CAUSE FOR RELEASE OF INFORMATION COVERED BY 38 U.S.C. § 7332.

Plaintiffs consent to the additional safeguards the United States outlined in its Motion as necessary under the Privacy Act and 38 U.S.C. § 5701 for any order to produce unredacted veterans' benefits files. Opp at 2, 10. But even if Plaintiffs have shown "good cause" under these statutes—which is not conceded—they continue to fail to demonstrate sufficient need for information covered by 38 U.S.C. § 7332. For this reason, the Court should issue a protective order

[2] Given the time involved in addressing these complex disputes, the United States is willing to consent to a Magistrate Judge's review of discovery issues, should that be of benefit to the Court.

[3] The United States does not challenge the Court's characterization of the sampling proposal as "reasonable," ECF 139, *as it was originally envisioned, i.e., running code over structured data to create an anonymized database report*. That is why the United States agreed to do so for the years for which such a process is possible.

denying Plaintiffs' request for production of unredacted benefits files of thousands of veterans, as such a production would inevitably include § 7332 information.

In the first instance, although Plaintiffs consent to additional safeguards, Plaintiffs' actions with respect to this very Motion create serious concerns regarding future compliance with such safeguards. Plaintiffs' Opposition relies on a law student's declaration, which states that an unnamed "authorized user within [Yale Law School] provided [the student] access to VBMS," wherein she accessed files for clients of Plaintiffs' counsel. ECF 145-2 ¶ 4. But before any user of VA information systems may use such systems, they are statutorily required to: (1) comply with VA information security program policies; (2) attend security awareness training annually; and (3) sign an acknowledgement that they have read and agree to abide by the VA National Rules of Behavior. 38 U.S.C. § 5723(f). That the law student admittedly had "no training" on use of VBMS and needed the credentials of an "authorized user"—who Plaintiffs pointedly fail to identify—to access the system indicates that the student was not an authorized user and did not first comply with these requirements. It also appears that the unnamed "authorized user" likely violated the Rules of Behavior in allowing someone else to use their access credentials. It is not sufficient for compliance with 38 U.S.C. § 5723(f) that the "authorized user" is also from Yale Law School, or that the clients whose files were reviewed may have consented to the review. These statutes and policies protect both veterans' information and the safety of government systems. This occurrence gives the United States no comfort that production of highly sensitive information for thousands of non-party veterans would be handled appropriately, Court-ordered safeguards notwithstanding.

Further, as stated in the Motion, these safeguards would not satisfy 38 U.S.C. § 7332. Plaintiffs acknowledge that they do not, in fact, need the sensitive information covered by § 7332, but they nevertheless argue that they have made the required showing of good cause to obtain it.

Opp. at 11. Plaintiffs go so far as to argue that this Court should strike down VA regulations as violating separation of powers. Opp. at 13-17. They claim that 38 U.S.C. § 7334, which provides implementing authority, "does not make any mention of rules VA may promulgate related to the court-ordered disclosures of covered records without a patient's consent." Opp. at n.12. This is incorrect. 38 U.S.C. § 7334(c) expressly provides that "Regulations prescribed by the Secretary under [Section] 7332, … may contain such definitions, and may provide for such safeguards and procedures *(including procedures and criteria for the issuance and scope of court orders under section 7332(b)(2)(C) of this title)*, as are necessary to prevent circumvention or evasion of such regulations or to facilitate compliance with such regulations." *Id.* (emphasis added). Editorial notes to § 7334 clarify that "Section 7332(b)(2)(C) of this title, … was subsequently renumbered section 7332(b)(2)(D)"—the very section that addresses disclosure by court order without consent.[4]

It is puzzling that Plaintiffs ask this Court to declare that a regulation that exists solely to safeguard veterans' private information be deemed invalid. Regardless, this discovery dispute is not the appropriate vehicle to address Plaintiffs' "*ultra vires*" argument, nor is it necessary for the Court to do so. Even setting aside VA regulations, Plaintiffs have not made the required showing of good cause for release of information under 38 U.S.C. § 7332(b)(2)(D). If a randomized, unredacted production of benefits files is ordered, Plaintiffs would inevitably receive such protected information, potentially on a massive scale. Their desire to peruse the files for other "variables" as *one piece* of their extensive discovery is not good cause. Even if it is assumed that Plaintiffs brought an "application" for § 7332 material[5] and regulations requiring individualized

---

[4] *See also* Pub. L. 102–40, title IV, § 401(a)(4)(A), May 7, 1991, 105 Stat. 221; Pub. L. 100–322, title I, § 121(b)(2)(A), May 20, 1988, 102 Stat. 502.

