**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK, Jr. et al., | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | No. 3:22-cv-1503 (SRU) |
| | : | |
| THE UNITED STATES OF AMERICA, | : | April 30, 2026 |
| *Defendant*. | : | |

**DEFENDANT THE UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. RELEVANT ALLEGATIONS ..... 2

II. PROCEDURAL HISTORY ..... 4

LEGAL STANDARD ..... 5

ARGUMENT ..... 7

I. THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THE FTCA PRECLUDES INSTITUTIONAL TORT CLAIMS. ..... 7

A. The FTCA precludes institutional or systemic tort claims. ..... 8

B. Because Plaintiffs allege institutional tort claims, the Amended Complaint must be dismissed. ..... 11

C. Plaintiffs cannot cure their jurisdictional defects ..... 16

II. THE AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO THE FTCA'S DISCRETIONARY FUNCTION EXCEPTION ..... 17

A. The challenged conduct is discretionary, and Plaintiffs do not meet their pleading burden under the first *Gaubert* prong. ..... 19

B. The conduct at issue is policy-based, and Plaintiffs do not overcome the presumption that the second *Gaubert* prong is satisfied. ..... 25

C. Plaintiffs' conclusory allegation of unconstitutional conduct does not bar application of the discretionary function exception. ..... 27

D. Plaintiffs cannot cure their jurisdictional defects ..... 33

III. MONK, SR.'S CLAIMS SHOULD BE DISMISSED BECAUSE HE CANNOT ESTABLISH ESSENTIAL ELEMENTS OF HIS CLAIMS ..... 34

IV. NVCLR SHOULD BE DISMISSED BECAUSE IT FAILED TO EXHAUST PRESENTMENT REQUIREMENTS. ..... 37

CONCLUSION ..... 39

## TABLE OF AUTHORITIES

**Cases**

*Adams v. U.S. Dep't of Hous. & Urb. Dev.*,
807 F.2d 318 (2d Cir. 1986) .......... 39

*Altman v. Connally*,
456 F.2d 1114 (2d Cir. 1972) .......... 38

*B.A.D.J. v. United States*,
No. CV-21-00215, 2022 WL 11631016 (D. Ariz. Sep. 30, 2022) .......... 11, 28

*Berkman v. United States*,
957 F.2d 108 (4th Cir. 1992) .......... 8

*Blecher v. Holy See*,
146 F.4th 206 (2d Cir. 2025) .......... 18, 21, 26

*Bowers v. United States*,
931 F. Supp. 2d 358 (D. Conn. 2013) .......... 20, 21, 25

*Brown v. Kelly*,
No. 05-cv-5442, 2007 WL 1138877 (S.D.N.Y. Apr. 16, 2007) .......... 36

*Brownback v. King*,
141 S. Ct. 740 (2021) .......... 14, 34, 37

*Burkhart v. Washington Metro. Area Transit Auth.*,
112 F.3d 1207 (D.C. Cir. 1997) .......... 21, 26

*Cangemi v. United States*,
13 F.4th 115 (2d Cir. 2021) .......... 18, 27

*Carrol v. Allstate Ins.*,
815 A.2d 119 (Conn. 2003) .......... 35

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) .......... 6, 7

*CHRO v. Cantillon*,
295 A.3d 919 (Conn. 2023) .......... 35

*City of Canton v. Harris*,
489 U.S. 378 (1989) .......... 29, 32

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998) .......... 30-31, 32

*Dalehite v. United States*,
346 U.S. 15 (1953) .......... 18

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980) .......... 17

*Diaz-Bernal v. Myers*,
758 F. Supp. 2d 106 (D. Conn. 2010) .......... 29

*Dichter-Mad Family Partners, LLP v. United States*,
707 F. Supp. 2d 1016 (C.D. Cal. 2010) .......... 23

*Donahue v. United States*,
870 F. Supp. 2d 97 (D.D.C. 2012) .......... 23

*Dorfman v. Smith*,
271 A.3d 53 (Conn. 2022) .......... 35

*F.D.I.C. v. Meyer*,
510 U.S. 471 (1994) .......... 6, 25, 28, 34

*F.R. v. United States*,
No. CV-21-00339, 2022 WL 2905040 (D. Ariz. July 22, 2022) .......... 11

*Farmer v. Brennan*,
511 U.S. 825 (1994) .......... 32

*Flores Benitez v. Miller*,
687 F. Supp. 3d 304 (D. Conn. 2023) .......... 8, 15, 16, 28

*Freeman v. United States*,
556 F.3d 326 (5th Cir. 2009) .......... 33

*Conn. Jud. Branch v. Gilbert*,
272 A.3d 603 (Conn. 2022) .......... 35, 36

*Gionfriddo v. Salaf*,
343 F. Supp. 2d 109 (D. Conn. 2004) .......... 6

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) .......... 6, 12

*Gunn v. Minton*,
568 U.S. 251 (2013) .......... 6

*Healy v. U.S. Postal Serv.*,
677 F. Supp. 1284 (E.D.N.Y. 1987) .......... 38

*Heller v. United States*,
620 F. Supp. 270 (M.D. Fla. 1985) .......... 23

*Heller v. United States*,
803 F.2d 1558 (11th Cir. 1986) .......... 23

*In re Joint E. & S. Dists. Asbestos Litig.*,
891 F.2d 31 (2d Cir. 1989) .......... 18, 27

*In re Terrorist Attacks on September 11, 2001*,
392 F. Supp. 2d 539 (S.D.N.Y. 2005) .......... 22-23

*J.P. v. United States*,
679 F. Supp. 3d 911 (D. Ariz. 2023) .......... 10, 13-14

*Jackson v. United States*,
730 F.2d 808 (D.C. Cir. 1984) .......... 38

*K.W. Thompson Tool v. United States*,
836 F.2d 721 (1st Cir. 1988) .......... 21

*Kellogg Brown & Root Services v. United States*,
102 F. Supp. 3d 648 (D. Del. 2015) .......... 23

*Kokkonen v. Guardian Life Ins. of Am.*,
511 U.S. 375 (1994) .......... 6

*Kubik v. Cent. Michigan Univ. Bd. of Trs.*,
No. 15-cv-12055, 2016 WL 9631633 (E.D. Mich. Mar. 17, 2016).......... 36

*Lee v. United States*,
No. CV 19-08051, 2020 WL 6573258 (D. Ariz. Sep. 18, 2020) .......... 8, 10, 14

*Li v. Aponte*,
05-CV-6237(NRB), 2008 WL 4308127 (S.D.N.Y. Sep. 16, 2008) .......... 21

*Lockwood v. United States*,
No. 26-10876-B (11th Cir.) .......... 9

*Lockwood v. United States*,
2:25-cv-608-EGL, 2026 WL 851441 (N.D. Ala. Jan. 9, 2026) .......... 9

*Lopez v. U.S. Immigration & Customs Enf't*,
455 F. App'x 427 (5th Cir. 2011) .......... 32-33

*Loughlin v. United States*,
393 F.3d 155 (D.C. Cir. 2004) .......... 27

*Loumiet v. United States*,
828 F.3d 935 (D.C. Cir. 2016) .......... 29, 30

*M.J. v. United States*,
759 F. Supp. 3d 1034 (S.D. Cal. 2024) .......... 30

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) .......... 6, 7

*Martinez v. United States*,
192 F. App'x 839 (11th Cir. 2006) ........................................................................ 23

*McGowan v. United States*,
825 F.3d 118 (2d Cir. 2016) ..................................................................................... 5

*Meier v. United States*,
No. C 05-04404, 2006 WL 3798160 (N.D. Cal. Dec., 22, 2006) ................................... 10-11

*Molchatsky v. United States*,
713 F.3d 159 (2d Cir. 2013) ........................................................................ 18, 20, 26

*Molchatsky v. United States*,
778 F. Supp. 2d 421 (S.D.N.Y. 2011) ........................................................................ 33

*Myers & Myers v. United States Postal Serv.*,
527 F.2d 1252 (2d Cir. 1975) ..................................................................................... 28

*Ojo v. United States*,
No. 16-cv-4112, 2019 WL 3852391 (E.D.N.Y. Aug. 15, 2019) ........................................... 21

*Olsen v. Cnty. of Nassau*,
615 F. Supp. 2d 35 (E.D.N.Y. 2009) ........................................................................ 35

*Oral Care Dental Grp. II, LLC v. Pallet*,
277 A.3d 860 (Conn. App. Ct. 2022) ........................................................................ 35, 36

*Parisi v. Goldman, Sachs*,
710 F.3d 483 (2d Cir. 2013) ..................................................................................... 17, 37

*Pers. Adm'r of Massachusetts v. Feeney*,
442 U.S. 256 (1979) ................................................................................................ 30

*Rent Stabilization Ass'n v. Dinkins*,
5 F.3d 591 (2d Cir. 1993) ..................................................................................... 6-7

*Ricci v. DeStefano*,
557 U.S. 557 (2009) ................................................................................................ 31

*Richard v. Bell Atl. Corp.*,
946 F. Supp. 54 (D.D.C. 1996) ................................................................................. 37

*Rukoro v. Fed. Republic of Germany*,
976 F.3d 218 (2d Cir. 2020) ..................................................................................... 7

*Saint-Guillen v. United States*,
657 F. Supp. 2d 376 (E.D.N.Y. 2009) ........................................................................ 21, 22, 26

*Salafia v. United States*,
578 F. Supp. 2d 435 (D. Conn. 2008) ........................................................................ 18, 28

*Sanders v. United States*,
937 F.3d 316 (4th Cir. 2019) ........................................................................................ 23

*Searles v. United States*,
No. 21-CV-6570, 2022 WL 2829912 (S.D.N.Y. July 20, 2022)...................................... 21, 26

*Sloan v. U.S. Dep't of Housing and Urban Development*,
236 F.3d 756 (D.C. Cir. 2001) ........................................................................................ 24

*Su v. Milford Sports Bars, LLC*,
No. 3:22-CV-321 (VAB), 2023 WL 10509599 (D. Conn. Dec. 15, 2023) ........................... 36

*Tandon v. Captain's Cove Marina of Bridgeport*,
752 F.3d 239 (2d Cir. 2014) ........................................................................................ 6, 7

*Torres-Estrada v. Cases*,
88 F.4th 14 (1st Cir. 2023) .......................................................................... 28-29, 29

*Tsolmon v. United States*,
No. H-13-3434, 2015 WL 5093412 (S.D. Tex. Aug. 28, 2015)............................................ 23

