**UNITED STATES DISTRICT COURT DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK, Jr. et al., *Plaintiffs*, | : | |
| v. | : | No. 3:22-cv-1503 (SRU) |
| THE UNITED STATES OF AMERICA, *Defendant*. | : | July 20, 2026 |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1
II. RELEVANT PROCEDURAL HISTORY ........ 2
III. LEGAL STANDARD ........ 3
IV. DISCUSSION ........ 3
A. Plaintiffs Do Not Allege Institutional Tort Claims. ........ 3
B. The Discretionary Function Exception Does Not Bar Plaintiffs' Claims. ........ 8
C. Garden-Variety Emotional Distress Does Not Require Personal Testimony From Each Named Plaintiff. ........ 19
D. NVCLR Does Not Assert Organizational Standing and Did Not Need To Present an Administrative Claim On Its Own Behalf. ........ 22
V. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Cases**

*Adarand Constructors, Inc. v. Peña*,
515 U.S. 200 (1995) .......... 14

*Altman v. Connally*,
456 F.2d 1114 (2d Cir. 1972) .......... 22

*Andrulonis v. United States* (*Andrulonis II*),
952 F.2d 652 (2d Cir. 1991) .......... 16, 17

*Arrington v. D.C.*,
673 A.2d 674 (D.C. 1996) .......... 20

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
426 F.3d 635 (2d Cir. 2005) .......... 3

*Ben v. United States*,
160 F. Supp. 3d 460 (N.D.N.Y. 2016) .......... 14, 18

*Boechler, P.C. v. Comm'r of Internal Revenue*,
596 U.S. 199 (2022) .......... 23

*Bolling v. Sharpe*,
347 U.S. 497 (1954) .......... 10, 14

*C.M. v. United States*,
699 F. Supp. 3d 809 (D. Ariz. 2023) .......... 3, 4, 6, 8

*Carrano v. Yale-New Haven Hosp.*,
279 Conn. 622 (2006) .......... 19

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) .......... 3

*Chamberland v. Physicians for Women's Health, LLC*,
2006 WL 437553 (Conn. Super. Feb. 8, 2006) .......... 20

*Chinese Am. Citizens All. of Greater New York v. Adams*,
116 F.4th 161 (2d Cir. 2024) .......... 13, 14

*Ciarleglio v. Martin*,
325 A.3d 219 (Conn. App. Ct. 2024) .......... 20

*City of Canton v. Harris*,
489 U.S. 378 (1989) (O'Connor, J., concurring in part) .......... 11, 13

*Comm. on Human Rights & Opportunities v. Greenwich Catholic Elementary School Sys., Inc.*,
522 A.2d 785 (1987) ..... 20

*Coulthurst v. United States*,
214 F.3d 106 (2d Cir. 2000) ..... 18

*Daka, Inc. v. McCrae*,
839 A.2d 682 (D.C. 2003) ..... 20

*Diaz-Bernal v. Myers*,
758 F. Supp. 2d 106 (D. Conn. 2010) ..... 15

*Dietz v. Bouldin*,
579 U.S. 40 (2016) ..... 3

*Doe 1 v. United States*,
No. 25-CV-80880, 2025 WL 3755467 (S.D. Fla. Dec. 18, 2025) ..... 4, 5, 6, 7

*El Badrawi v. Dep't of Homeland Sec.*,
579 F. Supp. 2d 249 (D. Conn. 2008) ..... 10, 11, 12

*Flores Benitez v. Miller*,
687 F. Supp. 3d 304 (D. Conn. 2023) ..... 3, 4, 7, 12, 13

*Gonzalez v. United States*,
690 F. Supp. 251 (S.D.N.Y. 1988) ..... 17

*Harrow v. Dep't of Def.*,
601 U.S. 480 (2024) ..... 23

*Healy v. U.S. Postal Serv.*,
677 F. Supp. 1284 (E.D.N.Y. 1987) ..... 22

*Hunt v. Washington State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ..... 22

*Inv. Properties Int'l, Ltd. v. IOS, Ltd.*,
459 F.2d 705 (2d Cir. 1972) ..... 23

*Ivey v. D.C.*,
46 A.3d 1101 (D.C. 2012) ..... 19

*J.P. v. United States*,
679 F. Supp. 3d 911 (D. Ariz. 2023) ..... 8

*Jackson v. United States*,
730 F.2d 808 (D.C. Cir. 1984) ..... 22

*In re Joint E. & S. Dists. Asbestos Litig.*,
891 F.2d 31 (2d Cir. 1989) ..... 16

*Kamen v. Am. Tel. & Tel. Co.*,
791 F.2d 1006 (2d Cir. 1986) .......... 23

*King v. United States*,
491 F. Supp. 2d 286 (D. Conn. 2007) .......... 9

*Kosak v. United States*,
465 U.S. 848 (1984) .......... 9

*Lee v. United States*,
No. CV1908051PCTDLRDMF, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) .......... 8

*Lewis v. Lewis*,
708 A.2d 249 (D.C. 1998) .......... 20

*Leyse v. Bank of Am. Nat. Ass'n*,
804 F.3d 316 (3d Cir. 2015) .......... 2

*Lins v. United States*,
847 F. App'x 159 (4th Cir. 2021) .......... 14

*Lockwood v. United States*,
No. 2:25-CV-608-EGL, 2026 WL 851441 (N.D. Ala. Jan. 9, 2026), *notice of appeal pending* .......... 8

*Loumiet v. United States*,
828 F.3d 935 (D.C. Cir. 2016) .......... 16

*M.Q. v. United States*,
776 F. Supp. 3d 180 (S.D.N.Y. 2025) .......... 10, 11

*Myers & Myers, Inc. v. U.S. Postal Service*,
527 F.2d 1252 (2d Cir. 1975) .......... 9, 10, 13

nom. *Jane Doe 1, et al., Plaintiffs, v. United States, Defendant.*,
No. 9:25-CV-80880, 2026 WL 1041963 (S.D. Fla. Apr. 17, 2026) .......... 4

*Oral Care Dental Grp. II, LLC v. Pallet*,
213 Conn. App. 389 (2022) .......... 19

*Pelchy v. United States*,
549 F. Supp. 2d 198 (N.D.N.Y. 2008) .......... 3

*Pers. Adm'r of Massachusetts v. Feeney*,
442 U.S. 256 (1979) .......... 11

*Ralph Durante & WA445 Assocs., LLC v. Cody*,
2023 WL 6436875 (Conn. Super. Ct. Sept. 29, 2023) .......... 20

*Soberal-Perez v. Heckler*,
717 F.2d 36 (2d Cir. 1983) .......... 10

*Su v. Milford Sports Bars, LLC*,
No. 3:22-CV-321 (VAB), 2023 WL 10509599 (D. Conn. Dec. 15, 2023) .......... 21

*Terwilliger v. Terwilliger*,
293 A.2d 12 (Conn. C.P. 1971) .......... 20

*United Mine Workers of Am., Int'l Union v. Moore*,
717 A.2d 332 (D.C. 1998) .......... 20

*United States v. Gaubert*,
499 U.S. 315 (1991) .......... 9, 10, 15, 16

*United States v. Wong*,
575 U.S. 402 (2015) .......... 23

*USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*,
681 F.3d 103 (2d Cir. 2012) .......... 17

*Vera v. Alstom Power*,
189 F. Supp. 3d 360 (D. Conn. 2016) .......... 21

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252, 266 (1977) .......... 12, 14

*Wilbur P.G. v. United States*,
No. 4:21-CV-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022) .......... 6

