**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CONLEY F. MONK, Jr. et al.,<br>*Plaintiffs*, | : | |
| v. | : | No. 3:22-cv-1503 (SRU) |
| THE UNITED STATES OF AMERICA,<br>*Defendant*. | : | August 20, 2026 |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs' Opposition (ECF 200) ("Opp.") to the United States' Motion to Dismiss (ECF 179) ("Mot.") the Amended Complaint (ECF 36) ("Am. Com.") fails to refute any of the United States' well-founded arguments for dismissal based on lack of subject matter jurisdiction.

## I. PLAINTIFFS PLEAD PRECLUDED INSTITUTIONAL TORT CLAIMS.

In response to Defendant's well-supported argument that Plaintiffs' extensive allegations of "systemic" negligence plead an improper institutional tort, Plaintiffs (1) try to reframe their Amended Complaint, by pointing to two isolated and irrelevant "examples" of purportedly tortious activity by "individual" government employees, and (2) try to analogize to non-analogous cases. But even in their Opposition, Plaintiffs reinforce the institutional nature of their claims: arguing that unenumerated and unspecified "leaders," "employees," and "officials" administered the entire benefits program negligently and that the "system" itself caused harm. *See, e.g.*, Opp. at 1, 4, 7.

Plaintiffs' "examples" do not save their cause because disconnected events cannot simply be aggregated to avoid the bar on institutional torts. The first "example" is of allegedly discriminatory messages sent by a former Veterans Law Judge and a Board of Veterans Appeals ("BVA") advisor. Opp. at 4; Am. Compl. ¶¶ 59-60. But Plaintiffs do not allege that those individuals had any involvement in, or impact on, the benefits outcomes they challenge. There are no factual allegations that BVA supervisory or training failures caused Plaintiffs' harm. In fact,

aside from these two paragraphs, Plaintiffs do not mention this alleged conduct anywhere else in the Amended Complaint. And they allege that the government *fired* the individuals involved, showing the BVA decisively addressed misconduct. *Id.* ¶ 59. These allegations of two government employees' malfeasance, regardless of any plausible connection to Plaintiffs' harm, do not state a cognizable non-institutional tort.

Plaintiffs' second "example" fares no better. Opp. at 5; Am. Compl. ¶¶ 69-71. Even if their conclusions about a 2017 VA meeting and study were accurate—which, through discovery so far, Plaintiffs already know are not—Plaintiffs still claim *system-wide* infliction of harm since 1945, not harm from a 2017 event itself. Even if Plaintiffs provided more "examples" of individual federal employee negligence—which they do not—the result would be the same. Plaintiffs allege agency negligence *in toto*, and references to discrete "incidents" do not change this fact.

Further, Plaintiffs fail to differentiate from the many cases holding that institutional tort claims are precluded under the FTCA, and Defendant has already distinguished the comparators they raise. *See* Opp. at 4, 6-7; Mot. at 14-15 (addressing cases involving well-pleaded allegations for which plaintiffs simply lacked the names of the alleged tortfeasors, or in which a specific, identified policy that directly impacted plaintiffs was implemented by specific employees, none of which applies here). Plaintiffs also misguidedly rely on *Doe 1 v. United States*, No. 25-CV-80880, 2025 WL 3755467, at *12 (S.D. Fla. Dec. 18, 2025) (report and recommendation*) adopted as modified sub nom. Doe 1 v. United States*, No. 9:25-CV-80880, 2026 WL 1041963 (S.D. Fla. Apr. 17, 2026), arguing that *Doe 1* demonstrates that the United States "can be liable under the FTCA" for the "culmination" of agency employees' actions over "decades." Opp. at 7. But the *Doe 1* court merely declined to dismiss based on an institutional tort argument *while dismissing on multiple other grounds*—a fact not acknowledged in the Opposition. *Id.*; Opp. at 4-7. In *Doe 1*, the plaintiffs

alleged that the FBI received multiple reports, over ten years, about the criminal activities of Jeffery Epstein. The plaintiffs alleged they were abused after FBI employees failed to follow up or to conduct a competent investigation. *Doe 1*, 2025 WL 3755467, at *1-2. After recommending dismissal, the Magistrate Judge concluded that the complaint sufficiently alleged "actions of individual FBI employees." *Id.* at *12. The court did not rule, as Plaintiffs intimate, that an FTCA claim can be based on a "culmination" of agency-wide activity. The *Doe 1* plaintiffs did not allege harm from "interactions" with a negligent "system," as Plaintiffs here do. Rather, the *Doe 1* plaintiffs alleged mishandling of specific tips and investigations, reported to and led by identified or identifiable FBI employees. *Doe 1* bears no resemblance to Plaintiffs' broadbrush, agency-wide allegations.[1]

Plaintiffs' discrete, cherry-picked "examples" of alleged wrongdoing attempt to distract from the prohibited nature of their claims. Their theory of the case *requires* establishing agency-wide negligence, over decades, because it challenges the *entirety* of data collection, training, and supervision policies and the *totality* of supervision and training of *all* benefits adjudicators, impacting Black veterans on a *universal*, not individual, level. Such activity cannot be accomplished by one government employee, or even a large group thereof; it *requires* showing that the VA failed as an agency and as a "system." That is a precluded institutional tort claim.