[5] Plaintiffs provides no support for their argument that a motion for Court conference, bringing a general discovery dispute to the Court's attention, wherein § 7332 is not discussed, constitutes such an "application" on good cause to receive thousands of individuals' unredacted benefits files without their consent. Opp. at n.8.

notice and hearing are treated as, at most, a *suggested* process—neither of which the United States concedes—Congress clearly intended for heightened protections to limit such information's release. *See* 38 U.S.C. §§ 7332(b)(2)(D), (b)(3), 7334(c). Indeed, if Congress did not so intend, there would be no reason to effectuate the statute in the first place. The types of information covered by § 7332 could—and would—be treated the same as any other information covered by the Privacy Act and/or 38 U.S.C. § 5701.

Plaintiffs' cavalier suggestion that this Court could "devise procedures to intake and review the subjects of the records' responses to Plaintiff's application," Opp. 19, to hold potentially thousands of hearings, is another instance of their oversimplification of the extraordinary burden their request imposes. In this instance, it is the burden on the Court that Plaintiffs gloss over.[6]

Plaintiffs argue that there are "significant public policy interests" here, making disclosure "in the public interest." Opp. at 11, 21. However important the issues in this case may be, the idea that any civil litigation plaintiff could claim a "right"[7] to full access to thousands of veterans' benefits files without the veterans' consent also very much implicates a significant public policy interest. This Court has acknowledged that "disclosure of confidential VA medical records to a third party does threaten injury." *Johnson v. Atria Senior Living Grp., Inc.*, No. 3:09-cv-2120 (SRU), 2011 WL 13232093, at *1 (D. Conn. May 17, 2011) (J. Underhill).[8] Privacy statutes safeguard the most sensitive information of those who have served and, often, that of their family

[6] Plaintiffs also appear to suggest that the United States could "easily" mail every veteran since 1945, and/or their decedents, to warn them that their file may be selected as one of thousands for disclosure. Opp. at 18. Even if only the individual veterans who are selected for inclusion in the sample are given notice, such a process requires additional and significant time and money diverted from VA's resources, all despite Plaintiffs' failure to show good cause. The § 7332 notice process would also exponentially increase the time required for discovery.

[7] Plaintiffs argue they have a "legally recognized interest" in other veterans' complete and unredacted benefits files. Opp. at 17. They do not. Plaintiffs have no property rights or expectations guaranteed by law.

[8] In *Johnson*, this Court ordered disclosure of information covered by § 7332. *Id.* But as Plaintiffs acknowledge, that disclosure was not contested and the veteran whose information was directly at issue was a party. Plaintiffs cite no cases where thousands of randomly selected non-party veterans' files were disclosed without consent.

members.[9] Plaintiffs cannot establish good cause that accessing this information is more important than this goal.

## II. A REQUIREMENT TO PRODUCE REDACTED BENEFITS DOCUMENTS OR TO CREATE A COMPILATION WOULD BE IMPROPER.

Plaintiffs' request for either redacted productions of benefits file documents or the creation of a new spreadsheet containing the requested "variables" for the pre-2006 period would require time and resources greatly disproportional to the needs of this case. Such production would require the United States to undertake an improper manual analysis and compilation of information for an opposing party.[10] And most importantly, it would necessarily subvert the VA's focus on serving veterans by processing active benefits claims as quickly and as accurately as possible.

Plaintiffs draw extraordinarily broadbrush conclusions about what can "easily" be done to "pull" all requested "variables," despite not claiming to be database experts and specifically disclaiming knowledge of VBMS. Opp. at 26-27. In support of its Motion, the United States submitted detailed declarations regarding benefits files, VBMS, and the unjustifiable time and resource impact Plaintiffs' request would impose.[11] In the face of these declarations quantitatively describing just a fraction of the time that would be involved, Plaintiffs shrug off the United States' concerns as "mere inconvenience." Opp. at 33. In the face of these declarations' statements

---

[9] Plaintiffs argue, seemingly against their own self-interest, that deceased veterans cannot be injured by release of records. Opp. at 12. But § 7332 protects records even after death. *See* 38 U.S.C. § 7332(b)(3). And protection of records for deceased individuals serves the important goal of assuring all veterans that their information will be safeguarded and that they should not hesitate to seek treatment.

[10] Plaintiffs are incorrect in concluding that *A & R Body Specialty and Collision Works, Inc. v. Progressive Casualty Insurance Co.* barred production merely because it implicated integration of third-party data. Rather, it did so because Progressive's existing databases could not be queried, the data did not exist in the format sought by the party seeking production, and the production would require manual creation via "file-by-file" review by a human. No. 3:07-cv-929 (WWE), 2014 WL 5859024, at *4 (D. Conn. Nov. 10, 2014).