*United States ex rel. Rille v. Sun Microsystems*,
No. 4:04-CV-00986, 2008 WL 4756170 (E.D. Ark. Oct. 28, 2008) .................................... 23

*United States v. Gaubert*,
499 U.S. 315 (1991) ........................................................................................ *passim*

*United States v. Mitchell*,
445 U.S. 535 (1980) ........................................................................................ 5

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
467 U.S. 797 (1984) ........................................................................................ 17, 27

*Vera v. Alstom Power*,
189 F. Supp. 3d 360 (D. Conn. 2016) ........................................................................ 36

*Vickers v. United States*,
228 F.3d 944 (9th Cir. 2000) ........................................................................................ 21

*Wal-Mart Stores v. Dukes*,
131 S. Ct. 2541 (2011) ........................................................................................ 17

*Walen v. United States*,
246 F. Supp. 3d 459 (D.D.C. 2017) ........................................................................ 24

*Wyler v. United States*,
725 F.2d 156 (2d Cir. 1983) ........................................................................................ 38

*Xi v. Haugen*,
68 F.4th 824 (3d Cir. 2023) ........................................................................................ 28

*Zappia Middle E. Constr. v. Emirate of Abu Dhabi*,
215 F.3d 247 (2d Cir. 2000) .......... 7

**Statutes**

28 U.S.C. § 1292 .......... 5
28 U.S.C. § 1346 .......... *passim*
28 U.S.C. § 2671 .......... 1, 8
28 U.S.C. § 2672 .......... 8, 13
28 U.S.C. § 2674 .......... 8, 13
28 U.S.C. § 2675 .......... 38, 39
28 U.S.C. § 2680 .......... 5-6, 17, 18
38 U.S.C. § 101 .......... 25
38 U.S.C. § 210 .......... 19
38 U.S.C. § 303 .......... 19
38 U.S.C. § 511 .......... 4

**Rules**

Fed. R. Civ. P. 12 .......... 1, 4, 6, 7, 33, 37

**Regulations**

28 C.F.R. § 14.2 .......... 38
38 C.F.R. § 3.12 .......... 25

**INTRODUCTION**

Plaintiffs' claims in this matter must be dismissed for several independent and sufficient reasons.[1]

First, Plaintiffs assert claims[2] allegedly stemming from a "system" of negligence and discrimination by the Department of Veterans Affairs ("VA" or the "Agency") that spanned over 80 years. Such allegations plead an institutional tort that is precluded under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq. For this reason alone, the Amended Complaint should be dismissed in full for lack of subject matter jurisdiction.

Second, to the extent Plaintiffs allege any government conduct that is not a precluded institutional tort (they do not), they have nevertheless alleged conduct that is not cognizable due to the FTCA's discretionary function exception. Plaintiffs challenge VA's alleged failure to enact or improve various policies that they believe would have ensured greater fairness in the administration of veterans' benefits. But the VA's alleged failures giving rise to Plaintiffs' claims consist entirely of policy-laden conduct for which the United States has not waived its sovereign immunity under the FTCA. For this independent reason alone, the Amended Complaint must be dismissed in full because Plaintiffs fail to plead, as they must, the inapplicability of the discretionary function exception.

Third, Plaintiff Estate of Monk, Sr. does not sufficiently plead elements of his claims pursuant to Plaintiffs' own theory of emotional distress. Because the elements of an FTCA claim

[1] The United States brings this motion under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Issues of subject matter jurisdiction must be addressed at any time. *See* Fed. R. Civ. P. 12(h)(3).

[2] Plaintiffs bring three claims under the FTCA: (1) negligence, (2) negligent infliction of emotional distress, and (3) negligent supervision. ECF No. 36 ("Am. Compl.") ¶¶ 201-205.

are jurisdictional, Plaintiff Estate of Monk, Sr.'s claims should be dismissed in full for lack of subject matter jurisdiction.

Fourth, Plaintiff National Veterans Council for Legal Redress's ("NVCLR") claims must be dismissed for failure to exhaust administrative remedies as required by the FTCA. The FTCA's administrative exhaustion requirements are mandatory and jurisdictional. Plaintiff NVCLR's failure to exhaust administrative remedies deprives this Court of subject matter jurisdiction over NVCLR's claims.

## BACKGROUND

### I. RELEVANT ALLEGATIONS[3]

In the Amended Complaint, Plaintiffs allege that "Black veterans have been subjected to the emotional, dignitary, and reputational harms of interacting with a racially discriminatory VA benefits system." Am. Compl. ¶ 3.[4] Plaintiffs allege their injuries were "caused by the negligence of VA leaders in addressing the racial disparities of which they knew or should have known." *Id.* ¶ 6; *see also* ¶ 8. Plaintiffs characterize their claims as alleging "persistent racial disparities in VA benefits programs," *id.* ¶ 7; "harms of interacting with a racially biased veterans' benefits system," *id.* ¶ 9; "harms caused to them by the failure of VA leaders and staff operating under their supervision," *id.* ¶ 11; and a "failure of VA leadership to redress [racially disparate outcomes in benefits administration] through improved training, supervision, auditing, monitoring, and quality control," *id.* ¶ 36.

---

[3] Although the Court must accept nonconclusory factual allegations at this stage, Plaintiffs' Amended Complaint contains fundamental pleading and legal deficiencies that warrant dismissal in full.

[4] On March 13, 2026, Plaintiffs informed the United States that "Plaintiffs are narrowing their claims moving forward to racial disparities in disability compensation benefits; their claims will no longer encompass housing or education benefits."

Rather than identify any negligent acts or omissions by any specific government employee(s), however, Plaintiffs allege that "VA officials violated their statutory obligation and duty of care to properly execute and administer the law when they administered benefits in a manner they knew or should have known resulted in racially disparate outcomes," *id.* ¶ 46; "VA officials were deliberately indifferent to those outcomes," *id.* ¶ 47; and that "for decades VA leadership, including VA Secretaries, knew or should have known of, and were deliberately indifferent to, racial disparities in veterans' benefits for Black veterans," *id.* ¶ 48. Plaintiffs claim that "[t]hese officials include every VA Administrator or Secretary since World War II as well as each Under Secretary of Veterans Affairs for Benefits and other senior VA officials responsible for administering veterans' benefits programs." *Id.* ¶ 49. Plaintiffs list the names of individuals holding the role of Administrator, Secretary, or Under Secretary of Benefits, beginning in 1930 through the present, *id.* ¶¶ 50-52, and repeatedly allege that negligence was committed by "VA leaders," "VA officials," "VA leadership," "VA leadership and officials acting under the supervision of VA Administrators and, subsequently, VA Secretaries," and "[the] VA." *Id.* ¶¶ 36, 46-48, 70-75, 79-83, 157-58, 178, 182, 184, 187, 207, 215, 223, 225.

Plaintiffs allege that these VA leaders and officials negligently implemented "training, supervision, auditing, quality-control, and record-keeping practices," including through failures to "properly train, supervise, and instruct employees on procedures and practices that would administer benefits in nondiscriminatory ways" and to "write, edit, and distribute" manuals containing "guidance on eliminating racial bias in decision-making." *Id.* ¶¶ 53-58; *see also* ¶¶ 60-62. Plaintiffs also allege that "VA officials negligently failed to collect and aggregate claims data prior to 2001 in a manner that would allow VA to identify the nature, scope, and collateral effects of [] disparities." *Id.* ¶¶ 71-74.

In sum, Plaintiffs assert that:

- "VA Administrators and Secretaries, and other senior officials, breached [their] duties when through training, supervision, auditing, record-keeping, and other measures, they failed to redress longstanding, pervasive race discrimination and disparate impacts of which they knew or should have known." *Id.* ¶ 207 (First Claim);

- "The failure of VA officials and employees to maintain a racially neutral and non-discriminatory system of administering benefits led to psychological harm and emotional distress." *Id.* ¶ 215 (Second Claim);

- "VA officials and employees failed to supervise or instruct VA staff on how to distribute benefits in a racially neutral way. Leadership failed to create a system in which data related to benefits decisions could be aggregated and potential bias could be identified." *Id.* ¶ 223 (Third Claim); and

- "VA leadership's negligent supervision of VA managers and adjudicators violated their statutory duty to ensure the proper execution of VA laws." *Id.* ¶ 225 (Third Claim).

## II. PROCEDURAL HISTORY

On March 23, 2023, the United States filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), advancing arguments under the Veterans Judicial Review Act ("VJRA"), 38 U.S.C. § 511, and the FTCA. ECF Nos. 23, 23-1. While the motion was pending, on June 5, 2023, Plaintiffs amended their complaint. ECF No. 36. The United States chose to proceed with the existing motion to dismiss as applied to the Amended Complaint, rather than file a new motion. *See* ECF No. 54. On March 24, 2024, the Court denied the motion to dismiss.[5] ECF No. 83 (Order). Among other things, the Court ruled that Plaintiffs' claims were not precluded by the VJRA because they "do[] not, [] challenge the individual decisions of VA officials who granted or denied any particular application." *Id.* at 9. Instead, the Court held that Plaintiffs allege a "failure of VA officials and employees to maintain a racially neutral and nondiscriminatory system" and having

[5] The United States maintains that subject matter jurisdiction is lacking for the reasons stated in that motion to dismiss. However, this Motion advances different and additional bases requiring dismissal of Plaintiffs' claims in full for lack of subject matter jurisdiction.

to "litigate claims and navigate a VA benefits system" that was purportedly discriminatory. *Id.* at 9-10 (citing Am. Compl. ¶¶ 215, 216, 223).

On June 4, 2024, the United States sought certification to file an interlocutory appeal of the Court's order denying its motion to dismiss pursuant to 28 U.S.C. § 1292(b). ECF No. 96. On February 11, 2025, the Court denied the request for certification. ECF No. 115 (Order). In that Order, the Court again held that Plaintiffs seek damages "from the VA's alleged failure to maintain a racially nondiscriminatory benefits system." *Id.* at 6. The Court stated that Plaintiffs do not allege "individual racist decisions by individual VA employees," but rather "the VA's failure to address known racial disparities through 'training, supervision, auditing, monitoring, and quality control,' regardless of any individual benefits determination." *Id.* at 10. The Court held that "systemic racism, true to its name, can only be measured by looking at the system as a whole." *Id.* at 13.