*Wilkins v. United States*,
598 U.S. 152 (2023) .......... 23

*Wyler v. United States*,
725 F.2d 156 (2d Cir 1983) .......... 22

**Constitution**

Fifth Amendment .......... *passim*

Fourteenth Amendment .......... 14

**Statutes**

28 U.S.C. § 1346(b)(1) .......... 3

28 U.S.C. § 2401(b) .......... 23

28 U.S.C. § 2675(a) .......... 23

28 U.S.C. § 2680 .......... 9

28 U.S.C. § 2680(a) .......... 9

28 U.S.C. § 2680(a)–(n) .......... 3

38 U.S.C § 303 .......... 10

Conn. Gen. Stat § 52-599 (2024) .......... 20

D.C. Code § 12–101 (2025) .......... 20

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. .......... 10

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed. 2014) .......... 3

109 Cong. Rec. 13380 (1964) .......... 10

110 Cong. Rec. 6544–45 (1964) .......... 10

Executive Order 13166 (Aug. 11, 2000) .......... 10

Executive Order 14224 (Mar. 6, 2025) .......... 10

Fed. R. Civ. P 12(g)(2) .......... 2, 3

Fed. R. Civ. P 12(b)(1) .......... 3, 23

Fed. R. Civ. P Rule 12 .......... 3

Fed. R. Civ. P Rule 12(h)(3) .......... 3

## I. INTRODUCTION

Plaintiffs' Amended Complaint in this matter contains specific allegations that U.S. Veterans Administration and U.S. Department of Veterans Affairs (both "VA") leaders knew or should have known for decades that VA denied benefits for Black veterans at significantly higher rates than white veterans and yet failed to take significant action to remedy the issue. Plaintiffs allege that the actions of VA leaders violated the Federal Tort Claims Act ("FTCA") because they caused Plaintiffs tangible harm by having to interact with a discriminatory benefits system. Years after this Court denied Defendant's first Motion to Dismiss for lack of subject matter jurisdiction and after the parties have undergone substantial discovery, Defendant now raises four new arguments challenging the Court's jurisdiction. All lack merit.

First, Plaintiffs do not assert institutional tort claims. Throughout the complaint, Plaintiffs allege specific tortious conduct by individual VA employees and officials. Defendant makes inapposite comparisons to other cases which allege only generalized allegations of tortious conduct that are easily distinguishable from Plaintiffs' allegations.

Second, the discretionary function exception to the FTCA does not bar Plaintiffs' claims. Federal officials have no discretion to violate the Constitution. Plaintiffs allege that VA officials violated the equal protection clause of the Fifth Amendment when they administered benefits in a racially discriminatory manner and failed to take concrete action to fix the system. Even if the Court were to set aside Plaintiffs' constitutional arguments, Defendant cannot point to any legitimate policy that authorized VA leaders' actions, and such conduct cannot be connected to any plausible policy objective.

Third, Defendant's challenge to emotional distress damages misreads the applicable standard. Garden variety emotional distress does not require personal testimony from each named Plaintiff,

and Defendant cites no authority suggesting otherwise.

Fourth, Defendant mischaracterizes the role of the National Veterans Council for Legal Redress ("NVCLR") in this litigation. Defendant contends that NVCLR failed to exhaust its administrative remedies as required by the FTCA, and therefore the Court lacks jurisdiction over its claim. But because NVCLR asserts associational standing, not organizational standing, it was not required to present an administrative claim on its own behalf.

In any event, this Court should defer ruling on Defendant's second Motion to Dismiss until after the close of fact discovery. The factual record bearing on the jurisdictional questions Defendant raises—including the scope of VA leadership's actual knowledge of racial disparities—remains incomplete. Dismissal on an incomplete record would be premature.

For all of these reasons, Defendant's second Motion to Dismiss should be denied or deferred.

## II. RELEVANT PROCEDURAL HISTORY

On March 31, 2023, Defendant filed its first Motion to Dismiss Plaintiffs' initial Complaint. ECF 23. In that motion, Defendant sought dismissal for lack of subject matter jurisdiction pursuant to the Veterans' Judicial Review Act and the private analogue requirement, untimely claims, and claim preclusion. ECF 23-1.[1] The court denied the motion on March 29, 2024, applying Defendant's motion to Plaintiffs' Amended Complaint (ECF 36), which was filed after Defendant moved to dismiss. ECF 83 at 6 n.1. The parties are currently pursuing discovery scheduled to close on May 3, 2027. ECF 192; 197. On April 30, 2026, with discovery underway but incomplete, Defendant filed this second Motion to Dismiss for lack of subject matter jurisdiction. ECF 179.[2]

[1] At oral argument for the March 2023 Motion, Defendant stated it was aware of the discretionary function argument but chose not to bring it at that time, reserving the right to raise the defense later. ECF 83 at 11.

[2] By filing a second motion to dismiss on arguments previously available to Defendant, Defendant is engaging in piecemeal litigation, which is contrary to the policy objectives of the Federal Rules of Civil Procedure. *See Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (noting that Fed. R. Civ. P 12(g)(2), also known as the consolidation rule, is "intended 'to eliminate unnecessary delay at the pleading stage' by encouraging 'the presentation of an omnibus

## III. LEGAL STANDARD

Federal courts must have subject matter jurisdiction to adjudicate a dispute. *Flores Benitez v. Miller*, 687 F. Supp. 3d 304, 319 (D. Conn. 2023). The "terms and conditions of the FTCA set the boundaries of subject matter jurisdiction for courts in entertaining tort suits against the United States." *Pelchy v. United States*, 549 F. Supp. 2d 198, 200 (N.D.N.Y. 2008). The FTCA waives the government's sovereign immunity if a negligent or wrongful act or omission of a government employee acting within the scope of his office or employment caused injury where a private person would be liable under applicable tort law. 28 U.S.C. § 1346(b)(1).

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005); *Carter v. HealthPort Techs., LLC,* 822 F.3d 47, 57 (2d Cir. 2016).

## IV. DISCUSSION

### A. Plaintiffs Do Not Allege Institutional Tort Claims.

Defendant argues that Plaintiffs' claims are "institutional tort claims" not permitted by the FTCA. ECF 179-1 at 7-8. Although there is no enumerated exception to the FTCA for institutional tort claims, the FTCA does not waive sovereign immunity for the tortious "actions or omissions of the entire government or an agency as a whole." *Flores Benitez*, 687 F. Supp. 3d at 333; *see also C.M. v. United States*, 699 F. Supp. 3d 809, 825 (D. Ariz. 2023); *see* 28 U.S.C. § 2680(a)–(n). However, "the United States cannot shield itself from liability by characterizing each employee's

pre-answer motion in which the defendant advances every available Rule 12 defense' simultaneously rather than 'interposing these defenses and objections in piecemeal fashion.'") (quoting Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed. 2014)). While Rule 12(g)(2) does not override Rule 12(h)(3), which allows for dismissal at any time if the court determines it lacks subject-matter jurisdiction, the overall policy objectives of the Federal Rules remain. This Court of course has "inherent powers" to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) (internal quotation omitted), which includes the option to defer adjudication of this motion until the close of discovery.

actions as that of an agency or policy action generally." *C.M.*, 699 F. Supp. 3d at 825.