## II. THE DISCRETIONARY FUNCTION EXCEPTION APPLIES.

Even if Plaintiffs could plead individual federal employee negligence, their claims are independently precluded by the FTCA's discretionary function exception ("DFE"). In the

[1] Meanwhile, Plaintiffs argue that *Lockwood v. United States*, No. 2:25-CV-608-EGL, 2026 WL 851441 (N.D. Ala. Jan. 9, 2026), is distinguishable, because Lockwood "had not alleged any specific episodes demonstrating tortious conduct by VA personnel." Opp. at 8. It is unclear how Plaintiffs think their Amended Complaint is any different, especially given that Lockwood's administrative claim was presented by Plaintiffs' counsel and modeled on their own claim. *Lockwood* is directly on point. Mot. at 9 n .7

Opposition, Plaintiffs repeatedly attempt to invert the pleading burden under *United States v. Gaubert*, 499 U.S. 315, 323 (1991).[2] But it is *Plaintiffs* who must *plead facts* "which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-25. They do not.

At the outset, Plaintiffs never address the fact that the DFE precludes challenges to an agency's *design* of policy. *Id.* at 323 ("[T]here is no doubt that planning-level decisions establishing programs are protected by the [DFE]"); *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013). Plaintiffs have not advanced *any* well-pleaded factual allegations identifying what supervisory, training, or data-keeping requirements were violated, let alone how the VA had a specific and non-discretionary mandate, found in federal statute, regulation, or policy, to conduct or improve these activities in a particular way. Opp. at 17; Mot. at 19-25. Plaintiffs do not plead a *specific* anti-discrimination policy the VA was *mandated* to administer; nor a *specific* data-keeping directive the VA was *mandated* to implement; nor *specific* steps VA was *prescribed* by statute, regulation, or agency policy to take to locate the causes of any identified disparities and thereafter how to "address" them.

Next, Plaintiffs confuse the first prong's examination of whether the challenged conduct was imbued with elements of judgment and choice with the second prong's examination of whether the challenged discretionary conduct is rooted in considerations of social, economic, or political policy. Opp. at 16. Plaintiffs ignore their pleading burden, stating that the United States must "satisfy" the second prong, even though the second prong is *presumed* satisfied when the

[2] For instance, Plaintiffs never acknowledge that the second *Gaubert* prong is presumed satisfied where the first prong is met. Instead, they inaccurately cite *Andrulonis v. United States (Andrulonis II)*, 952 F.2d 652, 655 (2d Cir. 1991), an inapt decision regarding a failure to warn of a rabies risk during a laboratory experiment. *See* Opp. at 16 (misciting *Andrulonis*, 952 F.2d at 655, for the alleged premise that the government must identify a regulatory scheme endowing discretion in effectuating policy "[i]n order to satisfy the second *Gaubert* prong").

first prong is met, as it is here. *Id.*; Mot. at 17-18. Nonetheless, the United States did establish that the discretionary decisions at issue are susceptible to policy considerations. Mot. at 25-27.[3]

Plaintiffs then misconstrue the exception in arguing that the United States fails to "identify[] a specific, defined policy that authorized or prescribed VA's failure to address documented racial disparities." Opp. at 17, 18. This both incorrectly implies that negligence is a relevant factor in the DFE analysis and improperly attempts to shift Plaintiffs' burden to plead outside the DFE to the United States. The relevant question is whether the VA had discretion regarding the challenged conduct—*e.g.*, designing trainings, supervising employees, and crafting data policies—which it did. Whether those activities were then undertaken *negligently* is irrelevant to the exception. 28 U.S.C. § 2680(a); *Salafia v. United States*, 578 F. Supp. 2d 435, 440 (D. Conn. 2008). Further, the *lack* of an agency policy requiring a specific course of action *confirms* that the first *Gaubert* prong is met. *Gaubert*, 499 U.S. at 324-25.[4]