[11] The United States also stated in its Motion that it would provide the Court benefits files to review *in camera* if Plaintiffs' counsel would seek to obtain consent from their clients. Plaintiffs' counsel refused to even ask their administrative claims clients. Shortly before filing their Opposition, Plaintiffs consented to the provision of their own files. These files, Bates labeled USA000025967-31439, are now being provided to the Court for *in camera* review.

explaining valid burden concerns, Plaintiffs urge the Court to disregard the evidence and instead allow their requests in full without reference to an appropriate balancing of proportionality. And in the face of these declarations detailing how benefits files are maintained, Plaintiffs advance unsupported arguments that are, in many cases, misleading or outright false. Tools such as Optical Character Recognition are not a magic wand, as any person searching a PDF document containing handwriting or scanned images knows. An "SQL" query cannot "easily" be run over information that does not already exist in a format that can be accurately so queried.[12]

Plaintiffs wish this Court to believe that the requested pre-2006 information is unconditionally necessary. This is untrue. Again, Plaintiffs ignore that the United States has *already agreed* to produce the requested variable sampling for 5,500 anonymized veterans for 2006-forward, based on available data, and has offered to produce more from that period. And Plaintiffs have requested extensive additional discovery that is likely to be relevant to their allegations regarding disparities. Plaintiffs' counsel has even previously stated that they could proceed with data they already had for this issue, if further information was unavailable. Although Plaintiffs criticize the United States for not agreeing that any (as yet unknown) conclusions drawn from the 2006-forward data should be imputed to all eras, Opp. at n.14, the United States had no obligation to agree to such a "solution" to valid discovery objections, particularly not preemptively. And if the United States was required to impute the 2006-forward data to the entire time period, Plaintiffs would have to be similarly bound. Plaintiffs' pursuit of some sort of adverse

[12] Plaintiffs also incorrectly state that "Defendant does not mention that each file in VBMS is scanned into PDF format." Opp. at 26. But Mr. Herbert's declaration *repeatedly* states that all "scanned documents[] [are] each in PDF format" and "all documents are PDFs." ECF 141-3 ¶¶ 38-39. Next, Plaintiffs state that the United States "does not describe what database" it is using to pull data from 2006-forward, Opp. at 27, also demonstrably false. *See* 141-3, ¶ 6. Finally, Plaintiffs state that the United States has not described in full all databases where some of the "variables," such as a veteran's gender, may independently exist, Opp. at 27, but they do not dispute that paper files and/or VBMS are still the *only* option to find all requested benefits-related "variables" for the pre-2006 period.

finding against the United States in the face of valid discovery objections is not how the proportionality test works. However, it is up to each party whether to *argue* that the Court should impute findings from the 2006-forward group to other "eras." Whether the Court then does so is a question for a later time, when the evidence and arguments are before the Court as factfinder.

At bottom, Plaintiffs' requests will improperly impose an extraordinary burden on the United States in terms of time, money, and resources. This would have a *direct* detrimental impact on the VA's ability to dedicate resources to assisting veterans, especially given that the employees most familiar with VBMS, and thus most likely to be able to assist, are the ones who review active benefits claims. And discovery in this matter will have to be extended by months, if not years.

If the Court is inclined to nonetheless allow Plaintiffs' requests, the least objectionable method in terms of burden and privacy risk would be for VA employees to manually review benefits files and type the requested "variables" and other information as appropriate into a newly created, anonymized spreadsheet, using files already uploaded to VBMS, *see* ECF 141-3 ¶ 41, pulled through a randomized process that the VA would have to devise. This would be an extraordinary approach going well beyond the bounds of what is required in civil discovery, as it would require a party to create a new product specifically for use by an opposing party's expert in litigation. If the Court so ordered this, although the United States would document its process, Plaintiffs must be required to waive any right to seek to make the United States "go back to the well" or to challenge the accuracy of the manual transcription process. As it is, this process would take at least months to complete, even with a full-time team—another reality of its infeasibility.[13]

[13] Plaintiffs' declaration does not change the calculus. While the student attempts to minimize the time required to find the "variables," she also admits lack of familiarity with the system or the forms, so the reliability of her process cannot be assessed. Further, while she consulted a "profile page" for some variables, that is not part of the file itself; it also could be misleading to a person without VBMS experience. For instance, the "Regional Office" on the profile page is not indicative of the office that handled the veteran's original claim. Similarly, the profile page may indicate "Non-Hispanic" for ethnicity, whereas the benefits file may be silent on ethnicity. Further, consultation of the *(Continued)*

Given the extraordinary burden involved in *any* of Plaintiff' proposed approaches, associated costs for this particular discovery request should appropriately be shifted to Plaintiffs.

Any of these approaches are beyond the bounds of what is appropriate and proportional to the needs of the case, and the Court should grant the United States' Motion on this discovery.