## **LEGAL STANDARD**

The United States is immune from suit absent its consent to be sued, and the terms of the United States' consent delimit the Court's subject matter jurisdiction over a case brought against the United States. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016). The FTCA provides a limited waiver of sovereign immunity by the United States for claims for property damage or personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA does not, however, provide damages for all injuries caused by government employees; to that end, the FTCA codifies exceptions—*i.e.*, types and categories of conduct—for which the United States has not waived immunity. *See* 28

U.S.C. § 2680. Because the doctrine of sovereign immunity is jurisdictional, plaintiffs bear the burden of affirmatively pleading that their claim(s) fall within the FTCA's waiver of immunity and not one of the exceptions. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994)). A party cannot waive a defect to subject matter jurisdiction. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113. If a court determines that it lacks subject matter jurisdiction at any time, *it must dismiss the claim or action*. *See* Fed. R. Civ. P. 12(h)(3); *see also Gionfriddo v. Salaf*, 343 F. Supp. 2d 109, 110 (D. Conn. 2004) ("If a court concludes that it does not have subject matter jurisdiction, it must dismiss the case.").

On a facial motion to dismiss under Rule 12(b)(1), a "district court must take all uncontroverted facts in the complaint [] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport*, 752 F.3d 239, 243 (2d Cir. 2014). However, "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Id.* Thus, the Court may base its consideration of subject matter jurisdiction on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993) (recognizing that the trial court may dismiss "on the basis of the complaint alone or the complaint

supplemented by undisputed facts evidenced in the record"); *see also Rukoro v. Fed. Republic of Germany*, 976 F.3d 218, 224 (2d Cir. 2020) (affirming the dismissal of a case pursuant to Rule 12(b)(1) and confirming that the district court properly relied on undisputed facts to determine subject matter jurisdiction); ECF No. 83 at 1-2.

For the reasons provided herein, the Court lacks subject matter jurisdiction based on the Amended Complaint.[6] Plaintiffs bear "the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113); ECF No. 83 at 1-2. They have not met that burden; indeed, Plaintiffs' own pleadings make it impossible for them to meet it.

## ARGUMENT

### I. THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THE FTCA PRECLUDES INSTITUTIONAL TORT CLAIMS.

Plaintiffs allege that the VA injured them by improperly administering the veterans' disability benefits system, including through its purported failures in training, supervision, data collection, record-keeping, and, most pointedly, supposed failures to correct racial disparities in VA benefits outcomes. The narrative through-line of Plaintiffs' allegations—and the core legal violation they allege in each of their claims—is that the VA, as a whole, discriminated against them and other black veterans over decades. The Court's rulings confirm this construction of Plaintiffs' allegations and claims. *See, e.g.*, ECF No. 115 at 13; ECF No. 83 at 9 ("Monk challenges the alleged 'failure of VA officials and employees to maintain a racially neutral and

[6] On a fact-based challenge to subject matter jurisdiction, a defendant can proffer evidence beyond the plaintiff's pleading. *Carter*, 822 F.3d at 57; *Zappia Middle E. Constr. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (holding that the court may refer to evidence outside of the pleadings in considering subject matter jurisdiction). Here, however, the United States cites not to external evidence but to the Amended Complaint, the Court's Orders in this litigation, and, with respect to the claim of the Estate of Monk, Sr., Plaintiffs' representations to the Court regarding the Estate's claims.

nondiscriminatory system'" and having to "litigate claims and navigate a VA benefits system" that was purportedly discriminatory) (citing Am. Compl. ¶¶ 215, 216, 223).

Because Plaintiffs have made no secret that alleged institutional or "systemic" racial discrimination is the cause of all their harms and the crux of all their claims against the United States, this lawsuit cannot move forward under the FTCA and the Amended Complaint must be dismissed in full.

### A. The FTCA precludes institutional or systemic tort claims.

"[T]he FTCA imposes liability on the United States if a government employee commits a tort 'in the same manner and to the same extent as a private individual under like circumstances.'" ECF No. 83 at 3 (quoting 28 U.S.C. § 2674). The FTCA's limited waiver of sovereign immunity makes the United States liable only under principles of *respondeat superior* for the negligent or wrongful acts or omissions of "employee[s] of the Government" while acting within the scope of their employment. 28 U.S.C. § 1346(b)(1); 28 U.S.C. §§ 2672, 2674. Thus, a plaintiff cannot rely on allegations of "institutional" or "systemic" conduct by a federal agency in an FTCA lawsuit. This principle has been recognized in this District and throughout the country. *See, e.g.*, *Flores Benitez v. Miller*, 687 F. Supp. 3d 304, 333 (D. Conn. 2023) ("The FTCA waives sovereign immunity for the tortious acts of individual government employees and agents, but not for the actions or omissions of the entire government or an agency as a whole.") (citing 28 U.S.C. § 2671; *Lee v. United States*, No. CV 19-08051, 2020 WL 6573258, at *6 (D. Ariz. Sep. 18, 2020)); *Berkman v. United States*, 957 F.2d 108, 113 (4th Cir. 1992) ("[T]he FTCA is to be narrowly construed . . . [the Fourth Circuit] find[s] nothing in the language of the act or in the legislative history of the FTCA to indicate that Congress considered the existence of a generalized liability, attributable to the United States.").

Relying on this well-recognized principle, the Northern District of Alabama recently dismissed claims that were substantially identical to those that Plaintiffs assert in this case. *See Lockwood v. United States*, 2:25-cv-608-EGL, 2026 WL 851441 (N.D. Ala. Jan. 9, 2026). The parallels between these cases abound—prior to filing his *pro se* complaint in the Northern District of Alabama, Mr. Lockwood was represented for the submission of his administrative claim to the VA by the same counsel who represents Plaintiffs in this matter. And Mr. Lockwood's primary cause of action mirrors Plaintiffs' allegations in the Amended Complaint. *Id.* at *1-2. Further, Mr. Lockwood argued that the Northern District of Alabama should allow his FTCA claims to proceed based on the same theories that Plaintiffs advance in this case and in light of this Court's denial of the United States' prior motion to dismiss. *See id.* at *4. Like Plaintiffs here, Mr. Lockwood's complaint contained "generalized allegations of discriminatory mistreatment by VA leadership, Secretaries, Administrators and employees and overt and covert systemic bias in benefits administration." *Id.* at *6 (cleaned up). But the Northern District of Alabama dismissed Mr. Lockwood's complaint because "Lockwood cannot assert an FTCA claim based on generalized theories of institutional or systemic harm." *Id.* at *5. In so holding, the *Lockwood* court acknowledged that, while the FTCA's limited waiver of sovereign immunity opens up the United States to liability for "the negligence of government employees acting within the scope of their employment . . . [i]t does not permit claims premised on agency-wide misconduct or negligence attributed to the government as a whole." *Id.*[7]

[7] Mr. Lockwood has sought an appeal of this ruling, which is pending before the Eleventh Circuit. *See Lockwood v. United States*, No. 26-10876-B (11th Cir.). His appellate brief appears to argue that both he *and Plaintiffs in this case* intentionally styled their claims as institutional torts. *See id.*, ECF No. 12 at 14 (Apr. 24, 2026) (Appellant's Brief) (stating that "Attorney Wishnie, understanding VJRA risks, inserted [a] disclaimer [in the administrative claim] to clarify that the legal claim targeted the discriminatory administration of Veterans Affairs").

Many other courts have dismissed FTCA claims for the same reasons. In *Lee*, the court held that the plaintiff's claims for negligent "operation, maintenance, control, supervision, direction and training" appeared to "seek to sue the Government for negligence directly, rather than to allege negligent acts or omissions of individual federal employees, for whom the Government must assume liability for negligence under the FTCA." *Lee*, 2020 WL 6573258, at *6. In dismissing the FTCA claims, the court reasoned that such "generalized theories of negligence asserted against the staff and employees of federal institutions as a whole" are not cognizable under the FTCA. *Id.*

In *J.P. v. United States*, 679 F. Supp. 3d 911 (D. Ariz. 2023), the FTCA complaint contained "allegations that the 'U.S. Government,' 'U.S. Government officials,' and 'high-ranking federal officials' violated [p]laintiffs' rights and sought to cause emotional harm" by "designing and implementing" a policy respecting immigration detention. *Id.* at 921. The court held that the claims were "barred as institutional torts," finding that the plaintiffs did not "make a plausible connection between any applicable employee conduct" and the United States' alleged improper policymaking and did not allege that any individual employees with whom they interacted acted improperly in this respect. *Id.* at 921-22. The court held that, "[a]t bottom," plaintiffs' claims were "too general to survive FTCA's bar on institutional torts."[8] *Id.* at 922; *see also Meier v. United States*, No. C 05-04404, 2006 WL 3798160, at *3-4 (N.D. Cal. Dec., 22, 2006) (dismissing claim based on corporate negligence theory, where "[t]he language of the [FTCA] is clear that the government may only be sued where an individual *person* would be liable under state tort law. . . .

[8] The court did permit some of plaintiffs' FTCA claims to proceed where they were based on specific allegedly tortious acts and omissions by individual, although unnamed, government employees with whom plaintiffs interacted, such as claims regarding plaintiffs' conditions of confinement. *Id.* at 922.

[T]he government will not be liable under the FTCA when a plaintiff's claim is based on state law that would only hold a corporation—and not an individual person—liable."), *aff'd*, 310 F. App'x 976 (9th Cir. 2009); *F.R. v. United States*, No. CV-21-00339, 2022 WL 2905040, at *2 (D. Ariz. July 22, 2022) ("[T]he FTCA's sovereign immunity waiver applies only to the negligent acts or omissions of *individuals*, not to artificial entities . . . As such, a cognizable FTCA claim must be predicated on the tortious misconduct of individual government employees, rather than on alleged wrongdoing by the United States or its agencies writ large") (internal citations omitted); *B.A.D.J. v. United States*, No. CV-21-00215, 2022 WL 11631016, at *5 (D. Ariz. Sep. 30, 2022) ("To the extent Plaintiffs allege harms resulting from policymaking or agency-wide misconduct, the Court lacks subject matter jurisdiction").

**B. Because Plaintiffs allege institutional tort claims, the Amended Complaint must be dismissed.**

The Amended Complaint, on its face, advances institutional tort claims. Plaintiffs allege that the VA—as an institution—and its leadership and employees collectively, engaged in negligent administration of the VA benefits system for decades. Plaintiffs' theory of negligence relies on the notion that no individual VA leader's or employee's actions need be identified or examined, focusing rather on alleged "systemic" and agency-wide conduct. This inverts the principle of *respondeat superior* and situates Plaintiffs' allegations and claims far outside the FTCA's limited waiver of sovereign immunity.