Defendant argues that Plaintiffs impermissibly allege conduct by the VA itself, rather than VA employees. But Plaintiffs allege specific tortious conduct by individual VA employees.[3]

In evaluating whether an FTCA plaintiff improperly alleges tortious conduct by the government or one of its agencies writ large, courts look to whether the claim is rooted in the alleged actions of individual government employees. *Flores Benitez* at 334. Courts have determined that "[a] complaint filed under the FTCA need not identify individual government employees by name in order to survive dismissal," so long as the complaint alleges tortious conduct by individual employees. *Doe 1 v. United States*, No. 25-CV-80880, 2025 WL 3755467, at *12 (S.D. Fla. Dec. 18, 2025), *report and recommendation adopted as modified sub nom. Jane Doe 1, et al., Plaintiffs, v. United States, Defendant.*, No. 9:25-CV-80880, 2026 WL 1041963 (S.D. Fla. Apr. 17, 2026). Courts evaluate the totality of allegations in the complaint to determine if the claim is actionable under the FTCA. *Flores Benitez* at 333-334.

In the present case, Plaintiffs allege that individual employees and officials—not VA writ large—committed specific tortious acts that harmed Plaintiffs. For example, Plaintiffs allege VA leaders failed to make any changes to the agency's training or operations after learning of a Veterans Law Judge exchanging racist messages with his colleagues:

- "In 2017, a Veterans Law Judge (VLJ) and attorney-advisor with the Board of Veterans' Appeals (BVA) were fired after they and other colleagues were found to have created an email chain, they called the 'forum of hate' in which they sent and received racist messages targeting Black VA benefits claimants, as well as hateful messages targeting other minorities." Am. Compl. ¶ 59.
- "On information and belief, VA leadership did not make systemic changes to its VLJ or BVA staff trainings or operations guides to provide guidance on eliminating racial bias in its own decision-making, or identifying and remedying racial bias in decision-making at

[3] Defendant argues that because the FTCA's limited waiver of sovereign immunity makes the United States liable only under *respondeat superior* principles, Plaintiffs cannot allege FTCA claims of institutional conduct by an agency. ECF 179-1 at 8, 11. However, because Plaintiffs allege misconduct committed not by an agency, but by individual government employees, the principle of *respondeat superior* is intact.

the Regional Office level, even after discovering that its culture allowed a VLJ and BVA staff to comfortably exchange grossly racist emails from their official government accounts for years." Am. Compl. ¶ 60.

As another example, Plaintiffs allege that a draft VA report showed there was a significant disparity in grant rates for PTSD claims between Black veterans and other veterans, but VA leaders took no steps to redress these disparities:

- "A 2017 draft VA report showed that there was a significant disparity in grant rates for PTSD claims between Blacks and other groups. VA's own report found that 'Non-Hispanic Blacks have the lowest grant rate at 43% and are the largest outlier in terms of grant rate,' as shown in the extracted table below." Am. Compl. ¶ 69.

| | | Service Connected PTSD | |
|---|---|---|---|
| Ethnorace (group) | | Denied | Granted |
| Hisp. White | Vets count | 38,871 | 60,958 |
| | % | 39% | 61% |
| Non-hisp. White | Vets count | 264,213 | 346,190 |
| | % | 43% | 57% |
| American Indian/Alaskan, Asian/Pacific, Hisp. Black | Vets count | 6,887 | 9,113 |
| | % | 43% | 57% |
| Non-hisp. Black | Vets count | 80,274 | 61,153 |
| | % | 57% | 43% |
| Grand Total | Vets count | 390,245 | 477,414 |
| | % | 45% | 55% |

- "VA leaders refused to release this report publicly, took no steps to redress the dramatic racial disparities VA itself had uncovered, and failed to meaningfully change its benefits administration processes to account for and rectify these discrepancies." Am. Compl. ¶ 70.
- "VA officials negligently failed to collect and aggregate claims data prior to 2001 in a manner that would allow VA to identify the nature, scope, and collateral effects of these disparities sooner. In addition, VA leaders have not fully retained disability decision data from before 2001." Am. Compl. ¶ 71.

Such allegations are not pleaded as institutional torts, which is evidenced by their text and the relevant case law. In *Doe 1*, defendant sought dismissal of an FTCA claim by sexual abuse victims on the grounds that the complaint alleged an institutional tort against the FBI writ large, rather than a tort based on conduct of individual FBI employees. 2025 WL 3755467 at *12. However, the court determined that although the complaint did not identify individual government employees by name,

the complaint alleged a negligence claim based on acts of individual FBI employees who failed to properly investigate, arrest, and prevent further crimes of the perpetrator over a 21-year period. *Id.* at *2, *12. The court noted that plaintiffs did not need to specifically identify the employees involved in each of the alleged acts to survive dismissal. *Id.* at *12.

Additionally, courts have allowed plaintiffs to bring FTCA claims against high-ranking government officials who engaged in tortious conduct by designing a policy that resulted in actions that harmed plaintiffs. *See, e.g., Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2022 WL 3024319 at *6 (N.D. Cal. May 10, 2022); *C.M.*, 699 F. Supp. 3d at 825. In *Wilbur P.G.*, plaintiffs identified several high-ranking government officials, including President Trump, John Lafferty of U.S. Citizenship and Immigration Services, Secretary of Homeland Security John Kelly, and Attorney General Jeff Sessions. *Wilbur P.G.*, 2022 WL 3024319 at *6. Plaintiffs argued that these individual federal employees, acting within the scope of their employment, "design[ed] the Government's practice of separating families at the border, which resulted in Plaintiff parents being separated from their children." *Id.* (quoting plaintiffs' complaint). Plaintiffs also described, but did not identify, the employees involved in separating plaintiffs at the border. *Id.* The court held that these allegations were sufficient. *Id.*

Like the plaintiffs in *Doe 1*, who alleged failures by individual government employees over a span of 21 years, and the plaintiffs in *Wilbur P.G.*, who named high-ranking government officials who designed the family separation policy and alleged harm by unnamed border patrol officers, Plaintiffs here allege concrete actions by numerous individuals at VA that caused them harm. *See Doe 1*, 2025 WL 3755467 at *12; *Wilbur P.G.*, 2022 WL 3024319 at *6. Just as the plaintiffs in *Doe 1* alleged failures by individual unnamed FBI agents to investigate tips, reports, and complaints concerning the perpetrator, Plaintiffs here allege specific episodes of VA leaders acting negligently, such as failing to make any changes to trainings or operations after learning about racist email chains

or disparities in grant rates. Am. Compl. ¶¶ 59–60, 69–72; *see Doe 1*, 2025 WL 3755467 at *2, *12. Because Plaintiffs allege tortious conduct by individual VA employees, Plaintiffs' claims can proceed under the FTCA notwithstanding that only after discovery will Plaintiffs learn the names of some of the individuals in question. *See Doe 1*, 2025 WL 3755467 at *12; *Flores Benitez*, 687 F. Supp. 3d at 334.

Yet, Defendant argues that "Plaintiffs have pleaded and repeatedly argued that this case is about systemic VA conduct." ECF 179-1 at 15. *Doe 1* demonstrates, however, that the United States can be liable under the FTCA for its employees' torts even when plaintiffs' harm is the culmination of agency employees' failure to act over a decades-long period. *See Doe 1*, 2025 WL 3755467 at *2, *12. The *Doe 1* plaintiffs alleged that over a 21-year period, FBI agents failed to investigate tips and red flags, interview victims, follow protocols, sufficiently investigate, and arrest the perpetrator. *Id.* at *1–2. The plaintiffs alleged that but for the FBI's negligence, the FBI would have discovered the crimes and arrested the perpetrator sooner, which would have prevented the crimes committed against plaintiffs. *Id.* at *1–2, *12 (plaintiffs did not allege an impermissible institutional tort claim but rather "a negligence claim based on the actions of individual FBI employees who failed to properly investigate [the perpetrator], arrest him, and prevent him from committing further crimes prior to 2019"). Similarly, in the present case, Plaintiffs allege several specific failures by VA personnel, including failing to adequately train employees after specific instances of racist conduct, failing to collect and retain data, and failing to investigate widespread harm. Am. Compl. ¶¶ 59–60, 69–72. Taken together, this resulted in the systemic racism that injured Plaintiffs, just as the FBI agents' failures and inaction over 21 years culminated in harm to the *Doe 1* plaintiffs. *See Doe 1*, 2026 WL 1041963 at *5 (adopting Magistrate's recommendation that claim should not be dismissed on institutional tort grounds because plaintiffs did not sue the FBI itself, but rather sued for "negligence arising from the FBI's alleged failure to protect Plaintiffs from a known sex trafficker,

which failure caused them injury").