Plaintiffs' causes of action, as alleged, are based on "supervision, auditing" and "training." *See e.g.*, Am. Compl. ¶¶ 36, 53-55, 207, 219. They recharacterize the challenged activity as a "failure to address" documented disparities to avoid the DFE's bar, Opp. at 17-19, but that position is inconsistent with their own allegations.[5] Further, "documented" disparities in benefits *outcomes*,

[3] Plaintiffs also falsely claim that Defendant argues that supervision and training claims are "categorically" barred by the exception—an argument appearing zero times in the Motion—but provide no reason to doubt the extensive case law holding that those activities *are* discretionary and policy-based. Opp. at 14-15; Mot. at 25-27. And rather than attempt to overcome the second prong presumption, Plaintiffs quibble that various policy considerations Defendant identified for activities like data collection are "after-the-fact rationalization." Opp. at 17. But the United States does not need to show that there was an *actual* balancing of policy considerations. *Gaubert*, 499 U.S. at 325; *In re Joint E. & S. Dists. Asbestos Litig.*, 891 F.2d 31, 37 (2d Cir. 1989) ("[I]t is unimportant whether the government actually balanced economic, social, and political concerns in reaching its decision.").

[4] The statutes Plaintiffs cite in the Amended Complaint do grant the VA Secretary discretion in the "control, direction, and management" of the department. *See* Am. Compl. ¶¶ 32-33, 35 (citing 38 U.S.C. § 303 and predecessor statutes); *Gaubert*, 499 U.S. at 323 ("Where Congress has delegated the authority to an independent agency … to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the [DFE].").

[5] *See id.* ¶¶ 71-72 (alleging disparities were *not* documented for years because of poor data collection);
*(Continued)*

if true, do not identify root *causes*, which could be varied and addressed in many ways. Belief that the VA's discretion was exercised ineffectually or even abused does not defeat the DFE. 28 U.S.C. § 2680(a); *Salafia*, 578 F. Supp. 2d at 440.[6]

Given these fatal flaws, Plaintiffs focus on their summary allegation of unconstitutionality to try to defeat the exception. But Plaintiffs fail to *plausibly allege facts* that the activity that supposedly caused harm was also intentionally discriminatory.[7] Plaintiffs vacillate between vague claims that (1) VA leadership's actions were unconstitutional in themselves, Opp. at 15; and (2) VA benefits adjudicators' actions were discriminatory, leadership was aware, thus leadership acted unconstitutionally, Opp. at 19. As to the first tactic, Plaintiffs do not allege any facts that innumerable VA leaders, officials, and employees "selected" supervision and training courses of action "*because of* [the] adverse effects" they would have on Black veterans.[8] *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (emphasis added). As to the second, none of the cases Plaintiffs cite holds that mere "awareness" of or failure to "remedy" practices arguably having a discriminatory effect is itself unconstitutional. *See id.*; Opp. at 11. And Plaintiffs cannot establish a necessary precursor to this derivative theory of unconstitutionality because this Court

---

*id.* ¶ 67 (alleging that in 2017, VA *voluntarily* undertook a study to investigate benefits adjudications by race); *id.* ¶ 57 (alleging that, "[t]o its credit," the VA implemented anti-bias training).

[6] Moreover, if Plaintiffs are now taking the position that the only conduct they challenge is the VA's "failure to *address documented* racial disparities" in disability benefits, then any acts or omissions *prior to* such "documentation" are immaterial to this case. Pursuant to their own framing, the United States' only potential liability would thus be for allegedly negligent activity occurring *after 2017*, the date VA leaders allegedly "knew" of disparities in PTSD grant rates per a documented study, or even *after 2021*, the date Plaintiffs claim statistical analysis "confirmed, for the first time," disparities existed. Am. Compl. ¶¶ 2, 68, 185.

[7] Not only this, but when Plaintiffs argue that the "mandatory directive is the Constitution itself," Opp. at 14, they do not even attempt to argue that the allegedly relevant Constitutional provision is sufficiently *specific* and prescribes a *particular course of conduct* so as to defeat the DFE. 28 U.S.C. § 2680(a). For example, it remains unexplained how a failure to analyze demographic data could be a violation of a specific constitutional mandate. Certainly the Fifth Amendment contains no such specific data analysis requirement.

[8] Plaintiffs cite a few paragraphs of the Amended Complaint they say show "relevant supervisors" behaved unconstitutionally. Opp. at 15; Am. Compl. ¶¶ 207, 223-24. The cited paragraphs, all conclusory legal arguments found in the Claims for Relief, do not allege any *well-pleaded fact*s regarding any supervisors.

has already ruled that adjudicators' motivations when making benefits decisions are not at issue. ECF 115 at 10; *see also* Am. Compl. ¶ 9.