## III. THERE IS NO GENUINE DISPUTE THAT COURT INTERVENTION ON PLAINTIFFS' REQUESTS FOR "COMPLAINTS" IS PREMATURE.

Plaintiffs' Opposition suggests that rather than continue discussions on the complaints request, the United States sought a protective order to "punt the issues." *See* Opp. at 30-31. However, it was Plaintiffs' own request for a status conference and expedited briefing—despite the United States' continuous representations that further negotiations were required—that necessitated the filing of the Motion. As instructed by the Court, and to preserve its rights, the United States included the topic of complaints and its search for VA Administrator and OCLA files in its papers, seeking a protective order only *in the alternative*. The United States maintains that additional discussions on this issue are required. *See* Hr'g Tr. (Mar. 24, 2025) at 37-38.

Plaintiffs' Opposition shows that the parties agree that allowing "further opportunity to meet and confer and attempt to narrow any disputes" about the "complaints" issue is the appropriate course of action. *See* Opp. at 38; ECF No. 141 at 35–39. These discussions would need to address, for instance, whether the 11,100 pages of "Administrator" files the United States identified are even of interest to Plaintiffs—an issue that Plaintiffs fail to address in their filing.[14]

---

benefits records would still be required for other variables, and should thus be reviewed for all variables for consistency purposes. In any event, the student purports it took her only seven minutes to review each VBMS file. Even if true, multiplied by 16,500, that is 1,925 hours of work, or over 48 full-time work weeks, committed solely to this project, *not including* the time to either pull and redact the documents or enter the information into a spreadsheet. And the student pointedly does *not* say how long it took her to review Mr. Monk Sr.'s paper file in full to try to find the variables. Any required pulling, scanning, and review of paper files would increase the timeline exponentially.

[14] Plaintiffs' Opposition is full of "but what abouts" that only distract from the real issues. For instance, Plaintiffs complain that the Archivist declaration (ECF 141-2) does not identify *all* "Administrator" files that they *assume* exist, even though they do not even say whether they are interested in the *identified* files. Further, although

*(Continued)*

Finally, Plaintiffs' inappropriate request that this Court require the United States to "provide updates to Plaintiffs about the status of its investigation [into the complaints issue] every two weeks for the next month" and impose a 45-day deadline for the parties "to complete their meet-and-confer about how to perform a search for responsive paper records" should be denied. Opp. at 32. Plaintiffs provide no explanation as to why this arbitrary deadline is necessary—nor could they. The current deadline for the close of discovery is November 17, 2025. *See* ECF Nos. 108 and 109. This deadline "to complete all discovery [] leav[es] the parties the flexibility to manage their own internal discovery deadlines." *Greene v. City of Norwalk*, No. 3:14-cv-01016, 2017 WL 600077, at * 3 (D. Conn. Feb. 14, 2017). Indeed, as the Motion demonstrates, the United States has continued its in-progress good faith discovery efforts. It is actively working on numerous other requests and productions, and the single discovery stream related to the issue of "complaints" cannot and should not be treated as if it exists in a vacuum. Importantly, Plaintiffs also have not identified, and indeed cannot identify, any reason for the Court to believe that the United States has *ever* failed to timely and meaningfully participate in a meet and confer when requested. Plaintiffs' proposed Court-mandated deadlines and check-ins, disconnected from actual discovery activity, would only serve to hinder the parties' efforts.

Accordingly, the United States requests that this Court defer its ruling on the "complaints" issue, as the parties may be able to resolve the issue without Court intervention, and deny Plaintiffs' requests to impose additional unnecessary and unreasonable parameters.

**CONCLUSION**

Defendant respectfully requests that this Court grant the relief requested in its Motion.

---

the Archivist included specific locations and page counts for the identified files, Plaintiffs complain that she does not provide the estimated time required for review or production. Opp. at 31. The entire point, however, is that the time required is difficult to know without assessing the unscanned, paper documents' contents and condition, and neither party should go through the effort without discussing in the first instance.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DAVID X. SULLIVAN
United States Attorney

KIRSTEN L. WILKERSON
Director, Torts Branch

DEBRA R. COLETTI
Acting Deputy Director, Torts Branch

*/s/ Irina M. Majumdar*
Irina Majumdar (phv207971)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 598-5403
Email: irina.m.majumdar@usdoj.gov

Emily M. Kelley (phv207548)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4400
Email: Emily.m.kelley@usdoj.gov

Jillian Rose Orticelli (ct28591)
Assistant United States Attorney
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: (860) 947-1101
Fax: (860) 760-7979
Email: Jillian.Orticelli@usdoj.gov

ATTORNEYS FOR DEFENDANT
UNITED STATES OF AMERICA