The Court has already recognized that Plaintiffs' claims are systemic in nature. For instance, the Court confirmed that Plaintiffs allege in the Amended Complaint "that the VA has engaged in systemic racial discrimination against Black veterans for decades" and that "VA leaders" knew or should have known of "pervasive racial disparities." *Id.* at 2. Further, the Court reasoned that all "Monk's claims arise from a backdrop of 'systematic benefits obstruction for

Black veterans.' . . . He does not, however, challenge the individual decisions of VA officials who granted or denied any particular application." *Id.* at 9. Instead, the Court recognized, Plaintiffs allege a "failure of VA officials and employees to maintain a racially neutral and nondiscriminatory system" and having to "litigate claims and navigate a VA benefits system" that was purportedly discriminatory. *Id.* at 9-10; *see also id.* at 14.

The Court also found that the Amended Complaint alleges tortious action by the Agency, the "process," and the "system" as a whole. *See id.* at 15 ("*[t]he VA* should have known as early as the 1970s that Black veterans were at a greater risk of benefits denials than white veterans") (emphasis added); *id.* at 16 ("*[t]he VA* should have anticipated Black veterans would be vulnerable 'to significant emotional, psychological, and dignitary harms as a result of interacting with a racially discriminatory *process* and a negligently trained and supervised *system*'") (quoting Am. Compl. ¶ 208) (emphasis added); *id.* at 21 (Plaintiffs allege emotional distress "from interacting with a racially discriminatory *process*") (emphasis added). In allowing Plaintiffs' negligent supervision and training claims to proceed,[9] the Court reasoned that Plaintiffs alleged "[l]eadership" and "lower-level VA employees" "could" have been involved in administering a racially discriminatory benefits system, and that it "was foreseeable to *the VA* . . . that Black veterans could be harmed *by that system*." *Id.* at 21-22 (emphasis added).

Then, in its order denying a request by the United States for certification to file an interlocutory appeal, the Court again clarified that Plaintiffs seek damages "from *the VA's* alleged

[9] At the time of the Court's Order, the United States had not yet argued that the FTCA's discretionary function exception barred negligent training and supervision claims. The United States explicitly reserved and did not waive that argument—which, in any event, can never be waived, as it is an issue of subject matter jurisdiction. ECF No. 80, Tr. 49:10-19 (colloquy); *Gonzalez*, 565 U.S. at 141. The United States brings those arguments in this Motion.

failure to maintain a racially nondiscriminatory benefits *system*." ECF No. 115 at 6 (emphasis added); *see also id.* at 10, 16. The Court stated:

> The government implicitly argues that systemic racism is made up of individual racist decisions by individual VA employees who harbor some level of racial animus.
>
> That argument is unavailing . . . *Monk does not challenge individual benefits decisions, nor does he allege that VA employees were motivated by racial animus when they adjudicated the plaintiffs' individual benefits claims*. He instead challenges the VA's failure to address known racial disparities through 'training, supervision, auditing, monitoring, and quality control,' regardless of any individual benefits determination. Am. Compl., Doc. No. 36 ¶ 36.

ECF No. 115 at 10 (emphasis added). The Court concluded, "systemic racism, true to its name, *can only be measured by looking at the system as a whole*." *Id.* at 13 (emphasis added).

The language of the Amended Complaint, as confirmed by the Court's holdings, is explicit: Plaintiffs seek to bring an FTCA claim for harm caused "by [a] system," ECF No. 83 at 22, by "the VA" as an agency, *id.* at 15-16, and collectively by "leadership," "officials," and "employees," over the course of 80 years. Am. Compl. ¶¶ 36, 46-48, 70-75, 79-83, 157-58, 178, 182, 184, 187, 207, 215, 223, 225; *see also* ECF No. 170 (Order on Motion for Protective Order) (describing Plaintiffs' claims as a "claim that *the VA benefits system* discriminated against Black veterans" and for "*government* discrimination in the provision of benefits") (emphasis added). Plaintiffs cannot escape from this characterization of their FTCA claims now, particularly given the Court's recognition of the systemic nature of Plaintiffs' factual allegations and legal claims. Plaintiffs have alleged an institutional tort claim, but that is not cognizable under the FTCA. 28 U.S.C. §§ 2672, 2674.

Broadbrush allegations against VA "leadership" or "officials" do not sufficiently advance a claim that one or more "employee[s] of the Government" committed negligent or wrongful acts or omissions while acting within the scope of their employment. 28 U.S.C. § 1346(b)(1); *J.P.*, 679

F. Supp. 3d at 921-22 (where plaintiffs alleged emotional harm as a result of "actions of the 'U.S. Government,' 'U.S. Government officials,' and unidentified 'high-ranking federal officials,'" the claims "are barred as institutional torts"). For the same reason, Plaintiffs may not avoid institutional tort preclusion by listing the names of every person to hold the office of VA Administrator or Secretary since 1930. Am. Compl. ¶¶ 50-52 (also listing names of individuals who served as Undersecretaries for Benefits between 1994 and the present). Generalized allegations of injury from the accumulation of acts or omissions by Agency leadership and employees impermissibly try to state an agency-wide tort. *See supra* Section I.A.

This is not a situation where Plaintiffs advance well-pleaded factual allegations of negligent conduct by government employees but do not identify specific individuals because their identities are unknown to Plaintiffs. Rather, Plaintiffs purposefully allege that the *whole Agency* is involved and at fault for their injuries. Plaintiffs do not allege *any* specific negligent acts or omissions by *any* specific VA leaders or employees at *any* specific time, let alone allege how those actions directly *caused harm* to Plaintiffs. This pleading strategy confirms that Plaintiffs assert non-cognizable institutional or systemic claims. It also demonstrates how the allegations, taken together, are too vague to state a claim—and therefore to establish jurisdiction. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021) (holding that, because all elements of an FTCA claim are jurisdictional, a plaintiff must plausibly allege these elements to both state a claim upon which relief can be granted and for a court to have subject-matter jurisdiction); *Lee*, 2020 WL 6573258, at *6 (holding that "generically stated [allegations] shared by up to a dozen federal employees" did not sufficiently state an FTCA claim, where the pleading viewed in its entirety was "void of facts about what any particular federal employee's role and responsibility was," how any employees were negligent, and how any employees' negligence contributed to the harm).

*Flores Benitez* provides an illuminating contrast to what Plaintiffs attempt to do here. In that case, the plaintiffs identified at least four individual government employees who allegedly "planned, ordered, and orchestrated [the] forcible separation" of the plaintiff-family members. 687 F. Supp. 3d at 333-34. Although the complaint in *Flores Benitez* also contained a single, generic allegation of tortious conduct by the United States "by carrying out a policy," in light of the more specific allegations, "the court ha[d] little trouble concluding that the plaintiffs' . . . claim alleges tortious conduct by individual government employees," rather than alleging an impermissible (*i.e.*, under the FTCA) institutional tort. *Id.*

To be sure, Plaintiffs vaguely allude to the involvement of VA leadership and officials in several areas of the Amended Complaint, but Plaintiffs have pleaded and repeatedly argued that this case is about systemic VA conduct. In fact, in support of their argument that the VJRA does not preclude their FTCA claims, Plaintiffs repudiated the notion that they seek to challenge any individual benefits-related decisions made by VA leadership or employees. Am. Compl. ¶ 36. The Court accepted this characterization of Plaintiffs' allegations and claims. *See* ECF No. 115 at 10. Thus, far from containing only a single generic allegation against the government, as in *Flores Benitez*, Plaintiffs' theory of the case *relies* on not having to connect their injury to any identified action or omission by any individual government employee—leadership or otherwise—instead claiming injury derived from the totality of government actions and omissions. *See* Am. Compl. ¶¶ 36, 46-48, 70-75, 79-83, 157-58, 178, 182, 184, 187, 207, 215, 223, 225.

Ultimately, by seeking damages in tort for injury allegedly caused by VA's "maintenance" of a discriminatory "system" over almost the entirety of the VA's existence, Plaintiffs allege negligence that *only* the Agency, *as a whole*, could possibly commit. And this Court confirmed that reading of the Amended Complaint, when it held that Plaintiffs' "systemic racism" theory

"can *only* be measured by looking at the system *as a whole*." ECF No. 115 at 13 (emphasis added); ECF No. 83 at 9 ("Monk challenges the alleged 'failure of VA officials and employees to maintain a racially neutral and nondiscriminatory system'") (citing Am. Compl. ¶¶ 215, 223). But courts have recognized that the FTCA does not waive sovereign immunity "for the actions or omissions of the entire government or *an agency as a whole*." *Flores Benitez*, 687 F. Supp. 3d at 333 (emphasis added). Because all of Plaintiffs' claims are institutional torts, they are not cognizable under the FTCA and should be dismissed in full for lack of subject matter jurisdiction.

### C. Plaintiffs cannot cure their jurisdictional defects.

Neither an amendment nor discovery can fix Plaintiffs' pleading deficiencies. If Plaintiffs reframe their allegations as related to specific individuals' benefits-related decisions, their claims will become subject to the VJRA's bar. ECF No. 83 at 8-10. And attempting to use discovery to find *examples* of improper employee actions would be a fishing expedition of the type that the pleading standard is designed to prevent and, more importantly, would not change the institutional nature of the claims. The FTCA only waives the United States' sovereign immunity based on principles of *respondeat superior* for the allegedly negligent or wrongful acts or omissions by an *individual* federal employee acting within the scope of that employee's federal employment. 28 U.S.C. § 1346(b). Acts or omissions by unidentified federal employees cannot be accumulated to meet some unspecified threshold at which "systemic" negligence becomes cognizable under the FTCA, let alone prove causation as to these Plaintiffs. No repleading or discovery will create an FTCA cause of action for an institutional tort.[10]

[10] Discovery in this matter is ongoing. Plaintiffs have already received tens of thousands of pages of documents, in addition to other discovery. However, they continue to seek extensive discovery, covering 80 years, and they have previously argued that the reviews and productions on dozens of fronts are insufficient. The sheer breadth and extent of the discovery sought, together with its unfocused nature, underscores that Plaintiffs bring an improper institutional tort claim.

Finally, Plaintiffs may not rely on their class allegations to cure jurisdictional defects. Class allegations cannot create a cause of action where none exists. *See Parisi v. Goldman, Sachs*, 710 F.3d 483, 488 (2d Cir. 2013) ("The availability of the class action Rule 23 mechanism *presupposes* the existence of a claim; Rule 23 cannot create a non-waivable, substantive right to bring such a claim") (citing *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2561 (2011); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980)). No class has yet been certified, and there are numerous reasons why one should not be. But in any event, that Plaintiffs purport to represent a class does not change the systemic nature of their claims. Whether brought on behalf of only themselves or on behalf of other black veterans, Plaintiffs' theory relies on allegations of institutional conduct that are precluded by the FTCA.