Defendant's comparison of Plaintiffs' claims to those in *Lockwood*, *Lee*, and *J.P.* are inapposite, as those three cases involve generalized allegations of tortious misconduct instead of the specific episodes of tortious misconduct Plaintiffs allege here. *See Lockwood v. United States*, No. 2:25-CV-608-EGL, 2026 WL 851441, at *5–6 (N.D. Ala. Jan. 9, 2026)*, appeal pending* No. 26-10876 (11th Cir. Mar. 18, 2026); *Lee v. United States*, No. CV1908051PCTDLRDMF, 2020 WL 6573258, at *5–6 (D. Ariz. Sept. 18, 2020); *J.P. v. United States*, 679 F. Supp. 3d 911, 921–22 (D. Ariz. 2023). The *Lockwood* plaintiff had not alleged any specific episodes demonstrating tortious conduct by VA personnel. 2026 WL 851441, *5–6.[4] Similarly, the *Lee* plaintiff merely recited generic duties employees failed to fulfill and did not allege how any individual employee was negligent in performing their duties or how an employee's negligence contributed to the harm. *Lee*, 2020 WL 6573258 at *6. The *J.P.* plaintiff's abuse of process allegations similarly did not plausibly connect any employee conduct to the United States' alleged ulterior motive to use its immigration detention authority to deter lawful immigration, making the allegations too general to survive the FTCA's institutional tort bar. *J.P.*, 679 F. Supp. 3d at 921–22.

The United States "cannot shield itself from liability by characterizing each employee's actions as that of an agency or policy action generally." *C.M*, 699 F. Supp. 3d at 825.

**B. <u>The Discretionary Function Exception Does Not Bar Plaintiffs' Claims.</u>**

Defendant contends that the discretionary function exception to the FTCA bars Plaintiffs' claims. This exception provides that sovereign immunity is not waived for:

> [a]ny claim based upon an act or omission of an employee of the

[4] The Veterans Legal Services Clinic at Yale Law School represented Mr. Lockwood only in his administrative FTCA claim and has not been involved at any point in Mr. Lockwood's litigation in federal court. Mr. Lockwood's representations are therefore his own and not connected in any way to Plaintiffs' legal theories. Defendant attempts to tie Plaintiffs' case together with Mr. Lockwood's by stating that both he and the *Monk* plaintiffs "intentionally styled their claims as institutional torts." ECF 179-1 n.7. But as noted above, this is not Plaintiffs' legal theory and should have no bearing on this case.

> Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Exceptions to the FTCA should not be broadly construed, and "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute." *Kosak v. United States*, 465 U.S. 848, 854 n.9 (1984). The "proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the words and reason of the exception—no less and no more." *Id.* (internal citations omitted).

The Supreme Court created a two-part test for the application of the discretionary function exception in *United States v. Gaubert*, 499 U.S. 315, 322 (1991). A function is discretionary if the alleged acts: (1) involve an "element of judgment or choice" that is not compelled by statute, regulation, or policy, and (2) are based on "considerations of public policy" or "susceptible to policy analysis." *Id.* at 322–23, 325. *Both* prongs must be satisfied for the discretionary function exception to bar a claim. *Id.* at 322. Defendant bears the ultimate burden of establishing that both prongs of the test are satisfied once a plaintiff has pled facts that facially rebut the exception. *Id.* at 324–25; *King v. United States*, 491 F. Supp. 2d 286 (D. Conn. 2007). As demonstrated below, Plaintiffs have made such a showing here, and Defendant has not met its burden of establishing either prong of the test has been satisfied.

**1. VA Officials Had No Discretion to Administer Benefits in a Racially Discriminatory Manner Because the Fifth Amendment Specifically Prohibited It**

Defendant fails the first prong because federal officials do not have discretion to violate the Constitution. *See, e.g.*, *Myers & Myers, Inc. v. U.S. Postal Service*, 527 F.2d 1252, 1261 (2d Cir. 1975); *El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 275 (D. Conn. 2008); *M.Q. v. United States*, 776 F. Supp. 3d 180, 190–92 (S.D.N.Y. 2025). In administering benefits in a racially

discriminatory manner, VA officials violated the Fifth Amendment's equal protection component, which does not allow discretion to discriminate.[5]

The first prong protects only discretionary acts that involve an element of judgment or choice. *Gaubert*, 499 U.S at 322. It is the nature of the conduct, rather than the status of the actor that governs whether the exception applies. *Id*. A federal statute, regulation, or policy that specifically prescribes a course of action removes employee discretion under *Gaubert*'s first prong—and the Fifth Amendment's prohibition on racial discrimination is the most authoritative directive of all, leaving VA officials no lawful option but to prevent racial discrimination in its administration of benefits. *Gaubert*, 499 U.S. at 322; *Myers & Myers*, 527 F.2d at 1261; *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); 38 U.S.C § 303 (VA Secretary is "responsible for the *proper* execution and administration of all laws administered by the Department") (emphasis added).

**a. No Discretion Exists to Violate the Constitution.**

As courts within the Second Circuit have repeatedly held, "a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority." *Myers & Myers, Inc. v. U.S. Postal Service*, 527 F.2d 1252, 1261 (2d Cir. 1975); *see also El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 275 (D. Conn. 2008) ("This claim [the discretionary function exception] is easily dispensed with. Government agents never have the discretion to violate the

[5] Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. prohibits discrimination or denial of benefits on the basis of race, color, and national origin by federal grantees, not the federal government itself. Consideration of Title VI is nonetheless instructive here. Congress understood when enacting Title VI that it was unnecessary to apply it directly to federal agencies because the Fifth Amendment already prohibited federal racial discrimination in program administration. This makes clear that the non-discrimination obligation Plaintiffs invoke is constitutional in nature, mandatory, and not subject to agency discretion. *See* 110 Cong. Rec. 6544–45 (1964) (Senator Humphrey stating Title VI would have "no practical effect" on direct federal programs, like veterans' compensation and pensions, because the federal government cannot engage in racial discrimination); 109 Cong. Rec. 13380 (1964) (Attorney General Katzenbach confirming that discrimination in federal benefits programs "is precluded by the [F] ifth [A]mendment"); *see also Soberal-Perez v. Heckler*, 717 F.2d 36, 39–40 (2d Cir. 1983) (discussing congressional history of Title VI). Consistent with this understanding, the federal government has applied Title VI requirements to itself on at least one occasion. *See* Executive Order 13166 (Aug. 11, 2000) at § 2 (applying Title VI's prohibition on national origin discrimination to protect persons with limited English proficiency in federally "conducted" programs, not only federally funded ones), *rescinded,* Executive Order 14224 (Mar. 6, 2025).