Even if one may plausibly allege a constitutional violation through "conscious awareness" of others' unconstitutional conduct and "deliberate inaction," Opp. at 12, Plaintiffs do not allege either.[9] Further, Plaintiffs' position in their Opposition contradicts their own allegations that failure to aggregate data rendered VA leadership *unable* to identify "the nature, scope, and collateral effects of disparities." Mot. at 32; Am. Compl. ¶ 71. Plaintiffs do not, because they cannot, reconcile how VA officials could have simultaneously been *unaware* of disparities and yet *so aware* that their inaction was unconstitutional. *Compare* Am. Compl. ¶ 71 ("VA officials negligently failed to collect and aggregate claims data prior to 2001 in a manner that would allow VA to identify the nature, scope, and collateral effects of these disparities sooner") *with* Opp. at 12 ("conscious awareness of unconstitutional conduct combined with deliberate inaction, as the Amended Complaint specifically alleges, is … a constitutional violation").

In their Opposition, Plaintiffs distance themselves from clear allegations in the Amended Complaint to try to save their claims from the DFE. Knowing that "disparate impact" is insufficient to establish a constitutional violation, they now contend that they do not plead disparate impact—despite allegations doing just that. Opp. at 12-13; Mot. at 31. Plaintiffs' new, puzzling position is that they allege disparate impact "as a component of deliberate indifference"—despite "disparate impact" not being a "component" of deliberate indifference, and Plaintiffs failing to plead the elements of deliberate indifference. Opp. at 13; Mot. at 32-33. Plaintiffs argue they sufficiently plead intentional discrimination—despite failing to include *any* well-pleaded factual allegations

[9] The Amended Complaint is instead replete with "knew or should have known" allegations. *See, e.g.*, Am. Compl. ¶¶ 6, 8-9, 36, 44, 46, 48, 75, 79-80, 82, 152, 184, 194, 207, 220-221, 224.

that the allegedly tortious activity was discriminatory by design and disavowing allegations of bad faith. ECF 61 at 21 n.12; *see also* ECF 115 at 10; Opp. at 15; Mot. at 30. In sum, Plaintiffs' conclusory arguments contradict their own pleading. Plaintiffs have failed to show that the DFE does not apply.

## III. THE ESTATE OF MONK, SR. CANNOT ESTABLISH A CLAIM.

The Estate of Monk, Sr. cannot establish its claims. None of the cases in the Opposition stand for the proposition that *other evidence* may be relied upon *in lieu of* personal testimony for garden variety emotional distress. Rather, both parties' cited cases support the proposition that such evidence may be used *in addition to* testimony by the allegedly injured party. *See* Mot. at 34-37.[10] Nor is this issue premature. There is no jury in this action, and the Court can find at any point that subject matter jurisdiction is lacking because Monk, Sr. cannot establish the elements of an FTCA claim. *See* 28 U.S.C. § 2402; *Brownback v. King*, 141 S. Ct. 740, 749 (2021).

Plaintiffs yet again cannot have it both ways. Courts are clear that "garden variety" distress and negligent infliction of emotional distress do not coexist. *See, e.g.*, *Oral Care Dental Grp. II, LLC*, 277 A.3d 860, 872 (Conn. App. Ct. 2022) (allegations were consistent with "garden variety" emotional distress because the "complaint did not assert an independent cause of action for emotional distress"); *St. John v. Napolitano*, 274 F.R.D. 12, 20 (D.D.C. 2011) (a plaintiff alleges more than garden variety distress where he "assert[s] a separate cause of action for emotional distress"). A negligent infliction of emotional distress claim requires Plaintiffs to establish

---

[10] Plaintiffs cite an inapposite case for their argument that Monk Sr.'s personal testimony is unnecessary. Opp. at 20; *Chamberland v. Physicians for Women's Health, LLC*, 2006 WL 437553 (Conn. Super. Feb. 8, 2006). But the court there expressly noted that "[t]his case *is not a case arising out of* [] negligent infliction of emotional distress but a wrongful birth case where the very harm caused by the negligence is clearly foreseeable." *Id.* at *6 (emphasis added). The case was brought by the living parents of an injured infant and arose from a single set of events documented in a medical record. The court found the mother's testimony sufficient for establishing emotional distress *damages* for both parents. *Id.* Here, Plaintiffs (apparently) intend to rely solely upon "other evidence" to establish multiple elements of the long-deceased Monk, Sr.'s claims, including causation and existence of injury.

severity, which they cannot do solely through *others'* lay testimony. *See id.*; ECF 83 at 20. Since Plaintiffs insist that they claim "garden variety" distress only, Mot. at 34-37, they have effectively abandoned their negligent infliction of emotional distress causes of action.