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO THE FTCA'S DISCRETIONARY FUNCTION EXCEPTION.

Plaintiffs' claims are also precluded by the FTCA's discretionary function exception, 28 U.S.C. § 2680(a). That exception preserves the United States' immunity for "[a]ny claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Congress created the discretionary function exception "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984); *United States v. Gaubert*, 499 U.S. 315, 323 (1991).

Courts apply a two-part test to determine whether the challenged conduct falls within the FTCA's discretionary function exception. First, the conduct or omission at issue must be

"discretionary" in nature, meaning "it involve[ed] an element of judgment or choice." *Gaubert*, 499 U.S. at 322, 328; *see also Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013). If there is no statute, regulation, or policy mandating a specific course of conduct for a federal employee to follow, the first prong is satisfied. *Id*.

Second, courts ask "whether that judgment is of the kind that the discretionary function exception was designed to shield," meaning the conduct is "grounded in social, economic, and political policy." *Gaubert*, 499 U.S. at 322-23. "The relevant question is not whether an explicit balancing is proved, but whether the decision is susceptible to policy analysis." *In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d 31, 37 (2d Cir. 1989); *Cangemi v. United States*, 13 F.4th 115, 133 (2d Cir. 2021). When the first prong is satisfied, "it must be presumed" that the discretion is grounded in policy. *Gaubert*, 499 U.S. at 324-25; *Salafia v. United States*, 578 F. Supp. 2d 435, 439 (D. Conn. 2008). Further, where the discretionary function exception applies, it does so regardless of whether the challenged conduct was negligent or the discretion involved was abused. *See* 28 U.S.C. § 2680(a); *Salafia*, 578 F. Supp. 2d at 440 (citing *Dalehite v. United States*, 346 U.S. 15, 30, (1953)).

At the pleading stage, a plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss. *Blecher v. Holy See*, 146 F.4th 206, 213 (2d Cir. 2025); *Molchatsky*, 713 F.3d at 162. Here, Plaintiffs do not meet their burden to facially plead a claim that falls outside the discretionary function exception. Plaintiffs identify no mandatory and specific federal statute, regulation, or policy dictating how VA officials were required to implement "training, supervision, auditing, quality-control, and record-keeping practices." *See* Am. Compl. ¶¶ 53-58; *see also id.* ¶¶ 201, 209, 219 (incorporating such allegations into each of the three Claims and relying on same). Those activities are inherently rooted in policy

considerations. Claims attempting to challenge an agency's enactment of such programs, the manner by which the agency engages in such activities, or the quality of those actions are exactly the types of tort claims for which the discretionary function exception preserves the United States' sovereign immunity. *See Gaubert*, 499 U.S. at 323 (the exception protects "governmental actions and decisions based on considerations of public policy") (citation and internal quotation marks omitted).

Plaintiffs' allegations of negligence by unspecified VA "Administrators," "Secretaries," "Under-Secretaries," "officials," and "employees," over the course of 80 years, are precluded by the discretionary function exception. The Amended Complaint should be dismissed on this additional and alternative subject matter jurisdiction basis.

### A. The challenged conduct is discretionary, and Plaintiffs do not meet their pleading burden under the first *Gaubert* prong.

Plaintiffs base their alleged injuries on breaches by "VA Administrators and Secretaries, and other senior officials" who "when through training, supervision, auditing, record-keeping and other measures," failed to redress racial disparities in benefits administration. Am. Compl. ¶ 207, 223. Decisions relating to how and when such activities are carried out have been consistently recognized as falling within the discretionary function exception to the FTCA. Plaintiffs therefore fail to plead that the challenged activity is outside the discretionary function exception.

The only statutory, regulatory, or policy provisions cited in the Amended Complaint are 38 U.S.C. § 303 and its predecessor statute, 38 U.S.C. § 210(b). Am. Compl. ¶¶ 33, 35. The statutes provide that the VA Administrator, and later the VA Secretary, "is responsible for the proper execution and administration of all laws administered by the [VA] and for the control, direction, and management of the [VA]." *Id.* This provision is neither mandatory nor specific in setting forth a prescribed course of conduct to which an employee must adhere. Rather, it provides

a broad policy goal and a general description of the Administrator's and Secretary's role, and in no way specifies how he or she must carry out that role. Notably, Plaintiffs do not allege that either statute is a source of a mandatory and specific directive.

At the outset, decision-making of *whether* and *how* to establish record-keeping, auditing, supervision, training, or other related programs or policies is undoubtedly discretionary. Plaintiffs have based their tort claims on their displeasure with VA for failing to enact programs they believe should exist, or for doing so in a way that Plaintiffs view as sub-optimal. *See* Am. Compl. ¶¶ 36, 53-58, 70-74 (alleging that VA failed to implement "improved" training and supervision; failed to train or supervise in a manner designed to prevent or mitigate racial discrimination; failed to include sufficient guidance on eliminating racial bias in VA manuals; failed to collect and aggregate claims data in order to study it; and failed to create and maintain a system that could track or rectify racial disparities in benefits).[11] But "[t]here is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception." *Bowers v. United States*, 931 F.Supp. 2d 358, 369 (D. Conn. 2013) (quoting *Gaubert*, 499 U.S. at 323); *Molchatsky*, 713 F.3d at 162 ("[T]he sovereign reserve[s] to itself the right to act without liability for misjudgment and carelessness in the formulation of policy") (internal quotations omitted). The entirety of the Amended Complaint is based on the most protected type of discretionary actions: "planning-level decisions" and "formulation of policy." *Bowers*, 931 F. Supp. 2d at 369; *Molchatsky*, 713 F.3d at 162. This alone warrants dismissal.

[11] A system for rectifying incorrect or improper benefits determinations does exist. It is done on an individual basis under the VJRA.

**1. Decisions respecting supervision and training are discretionary.**

Courts consistently hold that claims for negligent supervision and training, specifically, are barred by the discretionary function exception. *See Blecher*, 146 F.4th at 218 (applying the discretionary function exception under the Foreign Sovereign Immunities Act ("FSIA"), which corresponds to the same exception in the FTCA, and collecting cases holding that supervision and hiring decisions are discretionary functions); *Bowers*, 931 F. Supp. 2d at 370 ("Plaintiffs' claims of negligent selection and supervision and negligent failure to supervise involve elements of judgment and choice" and thus fell under the discretionary function exception); *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 387 (E.D.N.Y. 2009) (recognizing that "federal courts have found that [] hiring, training, and supervision decisions generally fall within the [discretionary function] exception"); *Li v. Aponte*, 05-CV-6237(NRB), 2008 WL 4308127, at *8 (S.D.N.Y. Sep. 16, 2008) (collecting decisions from the First, Second, Fourth, Eighth, Ninth, and D.C. Circuits holding the same); *Searles v. United States*, No. 21-CV-6570, 2022 WL 2829912, at *4 (S.D.N.Y. July 20, 2022) ("[C]ourts in this circuit have also consistently held that issues of employee hiring, training, supervision, and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception") (collecting cases) (internal quotations omitted); *Ojo v. United States*, No. 16-cv-4112, 2019 WL 3852391, at *7 (E.D.N.Y. Aug. 15, 2019) (same); *see also Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997); *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000); *K.W. Thompson Tool v. United States*, 836 F.2d 721, 727-28 (1st Cir. 1988).

Plaintiffs do not identify any mandatory and specific statute, regulation, or policy regarding supervision and training practices, let alone any requirement to enact or implement certain supervision or training practices. They also do not allege how the violation of any mandatory and

specific statute, regulation, or policy relating to supervision or training caused their alleged harm. Nor could they, since they do not identify *any* negligent actions by *any* individual VA employee.[12] Given this "pleading insufficiency and the general presumption that such personnel decisions fall within the exception," *Saint-Guillen*, 657 F. Supp. 2d at 387, the first prong of the discretionary function exception is satisfied as to Plaintiffs' negligent supervision and training claim.

**2. Data collection, auditing, and record-keeping are discretionary.**

The same is true as to Plaintiffs' vague allegations that the VA committed negligence in failing to enact, or not enacting better, record-keeping and data collection of racial demographic information, and/or "auditing" or "quality control" of benefits claim outcomes by race. Am. Compl. ¶¶ 36, 53, 71, 73, 75, 207, 223. The Amended Complaint is again insufficient in its failure to identify any mandatory and specific requirements dictating whether or how to conduct such activities. These are inherently discretionary decisions.

FTCA cases addressing government data collection, auditing, or record-keeping activity, arising in various contexts, recognize the discretionary nature of such actions absent well-pleaded allegations of applicable mandatory and specific federal statute, regulation, or policy. *See, e.g.*, *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 555 (S.D.N.Y. 2005) (finding that discretionary function exception under FSIA, which "replicates" the same exception under the FTCA, precluded claims based on "inadequate record-keeping" relating to use of humanitarian

[12] Among other failures, Plaintiffs do not allege specific acts or omissions that caused their alleged harm. On close inspection, the Amended Complaint alleges incompatible theories: Plaintiffs allege both that VA leaders knew or should have known of disparate outcomes in benefits, Am. Compl. ¶ 207, and that VA's failures in data collection and auditing *prevented* VA leaders from identifying disparities, Am. Compl. ¶¶ 71-74. Neither do Plaintiffs plead when the alleged harm first began. Was it at the time VA failed to devise and implement Plaintiffs' preferred method of benefits administration and associated (allegedly superior, but undefined) policies? Or at some later point in time at which the disparate impact of benefits decisions was so widespread, that the failure to address the issue itself became a tort? *Id.* ¶¶ 54, 70-74 (alleging that VA negligently failed to "correct" or "rectify" racial disparities that already existed).