Constitution."); *M.Q. v. United States*, 776 F. Supp. 3d 180, 185 (S.D.N.Y. 2025) ("[T]he Discretionary Function Exception does not apply when a plaintiff plausibly alleges that a federal employee engaged in unconstitutional conduct."). VA officials did not merely fail to notice racial discrimination in benefits adjudication; they knew or should have known of it, concealed evidence of it, and consciously chose not to remedy it—conduct that constitutes intentional discrimination in violation of the Fifth Amendment. *See* Am. Compl. ¶ 194; *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (explaining that intent is established by showing decisionmaker acted "at least in part 'because of,' not merely 'in spite of'" protected group effects). Deliberate indifference to known racial harm, repeated over decades, satisfies the required showing for intent at the pleading stage. *See City of Canton v. Harris*, 489 U.S. 378, 397 (1989) ("[M]unicipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations.") (O'Connor, J., concurring in part and dissenting in part).

Cases in this District confirm that when government officials have actual knowledge of unconstitutional conduct and fail to act, the discretionary function exception does not apply. For instance, in *El Badrawi.*, an Immigration and Customs Enforcement ("ICE") agent knew that an individual was lawfully present in the country, recognized the likelihood that proceeding would result in a constitutional violation, and detained him anyway. 579 F. Supp. 2d at 252–57. Judge Hall held that the discretionary function exception was inapplicable, as "[g]overnment agents never have discretion to violate the Constitution." *Id*. at 275. The court did not require the plaintiffs to prove the constitutional violation on the merits before invoking the principle. Judge Hall found it sufficient that the complaint plausibly alleged that an official with actual knowledge of a likely constitutional violation chose to proceed anyway. *Id*. That is precisely the allegation here: Defendant continued administering benefits through systems it knew produced racially discriminatory outcomes and declined to act, exactly the kind of circumstantial evidence of discriminatory purpose that *Arlington*

*Heights* recognizes as sufficient. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) (discriminatory purpose "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available"). Among other allegations, the Amended Complaint states that VA officials received documented evidence of racial disparities through their own internal analysis and consciously chose not to act. Am. Compl. ¶¶ 65–68. Under *El Badrawi*, that knowledge-plus-inaction is sufficient to place VA's conduct outside the discretionary function exception at the pleading stage.

Similarly, in *Flores Benitez v. Miller*, federal officials knowingly implemented family separation policies that would inevitably lead to constitutional violations. 687 F. Supp. 3d at 327. Judge Hall held that specific factual allegations establishing that officials consciously permitted known constitutional violations to continue were sufficient to show the challenged conduct was not discretionary under *Gaubert*'s first prong. This is precisely what Plaintiffs' well-founded allegations allege here. Am. Compl. ¶ 67. Therefore the discretionary function exception does not apply. What *El Badrawi* and *Flores Benitez* confirm is that conscious awareness of unconstitutional conduct combined with deliberate inaction, as the Amended Complaint specifically alleges, is not an exercise of discretion. It is a constitutional violation, rendering the exception inapplicable.

Defendant contends that Plaintiffs' invocation of the Constitution is conclusory, and that "disparate impact" alone does not state an equal protection violation. ECF 179-1 at 27–32. Plaintiffs do not allege disparate impact alone. They allege that VA decisionmakers were confronted with specific evidence of racial harm, including disparate impact, and made deliberate choices not to remedy it. *See, e.g.*, Am. Compl. ¶¶ 46–48 (VA leaders knew or should have known of racial disparities in claims outcomes since at least the 1970s); *id.* ¶¶ 47–48 (despite knowledge of disparities, VA leaders were "deliberately indifferent" to those disparities); *id.* ¶¶ 53–58, 70–74 (VA officials repeatedly failed to take corrective action even as the evidence of discrimination

accumulated). That deliberate choice in the face of known racial harm is what plausibly alleges VA's unconstitutional conduct, which is not subject to the discretionary function exception. *See Flores Benitez*, 687 F. Supp. 3d at 327 (finding constitutional allegations adequately pleaded at motion to dismiss stage). The disparate impact set out in the Amended Complaint was merely a component of deliberate indifference.

Such deliberate indifference paired with inaction violates the Constitution. As the Supreme Court held in *City of Canton*, "deliberate indifference" is shown where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers [] can reasonably be said to have been deliberately indifferent to the need." 489 U.S. at 390. Where policymakers are "confronted with an obvious need to train [] personnel to avoid the violation of constitutional rights" and act "deliberately indifferent to that need," that failure to train reflects a "deliberate or conscious choice." *Id.* at 393 (O'Connor, J., concurring in part and dissenting in part). It is precisely that kind of conscious disregard of known constitutional violations that removes the conduct from the discretionary function exception's protection. *Myers & Myers*, 527 F.2d at 1261. Here, VA employees inevitably administer benefits to Black veterans as part of their job responsibilities. Therefore, the need to act against such racial disparities and ensure non-discriminatory administration is readily apparent.

**b. Plaintiffs Plausibly Plead Unconstitutional Conduct.**

Defendant argues that Plaintiffs do not plausibly plead unconstitutional conduct in the Amended Complaint. *See* ECF 179-1 at 30. But VA's documented 21.9% higher denial rate for Black veterans over two decades, established by VA's own data disclosed in separate Freedom of Information Act litigation, Am. Compl. ¶¶ 37–44, is precisely the kind of circumstantial evidence of discriminatory purpose recognized as sufficient to support an equal protection claim. *See Chinese Am. Citizens All. of Greater New York v. Adams*, 116 F.4th 161, 172 (2d Cir. 2024) ("Thus, because

direct evidence of discriminatory intent may not be available, circumstantial evidence of disparate impact may be 'an important starting point' in determining whether a facially race-neutral policy or decision was motivated by a discriminatory purpose") (quoting *Arlington Heights*, 429 U.S. 229, 266 (1976)).[6] Decades of documented racial disparities combined with VA's deliberate concealment of its own internal analyses documenting the existence of those disparities constitutes more than an adequate pleading of discriminatory purpose at this stage.

**c. Negligent Supervision Claims Are Not Categorically Barred by the Discretionary Function Exception.**

Defendant's contention that supervision and training decisions are categorically discretionary is incorrect. ECF 179-1 at 21–22. "[T]he discretionary function exception does not categorically bar negligent hiring, supervision, and retention claims." *Lins v. United States,* 847 F. App'x 159, 165 (4th Cir. 2021). The question is whether the specific supervisory failure violated a mandatory directive. *Ben v. United States,* 160 F. Supp. 3d 460, 473–75 (N.D.N.Y. 2016). The court in *Ben* found the discretionary function exception inapplicable because a probation office had violated mandatory internal guidelines in the Guide to Judiciary Policy, which prescribed specific, required conduct leaving no room for discretionary judgment. *Id.* at 474–75. The court explicitly rejected the government's argument that supervision and training claims are always covered by the exception, stating that "[t]o the extent Defendant contends that negligent training and supervision claims are always covered by the discretionary function exception, the Court disagrees." *Id.* at 475. Here, the mandatory directive is the Constitution itself. VA officials had no discretion to supervise a benefits

---

[6] Although *Chinese American Citizens Alliance* arose under the Fourteenth Amendment, the equal protection standards that it applies govern federal actors equally through the Fifth Amendment's due process clause. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (incorporating the requirements of equal protection into the Fifth Amendment's Due Process Clause); *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 215–16 (1995) (holding that the Fifth Amendment imposes the same equal protection obligations on the federal government as the Fourteenth Amendment imposes on states). The *Arlington Heights* framework *Chinese American Citizens Alliance* applies therefore governs Plaintiffs' Fifth Amendment equal protection analysis here.

program they knew was producing racially discriminatory outcomes. Their failure to remedy that known constitutional violation is the specific supervisory failure that removes the exception's protection under *Ben's* own framework.