## IV. NVCLR NEVER PRESENTED AN ADMINISTRATIVE CLAIM.

In the Opposition, NVCLR does not dispute that it did not present an administrative claim. Instead, Plaintiffs urge, in a footnote, for the Court to abandon longstanding precedent that FTCA administrative claims exhaustion is a jurisdictional prerequisite to suit. They then seek creation of a new jurisdictional exception for "associational standing" plaintiffs. These efforts are unavailing.

Precedential case law is clear: the presentment of an administrative claim is a jurisdictional prerequisite to filing an FTCA suit. *See, e.g.*, *DeBoe v. Du Bois*, 503 F. App'x 85, 89 (2d Cir. 2012); *see also Jefferson v. United States*, No. 3:12CV01406, 2014 WL 3341603, at *1 (D. Conn. July 7, 2014) (Underhill, J.). Plaintiffs cite no authority for their theory that the Supreme Court may no longer agree with this precedent, attempting to analogize to statutes of limitations cases and non-FTCA disputes. Opp. at 23 n.12. Plaintiffs' casual, footnoted request that this Court break with binding precedent should not be countenanced.

Moreover, NVCLR confuses the concept of standing with the FTCA's administrative claim prerequisites. NVCLR did not plead "associational standing," or its elements, in the Amended Complaint. And the case upon which Plaintiffs rely holds that "associational standing" may exist only where the relief requested is *non-monetary*. *Hunt v. Wash. State Apple Adv. Comm'n*, 432 U.S. 333, 335 (1977) ("[I]n all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been [declarative, injunctive, or prospective]"); *cf. United Food and Comm. Workers Union Local 751 v. Brown Group*, 517 U.S. 544 (1996) (recognizing an exception to this principle where a statute expressly authorized a union to seek monetary damages on behalf of members); Opp. at 22-23. By contrast, Plaintiffs may obtain

*only* monetary damages under the FTCA. Plaintiffs cite no statute allegedly authorizing an "associational" FTCA plaintiff.

Even if associational standing *was* available under the FTCA and NVCLR *had* properly pleaded it, subject matter jurisdiction is still lacking without administrative exhaustion. Congress carved out limited exceptions to the exhaustion requirement for "third party complaint[s], cross-claim[s], or counterclaim[s]." 28 U.S.C. § 2675(a). "Associational plaintiffs" are absent from this list. Whether through "associational" or any other purported standing, NVCLR is a *plaintiff* asserting FTCA claims, and it—like all plaintiffs—must satisfy the jurisdictional prerequisites that apply to such litigants. Because NVCLR has failed to do so, its claims must be dismissed.

## V. THERE IS NO REASON TO DELAY RULING ON THE MOTION.

Plaintiffs ask this Court to punt on ruling on the jurisdictional arguments raised in the Motion. Opp. at 23-24. But this Court must satisfy itself that it has subject matter jurisdiction over Plaintiffs' claims. *Gionfriddo v. Salaf*, 343 F. Supp. 2d 109, 110 (D. Conn. 2004). Plaintiffs must sufficiently plead jurisdiction as a threshold matter, and discovery is not a means to rummage for a jurisdictional end. No amount of discovery will create a cause of action for an institutional tort. No amount of discovery will save Plaintiffs' challenges to policymaking itself, or the challenged supervision, training, and record-keeping, from the ambit of the DFE. No amount of discovery will turn back the clock to remedy NVCLR's failure to satisfy jurisdictional prerequisites. Plaintiffs' request for the court to delay ruling on this Motion should be rejected.

## CONCLUSION

For the reasons set forth in the United States' Motion and herein, the United States respectfully requests that this Court dismiss the Amended Complaint in its entirety.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

DAVID X. SULLIVAN
United States Attorney

PHILIP D. MACWILLIAMS
Director, Torts Branch

*/s/ Emily M. Kelley*
Emily M. Kelley (phv207548)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4400
Email: Emily.m.kelley@usdoj.gov

Sarah E. Klein (phv209571)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4233
Email: Sarah.e.klein@usdoj.gov

Max J. Keefe (phv209572)
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4291
Email: Max.keefe@usdoj.gov

Natalie N. Elicker (ct28458)
Assistant United States Attorney
157 Church Street, 25th Floor
New Haven, CT 06510
Telephone: (203) 821-3700
Facsimile: (203) 773-5373
Natalie.Elicker@usdoj.gov

ATTORNEYS FOR DEFENDANT
UNITED STATES OF AMERICA