relief funds); *Sanders v. United States*, 937 F.3d 316, 333 (4th Cir. 2019) (decision of whether to "provide access to an investigative database" was protected by the discretionary function exception); *Tsolmon v. United States*, No. H-13-3434, 2015 WL 5093412, at *9, n.68 (S.D. Tex. Aug. 28, 2015) (where plaintiff claimed that CBP agents lacked discretion in failing to conduct immigration status checks and did not have "an adequate computer system that can verify someone's immigration status," the allegations "amount[ed] to failure to train or failure to provide an adequate computer database," and these unsupported assertions failed to plead outside the discretionary function exception) (internal quotations omitted); *Kellogg Brown & Root Services v. United States*, 102 F. Supp. 3d 648, 654-55 (D. Del. 2015) (on facial challenge to complaint, dismissing action alleging negligent auditing of defense contract; to the extent plaintiff pleaded application of any relevant policies, those standards allowed for substantial policy-based discretion); *Heller v. United States*, 620 F. Supp. 270, 271 (M.D. Fla. 1985) (plaintiff's claims that suspension of medical certificate was caused by "careless and negligent investigation, data collection, [and] data production" barred by discretionary function exception) (affirmed by *Heller v. United States*, 803 F.2d 1558 (11th Cir. 1986)); *Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016 (C.D. Cal. 2010) (dismissing claim based on SEC actions and discussing cases holding that auditing and investigatory activities are discretionary functions); *Donahue v. United States*, 870 F. Supp. 2d 97 (D.D.C. 2012) (same); *United States ex rel. Rille v. Sun Microsystems*, No. 4:04-CV-00986, 2008 WL 4756170, at *3-4 (E.D. Ark. Oct. 28, 2008) (dismissing counterclaim for negligent audit of government contract under discretionary function exception, and noting that although FTCA counter-claimant "might have preferred" the government complete its audit within a certain time, it "cites no authority that would have required the [g]overnment to do so"); *Martinez v. United States*, 192 F. App'x 839, 842 (11th Cir. 2006)

(in FTCA case alleging mishandling of discrimination complaint, "Congress has not dictated the result that the EEOC must reach in processing a charge of discrimination . . . EEOC's processing of a charge of discrimination is the kind of administrative decisionmaking that Congress intended to shield from tort liability."); *cf. Walen v. United States*, 246 F. Supp. 3d 459, 463 (D.D.C. 2017) (where government tree management in park was specifically governed by "mandates for record-keeping, inspection and maintenance," which contained "clear, direct prescriptions regarding tree inspection and maintenance, as well as record-keeping of these activities," discretionary function exception did not apply).

The discretionary function exception also has been held to preclude tort claims premised on a government entity's audit or review of the performance of its own programs, like Plaintiffs claim here. *Sloan v. U.S. Dep't of Housing and Urban Development*, 236 F.3d 756, 762, 763, n.2 (D.C. Cir. 2001) (HUD program audit, "a variety of performance audit intended to assess the performance of a government program," involved "sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations [that] plainly involve elements of judgment and choice").

VA's "implementation" or performance of such activities, or lack thereof, is clearly discretionary. The United States cannot be held liable in tort for actions such as: not "implementing" or "improving" its supervision, training, and guidance manuals with respect to implicit bias or discrimination; not enacting a program of "collecting" or "tracking" veterans' race so that it could then choose to review benefits outcomes by race; not properly analyzing the racial impact of its benefits determinations writ large; and/or choosing how to identify potential racially disparate benefits outcomes and how to identify and address root causes of the same, at either a single point in time or over the course of decades. *See* Am. Compl. ¶¶ 36, 53-58, 60-62, 70-74.

Allowing an FTCA claim to proceed based on such programmatic decisions would run afoul of the United States' preservation of sovereign immunity for policy-based, discretionary conduct. Further, Plaintiffs do not allege any requirements dictating any VA employee's actions with respect to such activities, let alone that the employees' alleged failure to comply with such requirements caused harm to Plaintiffs.[13] That Plaintiffs disagree with the United States' choices is insufficient to defeat application of the first *Gaubert* prong to their claims. *See, e.g.*, *Bowers*, 931 F. Supp. 2d at 370 (dismissing claims under discretionary function exception where Plaintiffs claimed that U.S. Marshalls did not execute order "in manner Plaintiffs thought appropriate").[14]

**B. The conduct at issue is policy-based, and Plaintiffs do not overcome the presumption that the second *Gaubert* prong is satisfied.**

Once the Court finds the first prong satisfied, the Court must presume that the second *Gaubert* prong is met. Moreover, the policy considerations attendant to decisions respecting training, supervision, data collection, auditing, and the like are well-recognized.

Government planning-level decisions relating to whether and how to create or implement practices or programs are the heart of the discretionary function exception. *See Gaubert*, 499 U.S.

[13] The discretionary function exception analysis is separate and apart from whatever alleged state law "duty" Plaintiffs claim "the VA" breached. Federal statutes, regulations, or agency policies, even if applicable to the discretionary function exception analysis, cannot alone supply a state law duty. *Meyer*, 510 U.S. at 477-78.

[14] Interestingly, Plaintiffs do appear to take issue with the VA's "rel[iance] on military discharges to make COD [Character of Discharge] determinations" for benefits purposes. Am. Compl. ¶¶ 79-82. VA has no control over military discharges, and its employees are *required* to consider military discharge for COD determinations. 38 U.S.C. § 101(2); 38 C.F.R. § 3.12. And the enactment of policy regarding Character of Discharge determinations is protected discretionary activity for all of the reasons explained herein. Although it is unclear whether Plaintiffs base any claims on this, this theory too would fail under the FTCA's discretionary function exception. *See* ECF No. 83 at 18 (noting that Plaintiffs' allegations regarding COD determinations challenge "alleged[] fail[ures] to *implement policies or practices* to ensure that a veterans' discharge status, tainted by racially disparate outcomes, would not bring about racially disparate benefits outcomes") (emphasis added).

at 323; *Molchatsky*, 713F.3d at 162. Formulation of policy or enactment of programs inherently involves balancing of numerous social, economic, and political policy interests. Further, courts in this and other circuits have detailed the policy bases for supervision and training discretion:

> [S]upervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety. The extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past. Such decisions are surely among those involving the exercise of political, social, or economic judgment.

*Saint-Guillen*, 657 F. Supp. 2d at 387 (quoting *Burkhart*, 112 F.3d at 1217); *see also Searles v. United States*, 2022 WL 2829912, at *4; *Blecher*, 146 F.4th at 226 (collecting cases holding hiring, training, and supervision are susceptible to policy judgment).

Activities such as data collection, auditing, or record-keeping relating to veterans' race are also rooted in policy considerations. These can include economic interests like fiscal constraints and the allocation of resources that might otherwise be focused on veteran-facing programs or benefits processing. Implementing such programs over 80 years and across millions of veterans involves considerations of cost, time, burden, availability, complexity, interaction with other agencies, and other logistical concerns.

These activities are also based on important social and political interests, including consideration of how or which programs help advance VA's mission to serve all veterans. For instance, reasonable minds could differ on whether insistence on "tracking" veterans' racial demographics could lead to greater risk of bias in benefits adjudication, rather than less. Veterans may not wish to report their race or have it "tracked" in connection with their benefits. Veterans' privacy rights and privacy-related statutes would need to be considered. And when and if such programs are implemented, how to best go about using that information to improve veterans' experiences again involves numerous policy considerations.

Because these activities are susceptible to policy analysis, "it is unimportant whether the government actually balanced economic, social, and political concerns in reaching its decision." *In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d at 37; *Cangemi*, 13 F.4th at 133. The goal of the discretionary function exception is to prevent judicial "second-guessing" of exactly these types of decisions. *Varig Airlines*, 467 U.S. at 814. Further, decision-making may shift or change over time. That does not render the exercise of discretion any less policy based. *See, e.g.*, *Loughlin v. United States*, 393 F.3d 155, 165-66 (D.C. Cir. 2004) (where government made two different decisions, years apart, regarding warning as to chemical contamination, "[t]he passage of time gave the Government more information to digest, an opportunity to re-weigh the political, social, and economic considerations, and occasion to make a new policy judgment. The earlier judgment was no less a matter of policy because the later judgment was arguably better informed.").

As with any policy-based exercise of discretion, there may always be other options or opinions. The law, however, is clear: the United States cannot be held liable under the FTCA for such decisions. Accordingly, Plaintiffs' case should be dismissed for lack of subject matter jurisdiction as barred by the discretionary function exception.

### C. Plaintiffs' conclusory allegation of unconstitutional conduct does not bar application of the discretionary function exception.

Rather than identify any allegedly mandatory and specific statute, regulation, or policy that applies to the alleged negligent conduct, Plaintiffs attempt to preemptively avoid the discretionary function exception by pleading a single, conclusory allegation as follows:

> Defendant may not escape liability by invocation of the FTCA discretionary function exception, 28 U.S.C. § 2680(a), as VA employees lack discretion to violate the United States Constitution. As set forth above, the conduct of VA employees was not only negligent but also deliberately indifferent to the race discrimination in benefits adjudication of which they knew or should have known. This deliberate indifference constitutes intentional discrimination in violation of the equal protection component of the Due Process Clause of the Fifth Amendment. Defendant is thus not shielded from liability by the discretionary function

> exception. Further, Defendant does not qualify for the discretionary function exception because Defendant failed to exercise due care in executing and administering the laws administered by the Department.

Am. Compl. ¶ 194.[15] This vague and conclusory allegation does not prevent the discretionary function exception's application.

The Second Circuit recognizes that "a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority." *Myers & Myers v. United States Postal Serv.,* 527 F.2d 1252, 1261 (2d Cir. 1975). But plaintiffs' allegations fall well short of alleging that VA employees violated the Constitution. At a minimum, a plaintiff must *plausibly allege* a constitutional violation through *well-supported factual allegations*. *See, e.g.*, *Flores Benitez*, 687 F. Supp. 3d at 327 (finding plaintiffs plausibly alleged a violation of their Fifth Amendment rights based on the lack of a hearing preceding the intentional separation of the parent plaintiffs from their children, as well as the lack of an emergency justifying such action); *see also Xi v. Haugen*, 68 F.4th 824, 840 (3d Cir. 2023) (at motion to dismiss stage, plaintiff must "plausibly allege" a "constitutional violation"; for claim of selective enforcement under Fifth Amendment, "[b]are assertions that the defendant acted with discriminatory purpose will not suffice. The plaintiff must set forth sufficient factual matter to show that the defendant acted because of, not merely in spite of a protected characteristic.") (internal quotations and citations omitted); *Torres-Estrada v. Cases*, 88 F.4th 14, 21-23 (1st Cir. 2023) ("[E]ven though the cause of action is tied to

[15] Of course, Plaintiffs may not bring a constitutional tort under the FTCA. *Meyer*, 510 U.S. at 477-78 (federal law cannot be the "source of substantive liability under the FTCA"); *Salafia*, 578 F. Supp. 2d at 442 (because "the FTCA's waiver of sovereign immunity . . . is limited to suits predicated upon a tort cause of action cognizable under state law, . . . [plaintiff] cannot use the FTCA as a vehicle for asserting his federal due-process and equal-protection claims.") (internal quotations and citations omitted); *B.A.D.J.*, 2022 WL 11631016, at *5 ("Plaintiffs should not be able to evade the FTCA's exclusion of constitutional torts by labeling them negligence, [or] [intentional infliction of emotional distress]"). Plaintiffs have not urged this Court to construe the Amended Complaint as raising such a claim, and the Court's prior rulings have not done so.

tortious conduct, a plaintiff must *show* how the alleged conduct violates the Constitution") (emphasis added); *Loumiet v. United States*, 828 F.3d 935, 946 (D.C. Cir. 2016) ("The district court should determine in the first instance whether [the] complaint plausibly alleges that the [agency's] conduct exceeded the scope of its constitutional authority so as to vitiate discretionary-function immunity.").