Further, Defendant's reliance on *Diaz-Bernal* is misplaced. In that case, this Court did not categorically bar supervision and training claims under the discretionary function exception. Defendant argues the opposite, citing *Diaz-Bernal* for the proposition that "the conduct underlying the torts of negligent hiring, training, and supervision is not inherently unconstitutional," ECF 179-1 at 29 (*citing Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 120 (D. Conn. 2010)). But this court recognized no such categorical bar in that case. Instead, the court conducted a factually intensive analysis of the *Diaz-Bernal* plaintiffs' claims. *Id* ("[T]he claims for negligent hiring, training, and supervision must be analyzed under the discretionary function exception.") To the extent Defendant draws comparisons between this case and *Diaz-Bernal*, plaintiffs' allegations there are readily distinguishable from those at issue in this matter. In *Diaz-Bernal*, plaintiffs alleged that supervisors' conduct started a chain of command that allowed *third parties* to commit unconstitutional actions. *Id.* at 120. Not so here. Plaintiffs have alleged that the *relevant supervisors themselves* were acting unconstitutionally by failing to take appropriate remedial steps after becoming aware of racially disparate outcomes in benefits administration, Am. Compl. ¶¶ 207, 223–24, thereby rendering their conduct outside the exception.

**2. The Second *Gaubert* Prong Fails Because No Legitimate Policy Authorized or Prescribed VA's Specific Conduct**

Defendant's position that VA planning-level decisions are grounded in legitimate policy rationale is far too broad and would swallow any limitations contemplated by *Gaubert's* second prong. Under the second *Gaubert* prong, the judgment involved in the act at issue must be "of the kind that the discretionary function exception was designed to shield." 499 U.S at 322–23 (citations

omitted). This means that the exception "protects only governmental actions and decisions based on considerations of public policy." *Id*. at 323 (citations omitted). Such public policy considerations are inapplicable here.[7]

**a. Defendant Does Not Allege a Specific Policy That Implicates the Second *Gaubert* Prong.**

In order to satisfy the second *Gaubert* prong, the government must point to "a clear regulatory scheme [that] entrusted government agents with discretionary powers to effectuate a clearly-defined policy." *Andrulonis v. United States* (*Andrulonis II*), 952 F.2d 652, 655 (2d Cir. 1991). The second prong asks not whether the government engaged in explicit policy balancing but whether the challenged conduct is susceptible to policy analysis at all. *In re Joint E. & S. Dists. Asbestos Litig.,* 891 F.2d 31, 37 (2d Cir. 1989). Where no legitimate public policy is implicated, the exception does not apply.. The type of policy relied upon to satisfy the second prong is thus limited, and courts will not accept rationales that "would effectively insulate virtually all actions by a government agent from liability." *Andrulonis II*, 952 F.2d. at 655.

Defendant asks this Court to do exactly what the Second Circuit rejected in *Andrulonis II*. There, the Centers for Disease Control (CDC) contended that a broad policy goal (eradicating rabies) shielded the agency from an FTCA suit based on a failure to warn of dangerous safety violations. *Id.* at 653, 655. In declining to impose the discretionary function based on the second *Gaubert* prong, the court held that the cited policy would "serve as the basis for infusing all decisions of CDC

[7] Although plaintiffs do not rely on this argument as an independent basis for defeating the second prong, it bears noting that conduct exceeding constitutional authority cannot plausibly be said to be grounded in considerations of legitimate public policy, which is precisely what the second prong requires. *See Loumiet v. United States*, 828 F.3d 935, 943–44 (D.C. Cir. 2016) (stating that the discretionary function exception does not provide blanket immunity against tortious conduct that a plaintiff plausibly alleges flouts a constitutional prescription, and collecting seven circuits that have held or stated in dictum that the exception does not shield officials who exceed constitutional authority); *see also Gaubert*, 499 U.S. at 323 (explaining that the second prong protects only "governmental actions and decisions based on considerations of public policy"). There is no public policy—social, economic, or political—that authorizes unconstitutional conduct, and a decision grounded in no legitimate public policy cannot satisfy the second prong regardless of how it is characterized. Plaintiffs address this argument through the first prong's constitutional argument but note that the logical implication extends to the second prong as well.

employees with policy implications." *Id*. at 655. Defendant points to an even broader policy rationale here. Rather than identifying a specific, defined policy that authorized or prescribed VA's failure to address documented racial disparities, Defendant claims that its actions are protected by the broad policy considerations relating to training, supervision, data collection, and auditing. ECF 179-1 at 24–25.

Defendant's position that this broad set of policies is automatically protected would allow for a slew of undesirable outcomes. For example, a VA official who received documented proof of racial discrimination in benefits adjudication and ordered it shredded would be protected by the discretionary function exception because record-keeping decisions generally involve policy judgment. This type of broad protection was contemplated and rejected by the Second Circuit in *Andrulonis II*. *See* 952 F.2d. at 655.

Defendant's framing, that "tracking" veterans' race might itself introduce bias, or that veterans may not wish to have race data collected, ECF 179-1 at 26–27, is an after-the-fact rationalization of VA's actions, not the kind of social, economic, or political policy judgment the discretionary function exception was designed to shield. *See Gonzalez v. United States*, 690 F. Supp. 251, 256 (S.D.N.Y. 1988) (holding that the Government cannot escape the liability clearly envisioned by the statute by describing the challenged decision as a "policy" matter); *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 113 (2d Cir. 2012) ("The fact that certain implementing actions may be insulated from Foreign Sovereign Immunities Act liability does not mean that *any* action implementing or executing a discretionary policy will be shielded from liability.") (cleaned up) (emphasis in original).

**b. The Challenged Conduct Is Unrelated to Any Plausible Policy Objective.**

Defendant's perpetuation and toleration of racial discrimination in benefits adjudication is "unrelated to any plausible policy objectives," and not shielded by the discretionary function exception. *See Coulthurst v. United States*, 214 F.3d 106, 110–11 (2d Cir. 2000); *Ben*, 160 F. Supp. 3d at 473. Plaintiffs plead numerous allegations that have no legitimate public policy rationale, including that VA leadership acknowledged the problem of disparate outcomes based on race in principle and then explicitly declined to investigate because they were afraid of legal liability and public scrutiny. Am. Compl. ¶¶ 66–70. The Amended Complaint also details numerous complaints about the veterans benefits adjudications system that VA leaders failed to investigate or remedy. *Id.* ¶¶ 59–60, 65–66. When VA leadership declined to investigate documented racial disparities because doing so would raise litigation concerns, Am. Compl. ¶ 66, it was not exercising the kind of policy judgment the discretionary function exception shields. It was making a deliberate choice to preserve ignorance—and therefore avoid accountability—for known racial discrimination. It is the kind of conduct the *Ben* court described as arising from factors "unrelated to any plausible policy objectives." 160 F. Supp. 3d at 473.

The failure to include racial bias guidance in those existing mandatory programs is not a new policy decision necessarily requiring fresh resources or complex trade-offs. It is the failure to incorporate non-discrimination requirements into infrastructure that already existed. Defendant cannot argue this involves difficult resource allocation choices when, as the Amended Complaint alleges, VA was already conducting mandatory training and distributing adjudication manuals to benefits examiners. Am. Compl. ¶¶ 56–58. The question is not whether VA had resources to train—it demonstrably did—but whether the training it chose to provide addressed known racial disparities. The VA's omission is not grounded in any plausible policy objective. *See Coulthurst*, 214 F.3d at

109–10 (holding discretionary function exception inapplicable where government employee failed to perform an assigned duty out of negligence rather than making a policy-grounded program design decision).