Further, a plaintiff may not avoid application of the discretionary function exception without plausibly pleading that the conduct that purportedly violated the Constitution is the same conduct *that allegedly caused their harm*. *See, e.g.*, *Torres-Estrada*, 88 F.4th at 21-23 (plaintiff must "sufficiently allege[]" that the "alleged tortious conduct violated the Constitution."). Here, although Plaintiffs allege discrimination in benefits *outcomes*, the allegedly negligent *conduct* is by VA leadership and officials in supervising, training, data-collecting, auditing, and record-keeping—or the failure to do these things. As this Court has recognized, "the conduct underlying the torts of negligent hiring, training, and supervision is not inherently unconstitutional." *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 120 (D. Conn. 2010) (Underhill, J.).[16] Even if VA supervisors or trainers behaved in a negligent manner that allowed benefits adjudicators to make discriminatory benefits determinations, that negligent supervision and training is not itself unconstitutional.

---

[16] In *Diaz-Bernal*, "the plaintiffs claim[ed] that the [ICE] supervisors' tortious conduct allowed *third parties* [i.e., ICE officers, who were the supervisees] to commit unconstitutional actions." *Id.* This Court held that even if the United States "started a chain of conduct that resulted in unconstitutional activity," that did not render the supervision unconstitutional for purposes of avoiding analysis under the discretionary function exception. *Id.* The Court separately held that the plaintiffs had plausibly plead *Bivens* claims against individual supervisors, where the plaintiffs brought constitutional claims based on specific actions by the identified individual defendants. *Id.* at 131 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Even if such activity could ever be unconstitutional, Plaintiffs do not plausibly plead unconstitutional conduct here. The Amended Complaint is silent as to how VA's purported shortcomings in data collection or record-keeping of benefits grant rates could possibly be construed as "exceed[ing] the scope of [] constitutional authority." *Loumiet*, 828 F.3d at 943. Nor do Plaintiffs explain how the allegedly negligent conduct of failing to devise a process to identify and correct disparities in grant rates, or of insufficiently training benefits adjudicators regarding racial bias, rises to the level of violating the Constitution. *See, e.g., M.J. v. United States*, 759 F. Supp. 3d 1034, 1048-49 (S.D. Cal. 2024) (stating that although "decision makers do not have discretion to violate constitutional rights," discretionary function exception applied to claims of negligent supervision and training because relevant statute did not "describe a specific course of action that [] had to [be] follow[ed] to accomplish the anti-discrimination goals"). Plaintiffs do not seek to recover for any *intentional* conduct, do not plead intent as an element of any of their claims, and do not plead *any* specific *and relevant* factual allegations of intentionally discriminatory actions by *any* VA employee. *Cf. Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) ("'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences . . . It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group") (internal citations omitted); *see also* ECF No. 61, at 21 n.12 (Plaintiffs' Opposition Brief to Motion to Dismiss) (in which Plaintiffs state that "'[b]ad faith' is not an element of any of Plaintiffs'[] claims."). And, as Plaintiffs appear to acknowledge, a constitutional violation cannot be established by conduct that is merely negligent. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[T]he Constitution does not guarantee due care on the part of state

officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.”).

Throughout the Amended Complaint, Plaintiffs describe VA leaders’ actions as causing “disparate impact.” *See, e.g.*, Am. Compl. ¶ 53 (“For example, the lack of training, supervision, auditing, quality-control, and record-keeping practices implemented by these and other VA leaders designed to prevent or to mitigate racial discrimination *has caused a disparate impact* on Black veterans”) (emphasis added), ¶ 80 (“VA leaders also knew or should have known that placing undue weight on the ostensibly voluntary nature of an Other than Honorable discharge contributes to racial disparities in COD determinations and *has [] impermissible disparate impact*”) (emphasis added), ¶ 207 (“VA Administrators and Secretaries, and other senior officials, breached these duties when through training, supervision, auditing, record-keeping, and other measures, they failed to redress longstanding, pervasive race discrimination and disparate impacts”). However, disparate impact theory challenges “practices that are *not intended to discriminate* but in fact have a disproportionately adverse effect on minorities.” *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (emphasis added). That standard does not amount to intent or unconstitutionality.[17] Plaintiffs’ barebones allegation of “unconstitutional” discrimination by VA leadership is contradicted by their own allegations.

---

[17] As discussed herein, “disparate impact” concerns *unintentional* discrimination, and Plaintiffs do not allege that the purported “disparate impact” is *itself* unconstitutional. Nor could they. *See Pers. Adm’r of Massachusetts*, 442 U.S. at 274 (it is “purposeful discrimination” that is “the condition that offends the Constitution”) (internal quotations omitted). Plaintiffs instead allege that certain activities (supervision, training, record-keeping, and the like) “caused a disparate impact” that VA leadership then “failed to redress” through those same activities (supervision, training, record-keeping, and the like), thus rendering that same conduct (supervision, training, record-keeping, and the like) “intentional” and unconstitutional. Am. Compl. ¶¶ 53, 194, 207. At best, this is tautological; at worst, it is a blatant attempt to block the application of the discretionary function exception without pleading any well-founded allegations of unconstitutional intentional discrimination.

Finally, although the United States does not hereby concede that "deliberate indifference" is the correct standard for Plaintiffs' allegations of violations of the Fifth Amendment's due process clause, *see, e.g.*, *Lewis*, 523 U.S. at 841-52 (discussing "deliberate indifference" in other constitutional contexts), Plaintiffs do not sufficiently plead "deliberate indifference" in any event. In fact, Plaintiffs allege that VA's own negligence rendered it *unaware* of the adverse impact its benefits programs were having on black veterans. *See, e.g.*, Am. Compl. ¶¶ 71, 72, 74 (alleging VA's negligent failure to "collect and aggregate claims" and to "create and maintain a system to track claims" *prevented* VA from "identify[ing] the nature, scope, and collateral effects of disparities"). Plaintiffs do not allege any awareness of excessive risk, subjective drawing of inferences, or that the "need" for different practices was so "obvious" or "outrageous" that the inadequacy was "so likely" to result in constitutional violations or "shock[ed] the conscience." *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (in context of cruel and unusual punishment of inmates under Eighth Amendment, "deliberate indifference" requires that "the official knows of and disregards an excessive risk to [] health or safety; [and] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *City of Canton*, 489 U.S. at 390 (in context of 1983 action against municipality relating to police training on the right to receive medical attention while in police custody, "deliberate indifference" requires that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"); *Lewis*, 523 U.S. at 847 n.8 ("[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."); *Lopez v. U.S. Immigration & Customs*

*Enf't*, 455 F. App'x 427, 434 (5th Cir. 2011) ("Appellants' pleadings allege no more than negligence against federal officials and evidence no facts that, if proved, could support the deliberate indifference standard required for an Eighth Amendment claim. Lacking any plausible basis for a constitutional violation by USMS, Appellants also lack grounds to argue for avoiding the discretionary function exception.").

Plaintiffs' conclusory pleading that the alleged activity was unconstitutional cannot prevent the proper application of the discretionary function exception. The Amended Complaint pleads only negligent VA conduct. And negligent government conduct cannot violate the Constitution.

**D. Plaintiffs cannot cure their jurisdictional defects.**

As is the case with respect to the prohibited institutional or systemic nature of Plaintiffs' claims, discovery—although well underway in this matter—is not necessary to address whether the discretionary function exception bars Plaintiffs' claims. *See Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011) (granting motion to dismiss and holding jurisdictional discovery on discretionary function exception was not warranted), *aff'd*, 713 F.3d 159 (2d Cir. 2013). "For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-25. "When a plaintiff in an FTCA suit alleges facts showing sufficient reason to believe mandatory guidelines have been disregarded, but that such guidelines are unknown or unknowable without discovery, courts have granted jurisdictional discovery." *Molchatsky*, 778 F. Supp. 2d at 438. Conversely, "a party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009).

The Amended Complaint fails to meet the facial pleading standard articulated in *Gaubert*. It raises no factual issues that would justify jurisdictional discovery because Plaintiffs do not plausibly allege that VA's actions are "not the kind of conduct" that can be grounded in policy considerations. Quite the opposite—Plaintiffs repeatedly allege that their injuries stem from the actions of policy-making and programmatic planning *in and of themselves*. Plaintiffs not only fail to allege any mandatory and specific directives that would apply to the conduct at issue, they also fail to allege any violation of such mandatory and specific directives or to connect those violations to their harm. The Amended Complaint is jurisdictionally defective on its face, and Plaintiffs have presented no factual allegations that might permit the Court to exercise jurisdiction.

Plaintiffs' claims, by nature, improperly challenge (1) "institutional," agency-wide, actions, rather than employee actions; and (2) the enactment of policy or failure to enact policy—for which the sovereign has preserved its immunity. These claims are not cognizable under the FTCA.

## III. MONK, SR.'S CLAIMS SHOULD BE DISMISSED BECAUSE HE CANNOT ESTABLISH ESSENTIAL ELEMENTS OF HIS CLAIMS.

"[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback*, 141 S. Ct. at 749.[18] The Estate of Monk, Sr. is a named Plaintiff in this action and brings claims through Monk, Jr. as administrator of the estate. The claims on behalf of

[18] An FTCA claim must possess six elements to fall within the FTCA's limited waiver of sovereign immunity. The claim must be: "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b)). These elements are jurisdictional. "[A] plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim." *Brownback*, 141 S. Ct. at 749.

Monk, Sr. should be dismissed for lack of subject matter jurisdiction because, as a matter of law, Plaintiffs cannot establish essential elements of those claims.