For the foregoing reasons, the discretionary function exception does not bar Plaintiffs' claims. VA officials had no discretion to administer benefits in a racially discriminatory manner. Furthermore, conduct that concealed evidence of racial discrimination, ignored years of formal advisory committee warnings, and failed to respond to documented racist conduct among adjudicators cannot be characterized as grounded in any legitimate social, economic, or political policy.

### C. **Garden-Variety Emotional Distress Does Not Require Personal Testimony From Each Named Plaintiff.**

Defendant's contention that Plaintiffs cannot establish Mr. Monk, Sr.'s emotional distress claims without his testimony fails. ECF 179-1 at 34–35. Neither District of Columbia ("D.C.") nor Connecticut law requires personal testimony for garden-variety emotional distress claims. Garden-variety emotional distress claims "refer to claims for compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized . . ." *Oral Care Dental Grp. II, LLC v. Pallet*, 213 Conn. App. 389, 397 (2022) (internal quotation marks omitted). When claiming emotional distress damages, Plaintiffs are required to provide only "a basis from which the jury can make a common-sense assessment." *Ivey v. D.C.*, 46 A.3d 1101, 1109 (D.C. 2012). Defendant cites no D.C. or Connecticut decision holding that personal testimony is *required* for garden-variety emotional distress claims. *See* ECF 179-1 at 34–37. Nor is counsel for Plaintiffs aware of any such authority. In fact, "in civil cases the testimony of a single witness is sufficient to establish any fact, including the amount of damages . . . even though the witness is a party or interested in the action." *Carrano v. Yale-New Haven Hosp.*, 279 Conn. 622, 646 (2006) (quoting

32A C.J.S. 761, Evidence § 1340 (1996)). Further, whether other evidence will be sufficient to prove Mr. Monk, Sr.'s damages is ultimately a question of fact not properly decided at this stage.

The government cites no D.C. or Connecticut court cases for the proposition that garden-variety emotional distress claims require personal testimony. ECF 179-1 at 34–37.[8] Nor could they. Given the objective nature of the standard, a requirement for personal testimony would be inappropriate in these circumstances. The combination of evidence about the racially discriminatory system that Mr. Monk, Sr. encountered and testimony from other witnesses regarding its impact on Mr. Monk, Sr. will demonstrate that he suffered emotional distress of the kind an ordinary person might experience.[9]

The objective nature of the emotional distress standard means that witnesses other than the person suffering emotional distress may readily support the claim. *See, e.g., Chamberland v. Physicians for Women's Health, LLC*, 2006 WL 437553, at *7 (Conn. Super. Feb. 8, 2006) (finding that testimony from a family member was sufficient to establish emotional distress where the person suffering from the distress did not testify); *see also United Mine Workers of Am., Int'l Union v. Moore*, 717 A.2d 332, 340–41 (D.C. 1998) (recognizing that emotional distress damages may be

[8] The government mentions no D.C. tort cases at all, thus waiving any argument on this motion that DC tort law requires personal testimony in this circumstance. *Cf.* ECF 83 at 12 ("There is no conflict between Connecticut and D.C.'s negligence, negligent infliction of emotional distress, or negligent supervision law. . . . It is thus unnecessary to conduct a conflict-of-laws analysis.").

[9] Any such testimonial requirement also runs afoul of the intent of the Connecticut and D.C. survival statutes. Conn. Gen. Stat § 52-599 (2024); D.C. Code § 12–101 (2025). These statutes reflect a strong legislative policy that claims are not extinguished simply because the injured party is no longer alive. *See, e.g., Arrington v. D.C.*, 673 A.2d 674, 677 (D.C. 1996) ("[The survival statute] preserves for the benefit of the decedent's estate the cause of action which the deceased would have had, had he not died.") (citations omitted); *Lewis v. Lewis*, 708 A.2d 249, 252 (D.C. 1998) (the Survival Act "preserves for the benefit of the decedent's estate a right of action the decedent had before death."). Connecticut courts have made clear that "[s]urvival of actions is the rule and not the exception, and the presumption is that every cause or right of action survives until the contrary is made to appear." *Ralph Durante & WA445 Assocs., LLC v. Cody*, 2023 WL 6436875 at * 2 (Conn. Super. Ct. Sept. 29, 2023) (quoting *Terwilliger v. Terwilliger*, 293 A.2d 12, 14 (Conn. C.P. 1971)); *see also Ciarleglio v. Martin*, 325 A.3d 219, 230 n.9 (Conn. App. Ct. 2024). The Connecticut Supreme Court has emphasized the "broad sweep" of § 52-599. *Comm. on Human Rights & Opportunities v. Greenwich Catholic Elementary School Sys., Inc.*, 522 A.2d 785, 787 (1987). Because a deceased plaintiff cannot testify, a rule requiring a plaintiff's own testimony to establish garden-variety emotional distress would effectively extinguish otherwise viable emotional distress claims simply because the plaintiff is deceased, notwithstanding the legislature's directive that those claims should survive.

supported by testimony from family members and other third-party witnesses rather than the plaintiff's testimony alone); *Daka, Inc. v. McCrae*, 839 A.2d 682, 691 n.7 (D.C. 2003) (same).

Defendant's citations to Connecticut tort law fail to establish any requirement for personal testimony. Defendant's parenthetical quotations demonstrate only that personal testimony is ordinarily sufficient—not necessary—to support garden-variety emotional distress claims. ECF 179-1 at 36 ("evidence of mental suffering is '*generally* limited to the testimony of the plaintiff, who describes his or her injury'") (emphasis added) (quoting *Vera v. Alstom Power*, 189 F. Supp. 3d 360, 376 (D. Conn. 2016)); *id.* ("suffering comes *mainly* from the [plaintiff's] own testimony") (emphasis added) (quoting *Su v. Milford Sports Bars, LLC*, No. 3:22-CV-321 (VAB), 2023 WL 10509599, at *7 (D. Conn. Dec. 15, 2023)).[10]

Finally, Defendant misunderstands Plaintiffs' previous statements about relying on personal testimony. Plaintiffs, including the estate of Mr. Monk, Sr., will prove the emotional distress suffered with "their testimony," or as relevant here, that of Mr. Monk, Jr., executor of the estate. ECF 135 at 5. Contrary to Defendant's assertions, Plaintiffs never claimed to rely on Mr. Monk, Sr.'s testimony to prove his emotional distress. *See* ECF 179-1 at 36. Defendant's argument that Plaintiffs "claimed a reliance on personal testimony," ECF 179-1 at 37, is at odds with its own admission that, as memorialized by the Court in a prior discovery ruling in this case, "Attorney Creelan stated, and the Court confirmed, that Plaintiffs will rely only on Monk's testimony to prove their damages," ECF 179-1 at 35; *see also* ECF 139 at 1, 3 (explaining that "Monk" refers to Mr. Monk, Jr.).