Plaintiffs bring a count of negligent infliction of emotional distress and seek to recover for alleged emotional distress under all counts. Am. Compl. ¶¶ 208, 209-218, 223. Under Connecticut law, a plaintiff asserting negligent infliction of emotional distress must demonstrate that: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Dorfman v. Smith*, 271 A.3d 53, 75 n.14 (Conn. 2022) (quoting *Carrol v. Allstate Ins.*, 815 A.2d 119, 127 (Conn. 2003)). Plaintiffs represented to this Court that they bring only "garden variety claims" for emotional distress, and this Court ruled based on this representation. ECF No. 135; ECF No. 139 at 3 (Court's Memorandum of Conference stating that Plaintiffs' counsel confirmed "Plaintiff class will only seek garden variety tort damages."). Additionally, Attorney Creelan stated, and the Court confirmed, that Plaintiffs will rely only on Monk's testimony to prove their damages. ECF No. 139 at 3. "Garden-variety" emotional distress claims allow a plaintiff to limit evidence of distress to his own testimony, "describ[ing] *his or her injury* in vague or conclusory terms, without relating either the severity or consequences of the injury." *Oral Care Dental Grp. II, LLC v. Pallet*, 277 A.3d 860, 867 (Conn. App. Ct. 2022) (quoting *Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009)) (emphasis added).[19]

[19] The concept of "garden variety" emotional distress arises from discrimination claims, not tort claims. *See, e.g.*, *Oral Care Dental Grp. II, LLC*, 277 A.3d at 863; *Conn. Jud. Branch v. Gilbert*, 272 A.3d 603 (Conn. 2022); *CHRO v. Cantillon*, 295 A.3d 919 (Conn. 2023). The United States does not concede that a tort premised on negligence or negligent infliction of emotional distress can be established by any plaintiff under Connecticut or District of Columbia law by establishing only "garden variety" emotional distress. Among other things, negligent infliction of emotional distress *requires* proof that emotional distress was *severe enough* that it might result in

*(Continued)*

Assuming *arguendo* that "garden variety emotional distress" is cognizable in tort, it *requires*, at a minimum, personal testimony to establish the elements of such a claim. *See Gilbert*, 272 A.3d at 626 n.25 (garden variety emotional distress is "testified to only *by the complainant and* other lay witnesses") (emphasis added); *Vera v. Alstom Power*, 189 F. Supp. 3d 360, 376 (D. Conn. 2016) (evidence of mental suffering is "generally limited to *the testimony of the plaintiff, who describes his or her injury*") (emphasis added); *Su v. Milford Sports Bars, LLC*, No. 3:22-CV-321 (VAB), 2023 WL 10509599, at *7 (D. Conn. Dec. 15, 2023) ("suffering comes mainly from *the [plaintiff's] own testimony*") (emphasis added); *Oral Care Dental Grp. II, LLC,* 277 A.3d at 867. Plaintiffs themselves acknowledged this when they asserted they would prove their claims with "their testimony." ECF No. 135 at 5 ("In other words, *Plaintiffs* will prove the emotional distress *they* suffered through *their* testimony") (emphasis added).

As alleged in the Amended Complaint, Monk, Sr. is deceased, having passed away decades before this suit. Am. Compl. ¶ 150. His estate cannot provide personal testimony describing his injury or the cause thereof, even in "vague or conclusory terms." Nor would Monk, Jr.'s testimony as to his father's alleged injury, even if admissible, be sufficient. The United States is unaware of

---

illness or bodily harm. This is directly incompatible with a "garden variety" approach, which Plaintiffs argue absolves them of any requirement to prove severity. *See* ECF No. 135 at 5 (Plaintiffs' brief quoting *Vera v. Alstom Power*, 189 F. Supp. 3d 360, 376 (D. Conn. 2016), a Title VII case, for the proposition that in "garden variety claims," a plaintiff need not "relat[e] either the severity or consequences of the injury"); *see also Kubik v. Cent. Michigan Univ. Bd. of Trs.*, No. 15-cv-12055, 2016 WL 9631633, at *4-5 (E.D. Mich. Mar. 17, 2016) ("These courts find that a party alleges more than garden variety damages where he or she . . . [brings] a cause of action for intentional or negligent infliction of emotional distress.") (collecting cases); *see also Brown v. Kelly*, No. 05-cv-5442, 2007 WL 1138877, at *2 (S.D.N.Y. Apr. 16, 2007) ("garden variety" emotional distress allowed where plaintiffs were *not* suing for negligent infliction of emotional distress and did *not* allege permanent or long-lasting distress); *Oral Care Dental Grp. II, LLC*, 277 A.3d at 872 (allegations were consistent with claim for "garden variety" emotional distress because the "complaint did *not* assert an independent cause of action for emotional distress") (emphasis added).

any case in this or other Circuits, or in Connecticut state court, holding that a person may claim "garden variety" emotional distress without testifying on his own behalf. Notably, none of the cases discussed herein stand for the proposition that a "garden variety" plaintiff may establish their suffering solely through *someone else's* testimony.[20]

In choosing to proceed with "garden variety" claims, Plaintiffs claimed a reliance on personal testimony and disclaimed that they should have any obligation to produce potentially relevant materials related to their mental or emotional state in discovery. ECF No. 135.[21] The Court accepted Plaintiffs' representation that they seek only garden variety damages, after asking Plaintiffs to formally agree to that limitation. ECF No. 139 at 3. By its nature, "garden variety" emotional distress *requires* testimony from the person alleging the injury. Monk, Sr. cannot provide this. Because he cannot establish the elements of a meritorious claim, including injury and damages, his claims are jurisdictionally precluded. *Brownback*, 141 S. Ct. at 749. This Court should dismiss the claims brought on behalf of the Estate of Monk, Sr. under Rule 12(b)(1).

## IV. NVCLR SHOULD BE DISMISSED BECAUSE IT FAILED TO EXHAUST PRESENTMENT REQUIREMENTS.

"An action shall not be instituted [under the FTCA] for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless

---

[20] Further, the existence of Monk, Jr.'s claims and purported class claims is irrelevant. No class has been certified. Class allegations do not create a cause of action. *See Parisi*, 710 F.3d at 488. And as a named Plaintiff, the Estate of Monk, Sr. must be able to adequately plead the elements of its own meritorious claim, or the claims must be dismissed. *Richard v. Bell Atl. Corp.*, 946 F. Supp. 54, 78-79 (D.D.C. 1996) ("The plaintiffs are not excused of their burden of pleading sufficient facts merely because they have styled their complaint as a class action. . . . Rather, their allegations, like the rest of the plaintiffs' allegations, must stand or fall on their own.").

[21] Because Plaintiffs informed the Court that they bring "only garden variety" claims and they would limit their proof to their own testimony, the Court denied the Defendant the opportunity to discover medical or psychiatric records to refute Plaintiffs' claims. ECF No. 135; ECF No. 139.

the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675. This administrative presentment requirement is jurisdictional and cannot be waived. *Wyler v. United States*, 725 F.2d 156, 159 (2d Cir. 1983) ("Absent compliance with the statute's requirements [to make a timely filing of an administrative claim] the action is barred by sovereign immunity and the district court had no subject matter jurisdiction."); *see also Jackson v. United States*, 730 F.2d 808 (D.C. Cir. 1984). Further, plaintiffs are required to allege presentment in their pleading. *See Altman v. Connally*, 456 F.2d 1114, 1116 (2d Cir. 1972) ("Insofar as the complaint seeks recovery from the United States in tort, it was also deficient in that, . . . it failed to allege the presentation of the claim to the appropriate federal agency and a final disposition of the claim by that agency, as required by 28 U.S.C. § 2675."); *Healy v. U.S. Postal Serv.*, 677 F. Supp. 1284 (E.D.N.Y. 1987).

The Amended Complaint alleges that both Monk, Jr. and the Estate of Monk, Sr. exhausted their requisite administrative remedies prior to initiating this suit by presenting administrative claims to the VA. Am. Compl. ¶ 8. In contrast, Plaintiffs do not allege that NVCLR presented an administrative claim of its own. Nor could they, because NVCLR did not present an administrative claim. Indeed, NVCLR does not allege any right to recovery on its own behalf. Instead, it relies on claims submitted by its members. *See id.* ("Members of NVCLR such as Ms. Barnett have filed similar claims in 2023.").

Setting aside whether an organization may represent its members as a named plaintiff in a purported class action, a plaintiff in an *FTCA action* is statutorily required to first exhaust the FTCA's administrative requirements. 28 U.S.C. § 2675 (also prohibiting suit seeking damages greater than those administratively claimed); *see also* 28 C.F.R. § 14.2(a). An FTCA plaintiff cannot rely on *other plaintiffs'* exhaustion of their own, separate administrative remedies to satisfy

the presentment requirement. *See, e.g.*, *Adams v. U.S. Dep't of Hous. & Urb. Dev.*, 807 F.2d 318, 320 (2d Cir. 1986) (plaintiff could not avoid presentment requirement "by arguing that her name should be read into the administrative claim filed on behalf of her daughter and that the government . . . knew or should have known that she might have a claim arising out of her daughter's accident."). And there is no exception to this jurisdictional prerequisite for a party who purports to be a plaintiff for class representation purposes only. *Cf.* 28 U.S.C. § 2675(a) (expressly exempting only third-party complaints, counter-claims, or cross claims from the agency presentment requirement).[22] NVCLR should therefore be dismissed for lack of subject matter jurisdiction.

**CONCLUSION**

The United States respectfully requests that this Court dismiss the Amended Complaint for lack of subject matter jurisdiction.

[22] Further, the Amended Complaint's allegation that "Plaintiffs and all members of the proposed Class are seeking the same remedies" is incorrect on its face as to Plaintiff NVCLR, because NVCLR does not claim to have suffered any injury, let alone a right to a remedy. *See* Am. Compl. ¶ 198. And Plaintiff NVCLR is not similarly situated to the purported class members because it has no claim. NVCLR could not be a member of the class it seeks to represent.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

DAVID X. SULLIVAN
United States Attorney

JONATHAN D. GUYNN
Deputy Assistant Attorney General, Torts Branch

DEBRA R. COLETTI
Assistant Director, Torts Branch

*/s/ Emily M. Kelley*
Emily M. Kelley (phv207548)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4400
Email: Emily.m.kelley@usdoj.gov

Irina Majumdar (phv207971)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 598-5403
Email: irina.m.majumdar@usdoj.gov

Natalie N. Elicker (ct28458)
Assistant United States Attorney
157 Church Street, 25th Floor
New Haven, CT 06510
Telephone: (203) 821-3700
Facsimile: (203) 773-5373
Natalie.Elicker@usdoj.gov

ATTORNEYS FOR DEFENDANT
UNITED STATES OF AMERICA