[10] Defendant also mischaracterizes the court's opinion in *Gilbert*. First, the court made clear that its definition of garden-variety emotional damages applied only "for the purposes of [that] case." 272 A.3d at 626 n.25. Second, taken in context, the court did not hold that emotional distress "is testified to only by the complainant and other lay witnesses." *Id.* Rather, the court held that such testimony can be sufficient to establish emotional distress claims "without the need for expert medical evidence." *Id.*

### D. **<u>NVCLR Does Not Assert Organizational Standing and Did Not Need to Present an Administrative Claim on Its Own Behalf.</u>**

Defendant erroneously implies that NVCLR brings claims for injuries to its corporate entity, rather than merely on behalf of its members. ECF 179-1 at 38–39. Defendant mischaracterizes Plaintiffs' allegations. NVCLR asserts *associational* standing, not *organizational* standing, and brings a claim "on behalf of its members who have or will have exhausted" their FTCA administrative remedies.[11] Am. Compl. ¶¶ 10, 158, 201, 209, 219.

Defendant does not identify any case requiring an organization to file an administrative claim in an FTCA action on behalf of its members. The government relies on decisions confirming that one must first present an administrative claim to an agency before bringing suit under the FTCA, but this authority is inapposite: the plaintiffs in those cases were not organizations, and they did not file administrative claims (or their claims were filed by others). *See* ECF 179-1 at 38 (citing *Wyler v. United States*, 725 F.2d 156, 159 (2d Cir 1983); *Altman v. Connally,* 456 F.2d 1114, 1116 (2d Cir. 1972); *Healy v. U.S. Postal Serv.*, 677 F. Supp. 1284, 1290 (E.D.N.Y. 1987); *Jackson v. United States*, 730 F.2d 808, 811 (D.C. Cir. 1984)).

In contrast, here, NVCLR brings claims on behalf of its members who are "Black veterans with pending and exhausted FTCA claims regarding VA racial discrimination in its benefits programs." Am. Compl. ¶ 15. Because these members have satisfied or will satisfy the presentment requirement, and because it does not seek organizational standing for injuries to itself, NVCLR need not file its own FTCA administrative claim. *See Hunt v. Washington State Apple Advert. Comm'n*,

[11] Courts have long recognized that organizations can assert associational standing to sue on behalf of their members if one or more of their members would individually have standing. Defendant does not contest NVCLR's associational standing and makes no argument that NVCLR fails to satisfy the requirements introduced in *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (holding that an organization has associational standing if its members have standing to sue in their own right, if the interests it seeks to protect relate to its purpose as an organization, and if individual participation is not needed).

432 U.S. at 345 (clarifying that an organization can assert the rights of its members "in a representational capacity" and does not need to have personally experienced the harm alleged). It follows that an entity asserting associational standing does not need to exhaust remedies in its own name, so long as the members on behalf of whom it is litigating have done so.[12]

**E. <u>This Court Should Defer Ruling on Defendant's Second Motion to Dismiss Until After the Close of Fact Discovery.</u>**

This court should hold Defendant's Motion to Dismiss in abeyance until after the close of fact discovery. Courts have "required that the party asserting jurisdiction [in a Rule 12(b)(1) motion] be permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *see Inv. Properties Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 707–08 (2d Cir. 1972) (granting writ of mandamus to permit discovery that will help resolve jurisdictional issues).

In the present case, discovery is already underway but far from complete. Ongoing discovery, including depositions of records custodians and pre-2001 data not yet produced, may further illuminate the full scope of VA leaders' knowledge and the specific directives its officials disregarded, reinforcing Plaintiffs' allegations. For example, Plaintiffs served a discovery request

[12] Although NVCLR had no obligation to present claims to VA on behalf of itself because it is representing its members in an associational capacity, any alleged failure to do so would not deprive this Court of jurisdiction. Recent Supreme Court precedent makes clear that the FTCA's presentment requirement is properly understood as a nonjurisdictional claims-processing rule that may be waived or excused. The Court has repeatedly held that statutory procedural requirements are nonjurisdictional absent a clear statement from Congress. *See, e.g., United States v. Wong*, 575 U.S. 402, 409–10 (2015) (FTCA time limitations set forth in 28 U.S.C. §§ 2401(b), 2675(a) are nonjurisdictional and subject to equitable tolling); *Harrow v. Dep't of Def.*, 601 U.S. 480, 480 (2024) (60-day deadline for seeking judicial review of Merit Systems Protection Board decisions is nonjurisdictional); *Wilkins v. United States*, 598 U.S. 152, 155 (2023) (12-year limitations period in Quiet Title Act is a nonjurisdictional claims-processing rule); *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 204–05 (2022) (30-day time limit to file a petition for review of a collection due process determination under the Internal Revenue Code is nonjurisdictional). In *Santos- Zacaria v. Garland*, the Court extended this principle to statutory exhaustion requirements, holding that they, too, are ordinarily treated as nonjurisdictional claims-processing rules unless Congress clearly states otherwise. 598 U.S. 411, 417–18 (2023). That reasoning applies with equal force to the presentment requirement in 28 U.S.C. § 2675(a), the same short provision that also contains the time limitations requirement the Supreme Court held is nonjurisdictional. *United States v. Wong*, 575 U.S. at 405, 409. The FTCA's presentment requirement likewise lacks no clear jurisdictional statement and therefore should be construed as establishing only a nonjurisdictional claims-processing rule.

inquiring about the identities of specific individuals believed to be responsible for VA's tortious conduct. *See* Ex. A, Defendant USA's Objections and Responses to Plaintiffs' Second Interrogatories at 15–16 (interrog. 5). Defendant did not fully answer this interrogatory, indicating the need for additional discovery so Plaintiffs can comprehensively respond to Defendant's position that Plaintiffs allege institutional, rather than individual conduct. *Id*. at 16–18 (Defendant's response to interrog. 5).

Further, significant categories of evidence bearing directly on the knowledge and deliberate indifference questions have not yet been produced. Depositions of custodians of records whose documents Plaintiffs have not yet received, and data from the pre-2001 period may well shed further light on when VA leadership first acquired actual knowledge of racial disparities, what corrective measures were considered and rejected, and what training and supervision decisions were made in response to documented evidence of discrimination. These are precisely the kinds of factual questions that cannot be resolved against Plaintiffs on a motion to dismiss.

Additional discovery will help establish the specific actions taken by the VA officials that perpetuated the racially discriminatory system Plaintiffs alleged in their Amended Complaint as well as VA officials' awareness of the resulting harms. Therefore, this court should exercise its inherent power to manage its docket and defer ruling on Defendant's second Motion to Dismiss regarding subject-matter jurisdiction until after the close of fact discovery.

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied, or in the alternative, its adjudication deferred until the close of discovery.

Dated: July 20, 2026

Respectfully submitted,

/s/ Jeremy M. Creelan
Jeremy M. Creelan, *pro hac vice*
Joanna Wright, *pro hac vice*
Linda K. Cox, *pro hac vice*
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel: (212) 891-1600
jcreelan@jenner.com
jwright@jenner.com
kcox@jenner.com

Adam C. Henderson, *pro hac vice*
John Baisley, *pro hac vice*
Addison Leavy, *pro hac vice*
JENNER & BLOCK LLP
353 N. Clark St. Chicago, IL 60654
Tel: (312) 222-9350
ahenderson@jenner.com
jbaisley@jenner.com
aleavy@jenner.com

Sanjana Manjeshwar, Law Student Intern
Grace Parker, Law Student Intern
Lexi Raikes, Law Student Intern
Ashley Anderson (ct32022)
Michael J. Wishnie (ct27221)
Veterans Legal Services Clinic
Yale Law School
P.O. Box 209090
New Haven, CT 06520
Tel: (203) 432-4800
michael.wishnie@ylsclinics.org

Yaman Salahi, *pro hac vice*
Salahi PC
505 Montgomery St., 11th Floor
San Francisco, CA 94111
Tel: (415) 236-2352
yaman@salahilaw.com

*Counsel for Plaintiffs*